DEBTOR'S MOTION FOR ORDER
TO SHOW CAUSE AND SANCTIONS
AGAINST CREDITOR APPLE INC. (21011446)


CHAPTER 7 CASE NO: 25–11496


# EXHIBIT A

AUGUST 28 2025

## Re: Chapter 7 Bankruptcy Case No. 25-11496

From    Mark G. DeGiacomo <mdegiacomo@harrisbeachmurtha.com>

To    Ashley Gjovik<ashleymgjovik@protonmail.com>

CC    Jennifer Babula<jbabula@harrisbeachmurtha.com>

Date    Wednesday, July 23rd, 2025 at 10:01 AM

Ms. Gjovik

I have your below email.

My assistant, who is copied on this email, will let you know what documents I need and how to get them to me.

You indicate that there is "ongoing civil litigation" with your former employer. Please forward to me the complaint that was filed.

I don't need anything on the Apple Card or Boston Medical situations, we can discuss those during the creditor meeting.

If you feel that you have grounds to challenge the non-dischargeability of your student loans that is something you or your attorney pursue. I am not involved in that.

I do not need any records at this time concerning the "donations".

Based on your email, I would strongly suggest that you consider hiring an attorney to assist you.

Sent from my iPhone

**Mark G. DeGiacomo** | Partner
Direct: 617.457.4039 | Email: mdegiacomo@harrisbeachmurtha.com



HARRISBEACHMURTHA.COM

Boston Office | 33 Arch Street, 12th Floor, Boston, MA 02110-2320
617.457.4000 | Fax: 617.482.3868

   

On Jul 22, 2025, at 3:41 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello Mr. DeGiacomo,

You were assigned as the Trustee to my bankruptcy case (Case No. 25-11496) filed yesterday (July 21 2025). The initial filing from PACER is attached. Thank you for your help overseeing this matter.

I'm preparing my records for you (tax filings, etc) and wanted to ask what the preferred way to transmit that information to you is? May I email it or is there a portal?

My situation is straightforward (I'm completely broke) but also very complicated (its because I'm a whistleblower filed in retaliation for reporting my ex-employer environmental violations, as confirmed by multiple agencies who are also pursuing them, and I have ongoing civil litigation and the employer refuses to discuss settlement). So please let me know how I can best provide any required context -- I'm happy to share government complaints and findings, my concurrent civil litigation, etc.

I do want to challenge my debt with the employer (the "Apple Card") as I believe it may be an unlawful contract and CFPB has already taken formal action on both Apple and Goldman Sachs (https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-apple-and-goldman-sachs-to-pay-over-89-million-for-apple-card-failures/) over the card generally, but Apple & GS also appear to have concealed they "piloted" the card on employees prior to formally "launching" the card, and may have never disclosed that to CFPB, based on the info in CFPB's complaint. Apple also claims all these "beta programs" are secret, and will not give me copies of the "agreements" I signed, even in civil discovery. I'm looking into whether I can file an action in the proceeding over this, but I wanted you to know in case that's something you may also be interested in doing.

I similarly want to challenge my debt with Boston Medical as whatever they did to code the visits in question caused a complete denial of insurance, and in those visits they repeatedly failed to provide me medical treatment or care. That was one month after getting kicked off Medicaid (due to now exhausted unemployment insurance). Then due to the debts incurred and cost of the premium I just no longer have any medical insurance, and never received treatment of what was at that time, debilitating medical issues. I already filed multiple complaints to Boston Medical over this.

Based on my litigation with Apple thus far (where they oppose anything/everything), I'm preparing for the other side(s) in this matter to fight my request to discharge debts regardless of law or fact, and thus would like to neutralize improper debts where possible.

I do also plan to file a request to discharge my federal student loan (Direct Unsub) debts due to there not currently being any reason to think I'd ever be able to pay them off (due to the whistleblower retaliation and denylisting), and I intend to start that process this week within the proceeding.

Finally, I also have a complicated situation where I've been living off donations from the public. My situation is quite public and well known, its been in international press for several years, and someone even created a Wikipedia article about me in 2021 that I don't want and Wikipedia won't delete. But that means I probably need to share my GoFundMe/PayPal/Venmo/etc records with you? Please let me know how you'd like to proceed and I'll

do whatever is needed. I would like to keep the donor names private if at all possible please, as sharing their names would make unrelated, non-parties become targets for retaliation by Apple.

Thank you,
-Ashley Gjovik
415-964-6272
Boston, MA

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**3.03 MB**   1 file attached

gov.uscourts.mab.520658.1.0.pdf  3.03 MB

**25-11496** Ashley Marie Gjovik

**Case type:** bk **Chapter:** 7 **Asset:** Yes **Vol:** v **Judge:** Christopher J. Panos
**Date filed:** 07/21/2025 **Date of last filing:** 08/25/2025

# Creditors

**Aidvantage on behalf of: The Department of Educati**
PO Box 300001
Greenville, TX 75403

(21021127)
(cr)

**Aidvantage- U.S. Department of Education**
Attention: Bankruptcy Discharge
P.O. Box 9635
Wilkes-Barre, PA 18773

(21011449)
(cr)

**Apple Inc**
Attention; Apple Payment Services
10355 N. De Anza Blvd
Cupertino, CA 95014

(21011446)
(cr)

**Bank of America**
Attention; Billing/Insolvency
PO Box 672050
Dallas, TX 75267

(21011444)
(cr)

**Boston Medical**
Attention: Billing/Insolvency
One Boston Medical Center Place
Boston, MA 02118

(21011447)
(cr)

**Goldman Sachs Bank USA**
Salt Lake City Branch
Lockbox 6112, P.O. Box 7247
Philadelphia, PA 19170

(21011445)
(cr)

**JPMorgan Chase Bank, N.A.**
Mail Code LA4-7100
Monroe, LA 71203

(21011443)
(cr)

**Tremont Dental Care**
Attention: Billing/Insolvency
635 Tremont St.
Boston, MA 02118

(21011448)
(cr)

**Tremont Dental Care, Inc.**
635 Tremont St.
Boston, MA 02118

(21022503)
(cr)

**U.S. Department of Education**
Attention: Bankruptcy Discharge
400 Maryland Avenue, SW
Washington, DC 20202

(21011451)
(cr)

## PACER Service Center

### Transaction Receipt

08/27/2025 17:08:23

| PACER Login: | ashleygjovik | Client Code: | |
|---|---|---|---|
| Description: | Creditor List | Search Criteria: | 25-11496 Creditor Type: cr |
| Billable Pages: | 1 | Cost: | 0.10 |

# Debtor's Motion For Order
# To Show Cause and Sanctions
# Against Creditor Apple Inc. (21011446)

## Chapter 7 Case No: 25–11496

# Exhibit B

## August 28 2025

# RE: Gjovik v Apple | Regarding Orrick's Attendance at Plaintiff's August 21 2025 Bankruptcy Proceedings (341 Meeting of Creditors)

| | |
|---|---|
| From | Perry, Jessica R. <jperry@orrick.com> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com>, Booms, Ryan<rbooms@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Riechert, Melinda<mriechert@orrick.com> |
| Date | Sunday, August 24th, 2025 at 11:49 PM |

Ashley,

We disagree that it was inappropriate for a person from Orrick to attend the public hearing in the bankruptcy court that occurred on Thursday. And we reject your attempt to blame us for any failure on your part to provide complete and accurate information in the proceedings, as well as your other baseless accusations.

Regards,

Jessica

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, August 21, 2025 9:40 AM
**To:** Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R. <jperry@orrick.com>
**Subject:** Gjovik v Apple | Regarding Orrick's Attendance at Plaintiff's August 21 2025 Bankruptcy Proceedings (341 Meeting of Creditors)

[EXTERNAL]

Dear Counsel,

I write to document my concerns regarding Orrick's attendance at my Section 341 Meeting of Creditors on Aug. 21 2025 in the U.S. Bankruptcy Court.

While I acknowledge your right to attend public court proceedings, I must note the inappropriate nature of your firm's conduct and its impact on my testimony to the bankruptcy court, as I objected to in the proceeding.

Apple knows I primarily blame it for denylisting me and causing my financial demise, including driving me into bankruptcy. Apple is also a creditor regarding my AppleCard debt (which is almost entirely WestLaw fees), along with Goldman Sachs. Yet, Apple chose to send Ryan Booms, who serves as noticed employment litigation defense counsel in civil litigation (3:23-cv-04597) and the Dept. of Labor whistleblower adjudication, rather than bankruptcy or financial counsel who would typically handle such proceedings. It also appears that Goldman Sachs did not appear -- nor did any of my other creditors. Apple's choice to appear with retaliation defense counsel also occurred during active discovery disputes in our employment litigation.

The visible presence of opposing retaliation counsel created a chilling effect on my testimony and may have compromised my ability to provide the complete financial disclosure that bankruptcy proceedings require. This apparent intentional intimidation by Apple continues a documented pattern of Apple monitoring and interfering with my participation in legal proceedings beyond the scope of our employment dispute, and beyond the boundaries of lawful litigation tactics. Federal and state agencies have already determined that Apple's retaliation was unlawful and that my underlying disclosures identified genuine violations and safety concerns -- thus there's no legitimate basis for Apple's conduct here.

Apple's tactics today create an impossible position where Apple's mere presence, which is intentionally intimidating and chilling, would cause any reasonable person in my position to be unable to fully exercise their rights in bankruptcy proceedings without facing retaliation in separate litigation or further obstruction of other proceedings. This ongoing, systematic harassment reflects a continuance of the very retaliation claims that brought us to litigation in the first place including my complaints about civil rights violations and intentional infliction of emotional distress.

While you may characterize your attendance as information gathering, the choice to send named employment litigation counsel rather than appropriate finance counsel, and the lack of Goldman Sachs or any other creditor, reveals Apple and Orrick's true purpose as intimidation rather than legitimate case development. Apple's appearance today also appeared to me, to represent Apple delighting in the spectacle of my financial demise, which Apple itself expressly threatened me would occur in 2021, if I was to pursue litigation and adjudication against it, which I did.

I preserve all objections to this conduct, its harm to me generally, and its interference with my constitutional rights in bankruptcy proceedings.

- Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at
[https://www.orrick.com/Privacy-Policy](https://www.orrick.com/Privacy-Policy) to learn about how we use this information.

DEBTOR'S MOTION FOR ORDER
TO SHOW CAUSE AND SANCTIONS
AGAINST CREDITOR APPLE INC. (21011446)

CHAPTER 7 CASE NO: 25–11496

# EXHIBIT C

AUGUST 28 2025



# CFPB Orders Apple and Goldman Sachs to Pay Over $89 Million for Apple Card Failures

*Companies illegally mishandled transaction disputes and misled iPhone purchasers about interest-free payment options*

OCT 23, 2024

**Washington, D.C.** – Today, the Consumer Financial Protection Bureau (CFPB) took action against Apple and Goldman Sachs for customer service breakdowns and misrepresentations that impacted hundreds of thousands of Apple Card users. The CFPB found that Apple failed to send tens of thousands of consumer disputes of Apple Card transactions to Goldman Sachs, and when Apple did send disputes to Goldman Sachs, the bank did not follow numerous federal requirements for investigating the disputes. Apple and Goldman launched Apple Card despite third-party warnings to Goldman that the Apple Card disputes system was not ready due to technological issues. These failures meant that consumers faced long waits to get money back for disputed charges, and some had incorrect negative information added to their credit reports. The CFPB is ordering Goldman Sachs to pay at least $19.8 million in redress and a $45 million civil money penalty, and Apple to pay a $25 million civil money penalty. The CFPB is also banning Goldman Sachs from launching a new credit card unless it can provide a credible plan that the product will actually comply with the law.

The CFPB also found that Apple and Goldman Sachs misled consumers about interest-free payment plans for Apple devices. Many customers thought they would automatically get interest-free monthly payments when buying Apple devices with their Apple Card. Instead, they were charged interest. In some cases, Apple did not even show the interest-free payment option on its website on certain browsers. Goldman Sachs also misled consumers about the application of some refunds, which led to consumers paying additional interest charges.

"Apple and Goldman Sachs illegally sidestepped their legal obligations for Apple Card borrowers. Big Tech companies and big Wall Street firms should not behave as if they are exempt from federal law," said CFPB Director Rohit Chopra. "The CFPB is banning Goldman Sachs from offering a new consumer credit card unless it can demonstrate that it can actually follow the law."

Goldman Sachs Group, Inc. (NYSE: GS), is one of the largest financial institutions in the world. It operates Goldman Sachs Bank USA, headquartered in New York City. Goldman Sachs primarily focuses on investment banking and investment management, not consumer finance. Apple Card was Goldman Sachs's first significant experiment in credit card lending.

Apple Inc. (NASDAQ: AAPL) is a multinational technology company headquartered in Cupertino, California. Apple entered the financial services market in 2014 and has offered several consumer financial products, including Apple Pay, a mobile payment system and digital wallet service; Apple Cash, a digital debit card allowing for peer-to-peer payments; Apple Pay Later, a Buy Now, Pay Later product; and Apple Card, the company's first credit card.

# Apple Card Partnership

Apple's business model relies on substantial revenue and profits from sales of its devices, such as iPhones, iPads, and MacBooks. Many of Apple's products are more expensive than other brands, leading many consumers to finance purchases with payment plans and credit products.

In August 2019, Apple introduced Apple Card in partnership with Goldman Sachs Bank, marking a significant expansion into consumer lending for both companies. The partnership allowed Apple to provide a financing mechanism to ratchet up sales of its devices, including iPhones and iPads. The Apple Card also sought to induce more spending at Apple's retail stores and Apple's App Store.

Goldman Sachs' involvement in Apple Card was part of the bank's foray into consumer finance, which began in 2016 with the launch of its Marcus brand. Despite limited experience in the consumer credit card market, the Apple Card partnership offered Goldman Sachs a prime opportunity to establish itself in the market.

With the Apple Card, Goldman Sachs extends credit to consumers and handles account servicing. Apple designed the customer-facing interfaces used to manage Apple Card accounts on Apple devices. That includes a "Report an Issue" feature which allows consumers to dispute Apple Card transactions. Apple was also deeply involved in marketing and advertising.

Apple and Goldman's agreement incentivized an earlier introduction of Apple Card by giving Apple the right to impose a $25 million penalty for each 90-day delay caused by Goldman. Four days before launch, the Goldman Sachs board of directors learned that critical Apple Card disputes systems were "not fully ready" due to technological issues, but the companies proceeded anyway.

Later, in December 2019, Goldman Sachs and Apple introduced a new feature called Apple Card Monthly Installments, which allows users to finance the purchase of certain Apple devices with Apple Card directly from Apple through interest-free monthly installments, similar to a Buy Now, Pay Later product.

# Servicing and Communications Meltdowns

When Apple's customers experienced improper charges or filed disputes, the systems developed by the companies failed to address them. Under federal law, when consumers dispute transactions as fraudulent or unauthorized financial institutions must conduct a timely inquiry on what went wrong. Goldman Sachs failed to adhere to this requirement. Separately, many disputes submitted to Apple

were not even sent to Goldman Sachs at all. Additionally, Apple's deceptive marketing materials and illegal conduct caused consumers to pay interest on purchases of iPhones and other Apple devices with Apple Card that they believed would be covered by an interest-free payment plan. The CFPB's investigation found violations of the Consumer Financial Protection Act and the Truth in Lending Act. The CFPB also found that the companies harmed consumers by:

- **Failing to process or share consumer disputes:** Apple Card users were directed to dispute transactions through a "Report an Issue" feature in the Wallet app. For some disputes, Apple sent consumers a separate link in the Messages app asking for more information. Apple failed to send these disputes to Goldman Sachs if the second form was incomplete. Even after Goldman Sachs alerted Apple to this issue, the problem persisted. As a result, neither Apple nor Goldman Sachs investigated tens of thousands of such disputes and cardholders were unfairly held responsible for disputed transactions.

- **Failing to investigate cardholder disputes:** For the disputes that Apple did send to Goldman Sachs, the bank failed to consistently send acknowledgment notices within 30 days, conduct reasonable investigations, or send resolution letters explaining the determinations of its investigations within 90 days. These failures led to Goldman Sachs illegally placing damaging information on consumers' credit reports and holding cardholders responsible for potentially fraudulent or unauthorized purchases.

- **Misleading cardholders about a payment plan for iPhones and other Apple products:** The marketing of the Apple Card Monthly Installments plan led consumers to believe they would automatically receive interest-free financing when purchasing iPhones and other Apple devices with their Apple Card. The plan allowed cardholders to purchase Apple devices through a series of interest-free payments over a period of six months to two years. However, many cardholders were unknowingly charged interest because they were not automatically enrolled as expected. They also faced confusing checkout options about enrolling in the plan. For online purchases, Apple only presented the payment plan as an option to consumers using Apple's own Safari browser. Due to Apple and Goldman's actions, instead of making interest-free payments, thousands of cardholders purchased Apple devices on interest-bearing revolving balances and incurred interest charges.

- **Misleading cardholders about refunds:** Cardholders with an Apple Card Monthly Installments plan essentially had two card balances – the plan balance and their interest-bearing revolving balance. For more than 10,000 cardholders, Goldman Sachs misled consumers about how it would apply certain refunds between the two balances. Contrary to Goldman's representations, portions of refunds for unrelated purchases were applied to the interest-free plan balance instead of the interest-bearing revolving balance. As a result, consumers incurred additional and unexpected interest expenses.

# Enforcement Action

Under the Consumer Financial Protection Act, the CFPB has the authority to take action against institutions that violate federal consumer financial laws, including by engaging in unfair, deceptive,

8/28/25, 12:41 PM    CFPB Orders Apple and Goldman Sachs to Pay Over $89 Million for Apple Card Failures | Consumer Financial Protection Bureau

Case 25-11496    Doc 20-1    Filed 08/28/25    Entered 08/29/25 09:03:27    Desc
Exhibits    Page 15 of 204

or abusive acts and practices. The CFPB also has the authority to enforce the Truth in Lending Act and Regulation Z.

Today's order against Apple requires the company to pay a civil money penalty of $25 million, which will be paid into the CFPB's victims relief fund (https://www.consumerfinance.gov/enforcement/payments-harmed-consumers/civil-penalty-fund/).

The CFPB is also ordering Goldman Sachs to pay at least $19.8 million in redress to victims for its role in marketing, offering, and servicing the Apple Card. Goldman Sachs must also pay a $45 million civil money penalty. Before introducing any new credit card product, Goldman Sachs must give the CFPB a credible plan for how the product will comply with the law. If Goldman Sachs makes another attempt to enter the credit card market, the CFPB plans to closely police the company to avoid repeat offenses.

Read today's order against Apple (cfpb.gov/enforcement/actions/apple-inc/).

Read today's order against Goldman Sachs (cfpb.gov/enforcement/actions/goldman-sachs-bank-usa/).

Consumers can submit complaints about financial products and services by visiting the CFPB's website (cfpb.gov/complaint/) or by calling (855) 411-CFPB (2372).

Employees who believe their company has violated federal consumer financial protection laws are encouraged to send information about what they know to whistleblower@cfpb.gov. To learn more about reporting potential industry misconduct, visit the CFPB's website (https://www.consumerfinance.gov/enforcement/information-industry-whistleblowers/).

---

*The Consumer Financial Protection Bureau is a 21st century agency that implements and enforces Federal consumer financial law and ensures that markets for consumer financial products are fair, transparent, and competitive. For more information, visit www.consumerfinance.gov.*

## Topics

- **ENFORCEMENT** (CFPB.GOV/ABOUT-US/NEWSROOM/?TOPICS=ENFORCEMENT)
- **CREDIT CARDS** (CFPB.GOV/ABOUT-US/NEWSROOM/?TOPICS=CREDIT-CARDS)

**PRESS INFORMATION**

If you want to republish the article or have questions about the content, please contact the press office.

Go to press resources page (cfpb.gov/about-us/newsroom/press-resources/)

8/28/25, 12:41 PM        CFPB Orders Apple and Goldman Sachs to Pay Over $89 Million for Apple Card Failures | Consumer Financial Protection Bureau

Case 25-11496    Doc 20-1    Filed 08/28/25    Entered 08/29/25 09:03:27    Desc
Exhibits    Page 16 of 204

🇺🇸 An official website of the United States government



# Apple Inc.

On October 23, 2024, the Bureau issued an order against Apple Inc. In December 2017 Apple and Goldman Sachs Bank USA (Goldman) entered an agreement to offer Apple Card, a credit card integrated with Apple software that offers both market-rate APRs and interest-free financing for qualifying Apple products. Goldman agreed to extend the credit offered through Apple Card and to investigate disputes submitted by consumers. Apple designed the consumer-facing interfaces that consumers used to manage Apple Card accounts on Apple devices, including the "Report an Issue" functionality in the "Wallet" application that allowed consumers to dispute Apple Card transactions using the "Messages" application, and developed the creative approach and design of Apple Card advertisements. Despite warnings to Goldman's board on August 16, 2019 that the Apple Card disputes system was "not fully ready" due to technological issues, Goldman and Apple introduced the Apple card four days later on August 20, 2019. The Bureau found that Apple engaged in unfair acts or practices by failing to send transaction disputes to Goldman in violation of the CFPA. Separately, in December 2019, Goldman and Apple introduced Apple Card Monthly Installments (ACMI), which allowed Apple Card users to finance the purchase of certain Apple devices directly from Apple through the payment of interest-free monthly installments. The Bureau found that Apple engaged in deceptive acts or practices by misleading consumers to expect that purchases of Apple devices would automatically be enrolled in ACMI. The Bureau also found that Apple engaged in abusive acts or practices through its material interference with consumers' understanding of ACMI enrollment by not even displaying the ACMI option in certain circumstances. The order requires Apple to pay a $25 million civil money penalty and to come into compliance with the law.

The Bureau separately took action against Goldman (https://content.consumerfinance.gov/enforcement/actions/goldman-sachs-bank-usa/) for its role in marketing, offering, and servicing the Apple Card. The order against Goldman requires it to pay $19.8 million in redress to consumers and a $45 million civil money penalty and to come into compliance with the law.

## RELATED DOCUMENTS

Consent Order ⬇ (https://files.consumerfinance.gov/f/documents/cfpb_apple-inc-consent-order_2024-10.pdf)

Stipulation ⬇ (https://files.consumerfinance.gov/f/documents/cfpb_apple-inc-stipulation_2024-10.pdf)

## PRESS RELEASE

CFPB Orders Apple and Goldman Sachs to Pay Over $89 Million for Apple Card Failures (cfpb.gov/about-us/newsroom/cfpb-orders-apple-and-goldman-sachs-to-pay-over-89-million-for-apple-card-failures/)

**CASE DOCKET**

View case filings (cfpb.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/apple-inc/)

---

**ACTION DETAILS**

## Forum

Administrative Proceeding

## Docket number

2024-CFPB-0012

## Initial filing date

OCT 23, 2024

## Status

Post Order/Post Judgment

See status definitions (cfpb.gov/enforcement/actions/enforcement-action-definitions/)

## Products

- CREDIT CARDS

---

**FURTHER READING**

💬 Blog

Back from the Dead: Zombie Second
Mortgages (cfpb.gov/about-us/blog/back-fro

m-the-dead-zombie-second-mortgages/)

JAN 17, 2025

📰 Newsroom

CFPB Reaches Settlement with FirstCash,
Inc. and Its Subsidiaries for Military Lending
Act Violations (cfpb.gov/about-us/newsroom/
cfpb-reaches-settlement-with-firstcash-inc-an
d-its-subsidiaries-for-military-lending-act-viola
tions/)

JUL 11, 2025

View more (cfpb.gov/activity-log/?topics=servicemembers&topics=credit-cards&topics=enforcement&topics=
add-on-products&topics=mortgages)

---

🇺🇸 An official website of the United States government



Consumer Financial
Protection Bureau

# Apple Inc.

**CASE DOCKET**

| Document | Date filed | Short description |
|---|---|---|
| 002 📄 (https://files.consumerfinance.gov/f/documents/cfpb_apple-inc-stipulation_2024-10.pdf) | 10/23/2024 | Stipulation (Filed by *Consumer Financial Protection Bureau*) |
| 001 📄 (https://files.consumerfinance.gov/f/documents/cfpb_apple-inc-consent-order_2024-10.pdf) | 10/23/2024 | Consent order (Filed by *Consumer Financial Protection Bureau*) |

**PROCEEDING DETAILS**

## Category

Administrative proceeding

## Institution type

Nonbank

## Status

Post-order/Post-judgment

## File number

2024-CFPB-0012

## Topics

## Date filed

Case 25-11496     Doc 20-1     Filed 08/28/25     Entered 08/29/25 09:03:27     Desc
Exhibits     Page 21 of 204

---

**CONTACT INFORMATION**

## Administrative adjudication docket clerk

Submit docket information for any ongoing administrative adjudication process, or request information related to the docket or the function of the CFPB's administrative law judge (ALJ).

✉ **EMAIL**
[docketclerk@consumerfinance.gov](mailto:docketclerk@consumerfinance.gov)

---

🇺🇸 An official website of the United States government

# UNITED STATES OF AMERICA
# CONSUMER FINANCIAL PROTECTION BUREAU

File No. 2024-CFPB-0012

|  | |
|---|---|
| In the matter of:<br><br>**APPLE INC.** | **STIPULATION AND CONSENT TO THE ISSUANCE OF A CONSENT ORDER** |

The Consumer Financial Protection Bureau (Bureau) intends to initiate an administrative proceeding against Apple Inc. (Respondent), under 12 U.S.C. §§ 5563 and 5565, for its credit card marketing and servicing in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531 and 5536.

Respondent, in the interest of compliance and resolution of the matter, and without admitting or denying any wrongdoing, consents to the issuance of a Consent Order substantially in the form of the one to which this Stipulation and Consent to the Issuance of a Consent Order is attached (Consent Order), and which is incorporated by reference.

In consideration of the above premises, Respondent agrees to the following:

## Jurisdiction

1.     The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

## Consent

2.     Respondent agrees to the issuance of the Consent Order, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

3.     Respondent agrees that the Consent Order will be deemed an "order issued with the consent of the person concerned" under 12 U.S.C. § 5563(b)(4) and agrees that the Consent Order will become a final order, effective upon its entry on the administrative docket, and will be fully enforceable by the Bureau under 12 U.S.C. §§ 5563(d)(1) and 5565.

4.     Respondent voluntarily enters into this Stipulation and Consent to the Issuance of a Consent Order (Stipulation).

5.     The Consent Order resolves only Respondent's potential liability for law violations that the Bureau asserted or might have asserted based on the practices described in Section V of the Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. Respondent acknowledges that no promise or

representation has been made by the Bureau or any employee, agent, or
representation of the Bureau, about any liability outside of this action that
may have arisen or may arise from the facts underlying this action or
immunity from any such liability.

6.  Respondent agrees that the facts described in Section V of the Consent

    Order will be taken as true and be given collateral estoppel effect, without

    further proof, in any proceeding before the Bureau to enforce the Consent

    Order, or in any subsequent civil litigation by the Bureau to enforce the

    Consent Order or its rights to any payment or monetary judgment under the

    Consent Order.

7.  The terms and provisions of this Stipulation and the Consent Order will be

    binding upon, and inure to the benefit of, the parties hereto and their

    successors in interest.

8.  Respondent agrees that the Bureau may present the Consent Order to the

    Bureau Director for signature and entry without further notice.

## Waivers

9.  Respondent, by consenting to this Stipulation, waives:

    a.   Any right to service of the Consent Order, and agrees that entry of the

         Consent Order on the administrative docket will constitute notice to

         Respondent of its terms and conditions;

b. Any objection to the jurisdiction of the Bureau, including, without limitation, under section 1053 of the CFPA, 12 U.S.C. § 5563;

c. The rights to all hearings under the statutory provisions under which the proceeding is to be or has been instituted; the filing of proposed findings of fact and conclusions of law; proceedings before, and a recommended decision by, a hearing officer; all post-hearing procedures; and any other procedural right available under section 1053 of the CFPA, 12 U.S.C. § 5563, or 12 C.F.R. part 1081;

d. The right to seek any administrative or judicial review of the Consent Order;

e. Any claim for fees, costs or expenses against the Bureau, or any of its agents or employees, and any other governmental entity, related in any way to this enforcement matter or the Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996; for these purposes, Respondent agrees that Respondent is not the prevailing party in this action because the parties have reached a good faith settlement;

f. Any other right to challenge or contest the validity of the Consent
Order;

g. Such provisions of the Bureau's rules or other requirements of law as
may be construed to prevent any Bureau employee from participating
in the preparation of, or advising the Director as to, any order,
opinion, finding of fact, or conclusion of law to be entered in
connection with this Stipulation or the Consent Order; and

h. Any right to claim bias or prejudgment by the Director based on the
consideration of or discussions concerning settlement of all or any
part of the proceeding.

APPLE INC. BY:


_____   __October 18, 2024__

Katherine Adams         Date
Senior Vice President & General Counsel
Apple Inc.

# UNITED STATES OF AMERICA
# CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING
File No. 2024-CFPB-0012

|  |  |
|---|---|
| In the Matter of:<br><br><br>**APPLE INC.** | **CONSENT ORDER** |

The Consumer Financial Protection Bureau (Bureau) has reviewed the credit card marketing and servicing of Apple Inc. (Apple or Respondent, as defined below) and has identified the following violations of law: (1) in connection with receiving and processing transaction disputes submitted by Apple Card users, Respondent engaged in unfair acts or practices by failing to send transaction disputes to Goldman Sachs Bank USA (Goldman), in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1)(B); and (2) in connection with marketing Apple Card and designing the checkout processes for the purchase of Apple devices from Apple, Respondent (a) engaged in deceptive acts or practices through representations that

misled consumers to expect that purchases of Apple devices made with Apple Card

would be automatically enrolled in Apple Card Monthly Installments (ACMI), in

violation of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531(a),

5536(a)(1)(B), and (b) engaged in abusive acts or practices through its material

interference with consumers' understanding of ACMI enrollment, in violation of

sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531(d)(1), 5536(a)(1)(B).

Under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau

issues this Consent Order (Consent Order).

# I.

## Overview

1.  In December 2017, Apple and Goldman entered an agreement to offer Apple

    Card, a credit card integrated with Apple's software that offers both market-

    rate APRs and interest-free financing for qualifying products.

2.  Pursuant to the agreement, Apple designed the consumer-facing interfaces

    that consumers use to manage Apple Card accounts on Apple devices,

    including a Report an Issue functionality in the Wallet application that

    allows consumers to dispute Apple Card transactions, and developed the

    creative approach and design of Apple Card advertisements. Apple and

    Goldman further agreed that Goldman would extend the credit offered

    through Apple Card and investigate disputes submitted by consumers.

3.    Apple and Goldman's agreement incentivized an earlier introduction of
Apple Card by giving Apple the right to seek $25 million in liquidated
damages for each 90-day delay caused by Goldman.

4.    Apple and Goldman introduced Apple Card on August 20, 2019.

5.    When consumers disputed Apple Card transactions via Apple's Report an
Issue functionality by completing an initial form, the disputes were initially
sent to Apple, which was supposed to send them to Goldman for
investigation. Beginning in June 2020, in tens of thousands of instances,
Apple failed to do so.

6.    In June 2020, Apple added a new "forms feature" to the Report an Issue
functionality, which asked consumers to provide additional information by
completing an additional form. However, when tens of thousands of
consumers did not complete the additional form, Apple failed to send the
disputes to Goldman, and neither Apple nor Goldman investigated these
disputes.

7.    Separately, in December 2019, Apple and Goldman introduced Apple Card
Monthly Installments (ACMI), which allows Apple Card users to finance the
purchase of certain Apple devices directly from Apple through the payment
of interest free monthly installments, similar to a "Buy Now, Pay Later"
(BNPL) product.

8.    Through representations in advertisements emphasizing the ease and

simplicity of Apple Card and through representations during the ACMI

enrollment process, Apple and Goldman misled consumers to expect that

purchases of Apple devices would automatically be enrolled in ACMI when

they were not. In addition, by not even displaying the ACMI option in

certain circumstances, Apple materially interfered with consumers'

understanding of ACMI.

## II.

### Jurisdiction

9.    The Bureau has jurisdiction over this matter under sections 1053 and 1055

of the CFPA, 12 U.S.C. §§ 5563 and 5565.

## III.

### Stipulation

10.    Respondent has executed a "Stipulation and Consent to the Issuance of a

Consent Order," dated October 18, 2024 (Stipulation), which is incorporated

by reference and is accepted by the Bureau. By this Stipulation, Respondent

has consented to the issuance of this Consent Order by the Bureau under

sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, without

admitting or denying any of the findings of fact or conclusions of law, except

that Respondent admits the facts necessary to establish the Bureau's

jurisdiction over Respondent and the subject matter of this action.

