**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# United States Bankruptcy Court

## District of Massachusetts

In Re:

Estate of
Ashley M. Gjovik,

Ch.7 Case No: 25–11496

Judge Christopher J. Panos

Debtor's Motion For A Protective Order & To Compel Trustee Action

Private Trustee:
Mark DeGiacomo, esq.

Supplement; Request for Declaratory Relief (re: Citizen Suit); and Request for Emergency Determination

# Debtor's Motion For Protective Order & To Compel Trustee Action, and Request for Declaration about Legal Status of Citizen Suit.

1. Debtor, Ashley Marie Gjovik, respectfully moved this Court for an emergency protective order and to compel proper trustee action regarding the administration of estate assets on August 28 2025. The motion at Dkt. 19 asked for immediate relief to prevent further waste and destruction of estate assets caused by the Chapter 7 Trustee's procedural violations and unauthorized conduct.

2. The new and continuing issues detailed herein occurred after the filing of said motion and demonstrate the continuing nature of the issues raised therein. Debtor now files this supplement to that Motion, with an express request for emergency determination due the Trustee's recent demand for contact information for all of the people who have harmed the Debtor (including physical harm and criminal conduct) with Trustee's insistence he will formally serve them notice that the Debtor thinks she has legal claims against them, what he thinks those legal claims are (unilaterally interpreting and narrowing her claims), and his intention to not pursue those legal claims, while pointing the wrongdoers towards the docket for this case with Debtor's home address and contact information readily available for further harassment, threats, and potentially more criminal acts. Debtor again asks this court for a Protective Order regarding the Trustee, and to Compel the Trustee.

3. In addition, Debtor ask request this court provide Declaratory Relief, which could simply be a few sentences in a combined Order, confirming that a EPA Citizen Suit without any financial benefit to the Debtor or Estate, and undertaken under federal environmental enforced laws including laws specific to imminent and substantial harm to the public and environment, and with legal requirements that DOJ/EPA approve any settlement, is not and could not be Estate property.

## SUPPLEMENT TO DKT. 19

4. On August 25 2025, at the same time Trustee unilaterally stayed Debtor's civil litigation mid-discovery, without consulting the Debtor, and despite the Debtor's objections, the Trustee concurrently asked Debtor to provide him "memorandums" about her major legal claims so he could begin investigation and would not respond to her further until September 8 2025 when they would meet for the first time to discuss Debtor's bankruptcy. ("First Meeting").

5. Debtor drafted 23 memos (80+ pages) about pending and potential claims and provided them to the Trustee prior to the First Meeting.

6. During the First meeting, Trustee DeGiacomo had no substantive questions for the Debtor about her claims, including subject matter, facts, parties, settlement history, valuation, etc.

7. Instead, Trustee DeGiacomo said he and she would talk again in another two weeks on September 22 2025. ("Second Meeting").

8. However, during the First Meeting, Trustee DeGiacomo made several concerning statements and requests, including:

- The Trustee asked Debtor to provide contact information for all people/entities that Debtor may have legal claims against,
- The Trustee informed the Debtor he planned to "serve" all people/entities "formal notices of abandonment" of her claims, if/when he abandons,
- The Trustee asked Debtor to provide mailing addresses and phone numbers for all potential claims and would/may "talk to the other side" about claims.

9. Debtor objected during the meeting, and continued to object to the requests in a subsequent email exchange on September 9-10, 2025. The Trustee's responses in email created new concerns and issues including:

- Apparently threatening the Debtor to withdraw her legal claim disclosures in this proceeding if she is concerned about the threat of risk of physical harm by wrongdoers,
- Unilaterally interpreting the scope of her legal claims, including a determination of parties, specifical legal claims (i.e. landlord liability but not tort liability), regardless of Debtor's actual disclosures, and providing implicit legal analysis on liability, parties, and future litigation.

(Exhibit A).