## IV.

## Definitions

11.    The following definitions apply to this Consent Order:

a.    "Adverse Report" means an adverse report to any person about a

consumer's credit standing, or report that an amount or account is

delinquent, because the consumer failed to pay the disputed amount or

related finance or other charges. 12 C.F.R. § 1026.13(d)(2).

b.    "Apple Card" means an Apple-branded credit card that operates on an

Apple software user interface through which Goldman Sachs Bank

USA, or another bank, extends credit.

c.    "Apple Card Monthly Installments (ACMI)" means an Apple Card

payment option allowing users to finance the purchase of eligible

Apple products through the payment of interest-free monthly

installments.

d.    "Billing Error" means: (1) a reflection on or with a periodic statement

of an extension of credit that is not made to the consumer or to a

person who has actual, implied, or apparent authority to use the

consumer's credit card or open-end credit plan; (2) a reflection on or

with a periodic statement of an extension of credit that is not

identified in accordance with the applicable provisions of Regulation

Z; or (3) a reflection on or with a periodic statement of an extension of

credit for property or services not accepted by the consumer or the

consumer's designee, or not delivered to the consumer or the

consumer's designee as agreed. 12 C.F.R. § 1026.13(a)(1)-(3).

e.   "Billing Error Notice" means a written notice from an Apple Card

user that: (1) is received by Respondent at the address disclosed in a

periodic statement, annual statement, or alternative summary

statement, as applicable, no later than 60 days after Goldman

transmitted the first periodic statement that reflects the alleged Billing

Error; (2) enables Respondent to identify the consumer's name and

account number; (3) to the extent possible, indicates the user's belief

and the reasons for the belief that a Billing Error exists, and the type,

date, and amount of the error; and (4) that the consumer does not

subsequently withdraw. 12 C.F.R. § 1026.13(b).

f.   "Board" means Respondent's duly elected and acting Board of

Directors.

g.   "Consumer Reporting Agency" (CRA) means any person which, for

monetary fees, dues, or on a cooperative nonprofit basis, regularly

6

engages in whole or in part in the practice of assembling or evaluating

consumer credit information or other information on consumers for

the purpose of furnishing consumer reports to third parties, and which

uses any means or facility of interstate commerce for the purpose of

preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

h.  "Effective Date" means the date on which the Consent Order is

entered on the administrative docket.

i.   "Enforcement Director" means the Assistant Director of the Office of

Enforcement for the Consumer Financial Protection Bureau, or their

delegate.

j.  "Executive Officers" means the General Counsel and Secretary,

Senior Vice President for Services, and Vice President of Internet

Services responsible for managing Apple Card for Respondent.

k.  "Goldman" means Goldman Sachs Bank USA.

l.  "Messages" means a software application designed by Apple through

which users can send messages to other consumers or businesses,

including Messages Disputes.

m.  "Messages Dispute" means a dispute concerning a transaction made

with Apple Card that a consumer submitted through Wallet and that is

passed to Messages through the Report an Issue functionality.

n.      "Related Consumer Action" means a private action by or on behalf of

one or more consumers or an enforcement action by another

governmental agency brought against Respondent based on

substantially the same facts as described in Section V of this Consent

Order.

o.      "Relevant Period" includes from January 1, 2019, to the Effective

Date.

p.      "Report an Issue" means a functionality designed by Respondent that

allows users to submit a dispute through Wallet concerning an Apple

Card transaction, including a Messages Dispute.

q.      "Respondent" means Apple Inc., and its successors and assigns.

r.      "Wallet" means an application designed by Respondent that allows

consumers to manage their use of Apple Card.

## V.

## Bureau Findings and Conclusions

The Bureau finds the following:

12.     Respondent is a multinational technology company headquartered in

Cupertino, California. Respondent provides several consumer financial

products, including Apple Card.

13.    Respondent is a "service provider" under the CFPA because it "provides a
material service" to Goldman "in connection with the offering or provision"
of Apple Card, and "participates in designing, operating, or maintaining"
Apple Card. 12 U.S.C. § 5481(26)(A), (A)(i).

**Findings and Conclusions as to Respondent's Failure to Send Messages
Disputes to Goldman**

14.    Respondent designed and operated the Report an Issue functionality, which
provided a way for consumers to submit Apple Card disputes on Apple
devices using the Wallet and Messages applications.

15.    When Apple Card users submitted disputes, including disputes submitted
using the Report an Issue functionality, Goldman and Respondent
contractually agreed that Goldman would investigate the disputes.

16.    On Apple devices, Apple Card users can select Apple Card transactions and
click "Report an Issue." After completing an initial form by selecting issue
types and then selecting "Done," the Messages application on consumers'
devices opens and generates a prefilled message based on the issue selected.
After consumers press send, Respondent designed the Report an Issue
functionality to connect them to Goldman.

17.    From August 2019 until at least May 24, 2021, the "Billing Rights
Summary" in the Apple Card Customer Agreement provided consumers
with a physical mailing address to contact Goldman and stated, "You may

also contact us using Messages." From August 2019 until at least July 31,

2021, Apple Card monthly statements also provided consumers with the

same information.

18.   As a result, from August 2019 through at least July 31, 2021, Messages

Disputes could qualify as Billing Error Notices.

19.   On June 25, 2020, Respondent added a new "forms feature" to the Report an

Issue functionality, which Respondent had proposed and designed. For

consumers who selected certain issue types and then sent the initial message,

the "forms feature" sends consumers a link to an additional form in

Messages. From when Respondent introduced this functionality through at

least July 31, 2021, the message above this link read: "Ok. We'll need a little

more information about this transaction."

20.   Through at least July 31, 2021, when consumers did not complete and

submit the additional form, Respondent failed to send tens of thousands of

Billing Error Notices to Goldman for resolution. In this circumstance,

neither Respondent nor Goldman attempted to further contact the consumer

about the Billing Error Notice or conducted any investigation of the Billing

Error Notice.

21.   Respondent's failure to send Billing Error Notices through the Report an

Issue functionality to Goldman caused substantial injuries to consumers,

including to consumers who: (1) did not receive credits for disputed transactions for an extended period; and (2) were the subject of Adverse Reports to CRAs by Goldman concerning disputed amounts before Goldman or Respondent reviewed the Billing Error Notices at issue, which may have affected consumers' creditworthiness.

22. These injuries were not reasonably avoidable because neither Respondent nor Goldman took steps necessary to make consumers aware that, if consumers did not complete the additional form, the Billing Error Notices at issue would not be investigated.

23. Respondent's failure to send Billing Error Notices to Goldman for resolution did not create any countervailing benefits to consumers or to competition.

24. Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B).

25. By failing to send Billing Error Notices to Goldman for resolution, Apple engaged in unfair acts or practices. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**Findings and Conclusions as to Respondent's Representations about ACMI Enrollment**

26. Respondent designed the advertisements for Apple Card Monthly Installments, or ACMI, and the checkout process for enrolling purchases of Apple devices on Respondent's website in ACMI.

27.    Respondent's advertisements for ACMI emphasized the ease and simplicity
of Apple Card and the ACMI enrollment process. For example, iPhone users
who opened their Wallet application received an advertisement that
described ACMI enrollment as follows: "[p]urchase a new iPhone from
Apple with interest-free monthly payments." ACMI advertisements also told
consumers "[i]f you have Apple Card already, there's no additional
application" for ACMI, and that if consumers did not have an Apple Card,
they could "[e]asily apply right at checkout."

28.    Through at least July 2020, the checkout process on Respondent's website
presented consumers purchasing iPhones with an option to "Pay in full" or
"Pay monthly." The checkout process did not explain that "Pay monthly"
referred to ACMI, or provide further details about ACMI, until after
consumers selected this option.

29.    In addition, Respondent's customer service representatives informed some
consumers that iPhones purchased with an Apple Card would be
automatically enrolled in ACMI.

30.    In fact, purchases of Apple devices with Apple Card were not automatically
enrolled in ACMI. Instead, consumers had to opt into ACMI during the
checkout process for purchases made online and in Apple stores.

31.   Consumers submitted tens of thousands of complaints related to ACMI
enrollment.

32.   Thousands of consumers complained that they were charged interest on
purchases of Apple devices with Apple Card that they believed would be
automatically enrolled in ACMI.

33.   From December 2019 through at least July 2020, Respondent's
representations in Apple Card advertisements, in Respondent's checkout
process for enrolling online purchases in monthly installments, and inside
some of Respondent's physical stores, misled consumers to expect that
purchases of Apple devices made with Apple Card would be automatically
enrolled in ACMI.

34.   Until at least August 2020, after consumers had already purchased Apple
devices without enrolling in ACMI, Apple and Goldman required consumers
to return the devices and repurchase before they could be enrolled in ACMI.

35.   Consumers' belief that their purchases of Apple devices with Apple Card
would be automatically enrolled in ACMI was reasonable under the
circumstances.

36.   Respondent's representations were material because they related to the costs
associated with purchasing an Apple device from Respondent and were
likely to mislead consumers acting reasonably.

37.  Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive"

acts or practices. 12 U.S.C. § 5536(a)(1)(B).

38.  By making material representations that reasonably misled consumers about

enrollment in ACMI, Respondent engaged in deceptive acts or practices. 12

U.S.C. §§ 5531(a), 5536(a)(1)(B).

**Findings and Conclusions as to Respondent's Material Interference with
Consumer's Understanding of ACMI Enrollment**

39.  Until at least January 2020, if consumers did not select a phone plan carrier

during the checkout process for purchasing Apple devices from

Respondent's website, Respondent did not display an option to enroll in

ACMI.

40.  Until at least July 2020, when consumers used a browser other than

Respondent's "Safari" or used "Safari" in private mode during the checkout

process for purchasing Apple devices from Respondent's website,

Respondent did not display an option to enroll in ACMI.

41.  From December 2019 through at least July 2020, Respondent interfered with

consumers' ability to understand that they were required to affirmatively opt

into ACMI when purchasing Apple devices from Respondent's websites or

mobile applications by: (1) not displaying the ACMI option on a browser

other than "Safari" or on "Safari" in private mode; and (2) making

representations in advertisements and the online checkout process for ACMI

14

that misled consumers to expect that purchases of devices designed by
Respondent made with Apple Card would be automatically enrolled in
ACMI.

42.   This interference was material because it did, in fact, impede consumers'
actual understanding of whether ACMI enrollment occurred automatically,
as indicated by the complaints Respondent received from consumers who
believed that their purchases of Apple devices with Apple Card would be
enrolled automatically in ACMI.

43.   Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive"
acts or practices. 12 U.S.C. § 5536(a)(1)(B).

44.   By materially interfering with consumers' understanding about their
enrollment in ACMI, Respondent violated the CFPA's prohibition on
abusive acts or practices. 12 U.S.C. §§ 5531(a), (d)(1), 5536(a)(1)(B).

## VI.

### Conduct Provisions

### Prohibited Conduct

**IT IS ORDERED**, under sections 1053 and 1055 of the CFPA, that:

45.   Respondent and its officers, agents, servants, employees, and attorneys, and
all other persons in active concert or participation with them who receive
actual notice of this Consent Order, whether acting directly or indirectly, in

connection with marketing or servicing Apple Card, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531 and 5536, and is prohibited from:

a.   Failing to send Billing Error Notices and Messages Disputes to Goldman or another entity that is supposed to investigate Billing Error Notices and Messages Disputes;

b.   Misrepresenting that purchases of Apple devices made with Apple Card are automatically enrolled in ACMI; and

c.   Interfering with consumers' ability to understand that they are required to affirmatively opt into ACMI when purchasing ACMI eligible Apple devices from Respondent's websites or mobile applications by: (1) not displaying the ACMI option, including on a browser other than "Safari" or a "Safari" browser in private mode when that browser supports purchasing ACMI eligible Apple devices from Respondent's websites; or (2) misrepresenting that purchases of Apple devices made with Apple Card would be automatically enrolled in ACMI.

## Affirmative Requirements

**IT IS ORDERED**, under sections 1053 and 1055 of the CFPA, that:

46.     Respondent must take the following affirmative actions in connection with

the marketing and servicing of Apple Card:

a.      Establish, implement, and maintain policies and procedures to ensure

Respondent's compliance with sections 1031 and 1036 of the CFPA,

12 U.S.C. §§ 5531 and 5536;

b.      Establish, implement, and maintain testing to ensure Respondent's

compliance with sections 1031 and 1036 of the CFPA, 12 U.S.C. §§

5531 and 5536 prior to implementing a material change to the user

experience for ACMI or to the manner by which Respondent handles

Messages Disputes;

c.      Establish, implement, and maintain policies and procedures to ensure

that when consumers submit a Messages Dispute, Respondent sends it

to Goldman, or another entity that is supposed to investigate Messages

Disputes; and

d.      Display a prominent disclosure in iPhone buy-flows on the Apple

online store explaining that a cellular carrier selection is required to

obtain financing with ACMI if this remains an ACMI eligibility

requirement.

# VII.

## Compliance Plan

**IT IS FURTHER ORDERED** that:

47.     Within 60 days of the Effective Date, Respondent must create and

implement a comprehensive compliance plan designed to ensure that

Respondent's marketing and servicing of Apple Card complies with all

applicable laws that the Bureau enforces, including Federal consumer

financial laws, and the terms of this Consent Order (Compliance Plan). The

Compliance Plan must include, at a minimum:

a.      Detailed steps for addressing each action required by this Consent

Order;

b.      A mechanism to ensure that the Board is kept apprised of the status of

compliance actions; and

c.      Specific timeframes and deadlines for implementation of the steps

described above.

Respondent will provide the Compliance Plan to the Bureau upon request.

# VIII.

## Role of the Board and Executives

**IT IS FURTHER ORDERED** that:

48.    Respondent's Board has the ultimate responsibility for ensuring that
Respondent complies with this Consent Order.

49.    Respondent's Executive Officers and the Audit and Finance Committee of
Respondent's Board must review all plans and reports required by this
Consent Order, and any submissions to the Bureau prior to such submission.

50.    One year after the Effective Date Respondent must submit to the
Enforcement Director an accurate written compliance progress report
(Compliance Report) that has been approved by the Board, the accuracy of
which is sworn to under penalty of perjury, and which, at a minimum:

a.    Describes the steps that Respondent's Board and Executive Officers
have taken to reasonably assess whether Respondent is complying
with the Compliance Plan, and each applicable paragraph and
subparagraph of the Consent Order;

b.    Describes in detail whether and how Respondent has complied with
the Compliance Plan, and each applicable paragraph and
subparagraph of the Consent Order, including the manner of
verification of such compliance and any corrective actions taken to
remedy potential non-compliance with the applicable requirement,
paragraph, or subparagraph; and

    c.      Attaches a copy of each Order Acknowledgment obtained under Section XI unless previously submitted to the Bureau.

51.    Respondent's Board and Executive Officers must:

    a.      Authorize whatever actions are necessary for Respondent to assess whether Respondent is complying with the Compliance Plan, and each applicable paragraph and subparagraph of the Consent Order;

    b.      Authorize whatever actions, including corrective actions, are necessary for Respondent to fully comply with the Compliance Plan, and each applicable paragraph and subparagraph of the Consent Order; and

    c.      Require timely reporting by management to Respondent's Board and Executive Officers on the status of compliance obligations.

## MONETARY PROVISIONS

## IX.

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

52.    Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section V of this Consent Order, Respondent must pay a civil money penalty of $25 million to the Bureau.

53.   Within 10 days of the Effective Date, Respondent must pay the civil money
      penalty by wire transfer to the Bureau or to the Bureau's agent in
      compliance with the Bureau's wiring instructions.

54.   The civil money penalty paid under this Consent Order will be deposited in
      the Civil Penalty Fund of the Bureau as required by section 1017(d) of the
      CFPA, 12 U.S.C. § 5497(d).

55.   Respondent, for all purposes, must treat the civil money penalty paid under
      this Consent Order as a penalty paid to the government. Regardless of how
      the Bureau ultimately uses those funds, Respondent may not:

      a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax
           benefit for any civil money penalty paid under this Consent Order; or

      b.   Seek or accept, directly or indirectly, reimbursement or
           indemnification from any source, including but not limited to payment
           made under any insurance policy, with regard to any civil money
           penalty paid under this Consent Order.

56.   To preserve the deterrent effect of the civil money penalty in any Related
      Consumer Action, Respondent may not argue that Respondent is entitled to,
      nor may Respondent benefit by, any offset or reduction of any compensatory
      monetary remedies imposed in the Related Consumer Action because of the
      civil money penalty paid in this action or because of any payment that the

Bureau makes from the Civil Penalty Fund. If the court in any Related

Consumer Action offsets or otherwise reduces the amount of compensatory

monetary remedies imposed against Respondent based on the civil money

penalty paid in this action or based on any payment that the Bureau makes

from the Civil Penalty Fund, Respondent must, within 30 days after entry of

a final order granting such offset or reduction, notify the Bureau, and pay the

amount of the offset or reduction to the U.S. Treasury. Such a payment will

not be considered an additional civil money penalty and will not change the

amount of the civil money penalty imposed in this action.

57.    In the event of any default on Respondent's obligations to make payment

under this Consent Order, interest, computed under 28 U.S.C. § 1961, as

amended, will accrue on any outstanding amounts not paid from the date of

default to the date of payment, and will immediately become due and

payable.

58.    Respondent must relinquish all dominion, control, and title to the funds paid

to the fullest extent permitted by law and no part of the funds may be

returned to Respondent.

59.    Respondent acknowledges that its Taxpayer Identification Number (Social

Security Number or Employer Identification Number), which Respondent

previously submitted to the Bureau, may be used for collecting and reporting

on any delinquent amount arising out of this Order, in accordance with 31

U.S.C. § 7701.

60.    Within 30 days of the entry of a final judgment, consent order, or settlement

in a Related Consumer Action, Respondent must notify the Enforcement

Director of the final judgment, consent order, or settlement in writing. That

notification must indicate the amount of redress, if any, that Respondent paid

or is required to pay to consumers and describe the consumers or classes of

consumers to whom that redress has been or will be paid.

## COMPLIANCE PROVISIONS

## X.

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

61.    Respondent must notify the Bureau of any development that may affect

compliance obligations arising under this Consent Order, including but not

limited to a dissolution, assignment, sale, merger, or other action that would

result in the emergence of a successor company; the creation or dissolution

of a subsidiary, parent, or affiliate that engages in any acts or practices

subject to this Consent Order; the filing of any bankruptcy or insolvency

proceeding by or against Respondent; or a change in Respondent's name or

address. Respondent must provide this notice, if practicable, at least 30 days

before the development, but in any case no later than 14 days after the development.

62.     Within 7 days of the Effective Date, Respondent must:

   a.     Designate at least one telephone number and email, physical, and postal addresses as points of contact that the Bureau may use to communicate with Respondent;

   b.     Identify all businesses related to Apple Card for which Respondent is the majority owner, or that Respondent directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and website addresses; and

   c.     Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

63.     Respondent must report any change in the information required to be submitted under Paragraph 62 at least 14 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

## XI.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

64.   Within 7 days of the Effective Date, Respondent must submit to the

Enforcement Director an acknowledgment of receipt of this Consent Order,

sworn under penalty of perjury.

65.   Within 30 days of the Effective Date, Respondent must deliver a copy of this

Consent Order to each of its board members and Executive Officers, as well

as to any managers, employees, service providers, or other agents and

representatives who have responsibilities related to the subject matter of the

Consent Order.

66.   For 5 years from the Effective Date, Respondent must deliver a copy of this

Consent Order to any business entity resulting from any change in structure

referred to in Section X, any future board members and Executive Officers,

as well as to any managers, employees, service providers, or other agents

and representatives who will have responsibilities related to the subject

matter of the Consent Order before they assume their responsibilities.

67.   Respondent must secure a signed and dated statement acknowledging receipt

of a copy of this Consent Order, within 30 days of delivery, from all persons

receiving a copy of this Consent Order under this Section.

68.   Ninety days from the Effective Date, Respondent must submit to the Bureau

a list of all persons and their titles to whom this Consent Order has been

delivered under the Section of this Order titled "Order Distribution and

Acknowledgment" and a copy of all signed and dated statements acknowledging receipt of this Consent Order under Paragraph 67.

## XII.

## Recordkeeping

**IT IS FURTHER ORDERED** that:

69. Respondent must create and retain the following business records:

    a.  All documents and records necessary to demonstrate full compliance with the Compliance Plan and each provision of this Consent Order, including all submissions to the Bureau;

    b.  Copies of all Respondent's sales scripts; training materials; policies and procedures; testing materials; advertisements; websites; and other marketing materials related to Apple Card, including any such materials prepared or approved by Respondent for use by a third party on Respondent's behalf;

    c.  Documents sufficient to demonstrate the experience of consumers on each materially different version of an advertisement on each website and mobile application on which Respondent, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, affiliate, or other entity, advertises, promotes, markets, offers for sale, sells, or provides

Apple Card; and

    d.    All consumer complaints and refund requests related to Respondent's marketing and servicing of Apple Card (whether received directly from consumers through channels designed for such purposes or indirectly through the Better Business Bureau or a federal or state government agency), and any responses to those complaints or requests.

70.    All documents and records must be maintained in their original electronic format. Data should be maintained in such a way that access, retrieval, auditing and production are not hindered.

71.    Respondent must make the documents identified in Paragraph 69 available to the Bureau upon the Bureau's request.

## XIII.

### Notices

**IT IS FURTHER ORDERED** that:

72.    Unless otherwise directed in writing by the Bureau, Respondent must provide all submissions, requests, communications, or other documents relating to this Consent Order in writing, with the subject line, "*In re* Apple Inc., File No. 2024-CFPB-0012," and send them to the following email: Enforcement_Compliance@cfpb.gov addressed as follows:

ATTN: Enforcement Director
Consumer Financial Protection Bureau
Office of Enforcement

## XIV.

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

73.   Respondent must cooperate fully to help the Bureau determine the identity

and contact information of, and the amount of injury sustained by, each

consumer who submitted a Messages Dispute that Apple failed to send to

Goldman through the Report an Issue functionality between June 25, 2020

and July 31, 2021. Respondent must provide such information in its or its

agents' possession or control within 14 days of receiving a written request

from the Bureau.

74.   Within 30 days of the Effective Date, Respondent must complete all steps

necessary to register for the Bureau's Company Portal, including providing

the information required at www.consumerfinance.gov/company-signup and

in the Bureau's Company Portal Boarding Form (OMB No. 3170-0054).

Respondent, in connection with responding to consumer complaints and

inquiries on the Company Portal, must comply with the timely response

requirements set forth in section 1034(b)(1)-(3) of the CFPA, 12 U.S.C. §

5534(b).

## XV.

## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

75.  Within 14 days of receipt of a written request from the Bureau, Respondent

must submit additional Compliance Reports or other requested information,

including sworn testimony or documents, which must be made under penalty

of perjury regarding: (a) this matter, (b) anything related to or associated

with the conduct described in Section V, or (c) compliance with the Consent

Order.

76.  Respondent must permit Bureau representatives to interview any employee

or other person affiliated with Respondent who has agreed to such an

interview regarding: (a) this matter; (b) anything related to or associated

with the conduct described in Section V; or (c) compliance with the Consent

Order. The person interviewed may have counsel present.

77.  Nothing in this Consent Order will limit the Bureau's lawful use of civil

investigative demands under 12 C.F.R. § 1080.6 or other compulsory

process.

## XVI.

## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

78.   Respondent may seek a modification to non-material requirements of this

Consent Order (e.g., reasonable extensions of time and changes to reporting

requirements) by submitting a written request to the Enforcement Director.

79.   The Enforcement Director may, in their discretion, modify any non-material

requirements of this Consent Order (e.g., reasonable extensions of time and

changes to reporting requirements) if they determine good cause justifies the

modification. Any such modification by the Enforcement Director must be

in writing.

## XVII.

## ADMINISTRATIVE PROVISIONS

**IT IS FURTHER ORDERED** that:

80.   The provisions of this Consent Order do not bar, estop, or otherwise prevent

the Bureau from taking any other action against Respondent, except as

described in Paragraph 81. Further, for the avoidance of doubt, the

provisions of this Consent Order do not bar, estop, or otherwise prevent any

other person or governmental agency from taking any action against

Respondent.

81.     The Bureau releases and discharges Respondent from all potential liability
        for law violations that the Bureau has or might have asserted based on the
        practices described in Section V of this Consent Order, to the extent such
        practices occurred before the Effective Date and the Bureau knows about
        them as of the Effective Date. The Bureau may use the practices described in
        this Consent Order in future enforcement actions against Respondent and its
        affiliates, including, without limitation, to establish a pattern or practice of
        violations or the continuation of a pattern or practice of violations or to
        calculate the amount of any penalty. This release does not preclude or affect
        any right of the Bureau to determine and ensure compliance with the
        Consent Order, or to seek penalties for any violations of the Consent Order.

82.     This Consent Order is intended to be, and will be construed as, a final
        Consent Order issued under section 1053 of the CFPA, 12 U.S.C. § 5563,
        and expressly does not form, and may not be construed to form, a contract
        binding the Bureau or the United States.

83.     This Consent Order will terminate on the later of 5 years from the Effective
        Date or 5 years from the most recent date that the Bureau initiates an action
        alleging any violation of the Consent Order by Respondent if such action is
        initiated within 5 years of the Effective Date. If such action is dismissed or
        the relevant adjudicative body rules that Respondent did not violate any

31

provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

84.  Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

85.  Should Respondent seek to transfer or assign all or part of its operations that are subject to this Consent Order, Respondent must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Consent Order.

86.  The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

87.  This Consent Order and the accompanying Stipulation contain the complete

agreement between the parties. The parties have made no promises,

representations, or warranties other than what is contained in this Consent

Order and the accompanying Stipulation. This Consent Order and the

accompanying Stipulation supersede any prior oral or written

communications, discussions, or understandings.

88.  Nothing in this Consent Order or the accompanying Stipulation may be

construed as allowing Respondent, its Board, its Executive Officers, its

officers, or employees to violate any law, rule, or regulation.

**IT IS SO ORDERED**, this 23rd day of October, 2024.

*Rohit Chopra*
_____
Rohit Chopra
Director
Consumer Financial Protection Bureau

Debtor's Motion For Order
To Show Cause and Sanctions
Against Creditor Apple Inc. (21011446)

Chapter 7 Case No: 25–11496

# Exhibit D

August 28 2025

# CFPB Whistleblower Tip: Possible Fraudulent Statements Made by Apple & Goldman Sachs re: Apple Card Enforcement Action

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | whistleblower@cfpb.gov |
| Date | Wednesday, July 23rd, 2025 at 1:03 PM |

Hello,

I'm a prior Apple employee (worked as a senior engineering program manager for over six years) and I was coerced to participate in a number of Apple's "beta" / "seed" programs where they used their employees a guinea pigs to test new products and services prior to rolling them out to the public. I have a number of complaints about this generally, some of which (non-finance) are being adjudicated by the NLRB and in civil court.

However, I also just declared Chapter 7 bankruptcy and it came to my attention that 1) my Apple Card was part of a "seed" program started April 2019, three months prior to the official launch and 2) CFPB's complaints against Apple and Goldman Sachs over Apple launching the card too early only reflects the public launch date of August 2019, not the employee launch dates.

Prior CFPB action: *CFPB Orders Apple and Goldman Sachs to Pay Over $89 Million for Apple Card Failures*
https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-apple-and-goldman-sachs-to-pay-over-89-million-for-apple-card-failures/
*"In August 2019, Apple introduced Apple Card in partnership with Goldman Sachs Bank...Apple and Goldman's agreement incentivized an earlier introduction of Apple Card by giving Apple the right to impose a $25 million penalty for each 90-day delay caused by Goldman. Four days before launch, the Goldman Sachs board of directors learned that critical Apple Card disputes systems were "not fully ready" due to technological issues, but the companies proceeded anyway."*

Worse, Apple's lawyers have been refusing to provide me copies of any of the agreements (NDAs, ICFs, etc) I signed for any of the beta programs, even during civil discovery. They claim these agreements are so secret, & they cannot even give the signee a copy. (This seems illegal generally, but especially for financial agreements). Note: of the agreements I do still have copies of (for example one about a product safety issue where I was physically harmed by an Apple product), these agreements are framed as "deed polls", claim the existence of the agreement and program are confidential, and contain dozens of terms that appear facially unlawful.

I posted on Twitter a few days ago about this Apple Card beta program and Goldman Sachs quickly jumped on it despite not being tagged (https://x.com/gsbanksupport/status/1947321165430555090).

The Apple Card is part of my bankruptcy proceeding with a meeting of creditors scheduled for 8/21. I already notified the Trustee that this is likely an improper debt due to the extra-early start date, prior CFPB action, and confidentiality declarations. Further, my Apple Card is maxed out on WestLaw subscription fees for the civil litigation, a clear litigation cost due to Apple's retaliation and obstruction.

I'm attaching copies of my Apple Card statements from April 2019-August 2019, & a copy of the bankruptcy case schedule.

My civil litigation with Apple over their dumping of toxic waste onto a public park, children's playground, & large apartment complex, and then firing me to cover it up, is at: *Ashley M. Gjovik v. Apple Inc.*, 23-cv-04597-EMC, N.D. Cal., 2023-. In the civil case, Apple's claiming it lawfully fired me for disclosing a secret employee program where they hacked employee photos to secretly capture photos, videos, biometrics, and GPS of anyone near the front of the phone, without notice or consent, and used those secret data/photos for product development (ie the face "Gobbler" app). They said they fired me for complaining about it in a news article where multiple Apple employees complained about various ways Apple was violating their privacy. Apple's position is that the employees want their privacy violated, and anything Apple does to violate their privacy is trade secret.

I will cooperate with any investigation by CFPB into this Apple Card matter, and can share more information and documents if requested.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**
**(415) 964-6272**

Sent with [Proton Mail](#) secure email.

---

**2.22 MB**   6 files attached

| | |
|---|---|
| Apple Card Statement - April 2019.pdf 368.28 KB | Apple Card Statement - May 2019.pdf 436.60 KB |
| Apple Card Statement - July 2019.pdf 477.14 KB | Apple Card Statement - August 2019.pdf 478.14 KB |
| Apple Card Statement - June 2019.pdf 470.82 KB | Bankr.D.Mass._25-11496_5_0.pdf 37.53 KB |

# CFPB Whistle Blower - AutoReply

| From | CFPB_WHISTLEBLOWER <CFPB_WHISTLEBLOWER@cfpb.gov> |
|------|--------------------------------------------------|
| To   | Ashley Gjovik<ashleymgjovik@protonmail.com>      |
| Date | Wednesday, July 23rd, 2025 at 1:04 PM            |

Thank you for contacting CFPB. The information you provided may help inform CFPB's priorities and investigations.

Please be aware that we cannot take in privileged information, which is any information that you obtained through your role as an attorney for the company you are reporting.

If you contacted CFPB for assistance resolving an issue that affected you personally, please submit your complaint to our Consumer Response team at (855) 411-CFPB (2372) or http://www.consumerfinance.gov/complaint/.

If you perform work related to a bank or other consumer financial service provider and you report or object to a possible violation of consumer financial protection laws, you may be protected from employment retaliation. You have 180 days from the date of retaliation to submit a complaint to the Department of Labor. For further details, visit http://www.whistleblowers.gov/acts/dfa_1057.html.

Regards,

Consumer Financial Protection Bureau

DEBTOR'S MOTION FOR ORDER
TO SHOW CAUSE AND SANCTIONS
AGAINST CREDITOR APPLE INC. (21011446)

CHAPTER 7 CASE NO: 25–11496

# EXHIBIT E

AUGUST 28 2025

## Re: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

| | |
|---|---|
| From | Mark G. DeGiacomo <mdegiacomo@harrisbeachmurtha.com> |
| To | Perry, Jessica R.<jperry@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Ashley Gjovik<ashleymgjovik@protonmail.com>, Riechert, Melinda<mriechert@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Perry, Jessica R.<jperry@orrick.com> |
| Date | Monday, August 25th, 2025 at 10:54 AM |

I have no objection to the administrative motion to shorten time and I can confirm that I agree with the entry of a stay pending my decision on how to proceed.


Sent from my iPhone


**Mark G. DeGiacomo** | Partner
Direct: 617.457.4039 | Email: mdegiacomo@harrisbeachmurtha.com



**HARRISBEACHMURTHA.COM**

Boston Office | 33 Arch Street, 12th Floor, Boston, MA 02110-2320
617.457.4000 | Fax: 617.482.3868

 

> On Aug 25, 2025, at 10:27 AM, Perry, Jessica R. <jperry@orrick.com> wrote:

Mr. DeGiacomo and Ms. Gjovik:

I write to advise that Apple intends to file a motion to stay today in N.D. Cal. Case No. 23-cv-04597 – a prepetition litigation brought by Ms. Gjovik, which is now property of her Chapter 7 bankruptcy estate (*see In re Bronner,* 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992)) – to allow the Trustee time to determine how to proceed in this action as the real party in interest.

We will also be filing an administrative motion to have the motion to stay be heard on shortened time, and will request that the hearing on the motion to stay be held next Thursday, September 4, 2025 at 1:30 p.m. PT (with any opposition due by August 29 and any reply due by September 2).

Although we believe only the Trustee's agreement/stipulation to the motion to shorten time is necessary (given that the Chapter 7 bankruptcy estate, not Ms. Gjovik, is the lone party with standing at present to continue the case), we would appreciate hearing from each of you whether you will agree/stipulate to the administrative motion to shorten time.  We would also appreciate confirmation that the Trustee agrees that entry of a stay would be appropriate in this circumstance.

Thank you,
Jessica

**Jessica Perry**
Partner

Orrick             <image001.jpg>
Silicon Valley

T +1-650-614-7350

jperry@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**3.90 KB**    2 files attached

image001.jpg 909 bytes    image002.png 3.01 KB

# RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

| | |
|---|---|
| From | Perry, Jessica R. <jperry@orrick.com> |
| To | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com> |
| CC | Mark G. DeGiacomo<mdegiacomo@harrisbeachmurtha.com>, Ashley Gjovik<ashleymgjovik@protonmail.com>, Riechert, Melinda<mriechert@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Monday, August 25th, 2025 at 9:20 PM |

Ashley,


We object to your attempt to distort the record by intersplicing emails here that are not sequential in a chain.


We also disagree with your characterization and misrepresentations of our prior communications and our filing today.


Regards,

Jessica

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 4:47 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings


[EXTERNAL]

(re-adding separate 7:10 and 7:36 PM emails to the chain below)

Counselors,

It appears that I sent my last email as you already filed nine separate documents (55 pages) to the docket at 7:07-7:10 PM ET, which despite what you said in your earlier email, seem to focus primarily around making false allegations against me of discovery misconduct, including and especially around our ongoing discovery disputes where I had been trying to meet with you in good faith prior to having to escalate the matters to the court -- and our most recent communications, as noted, simply stated you wouldn't engage with me further. In fact, in your "motions to stay" you even highlight my pending request for leave to file a motion for sanctions, as misconduct by me that has harmed Apple. That's not what you said these motions were about, and even if you did, you know that's improper.