10. Debtor responded on September 10, 2025, noting that she could "find no precedent for serving abandonment notices on non-creditor defendants" and that Federal Rule of Bankruptcy Procedure appears to require court approval for abandonment, with notice only to the court, Debtor, and creditors – but no mention of notice, let alone formal service, on potential defendants.

11. During the meeting and email exchange, Debtor informed the Trustee of specific safety

concerns regarding certain individuals and claims, and noted it is certain to cause her physical, financial, and emotion harm if Trustee proceeds to contact all of the people who have wronged her, who she may have legal claims against, and to notify them she complained about them but the government is "abandoning" her claims and wants them to know, while citing this docket, where Debtor was forced to publish her home address, phone number, account information, and extensive details of where she is most vulnerable in her life.

12. The trustee's proposed abandonment notice procedure would potentially affect "probably 50+ people/entities" according to Debtor's calculation of her disclosed potential claims. Despite Debtor's objections and concerns, the Trustee continued to request contact information for service of abandonment notices on all potential defendants, including those identified as presenting safety risks, while implying he would make unilateral decision about what her claims are, and notify the defendants. The trustee now demands defendant contact information and claims authority to determine claim scope for the stated purpose of serving his interpretation of those claims directly to potential defendants.

13. Standard abandonment under 11 U.S.C. § 554 requires notice to parties in interest and court approval, not direct service on potential litigation defendants who are not parties to the bankruptcy proceeding. The trustee's proposed procedure has no basis in the Bankruptcy Code or Federal Rules.

14. The trustee's proposal to serve "Notice of Abandonment" on potential defendants also creates substantial risk of evidence destruction. Recipients of formal government notices stating claims have been "abandoned" will reasonably conclude they are no longer at risk of litigation and may destroy relevant documents.

15. If and when the Trustee subsequently abandons claims back to Debtor through proper procedures, she may find that crucial evidence has been destroyed based on the Trustee's unauthorized communications. This would leave her having to contact the wrongdoers herself after the Trustee does, to serve them notice she may sue them at some point and tell them to preserve evidence, forcing her to come into direct conflict with dozens of dangerous people and entities who have already harmed her.

16. Debtor properly disclosed potential claims in accordance with her duty under the Bankruptcy Code. See *In re Coastal Plains, Inc.,* 179 F.3d 197, 207-08 (5th Cir. 1999). ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information...to suggest that it may have a possible cause of action, then that is a 'known' cause of action

such that it must be disclosed."). citing *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.),* 183 B.R. 812, 821 n. 17 (Bankr.N.D. Ill. 1995)).

17. The Trustee's "custom" approach to abandonment creates substantial risk of permanently extinguishing valid claims, for no legitimate purpose, and with unjustified cost and risk to the Debtor. By the Trustee insisting to unilaterally interpret the scope of disclosed claims and "serve" his interpretation directly to potential defendants, the Trustee is acting as a Judge reviewing bankruptcy disclosures like a civil Motion to Dismiss, and unilaterally determine what claim are present, who the proper parties are, and then serving all of those potential defendants his "Order" about what claims exist along with his commentary to those parties that he does not think the claims are worth pursuing.

18. If the trustee's "Notice of Abandonment" to potential defendants describes a narrower scope of claims than what Debtor actually disclosed, defendants may rely on and/or try to cite on the Trustee's characterization as definitive. Defendants could later argue that claims not included in the Trustee's notice could be permanently extinguished under principles of waiver, estoppel, or res judicata when defendants later argue the Trustee's "served" out-of-court notice constituted official abandonment of any claims not specifically mentioned.

19. This risk is particularly acute given the breadth of Debtor's disclosures across multiple areas of law (environmental, labor, civil rights, crime victim, fraud, consumer protection, etc.), many which are intermixed with exempt and non-Estate legal claims (injunctive and declaratory relief, citizen suits, penalties and fines paid to the government, crime victim restitution, etc.), combined with the Trustee's apparent unfamiliarity with these types of actions, indifference to the legal and policy implications of the Estate attempting conquest on exempt matters, and the Trustee's lack of interest in the actual factual and legal foundations of these claims.