You now claim that my FRCP discovery requests, my proper and good faith objections, my attempts to meet/confer, and even my requests to partner with Apple to write joint letters were done in bad faith, were misconduct, and were somehow abusive and prejudicial to Apple. This appears to be your primary justification for these motions to stay, and in addition to your prior misinterpretation of bankruptcy law, this also has no basis for these motions. However, what you've now done is absolutely outrageous and completely unacceptable, and I'm speechless at how to even respond to this conduct.

Instead of filing a motion to stay and administrative motion asking to make it an emergency stay, you have preempted my ability to properly escalate discovery disputes to our discovery judge. Instead you raised dozens of issues directly to the U.S. Judge while making false statements against me, baselessly accusing me of misconduct, forcing me on the defensive, and further, and most egregious and completely out of line, is you are forcing me to respond to ALL OF THIS by August 29 2025, knowing this week I'm working on my EPA Citizen Complaint to be filed on 9/2. You know, now I have to spend all week responding to you essentially filing what consists of probably 20 separate motions at once, with a four day deadline for my response. This is honestly one of the craziest and most inappropriate things you've done in this litigation.

I honestly don't even know how I could possibly respond to all of those allegations against me, all of the misstatements, and also put forward my own escalations as I had previously planned to, AND ALSO respond to the Motion to Stay/Request for Emergency Motion that you had originally said this was about, and which I already said I did not have time to oppose under the schedule you proposed, and asked you repeatedly to meet/confer with me in good faith. Instead you've filed what's essentially a nuclear warhead attack on this litigation and on me, including extensive smears and false allegations.

I'm still sorting through the pages and pages you just filed, but I'll also note is appears you are justifying Ryan Booms presence at my 341 meeting as gathering intelligence you then plan to use as part of the basis for your emergency motion to stay, that is also concurrently based on your false allegations of misconduct by me, and which basically, based on what you alleged, asks the court to sanction me and dismiss the entire lawsuit, which is just like mindbogglingly evil and inappropriate.

There's literally no way I can even possible begin to properly oppose the hundreds of things you just queued up in these motions, that have a material impact on my litigation and reputation, and put me at risk for sanctions from the

court, in literally four days. Again, this is a blitzkrieg attack that could tank this entire litigation, without even telling me or the Trustee what you actually had planned, and doing this when you know my Trustee is on vacation and I cannot even consult with him about how to deal with this -- since what you've done isn't to ask for stay -- what you've done is attempted to get the entire case dismissed based on false allegations of misconduct by me. This would be outrageous for me to have to respond to under a normal timeline, let alone four days.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, August 25th, 2025 at 7:36 PM, Perry, Jessica R. <[jperry@orrick.com](#)> wrote:

> Ashley,
>
> You are incorrect. I emailed you back prior to you sending this email. Please stop trying to create a false record.
>
> Our motion is on file.
>
> Thanks,
> Jessica

On Monday, August 25th, 2025 at 7:10 PM, Ashley M. Gjøvik <[ashleymgjovik@protonmail.com](#)> wrote:

> Apple counsel,
>
> As it is now 7pm ET / 4pm PT, and I have received no response from you to any of my emails today, I write you again, to urge you to meet and confer with me about these motions prior to and instead of your prior stated plan to

file your motions by end of day today under a unilateral declaration that I no longer have any authority or agency in my own lawsuit against you.

I propose we schedule a Zoom video conference meet and confer for later this week to discuss your concerns (whatever they may be). Perhaps we can reach a compromise regarding any legitimate issues or concerns. I can make myself available to meet with you on a 30min-1hr video call this Thursday or Friday (8/28-8/29) anytime between 9am-3pm PT (12pm-5pm ET).

Please let me know. Let's please talk through whatever this is about in good faith.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

—

Ashley M. Gjøvik

BS, JD, PMP

Sent with Proton Mail secure email.

On Monday, August 25th, 2025 at 7:03 PM, Perry, Jessica R. <jperry@orrick.com> wrote:

Ashley:

We believe you are mistaken that this is still your lawsuit to manage and control. We cited in our initial email authority supporting our motion to stay.  *See In re Bronner*, 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992) (noting the rule that prepetition legal claims become "property of the estate as of the commencement of [a Chapter 7 bankruptcy] case"); *see also id*. at 647 (citing 11 U.S.C. § 541(a)(1)) ("A debtor's estate is comprised of all legal or equitable interests owned by the debtor as of the commencement of the case. Title to estate property generally remains in the trustee unless the property is abandoned or intentionally re-vested.").

Other courts hold similarly and underscore that where a trustee has not abandoned prepetition legal claims, a plaintiff/debtor lacks standing to prosecute them. *See In re Meehan,* No. AP 13-01208-ES, 2014 WL 4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014), *aff'd*, 659 F. App'x 437 (9th Cir. 2016) ("Only a trustee may pursue a cause of action belonging to the bankruptcy estate. The debtor can pursue such claims only if they are abandoned by the estate.") (citations omitted); *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) ("Because a Chapter 7 debtor forfeits his prepetition assets to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim unless the trustee abandons the asset, which then returns the claim to the possession and control of the debtor.") (citation omitted); *In re Harris*, 450 B.R. 324, 335 n. 46 (Bankr. D. Mass. 2011) (holding that where prepetition claims "have not been formally abandoned by the Trustee, … it remains the Trustee, and not the Debtor, who has standing to prosecute those claims") (citations omitted).

We will proceed to file our motion to stay, and are requesting a briefing schedule that permits time for opposition and reply briefs.

As to my emails to you regarding the meet and confer process related to your interrogatories, your characterization is inaccurate.

Regards,
Jessica

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 2:53 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** Re: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

[EXTERNAL]

Apple counsel,

I'm checking in again and asking for your response to my request for information, as detailed and sent to you nearly five hours ago.

Mr. DeGiacomo is on vacation, and I am not scheduled to speak with him or anyone else at/with Office of the Trustee regarding my bankruptcy case until Sept. 8 2025 at the earliest. There has been not yet been any substantive discussion about this civil litigation in my bankruptcy case, and thus this threatened request for an emergency stay appears to be originating unilaterally from Apple.

Therefore, my requested information about the statements you made this morning and your threat to file these motions by EOD today regardless of my position, needs to be provided to me and would only come from Apple's counsel.

This is still my lawsuit, I am still managing it, and you need to make an attempt to meet/confer with me in good faith prior to filing motions like this. There is no rule, law, or policy that says once someone files bankruptcy that the DOJ Office of the Trustee would suddenly by default have to approve each and every motion that person files or any litigation decision that person makes -- other then matters related to settlements (which you said on the record on 8/5 that you do not want to discuss and see no point in any further conference).

You cannot just unilaterally declare that I'm no longer party to this lawsuit, or this is no longer my lawsuit, or that I cannot file or respond to motions in my own lawsuit without DOJ approval. That's absurd.

Thus far, I've heard nothing from you other than your three emails at midnight last night essentially saying you won't talk to me anymore going forward (again). The Court already told you that you can not say that and you have to participate in this proceeding, including at least some form of meet/confer. Then this morning you now claim this isn't even my lawsuit anymore -- which is inaccurate and bizarre.

It's already past 5PM my time and tomorrow is my birthday. I'd prefer to not have to deal with this matter late tonight or at all tomorrow. If we can instead please meet/confer this week about whatever your actual concerns are, perhaps we can sort out a compromise and avoid unnecessary motion practice.

To start, please respond to my earlier questions and my request for information.

Thank you.


-Ashley


—

**Ashley M. Gjøvik**

**BS, JD, PMP**



Sent with Proton Mail secure email.


On Monday, August 25th, 2025 at 12:57 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Hello,
>
>
> I am unable to respond to you substantively at this time other than to object, because there's no disclosed legal basis for this request. As a preliminary matter, I seek information as to the basis for requesting a stay, and why that stay would be considered an emergency.
>
>
> In my Bankruptcy case, the Trustee has not consulted me regarding any Trustee plans or interest in this *Gjovik v Apple* civil litigation, or told me there was any communication with Apple about this litigation, or about any of my other litigation with Apple. This is required under Rule 2015(a) and 11 U.S.C. § 704(a)(9) prior to intervening or otherwise disrupting a debtor's pending affairs -- unless some other federal statute preempts this request, but that has not been disclosed to me.
>
>
> While the U.S. government controls my pecuniary legal claims during a Chapter 7 bankruptcy proceeding, this case also includes injunctive and declaratory relief, as well as punitive damages and statutory fines. I also have a right to information about estate administration as a "party in interest," and as of now, that has not been provided to me regarding this request.  See, 11 U.S.C. § 704(a)(9).

Further, there are no approved employment applications for Trustee lawyers to manage this litigation generally, nor are there any pending applications for employment/labor attorneys who would know how to properly manage the litigation of the retaliation claims. See, Rule 2014 and 11 U.S.C. § 327(a).

In addition, while the DOJ abruptly and without explanation switched my bankruptcy case from "no asset" to "asset," as of today, no one has informed me what DOJ thinks that asset is (which is required by bankruptcy law). To my own actual knowledge, I have no vested assets and no funds that could pay creditors, and as such my bankruptcy would be a full discharge. Therefore, there's no apparent basis that could justify stopping litigation midway and investing government resources (and taxpayer dollars) into this long-running civil litigation without even consulting the Plaintiff/Debtor.

This civil litigation has been ongoing since September 2023, with the similar adjudications ongoing since August 2021, and counsel from Orrick retained to defend Apple from my retaliation claims starting in August 2021 (four years ago). The next civil case events are a deadline for a Joint Case Management Report on October 14 and a Status Conference on October 21. (Dkt. 242). Beyond that, I have a pending motion for leave to request sanctions against Apple, two notices of requests for depositions of Apple employees in September 2025 pending with Apple, and multiple discovery disputes awaiting Apple's response.

Most recently, I formally complained to Apple/Orrick about improper discovery misconduct that would be a new basis for sanctions and asked Orrick to file a joint letter to the court about it, and also complained about what appeared to be intimidation and harassment by their counsel at my 341 meeting on 8/21. Orrick responded late last night (on a Sunday) refusing to meet/confer on open issues or discuss further. As such, this request to stay, based on my own knowledge, thus appears to be Apple's attempt to obstruct my open requests and planned escalations.

The legal standard for granting a stay of litigation is clearly not met here, and no one has attempted to provide a proffered legal basis as to success on the merits, irreparable harm in the absence of relief, the balance of equities, or the public interest -- or even basic justification as to why it would be needed considering there are no major case events until an October 21 2025 status conference -- more than two months away. Similarly, a request could simply be filed to reschedule that conference instead of stay all litigation, if there was even a justification for that.

Even more untethered is any supposed basis to treat this request as an emergency motion for a stay, where supposedly irreparable harm would occur during the time needed to consider a response. Yet no one has offered any sort of basis for the request, the request appears to directly conflict with and violate bankruptcy rules and norms, and there's no case events or outcomes impacted by Trustee consideration in parallel with ongoing litigation. Thus the request instead appears to be Apple's counsel trying to avoid their discovery obligations and the consequences for their prior discovery misconduct in this case.

To both Apple and the Trustee, I request more information about what this request is about, why its being made, and what the justification is.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, August 25th, 2025 at 10:27 AM, Perry, Jessica R. <jperry@orrick.com> wrote:

> Mr. DeGiacomo and Ms. Gjovik:
>
> I write to advise that Apple intends to file a motion to stay today in N.D. Cal. Case No. 23-cv-04597 – a prepetition litigation brought by Ms. Gjovik, which is now property of her Chapter 7 bankruptcy estate (*see In re Bronner,* 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992)) – to allow the Trustee time to determine how to proceed in this action as the real party in interest.
>
> We will also be filing an administrative motion to have the motion to stay be heard on shortened time, and will request that the hearing on the motion to stay be held next Thursday, September 4, 2025 at 1:30 p.m. PT (with any opposition due by August 29 and any reply due by September 2).
>
> Although we believe only the Trustee's agreement/stipulation to the motion to shorten time is necessary (given that the Chapter 7 bankruptcy estate, not Ms. Gjovik, is the lone party with standing at present to continue the case), we would appreciate hearing from each of you whether you will agree/stipulate to the administrative motion to shorten time.  We would also appreciate confirmation that the Trustee agrees that entry of a stay would be appropriate in this circumstance.

Thank you,

Jessica

**Jessica Perry**

Partner

Orrick
Silicon Valley

T +1-650-614-7350
jperry@orrick.com

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

DEBTOR'S MOTION FOR ORDER
TO SHOW CAUSE AND SANCTIONS
AGAINST CREDITOR APPLE INC. (21011446)

CHAPTER 7 CASE NO: 25–11496

# EXHIBIT F

AUGUST 28 2025

← Post

**Reply**

**Ashley M. Gjøvik** @ashleygjovik · Jul 21
Re: Bankruptcy, trying to figure out the legal status of my Apple Card. Apple pressured some employees to enroll starting in April 2019 (four months before it 'launched') and statements say like "beta" / "seed design" but its a real credit card. Did CFPB ever learn about this?

💬 3    🔁 2    ♡ 30    📊 1.3K

**GS Bank Support** ✓ 🏦 @gsbanksupport · Jul 21
Hi there. This is a support specialist at Goldman Sachs. We'd like to take a closer look into this. Kindly give us a call 24/7 at 1-877-255-5923 or chat with us via the Wallet. Our team will be happy to further assist.

💬 1    🔁    ♡    📊 99

**Ashley M. Gjøvik** @ashleygjovik · Jul 21
I didn't even tag you, Goldman, where'd you even come from? I think you have to go through Apple's lawyers. I asked them to talk to you about this debt like 20x times and they refused. They also refused to give me a copy of the agreement I signed for the card & said its secret.

💬 2    🔁    ♡ 2    📊 126

**Ashley M. Gjøvik**
@ashleygjovik

Apple's main lawyers on the retaliation/labor stuff (where they owe me the money I need to pay off the card) are Orrick for civil and Morgan Lewis for NLRB. I'm not supposed to talk to their "client" directly or they send me angry emails about it. Thanks.

11:54 AM · Jul 21, 2025 · **99** Views

📊 View post engagements

💬    🔁    ♡ 1    🔖    ⬆️

**Post your reply**    **Reply**

**Ashley M. Gjøvik**
@ashleygjovik

Messages



**X**

🔍

🏠 Home

🔍 Explore

🔔 Notifications

✉️ Messages

Grok

☰ Lists

🔖 Bookmarks

💼 Jobs

👥 Communities

✖️ Premium

⚡ Verified Orgs

👥 Community Notes

👤 Profile

⋯ More

**Post**

**GS Bank Support** ✓ 🅶 @gsbanksupport · Jul 21

Hi there. This is a support specialist at Goldman Sachs. We'd like to take a closer look into this. Kindly give us a call 24/7 at 1-877-255-5923 or chat with us via the Wallet. Our team will be happy to further assist.

💬 1          🔁          ♡          📊 97     🔖  📤

**Ashley M. Gjøvik** @ashleygjovik · Jul 21

I didn't even tag you, Goldman, where'd you even come from? I think you have to go through Apple's lawyers. I asked them to talk to you about this debt like 20x times and they refused. They also refused to give me a copy of the agreement I signed for the card & said its secret.

💬 2          🔁          ♡ 2          📊 124     🔖  📤

**Michel Fortin** @michel_fortin · Jul 21

Is there even a dept if they can't produce a copy of the agreement in court?

💬 1          🔁          ❤️ 1          📊 86     🔖  📤

**Ashley M. Gjøvik** @ashleygjovik · Jul 21

That's exactly my question as well and tis already captured in a notation on the initial filing.

💬          🔁          ♡ 1          📊 75     🔖  📤

**Ashley M. Gjøvik**
@ashleygjovik

**Messages**



Search

# X

🏠 Home

🔍 Explore

🔔 Notifications ①

✉️ Messages

🌀 Grok

📋 Lists

🔖 Bookmarks

💼 Jobs

👥 Communities

✖️ Premium

⚡ Verified Orgs

👥 Community Notes

👤 Profile

⋯ More

**Post**



**Ashley M. Gjøvik** ⋯
@ashleygjovik

Messages

Debtor's Motion For Order
To Show Cause and Sanctions
Against Creditor Apple Inc. (21011446)

Chapter 7 Case No: 25–11496

# Exhibit G

August 28 2025





# Ryan Booms

**Managing Associate**

Washington, D.C.

**E**  rbooms@orrick.com

Ryan Booms is an associate in the Complex Litigation & Dispute Resolution Group.

He represents clients in complex matters involving products liability and commercial contracts. He is also active in pro bono matters.

While in law school, Ryan participated in the USC Hale Moot Court Honors Program. He also externed for the Honorable Virginia A. Phillips in the Central District of California. Before law school, Ryan served in the Teach For America corps and taught middle school history.

## Honors

- USC Gould Hale Moot Court Honors Program

## Education

- J.D., University of Southern California Gould School of Law, 2019
- M.A., Education, Arizona State University, 2011
- B.A., English, Kalamazoo College, 2009

## Clerkships/Externships

- Judicial extern to the Honorable Virginia A. Phillips, U.S. District Court for the Central District of California

## Publications

- Co-author, "A Practical Guide to Shaping Force Majeure Provisions During the Pandemic," *Los Angeles Lawyer Magazine* (December 2020)

## Admissions

- District of Columbia
- California

## Court Admissions

- **United States Courts of Appeals |** Ninth Circuit
- **United States District Courts |** Northern District of California
- **United States District Courts |** Central District of California

Debtor's Motion For Order
To Show Cause and Sanctions
Against Creditor Apple Inc. (21011446)

Chapter 7 Case No: 25–11496

# Exhibit H

August 28 2025

## Case 3:23-cv-04597-EMC Gjovik v. Apple Inc.

| | |
|---|---|
| From | Romero, Josette L. <jromero@orrick.com> |
| To | Mark G. DeGiacomo<mdegiacomo@harrisbeachmurtha.com> |
| CC | Ashley Gjovik<ashleymgjovik@protonmail.com>, Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Riechert, Melinda<mriechert@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com> |
| Date | Monday, August 25th, 2025 at 7:16 PM |

Mr. Degiacomo,

Attached please find service copies of Defendant Apple Inc.'s Administrative Motion to Shorten Time and Motion to Stay pleadings in connection with the above-entitled matter.

**Josette L. Romero**

Executive Assistant

Orrick
Silicon Valley  

T +1-650-614-7417
jromero@orrick.com

 

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**556.73 KB**   9 files attached   4 embedded images

Booms Decl. ISO Motion to Stay.pdf 7.84 KB

Certificate of Service re Motion to Stay.pdf 7.09 KB

Motion to Stay Proceedings.pdf 58.43 KB

Proposed Order Granting Motion to Stay.pdf 7.10 KB

Riechert Decl. ISO Motion to Stay.pdf 14.16 KB

Admin Motion to Shorten Time for Mot to Stay.pdf 40.58 KB

Certificate of Service re Admin Motion.pdf 7.27 KB

Perry Decl. ISO Motion to Shorten Time with Trustee.pdf 373.95 KB

Proposed Order Granting Administrative Motion to Shorten Time and Stay.pdf 6.84 KB

1  JESSICA R. PERRY (SBN 209321)
   jperry@orrick.com
2  MELINDA S. RIECHERT (SBN 65504)
   mriechert@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA 94025-1015
   Telephone:     +1 650 614 7400
5  Facsimile:     +1 650 614 7401

6  KATHRYN G. MANTOAN (SBN 239649)
   kmantoan@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
8  405 Howard Street
   San Francisco, CA 94105-2669
9  Telephone:     +1 415 773 5700
   Facsimile:     +1 415 773 5759
10
   RYAN D. BOOMS (SBN 329430)
11 rbooms@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
12  2100 Pennsylvania Avenue NW
   Washington, D.C. 20037
13 Telephone:     +1 202 339 8400
   Facsimile:     +1 202 339 8500
14
   Attorneys for Defendant
15 APPLE INC.

16

17                    UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                     SAN FRANCISCO DIVISION

20

21 ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

22              Plaintiff,                 **DEFENDANT APPLE INC.'S MOTION
                                           TO STAY IN LIGHT OF
23       v.                                BANKRUPTCY PROCEEDINGS**

24 APPLE INC.,                             Date:      October 23, 2025
                                           Time:      1:30 p.m.
25              Defendant.                 Dept:      Courtroom 5, 17th Floor
                                           Judge:     Honorable Edward M. Chen
26

27

28
                                                         MOT. TO STAY IN LIGHT OF
                                                            BANKR. PROCEEDINGS
                                                              [23-cv-4597-EMC]

# NOTICE OF MOTION AND MOTION

**TO THE COURT, BANKRUPTCY TRUSTEE, AND PLAINTIFF/DEBTOR:**

PLEASE TAKE NOTICE that on October 23, 2025, at 1:30 p.m. in Courtroom 5 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Apple Inc. will and hereby does move for a stay of this action in light of Plaintiff/Debtor Ashley Gjovik's Chapter 7 bankruptcy proceeding in the Bankruptcy Court for the United States District Court of Massachusetts.

This Motion is made on the grounds that a trial court has broad discretion to stay all proceedings pending the resolution of independent proceedings elsewhere that impact the case at hand. *See In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024). Plaintiff/Debtor lacks standing to prosecute this case since it is the Trustee of Plaintiff/Debtor's Chapter 7 Estate who is presumptively the real party in interest with standing to pursue this action. Yet, Plaintiff/Debtor continues to litigate this case as if she were the real party in interest. A stay is necessary to allow the Trustee time to evaluate this case and decide how to proceed in this litigation. To the extent Plaintiff/Debtor opposes the Trustee's control of this litigation, a stay is further necessary to allow that issue to be resolved in the bankruptcy court. Staying this action until the Trustee decides how to proceed (and, if necessary, until the bankruptcy court confirms who controls this litigation) will not prejudice Plaintiff/Debtor or the Chapter 7 Estate, will promote efficiency, and will conserve judicial resources. Conversely, Apple and the Chapter 7 Estate would suffer material harm absent a stay.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

1       This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

2  Authorities, the Declaration of Melinda Riechert, the Declaration of Jessica Perry, and the

3  Declaration of Ryan Booms filed concurrently herewith, the operative complaint and pleadings on

4  file with the Court in this matter, and any other evidence or oral argument as the Court may consider

5  in connection with this Motion.

6  Dated: August 25, 2025           ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8                  By: */s/ Jessica R. Perry*
                     JESSICA R. PERRY

9                     Attorney for Defendant
                      APPLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

<h1 style="text-align:center">MEMORANDUM OF POINTS AND AUTHORITIES</h1>

## I.    INTRODUCTION

Apple requests an immediate stay of all proceedings in this case pursuant to the Court's inherent authority to manage its docket because Plaintiff/Debtor Ashley Gjovik lacks standing to prosecute this case, and yet she is continuing to aggressively prosecute the case. As the Court noted at the August 5, 2025 Case Status Conference, and as Plaintiff/Debtor acknowledged, the Trustee appointed to manage Plaintiff/Debtor's Chapter 7 Estate is now in control of the case. The Trustee is the lone real party in interest with standing to prosecute this action and has not appeared before this Court. At the August 5 conference, this Court inquired as to the status of Plaintiff/Debtor's bankruptcy proceedings and the potential impact of those proceedings on this case and Plaintiff/Debtor conveyed her belief the Trustee was likely to abandon this litigation; it has since become clear no such decision has been reached. At present, the claims in this case are, as a matter of law, presumptively an asset of the bankruptcy estate, and the Trustee has not expressed any intent to abandon those claims or to allow Plaintiff/Debtor to continue to litigate them. Instead, he is evaluating what to do with these claims, which are currently an asset of the Chapter 7 Estate, and has agreed that a stay is appropriate. A stay is warranted until either the Trustee decides how to proceed or Plaintiff/Debtor's authority to prosecute this matter is resolved in the bankruptcy court.

## II.    FACTUAL BACKGROUND

On July 21, 2025, Plaintiff/Debtor filed a Voluntary Petition for Bankruptcy in the District of Massachusetts under Chapter 7 of the U.S. Bankruptcy Code. *See* Bankr. D. Mass. Case No. 25-bk-11496, Dkt. No. 1.[1] Plaintiff/Debtor listed back pay, front pay, and personal injury damages (each valued at "TBD") as assets she claims are exempt from her Chapter 7 Estate, allegedly under 11.U.S.C. § 522(d)(10)(A), (d)(11)(A), (d)(11)(D), and (d)(11)(E). *Id.* at 28.

On July 22, 2025, Mark G. Degiacomo was appointed trustee of the Chapter 7 Estate. *See* Bankr. D. Mass. Case No. 25-bk-11496, Dkt. No. 5. At the August 5, 2025 Case Status Conference with this Court, Plaintiff/Debtor acknowledged that the claims in this litigation are the property of

---

[1] Apple believes the Court has direct access to these federal court filings but can provide copies if and as requested.

1    the bankruptcy estate and that the Trustee now controls the litigation, but conveyed her belief that

2    the Trustee would likely abandon the claims (and allow Plaintiff/Debtor to regain control of

3    prosecuting them). Decl. of Melinda Riechert in Supp. of Motion to Stay, ¶ 3.

4         On August 13, 2025, notwithstanding Plaintiff/Debtor's representations about the Trustee's

5    perceived intent to abandon this action, the Trustee filed a Notice to Creditors to File Claims in the

6    bankruptcy case. *See* Bankr. D. Mass. Case No. 25-bk-11496, Dkt. No. 13. On August 15, 2025,

7    the Trustee filed an application seeking approval from the bankruptcy court to employ legal counsel

8    "to represent the Trustee in all Court proceedings." *Id.*, Dkt. No. 14, ¶ 5. On August 19, 2025,

9    Plaintiff/Debtor responded to the Trustee's filings, calling the Trustee's actions an "abrupt and

10   unexplained conversion of this case to an asset case" and claiming that the Trustee's actions amount

11   to an "unfolding and cascading crisis of constitutional, consumer, and civil rights law." *Id.*, Dkt.

12   No. 17 ¶¶ 1, 5. Plaintiff/Debtor's filing in the bankruptcy court represented that her pending

13   litigation in this Court is, in her view, her "primary potential source for any speculative recovery."

14   *Id.*, Dkt. No. 17 ¶ 11 (tenth bullet point on page 7).

15        On August 21, 2025, the Trustee held the first session of a Section 341 Meeting of Creditors,

16   during which he inquired about any pending litigation. *See* Decl. of Ryan Booms in Supp. of

17   Apple's Motion to Stay, ¶¶ 2-6. Following Plaintiff/Debtor's response, the Trustee continued the

18   Section 341 Meeting of Creditors to October 30, 2025, noting that he needed to speak with

19   Plaintiff/Debtor further, without giving any indication that he was abandoning this action to

20   Plaintiff/Debtor. *See id.* As a result, the status of Plaintiff/Debtor's claimed exemption has not been

21   resolved. *See* Fed. R. Bankr. P. 4003(b)(1) (window to object to claimed exemptions remains open

22   until thirty days after Section 341 Meeting of Creditors concludes). Any objection the Trustee (or

23   any other party) may have to her claimed exemptions may not occur until November 30, 2025 (or

24   potentially later, if the Section 341 Meeting of Creditors is further continued). The Trustee has not

25   expressed any opinion in the bankruptcy proceedings on whether he intends to abandon these

26   claims. On the contrary, it seems he is still evaluating the claims. The Trustee has since confirmed

27   that he agrees that a stay of this litigation is appropriate in this circumstance. *See* Decl. of Jessica

28   Perry in Supp. of Apple's Admin. Mot. to Shorten Time, filed herewith, ¶ 3, Ex. A.

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

III.    **LEGAL STANDARD**

"The district court possesses 'inherent authority to stay federal proceedings pursuant to its docket management powers.'" *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (quoting *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023)). As a result, a district court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Id.* (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)). The decision to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).

When considering whether to grant a stay, courts are to weigh three non-exclusive factors: "(1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer in being required to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.'" *Ernest Bock*, 76 F.4th at 842 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). The Ninth Circuit has "repeatedly held that a district court does not abuse its discretion by staying litigation for efficiency reasons pending resolution of other related proceedings." *In re PG&E*, 100 F.4th at 1086.

IV.    **ARGUMENT**

A.    **Judicial Efficiency Favors a Stay.**

Addressing the "orderly course of justice" factor first, it is black letter law that the Trustee presumptively controls all the assets of Plaintiff/Debtor's Chapter 7 Estate—including this litigation—and is the real party in interest with the exclusive authority to prosecute this case. *See* 11 U.S.C. § 323; Fed. R. Bankr. P. 6009. "Under Chapter 7 bankruptcy, once the petition is filed, all pre-petition causes of action become part of the estate. As such, the bankruptcy trustee is the sole individual with standing to maintain the pre-petition claim." *Lennear v. Diamond Pet Food Processors of California, LLC*, 147 F. Supp. 3d 1037, 1044 (E.D. Cal. 2015) (citing 11 U.S.C. § 541(a)(1); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir. 1986));

1   *accord* 3 Collier on Bankruptcy ¶ 323.03 (16th ed. 2025) ("After appointment of a trustee, a debtor

2   no longer has standing to pursue a cause of action that existed at the time the order for relief was

3   entered. Only the trustee has the authority and discretion to prosecute, defend and settle, as

4   appropriate in its judgment, such a cause of action."); *In re DiSalvo*, 219 F.3d 1035, 1039 (9th Cir.

5   2000) ("In [Chapter 7] liquidation proceedings, *only* the trustee has standing to prosecute or defend

6   a claim belonging to the estate."); *DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak*

7   *Fire Ins. Co.*, 448 F.3d 460, 463 (1st Cir.2006) ("When a trustee is appointed, the trustee steps into

8   the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action.")

9   (internal quotation marks and citation omitted).[2]

10          Since the Trustee has not abandoned the claims, Plaintiff/Debtor lacks standing to prosecute

11   them. *See In re Bronner*, 135 B.R. 645, 647 (B.A.P. 9th Cir. 1992) ("A debtor's estate is comprised

12   of all legal or equitable interests owned by the debtor as of the commencement of the case. Title to

13   estate property generally remains in the trustee unless the property is abandoned or intentionally

14   re-vested.") (citing 11 U.S.C. § 541(a)(1)); *accord In re Meehan,* No. AP 13-01208-ES, 2014 WL

15   4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014), *aff'd*, 659 F. App'x 437 (9th Cir. 2016) ("Only a

16   trustee may pursue a cause of action belonging to the bankruptcy estate. The debtor can pursue such

17   claims only if they are abandoned by the estate.") (citations omitted); *Slater v. U.S. Steel Corp.*,

18   871 F.3d 1174, 1180 (11th Cir. 2017) ("Because a Chapter 7 debtor forfeits his prepetition assets

19   to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim

20   unless the trustee abandons the asset, which then returns the claim to the possession and control of

21   the debtor.") (citation omitted); *In re Harris*, 450 B.R. 324, 335 n. 46 (Bankr. D. Mass. 2011)

22   (holding that where prepetition claims "have not been formally abandoned by the Trustee, …it

23   _____

24   [2] *See also Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) ("[I]n the context of a Chapter 7
     bankruptcy, it is the bankruptcy trustee and not the debtor who is the real party in interest with
     respect to property of the estate, with the right to bring any legal claims that belong to the estate.")

25   (citation omitted); *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) ("Because
     the claims are property of the bankruptcy estate, the Trustee is the real party in interest with
     exclusive standing to assert them.") (citations omitted); *Russ v. Jackson Cnty. Sch. Bd.*, 530 F.

26   Supp. 3d 1074, 1080, 1082 (N.D. Fla. 2021) ("Property of the bankruptcy estate includes all causes
     of action belonging to the debtor at the commencement of the bankruptcy case. …Once an asset

27   becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished

28   unless the asset is abandoned back to the debtor.") (internal quotation marks and citations omitted).

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

1  remains the Trustee, and not the Debtor, who has standing to prosecute those claims") (citations

2  omitted).

3         Contrary to Plaintiff/Debtor's prior representations to this Court, during the Section 341

4  Meeting of Creditors, the Trustee said nothing about abandoning the Estate's control of this

5  litigation; on the contrary, he continued the Section 341 Meeting of Creditors to afford more time

6  to discuss Plaintiff/Debtor's pending litigation with her. Further, the Trustee agrees that a stay is

7  appropriate while he determines how to proceed. Perry Decl., ¶ 3, Ex. A. Given that the Trustee

8  has not abandoned this action (as Plaintiff/Debtor suggested he would), Plaintiff/Debtor lacks

9  standing to prosecute the claims here.

10         But Plaintiff/Debtor is currently doing just that. Indeed, since filing her bankruptcy petition,

11  Plaintiff/Debtor has done all of the following:

12    • Continued to negotiate the terms of an ESI Order intended to govern this case;

13    • Stated her intent to imminently notice a Rule 30(b)(6) deposition;

14    • Served two notices purporting to set depositions of current and former Apple employees,

15      one during the period September 8-19, the other during the period September 15-30, despite

16      her prior representation that she was not available for her own deposition until the last week

17      of September or the first week of October;

18    • Produced over 900 documents encompassing over 6,000 pages, many of which are

19      documents belonging to Apple that Plaintiff/Debtor appears to have improperly retained

20      following her termination;

21    • Filed a discovery letter brief with the Magistrate Judge seeking an order compelling Apple

22      to produce a document it had already committed to searching for (and has now produced),

23      along with seeking an evidentiary hearing for spoliation sanctions (*see* Dkt. No. 240);

24    • Threatened Apple with yet another motion for sanctions for purportedly serving subpoenas

25      to her medical providers without prior notice (even though Apple has served no such

26      subpoenas);

27    • Propounded additional interrogatories that contain discrete subparts, bringing the total

28      number of interrogatories and discrete subparts to well over one hundred propounded to

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

Case 5:23-cv-04597-EMC   Document 237   Filed 08/29/25   Page 97 of 204
Case 3:23-cv-04597-EMC   Document 245   Filed 08/26/25   Page 97 of 204

Exhibits    Page 97 of 204

1    date (an issue that will likely need to be decided by the Magistrate Judge);

2    • Propounded twenty-two additional requests for production of documents;

3    • Demanded Apple immediately supplement its responses to Plaintiff/Debtor's

4    Interrogatories, Sets Two and Three, while threatening an additional discovery letter brief

5    to the Magistrate Judge that would seek sanctions;

6    • Stated her intention to subpoena Orrick for records and to subpoena Twitter/X for access to

7    the confidential credit card information of someone she alleges harassed her under a

8    pseudonym on Twitter/X; and

9    • Filed a reply discovery brief in direct contravention to Magistrate Judge Westmore's order

10    (*see* Dkt. Nos. 230 (making clear that "[n]o replies are permitted"), 245 (Plaintiff/Debtor's

11    reply brief)).