20. The Trustee's unilateral interpretation and service of that interpretation could and likely would inadvertently abandon claims he does not fully understand or properly characterize, using a custom process not authorized by this court or bankruptcy procedure, without any justification, and in direct disregard to the irreparable harm it will cause the Debtor.

21. All of this would be for a consumer bankruptcy case of ~70k debt, with an insolvent debtor with no physical property, $8 cash at the time of filing, only in bankruptcy due to the retaliation that Debtor faced because she was a federal whistleblower, witness, informant, and victim of crime.

22. These latest communications between Trustee and Debtor evidence the same underlying issues identified in Debtor's original August 28 2025 motion: decisions affecting estate assets without proper investigation, procedural approaches that lack clear authority, and dismissal of Debtor's concerns about the practical consequences of the trustee's actions.

## CITIZEN SUIT

23. Further, during the First Meeting and initial email exchange, the Trustee was cooperating with protecting the Debtor's EPA Citizen Suit through consideration of a stipulation to this court that federal enforced actions and public safety matters are not Estate property (draft attached as Exhibit B).

24. However, after Debtor complained to the Trustee about the Trustee's insistence on dangerous and unjustified abandonment procedures, the Trustee now also appears to be retaliating against her related to the Citizen Suit.

25. On September 10, 2025, the Trustee stated: "any claims which you believe you may assert which arose prior to the bankruptcy filing are at this time property of the bankruptcy estate" and "you cannot commence any legal action or continue any legal action until the actions are abandoned."

26. Debtor responded by distinguishing between different types of claims, noting that she had "separated legal claims with no financial recovery, because they are not estate property" she has claims that "the government cannot interfere with" and specifically referenced her ongoing EPA Citizen Suit.

27. Trustee responded at writing: "When you first brought it up, I was not aware that your 'Environmental Citizen Suit' involved Apple. I will be reviewing all Apple claims together before making any decisions about them. As a result, I am not willing to enter into any stipulation at this point."

28. On page 56 of Debtor's Petition for Bankruptcy (Dkt. 1, July 21 2025), Debtor disclosed under Q.26 of Statement of the Financial Affairs, "have you been party to any judicial proceeding under any environmental law?" that Debtor has a pending U.S. EPA Citizen Suit against **Apple**, City of Santa Clara, and Khalil Jenab, with a sixty-day notice already sent on June 30 2025.

29. At Dkt. 17, in Debtor's first filing to this court objecting to the Trustee's conduct, she also again mentioned her "U.S. EPA citizen suit (notice served, filing planned September 1 2025) faces government claims of 'ownership' or other obstruction, undermining the very congressional enforcement mechanisms designed to check executive inaction" and attempting to block "citizen suit enforcement

rights eliminates the congressional checks on agency inaction that these statutes were designed to provide."

30. In Debtor's amended schedules filed on August 19 2025 (Dkt. 18), she again noted she has a "Citizen Suit (no. 26 -2)" but that it "would not provide direct financial benefit to the Debtor" and does have "environmental Claims against **Apple**, City of Santa Clara, and Kalil Jenab (to be filed on or around Sept. 1 2025)."

31. The Trustee's latest response now puts forward two options. First, the Trustee still has not read the Debtor's basic bankruptcy petition and schedules but is staying her litigation without following basic processes and is demanding contact information for all the people who have harmed her so he can formally notify them she is snitching on them and he plans to take no action against them.

32. The second option is the Trustee is actively retaliating against the Debtor for her complaints about his conduct, by obstructing, or threatening to obstruct her Citizen Suit. Either way, an EPA Citizen Suit is not Estate property and is not something the Trustee could settle even if he wanted to, thus a stipulation is not necessary and may not even be appropriate.

33. Citizen Suits require DOJ/EPA approval for any settlement and there's no financial compensation to the Plaintiff, so there's nothing for the Trustee to do regarding that lawsuit -- unless the Trustee wanted to investigate a "settlement" for that lawsuit which would intentionally violate federal statutes and essentially coordinate a bribe/kickback for him and creditors in return for him obstructing the lawsuit and a federal enforced action.