12    *See* Riechert Decl., ¶ 2.

13          It is unclear whether the Trustee has approved of any of these actions. A stay is necessary

14    until the Trustee decides how to proceed. The Trustee may have a different strategy or value the

15    case differently than Plaintiff/Debtor, as is his right. Indeed, the Trustee may find that

16    Plaintiff/Debtor's tactics in this case are not in the best interests of the Chapter 7 Estate. Those

17    decisions are properly the province of whoever controls this litigation: at this point, the Trustee.

18          Until such time as Trustee affirmatively decides what to do with this action (which may

19    require a decision from the bankruptcy court if Plaintiff/Debtor contests the Trustee's statutory

20    right to control this litigation), a stay of these proceedings promotes judicial efficiency. A stay will

21    promote an orderly process that gives the Trustee time to evaluate this action and decide how to

22    proceed, including the opportunity to "ratify, join, or substitute" into the action. *Russ*, 530 F. Supp.

23    at 1083.[3] A stay should remain in effect long enough to allow the Trustee to determine how to

24    proceed in a manner that best serves interests of the Chapter 7 Estate and the creditors to whom

25    Plaintiff/Debtor admittedly owes tens of thousands of dollars. *See Rajaee v. Davis*, No. 24-CV-

26    550-RSH-KSC, 2024 WL 2925332, at *1 (S.D. Cal. June 10, 2024) (granting bankruptcy Trustee's

27    ────────────

28    [3] "Of course, nothing compels the trustee to take any of these courses of action, and the trustee may determine that the claims are not worth pursuing. But that is a decision for the trustee to make." *Id.*

- 6 -

1   *ex parte* motion to stay the case for 90 days as "necessary to give the Trustee time to address the

2   merits of the Related Actions and potentially resolve and/or streamline [them]"). Here, the Trustee

3   agrees that a stay is appropriate to allow him time to evaluate the case. *See* Perry Decl. ¶ 3, Ex. A.

4   And to the extent Plaintiff/Debtor challenges the Trustee's control of this action, a stay would be

5   appropriate until there is a full and final resolution of that dispute in the bankruptcy court.

6           **B.**    <u>**The Balance of Equities Favors a Stay.**</u>

7         On the damage and hardship prongs, no harm will accrue from staying this proceeding until

8   such time as the Trustee determines how he wishes to proceed. No depositions have been taken.

9   There is no looming dispositive motion deadline. No trial date has been set. Allowing time for a

10  final determination regarding who controls this litigation will not result in any harm. Indeed, it is

11  proper to afford the Trustee sufficient time to review this matter and determine how to proceed.

12        By contrast, both the Chapter 7 Estate and Apple will suffer harm if a stay is not granted.

13  The Chapter 7 Estate will be harmed (and judicial efficiencies will be lost) if a stay is not granted.

14  This is because, absent a stay, the action would need to be dismissed because Plaintiff/Debtor lacks

15  standing to pursue the claims here, which now belong to the Chapter 7 Estate. *See Lennear*, 147 F.

16  Supp. 3d at 1044-45 (granting motion to dismiss because plaintiff lacked standing to continue after

17  filing for Chapter 7 bankruptcy but providing leave for the Trustee to pursue the action). Staying

18  this proceeding until the Trustee decides what to do prevents this harm and inefficiency. Courts

19  routinely grant stays in lieu of dismissal in these circumstances. *See, e.g., Kilgore v. Wells Fargo*

20  *Home Mortg*., No. 1:12-CV- 899 AWI SMS, 2013 WL 71781, at *2 (E.D. Cal. Jan. 7, 2013);

21  *Kulberg v. Washington Mut. Bank*, No. 10-CV-1214 *Servs., Inc*., No. 12-CV-02215-RBJ-KMT,

22  2013 WL 3296619, at *3-4 (D. Colo. July 1, 2013). The same result would be appropriate in this

23  case.

24        Apple will also suffer harm if Plaintiff/Debtor is permitted to continue prosecuting a claim

25  she lacks standing to pursue and making litigation decisions and demands that may be contrary to

26  those the Trustee would ultimately deem to be in the best interest of the Chapter 7 Estate and

27  Plaintiff/Debtor's creditors. Plaintiff/Debtor has continued to aggressively proceed in this case

28  without any apparent consent of the Trustee. Her conduct includes recently filing a discovery letter

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

brief seeking spoliation sanctions related to a document Apple had committed to producing (and did produce) (*see* Dkt. Nos. 240-241) and a reply brief in violation of Magistrate Judge Westmore's order confirming "[n]o replies are permitted" (*see* Dkt Nos. 230, 245), among a litany of other actions taken to manufacture and pursue contentious discovery disputes, thus taxing the resources of the Court and the parties. *See* Riechert Decl. ¶ 2. Significantly, many of these disputes have escalated in the past two weeks, just as the Trustee has made filings that indicate he is taking steps necessary to evaluate how to proceed with this case. *Id.*; *see also* Bankr. D. Mass. Case No. 25-bk-11496, Dkt. Nos. 13-15.

Apple is legitimately concerned that this case is improperly being prosecuted by Plaintiff/Debtor even though she is no longer the real party in interest. But if Apple does not respond to Plaintiff/Debtor's discovery requests and urgently stated meet and confer demands, she says she will seek sanctions and has already filed at least one brief attempting to do so. Apple deserves clarity regarding the Trustee's role with respect to the claims at issue here. The current situation indisputably harms Apple's ability to defend itself in this action in an orderly manner consistent with the law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MOT. TO STAY IN LIGHT OF
BANKR. PROCEEDINGS
[23-cv-4597-EMC]

1    **V.**    **<u>CONCLUSION</u>**

2         For the foregoing reasons, Apple respectfully requests this Court immediately stay these

3    proceedings until such time as the Trustee decides how to proceed as the real party in interest with

4    the exclusive authority to prosecute this action—which is likely to be several months, given the

5    continuance of the Section 341 Meeting of Creditors and the subsequent exemption objection

6    window. Should Plaintiff/Debtor challenge the Trustee's statutory authority, the stay should remain

7    in effect until such time as the bankruptcy court has made a final determination of that issue.

8    Dated: August 25, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP

9

10                                 By: */s/ Jessica R. Perry*
                                        JESSICA R. PERRY
11                                      Attorney for Defendant
                                        APPLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO STAY IN LIGHT OF
                                        BANKR. PROCEEDINGS
                                        [23-cv-4597-EMC]

Case 5:23-cv-04597-EMC Document 257-1 Filed 08/28/25 Page 1 of 3
Case 5:23-cv-04597-EMC Document 247 Filed 08/22/25 Page 101 of 204 Desc
Exhibits Page 101 of 204

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | |
| v. | **DECLARATION OF RYAN D. BOOMS IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO STAY IN LIGHT OF BANKRUPTCY PROCEEDINGS** |
| APPLE INC., | |
| Defendant. | Date:     October 23, 2025<br>Time:     1:30 p.m.<br>Dept:     Courtroom 5, 17th Floor<br>Judge:     Honorable Edward M. Chen |

I, Ryan D. Booms, declare as follows:

1.     I am an attorney admitted to practice law in the state of California and am an associate at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. in this action. I submit this declaration in support of Apple's Motion to Stay in Light of Bankruptcy Proceedings. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.     On August 21, 2025, I attended a public Meeting of the Creditors (the "Meeting") in the matter *In re Ashley Marie Gjovik*, Case No. 1:25-bk-11496 (Bankr. D. Mass. filed July 21, 2025).

3.     During the Meeting, the trustee of Plaintiff/Debtor Ashley Gjovik's Chapter 7 Estate, Mark DeGiacomo (the "Trustee"), asked Plaintiff/Debtor, among other things, to identify any pending litigation she had initiated.

4.     Plaintiff/Debtor identified, among other matters, her claims against Apple before this Court (the "Action").

5.     After questioning Plaintiff/Debtor, the Trustee stated that he would like to schedule a call with Plaintiff to occur sometime after September 1, 2025, to further discuss the topics discussed during the Meeting. The Trustee also continued the Meeting to October 30, 2025, at 1:00 p.m.

6.     During the Meeting, the Trustee did not indicate that he intended to abandon this Action to Plaintiff/Debtor.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed August 25, 2025 in Washington, DC.

*/s/ Ryan D. Booms*
Ryan D. Booms

BOOMS DECL. ISO
MOTION TO STAY
CASE NO. 23-cv-4597-EMC

1  JESSICA R. PERRY (SBN 209321)
   jperry@orrick.com
2  MELINDA S. RIECHERT (SBN 65504)
   mriechert@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA 94025-1015
   Telephone:    +1 650 614 7400
5  Facsimile:    +1 650 614 7401

6  KATHRYN G. MANTOAN (SBN 239649)
   kmantoan@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
8  405 Howard Street
   San Francisco, CA 94105-2669
9  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
10
   RYAN D. BOOMS (SBN 329430)
11 rbooms@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
12 2100 Pennsylvania Avenue NW
   Washington, D.C. 20037
13 Telephone:    +1 202 339 8400
   Facsimile:    +1 202 339 8500
14
   Attorneys for Defendant
15 APPLE INC.

16

17                 UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19                 SAN FRANCISCO DIVISION

20

21 ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

22            Plaintiff,                    **DECLARATION OF MELINDA S.
                                            RIECHERT IN SUPPORT OF
23     v.                                   DEFENDANT APPLE INC.'S MOTION
                                            TO STAY IN LIGHT OF
24 APPLE INC.,                              BANKRUPTCY PROCEEDINGS**

25            Defendant.                    Date:     October 23, 2025
                                            Time:     1:30 p.m.
26                                          Dept:     Courtroom 5, 17th Floor
                                            Judge:    Honorable Edward M. Chen
27

28

I, Melinda S. Riechert, declare as follows:

1.      I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. in this action. I submit this declaration in support of Apple's Motion to Stay in Light of Bankruptcy Proceedings. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.      Since July 21, 2025, Plaintiff/Debtor has engaged in extensive litigation activity; the following examples are illustrative and not exhaustive:

    a.   On July 24, 2025, Plaintiff/Debtor threatened to file a discovery letter brief with Magistrate Judge Westmore regarding Plaintiff/Debtor's demand for an ESI protocol, despite Apple's commitment to provide a proposal for ESI protocol the following week. Negotiation of an ESI protocol remains ongoing.

    b.   On July 28, 2025, the day before the parties were due to submit a proposed discovery plan to the Court, Plaintiff/Debtor objected to Apple's proposal, but did not provide any alternative proposal or substantive feedback prior to the July 29, 2025 filing date.

    c.   On August 4, 2025, Plaintiff/Debtor demanded that Apple provide comprehensive information regarding its document preservation efforts, despite offering no evidence of actual or threatened spoliation.

    d.   On August 5, 2025, Plaintiff/Debtor indicated her intention to notice a FRCP 30(b)(6) deposition of Apple.

    e.   On August 11, 2025, Plaintiff/Debtor produced over 900 documents encompassing over 6,000 pages, many of which are documents belonging to Apple that Plaintiff/Debtor appears to have improperly retained following her termination.

    f.   On August 12, 2025, Plaintiff/Debtor filed a discovery letter brief with Magistrate Judge Westmore (Dkt. No. 240), seeking an order (1) compelling Apple to produce a document it had previously committed to search for (and which it produced on August 15, 2025), and (2) imposing sanctions against Apple.

RIECHERT DECL. ISO
MOTION TO STAY
CASE NO. 23-cv-4597-EMC

g.  On August 13, 2025, Plaintiff/Debtor served four additional interrogatories on Apple, each containing multiple discrete subparts, notwithstanding the fact that she had already exhausted the 25 interrogatories permitted under FRCP 33. To date, the interrogatories counting discrete subparts served by Plaintiff/Debtor exceed 100 interrogatories.

h.  The same day, Plaintiff/Debtor served 22 additional requests for production of documents.

i.  Also the same day, Plaintiff/Debtor demanded that Apple supplement its response to her Interrogatory No. 1 within 14 days.

j.  Also the same day, Plaintiff/Debtor also issued two deposition notices, seeking to schedule depositions for current and former Apple employees one during the period September 8-19, the other during the period September 15-30, despite having previously represented that she was not available for her own deposition until the last week of September or the first week of October.

k.  Also the same day, Plaintiff/Debtor demanded that Apple provide copies of subpoenas it had issued, even though Apple has not issued any subpoenas, and threatened to seek sanctions for Apple's purported non-compliance with FRCP 45(a)(4). Subsequently, on August 18, 2025, Plaintiff/Debtor expressed her intent to move for a protective order, despite Apple's commitment to meet and confer regarding the scope of the proposed subpoenas.

l.  On August 18, 2025, Plaintiff/Debtor demanded that Apple provide additional information in response to her Interrogatory Nos. 2-13, which each contain many discrete subparts causing them to exceed 25 total interrogatories served, and threatened to seek sanctions if Apple did not comply.

m.  Also that same day, Plaintiff/Debtor stated her intention to subpoena Orrick for records and to subpoena Twitter/X for access to the confidential credit card information of someone she alleges harassed her under a pseudonym on Twitter/X.

n.  On August 19, 2025, Plaintiff/Debtor again threatened to seek FRCP 37 sanctions

RIECHERT DECL. ISO
APPLE'S MOTION TO STAY
CASE NO. 23-cv-4597-EMC

1    and to strike Apple's affirmative defenses.

2        o.    On August 20, 2025, Plaintiff/Debtor made further demands for signed statements

3            from Apple formally responding to her objections to the objections Apple included

4            in its discovery responses (something that is not required under the Federal Rules of

5            Civil Procedure) because she wishes to use them as evidence in this matter.

6        3.    At the August 5, 2025 Case Status Conference, the Court inquired as to how

7    Plaintiff/Debtor/Debtor's bankruptcy petition affected this case, noting that the Trustee in now in

8    control of the litigation. Plaintiff/Debtor acknowledged that she understood the Trustee now

9    controls the litigation but conveyed her belief that the Trustee would abandon the lawsuit to her.

10        I certify under penalty of perjury and pursuant to the laws of the United States that the

11    foregoing is true and correct.

12        Executed August 25, 2025 in London, England.

13

14

15                                          */s/ Melinda S. Riechert*
                                            Melinda S. Riechert

16

17

18

19

20

21

22

23

24

25

26

27

28

RIECHERT DECL. ISO
APPLE'S MOTION TO STAY
CASE NO. 23-cv-4597-EMC

1  JESSICA R. PERRY (SBN 209321)
   jperry@orrick.com
2  MELINDA S. RIECHERT (SBN 65504)
   mriechert@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA 94025-1015
   Telephone:    +1 650 614 7400
5  Facsimile:    +1 650 614 7401

6  KATHRYN G. MANTOAN (SBN 239649)
   kmantoan@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
8  405 Howard Street
   San Francisco, CA 94105-2669
9  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
10
   RYAN D. BOOMS (SBN 329430)
11 rbooms@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
12 1152 15th Street, N.W.
   Washington, D.C. 20005-1706
13 Telephone:    +1 202 339 8400
   Facsimile:    +1 202 339 8500
14
   Attorneys for Defendant
15 APPLE INC.

16

17                 UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                  SAN FRANCISCO DIVISION

20

21 ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

22              Plaintiff,                 **[PROPOSED] ORDER GRANTING
                                           DEFENDANT APPLE INC.'S MOTION
23      v.                                 TO STAY IN LIGHT OF
                                           BANKRUPTCY PROCEEDINGS**
24 APPLE INC.,
                                           Date:     October 23, 2025
25              Defendant.                 Time:     1:30 p.m.
                                           Dept:     Courtroom 5, 17th Floor
26                                         Judge:    Honorable Edward M. Chen

27

28

1    Defendant Apple Inc. ("Apple")'s Motion to Stay in Light of Bankruptcy Proceedings

2  came for hearing before this Court on October 23, 2025. Having reviewed the pleadings and papers

3  on file in this action, and having considered the arguments of counsel and Plaintiff/Debtor Ashley

4  Gjovik, and good cause appearing, IT IS HEREBY ORDERED:

5    Apple's Motion to Stay Proceedings in Light of Bankruptcy Proceedings is GRANTED.

6  Upon filing her bankruptcy petition, Plaintiff/Debtor lost standing to pursue these claims, as they

7  presumptively belong to the Chapter 7 Estate that the Trustee represents. Staying this action

8  promotes judicial efficiency and conserves judicial resources by allowing the Trustee time to

9  evaluate the claims at issue and decide how to proceed. The balance of equities also favors a stay,

10  particularly since the Trustee as the real party in interest agrees that a stay is appropriate to allow

11  him time to decide how to proceed.

12    **IT IS SO ORDERED.**

13

14

15  Dated: _____    _____
                                                      The Honorable Edward M. Chen
16                                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING
MOT. TO STAY
[23-cv-4597-EMC]

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:     +1 202 339 8400
Facsimile:     +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>               Plaintiff,<br><br>     v.<br><br>APPLE INC.,<br><br>               Defendant. | Case No. 23-cv-4597-EMC<br><br>**CERTIFICATE OF SERVICE** |

1  **CERTIFICATE OF SERVICE**

2        I am more than eighteen years old and not a party to this action. My business address is

3  Orrick, Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, California 94025. On

4  August 25, 2025, I served the following document(s):

5        **DEFENDANT APPLE INC.'S MOTION TO STAY IN LIGHT OF BANKRUPTCY**
      **PROCEEDINGS**
6

7        **DECLARATION OF MELINDA S. RIECHERT IN SUPPORT OF DEFENDANT**
      **APPLE INC.'S MOTION TO STAY IN LIGHT OF BANKRUPTCY**
      **PROCEEDINGS**
8

9        **DECLARATION OF RYAN D. BOOMS IN SUPPORT OF DEFENDANT APPLE**
      **INC.'S MOTION TO STAY IN LIGHT OF BANKRUPTCY PROCEEDINGS**

10        **[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S MOTION TO**
      **STAY IN LIGHT OF BANKRUPTCY PROCEEDINGS**
11

12  By Electronic Service: On all of the interested parties in this action by transmitting true and

13  correct copies of the documents identified above in portable document format from the email

14  address jromero@orrick.com to the email addresses below:

15        Ashley Gjovik (in pro per)                Mark G. Degiacomo
      ashleymgjovik@protonmail.com         mdegiacomo@harrisbeachmurtha.com
16        legal@ashleygjovik.com

17                                      Haris Beach Murtha Cullina PLLC
      Debtor/Plaintiff                    33 Arch Street, 12th Floor
18                                      Boston, MA 02110
      **Via ECF**
19                                      Bankruptcy Trustee

20                                      **Via Email**

21        I declare under penalty of perjury that the foregoing is true and correct. Executed on

22  August 25, 2025.

23                                    */s/ Josette Romero*
                                      Josette Romero

24

25

26

27

28

CERTIFICATE OF SERVICE
CASE NO. 23-cv-4597-EMC

1    JESSICA R. PERRY (SBN 209321)
     jperry@orrick.com
2    MELINDA S. RIECHERT (SBN 65504)
     mriechert@orrick.com
3    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
4    Menlo Park, CA  94025-1015
     Telephone:     +1 650 614 7400
5    Facsimile:     +1 650 614 7401

6    KATHRYN G. MANTOAN (SBN 239649)
     kmantoan@orrick.com
7    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
8    405 Howard Street
     San Francisco, CA 94105-2669
9    Telephone:     +1 415 773 5700
     Facsimile:     +1 415 773 5759
10
     RYAN D. BOOMS (SBN 329430)
11   rbooms@orrick.com
     ORRICK, HERRINGTON & SUTCLIFFE LLP
12   2100 Pennsylvania Avenue NW
     Washington, D.C. 20037
13   Telephone:     +1 202 339 8400
     Facsimile:     +1 202 339 8500
14
     Attorneys for Defendant
15   APPLE INC.

16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20

21   ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

22                  Plaintiff,               **DEFENDANT APPLE INC.'S
                                             ADMINISTRATIVE MOTION TO
23          v.                               SHORTEN TIME FOR BRIEFING AND
                                             HEARING ON DEFENDANT'S
24   APPLE INC.,                             MOTION TO STAY IN LIGHT OF
                                             BANKRUPTCY PROCEEDINGS**
25                  Defendant.
                                             Dept:      Courtroom 5, 17th Floor
26                                           Judge:     Honorable Edward M. Chen

27

28

**NOTICE OF MOTION AND MOTION**

NOTICE is hereby given of the filing of this motion pursuant to Civil Local Rules 6-1(b) and 6-3 by Apple Inc. ("Defendant" or "Apple"). This motion seeks to shorten the time for briefing and hearing on Apple's Motion to Stay in Light Of Bankruptcy Proceedings ("Motion to Stay"), which is being filed contemporaneously herewith, on the grounds that good cause exists to quickly determine whether to stay these proceedings to allow the Trustee of Plaintiff/Debtor's Chapter 7 Estate time to decide how to proceed in this action and because the Trustee agrees that a stay is appropriate.

Pursuant to the Civil Local Rules, Apple set the hearing on the Motion to Stay for October 23, 2025, the earliest available date. Apple requests that the hearing be held on September 4, 2025 at 1:30 p.m., or on a date sooner than October 23, 2025 as this Court's schedule permits. Apple further requests that any opposition from a party with standing be due by August 29, 2025, and Apple's reply be due by September 2, 2025. This request is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; and the Declaration of Jessica Perry, Declaration of Melinda Riechert, Declaration of Ryan Booms, and Proposed Order submitted concurrently herewith.

Dated: August 25, 2025

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  */s/ Jessica R. Perry*

JESSICA R. PERRY
Attorney for Defendant
APPLE INC.

- 1 -

Mot. to Shorten Time for Briefing and Hearing
on Defendant's Motion to Stay
[23-cv-4597-EMC]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Pursuant to Civil Local Rules 6-1(b) and 6-3, Apple Inc. Apple respectfully requests that its Motion to Stay be heard on shortened time so that the Court can quickly determine whether to stay this action to allow the Trustee for Plaintiff/Debtor Ashley Gjovik's Chapter 7 Estate time to decide how to proceed. The Trustee appointed to manage the Chapter 7 Estate—who is as of now the real party in interest with standing to prosecute this action—has not appeared before this Court but has confirmed that a stay is appropriate and does not object to this motion be heard on shortened time.[1] Notwithstanding Plaintiff/Debtor's prior representations to this Court that the Trustee was likely to abandon this litigation, it has since become clear no such decision has been reached. Instead, the Trustee's recent bankruptcy filings underscore that these claims in this action are currently an asset of the Chapter 7 Estate and that he is evaluating what to do with them.

Early resolution of this issue will prevent the parties from expending potentially unnecessary resources (and, in Plaintiff/Debtor's case, potentially resources of the Chapter 7 Estate) in litigating issues before the Trustee has an opportunity to weigh in. The Trustee's decision on how to proceed will directly impact at least one letter brief pending before the Magistrate Judge (with others threatened to be imminently filed). Given Plaintiff/Debtor's litigation approach, both parties and the Court would continue to needlessly expend time and energy on various rounds of written discovery, letter brief disputes to the Magistrate Judge, depositions, and pretrial motions that may not be warranted if the Trustee determines a different strategy is in the best interests of the Chapter 7 Estate. But pursuant to the Civil Local Rules and the Court's schedule, the earliest date the Court can hear Apple's Motion to Stay under the standard briefing schedule is October 23,

---

[1] Because the Trustee has "no objection to the administrative motion to shorten time" (Perry Decl. ¶ 3, Ex. A), this Motion to Shorten Time is effectively unopposed. *See In re Meehan*, No. AP 13-01208-ES, 2014 WL 4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014), aff'd, 659 F. App'x 437 (9th Cir. 2016) ("Only a trustee may pursue a cause of action belonging to the bankruptcy estate. The debtor can pursue such claims only if they are abandoned by the estate.") (citations omitted); *Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) ("[I]n the context of a Chapter 7 bankruptcy, it is the bankruptcy trustee and not the debtor who is the real party in interest with respect to property of the estate, with the right to bring any legal claims that belong to the estate.").

MOT. TO SHORTEN TIME FOR BRIEFING AND HEARING
ON DEFENDANT'S MOTION TO STAY
[23-CV-4597-EMC]

1   2025. *See* Civil L.R. 7-2. Accordingly, and for the reasons set forth below, Apple requests that the

2   hearing on its Motion to Stay be held on September 4, 2025, or on a date sooner than October 23,

3   2025 as this Court's schedule permits. Apple further requests that any opposition from a party with

4   standing be due by August 29, 2025 and Apple's reply be due by September 2, 2025.[2]

5   ## II.    **MEET AND CONFER**

6       On August 25, 2025, Apple asked the Trustee and Plaintiff/Debtor whether they would

7   agree/stipulate to shortening the time for briefing and a hearing on Apple's Motion to Stay. The

8   Trustee agreed to shorten time and further agreed a stay was appropriate. Decl. of Jessica Perry in

9   Support of Admin. Mot. To Shorten Time, ¶ 3, Ex. A. Plaintiff/Debtor, however, did not agree to

10  either request, stating she needed additional information from Apple and the Trustee. *Id.*, ¶ 4, Ex.

11  B. Apple provided additional information confirming the authority for its request. *Id.*

12  ## III.    **ARGUMENT**

13      Federal Rule of Civil Procedure 6(d) and Civil Local Rule 6-3 permit the Court to prescribe

14  shorter times for the filing and service of motion papers for good cause shown. *See, e.g., Faerfers*

15  *v. Caviar Creator, Inc.*, No. 2:04-CV-2690-MCE-PAN, 2006 WL 768713, at *1 (E.D. Cal. Mar.

16  27, 2006). Apple submits that good cause exists to shorten the time for the briefing and hearing

17  schedule for its Motion to Stay, which is currently noticed for hearing on October 23, 2025.

18      Shortening time for briefing and hearing for the Motion for Stay is appropriate here. Apple

19  currently is being forced to expend resources to actively litigate a case that Plaintiff/Debtor

20  presently lacks standing to prosecute. *See In re Bronner*, 135 B.R. 645, 647 (B.A.P. 9th Cir. 1992)

21  (citing 11 U.S.C. § 541(a)(1)) ("A debtor's estate is comprised of all legal or equitable interests

22  owned by the debtor as of the commencement of the case. Title to estate property generally remains

23  in the trustee unless the property is abandoned or intentionally re-vested."). A stay will give the

24  real party in interest, the Trustee of the Chapter 7 Estate, an opportunity to evaluate this action and

25  decide how to proceed. To the extent Plaintiff/Debtor challenges the Trustee's right to prosecute

26

27  [2] However, the Trustee—the lone real party in interest as of now—is unlikely to oppose, given
    that has already indicated he "agree[s] with the entry of a stay pending [his] decision on how to
    proceed" with the claims here, which became presumptively part of the Chapter 7 Estate as of

28  Plaintiff/Debtor's bankruptcy filing. Perry Decl. ¶ 3, Ex. A.

MOT. TO SHORTEN TIME FOR BRIEFING AND
HEARING ON DEFENDANT'S MOTION TO STAY
[23-CV-4597-EMC]

1   this action on behalf of the Chapter 7 Estate, a stay is further warranted to allow the bankruptcy

2   court to decide that issue and bring clarity to the Court and the parties.

3          An expedited schedule and hearing is necessary because, notwithstanding Plaintiff/Debtor's

4   representations to this Court that the Trustee would likely abandon this litigation, the Trustee has

5   taken no action to abandon the claims here. Decl. of Melinda Riechert in Supp. of Apple's Motion

6   to Stay, ¶ 3. Contrary to Plaintiff/Debtor's prior representations to this Court, during the Section

7   341 Meeting of Creditors, the Trustee said nothing about abandoning the Estate's control of this

8   litigation; on the contrary, he has taken steps in the bankruptcy proceeding (including continuing

9   the Section 341 Meeting of Creditors) to afford more time to discuss Plaintiff/Debtor's pending

10  litigation with her. *See* Decl. of Ryan Booms in Supp. of Apple's Motion to Stay, ¶¶ 2-6. Further,

11  the Trustee agrees that a stay is appropriate while he determines how to proceed. Perry Decl., ¶ 3,

12  Ex. A. Given that the Trustee has not abandoned this action (as Plaintiff/Debtor suggested he

13  would), Plaintiff/Debtor lacks standing to prosecute the claims here.

14         Nonetheless, Plaintiff/Debtor has continued to aggressively proceed in this case without any

15  apparent consent of the Trustee. Her conduct includes recently filing a discovery letter brief seeking

16  spoliation sanctions related to a document Apple had committed to producing (and did produce)

17  (*see* Dkt. Nos. 240-241) and a reply brief in violation of Magistrate Judge Westmore's order

18  confirming "[n]o replies are permitted" (*see* Dkt Nos. 230, 245), among a litany of other actions

19  taken to manufacture and pursue contentious discovery disputes, thus taxing the resources of the

20  Court and the parties. *See* Decl. of Melinda Riechert in Supp. of Apple's Motion to Stay ¶ 2. Apple

21  is legitimately concerned that this case is improperly being prosecuted by Plaintiff/Debtor even

22  though she is no longer the real party in interest. But if Apple does not respond to Plaintiff/Debtor's

23  discovery requests and urgently stated meet and confer demands, she says she will seek sanctions

24  and has already filed at least one brief attempting to do so. This puts Apple in an untenable

25  position—one this Court can quickly remedy with an expedited hearing on its Motion to Stay.

26         Moreover, continuing to actively litigate the present case for the next two months while

27  Apple's Motion to Stay is pending and set for hearing presents multiple harms that are avoidable

28  through an expedited briefing and hearing of Apple's Motion to Stay. Waiting until October 23,

MOT. TO SHORTEN TIME FOR BRIEFING AND
HEARING ON DEFENDANT'S MOTION TO STAY
[23-CV-4597-EMC]

2025 to hear Apple's Motion to Stay will require the Court to devote time and judicial resources that may be wasted if the Trustee's decisions about how to proceed with this case differs from those of Plaintiff/Debtor. There is currently one pending letter brief before Magistrate Judge Westmore, with the likelihood of at least two more being filed before the Motion to Stay hearing date. Because the litigation is presumptively controlled by the Trustee, who may take a different approach to discovery in the interest of preserving as much of the Chapter 7 Estate as possible, the letter briefs and subsequent hearing may become unnecessary.

Finally, Apple's Motion to Stay is relatively short in length and the applicable law straightforwardly holds that the Trustee is the real party in interest with standing to prosecute these claims. The Trustee should be afforded time to evaluate the claims at issue without the Chapter 7 Estate incurring ongoing litigation expenses or potentially suffering adverse rulings for discovery motions he has not approved. Alternatively, if Plaintiff/Debtor believes that she remains the real party in interest here notwithstanding her bankruptcy filing, that issue should be resolved in the bankruptcy court before further proceedings here, so that the Court can have confidence these proceedings are being conducted by a plaintiff with standing. Apple's request for shortening of the time for briefing and hearing is justified under the circumstances and should be granted.

## IV.    **DISCLOSURE OF PREVIOUS TIME MODIFICATIONS**

Pursuant to Local Rule 6-3(5), the following time modifications have previously been made in this case:

- On October 10, 2024, the Court granted the Parties' stipulation regarding Apple's responsive pleading deadline and additional deadlines. Dkt. No. 12.

- On October 25, 2024, the Court granted Plaintiff/Debtor an additional week to file the Fifth Amended Complaint. Dkt. No. 123.

- On February 5, 2025, the Court granted Defendant's motion to stay briefing and the hearing on Plaintiff/Debtor's motion to amend pending resolution of Apple's then-pending motion to dismiss. Dkt. No. 160.

There are presently no deadlines for discovery or dispositive motions and no trial date has yet been set. Thus, advancing the hearing date on Apple's Motion to Stay will not impact the current

MOT. TO SHORTEN TIME FOR BRIEFING AND
HEARING ON DEFENDANT'S MOTION TO STAY
[23-CV-4597-EMC]

1    schedule of the case.

2    **V.    CONCLUSION**

3        For the foregoing reasons, Apple respectfully requests that the Court grant its request to

4    shorten time for the briefing and hearing on Apple's Motion to Stay.

5    Dated: August 25, 2025                ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7                          By:        */s/ Jessica R. Perry*
                                         JESSICA R. PERRY
8                                     Attorney for Defendant
                                         APPLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mot. to Shorten Time for Briefing and
Hearing on Defendant's Motion to Stay
[23-cv-4597-EMC]

1    JESSICA R. PERRY (SBN 209321)
     jperry@orrick.com
2    MELINDA S. RIECHERT (SBN 65504)
     mriechert@orrick.com
3    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
4    Menlo Park, CA 94025-1015
     Telephone:     +1 650 614 7400
5    Facsimile:     +1 650 614 7401

6    KATHRYN G. MANTOAN (SBN 239649)
     kmantoan@orrick.com
7    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
8    405 Howard Street
     San Francisco, CA 94105-2669
9    Telephone:     +1 415 773 5700
     Facsimile:     +1 415 773 5759
10

11   RYAN D. BOOMS (SBN 329430)
     rbooms@orrick.com
     ORRICK, HERRINGTON & SUTCLIFFE LLP
12   2100 Pennsylvania Avenue NW
     Washington, D.C. 20037
13   Telephone:     +1 202 339 8400
     Facsimile:     +1 202 339 8500
14
     Attorneys for Defendant
15   APPLE INC.