34. Debtor is not hiding the Citizen Suit. She repeatedly disclosed it to this court and in her pending civil litigation. No one: not the Trustee, the civil court, this court, or even Apple has attempted to claim the Citizen Suit is Estate property. Debtor also listed "Estate of Ashley Gjovik" as an interested party in her Citizen Suit when she filed, noting that interest was specifically related to shared facts and subject matter in some of her Apple cases. Thus, if the Trustee wanted to object to something or make a specific request in that proceeding, he could and has already been introduced to the court.

35. However, a sua sponte request to Judge Chen in the civil litigation is pending with a request for him to determine whether or not to relate the cases, and in which he could also decide the Trustee's prior actions should be interpreted to request a stay of the Citizen Suit as well. As such, it would be prudent and conservative to provide the California federal courts a statement from the Trustee

or this Court confirming there is not Bankruptcy claim to a Citizen Suit. (Exhibit D).

## CONCLUSION & RELIEF REQUESTED

36. The Trustee's requests and subsequent responses, raises additional serious concerns regarding the administration of this Estate, violate the Debtor's rights, and interfere with federal statutes including related to environmental protection, public safety, and crime victim rights.

37. Debtor respectfully requests that the Court:
   - **Consider this supplemental evidence** in connection with her pending Motion to Compel and for a Protective Order,
   - **Clarify proper procedures** for any abandonment of disclosed claims,
   - **Order the Trustee to not "serve" notices of** abandonment on any potential defendants (who are not creditors), without express Court approval,
   - **Address the scope** of Estate property as it relates to non-monetary claims (injunctive relief, reports of crime to law enforced, reports of legal violations to the government, etc.), environmental and public safety matters, ("Citizen Suit," ongoing investigations, etc.), and ongoing federal proceedings (the "Citizen Suit", any FCA action, etc.),
   - **Order the Trustee to recognize** the scope of Estate property and to not interfere with non-Estate legal actions.
   - **Provide Declaratory Relief** that Environmental Citizen Suits, including federal claims and public nuisance actions, with no compensation to the Debtor, are not estate property.
   - **Make an Emergency Determination** on the pending Motion with Supplement, including the original Relief requested, in order to prevent further irreparable harm to the Debtor,
   - **Schedule a hearing** on the pending motion, if needed, with consideration of these additional developments.

38. The Trustee's unauthorized actions constitute a clear breach of fiduciary duty, violate public policy and the Debtor's civil rights, interfere with ongoing federal proceedings independent of any consumer bankruptcy, and violate of Bankrupt rules and norms, requiring immediate court intervention.

The subsequent communications detailed herein demonstrate that the issues raised in Debtor′s original motion remain active, unresolved, and are causing more harm at an accelerating rate. Court guidance on proper procedures are required for the administration of this estate, the protection of disclosed assets, and protection of the Debtor's safety and Constitutional rights.

39. In compliance with Local Rule 9013-1(b), supporting Declarations and Documents are concurrently filed with this Motion as Exhibits. I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct. Executed on September 10 2025 in Boston, Massachusetts.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
*In Propria Persona*
18 Worcester Square, Apt 1
Boston, MA 02118
Dated: September 10 2025

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Trustee) via the Court′s electronic filing system and email on or around Sept. 10 2025 (when the pro se clerk posts it). The Trustee will also be served via email on Sept. 10 2025.

# EXHIBITS

**Exhibit A** - Email Exchange Between Debtor and Trustee, Sept. 9-10 2025.

**Exhibit B** – Debtor's Draft Citizen Suit Stipulations sent to Trustee Sept. 9 2025.

**Exhibit C** – Filing of "Interested Parties" including the Estate (subject matter only) along with the DOJ, EPA, and state and regional agencies.

**Exhibit D** – Copy of Order with Request to Determine Relation of Cases.

**Exhibit E** - Copy of Notice of Pendency

**Exhibit F** - Copy of Citizen Suit Complaint

(Attached to Declaration)