16

17                   UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20

21   ASHLEY GJOVIK,                         Case No. 23-cv-4597-EMC

22                    Plaintiff,            **DECLARATION OF JESSICA R.
                                            PERRY IN SUPPORT OF DEFENDANT
23          v.                              APPLE INC.'S ADMINISTRATIVE
                                            MOTION TO SHORTEN TIME FOR
24   APPLE INC.,                            BRIEFING AND HEARING ON
                                            DEFENDANT'S MOTION TO STAY
25                    Defendant.            PROCEEDINGS**

26                                          Dept:     Courtroom 5, 17th Floor
                                            Judge:    Honorable Edward M. Chen
27

28
                                                    PERRY DECL. ISO MOT. TO SHORTEN
                                                    TIME RE DEF.'S MOTION TO STAY
                                                    CASE NO. 23-cv-4597-EMC

I, Jessica R. Perry, declare as follows:

1.      I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. in this action. I submit this declaration in support of Apple's Administrative Motion to Shorten Time for Briefing and Hearing on Defendant's Motion to Stay Proceedings. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.      On August 25, 2025, I contacted Plaintiff/Debtor Ashley Gjovik and Mark Degiacomo, the Trustee of her Chapter 7 Estate in the bankruptcy matter, via email, informing them that Apple intends to file a motion to stay the litigation in order to allow the Trustee time to determine if and how to pursue the claims in this case, and asking the Trustee if he agreed that a stay is appropriate. In addition, I also asked both if they would agree/stipulate to the hearing date being set for September 4, 2025 at 1:30 p.m. PT, with any opposition due by August 29, 2025 and any reply due on September 2, 2025.

3.      The Trustee responded on August 25, 2025, confirming that he does not object to Apple's administrative motion to shorten time and further agreed a stay was appropriate pending his decision on how to proceed in this action. A true and correct copy of my correspondence with the Trustee and his response is attached as Exhibit A.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

- 1 -

PERRY DECL. ISO MOT. TO SHORTEN
TIME RE DEF.'S MOTION TO STAY
CASE NO. 23-cv-4597-EMC

4.       Plaintiff/Debtor responded on August 25, 2025, informing counsel for Apple that she was unable to respond substantively other than to object because she required additional information from both Apple and the Trustee. Apple provided additional information in response to Plaintiff's request. To my knowledge, at the time of the filing of this Motion, the Trustee had not responded to Plaintiff's request for additional information. A true and correct copy of my correspondence with the Plaintiff/Debtor is attached as Exhibit B.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed August 25, 2025 in Menlo Park, California.


                                                        _____
                                                        */s/ Jessica R. Perry*
                                                        Jessica R. Perry

# EXHIBIT A

| | |
|---|---|
| **From:** | Mark G. DeGiacomo <mdegiacomo@harrisbeachmurtha.com> |
| **Sent:** | Monday, August 25, 2025 7:54 AM |
| **To:** | Perry, Jessica R. |
| **Cc:** | Ashley M. Gjovik;  Ashley M. Gjøvik ; Riechert, Melinda; Mantoan, Kathryn G.; Horton, Nicholas J.; Booms, Ryan; Perry, Jessica R. |
| **Subject:** | Re: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings |

**[EXTERNAL]**

I have no objection to the administrative motion to shorten time and I can confirm that I agree with the entry of a stay pending my decision on how to proceed.


Sent from my iPhone


**Mark G. DeGiacomo** | Partner
Direct: 617.457.4039 | Email: mdegiacomo@harrisbeachmurtha.com



**HARRISBEACHMURTHA.COM**
Boston Office | 33 Arch Street, 12th Floor, Boston, MA 02110-2320
617.457.4000 | Fax: 617.482.3868



On Aug 25, 2025, at 10:27 AM, Perry, Jessica R. <jperry@orrick.com> wrote:


Mr. DeGiacomo and Ms. Gjovik:

I write to advise that Apple intends to file a motion to stay today in N.D. Cal. Case No. 23-cv-04597 – a prepetition litigation brought by Ms. Gjovik, which is now property of her Chapter 7 bankruptcy estate (*see In re Bronner,* 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992)) – to allow the Trustee time to determine how to proceed in this action as the real party in interest.

We will also be filing an administrative motion to have the motion to stay be heard on shortened time, and will request that the hearing on the motion to stay be held next Thursday, September 4, 2025 at 1:30 p.m. PT (with any opposition due by August 29 and any reply due by September 2).

Although we believe only the Trustee's agreement/stipulation to the motion to shorten time is necessary (given that the Chapter 7 bankruptcy estate, not Ms. Gjovik, is the lone party with standing at present to continue the case), we would appreciate hearing from each of you whether

you will agree/stipulate to the administrative motion to shorten time.  We would also appreciate confirmation that the Trustee agrees that entry of a stay would be appropriate in this circumstance.

Thank you,
Jessica

**Jessica Perry**
Partner
Orrick
Silicon Valley    <image001.jpg>
T +1-650-614-7350
jperry@orrick.com

<image002.png>

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

# EXHIBIT B

| | |
|---|---|
| **From:** | Perry, Jessica R. |
| **Sent:** | Monday, August 25, 2025 4:04 PM |
| **To:** | Ashley M. Gjovik (Legal Matters) |
| **Cc:** | mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik; Riechert, Melinda; Mantoan, Kathryn G.; Horton, Nicholas J.; Booms, Ryan |
| **Subject:** | RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings |

Ashley:

We believe you are mistaken that this is still your lawsuit to manage and control. We cited in our initial email authority supporting our motion to stay.  *See In re Bronner*, 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992) (noting the rule that prepetition legal claims become "property of the estate as of the commencement of [a Chapter 7 bankruptcy] case"); *see also id*. at 647 (citing 11 U.S.C. § 541(a)(1)) ("A debtor's estate is comprised of all legal or equitable interests owned by the debtor as of the commencement of the case. Title to estate property generally remains in the trustee unless the property is abandoned or intentionally re-vested.").

Other courts hold similarly and underscore that where a trustee has not abandoned prepetition legal claims, a plaintiff/debtor lacks standing to prosecute them. *See In re Meehan*, No. AP 13-01208-ES, 2014 WL 4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014), *aff'd*, 659 F. App'x 437 (9th Cir. 2016) ("Only a trustee may pursue a cause of action belonging to the bankruptcy estate. The debtor can pursue such claims only if they are abandoned by the estate.") (citations omitted); *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) ("Because a Chapter 7 debtor forfeits his prepetition assets to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim unless the trustee abandons the asset, which then returns the claim to the possession and control of the debtor.") (citation omitted); *In re Harris*, 450 B.R. 324, 335 n. 46 (Bankr. D. Mass. 2011) (holding that where prepetition claims "have not been formally abandoned by the Trustee, ... it remains the Trustee, and not the Debtor, who has standing to prosecute those claims") (citations omitted).

We will proceed to file our motion to stay, and are requesting a briefing schedule that permits time for opposition and reply briefs.

As to my emails to you regarding the meet and confer process related to your interrogatories, your characterization is inaccurate.

Regards,
Jessica

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 2:53 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>;

Booms, Ryan <rbooms@orrick.com>
**Subject:** Re: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings


**[EXTERNAL]**

Apple counsel,

I'm checking in again and asking for your response to my request for information, as detailed and sent to you nearly five hours ago.

Mr. DeGiacomo is on vacation, and I am not scheduled to speak with him or anyone else at/with Office of the Trustee regarding my bankruptcy case until Sept. 8 2025 at the earliest. There has been not yet been any substantive discussion about this civil litigation in my bankruptcy case, and thus this threatened request for an emergency stay appears to be originating unilaterally from Apple.

Therefore, my requested information about the statements you made this morning and your threat to file these motions by EOD today regardless of my position, needs to be provided to me and would only come from Apple's counsel.

This is still my lawsuit, I am still managing it, and you need to make an attempt to meet/confer with me in good faith prior to filing motions like this. There is no rule, law, or policy that says once someone files bankruptcy that the DOJ Office of the Trustee would suddenly by default have to approve each and every motion that person files or any litigation decision that person makes -- other then matters related to settlements (which you said on the record on 8/5 that you do not want to discuss and see no point in any further conference).

You cannot just unilaterally declare that I'm no longer party to this lawsuit, or this is no longer my lawsuit, or that I cannot file or respond to motions in my own lawsuit without DOJ approval. That's absurd.

Thus far, I've heard nothing from you other than your three emails at midnight last night essentially saying you won't talk to me anymore going forward (again). The Court already told you that you can not say that and you have to participate in this proceeding, including at least some form of meet/confer. Then this morning you now claim this isn't even my lawsuit anymore -- which is inaccurate and bizarre.

It's already past 5PM my time and tomorrow is my birthday. I'd prefer to not have to deal with this matter late tonight or at all tomorrow. If we can instead please meet/confer this week about whatever your actual concerns are, perhaps we can sort out a compromise and avoid unnecessary motion practice.

To start, please respond to my earlier questions and my request for information.

Thank you.

-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**


Sent with Proton Mail secure email.

On Monday, August 25th, 2025 at 12:57 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Hello,
>
> I am unable to respond to you substantively at this time other than to object, because there's no disclosed legal basis for this request. As a preliminary matter, I seek information as to the basis for requesting a stay, and why that stay would be considered an emergency.

2

In my Bankruptcy case, the Trustee has not consulted me regarding any Trustee plans or interest in this *Gjovik v Apple* civil litigation, or told me there was any communication with Apple about this litigation, or about any of my other litigation with Apple. This is required under Rule 2015(a) and 11 U.S.C. § 704(a)(9) prior to intervening or otherwise disrupting a debtor's pending affairs -- unless some other federal statute preempts this request, but that has not been disclosed to me.

While the U.S. government controls my pecuniary legal claims during a Chapter 7 bankruptcy proceeding, this case also includes injunctive and declaratory relief, as well as punitive damages and statutory fines. I also have a right to information about estate administration as a "party in interest," and as of now, that has not been provided to me regarding this request.  See, 11 U.S.C. § 704(a)(9).

Further, there are no approved employment applications for Trustee lawyers to manage this litigation generally, nor are there any pending applications for employment/labor attorneys who would know how to properly manage the litigation of the retaliation claims. See, Rule 2014 and 11 U.S.C. § 327(a).

In addition, while the DOJ abruptly and without explanation switched my bankruptcy case from "no asset" to "asset," as of today, no one has informed me what DOJ thinks that asset is (which is required by bankruptcy law). To my own actual knowledge, I have no vested assets and no funds that could pay creditors, and as such my bankruptcy would be a full discharge. Therefore, there's no apparent basis that could justify stopping litigation midway and investing government resources (and taxpayer dollars) into this long-running civil litigation without even consulting the Plaintiff/Debtor.

This civil litigation has been ongoing since September 2023, with the similar adjudications ongoing since August 2021, and counsel from Orrick retained to defend Apple from my retaliation claims starting in August 2021 (four years ago). The next civil case events are a deadline for a Joint Case Management Report on October 14 and a Status Conference on October 21. (Dkt. 242). Beyond that, I have a pending motion for leave to request sanctions against Apple, two notices of requests for depositions of Apple employees in September 2025 pending with Apple, and multiple discovery disputes awaiting Apple's response.

Most recently, I formally complained to Apple/Orrick about improper discovery misconduct that would be a new basis for sanctions and asked Orrick to file a joint letter to the court about it, and also complained about what appeared to be intimidation and harassment by their counsel at my 341 meeting on 8/21. Orrick responded late last night (on a Sunday) refusing to meet/confer on open issues or discuss further. As such, this request to stay, based on my own knowledge, thus appears to be Apple's attempt to obstruct my open requests and planned escalations.

The legal standard for granting a stay of litigation is clearly not met here, and no one has attempted to provide a proffered legal basis as to success on the merits, irreparable harm in the absence of relief, the balance of equities, or the public interest -- or even basic justification as to why it would be needed considering there are no major case events until an October 21 2025 status conference -- more than two months away. Similarly, a request could simply be filed to reschedule that conference instead of stay all litigation, if there was even a justification for that.

Even more untethered is any supposed basis to treat this request as an emergency motion for a stay, where supposedly irreparable harm would occur during the time needed to consider a response. Yet no one has offered any sort of basis for the request, the request appears to directly conflict with and violate bankruptcy rules and norms, and there's no case events or outcomes impacted by Trustee consideration in parallel with ongoing litigation. Thus the request instead appears to be Apple's counsel trying to avoid their discovery obligations and the consequences for their prior discovery misconduct in this case.

To both Apple and the Trustee, I request more information about what this request is about, why its being made, and what the justification is.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, August 25th, 2025 at 10:27 AM, Perry, Jessica R. <jperry@orrick.com> wrote:

> Mr. DeGiacomo and Ms. Gjovik:
>
> I write to advise that Apple intends to file a motion to stay today in N.D. Cal. Case No. 23-cv-04597 – a prepetition litigation brought by Ms. Gjovik, which is now property of her Chapter 7 bankruptcy estate (*see In re Bronner,* 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992)) – to allow the Trustee time to determine how to proceed in this action as the real party in interest.
>
> We will also be filing an administrative motion to have the motion to stay be heard on shortened time, and will request that the hearing on the motion to stay be held next Thursday, September 4, 2025 at 1:30 p.m. PT (with any opposition due by August 29 and any reply due by September 2).
>
> Although we believe only the Trustee's agreement/stipulation to the motion to shorten time is necessary (given that the Chapter 7 bankruptcy estate, not Ms. Gjovik, is the lone party with standing at present to continue the case), we would appreciate hearing from each of you whether you will agree/stipulate to the administrative motion to shorten time. We would also appreciate confirmation that the Trustee agrees that entry of a stay would be appropriate in this circumstance.
>
> Thank you,
>
> Jessica
>
> **Jessica Perry**
> Partner
> Orrick
> Silicon Valley Ⓥ
> T +1-650-614-7350
> jperry@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by l...
received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immedia...
the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at
https://www.orrick.com/Privacy-Policy to learn about how we use this information.

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
|---|---|
| Plaintiff, | **[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SHORTEN TIME FOR BRIEFING AND HEARING ON DEFENDANT'S MOTION TO STAY PROCEEDINGS IN LIGHT OF BANKRUPTCY PROCEEDINGS** |
| v. | |
| APPLE INC., | |
| Defendant. | |
| | Dept:    Courtroom 5, 17th Floor |
| | Judge:    Honorable Edward M. Chen |

1    The Court has considered Defendant Apple Inc.'s Administrative Motion to Shorten time

2    for Briefing and Hearing On Defendant's Motion to Stay in Light of Bankruptcy Proceedings. For

3    cause appearing, the court GRANTS Defendant's motion to shorten time.

4        Defendant's Motion to Stay shall be heard on September 4, 2025 at 1:30 p.m. Any

5    Opposition to Defendant's Motion to Stay shall be filed by a party with standing by August 29,

6    2025. Defendant's Reply in Support of Its Motion to Stay shall be filed by September 2, 2025.

7        **IT IS SO ORDERED.**

8

9    Dated: _____

10                              Edward M. Chen
                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

1 | JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
2 | MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
3 | ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
4 | Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
5 | Facsimile:    +1 650 614 7401

6 | KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
7 | ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
8 | 405 Howard Street
San Francisco, CA 94105-2669
9 | Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

10 |
RYAN D. BOOMS (SBN 329430)
11 | rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
12 | 2100 Pennsylvania Avenue NW
Washington, D.C. 20037
13 | Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

14 |
Attorneys for Defendant
15 | APPLE INC.

16 |

17 | UNITED STATES DISTRICT COURT

18 | NORTHERN DISTRICT OF CALIFORNIA

19 | SAN FRANCISCO DIVISION

20 |

21 | ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC

22 | Plaintiff, | **CERTIFICATE OF SERVICE**

23 | v.

24 | APPLE INC.,

25 | Defendant.

26 |

27 |

28 |

## CERTIFICATE OF SERVICE

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, California 94025. On August 25, 2025, I served the following document(s):

**DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SHORTEN TIME FOR BRIEFING AND HEARING ON DEFENDANT'S MOTION TO STAY IN LIGHT OF BANKRUPTCY PROCEEDINGS**

**DECLARATION OF JESSICA R. PERRY IN SUPPORT OF DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SHORTEN TIME FOR BRIEFING AND HEARING ON DEFENDANT'S MOTION TO STAY PROCEEDINGS**

**[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SHORTEN TIME FOR BRIEFING AND HEARING ON DEFENDANT'S MOTION TO STAY PROCEEDINGS IN LIGHT OF BANKRUPTCY PROCEEDINGS**

By Electronic Service: On all of the interested parties in this action by transmitting true and correct copies of the documents identified above in portable document format from the email address jromero@orrick.com to the email addresses below:

| | |
|---|---|
| Ashley Gjovik (in pro per)<br>ashleymgjovik@protonmail.com<br>legal@ashleygjovik.com | Mark G. Degiacomo<br>mdegiacomo@harrisbeachmurtha.com |
| Debtor/Plaintiff | Haris Beach Murtha Cullina PLLC<br>33 Arch Street, 12th Floor<br>Boston, MA 02110 |
| **Via ECF** | Bankruptcy Trustee |
| | **Via Email** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 25, 2025.

_____/s/ Josette Romero_____
Josette Romero

CERTIFICATE OF SERVICE
CASE NO. 23-cv-4597-EMC

DEBTOR'S MOTION FOR ORDER
TO SHOW CAUSE AND SANCTIONS
AGAINST CREDITOR APPLE INC. (21011446)

CHAPTER 7 CASE NO: 25–11496

# EXHIBIT I

AUGUST 28 2025

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik,** *an individual*, | Case No. 3:23-CV-04597-EMC (RICO, Civil Rights, Retaliation, Labor Code Violations, Toxic Torts, Cal. Bus. & Prof. Code § 17200, IIED/NIED). |
| Plaintiff, | |
| vs. | **Plaintiff's Opposition to Defendant's Emergency Motion for a Stay** |
| **Apple Inc.,** *a corporation*, | |
| Defendant. | HEARING: Dept: Courtroom 5, 17th Fl. & Zoom Judge: Honorable Edward M. Chen Date: October 23 2025 Time: 1:30 PM PST |

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Chapman v. County of Douglas,* 107 U.S. 348, 355 (1883). ---------------------------------------------- 3

*Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000) ------------- 17

*Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) ------------------------------------------------ 17

## US COURT OF APPEALS CASES

*Blausey v. U.S. Trustee,* 552 F.3d 1124, 1133 (9th Cir. 2009) --------------------------------------- 6

*Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) ------------------------------------------------- 21

*Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997) --------------------------------------------------- 25

*In re A & C Properties* 784 F.2d 1377 (9th Cir. 1986) -------------------------------------------------- 6

*In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.), cert. denied, 484 U.S. 819, 108 S. Ct. 77, 98 L.

    Ed. 2d 40 (1987) ------------------------------------------------------------------------------------------- 6

*Katz v. Comm'r.,* 335 F.3d 1121, 1127 (10th Cir. 2003) ----------------------------------------------- 4

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005) ------- 21

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) -------------------- 4

*Parker v. Bain,* 68 F.3d 1131 (9th Cir. 1995) ------------------------------------------------------- 1, 6

*Read v. Duck (In re Jacksen),* 105 B.R. 542, 545 (9th Cir. BAP 1989) --------------------------------1

*St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982) ----- 6

*United States v. Aguilar,* 515 U.S. 593, 609-10 (1995) ------------------------------------------------ 24

*United States v. Koziol,* 993 F.3d 1160, 1170 (9th Cir. 2021) --------------------------------------- 25

*United States v. Lester,* 749 F.2d 1288 (9th Cir. 1984) ------------------------------------------------ 24

*United States v. Rasheed,* 663 F.2d 843, 851 (9th Cir.1981) ----------------------------------------- 24

*United States v. Thomas,* 612 F.3d 1107, 1123-24 (9th Cir.2010)------------------------------------- 24

*United States v. Weisman*, 624 F.2d 1118, 1123–24 (2d Cir. 1980) -------------------------------- 20

*United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). ----- 23

— ii —

1

# US District Court Cases

2

*Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989)----------------- 6

3

*Barletta v. Tedeschi,* 1990 WL 194478 (N.D.N.Y. Dec. 3, 1990) ------------------------------------- 9

4

*Callan v. State Chemical Mfg. Co.,* 584 F. Supp. 619, 622 (E.D. Penn. 1984) -------------------- 24

5

*Carley Capital Group v. Fireman's Fund Insurance Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989) ---- 6

6

*Perrong v. DVD II Group, LLC,* 2023 WL 3229934 (E.D. PA. May 3, 2023). -------------------- 14

7

*Williams v. Hall,* 683 F. Supp. 639, 642 (E.D. Ky. 1988) ------------------------------------------- 24

8

9

# U.S. and state Statutes

10

11 U.S. Code § 525(a)-(b) ------------------------------------------------------------------------------ 11

11

11 U.S.C. § 327 ------------------------------------------------------------------------------------ 5, 9, 11

12

11 U.S.C. § 362(b) --------------------------------------------------------------------------------------- 6

13

11 U.S.C. § 521 --------------------------------------------------------------------------------------------- 8

14

11 U.S.C. § 521(a)(1)(B)(i) ----------------------------------------------------------------------------- 2

15

11 U.S.C. § 541 --------------------------------------------------------------------------------------- 8, 17

16

11 U.S.C. § 541(d) ----------------------------------------------------------------------------------------- 17

17

11 U.S.C. § 554 ---------------------------------------------------------------------------------------------- 9

18

11 U.S.C. § 554(b)-(c) ------------------------------------------------------------------------------------- 9

19

11 U.S.C. § 704(a) (1) ------------------------------------------------------------------------------------- 5

20

11 U.S.C. § 704(a)(1) ---------------------------------------------------------------------------------- 5, 9

21

11 U.S.C. § 726(a)(1)-(6) ---------------------------------------------------------------------------------- 6

22

11 U.S.C. §§ 101-1330 -------------------------------------------------------------------------------------- 7

23

18 U.S.C. § 1341/1343 ------------------------------------------------------------------------------------ 20

24

18 U.S.C. § 1503---------------------------------------------------------------------------------- 20, 23, 24

25

18 U.S.C. § 1512 -------------------------------------------------------------------------------------------- 23

26

18 U.S.C. § 152 ------------------------------------------------------------------------------------------ 24, 25

27

18 U.S.C. § 1961(1) ---------------------------------------------------------------------------------------- 23

28

18 U.S.C. §§ 1001 ------------------------------------------------------------------------------------------ 20

18 U.S.C. §§ 1341 and 1343 ------------------------------------------------------ 25

18 U.S.C. §§ 1341, 1343 ---------------------------------------------------------- 25

28 U.S.C. § 1334 ------------------------------------------------------------- 4, 7

33 U.S.C. § 1365(b)(1)(B) ------------------------------------------------------- 17

## U.S. AND STATE RULES & REGULATIONS

Fed. R. Bankr. P. 2002 ----------------------------------------------------------- 5

Fed. R. Bankr. P. 6004 --------------------------------------------------------- 5, 9, 12

Fed. R. Bankr. P. 6007 ----------------------------------------------------------- 9

Fed. R. Civ. P. 24 --------------------------------------------------------------- 4

Fed. R. Civ. P. 24 and 25 ------------------------------------------------------- 14

Fed. R. Civ. P. 25 --------------------------------------------------------------- 4

Fed. R. Civ. P. Rules 24 and 25 -------------------------------------------------- 3

# Table of Contents

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR A STAY ................................................................................................ 1

SUMMARY ........................................................................................................... 1

THE BANKRUPTCY TRUSTEE LACKS AUTHORITY TO AGREE TO ANY LITIGATION STAY; THIS COURT SHOULD DEFER TO BANKRUPTCY COURT JURISDICTION .................................................................................................... 3

    I.    Defendant's Motion Relies on Legally Void Communications from a Non-Party ...... 4

    II.    Bankruptcy Court Has Primary Jurisdiction Over Trustee Authority and Conduct 4

    III.    The Trustee's Procedural Violations Render His "Agreement" Invalid ................. 5

    IV.    Defendant Cannot Eliminate Plaintiff Through Unauthorized Trustee Communications ........................................................................................... 5

    V.    This Court Should Deny the Motion ................................................................. 7

DEFENDANT'S "MISCONDUCT" ALLEGATIONS ARE LEGALLY FRIVOLOUS AND MISSTATE BANKRUPTCY LAW .......................................................................... 8

    VI.    Defendant Confuses Disclosed Claims with Undisclosed Claims - Two Entirely Different Legal Doctrines ................................................................................ 8

    VII.    Debtor Standing Continues Until Trustee Formal Administration or Abandonment ................................................................................................. 9

    VIII.    Misrepresentation of the Role of Exemptions in Bankruptcy Law .................. 10

    IX.    Investigation Is Not Administration - Debtor Standing Continues During Investigation Period ...................................................................................... 11

    X.    Plaintiff's "Abandonment Expectation" Was Reasonable, Not Misconduct ......... 12

    XI.    Defendant's Motion Seeks to Weaponize Bankruptcy Procedures ..................... 12

NO EMERGENCY EXISTS ................................................................................. 13

— v —

XII.    Defendant Forum Shops to Avoid Discovery Judge Westmore ..................... 14

XIII.   Defendant Intends to Obtain a Court Order Based on Misstatement of Law and its Own Misconduct In order to Block an EPA Citizen Suit ........................................ 16

XIV.    This is Not the First Time Defendant has Tried to Remove Plaintiff from her Lawsuit in Order to Avoid Discovery Obligations ................................................... 17

DEFENDANT IDENTIFIES NEED FOR TRUSTEE CLARITY; THE COURT CAN PROVIDE IT ....................................................................................... 19

PLAINTIFF'S REQUEST TO AMEND / PRESERVATION OF RIGHT TO ADD ADDITIONAL PREDICATE ACTS TO RICO CLAIMS ......................................... 19

XV.     Systematic False Statements and Evidence Concealment Across Multiple Proceedings ........................................................................................... 19

XVI.    Attempted Interference with Possible FCA Enforcement Action ................... 21

XVII.   Additional Predicate Acts Arising from concurrent Bankruptcy Proceedings .. 22

XVIII.  Reservation of Rights / Request for Reconsideration and/or Leave to Amend 25

CONCURRENTLY FILED MOTIONS WITH THE BANKRUPTCY COURT ................ 26

CONCLUSION ............................................................................................... 28

CERTIFICATE OF SERVICE ............................................................................ 29

— vi —

Case 5:23-cv-04597-EMC   Document 250   Filed 06/26/25   Page 141 of 204
Case 3:23-cv-04597-EMC   Document 250   Entered 08/29/25 09:03:27   of Desc
Exhibits   Page 141 of 204

# Plaintiff's Omnibus Opposition to Defendant's Emergency Motion for a Stay

1. Plaintiff Ashley Marie Gjovik hereby fundamentally objects and opposes the Defendant's Emergency Motion to Stay (Dkt. 247-248). As such, rather than brief the supposed 'emergency' separately, Plaintiff submits this comprehensive omnibus response addressing issues raised in both of Defendant's motions.

2. This Court can resolve these matters immediately without emergency procedures, as the only 'emergency' is Defendant's attempt to avoid standard litigation procedures. However, if the court was to rule adversely to the Plaintiff, the Plaintiff respectfully requests a hearing and oral arguments prior to the court's decision.

# Summary

3. Here, Defendant seeks to stay two years of federal litigation based on an informal email from a Chapter 7 bankruptcy trustee who has never appeared in this Court, is not admitted to practice in the Northern District of California, and lacks any authority to agree to litigation stays. Further, Fed. R. Bankr. P. 6009 expressly allows the Plaintiff/Debtor to "prosecute … and defend any pending action or proceeding by … the debtor, or commence and prosecute any action or proceeding on behalf of the estate before any tribunal." *Read v. Duck (In re Jacksen),* 105 B.R. 542, 545 (9th Cir. BAP 1989); *Parker v. Bain,* 68 F.3d 1131 (9th Cir. 1995). The Defendant's motion represents a meritless and bad faith attempt at a procedural end-run around standard discovery practices they do not want to participate in, and their motion should be denied.

4. Defendant (a disputed creditor in Plaintiff's Estate) appears to have coordinated improperly with the Trustee of Plaintiff's Estate and unilaterally agreed to stay Plaintiff's litigation without investigation, notice, or authority. Plaintiff is concurrently filing a motion in bankruptcy court to address this apparent misconduct by the Trustee, and will also file a copy to this docket as a pending matter. The bankruptcy court must resolve what the trustee is actually doing before any federal court can rely on his communications. Further, Defendant's motion relies on an email from someone who is not a party to this litigation, has never filed a notice of appearance, and cannot be

served with this Court's orders. This Court cannot manage litigation based on informal communications from non-parties.

5.      Next, rather than following Local Rules and Court Orders for discovery disputes, Defendant has escalated dozens of discovery issues by seeking to stay the entire case. Defendant refused to engage in meet-and-confer, draft joint letters, or raise discovery objections with the discovery judge, and instead seeks emergency relief to avoid discovery procedures.

6.      In addition, Defendant's legal arguments are facially absurd. Defendant argues that Plaintiff committed misconduct by properly disclosing litigation on bankruptcy schedules as required by federal law. Their argument confuses disclosed claims with undisclosed claims by citing cases involving debtors who hid assets, not those who properly disclosed them. 11 U.S.C. § 521(a)(1)(B)(i). Apple's arguments would punish honest bankruptcy disclosure, and create incentives for debtors to conceal assets. Defendant further misunderstands basic bankruptcy procedures by ignoring that trustee investigation does not equal trustee administration.

7.      The timing of Defendant's Motion to Stay reveals classic forum shopping. Plaintiff filed Chapter 7 bankruptcy on July 21, 2025, properly disclosing this litigation. Plaintiff filed a Notice of Pendency to this case's docket on the same day (Dkt. 237) and also filed a notice of her student loan discharge case to this docket on July 29 2025 (Dkt. 238).

8.      Both Plaintiff and Defendant also mentioned the Plaintiff's bankruptcy in their July 29 2025 Joint Case Management Statement. (Dkt 239 at 8, 11). Plaintiff wrote that "Plaintiff recently filed for Chapter 7 bankruptcy in the District of Massachusetts" and "considering Plaintiff's pending Chapter 7 bankruptcy and Defendant's ongoing refusal to meet/confer in good faith, Plaintiff requests a second settlement conference, but this time, specifically ENE."(Dkt. 239 at 8, 11). Defendant wrote "On July 21, 2025, Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts." (Dkt. 239 at 11).

9.      At the August 5, 2025 federal court hearing, Defendant raised no questions about the bankruptcy or Plaintiff's standing, nor did they question Gjovik's sole presence at the hearing or agency to enter agreements for schedules and case management next steps. Plaintiff also told this court the Estate included her legal claims. Thus, Defendant "slept upon [its] rights" to raise

1   objections or ask questions then. *Chapman* v. *County of Douglas,* 107 U.S. 348, 355 (1883).

2       10.    During the August 5 2025 hearing, the court approved the plan to proceed to
3   Summary Judgement. Only on August 26, 2025, with summary judgment being planned and
4   discovery finally underway, does Defendant suddenly claim Plaintiff's bankruptcy filing eliminated
5   Plaintiff's standing and demand an emergency stay. This represents obvious forum shopping -
6   seeking emergency relief to avoid unfavorable litigation posture.

7       11.    This Court should require all parties to follow established procedures. Discovery
8   disputes should be filed as proper objections with the discovery judge per Local Rules and court
9   Orders. If the trustee seeks involvement, he must file notice of appearance and proper intervention
10  or substitution motions per Fed. R. Civ. P. Rules 24 and 25. Bankruptcy issues should be resolved
11  by the bankruptcy court before this federal court relies on trustee communications. Discovery
12  should continue per the existing schedule while proper procedures resolve jurisdictional questions.

13      12.    This Court should deny Defendant's motion because, among other issues, it relies
14  on communications from an unauthorized non-party who has never appeared in this Court, violates
15  standard discovery procedures by seeking emergency stays instead of raising objections properly,
16  makes legally frivolous misconduct allegations that punish honest bankruptcy disclosure,
17  represents obvious forum shopping to avoid adverse discovery rulings and summary judgment, and
18  creates an unworkable procedural precedent of managing litigation through informal emails from
19  non-parties. The only emergency here is Defendant's attempt to escape standard litigation
20  procedures. This Court should deny the motion and require all parties to follow established rules
21  for discovery disputes, trustee intervention, and case management. Plaintiff respectfully submits
22  that normal litigation procedures, not emergency intervention, will resolve any legitimate concerns
23  while preserving this Court's limited resources for actual emergencies.

24
25  # THE BANKRUPTCY TRUSTEE LACKS AUTHORITY
26  # TO AGREE TO ANY LITIGATION STAY; THIS
27  # COURT SHOULD DEFER TO BANKRUPTCY COURT
28  # JURISDICTION

## I. Defendant's Motion Relies on Legally Void Communications from a Non-Party

13.     Defendant's motion fundamentally relies on an informal email from Chapter 7 Trustee Mark DeGiacomo stating he "does not object" and thinks it "appropriate" to stay this litigation. Plaintiff fervently objected. The Trustee's communication has no legal effect because the Trustee lacks standing in this Court and authority under bankruptcy law to make such agreements.

14.     The Trustee has never filed a Notice of Appearance in this Court, filed a motion to intervene under Fed. R. Civ. P. 24, sought substitution as a party under Fed. R. Civ. P. 25, obtained bankruptcy court approval to control this litigation, or (per his website profile) been admitted to practice in the U.S. District of Northern California. An informal email from someone who is not a party to this litigation cannot provide basis for emergency relief, nor does a Trustee extinguish a Plaintiff/Debtor's legal rights. See, *Katz v. Comm'r.,* 335 F.3d 1121, 1127 (10th Cir. 2003) (in a bankruptcy, a debtor and the estate are distinct legal entities).

## II. Bankruptcy Court Has Primary Jurisdiction Over Trustee Authority and Conduct

15.     28 U.S.C. § 1334 grants bankruptcy courts exclusive jurisdiction over estate administration, including determinations of trustee authority to control litigation assets. The question of whether Trustee DeGiacomo has authority to agree to litigation stays is squarely within the bankruptcy court's exclusive jurisdiction. Plaintiff concurrently files a motion in bankruptcy court challenging the Trustee's authority on this matter and seeking protective orders regarding his conduct. This motion raises fundamental questions about whether the Trustee properly assumed control of this litigation as an estate asset, whether the Trustee's improper coordination with Defendant violated bankruptcy procedures, and whether the Trustee has authority to agree to litigation stays without court approval.

16.     This Court should defer ruling on Defendant's motion pending the bankruptcy court's determination of these threshold jurisdictional issues. See *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (federal court should defer to bankruptcy court's exclusive jurisdiction over estate administration).

## III. The Trustee's Procedural Violations Render His "Agreement" Invalid

17.    Even if the Trustee had standing, his informal email agreement violates multiple bankruptcy procedures. Despite inexplicitly converting this case to "asset" status over one month ago, the Trustee never investigated this litigation or sought court approval to control it under Fed. R. Bankr. P. 6004. The Trustee never requested employment of specialized counsel under 11 U.S.C. § 327 for retaliation litigation, yet purports to make strategic decisions about the case.

18.    Fed. R. Bankr. P. 2002 requires notice to interested parties before trustees take actions affecting estate assets. The Trustee provided no notice before his improper agreement with Defendant. 11 U.S.C. § 704(a)(1) requires trustees to "collect and reduce to money the property of the estate." The Trustee's agreement to stay the estate's primary asset directly contradicts this statutory mandate. The Trustee's procedural violations render his "agreement" *void ab initio*.

19.    Prepetition legal claims not exempted by the debtor may be administered and liquidated by the trustee. 11 U.S.C. § 704(a) (1).  The trustee is responsible for 'administering' the estate's assets, which basically means managing those assets for the estate. But a trustee cannot act without approval from the bankruptcy court."[1]

## IV. Defendant Cannot Eliminate Plaintiff Through Unauthorized Trustee Communications

20.    Defendant argues that Plaintiff "no longer has standing" based on the Trustee's informal email. This argument is procedurally impossible and legally frivolous. Until formal court proceedings occur, Plaintiff remains the proper party to this litigation. Trustee substitution requires formal motion practice with proper service and notice, not informal email agreements. Defendant's attempt to eliminate Plaintiff through unauthorized communications violates Fed. R. Civ. P. 25.

21.    During bankruptcy, the Estate "owns" the Debtor's legal claims and pending litigation but that ownership relates to the fiscal outcome of litigation with non-exempt pecuniary damages (settlements, judgements, etc.). Further, even as the "owner" of a  claim, the trustee will

---

[1] Tina Tellado and Todd Werts, An Ounce of Prevention: Perspectives on a Civil Plaintiff Filing Bankruptcy From Both Sides of the 'V', https://learwerts.com/wp-content/uploads/2020/09/2020-09-02-Federal-Bar-An-Ounce-of-Prevention-Revision.pdf

1   need to move for Bankruptcy court approval of any settlement or intervention. *In re A & C Properties*
2   784 F.2d 1377 (9th Cir. 1986). Then, after payment of all claims, the "[p]roperty of the estate shall
3   be distributed . . . to the debtor." 11 U.S.C. § 726(a)(1)-(6).

4       22.    The automatic stay does not eliminate debtors as parties. The automatic stay only
5   stays litigation against the debtor. See 11 U.S.C. § 362(b) discussing the stay of claims "against the
6   debtor." Critically, 11 U.S.C. § 362 "does not address actions brought by the debtor which would
7   inure to the benefit of the bankruptcy estate." *St. Croix Condominium Owners v. St. Croix Hotel*
8   *Corp.,* 682 F.2d 446, 448 (3d Cir. 1982); *In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.), cert. denied,
9   484 U.S. 819, 108 S. Ct. 77, 98 L. Ed. 2d 40 (1987).

10      23.    The stay also protects debtors from counter-claims during bankruptcy. *Action Drug*
11  *Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989) (where plaintiff-debtor enters
12  bankruptcy, defendant may not assert counterclaim against bankrupt plaintiff), aff'd without op.,
13  902 F.2d 1558 (3d Cir. 1990). "The debtor and property of its bankruptcy estate are protected by
14  the automatic stay in section 362 of the Bankruptcy Code from creditor collection efforts…
15  including litigation, enforcement of judgments, and acts 'to obtain possession of property of the
16  estate or of property from the estate or to exercise control over property of the estate.'"[2]

17      24.    The stay does not apply to "claims by, not against, the debtor," and where
18  "successful prosecution would inure to the benefit of the bankruptcy estate." *Parker v. Bain,* 68
19  F.3d 1131 (9th Cir. 1995) quoting *Carley Capital Group v. Fireman's Fund Insurance Co.,* 889 F.2d
20  1126, 1127 (D.C.Cir.1989) (quoting *St. Croix,* 682 F.2d at 448). [3]

21      25.    Here, Defendant has reversed the plain text reading and congressional intent of this
22  rule. Further, Apple, a creditor in Plaintiff's Estate (creditor no. 21011446), is improperly using
23  legal filings in an effort to take unlawful possession of this litigation, which is property of the Estate
24  in Boston, Massachusetts.

25

26  [2] JD Supra, *Tenth Circuit: Bankruptcy Court Did Not Relinquish Its Jurisdiction by Granting Relief from Automatic Stay,*
27  Sept. 23 2024, https://www.jdsupra.com/legalnews/tenth-circuit-bankruptcy-court-did-not-5500139/
    [3] "The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a
28  statute is an indication that the statute should apply to all cases not specifically excluded." *Blausey v. U.S. Trustee,* 552
    F.3d 1124, 1133 (9th Cir. 2009).

Case 3:23-cv-04597-EMC   Document 140   Filed 08/28/25   Page 273 of 766
Case 3:23-cv-04597-EMC   Document 250   Filed 08/29/25   Page 273 of Doc
Exhibits    Page 147 of 204

# V. This Court Should Deny the Motion

26.     Because Defendant's motion relies almost entirely on discovery dispute escalation, reckless misrepresentation of the law, and communications from someone without authority to make them, this Court should either deny the motion for failure to establish proper basis for relief. Meanwhile, the Massachusetts bankruptcy court's ruling on trustee authority will be dispositive of Trustee's authorized role in this litigation. A bankruptcy court's original and exclusive jurisdiction is over matters under Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 ("Bankruptcy Code") and is set forth in 28 U.S.C. § 1334.

27.     Ultimately, even if Apple was raising a legitimate issue, which it is not, this court cannot bypass the Bankruptcy Court, the District Court of Massachusetts, or the First Circuit and make decisions under Bankruptcy Code, impacting a Boston-based bankruptcy, in a case relating to that Bankruptcy Estate. Apple's efficiency argument also fails because no deadlines are threatened, discovery can proceed while trustee issues resolve, and their own delay tactics created any timing issues. Moreover, the current procedural posture demonstrates that any stay would be improper. If the Trustee lacks authority (as the bankruptcy motion contends), then Defendant's entire premise fails. If the Trustee has authority, then he must follow proper procedures including formal intervention in this Court. Either way, Defendant's emergency motion fails and should be denied.

28.     Further, the Trustee's email communication was based on Defendant's suggestion they would simply file a Motion to Stay this case as some sort of accommodation for the Trustee, supposedly to protect the Estate. The Trustee approved while he was on vacation and never responded to Plaintiff's objections, and it does not appear he was provided a draft of what Apple filed prior to Apple filing. Because the content of Apple's motion is extremely harmful to the Plaintiff's position, and thus also harmful to the Estate, it must be assumed the Trustee did not know what Apple actually intended to file and would have never agreed to Apple's conduct.

29.     Trustees are officers of the court, and thus Apple made materially false statements to the trustee about what they intended to file, in order to solicit his approval in writing, only to then turn around and file something extremely damaging to the estate, and only provide notice of what they filed after they filed and the damage was already done. Apple's conduct in doing so

Case 3:23-cv-04597-EMC   Document 250   Filed 08/29/25   Page 274 of 286
Case 3:23-cv-04597-EMC   Document 250   Filed 08/28/25   Page 148 of 204
Exhibits    Page 148 of 204

1   actually appears to give rise to multiple chargeable criminal offenses as discussed below in the

2   Request to Amend and RICO predicate act section.

3       30.     Further, Apple's motion fails every factor courts consider for litigation stays. First,

4   granting a stay would cause substantial damage by halting two years of litigation progress, allowing

5   evidence to deteriorate, and rewarding Apple's discovery misconduct. Second, Apple suffers no

6   hardship from proceeding: they actively participated in discovery for over a month after Plaintiff's

7   bankruptcy filing, waiving any standing objections through their own conduct. Third, staying this

8   litigation would destroy the orderly course of justice by abandoning established procedures,

9   encouraging forum shopping, and creating precedent for managing cases through informal emails

10  from non-parties rather than proper court rules. Apple's emergency motion is procedural

11  gamesmanship designed to escape adverse discovery, not legitimate legal relief.

## DEFENDANT'S "MISCONDUCT" ALLEGATIONS ARE LEGALLY FRIVOLOUS AND MISSTATE BANKRUPTCY LAW

### VI. DEFENDANT CONFUSES DISCLOSED CLAIMS WITH UNDISCLOSED CLAIMS - TWO ENTIRELY DIFFERENT LEGAL DOCTRINES

18      31.     Defendant's motion fundamentally misunderstands bankruptcy law by conflating

19  properly disclosed claims (Plaintiff's situation) with undisclosed claims (which can constitute

20  misconduct). These are opposite legal scenarios with completely different consequences.

21      32.     When debtors properly list litigation on their bankruptcy schedules, those claims

22  become property of the bankruptcy estate under 11 U.S.C. § 541. The trustee must then either

23  investigate and administer the claims or abandon them under 11 U.S.C. § 554. There is no

24  misconduct in properly disclosing assets as required by law. Plaintiff properly disclosed this

25  litigation on Schedule B as required by 11 U.S.C. § 521.

26      33.     Defendant's attempt to apply "concealment" cases to a properly disclosed claim

27  demonstrates a fundamental misrepresentation of bankruptcy law. The cases Defendant cites

28  involve debtors who failed to list a known actual or potential claim on the bankruptcy schedules and

1   later tried to pursue those claims in separate litigation. Courts apply judicial estoppel and standing

2   defenses against such debtors because they knowingly and fraudulently concealed assets from the

3   bankruptcy court.

4        34.     None of Defendant's cited cases involve debtors who properly disclosed litigation

5   and continued managing it during the trustee's investigation period. Defendant's legal theory would

6   penalize debtors for following disclosure requirements - an absurd result that no court has ever

7   endorsed. Further, the law to cite in support of the current status of this case simply includes the

8   Federal Rules of Civil Procedure.

9   ## VII. Debtor Standing Continues Until Trustee
10   ## Formal Administration or Abandonment

11        35.     Defendant fundamentally misunderstands when debtors lose standing to pursue

12   disclosed litigation. Simply disclosing claims does not immediately eliminate debtor standing - the

13   trustee must take affirmative action.  Upon disclosure, trustees have a duty under 11 U.S.C. §

14   704(a)(1) to investigate estate assets.

15        36.     This includes evaluating disclosed litigation for potential value to the estate. After

16   investigation, trustees must either: formally administer the claim (requiring court approval and

17   specialized counsel employment under 11 U.S.C. § 327), or formally abandon the claim under 11

18   U.S.C. § 554. Abandonment in a bankruptcy proceeding occurs: (1) if, on request by the trustee and

19   after notice and hearing, the court finds that the property is "burdensome" or of "inconsequential

20   value and benefit to the estate"; or (2) automatically when the bankruptcy case is closed. 11 U.S.C.

21   § 554(b)-(c); *Barletta v. Tedeschi,* 1990 WL 194478 (N.D.N.Y. Dec. 3, 1990).

22        37.     Despite abruptly converting this case to "asset" status over one month ago, Trustee

23   DeGiacomo has not provided any explanation for that action or taken any formal action regarding

24   the known, disclosed litigation. He's filed no employment motion for specialized retaliation

25   counsel under 11 U.S.C. § 327; no court approval to control the litigation under Fed. R. Bankr. P.

26   6004; no notice of appearance in this federal litigation; no formal abandonment notice under Fed.

27   R. Bankr. P. 6007. The trustee's informal statement to Defendant cannot substitute for required

28   bankruptcy procedures. Fed. R. Bankr. P. 6007 requires formal notice and hearing procedures for

abandonment, and trustees must follow specific protocols to administer estate assets.

## VIII.  MISREPRESENTATION OF THE ROLE OF EXEMPTIONS IN BANKRUPTCY LAW

38.     There are formal procedures under the Federal Rules of Bankruptcy Procedure for trustee substitution in pending cases (Rule 2012, 2015) and intervention. The trustee must typically seek court approval for significant litigation decisions, especially settlements above certain thresholds. Before seeking intervention/substitution, the trustee will evaluate whether there's any meaningful recovery for the estate after exemptions. If the debtor properly claimed and can cover the entire potential recovery with valid exemptions, there may be no economic incentive for the trustee to get involved.

39.     Under Rule 4003(b), parties have 30 days after the 341 meeting (or amendment of schedules) to object to exemptions. If no timely objection is filed, the exemptions are generally deemed allowed under § 522(l). The trustee might still want to monitor or even intervene in cases involving claimed exempt assets because the actual recovery might exceed what was exempted. The cost-benefit analysis usually drives the decision. Defendant's Motion to Stay argues that until there is "resolution" of Plaintiff's exemptions (i.e., "back pay, front pay, and personal injury damages"), that Plaintiff cannot manage the day-to-day litigation in long-running lawsuits if those lawsuits contain damages reflected in the exemption form. Further, Defendant's ETA for when this court should release a stay is based on that exemption resolution process. There's no legal or factual basis for Defendant's assertion.

40.     The exemption process is administrative in nature (determining what property ultimately belongs to whom) rather than a litigation management mechanism. Exemptions become operationally significant upon actual recovery through settlement or judgment, when the court must determine what portion (if any) of the proceeds exceeds exempted amounts and belongs to the estate. Until that point of concrete recovery, claimed exemptions support continued debtor control over litigation, and the mere fact that exemptions remain technically unresolved provides no basis for litigation stays or automatic trustee substitution, as the underlying exemption right exists independent of the administrative approval timeline.

41.     Further, Defendant's Emergency Motion to Stay shows that Defendant studied the Plaintiff's bankruptcy filings and schedules in detail and have now used her legally required disclosures in  a separate matter as some sort of basis for their motion that accuses Plaintiff of misconduct, attempts to claim she is not longer party to her own lawsuit. While Apple also claims a non-party who is not even authorized to be involved or noticed in this court is now the Plaintiff in this case and will apparently communicate with the court through emails with Apple.

42.     Among other issues, Apple's conduct here is intimidating and discriminatory, and will deter other debtors from making legally required disclosures due to this overt retaliation and harassment, which would increase bankruptcy fraud. Apple's conduct is also unlawful discrimination under 11 U.S. Code § 525(a)-(b) ("No private employer may… discriminate with respect to employment against, an individual who is or has been a debtor… solely because such debtor or bankrupt is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act.")

## IX. Investigation Is Not Administration - Debtor Standing Continues During Investigation Period

43.     Defendant argues that any trustee interest in disclosed claims immediately eliminates debtor standing. This is legally incorrect and would create an impossible administrative gap. Section 704(a)(1) requires trustees to investigate potential estate assets. This investigation period does not constitute "administration" under Section 554. If mere investigation eliminated debtor standing, disclosed claims would exist in legal limbo - with neither trustee nor debtor able to act. The trustee's statements about wanting to "talk more" about claims and scheduling additional meetings constitute investigation, not administration. Courts require formal procedures before trustees can control disclosed litigation.

44.     Even if the trustee intended to administer this litigation, his current actions violate fundamental bankruptcy procedures and civil procedure. He currently has no court approved specialized counsel, as retaliation litigation requires employment of specialized employment counsel under 11 U.S.C. § 327. He has no court authorization as complex litigation administration

1   requires court approval under Fed. R. Bankr. P. 6004. He also apparently engaged in improper

2   coordination evidenced by Trustee's agreement with this adverse creditor and which violates notice

3   requirements under Fed. R. Bankr. P. 2002. Aside from other factors, these procedural violations

4   cannot create valid trustee administration that divests debtor standing.

5
6   ## X.  PLAINTIFF'S "ABANDONMENT EXPECTATION" WAS REASONABLE, NOT MISCONDUCT

7        45.     Defendant characterizes Plaintiff's statement about expected abandonment as

8   misrepresentation. This argument demonstrates ignorance of standard bankruptcy practice.

9   Trustees routinely abandon assets when "after deducting the costs of sale, the trustee's

10  commission, any amount due a creditor with a lien against the property, and any exemption owed

11  to [the Debtor], there is nothing or little left to distribute to creditors."[4]

12       46.     A $30 million retaliation lawsuit, nested within a larger RICO lawsuit, against a team

13  of Rambo defense litigators, presents exactly this scenario: requires specialized employment

14  counsel (expensive); complex federal litigation with discovery and appeals (time-consuming);

15  uncertain outcome against sophisticated corporate defendant with Big Law Partners; and the case

16  was initially "no asset" with disputed claims from the same defendant. Expecting abandonment of

17  complex, expensive-to-prosecute litigation in a no-asset case is standard practice, not misconduct.

18       47.     Further, Defendant is both the litigation adversary and a creditor with disputed

19  claims. This creates obvious conflicts of interest that support abandonment expectations. The

20  Trustee cannot simultaneously represent estate interests against a creditor while that creditor

21  influences estate administration, settling with a creditor-defendant creates complex priority and

22  distribution issues, and fighting Defendant while they claim competing creditor status makes

23  litigation economically questionable. Plaintiff's abandonment expectation was an admittedly

24  speculative opinion based on sound legal and practical reasoning, not deception.

25
26  ## XI.  DEFENDANT'S MOTION SEEKS TO WEAPONIZE BANKRUPTCY PROCEDURES

27  ────────────────────

28  [4] NOLO, When Will the Trustee Abandon Property in Chapter 7 Bankruptcy?, https://www.nolo.com/legal-encyclopedia/trustee-abandon-property-chapter-7-bankruptcy.html

48.     Defendant's argument reveals their true motive: using bankruptcy filing to escape adverse litigation rather than defending on the merits. When facing summary judgment with full discovery, now Defendant suddenly claims bankruptcy filing eliminates Plaintiff's standing. This is classic forum shopping to escape unfavorable litigation posture.

49.     Defendant also sent Orrick counsel Ryan Booms (noticed in this proceeding) to Plaintiff's 11 U.S. Code § 341 "Meeting of Creditors,"[5] which Plaintiff identified as an attempt to intimidate and harass her, and accordingly immediately reported it to the Trustee as such, and also complained to Defendant's counsel. Defendant has now proceeded, per Booms sworn declaration at Dkt. 247-1, to admit that Apple and its counsel at Orrick were spying on Plaintiff at that 11 U.S. Code § 341 "Meeting of the Creditors," looking for her to make statements that Defendant could use against her in this proceeding. Defendant further claims that the Trustee's standard comment that he and the Plaintiff would talk about her legal claims further after the meeting, somehow shows that the Plaintiff perjured herself and misled the federal court about her bankruptcy (she did not and the allegation is facially absurd).

50.     Further, again, Defendant's "misconduct" allegations are legally baseless because they confuse disclosed and undisclosed claims (citing inapplicable precedent); misunderstand trustee investigation vs. administration (ignoring required procedures); ignore debtor standing during investigation periods creating impossible legal gaps; characterize reasonable expectations as lies (misapplying standard bankruptcy practice); and abuse bankruptcy procedures to escape adverse litigation.

51.     This Court should reject Defendant's misconduct allegations as frivolous and deny their motion accordingly. Defendant further claims that their baseless allegations are now a justification for staying this entire case, which is one of, or the, primary known asset in the Estate. This scheme is in itself probably evidence of multiple chargeable criminal acts by the Defendant.

# NO EMERGENCY EXISTS

---

[5] U.S. Department of Justice, U.S. Trustee Program, *Section 341 Meeting of Creditors,*
https://www.justice.gov/ust/moc

## XII. Defendant Forum Shops to Avoid Discovery Judge Westmore

52. Defendant's real emergency is facing summary judgment with full discovery. Rather than raising discovery objections with the discovery judge per standard procedure, or admitting they cannot survive summary judgement, Defendant instead seeks emergency relief in hopes of more favorable forum. This Court should reject Defendant's dilatory tactics and require Defendant to follow standard discovery objection procedures before considering stays. There is no emergency here - only Defendant's preference for gamesmanship and procedural shortcuts over defending this litigation on its merits. *Perrong v. DVD II Group, LLC,* 2023 WL 3229934 (E.D. PA. May 3, 2023).

53. This Court can cure Defendant's procedural violations immediately by ordering that Defendant must meet and confer on any discovery disputes per Local Rules; discovery objections must be raised with discovery judge per standard procedure; if Trustee seeks litigation control, he must file proper intervention/substitution motions per Fed. R. Civ. P. 24 and 25; and all parties, and third-parties seeking to intervene, must comply with the federal and local rules. Notably, Trustee DeGiacomo is not even a party to this litigation and would not receive service of any order this Court issues. However, given Defendant's improper and ex parte coordination with Trustee, Defendant would presumably provide him with any favorable orders so they could 'work together' on compliance - the same improper coordination that created this procedural mess and risks to destroy the Plaintiff's estate.

54. Defendant's motion to stay should also be viewed in the context of the suspicious timing surrounding its filing. On August 15, 2025 (3.5 weeks after Plaintiff's bankruptcy filing and during the period Defendant now claims Plaintiff had no standing to participate in litigation), Defendant sent Plaintiff discovery documents via email and treating Plaintiff as a full party with discovery rights. These documents included devastating evidence that contradicts Defendant's key defenses in this litigation, and reveals a pattern of false statements to this Court.

55. The Gobbler Informed Consent Form shows Defendant's supposed justification for terminating Plaintiff's employment in 2021, based on allegations of misconduct in 2021, referenced a consent form that was limited to a 20-minute user study in 2017 and does not contain Plaintiff's

1    signature on the document (Exhibit B).

2        56.    Additionally, Defendant produced a business conduct investigation report showing

3    that as of  July 23, 2021, the Plaintiff was formally under investigation by Defendant for her

4    workplace safety complaints and disclosures made to the New York Times. This contradicts

5    Defendant's representations that the suspension and termination was based solely on late August

6    2021 conduct regarding Gobbler and three-dimensional ear scans (Exhibit C).

7        57.    Defendant's motion is not a legitimate procedural concern but rather a transparent

8    attempt to halt litigation immediately after producing evidence that exposes years of litigation

9    misconduct. As detailed in Plaintiff's Motion for leave to file Sanctions, the recently produced

10   documents reveal that Defendant made "multiple knowing false statements in its prior Motions to

11   Dismiss and Oppositions in this court" and had "filed prior discovery responses affirmatively stating

12   it did not have these documents" when they clearly possessed them throughout the litigation.

13   Plaintiff's Aug. 22 2025 Motion for Leave to File Sanctions at Dkt. 245).

14       58.    Defendant cannot credibly argue Plaintiff lacked standing to participate in discovery

15   when Defendant's own conduct (actively producing discovery documents to Plaintiff during the

16   contested time period) directly contradicts this position.  Further, Defendant knows it cannot

17   survive summary judgement, has no evidence to support its defense, and the existing evidence

18   overwhelmingly supports the Plaintiff's claims.

19       59.    In the July 29 2025 Joint Casement Management Status Report, Plaintiff wrote

20   "Plaintiff intends to file a motion for summary judgment" and "Plaintiff feels strongly that

21   Defendant needs a 'reality check' about the actual evidence." (Dkt. 239 at 5 and 11). Defendant

22   wrote "Defendant intends to file a motion for summary judgment under Rule 56 for resolution of

23   this case" but also that "Defendant believes it is premature to expedite the presentation of

24   evidence." (Dkt. 239 at 5 and 12). Defendant said nothing about Plaintiff not having standing to

25   litigate, but Defendant did note "the Parties are currently negotiating an ESI order" and

26   "discovery should proceed." (Dkt. 239 at 8-9).

27       60.    During the August 5 2025 hearing, Apple again did not object to Plaintiff continuing

28   to litigate the case. When the court asked if the Parties are prepared for Summary Judgement

Plaintiff noted "I feel there is overwhelming documentary evidence between both things that would be judicially noticed as well as already admissible evidence that, yes, Your Honor, I do feel confident that I could make my case already on the retaliation and labor violations." (8/5 Transcript page 8).

61.    The court said "Okay" and then turned to the Defendant. Defendant's counsel presented their position to which the court noted "You think… that there are no genuine disputes of material fact in that regard?" and "but if they're conflicting discretions as to the causal reasons, the motivation, one legitimate, not legitimate. Do you think that's still something that's summary judgment-able?" (8/5 Transcript page 8-9).

62.    During the hearing the Defendant responded to the idea of a settlement conference or discussing possible settlement as "we don't think that's productive." (8/5 Transcript page 8-5). The Civil Minutes noted "Defendants noted that Early Neutral Evaluation will unlikely resolve the issues based on the last settlement conference" and "both parties indicated an intent to file Motion for Summary Judgment." (Dkt. 242).

63.    If Defendant has no interest in discussing a settlement, and instead only intends to refuse to meaningfully participate in discovery for a prolonged period of time, then there's no justification to invest taxpayer money into the Estate taking over this litigation and Apple certainly knows that – thus their offer to "stay" in support of the estate is frivolous.  The timing further reveals Defendant's true motive: avoiding accountability for litigation misconduct and the substantive implications of their possession and concealment of evidence that destroys their defense, and their failure and refusal to provide any basic facts in discovery related to that defense.

## XIII.  Defendant Intends to Obtain a Court Order Based on Misstatement of Law and its Own Misconduct In order to Block an EPA Citizen Suit

64.    On June 30-July 1, 2025, Plaintiff provided complete sixty-day notice of intent to file an EPA Citizen Suit to U.S. EPA, U.S. DOJ, and defendants Apple, City of Santa Clara, and the property owner of 3250 Scott Blvd. (Dkt. 226). The sixty-day notice period required under 33 U.S.C. § 1365(b)(1)(A) is a mandatory statutory prerequisite and integral part of the citizen suit process. Once this notice period commenced, the citizen suit litigation was effectively "pending"

prior to the bankruptcy filing. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (notice requirements are "mandatory conditions precedent to commencing suit"). The U.S. DOJ has not yet commenced any civil or criminal enforcement action despite receiving proper notice. Under 33 U.S.C. § 1365(b)(1)(B), citizen suits are barred only when "the Administrator or State has commenced and is diligently prosecuting" enforcement action—which has not occurred here. The Plaintiff has made it known she plans to sue on Sept. 2 2025 in the U.S. District Court in San Jose (nearest to the factory) if U.S. DOJ does not file their own lawsuit by then.

65.   Environmental citizen suits are not property of the estate under 11 U.S.C. § 541 because they are held in trust for the public, not for the debtor's economic benefit. Property "that the debtor holds in trust for another is not property of the estate." 11 U.S.C. § 541(d); *Nelson Mullins Bankruptcy Basics*. Environmental citizen suits "act as a potent lever to ensure that corporations, individuals, and agencies follow the law" and protect "public interests, not debtor's economic interests." The debtor seeks only injunctive relief and civil penalties paid to the U.S. Treasury—creating no economic benefit to the estate.

66.   Apple has been served with this notice and knows this lawsuit is imminent, which is another reason it appears to have filed this meritless "Motion for a Stay," fishing for a court order prohibiting the Plaintiff from litigating in federal courts in hope it would prevent her from suing Apple under these federal environmental statutes over their illegal semiconductor fabrication plant that is actively poisoning a community. The pending EPA citizen suit should proceed as scheduled in federal court, as Congress intended when it created these essential environmental enforcement mechanisms. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000).

## XIV.   This is Not the First Time Defendant has Tried to Remove Plaintiff from her Lawsuit in Order to Avoid Discovery Obligations

67.   This is notably not the first time that Apple and their counsel have weaponized the very injuries they caused and continue to cause the Plaintiff, and then raise that harm to this court as supposed misconduct by the Plaintiff, in order to avoid their discovery obligations.  Only last month, on July 2 2025, at a conference the Defendant demanded with Judge Westmore and the

1   Plaintiff, Defendant made false allegations against the Plaintiff, tried to deprive her of basic due

2   process rights, and also attempted to request sanctions based on their meritless accusations.

3        68.    This conference also included Apple's counsel, Melinda Reichert, claiming she

4   stopped communicating with the Plaintiff and would not engage in discovery because she was

5   concerned Defendant and their counsel's conduct could cause the Plaintiff to kill herself.

6        69.    Thus, the Defendant essentially requested approval from this court to either not

7   have to communicate with Plaintiff at all, and/or have the Plaintiff promise to this court she will

8   not kill herself, and/or approval from the court to be able to harass the Plaintiff to the point that the

9   Plaintiff may commit suicide but without consequence for the Defendant.

10
11   **Ashley Gjovik (pro se):** "…They said that they wouldn't talk to me anymore going forward.. There was no way to meet and confer about anything. And they've said that they won't even communicate with me." (7/2/25 Transcript, pg 15).

12   **Melinda Riechert (Apple):** "…She's talking about the alternative remedies that we requested." (7/2/25 Transcript, pg 15).

13
14
15   **Ashley Gjovik (pro se):** "…This is coming after I accused them of evidence spoliation. They claimed they don't have data that they absolutely would have if they had not deleted it. I was asking for a deposition. They said they'd never talk to me again. They haven't produced documents. This is a clever approach by Apple's counsel to try to get ahead of me raising very real discovery disputes…." (7/2/25 Transcript, pg 23-24).

16
17   **Ashley Gjovik (pro se):** "…the email they sent said they won't talk to me anymore. They won't even email…" (7/2/25 Transcript, pg 48).

    **The Court:** "…Well, they have to talk to you…." (7/2/25 Transcript, pg 48).

18
19
20   **Melinda Riechert (Apple):** "Let me first explain that….That's why I felt nervous about communicating with her, because I don't want to be responsible for her committing suicide and triggering her PTSD when she's unmedicated because she can't afford her medication. So that's the reason that we stopped writing to her. And this is in my declaration…" (7/2/25 Transcript, pg 48-49).

21
22
23   **Ashley Gjovik (pro se):** "…You did this after I requested deposition of the corporation. This is when I requested a 30(b)(6) deposition and accused you of evidence spoliation. Then all of a sudden you decided you weren't going to talk to me anymore."(7/2/25 Transcript, pg 50).

24
25   **Melinda Riechert (Apple):** "I'm not going to be responsible for having you commit suicide or triggering your PTSD. If my emails have that effect on you, then I don't want to trigger you. I have no desire to cause you any harm." (7/2/25 Transcript, pg 50).

26   **Ashley Gjovik (pro se):** "That's not true. Then, like, five days later you accused me of perjury in your amended answer." (7/2/25 Transcript, pg 50).

27   **Melinda Riechert (Apple):** "So what we write in pleadings is protected. I'm just talking about when I sent you emails that I --." (7/2/25 Transcript, pg 50-51).

28   **Ashley Gjovik (pro se):** "Anyway…I think it would be good if we just maybe closed

1   everything that happened prior, start fresh. We can use this new procedure, see how it
2   works. I'm happy to work with them to schedule some of the basic stuff…" (7/2/25
    Transcript, pg 50-51).
3   **The Court: "…**I think that there's no way to avoid talking to each other because you are in
4   litigation. So that's just not -- Ms. Riechert, I'm sorry. I know that's stressful." (7/2/25
    Transcript, pg 51).
5   **Melinda Riechert (Apple):** "It is. It's very stressful. it's very stressful for me, and I
    shouldn't have to go through that…" (7/2/25 Transcript, pg 51).

# DEFENDANT IDENTIFIES NEED FOR TRUSTEE CLARITY; THE COURT CAN PROVIDE IT

9       70.     Defendant correctly notes that Trustee involvement may be necessary for any
10  settlement or judgment resolution. Rather than emergency stays, this Court should establish
11  reasonable procedures to clarify trustee status while allowing discovery to proceed. A Case
12  Management Order could include instructions like: "Any future settlement or judgment
13  discussions during Plaintiff's open bankruptcy will include the Estate of Ashley Gjovik and will
14  occur through proper bankruptcy procedures."

15      71.     In contrast, Defendant's motion creates an unworkable procedural situation. They
16  seek relief based on communications from someone who is not a party to this litigation, cannot be
17  served with this Court's orders, and has never appeared before this Court. The Court cannot
18  manage litigation involving non-parties through informal email agreements.  There is no reason to
19  halt two years of litigation progress while waiting for a trustee to follow basic federal court
20  procedures he should have followed initially. Accordingly, Defendant's motion should be denied.

# PLAINTIFF'S REQUEST TO AMEND / PRESERVATION OF RIGHT TO ADD ADDITIONAL PREDICATE ACTS TO RICO CLAIMS

24  ## XV.  SYSTEMATIC FALSE STATEMENTS AND EVIDENCE
25  CONCEALMENT ACROSS MULTIPLE PROCEEDINGS

26      72.     Defendant's bankruptcy interference represents the culmination of a multi-year
27  pattern of systematic abuse of legal proceedings designed to avoid accountability for unlawful
28  conduct. Apple filed false justifications for Plaintiff's termination with federal agencies while

simultaneously concealing evidence that demonstrated the facial illegality of their actions. For years, Apple dragged out these proceedings, while accusing the Plaintiff of gross misconduct and concurrently withholding direct evidence that would exonerate the Plaintiff. In doing so, Defendant financially destroyed the Plaintiff through prolonged litigation costs and denial of employment opportunities, driving her into bankruptcy, then retaliating against her for that bankruptcy.

73.     This conduct spans multiple federal institutions and constitutes additional violations of 18 U.S.C. § 1001 (false statements to federal agencies), 18 U.S.C. § 1341/1343 (mail/wire fraud schemes), and 18 U.S.C. § 1503 (obstruction of justice). See similar, overlapping, and related RICO claims in Plaintiff's Complaints at Dkt. 1, 32, 47.

74.     Apple's recent production of long-concealed evidence (only after Plaintiff requested sanctions for their discovery misconduct at Dkt. 240), reveals the deliberate nature of Apple's concealment strategy. In partnership and conspiracy with Apple's external law firms, including Orrick, the enterprise was able to successfully use false government filings and litigation concealment to drive Plaintiff into bankruptcy. Now Apple, with and through its enterprise, seeks to weaponize that very bankruptcy filing to permanently escape accountability and devalue any potential bankruptcy estate value.

75.     This systematic approach demonstrates a coordinated enterprise designed to manipulate multiple legal proceedings across different institutions, easily satisfying the "pattern of racketeering activity" element essential to RICO liability. *United States v. Weisman*, 624 F.2d 1118, 1123–24 (2d Cir. 1980) (conspiracy to commit offense involving bankruptcy fraud is a RICO predicate act) *cert. denied,* 449 U.S. 871 (1980). The bankruptcy interference cannot be viewed in isolation but must also be understood as another component of Apple's multi-year scheme to avoid consequences for their unlawful termination through systematic abuse of legal processes.

76.     This conduct demonstrates that Apple's use of external counsel created a continuing criminal enterprise spanning multiple years and forums, from false agency filings, through discovery concealment, to bankruptcy manipulation. The pattern shows Apple directing their legal enterprise to engage in systematic interference with federal proceedings rather than legitimate legal representation, warranting amendment to include these additional predicate acts

and enterprise theories. See *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005)(finding associated-in-fact enterprise could be formed between defendant corporation, law firms employed by it and expert witnesses retained by law firm, quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

## XVI. Attempted Interference with Possible FCA Enforcement Action

77.     Defendant's Emergency Motion for a Stay (Dkt. 247) repeatedly cites and quotes a document filed by Debtor in her bankruptcy case (25-11496, Dkt. 17, August 19 2025). That document also references and incorporates the complaint filed by Plaintiff in her student loan discharge case (Dkt. 238) (25-01104, Dkt. 1, July 29 2025).

78.     Notably the document Defendant references (25-11496, Dkt. 17) was not presented to this court, was not shared with Apple directly, and was clearly intentionally written by Plaintiff in a way that recognizes, and expressly noted, the need for secrecy around pending federal law enforcement activities. Apple's use of provocative citations and quotes from this sensitive document in their "Motion to Stay" further reveals that Apple unlawful and improper motives.

79.     In Apple's Motion, Apple selectively quotes from that filing and presents those quotes out of context and in a prejudicial framing to the Plaintiff. By doing so, Defendant forces Plaintiff, through threat of harm to her reputation (through false misconduct allegations) and the integrity of this litigation (by removing the actual plaintiff who understands the case, without another person filing notice, and leaving Apple the only party), to compromise sensitive federal enforcement matters by detailing them here in a case and docket closely watched by journalists and the public.

80.     Defendant's surveillance and strategic quotation serves no legitimate purpose. Apple cites matters from bankruptcy proceedings simply to provoke disclosure of information that Plaintiff previously warned required discretion regarding potential federal enforcement activities. The Trustee or DOJ have not disclosed to the Plaintiff what the asset is, but the theorized action seemed reasonable based on the facts and could justify the Trustee's immediately and inexplicable request for the court approve public funds for $565/hr accountants "to advise the Trustee

1   regarding the tax implications of asset recovery" and "to advise and assist the Trustee with respect

2   to evaluating and objecting to proofs of claim submitted by federal and state taxing authorities" for

3   the otherwise insolvent Plaintiff's previously "no asset" estate (25-11496, Dkt. 15).

4   　　　81.　　Apple's actions constitute deliberate interference with possible law enforcement

5   proceedings. Apple seeks to force public revelation of enforcement theories that could compromise

6   ongoing recovery of stolen funds, which may also provide the Plaintiff a qui tam 'relator' share,

7   which would then bolster the Plaintiff's credibility and allow her to hire a law firm her represent

8   her in this case, and thus would then harm Defendant's defense position in this litigation.

9   　　　82.　　The expected enforcement action is assumed by Plaintiff to not be against Apple,

10  but instead against the Plaintiff's only other employer after Apple. This also gives Apple motive to

11  sabotage any enforcement action against that entity because otherwise, a False Claims Act action

12  with a potentially high-dollar relator payment to the Plaintiff, would severely harm Apple's

13  remaining affirmative defenses in this litigation.

14  　　　83.　　Apple's conduct thus reveals systematic obstruction. They are monitoring

15  bankruptcy proceedings of their litigation opponent, extracting information expressly noting

16  federal enforcement sensitivity, then weaponizing that information to force damaging disclosures

17  from a witness and victim of those criminal acts, through threats of harm to that witness and

18  victim's reputation and financial interests, with a four day deadline.

19  　　　84.　　By attempting to compromise potential federal enforcement through forced

20  disclosure (selectively quoting Plaintiff's bankruptcy filing in order to make her choose between

21  appearing potentially unhinged and deceptive if she does not explain, or compromising sensitive

22  enforcement matters), obtained by intimidation (forcing the Plaintiff to respond to the "Emergency

23  Motion to Stay" which is full of accusations of misconduct by the Plaintiff and threatens to remove

24  her from her own lawsuit), and based on information gathered during improper surveillance –

25  Apple engages in exactly the type of systematic interference with legal proceedings that forms the

26  basis of several of Plaintiff's existing RICO claims.

27  **XVII. ADDITIONAL PREDICATE ACTS ARISING FROM CONCURRENT
    BANKRUPTCY PROCEEDINGS**

28

85.     By seeking to halt the estate's assumed/known primary asset through false legal arguments immediately after producing damaging evidence, Defendant is directly interfering with estate administration for their own benefit as a disputed creditor. The coordination between surveillance at Plaintiff's 341 meeting, immediate emergency filings with false law, and forcing disclosure of potential FCA law enforcement matters shows sophisticated planning to use multiple pressure points simultaneously. Bankruptcy interference also affects the estate's ability to recover against a multi-billion dollar corporation, directly impacting creditor recovery and Plaintiff's financial rehabilitation.

86.     In the RICO context, Defendant's Motion to Stay isn't just procedural gamesmanship - it's evidence of the enterprise's continuing criminal activity. Defendant is using the same pattern (i.e., harassment and intimidation, false statements to courts and agencies, evidence manipulation and obstruction) that established some of the original RICO claims, just now also applied to bankruptcy proceedings and False Claims Act enforcement, in addition to the underlying employment case and environmental claims.

87.     Accordingly, Plaintiff also preserves her right to claims arising from Defendant's systematic interference with bankruptcy proceedings and obstruction of potential FCA enforcement action; acts which are chargeable violations of federal criminal statutes that serve as RICO predicate acts under 18 U.S.C. § 1961.

88.     **Witness Tampering in Violation of 18 U.S.C. § 1512**: Defendant sent litigation counsel Ryan Booms to attend Plaintiff's 341 Meeting of Creditors on August 21 2025 for the express purpose of surveillance and intelligence gathering. (Exhibit D). Defendant then used this surveillance to file sworn declarations in this federal court containing false and misleading claims about Plaintiff's statements and conduct during the bankruptcy proceeding. This conduct appears designed to intimidate Plaintiff's participation in statutory bankruptcy proceedings, obstruct litigation, and constitutes witness tampering under 18 U.S.C. § 1512, a RICO predicate act. *United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987).

89.     **Obstruction of Justice in Violation of 18 U.S.C. § 1503**: Defendant coordinated with the bankruptcy trustee and made material false statements in order to corruptly interfere with

1    the administration of the estate's assumed primary asset (this litigation) without bankruptcy court

2    approval, notice to parties in interest, or compliance with bankruptcy procedures. Defendant's

3    coordination was designed to circumvent this Court's jurisdiction and obstruct the orderly

4    administration of bankruptcy proceedings. This interference with federal judicial proceedings

5    constitutes obstruction of justice under 18 U.S.C. § 1503, a RICO predicate act. *United States v.*

6    *Thomas,* 612 F.3d 1107, 1123-24 (9th Cir.2010); *United States v. Rasheed*, 663 F.2d 843, 851 (9th

7    Cir.1981); *United States v. Aguilar,* 515 U.S. 593, 609-10 (1995).

8        90.    **False Statements to Federal Courts in Violation of 18 U.S.C. § 1503 and 18**

9    **U.S.C. § 152:** Defendant's emergency motion contains numerous materially false statements about

10   bankruptcy law and procedures, including: misrepresenting when debtors lose standing in disclosed

11   litigation; falsely claiming that properly disclosed litigation constitutes misconduct; and

12   mischaracterizing standard bankruptcy procedures as evidence of perjury. These false statements

13   were made to gain litigation advantage and interfere with both this Court's and the bankruptcy

14   court's proceedings, constituting obstruction of justice under 18 U.S.C. § 1503 and bankruptcy

15   fraud under 18 U.S.C. § 152. *In re Garlock Sealing Techs.,* LLC, 504 B.R. 71 (Bankr. W.D.N.C.

16   2014)(a RICO case with the court remarking on a "startling pattern of misrepresentation" in a law

17   firm's discovery responses and finding the litigation activity not protected). See also, *United States*

18   *v. Lester*, 749 F.2d 1288 (9th Cir. 1984).

19       91.    Defendant's August 15 2025 discovery production also shows Defendant

20   intentionally and knowingly made false statements to this court and to the U.S. government for

21   multiple years about the actual facts underlying its termination of Plaintiff's employment. *Williams*

22   *v. Hall,* 683 F. Supp. 639, 642 (E.D. Ky. 1988); *Callan v. State Chemical Mfg. Co.,* 584 F. Supp. 619,

23   622 (E.D. Penn. 1984). Because the termination is part of this lawsuit's RICO claims, and counsel

24   was involved in the operation and management of the enterprise, and the acts impacted Plaintiff's

25   property and business interests, there is no litigation privilege for Defendant or their external

26   counsel as part of the Enterprise.

27       92.    **Hobbs Act Violations (18 U.S. Code § 1951):** When the Defendant threatened the

28   Plaintiff with theft of her property (this California lawsuit, a potential qui tam relator fee in

Massachusetts, her reputation) in order to compel the Plaintiff to disclose sensitive details about a potential law enforcement action and to make public statements against her Estate trustee, the Defendant attempted and conspired to obstruct, delay, and affect commerce through extortion in violation of the Hobbs Act. The Defendant and counsel in California, Oregon, Washington D.C. took these acts in furtherance of their unlawful goal to take property from the Plaintiff and reduce the value of the Estate under threat of economic harm to the Plaintiff. *United States v. Koziol,* 993 F.3d 1160, 1170 (9th Cir. 2021)("[T]hreats of sham litigation, which are made to obtain property to which the defendant knows he has no lawful claim, are 'wrongful' under the Hobbs Act.").

93. **Wire/Mail Fraud in Violation of 18 U.S.C. § 1343**: Defendant materially false statements to the Trustee about Defendant's intention to file this "Motion to Stay," claiming it was something to protect the Estate but instead intending to sabotage this litigation and thus also the Estate, in order to induce the Trustee's consent, was a chargeable act of wire fraud. Further, Defendant's false statements to federal courts in this "Motion to Stay" constitutes a scheme to defraud designed to interfere with judicial proceedings and gain unfair litigation advantage. These communications, transmitted by wire to the Trustee and the federal courts, constitute wire fraud under 18 U.S.C. § 1343 and are RICO predicate acts. The commission of mail/wire fraud with intent to reduce the value of a bankruptcy estate is an established RICO predicate act. *Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997).

94. **Pattern of Racketeering Activity**: The conduct described above, combined with the underlying RICO violations alleged in this action, further establishes a pattern of racketeering activity spanning multiple years and involving systematic interference with federal proceedings, witness intimidation, and false statements to federal courts. This pattern demonstrates Defendant's ongoing criminal enterprise designed to avoid accountability through procedural manipulation and interference with federal judicial proceedings.

## XVIII.   Reservation of Rights / Request for Reconsideration and/or Leave to Amend

95. Plaintiff requests leave from the court to file a Motion to Amend to re-add her RICO claims, and/or asks the court to reconsider her January 31 2025 "Motion to Amend" filed at Dkt.

155, along with the new issues noted, either bifurcating and allowing a RICO case to proceed concurrently, or combining with the retaliation case at least related to the predicate acts directly injuring the Plaintiff related to her employment with, whistleblowing against, participation in federal and state proceedings about, and witnessing and informing to the government about the Defendant and other wrongdoers.

96.    Plaintiff asks for the court's similar consideration of Amendment for at least her Bane Civil Rights Act, Ralph Civil Rights Act, Dodd Frank whistleblower, SOX whistleblower, IIED/NIED, Toxic Torts, Breach of Contract and Breach of Good Faith/Fair Dealing, and Cal. Bus. & Prof. Code § 17200 claims (See, Complaint at Dkt. 1, SAC at Dkt. 32, TAC at Dkt. 47, 4AC at Dkt. 76, and 5AC at Dkt. 142), at least where those claims are similarly related to the pending retaliation and labor violation claims. Plaintiff does not waive any rights to later appeal these or other dismissals.

97.    Plaintiff preserves the right to seek leave to amend this complaint to include these additional RICO predicate acts and related claims arising from Defendant's bankruptcy interference. Plaintiff requests amendment and notes these potential violations to prevent any waiver argument and to establish the full scope of Defendant's misconduct relevant to this Court's analysis of their current motion. Plaintiff also requests the court's reconsideration of her January 31 2025 "Motion to Disqualify" Apple's law firm of Orrick, Herrington & Sutcliffe from this lawsuit as they have admitted they were retained weeks prior to the termination (Dkt. 156).

# CONCURRENTLY FILED MOTIONS WITH THE BANKRUPTCY COURT

98.    Plaintiff will concurrently filed a Motion for Order to Show Cause and Sanctions in bankruptcy court (*In re Ashley M. Gjovik*, 25-11496, D. Mass.), which details Apple's systematic interference with estate administration and abuse of bankruptcy procedures.

99.     This filing reveals Apple's fundamental conflict of interest: they simultaneously serve as defendant in the estate's primary asset (this $30 million retaliation lawsuit) and as a disputed creditor through Apple Card debt. Notably, in 2024 the Consumer Financial Protection Bureau fined both Apple and Goldman Sachs $89 million primarily for launching the Apple Card

1  before legal requirements were met - yet Apple had enrolled Plaintiff months before even that

2  premature launch.

3      100.    On July 21 2025, Plaintiff mentioned this disputed debt and her bankruptcy filing

4  on Twitter saying "Apple pressured some employees to enroll starting in April 2019 (four months

5  before it 'launched') and statements say like "beta" / "seed design" but it's a real credit card. Did

6  CFPB ever learn about this?"[6] Goldman Sachs Bank immediately responded despite not being

7  tagged and asked to speak with Plaintiff on the phone.[7]

8      101.    Plaintiff responded "I didn't even tag you, Goldman, where'd you even come from?"

9  and responded that the Plaintiff thought that Goldman Sachs would "have to go through Apple's

10  lawyers" noting "[she] asked [Apple] to talk to [Goldman Sachs] about this debt like 20x times and

11  [Apple] refused... Apple's main lawyers on the retaliation/labor stuff where they owe [her] the

12  money [she] needs to pay off the card are Orrick for civil" and the Plaintiff is "not supposed to talk

13  to [Orrick's] 'client' directly or [Orrick] sends [her] angry emails about it."[8]

14      102.    Goldman Sachs Bank would logically have contacted the exact same Orrick

15  attorneys representing Apple in this litigation about this disputed claim, and about Apple's "beta

16  test" which could trigger more CFPB enforcement. Now, about one month later, Orrick and Apple

17  are engaging in the misconduct described herein that directly harms the same bankruptcy estate.

18      103.    This implies coordinated conduct by the same Apple legal team across multiple

19  contexts. In just the bankruptcy proceeding, Apple's dual role creates perverse incentives to

20  sabotage estate recovery while defending their own disputed claims and the underlying

21  misconduct, directly contrary to other creditors' interests and explaining at least one motive for

22  their systematic interference with both the bankruptcy proceeding and this federal litigation.

23      104.    Plaintiff has concurrently filed a Motion for Protective Order and to Compel

24  Trustee Action in bankruptcy court (*In re Ashley M. Gjovik,* 25-11496, D. Mass.), seeking emergency

25  relief to prevent further waste of estate assets caused by the trustee's procedural violations. This

26  motion details how Trustee Mark DeGiacomo, while admittedly on vacation, agreed to Apple's

27  ---
[6] Twitter/X, Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947176283760189657
[7] Twitter/X, Goldman Sachs Bank, July 21 2025, https://x.com/gsbanksupport/status/1947321165430555090
28  [8] Twitter/X, Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947324385058005245

1 litigation stay request within 27 minutes of receiving their email - despite having comprehensive

2 knowledge of Apple's conflicts with estate interests, including the disputed Apple Card debt that

3 could constitute an additional estate asset, and no background on the status of this litigation.

4     105.   When Plaintiff notified the Trustee that Apple had weaponized his informal email

5 agreement and used it as a basis to file extensive false allegations and sought to "tank this entire

6 litigation," the Trustee dismissed her concerns with "Enough... I will not be responding to any

7 further emails until [Sept. 8]," refusing to address the urgent estate business his unauthorized

8 actions had created.  This is the same person Apple claims should now be the only party in this

9 lawsuit – someone who has not filed a Notice of Appearance, does not appear to be admitted to

10 practice in this court, who has no background on this litigation, and who after agreeing to stay this

11 entire case without even consulting the Plaintiff, was on notice that Apple's motion severely

12 damaged the estate, and then declared that he will not even respond to emails for two weeks.  This

13 Bankruptcy court will now have a motion in front of it to review and rule on the Trustee's

14 unauthorized agreements and subsequent refusal to take accountability for their implementation.

15 # CONCLUSION

16     106.   In conclusion, the Plaintiff strongly objects to Defendant's Emergency Motion to

17 Stay and believes it is actually direct evidence of criminal conduct so egregious it would and does

18 qualify as additional chargeable Predicate Acts in this RICO lawsuit, and she would like to amend

19 accordingly.

20     107.   Plaintiff also urges the court to consider that the effort and resources Apple and its

21 counsel invested into these meritless motions, and that it likely exceeds the total amount of debt

22 that the Plaintiff owes in her Chapter 7 bankruptcy.

23     108.   At the very least, the Defendant's Motion should be denied. Plaintiff also requests

24 consideration of sanctions, reconsideration of her Motion to Amend and Motion to Disqualify, and

25 also potential referral of this case to the U.S. Department of Justice for a criminal investigation

26 and/or other relevant investigative bodies.

27

28

1

2

3

4

_____

5    **/s/ Ashley M. Gjovik**

     *Pro Se Plaintiff*
6
     Filed: August 27 2025
7

8    **Email**: legal@ashleygjovik.com

9    **Physical Address**: Boston, Massachusetts

     **Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
10
     **Phone**: (408) 883-4428
11

12

13                    # CERTIFICATE OF SERVICE

14

15   A copy of this motion and exhibits was efiled through the CAND electronic filing system, and will

     be served via email to Trustee Mark DeGiacomo on August 28 2025, and was also filed as an
16
     exhibit to the bankruptcy court docket for case *In re Ashley Marie Gjovik,* 25-11496, United States
17
     Bankruptcy Court, District of Massachusetts on August 28 2025.

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

# Exhibits

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

From    Perry, Jessica R. <jperry@orrick.com>

To    Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>

CC    Mark G. DeGiacomo<mdegiacomo@harrisbeachmurtha.com>,
Ashley Gjovik<ashleymgjovik@protonmail.com>, Riechert, Melinda<mriechert@orrick.com>,
Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
Booms, Ryan<rbooms@orrick.com>

Date    Monday, August 25th, 2025 at 9:20 PM

Ashley,

We object to your attempt to distort the record by intersplicing emails here that are not sequential in a chain.

We also disagree with your characterization and misrepresentations of our prior communications and our filing today.

Regards,

Jessica

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 4:47 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>;
Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton,
Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

**[EXTERNAL]**

(re-adding separate 7:10 and 7:36 PM emails to the chain below)

Counselors,


It appears that I sent my last email as you already filed nine separate documents (55 pages) to the docket at 7:07-7:10 PM ET, which despite what you said in your earlier email, seem to focus primarily around making false allegations against me of discovery misconduct, including and especially around our ongoing discovery disputes where I had been trying to meet with you in good faith prior to having to escalate the matters to the court -- and our most recent communications, as noted, simply stated you wouldn't engage with me further. In fact, in your "motions to stay" you even highlight my pending request for leave to file a motion for sanctions, as misconduct by me that has harmed Apple. That's not what you said these motions were about, and even if you did, you know that's improper.


You now claim that my FRCP discovery requests, my proper and good faith objections, my attempts to meet/confer, and even my requests to partner with Apple to write joint letters were done in bad faith, were misconduct, and were somehow abusive and prejudicial to Apple. This appears to be your primary justification for these motions to stay, and in addition to your prior misinterpretation of bankruptcy law, this also has no basis for these motions. However, what you've now done is absolutely outrageous and completely unacceptable, and I'm speechless at how to even respond to this conduct.


Instead of filing a motion to stay and administrative motion asking to make it an emergency stay, you have preempted my ability to properly escalate discovery disputes to our discovery judge. Instead you raised dozens of issues directly to the U.S. Judge while making false statements against me, baselessly accusing me of misconduct, forcing me on the defensive, and further, and most egregious and completely out of line, is you are forcing me to respond to ALL OF THIS by August 29 2025, knowing this week I'm working on my EPA Citizen Complaint to be filed on 9/2. You know, now I have to spend all week responding to you essentially filing what consists of probably 20 separate motions at once, with a four day deadline for my response. This is honestly one of the craziest and most inappropriate things you've done in this litigation.

I honestly don't even know how I could possibly respond to all of those allegations against me, all of the misstatements, and also put forward my own escalations as I had previously planned to, AND ALSO respond to the Motion to Stay/Request for Emergency Motion that you had originally said this was about, and which I already said I did not have time to oppose under the schedule you proposed, and asked you repeatedly to meet/confer with me in good faith. Instead you've filed what's essentially a nuclear warhead attack on this litigation and on me, including extensive smears and false allegations.

I'm still sorting through the pages and pages you just filed, but I'll also note is appears you are justifying Ryan Booms presence at my 341 meeting as gathering intelligence you then plan to use as part of the basis for your emergency motion to stay, that is also concurrently based on your false allegations of misconduct by me, and which basically, based on what you alleged, asks the court to sanction me and dismiss the entire lawsuit, which is just like mindbogglingly evil and inappropriate.

There's literally no way I can even possible begin to properly oppose the hundreds of things you just queued up in these motions, that have a material impact on my litigation and reputation, and put me at risk for sanctions from the court, in literally four days. Again, this is a blitzkrieg attack that could tank this entire litigation, without even telling me or the Trustee what you actually had planned, and doing this when you know my Trustee is on vacation and I cannot even consult with him about how to deal with this -- since what you've done isn't to ask for stay -- what you've done is attempted to get the entire case dismissed based on false allegations of misconduct by me. This would be outrageous for me to have to respond to under a normal timeline, let alone four days.

—

Ashley M. Gjøvik

BS, JD, PMP

Sent with [Proton Mail](https://mail.proton.me) secure email.

On Monday, August 25th, 2025 at 7:36 PM, Perry, Jessica R. <jperry@orrick.com> wrote:

> Ashley,
>
> You are incorrect. I emailed you back prior to you sending this email. Please stop trying to create a false record.
>
> Our motion is on file.
>
> Thanks,
> Jessica

On Monday, August 25th, 2025 at 7:10 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Apple counsel,
>
> As it is now 7pm ET / 4pm PT, and I have received no response from you to any of my emails today, I write you again, to urge you to meet and confer with me about these motions prior to and instead of your prior stated plan to file your motions by end of day today under a unilateral declaration that I no longer have any authority or agency in my own lawsuit against you.
>
> I propose we schedule a Zoom video conference meet and confer for later this week to discuss your concerns (whatever they may be). Perhaps we can reach a compromise regarding any legitimate issues or concerns. I can make myself available to meet with you on a 30min-1hr video call this Thursday or Friday (8/28-8/29) anytime between 9am-3pm PT (12pm-5pm ET).

Please let me know. Let's please talk through whatever this is about in good faith.


-Ashley


—

**Ashley M. Gjøvik**

**BS, JD, PMP**


—

**Ashley M. Gjøvik**

**BS, JD, PMP**


Sent with Proton Mail secure email.


On Monday, August 25th, 2025 at 7:03 PM, Perry, Jessica R. <jperry@orrick.com> wrote:


> Ashley:
>
> We believe you are mistaken that this is still your lawsuit to manage and control. We cited in our
> initial email authority supporting our motion to stay.  *See In re Bronner*, 135 B.R. 645, 648 (B.A.P.
> 9th Cir. 1992) (noting the rule that prepetition legal claims become "property of the estate as of
> the commencement of [a Chapter 7 bankruptcy] case"); *see also id*. at 647 (citing 11 U.S.C. §
> 541(a)(1)) ("A debtor's estate is comprised of all legal or equitable interests owned by the debtor

as of the commencement of the case. Title to estate property generally remains in the trustee unless the property is abandoned or intentionally re-vested.").

Other courts hold similarly and underscore that where a trustee has not abandoned prepetition legal claims, a plaintiff/debtor lacks standing to prosecute them. *See In re Meehan,* No. AP 13-01208-ES, 2014 WL 4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014), *aff'd,* 659 F. App'x 437 (9th Cir. 2016) ("Only a trustee may pursue a cause of action belonging to the bankruptcy estate. The debtor can pursue such claims only if they are abandoned by the estate.") (citations omitted); *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) ("Because a Chapter 7 debtor forfeits his prepetition assets to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim unless the trustee abandons the asset, which then returns the claim to the possession and control of the debtor.") (citation omitted); *In re Harris*, 450 B.R. 324, 335 n. 46 (Bankr. D. Mass. 2011) (holding that where prepetition claims "have not been formally abandoned by the Trustee, … it remains the Trustee, and not the Debtor, who has standing to prosecute those claims") (citations omitted).

We will proceed to file our motion to stay, and are requesting a briefing schedule that permits time for opposition and reply briefs.

As to my emails to you regarding the meet and confer process related to your interrogatories, your characterization is inaccurate.

Regards,
Jessica

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 2:53 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>;

Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton,
Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** Re: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

**[EXTERNAL]**

Apple counsel,

I'm checking in again and asking for your response to my request for information, as detailed and
sent to you nearly five hours ago.

Mr. DeGiacomo is on vacation, and I am not scheduled to speak with him or anyone else at/with
Office of the Trustee regarding my bankruptcy case until Sept. 8 2025 at the earliest. There has
been not yet been any substantive discussion about this civil litigation in my bankruptcy case, and
thus this threatened request for an emergency stay appears to be originating unilaterally from
Apple.

Therefore, my requested information about the statements you made this morning and your threat
to file these motions by EOD today regardless of my position, needs to be provided to me and
would only come from Apple's counsel.

This is still my lawsuit, I am still managing it, and you need to make an attempt to meet/confer
with me in good faith prior to filing motions like this. There is no rule, law, or policy that says once
someone files bankruptcy that the DOJ Office of the Trustee would suddenly by default have to
approve each and every motion that person files or any litigation decision that person makes --
other then matters related to settlements (which you said on the record on 8/5 that you do not
want to discuss and see no point in any further conference).

You cannot just unilaterally declare that I'm no longer party to this lawsuit, or this is no longer my
lawsuit, or that I cannot file or respond to motions in my own lawsuit without DOJ approval. That's
absurd.

Thus far, I've heard nothing from you other than your three emails at midnight last night essentially saying you won't talk to me anymore going forward (again). The Court already told you that you can not say that and you have to participate in this proceeding, including at least some form of meet/confer. Then this morning you now claim this isn't even my lawsuit anymore -- which is inaccurate and bizarre.

It's already past 5PM my time and tomorrow is my birthday. I'd prefer to not have to deal with this matter late tonight or at all tomorrow. If we can instead please meet/confer this week about whatever your actual concerns are, perhaps we can sort out a compromise and avoid unnecessary motion practice.

To start, please respond to my earlier questions and my request for information.

Thank you.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, August 25th, 2025 at 12:57 PM, Ashley M. Gjovik (Legal Matters) <[legal@ashleygjovik.com](#)> wrote:

Hello,

I am unable to respond to you substantively at this time other than to object, because there's no disclosed legal basis for this request. As a preliminary matter, I seek information as to the basis for requesting a stay, and why that stay would be considered an emergency.

In my Bankruptcy case, the Trustee has not consulted me regarding any Trustee plans or interest in this *Gjovik v Apple* civil litigation, or told me there was any communication with Apple about this litigation, or about any of my other litigation with Apple. This is required under Rule 2015(a) and 11 U.S.C. § 704(a)(9) prior to intervening or otherwise disrupting a debtor's pending affairs -- unless some other federal statute preempts this request, but that has not been disclosed to me.

While the U.S. government controls my pecuniary legal claims during a Chapter 7 bankruptcy proceeding, this case also includes injunctive and declaratory relief, as well as punitive damages and statutory fines. I also have a right to information about estate administration as a "party in interest," and as of now, that has not been provided to me regarding this request. See, 11 U.S.C. § 704(a)(9).

Further, there are no approved employment applications for Trustee lawyers to manage this litigation generally, nor are there any pending applications for employment/labor attorneys who would know how to properly manage the litigation of the retaliation claims. See, Rule 2014 and 11 U.S.C. § 327(a).

In addition, while the DOJ abruptly and without explanation switched my bankruptcy case from "no asset" to "asset," as of today, no one has informed me what DOJ thinks that asset is (which is required by bankruptcy law). To my own actual knowledge, I have no vested assets and no funds that could pay creditors, and as such my bankruptcy would be a full discharge. Therefore, there's no apparent basis that could justify stopping litigation midway and investing government resources (and taxpayer dollars) into this long-running civil litigation without even consulting the Plaintiff/Debtor.

This civil litigation has been ongoing since September 2023, with the similar adjudications ongoing since August 2021, and counsel from Orrick retained to defend Apple from my retaliation claims starting in August 2021 (four years ago). The next civil case events are a deadline for a Joint Case Management Report on October 14 and a Status Conference on October 21. (Dkt. 242). Beyond that, I have a pending motion for leave to request sanctions against Apple, two notices of requests for depositions of Apple employees in September 2025 pending with Apple, and multiple discovery disputes awaiting Apple's response.

Most recently, I formally complained to Apple/Orrick about improper discovery misconduct that would be a new basis for sanctions and asked Orrick to file a joint letter to the court about it, and also complained about what appeared to be intimidation and harassment by their counsel at my 341 meeting on 8/21. Orrick responded late last night (on a Sunday) refusing to meet/confer on open issues or discuss further. As such, this request to stay, based on my own knowledge, thus appears to be Apple's attempt to obstruct my open requests and planned escalations.

The legal standard for granting a stay of litigation is clearly not met here, and no one has attempted to provide a proffered legal basis as to success on the merits, irreparable harm in the absence of relief, the balance of equities, or the public interest -- or even basic justification as to why it would be needed considering there are no major case events until an October 21 2025 status conference -- more than two months away. Similarly, a request could simply be filed to reschedule that conference instead of stay all litigation, if there was even a justification for that.

Even more untethered is any supposed basis to treat this request as an emergency motion for a stay, where supposedly irreparable harm would occur during the time needed to consider a response. Yet no one has offered any sort of basis for the request, the request appears to directly conflict with and violate bankruptcy rules and norms, and there's no case events or outcomes impacted by Trustee consideration in parallel with ongoing litigation. Thus the request instead appears to be Apple's counsel trying to avoid their discovery obligations and the consequences for their prior discovery misconduct in this case.

To both Apple and the Trustee, I request more information about what this request is about, why its being made, and what the justification is.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, August 25th, 2025 at 10:27 AM, Perry, Jessica R. <[jperry@orrick.com](mailto:jperry@orrick.com)> wrote:

> Mr. DeGiacomo and Ms. Gjovik:
>
> I write to advise that Apple intends to file a motion to stay today in N.D. Cal. Case No. 23-cv-04597 – a prepetition litigation brought by Ms. Gjovik, which is now property of her Chapter 7 bankruptcy estate (*see In re Bronner,* 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992)) – to allow the Trustee time to determine how to proceed in this action as the real party in interest.
>
> We will also be filing an administrative motion to have the motion to stay be heard on shortened time, and will request that the hearing on the motion to stay be held next Thursday, September 4, 2025 at 1:30 p.m. PT (with any opposition due by August 29 and any reply due by September 2).

Although we believe only the Trustee's agreement/stipulation to the motion to shorten time is necessary (given that the Chapter 7 bankruptcy estate, not Ms. Gjovik, is the lone party with standing at present to continue the case), we would appreciate hearing from each of you whether you will agree/stipulate to the administrative motion to shorten time.  We would also appreciate confirmation that the Trustee agrees that entry of a stay would be appropriate in this circumstance.

Thank you,

Jessica

**Jessica Perry**

Partner

Orrick
Silicon Valley 

T +1-650-614-7350
jperry@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

Case 5:11-cv-01846-LHK   Document 2111   Filed 08/28/25   Page 252 of 756
Case 5:11-cv-01846-LHK   Document 2040   Filed 08/28/25   Page 252 of 756
Exhibits    Page 186 of 204

**USER STUDY INFORMED CONSENT FORM**
**Study Title: Social Hours Study**

| Research Leads: | Redacted |
| --- | --- |

This is a voluntary user study undertaken by Apple Inc. ("Apple"). **Your decision to participate in this study is completely voluntary and you may decline to participate or stop your participation at any time.** You are not required to participate in this study as a condition of your employment and will not be penalized if you choose not to participate or if you stop your participation.

**WHY IS THIS STUDY BEING DONE?**
The purpose of this study is to collect audio, video and photo images of faces.  The results of this study may be used to develop and improve technologies and algorithms that operate on images, video, depth data, and/or audio data in Apple products and services, such as algorithms and technologies for expression, focusing, white point, color, contrast, recognition and identification, image processing, communication, health research, and immersive multi-media.

**WHAT WILL HAPPEN IF I TAKE PART IN THIS RESEARCH STUDY?**
You will be given a Red device during the study session.  At the beginning of the study session you will be asked to sign into the Gobbler App using your apple email address then a 6 digit code will be assigned you.  As you interact with the device video recordings of your interactions will be logged on the device.  During the  session, you will be asked to do series of tasks while standing, sitting, and walking between various locations in the outdoor study environment.  At the end of the study session, you will be asked to review all captured data and **upload only selected data you would like to share with the study researchers**. Once your selected data is sent from the device, all the captured data will be deleted from device storage.

**WHERE WILL THIS STUDY TAKE PLACE?**
This study will take place in Mariani 3B, 20400 Mariani Ave., Cupertino, CA.

**HOW LONG WILL MY PARTICIPATION IN THIS STUDY TAKE?**
This study will last approximately 20 minutes.

**WHO CAN PARTICIPATE IN THIS STUDY?**

Before entering the study, you must meet all of the following criteria:
• You are a full-time Apple employee who is disclosed to Red and Reda
• You are between the ages of 18 and 79 years old.
• You are able to independently operate a handheld device.

You cannot participate in this study if any of the following apply:
• You have one of the following medical eye condition:

- Porphyria (build-up of molecules in the eye that cause someone to be sensitive to light)
- Retinitis pigmentosa (and derivates of this disease)
- Stargardts
- Cone Dystrophies
- Pattern Dystrophies

- Gyrate Atrophy
- Oguchi disease
- Goldman - Favre
- Kearns - Sayre
- Lebers congenital amaurosis
- Choroidiremia
- Alports

• You are currently taking photosensitizing medications or have any known photosensitizing medical conditions.
• You have recently had neck injury, or suffer from arthritis, neck stiffness, or any other condition that causes discomfort when rotating your head.

**WHAT DATA WILL BE COLLECTED?**  As part of this study, the information that may be collected from you may include the following (we call this "Study Data"):
• **Contact Information:** Name, Email Address
• **Photo/Video/Audio:**  Images and video recordings of your face
• **Sensitive Health Data:** Ocular and facial health conditions
• **Documented Study Data:** Birth year, Gender, Handedness, Ethnicity, Height

APL-GAELG_00002861

## HOW WILL MY INFORMATION BE KEPT CONFIDENTIAL?

Your Contact Information will be held confidentially by the Study Research Team and access limited to those on the Study Team who need access in order to administer and conduct the Study. Your remaining Study Data will be separated from your Contact Information and assigned a Key Code (we call this "KeyCoded Study Data"). Your KeyCoded Study Data will be maintained either in a central study database or by the Study Research Team directly. For more information on how Study Data will be kept secure and confidential, please contact the Research Lead listed above.

Although all Study Data that identifies you will be protected and treated as confidential, total confidentiality cannot be guaranteed. It is possible that Study Researchers could identify you just from your KeyCoded Study Data (for instance if the KeyCoded Study Data includes photo images of you), or there could be unauthorized access to, or security breaches of, the systems used to store your Study Data. There may be other privacy risks that we have not foreseen.

## HOW WILL STUDY DATA BE USED, DISCLOSED & DESTROYED?

By signing this consent form, you agree to allow Apple, Apple personnel, external entities with whom Apple may choose to collaborate, and designated third parties acting on behalf of Apple, to collect, use, store, process, and disclose ("use and disclose") your information for the purposes described in this consent and for the development, design, approval, production or support of Apple products, technologies, and services. Apple will take steps to ensure the confidentiality of data shared with external entities and third parties, such as the use of contractual obligations where appropriate. Your Study Data will be used, disclosed, and destroyed as follows:

- **Contact Information:** Will generally only be used by the Study Coordinators and the Database Administrators of Study Teams, to conduct this study and to contact you about this or future studies. Research Study Teams will generally not have access to your Contact Information as your Study Data will be anonymized. Your Contact Information will be deleted within one year after the date listed on this consent.
- **Photo/Video/Audio:** Will generally only be used by the Study Team and other research teams working on this Study or subsequent related studies. This data will not be shared with research teams for unrelated studies without going through an internal approval process or obscuring/blurring any images of you that might otherwise directly identify you (for example, blurring a full face photograph), or obtaining your additional consent. Your Photo/Video/Audio data will be deleted within 15 years after the date listed on this consent.
- **Sensitive/Health Data:** Will generally be used by the Study Team and other research teams working on this Study or subsequent related studies. This data may be shared with other study teams so long as the data is KeyCoded and does not otherwise include data that by itself identifies you. Your KeyCoded Sensitive/Health Data may be retained as long as necessary for the purposes described in this consent.
- **Documented Study Data:** Will generally be used by the Study Team and other research teams working on this Study or subsequent related studies. This data may be shared with other study teams so long as the data is assigned a unique subject ID and does not otherwise include data that by itself identifies you. Your anonymized Documented Study Data may be retained as long as necessary for the purposes described in this consent.

All Study Data, including your Contact Information, may be used in connection with selection and recruitment efforts for future Apple studies. The Study Coordinator and the Database Administrator of this Study may share your Contact Information with approved Study Coordinators and Database Administrators of other related studies for such recruitment as well as to merge your Study Data with other Study Data. All Study Data, may also be provided to public, regulatory, or government authorities, including law enforcement, when required by law, legal process, or litigation.

You may contact the Research Lead at any time to request deletion of your data, however, note that in some circumstances, deletion of your data may not be feasible (for instance if your data has been de-linked from your Contact Information and the subject ID). However, reasonable efforts will be made to delete identifiable data within a reasonable amount of time.

## WHAT RISKS OR DISCOMFORTS SHOULD I EXPECT FROM BEING IN THIS STUDY?

The study involves using visible and non-visible light to capture images of your face. No significant risks or permanent side effects are anticipated or expected, and all testing will be non-invasive.

The devices that you are being asked to use for this study contain a Class 1 laser, which is considered safe under normal use conditions. Please follow all instructions provided by the study personnel. If the devices that you are asked to use in the study are damaged, abused, or misused, you may get injured. Please immediately notify the study personnel onsite if you drop the device or see any signs of damage. The devices may also prompt further action by you or provide further warnings. Please tell onsite study personnel immediately if you have any

APL-GAELG_00002862

questions or are unclear on what to do next.  If you have any concerns about the safety of the study or have any questions please ask the study personnel onsite or call one of the Research Leads before signing this consent.

If any pain, discomfort or side effects are experienced during or after the study, contact a member of the study personnel onsite or one of the Research Leads.

There may additionally be some unknown and unforeseeable risks.  **If you experience any pain, discomfort, side effects notify a Research Lead.**

**WHAT HAPPENS IF I AM INJURED BECAUSE OF THE STUDY?**
Every effort to prevent injury as a result of your participation will be taken. If, however, complications or injuries occur that are the result of a procedure or test required for this study, you will be reimbursed the standard charges for the treatment of these complications or injuries, provided that these charges have not been reimbursed by your nongovernment medical insurance or other third party.  The compensation described in this section will be the only form of compensation provided to you for complications or injuries related to this study.

**WILL I RECEIVE COMPENSATION FOR TAKING PART IN THIS STUDY?**
Food and beverage will be provided for your participation in the study.

**HOW DO I WITHDRAW FROM THIS STUDY?**
You can withdraw from this study at any time by contacting the Research Lead.  If you withdraw from the study, your Contact Information and Study Data will be used and maintained as stated above, unless you request that it be deleted, in which case it will be deleted where feasible as stated above.

**WHO CAN ANSWER MY QUESTIONS ABOUT THE STUDY?**
If a study-related problem should occur, or if you have any questions about the study at any time, please contact a Research Lead.

Should you desire to voice complaints or concerns about the study, have questions not addressed by the Research Lead or his/her designee, or have questions about your rights in the study, please contact [Redacted] Human Studies Review Board, at [Redacted] or [Redacted] Apple Legal, at [Reda Redacted]

**YOUR CONFIDENTIALITY OBLIGATIONS**
By agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple.

---

**CONSENT**

I acknowledge that I have read this consent carefully, that I understand all of its terms, and that I enter into this study voluntarily.  I understand that I can withdraw at any time.

I understand that I may ask for a copy of this consent.


_____     _____     _____
Participant's Name                          Signature                                  Date


_____     _____     _____
Person Conducting Consent              Signature                                  Date

APL-GAELG_00002863

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

## Ethics

Manage Attachments (2): Screen Shot 2021-07-23 at 2.04.15 PM.png  [download]    Screen Shot 2021-07-23 at 2.04.43

| | | | |
|---|---|---|---|
| **Number** | HRC000015205 | **State** | Closed Complete |
| **Subject person** | Ashley Gjovik | **Priority** | 3 - Low |
| **Opened for** | Anonymous User | **Source** | Inbound Email |
| **HR service** | Business Conduct Helpline | **Opened** | 2021-07-23 13:59:42 |
| **HR Service Subtype** | Report a concern | **Opened by** | CST Guest |
| **Assignment group** | BCGC SN Access | **Collaborators** | |
| **Assigned to** | Timos Gies | **Watch list** | |
| | | **Restricted** | ☐ |

**Title**   Speaking about Apple to the media

**Description:**

> CASE
> 2021-7-4227 - Other
>
> A HW employee was quoted in The NY Times speaking about Apple's return to work practice that goes into effect in the fall. The matter was raised to ER to determine if this violates the policy on public communication.

**Additional comments:**

**Work notes (Private)**

Conversation

☑ **All (33)**  ☑ Assigned to (1)  ☑ Assignment group (1)  ☑ Source (1)  ☑ Description (2)  ☑ HR service (1)
☑ Opened by (1)  ☑ Opened for (1)  ☑ Priority (1)  ☑ Title (2)  ☑ Pending Reason (1)  ☑ State (4)  ☑
☑ Subject person (2)  ☑ Case Resolution (1)  ☑ Business Conduct Policy (1)  ☑ Investigation Team (1)  ☑ HR
Service Subtype (1)  ☑ Restricted (1)  ☑ System update (2)  ☑ Work notes (3)  ☑ Email (5)

**2021-08-09 16:31:51   Timos Gies**  - Changed:  Case Resolution, State, Work notes

Case Resolution: Duplicate Report

State: Closed Complete  ~~was: Pending~~

ER confirmed they already have a case open on this matter, so I have closed this as a duplicate.

**2021-07-29 18:16:11   Case HRC000015205 -- work notes added**  - Email sent

Sent: timos  [ Redacted ]

**2021-07-29 18:16:04   Antonio Lagares**  - Changed:  Work notes

Hi Timos,

We are aware of this matter and it is part of a broader investigation and collaboration with ER/Legal.

TL

APL-GAELG_00002331

On Jul 29, 2021, at 11:09, Business Conduct <​[Redacted]​> wrote:

Hi,

This anonymous report is considered a Business Conduct matter. Please keep us advised of the outcome of this investigation.

The reporter has been asked if they are willing to speak with an investigator and we will provide updates if they reply.
Best regards,

Timos

***

Select your employment category.:
Apple Employee
Please identify the person(s) engaged in this behavior:
Ashley Gjovik - EPM
Is management aware of this problem?
Do Not Know / Do Not Wish To Disclose
What is the general nature of this matter?
Going on record representing Apple to the media
Where did this incident or violation occur?
New York Times article
Please provide the specific or approximate time this incident occurred:
Friday, July 23
How long do you think this problem has been going on?
Don't know
How did you become aware of this violation?
Other
If other, how?
read it on a Slack channel after being made aware of it by a coworker
Details:
Person represented Apple in a way that doesn't seem to represent the company appropriately. Of course, if they were authorized to speak on behalf of Apple it is different, but it did not appear that way.

Article link: https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html
<https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html>

Link also provided on the Slack channel citing additional coverage of the article: https://law.scu.edu/news/ashley-gjovik-jd-22-quoted-in-the-the-new-york-times-responding-to-apples-plans-for-employees-to-return-to-the-office-this-fall/ <https://law.scu.edu/news/ashley-gjovik-jd-22-quoted-in-the-the-new-york-times-responding-to-apples-plans-for-employees-to-return-to-the-office-this-fall/>

Portion of article relevant to this (quote in fourth paragraph):

"In June, Apple's chief executive, Tim Cook, told employees that they would be required to return to the office at least three days a week, starting in September. About 1,800 employees sent Mr. Cook a letter calling for a more flexible approach.

He did not respond, but days later Apple posted an internal video in which company executives doubled down on bringing workers back to the office. In the video, Dr. Sumbul Desai, who helps run Apple's digital health division, encouraged workers to get vaccinated but stopped short of saying they would be required to, according to a transcript viewed by The Times.

The video didn't sit well with some employees.

APL-GAELG_00002332

"OK, you want me to put my life on the line to come back to the office, which will also decrease my productivity, and you're not giving me any logic on why I actually need to do that?" said Ashley Gjovik, a senior engineering program manager.

When the company delayed its return-to-office date on Monday, a group of employees drafted a new letter, proposing a one-year pilot program in which people could work from home full time if they chose to. The letter said an informal survey of more than 1,000 Apple employees found that roughly two-thirds would question their future at the company if they were required to return to the office."
Department:
Hardware

<Screen Shot 2021-07-23 at 2.04.15 PM_MSG1627582131193_1895.png><Screen Shot 2021-07-23 at 2.04.43 PM_MSG1627582131174_3649.png>

**2021-07-29 18:15:51**  Re: Case HRC000015205: Speaking to Reporters, Hardware  -  Email Received

Received: CST Guest

**2021-07-29 11:10:11  Timos Gies**  - Changed:  Business Conduct Policy, Description, Investigation Team, Title

Business Conduct Policy: Public Communications

Description:
CASE 2021-7-4227 - Other A HW employee was quoted in The NY Times speaking about Apple's return to work practice that goes into effect in the fall. The matter was raised to ER to determine if this violates the policy on public communication.

Investigation Team: Employee Relations

Title: Speaking about Apple to the media          was: NEW CASE ADDED FROM HOTLINE: Case 2021-7-4227 - Other

**2021-07-29 11:10:10  Timos Gies**  - Changed:  Pending Reason, State, Work notes

Pending Reason: Process

State: Pending          was: Work in Progress

Pending Reason - Pending ER review

**2021-07-29 11:04:09**  Case HRC000015205: Speaking to Reporters, Hardware  -  Email sent

Sent: US_Corp_ER_BC[ Redacted ]

**2021-07-29 11:03:57  Timos Gies**  - Changed:  System update

System update:
Inserted File Name: Screen Shot 2021-07-23 at 2.04.43 PM.png / By: timos [ Redacted ]

**2021-07-29 11:03:57  Timos Gies**  - Changed:  System update

System update:
Inserted File Name: Screen Shot 2021-07-23 at 2.04.15 PM.png / By: timos [ Redacted ]

**2021-07-29 11:00:38  Timos Gies**  - Changed:  State, Subject person

State: Work in Progress          was: Ready

Subject person: Ashley Gjovik          was: Anonymous User

**2021-07-28 17:00:11**  Case HRC000015205 has been assigned to you  -  Email sent

Sent: timos [ Redacted ]

APL-GAELG_00002333

**2021-07-28 17:00:08  Kathleen Emery** - Changed: Assigned to

Assigned to: Timos Gies

**2021-07-23 13:59:42  CST Guest** - Changed: Assignment group, Description, HR service, HR Service Subtype, Opened by, Opened for, Priority, Restricted, Source, State, Subject person, Title

Assignment group: BCGC SN Access

Description:
CASE 2021-7-4227 - Other NOTIFICATION RULE New cases LINK TO CASE https://apple.ethicspointvp.com/case.aspx?caseId=8826 Please click the link above to view case information. NAVEX Global www.navexglobal.com This is a system-generated email. If you would like to be unsubscribed, please contact your administrator. NAVEX Global reference: d712add9-8511-4498-91dc-cbd42d066021 *************** CONFIDENTIALITY NOTICE *************** This e-mail and any attachments may contain private, confidential, and privileged information for the sole use of the intended recipient. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please contact the sender at NAVEX Global, keep the contents confidential and immediately delete the message and any attachments from your system. *******************************************************

HR service: Business Conduct Helpline - Deactivated

HR Service Subtype: Report a concern

Opened by: CST Guest

Opened for: Anonymous User

Priority: 3 - Low

Restricted: false

Source: Inbound Email

State: Ready

Subject person: Anonymous User

Title: NEW CASE ADDED FROM HOTLINE: Case 2021-7-4227 - Other

**2021-07-23 13:59:38**  NEW CASE ADDED FROM HOTLINE: Case 2021-7-4227 - Other - Email Received

Received: noreply@navexglobal.com

## Service Details

| | | | |
|---|---|---|---|
| **Business Conduct Policy** | Public Communications | **Results** | |
| **Business Conduct Sub-Policy** | | **Directed by counsel** | ☐ |
| **Investigation Team** | Employee Relations | **Whistleblower** | ☐ |

## Resolution

**Case Resolution**   Duplicate Report

## Comments/Worknotes

APL-GAELG_00002334

## HR Tasks   Parent = HRC000015205

0 HR Tasks

| Number | State | Title | Assignment group | Assigned to | Task type |
|--------|-------|-------|------------------|-------------|-----------|

No records to display

## Interactions   Sys ID in

0 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|--------|--------|-------------------|------------|-------|------|-------------|---------|-----------|

No records to display

## Child Cases   Parent = HRC000015205

0 HR Cases

| Number | State | Opened for | People Business Partner | Subject person | People Business Partner | HR service | Title | Assignment group | Assigned to | Opened | Updated |
|--------|-------|-----------|------------------------|----------------|------------------------|-----------|-------|------------------|-------------|--------|---------|

No records to display

## Knowledge   Source Task = HRC000015205

0 Knowledge

| Number | Active | Article ID | Article type | Author | Base Version | Can Read | Cannot Read | Category | Configuration item |
|--------|--------|-----------|--------------|--------|--------------|----------|-------------|----------|--------------------|

No records to display

## Related Cases   Active = true AND Record ID [Document ID] = 28c25699b72130104c5dfcbb6a8c0290

0 Related Records

| Related Record ID | Title | State | Created |
|-------------------|-------|-------|---------|

No records to display

## Attachments   Active = true AND Record sys ID = 28c25699b72130104c5dfcbb6a8c0290

2 Attachment Metadatas

| File name | Hidden | Uploaded by | Uploaded on |
|-----------|--------|-------------|-------------|
| Screen Shot 2021-07-23 at 2.04.15 PM.png | false | timos-1169384853 | 2021-07-29 11:03:56 |
| Screen Shot 2021-07-23 at 2.04.43 PM.png | false | timos-1169384853 | 2021-07-29 11:03:56 |

APL-GAELG_00002335

## Ethics

Manage Attachments (7): IMG_1383.jpeg [download]    Screen Shot 2021-07-24 at 1.49.23 PM.png [download]    Screen

| | | | |
|---|---|---|---|
| **Number** | HRC000015213 | **State** | Closed Complete |
| **Subject person** | Ashley Gjovik | **Priority** | 3 - Low |
| **Opened for** | Redacted | **Source** | Inbound Email |
| **HR service** | Business Conduct Helpline | **Opened** | 2021-07-24 14:05:56 |
| **HR Service Subtype** | Report a concern | **Opened by** | Redacted |
| **Assignment group** | BCGC SN Access | **Collaborators** | |
| **Assigned to** | Kathleen Emery | **Watch list** | |
| | | **Restricted** | ☐ |

**Title**    Concerns with ee posts

**Description:**

An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office.
Referred to ER

**Additional comments:**

**Work notes (Private)**

Conversation    ☑ All (40)  ☑ Assigned to (1)  ☑ Assignment group (1)  ☑ Additional comments (1)  ☑ Source (1)  ☑
Description (2)  ☑ HR service (1)  ☑ Opened by (1)  ☑ Opened for (1)  ☑ Priority (1)  ☑ Title (3)  ☑ State
(3)  ☑ Subject person (2)  ☐ Case Resolution (1)  ☑ Business Conduct Policy (1)  ☑ Investigation Team (1)
☑ HR Service Subtype (1)  ☑ Restricted (1)  ☑ System update (7)  ☑ Work notes (3)  ☑ Email (7)

**2021-08-02 15:44:40  Kathleen Emery** - Changed: State

State: Closed Complete  was: Work in Progress

**2021-08-02 15:44:34  Kathleen Emery** - Changed: Work notes

ER acknowledged

**2021-07-28 17:57:40**  Case HRC000015213 -- work notes added - Email sent

Sent: kemery  Redacted

**2021-07-28 17:57:38  Antonio Lagares** - Changed: Work notes

We are aware and addressing this issue.

TL

On Jul 28, 2021, at 17:47, Business Conduct  Redacted  wrote:

APL-GAELG_00002339

Hi ER

I am forwarding this email and attachments from [ Redacted ] PBP for ISS, about Ashley Gjovik's twitter posts and false accusations.

We do not need an update.

Kathleen

////

Hi Business Conduct,

An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office and that we are putting people's lives at risk).

This same employee is part of the remote work advocacy Slack channel, and has also made some troubling comments in that Slack channel.

As a member of the People Team who has been involved in helping with the communications to employees who have expressed concern about returning to work, I know we have taken great care in connecting with our employees to understand their perspective and to address these concerns in a thoughtful way. It's very concerning to me that someone would go out of their way to accuse Apple of putting people's lives at risk in such public news forums, including making statements that are not true.

Thanks,
[ Redacted ]

https://twitter.com/ashleygjovik/status/1418969039099994112
<https://twitter.com/ashleygjovik/status/1418969039099994112>
[ Redacted ] | 🍎 People Business Partner - AI/ML | [ Redacted ]
<mailto:[ Redacted ]

Additional information:

Full-length article in which the original quote and other Apple confidential information originally appears:

https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html?
referringSource=articleShare <https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html?referringSource=articleShare>

Specific excerpts:
There is no mention of the fact that People Business Partners individually reached out and contacted the 1500+ employees who signed the letter to better understand their individual situations and summarize this info to share back with Tim, only a statement that "Tim did not respond".

Tweets where multiple Apple employees are publicly sharing and commenting on internal Apple documents in a way that could be damaging to our employment

<84e08ca5-4ac5-425b-860d-e7dbb95b9ea5_MSG1627519457976_4238.png><Screen Shot 2021-07-24 at 1.49.35 PM_MSG1627519462591_6904.png><image0_MSG1627519460351_3278.png>
<image1_MSG1627519461439_7471.png><86147da3-eb20-412d-a3c6-95e15d60f1aa_MSG1627519459955_8905.png><IMG_1383_MSG1627519462191_7424.jpeg><Screen Shot 2021-07-

24 at 1.49.23 PM_MSG1627519462193_2943.png>

**2021-07-28 17:57:10**   Re: Hardware Employees comments Twitter post Case HRC000015213   - Email Received

Received: CST Guest

**2021-07-28 17:48:08**   **Kathleen Emery**   - Changed:   Case Resolution, Description, Investigation Team, Title

Case Resolution: Directed to Appropriate Resources

Description:
An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office. Referred to ER

Investigation Team: Employee Relations

Title: Concerns with ee posts was: Concerning by Apple employee

**2021-07-28 17:44:10**   Case HRC000015213 -- comments added   - Email sent

Sent: [ Redacted ]

**2021-07-28 17:43:50**   **Kathleen Emery**   - Changed:   Additional comments, Assigned to, Business Conduct Policy, HR Service Subtype, State, Subject person, Title

HI [ Redacted ]
Thanks for reaching out regarding Ashley Gjovi's comments. I forwarded the emails to ER for Hardware.
Kathleen

Assigned to: Kathleen Emery

Business Conduct Policy: Not Business Conduct

HR Service Subtype: Report a concern

State: Work in Progress was: Ready

Subject person: Ashley Gjovik was [ Redacted ]

Title: Concerning by Apple employee was: Concerning comments in NYT Article and on Twitter by Apple employee

**2021-07-28 17:37:35**   Hardware Employees comments Twitter post Case HRC000015213   - Email sent

Sent: US_Corp_ER_BC [ Redacted ]

**2021-07-25 09:14:02**   **Help Central**   - Changed:   System update

System update:
Inserted File Name: image0.png / By [ Redacted ]

**2021-07-25 09:14:02**   **Help Central**   - Changed:   System update

System update:
Inserted File Name: 86147da3-eb20-412d-a3c6-95e15d60f1aa.png / By [ Redacted ]

**2021-07-25 09:14:02**   **Help Central**   - Changed:   System update

System update:
Inserted File Name: image1.png / By [ Redacted ]

**2021-07-25 09:14:02**   **Help Central**   - Changed:   System update

System update:

APL-GAELG_00002341

Inserted File Name: 84e08ca5-4ac5-425b-860d-e7dbb95b9ea5.png / By: [ Redacted ]

**2021-07-25 09:13:51** [ Redacted ]  - Changed: Work notes

Additional information:

Full-length article in which the original quote and other Apple confidential information originally appears:

https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html?
referringSource=articleShare

Specific excerpts:

There is no mention of the fact that People Business Partners individually reached out and contacted the 1500+
employees who signed the letter to better understand their individual situations and summarize this info to share back
with Tim, only a statement that "Tim did not respond".

Tweets where multiple Apple employees are publicly sharing and commenting on internal Apple documents in a way
that could be damaging to our employment

Sent from my iPhone

> On Jul 24, 2021, at 2:06 PM, Business Conduct [ Redacted ] wrote:
>
>
>
> Thank you for contacting
> Business Conduct Office
> A case has been created for you regarding your inquiry and we will reply with more information as soon as we can. If
you have any additional details or questions you'd like to share, please put them in a reply to this email.
> Your reply to this email will be automatically posted to the Case Activity Log.
>

**2021-07-25 09:13:49**  Re: Business Conduct Helpline Case HRC000015213 has been opened  - Email Received

Received: [ Redacted ]

**2021-07-24 14:06:10**  Business Conduct Helpline Case HRC000015213 has been opened  - Email sent

Sent: [ Redacted ]

**2021-07-24 14:06:03** **Help Central**  - Changed: System update

System update:
Inserted File Name: Screen Shot 2021-07-24 at 1.49.35 PM.png / By: [ Redacted ]

**2021-07-24 14:06:03** **Help Central**  - Changed: System update

System update:
Inserted File Name: Screen Shot 2021-07-24 at 1.49.23 PM.png / By: [ Redacted ]

**2021-07-24 14:06:03** **Help Central**  - Changed: System update

System update:
Inserted File Name: IMG_1383.jpeg / By: kmichallik@apple.com

APL-GAELG_00002342

**2021-07-24 14:05:56** [ Redacted ] - Changed: Assignment group, Description, HR service, Opened by, Opened for, Priority, Restricted, Source, State, Subject person, Title

    Assignment group: BCGC SN Access

    Description:
    Hi Business Conduct, An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office and that we are putting people's lives at risk). This same employee is part of the remote work advocacy Slack channel, and has also made some troubling comments in that Slack channel. As a member of the People Team who has been involved in helping with the communications to employees who have expressed concern about returning to work, I know we have taken great care in connecting with our employees to understand their perspective and to address these concerns in a thoughtful way. It's very concerning to me that someone would go out of their way to accuse Apple of putting people's lives at risk in such public news forums, including making statements that are not true. Thanks, [ Redacted ] https://twitter.com/ashleygjovik/status/1418969039099994112 [ Redacted ] People Business Partner - AI/ML | [ Redacted ]

    HR service: Business Conduct Helpline - Deactivated

    Opened by: [ Redacted ]

    Opened for:

    Priority: 3 - Low

    Restricted: false

    Source: Inbound Email

    State: Ready

    Subject person: [ Redacted ]

    Title: Concerning comments in NYT Article and on Twitter by Apple employee

**2021-07-24 14:05:51** Concerning comments in NYT Article and on Twitter by Apple employee - Email Received

    Received: [ Redacted ]

## Service Details

| | | | |
|---|---|---|---|
| **Business Conduct Policy** | Not Business Conduct | **Results** | |
| **Business Conduct Sub-Policy** | | **Directed by counsel** | ☐ |
| **Investigation Team** | Employee Relations | **Whistleblower** | ☐ |

## Resolution

**Case Resolution**  Directed to Appropriate Re

## Comments/Worknotes

APL-GAELG_00002343

## HR Tasks　Parent = HRC000015213

0 HR Tasks

| Number | State | Title | Assignment group | Assigned to | Task type |
|--------|-------|-------|------------------|-------------|-----------|

No records to display

## Interactions　Sys ID in

0 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|--------|--------|-------------------|-----------|-------|------|-------------|---------|------------|

No records to display

## Child Cases　Parent = HRC000015213

0 HR Cases

| Number | State | Opened for | People Business Partner | Subject person | People Business Partner | HR service | Title | Assignment group | Assigned to | Opened | Updated |
|--------|-------|-----------|------------------------|----------------|------------------------|-----------|-------|------------------|-------------|--------|---------|

No records to display

## Knowledge　Source Task = HRC000015213

0 Knowledge

| Number | Active | Article ID | Article type | Author | Base Version | Can Read | Cannot Read | Category | Configuration item |
|--------|--------|-----------|--------------|--------|--------------|----------|-------------|----------|--------------------|

No records to display

## Related Cases　Active = true AND Record ID [Document ID] = a5cd536db729b0104c5dfcbb6a8c02cb

0 Related Records

| Related Record ID | Title | State | Created |
|-------------------|-------|-------|---------|

No records to display

## Attachments　Active = true AND Record sys ID = a5cd536db729b0104c5dfcbb6a8c02cb

7 Attachment Metadatas

| File name | Hidden | Uploaded by | Uploaded on |
|-----------|--------|-------------|-------------|
| 84e08ca5-4ac5-425b-860d-e7dbb95b9ea5.png | false | | 2021-07-25 09:13:49 |
| 86147da3-eb20-412d-a3c6-95e15d60f1aa.png | false | | 2021-07-25 09:13:49 |
| image0.png | false | Redacted | 2021-07-25 09:13:48 |
| image1.png | false | | 2021-07-25 09:13:48 |
| IMG_1383.jpeg | false | | 2021-07-24 14:05:51 |
| Screen Shot 2021-07-24 at 1.49.23 PM.png | false | | 2021-07-24 14:05:51 |
| Screen Shot 2021-07-24 at 1.49.35 PM.png | false | | 2021-07-24 14:05:51 |

APL-GAELG_00002344

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D

## RE: Gjovik v Apple | Regarding Orrick's Attendance at Plaintiff's August 21 2025 Bankruptcy Proceedings (341 Meeting of Creditors)

| | |
|---|---|
| From | Perry, Jessica R. <jperry@orrick.com> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com>, Booms, Ryan<rbooms@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Riechert, Melinda<mriechert@orrick.com> |
| Date | Sunday, August 24th, 2025 at 11:49 PM |

Ashley,

We disagree that it was inappropriate for a person from Orrick to attend the public hearing in the bankruptcy court that occurred on Thursday. And we reject your attempt to blame us for any failure on your part to provide complete and accurate information in the proceedings, as well as your other baseless accusations.

Regards,

Jessica

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, August 21, 2025 9:40 AM
**To:** Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R. <jperry@orrick.com>
**Subject:** Gjovik v Apple | Regarding Orrick's Attendance at Plaintiff's August 21 2025 Bankruptcy Proceedings (341 Meeting of Creditors)

[EXTERNAL]

Dear Counsel,

I write to document my concerns regarding Orrick's attendance at my Section 341 Meeting of Creditors on Aug. 21 2025 in the U.S. Bankruptcy Court.

While I acknowledge your right to attend public court proceedings, I must note the inappropriate nature of your firm's conduct and its impact on my testimony to the bankruptcy court, as I objected to in the proceeding.

Apple knows I primarily blame it for denylisting me and causing my financial demise, including driving me into bankruptcy. Apple is also a creditor regarding my AppleCard debt (which is almost entirely WestLaw fees), along with Goldman Sachs. Yet, Apple chose to send Ryan Booms, who serves as noticed employment litigation defense counsel in civil litigation (3:23-cv-04597) and the Dept. of Labor whistleblower adjudication, rather than bankruptcy or financial counsel who would typically handle such proceedings. It also appears that Goldman Sachs did not appear -- nor did any of my other creditors. Apple's choice to appear with retaliation defense counsel also occurred during active discovery disputes in our employment litigation.

The visible presence of opposing retaliation counsel created a chilling effect on my testimony and may have compromised my ability to provide the complete financial disclosure that bankruptcy proceedings require. This apparent intentional intimidation by Apple continues a documented pattern of Apple monitoring and interfering with my participation in legal proceedings beyond the scope of our employment dispute, and beyond the boundaries of lawful litigation tactics. Federal and state agencies have already determined that Apple's retaliation was unlawful and that my underlying disclosures identified genuine violations and safety concerns -- thus there's no legitimate basis for Apple's conduct here.

Apple's tactics today create an impossible position where Apple's mere presence, which is intentionally intimidating and chilling, would cause any reasonable person in my position to be unable to fully exercise their rights in bankruptcy proceedings without facing retaliation in separate litigation or further obstruction of other proceedings. This ongoing, systematic harassment reflects a continuance of the very retaliation claims that brought us to litigation in the first place including my complaints about civil rights violations and intentional infliction of emotional distress.

While you may characterize your attendance as information gathering, the choice to send named employment litigation counsel rather than appropriate finance counsel, and the lack of Goldman Sachs or any other creditor, reveals Apple and Orrick's true purpose as intimidation rather than legitimate case development. Apple's appearance today also appeared to me, to represent Apple delighting in the spectacle of my financial demise, which Apple itself expressly threatened me would occur in 2021, if I was to pursue litigation and adjudication against it, which I did.

I preserve all objections to this conduct, its harm to me generally, and its interference with my constitutional rights in bankruptcy proceedings.

- Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.