**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:<br><br>ESTATE OF<br>ASHLEY M. GJOVIK, | CHAPTER 7 CASE NO: 25–11496<br>A.P. NO. 25-01104<br><br>JUDGE CHRISTOPHER J. PANOS<br><br>DEBTOR'S RESPONSE TO TRUSTEE'S NOTICE OF ABANDONMENT AT DKT. 25<br><br>OBJECTIONS, CORRECTIONS, SUPPLEMENTATION, & REQUESTS FOR CLARIFICATION<br><br>FED. R. BANKR. P. RULE 9013 |

## TABLE OF CONTENTS

**FACTUAL BACKGROUND** ................................................................... 2
*The Chapter 7 Bankruptcy* ................................................................ 2
*Debtor's Residence & Disclosures* ..................................................... 3
*Debtor's Emails with the Trustee About her Residence* ......................... 4
**TRUSTEE'S NOTICE OF ABANDONMENT** ............................................ 5
*Objections: Inaccurate Statement of "Facts"* ...................................... 6
*Objections: Incomplete Abandonment* ................................................ 7
*Objections: Unnecessary Public Disclosure of Personal and Other Sensitive Information* ... 8
*Objections: Inaccurate Valuation* ...................................................... 8
*Trustee Violated Fiduciary Duties* ..................................................... 9
*Objections: Trustee's Unilateral "Service" on Non-Parties and Refusal to Notify Debtor or the Court,* ................................................................... 10
**RELIEF REQUESTED** ..................................................................... 12
**CONCLUSION** ............................................................................... 13
**CERTIFICATE OF SERVICE** ............................................................ 13
**EXHIBITS** .................................................................................... 14

# Debtor's Opposition to Trustee's Abandonment Notice at Dkt. 25

1.     Debtor, Ashley Marie Gjovik, supports the Trustee's Abandonment Notice at Dkt. 25 to the extent that the Trustee abandons Debtor's legal claims arising out of her current residence, leasehold, and interactions with the parties noted in the entire related paragraphs in Debtor's Amended Forms 106/107 at Dkt. 18 at pages 6 and 10; Dkt. 11 at 5, 6, 9; and in the two memos the Debtor wrote for the Trustee at his request and provided to him prior to his Notice of Abandonment (Exhibit B and C), and any/all other claims and parties that may be related to those matters. See, *Donarumo v. Furlong,* No. 11-1364, 1st Cir., 2011.

2.     However, Trustee purported to abandon "all claims" related to the Debtor's residence, but the Notice only addresses basic landlord-tenant issues; omits disclosed false advertising, tort, premise liability, harassment, and fraud claims, and consumer protection and other violations. The Notice makes no mention of at least two other parties directly named in Debtor's schedules. The Notice also creates legal uncertainty about which claims are actually abandoned and could inadvertently retain the most valuable claims while abandoning only low-value ones without expressly disclosing that bifurcation.

3.     Further, the Trustee made factual determinations about claims without consulting the Debtor or reviewing evidence. The Trustee's characterization of facts and legal theories cannot be binding on Debtor or her claims. The Debtor reserves all rights for her claims, and objects to any apparent reduction, rescoping, bifurcation, devaluation, factual determinations, or similar issues, stated or implied with the Trustee's Notice.

4.     Finally, the Trustee repeatedly told the Debtor he would "serve" a copy of his pseudo-Motion to Dismiss findings on Dutt and Matses, despite the Debtor's objections and concerns, and without copying or including the Debtor, without providing her or this Court a copy or receipt, and without disclosing that "service" to this Court in his filing or certificate of service.

## FACTUAL BACKGROUND

### The Chapter 7 Bankruptcy

5.     Debtor is a well-known environmental whistleblower who lost her income and employability due to her ex-employer terminating her in 2021 for "leaking" their violations of federal and

California statutes to the government, and then who also lost her savings and other property through the subsequent prolonged litigation battle with that same ex-employer, Apple Inc.

6. Debtor filed for Chapter 7 bankruptcy on July 21, 2025. (Dkt. 1) promptly filing notice from JP Morgan Chase's legal department that the bank planned to sue Debtor over her credit card debt with that bank, by the end of August 2025. Debtor's Original and Amended disclosures included speculative ongoing litigation and potential legal claims; but no vested property interests (i.e., judgments, settlements, or contractual obligations already owed to her).

7. On August 25 2025, the Trustee asked to meet with the Debtor for the first time, later on Sept. 8 2025, saying the meeting would be to "*discuss all of your causes of action and the bankruptcy case in general.*" (Decl. Exhibit A). In the same message, the Trustee also asked that the Debtor draft and send him "*a brief summary concerning each cause of action including the claims and defenses that have been asserted to this point*" and asked she "*keep the summaries to no more than two pages per case*" and he'd "*read the summaries prior to [their] meeting which should help move things along.*" (Decl. Exhibit A).

8. At no point did the Trustee say he would use those memos as declarations or evidence, that he would cite them or otherwise publish the information she provided him, or that if he was to do so, that he would take such actions unilaterally, with his own interpretation, and without confirming the accuracy with her or even ensuring his statements conform with the actual memorandum content he supposed was referencing, while currently framing his statements as "the Debtor says…"

## Debtor's Residence & Disclosures

9. The Debtor's current residence is listed on this docket, case filings, and the Trustee's notice. Among other issues this has created an acute physical safety issue for the Debtor due to ongoing harassment, stalking, burglaries, and other unlawful conduct at her properties arising from the ongoing retaliation from her whistleblowing and participation in government proceedings.

10. Debtor has lived at 18 Worcester Square since September 2023. Debtor disclosed claims related to and arising out of her current residence in her schedules in Amended filing in Dkt. 11 at 5, 6, 9; and Dkt. 18 at 6 and 10.

> "….claims [of] potential landlord/tenant, real property, and/or false claims (Mass. General Laws Chapter 93A) litigation against Seeratt Dutt and Alex Matses (re: 18 Worcester Sq., Boston, MA). 8/19 Amendment: the conduct giving rise to the claim started in Sept. 2023 and is continuing, and also includes tort, personal injury, and criminal law claims. For the

> sake of completeness, the claims may also include civil claims against the building HOA or HOA Trustee, and/or Charles Construction."

(25-11496, Dkt. 18, page 6).

> "…. includes a landlord/tenant, real property, premise liability, tortious, criminal, and/or false claims lawsuit against Seeratt Dutt and/or Alex Matses and/or Charles Construction regarding 18 Worcester Sq. Existing government cases covering misconduct occurring back to Sept. 2023 include Boston ISD Case No. 848-712, 849-279; Boston Fire Dept. Case (PRA needed); Boston Building Dept. Case (TBA); Boston Police Department (Report No. [redacted])."

(25-11496, Dkt 18, page 10).

11. Debtor could further expand upon these claims for the court, if required, but it is not required. ("It would be silly to require a debtor to itemize every dish and fork." – *Payne v. Wood,* 775 F.2d 202, 205 (7th Cir. 1985); see also *In re Bonner,* 330 B.R. 880, at *5 (B.A.P. 6th Cir. 2005)). However, the Trustee's Notice of Abandonment did not even attempt to address the full disclosed list of potential parties, causes of action, or theories of liability.

12. The Debtor stands by her disclosure and disclaims and objects to the Trustee's unilateral, incomplete, and inaccurate interpretation and restatement. First Circuit precedent makes it clear that if the Trustee has "actual notice" of claims, he cannot then pretend he did not see those claims. *Donarumo v. Furlong,* No. 11-1364, 12-13 (1st Cir. 2011).

## Debtor's Emails with the Trustee About her Residence

13. The Trustee has been on notice about the 18 Worcester Sq. claims since July 2025. On July 29 2025, the Debtor promptly notified the Trustee that she may have legal claims related to her current residence. The Trustee instructed her to disclose all claims in her schedules.

> **Debtor (7/29):** "I also wanted to let you know that the city inspected my apartment today … and cited my landlord for a significant number of habitability violations and raised the issue that it appears my "apartment" may be an illegal conversation of basement storage space and could be condemned. My landlord has been charging me $2,600-3,000/month since late 2023 and there's potentially a lawsuit there to recoup rent payments…."

(Email between Debtor and Trustee, July 29 2025, Exhibit A).

> **Trustee (7/29):** "You need to list in your schedules all possible claims that you had as of the day you filed the bankruptcy petition. Telling me by email really is not enough."

(Email between Debtor and Trustee, July 29 2025, Exhibit A).

> **Debtor (7/29):** "Okay, understood. I will file a revised version with the full list…"

(Email between Debtor and Trustee, July 29 2025, Exhibit A).

14. The Debtor did file Amended Schedules on August 4 2025 (Dkt. 11). The same day she

notified the Trustee and informed him the potential damages from claims arising from her current residence were "*probably enough to pay off Chase and BOA, at least.*"

**Debtor (8/4)**: "I sent [Dutt and Matses] a notice of anticipated litigation (within or outside the bankruptcy proceeding) and I can share a copy with you if you'd like. They appear to have violated a lot of laws, most of it is strict liability / facial contract violations, and some of the claims have treble damages. It's probably enough to pay off Chase and BOA, at least." (Email between Debtor and Trustee, August 4 2025, Exhibit A).

15. The Trustee did not respond to the Debtor again until August 20 2025, 16 days later.

16. On August 12-13 2025, the Trustee switched the case to an "asset" case (Dkt. 13), and on August 15 2025, the Trustee requested employment of a law firm (Dkt. 14) and employment of an accounting firm (Dkt. 15), but did not provide justification or explanation. Trustee has still not provided any written or formal explanation about what the thinks the asset is, but is now abandoning viable claims.

## TRUSTEE'S NOTICE OF ABANDONMENT

17. The Trustee filed a narrow, incomplete, and inaccurate Notice of Abandonment at Dkt. 25 on Sept. 11 2025 regarding two specific parties as related to Debtor's residence, but omitted additional parties, the most valuable claims, and misstated the nature of the claims. The Notice also failed to reference, cite, or include the Debtor's actual disclosures in her schedules. The DOJ Trustee Handbook instructs that "A notice of abandonment should identify each asset to be abandoned by reference to the description noted in the debtor's schedules and any unlisted assets should be clearly described." (DOJ Handbook for Chapter 7 Trustees, 2002, page 8-4).

18. Debtor warned the Trustee about this just days prior to the Trustee filing the Notice, writing: "it appears you are electing to unilaterally interpret the scope of my legal claim disclosures including who the claims are against and what the entire scope of what the claims are about, and send a formal legal notice to those parties with your legal interpretation of my claims, which is likely to be incorrect, and thus you would be risking extinguishing my valid legal claims."(Dkt.27, Exhibit A)

19. Debtor further warned the Trustee: "if I sue people and they say your abandonment notice didn't include the specific claims I was making, despite me disclosing the claim prior and me not being involved in your abandonment notices, then every single time that happens I may have to re-open the Bankruptcy case and demand you correct the notice so I can proceed with that claim."(Dkt.27, Exhibit A).

20. The Trustee proceeded to do what the Debtor warned him again, while an Emergency Motion was pending with the Bankruptcy Court asking to Order the Trustee to comply with standard procedures and rules, and cease engaging in harmful and unauthorized conduct. (Dkt. 19, 26, 27).

## OBJECTIONS: INACCURATE STATEMENT OF "FACTS"

21. The Trustee's notice included a variety of inaccurate "facts." First, the Debtor's surname is Gjovik, not "Gjovick." (Dkt. 25 at 1).

22. Second, and more importantly, the Trustee made statements at ¶ 4 about the Debtor's assertions and allegations that were unnecessary, misleading, incorrect, injected into the Notice despite Debtor's direct objections to the Trustee via email (Dkt.27, Exhibit A), and in direct violation of Debtor's disclaimers in her memorandum submitted to the Trustee (Decl., Exhibits B-C).

23. The Trustee wrote "*The Debtor believes that Dutt is the owner of the building in which the Apartment is located.*" (Dkt. 25, ¶ 4). This is facially incorrect. The Debtor rents a basement studio in a five-unit townhome. The overall building appears to be held in a HOA Trust that's managed or co-managed by someone named Ron Payne, and who was noted in Debtor's Aug. 2025 schedules. City records show Seeratt Dutt is the property owner for Unit 1, not the overall building.

24. The Trustee also wrote "*the Debtor alleges that Matses acts as Dutt's agent.*" (Dkt. 25, ¶ 4). This is also incorrect, misleading, damaging to the Estate and the Debtor's claims, and the Debtor warned the Trustee repeatedly prior to him filing this Notice that such an assertion creates a risk of physical harm to her.

25. Debtor filed a police report against Matses; disclaimed any "agency" of Matses related to the apartment; and told Matses, Dutt, and the Trustee she would request a restraining order if Matses contacted her again. (Decl., Exhibits B-D). The Trustee appears to be misquoting and misrepresenting statements in one of the Debtor's memos to the Trustee which stated: "*The lease notes that Alex Matses is the "agent" of Seeratt for complaints and issues*." (Decl. Exhibit C at 1, "Premise Liability, Reckless Endangerment, Harassment, Extortion, Obstruction").

26. On Sept. 9 2025, Debtor wrote to Trustee: "*as for Alex Matses, again, he's not a landlord and I do not have any contractual agreement with him. I also gave him notice that if he contacts me again I will request a restraining order, as noted in the prior communications and memos, and my schedules noting a police*

*report. Thus it would be extremely unhelpful if you were to serve him and Dutt and imply that you believe he's also my landlord.*"(Dkt.27, Exhibit A).

27. Following Debtor's warnings and objections, the Trustee chose to declare in his Sept. 11 2025 Notice that the Debtor "believed" that Matses was the "agent" of her landlord. Even if the Trustee accurately quoted the Debtor's memo (which he did not), the Debtor's memos included a disclaimer that she was not making legally binding statements beyond her own memo to the Trustee for his investigation. (Exhibits B-C).[1] Thus, no defendants can later argue that the Trustee's unilateral interpretations or characterizations have any legal significance on the Debtor's actual legal rights and claims.

## OBJECTIONS: INCOMPLETE ABANDONMENT

28. First, the Debtor specifically named five distinct parties in her Bankruptcy disclosures related to this property, but the Trustee only "Abandoned" claims against two people. The "*Trustee… intends to abandon his interest in all claims held by the Debtor against Seeratt Dutt and Alex Matses.*"(Dkt. 25 at pg 1) and "*the Debtor asserts several claims against Dutt and Matses which are related directly or indirectly to the rental of her current residence at 18 Worcester Square, Boston, MA.*"(Dkt. 25, ¶ 3).

29. The Debtor, in her schedules, expressly named "Seeratt Dutt," "Alex Matses," the "building HOA," "HOA Trustee" (Ron Payne), and "Charles Construction."(25-11496, Dkt. 18, page 6, 10). Additional related and unknown parties are also implied. Debtor named at least five distinct entities, and only two of the five were addressed in the Trustee's Notice at Dkt. 25.

30. Next, Debtor specifically named at least nine categories of legal claims that may apply to all five parties, but the Trustee artificially and improperly attempted to narrow the scope of the claims in Debtor's disclosures to unlawful lease terms, apartment square footage, pest issues and filth, poor quality plumbing and electrical, and "problems with the boiler room." (Dkt. 25, ¶ 5).

31. However, the Debtor's disclosures on her schedules described her claims as including "landlord/tenant, real property, premise liability, tortious, criminal… false claims… Mass. General Laws Chapter 93A… personal injury… claims…." (25-11496, Dkt 18, page 6, 10).

---

[1] "This memorandum is prepared solely for Bankruptcy Estate administration purposes and does not constitute admissions, waivers, or binding characterizations. All rights are reserved to pursue alternative theories and claims, and to assert all available privileges and defenses in proceedings. This memorandum is prepared under the work product doctrine and may not be used by adverse parties in any proceeding or defense against Gjovik or the Estate." (Decl., Exhibit C at 1).

32. A Trustee's otherwise deficient Notice of Abandonment may suffice if he abandons all claims against all parties related to specific claims, and if creditors were otherwise put on notice about the actual scope of the claims. (*Donarumo v. Furlong,* No. 11-1364, 14-15, 1st Cir., 2011). Accordingly, Debtor files this response to the Trustee's insufficient abandonment, to supplement in order to perfect and complete his defective abandonment and remove him from her legal matters.

33. The remaining problem here, however, is that the Trustee apparently "served" his Notice on the non-party defendants, outside of court processes, with no notice to Debor or the court, or record of what he sent, and assumably has no plan to also send those non-parties a copy of the Debtor's response.

34. Again, the Debtor respectfully requests an emergency protective order be put on the Trustee in this case. (Dkt. 26-27).

## OBJECTIONS: UNNECESSARY PUBLIC DISCLOSURE OF PERSONAL AND OTHER SENSITIVE INFORMATION

35. The Trustee's Notice includes statement: "*The Debtor reported the pest infestation and other issues to state and local authorities after the Petition Date.*" (Dkt. 25, ¶ 6). The Trustee is conflating reporting issues to the government for the government's own investigation, and the actual temporal span of facts that could give rise to a claim.

36. Therefore, the Trustee has no justification for formally notifying the Debtor's Creditors about the Debtor's protected activity, government reports, participation in government investigations, or other sensitive informant/whistleblower information.

37. Further, for some reason, the Trustee only includes the Debtor calling the city about a "pest infestation" but not mentioning Debtor's own disclosures about open cases with "Boston ISD," "Boston Fire Dept.," "Boston Building Dept.," and the "Boston Police Department." (25-11496, Dkt 18, page 10). The Trustee is downplaying the legal claims in order to get rid of them.

## OBJECTIONS: INACCURATE VALUATION

38. The Trustee wrote that he "*determined that the Claims have inconsequential value and benefit to the Debtor's bankruptcy estate*," (Dkt. 25 at pg 1) and have "*have no value to the bankruptcy estate*" (Dkt. 25, ¶ 8). The Trustee justified his valuation of these claims on three factors:

    i. "the nature of these claims" (Dkt. 25, ¶ 8),

      ii.    "the fact that at least some of the damages occurred post-petition" (Dkt. 25, ¶ 8),

      iii.    "many if not all of the pre-petition claim would likely be exempt" (Dkt. 25,¶ 8).

39.    As noted above, the Trustee's characterization of the "nature" of these claims was incorrect, incomplete, and misleading. The Trustee either: intentionally but without disclosure, bifurcated the Debtor's claims around this location and parties; accidently only partially abandoned these claims; or is intentionally downplaying and devaluing these claims in order to avoid creditor objections. If it's the later, it appears the Trustee just doesn't want to deal with this specific case, which is understandable because the Debtor also doesn't want to have to deal with this, but someone has to and it helps no one for the Trustee to sabotage strong legal claims simply because he prefers to avoid the matter.

40.    The Debtor's rent is $3,000/month, she's lived at the unit since Sept. 2023, and there are multiple claims that would allow a refund and claw back of prior rent, and some of those claims provide treble damages. The Trustee omitted all of those claims and theories from this Notice.

41.    The Trustee's Notice provided an inaccurate valuation of these claims which harms the Estate and Creditors, as then Creditors cannot properly decide whether to object or not object to his Notice if they do not understand the actual potential recovery. Similarly, the court will be unable to understand the nature of the claims if the Trustee does not accurately disclose his reasoning.

42.    The Trustee's statements put forward misleading and incomplete facts and legal analysis as the basis for that valuation, and risk the defendants arguing estoppel or otherwise prejudice a right to a proper remedy ("a trustee's intent to abandon an asset must be clear and unequivocal." – *Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 123 (2d. Cir. 2008).

## OBJECTIONS: TRUSTEE VIOLATED FIDUCIARY DUTIES

43.    On Aug. 25 2025, the Debtor informed the Trustee she obtained a settlement offer from her landlord at this property:

> "I wanted to let you know that my landlord, Searatt Dutt, returned my security deposit ($2,904) to me via certified mail on Saturday 8/23 without explanation. This is assumably in response to my ongoing complaints, including demand for them to remedy the many unlawful lease terms for my current apartment, including multiple violations of MA security deposit laws. In response I sent her an email noting that I received her mail, but I reminder her I'm in bankruptcy so I cannot cash the check or agree to any sort of settlement with her regarding those claims without reporting it to the Trustee and waiting for the Trustee to decide what to do. I'm attaching the documents she mailed me with a scan of the check, the email I sent her in response, and the 8/1 notice I send her demanding she

remedy violations, including related to the security deposit. I also have reports from and with the city I can share if you want more context on this, including a police report filed against her boyfriend on 8/17 for criminal harassment and an attempted forced entry. If I need to update my schedules again to add the check as property, please let me know, but otherwise I was going to treat it as a settlement offer that has not been accepted at this time. Its my understanding that if a lawsuit is filed against her and her boyfriend over this, that MA law provides treble damages for security deposit violations, so this would be undervalued."

On Aug. 25 2025, the Trustee responded,

"Just hold the check for now."

(Email between Debtor and Trustee, August 25 2025, Exhibit A).

44. On Sept. 9 2025, the Debtor complained to the Trustee about his apparent plan to abandon what appears to be a strong lawsuit about the apartment and related conduct, which could provide a strong recovery, noting she was already able to obtain an initial, partial settlement offer in the matter. Debtor complained to Trustee: *"I also want to raise again the security deposit refund I received and reported as estate property. I'm confused by your statement that you plan to abandon this money rather than collect money in-hand for creditor distribution."* (Dkt.27, Exhibit A)

45. On Sept. 9 2025, the Trustee responded: *"You can keep the security deposit that was returned to you. I'm sure it can be covered by your exemptions."* (Dkt.27, Exhibit A). As of the time the Trustee filed the Notice of Abandonment at Dkt. 25 he had not yet made any statement or determination on Debtor's exemptions, and in fact he and Disputed Creditor Apple Inc were arguing their basis for unilaterally staying Debtor's environmental / public safety / crime victim civil litigation with injunctive relief and statutory penalties paid the government, was supposedly partially based on the Debtor's exemptions being 'unsettled.' (Dkt. 19-20).

46. The DOJ Trustee Handbook is clear: "the trustee must be able to justify the decision to abandon estate property." (DOJ Handbook for Chapter 7 Trustees, 2012, page 4-6; 28 U.S.C. § 586).

## Objections: Trustee's Unilateral "Service" on Non-Parties and Refusal to Notify Debtor or the Court,

47. The Trustee has taken it upon himself to implement a sort of Trustee-Judge-Courthouse procedure where he drafts and issues these Notices of Abandonment like he's a Judge deciding a Motion to Dismiss and issuing an Order, who they then "serves" to the Debtor's creditors but also to potential defendants for any and all of the legal claims the Debtor might have, even if it includes harassment,

stalking, threats of violence, or actual physical violence.

48. In doing so, Trustee notifies these non-parties that the Debtor is snitching on them, summarizes the least impactful version of the snitching (in order to justify abandonment), then serves that 'report' to the wrongdoers, informing them he's abandoning the Debtor, and directing them to contact the Debtor and providing the wrongdoers the Debtor's home address. (See Dkt. 27-28, Emergency Motion for a Court Protection Order and Motion to Compel the Trustee, and Dkt. 19, same).

49. Debtor repeatedly objected, complained, and warned the Trustee he was instigating criminal harassment and physical violence against the Debtor for no legitimate reason. The Trustee insisted he would continue with his scheme and also refused to provide the Debtor or the court notice that he was doing this, copies of what was provided, or any further communication on that matter.

50. For this specific matter, the Debtor wrote on Sept. 9 2025, "If you've been in contact with [my Landlord], it would be helpful for me to know what was discussed and to be provided copies of any statements she made to you." (Dkt.27, Exhibit A). On Sept. 10 2025, the Trustee's response to Debtor was "If I am going to abandon claims against unrepresented parties I do want to serve them with a Notice of the Abandonment so that they understand that I am giving the claim back to you. As such, I will need mailing addresses for these parties. On the other hand, if, upon further consideration, you do not believe that you have claims against certain parties, then there is no need for me to abandon those claims and there is nothing for me to send to them." (Dkt.27, Exhibit A).

51. On Sept. 10 2025, the Debtor protested: "you seem to be implying that I have agree Matses is a co-landlord and have you serve him telling him that, or else you will view I withdr[a]w all of my claims against Matses, and refuse to acknowledge that I have non-landlord claims against both of them, but especially Matses. (Dkt.27, Exhibit A).

52. On Sept. 10 2025, the Trustee responded "I am not suggesting you withdraw any claim you feel you have that arose out of pre-petition conduct. On the contrary, you are required to list all of these claims in your bankruptcy papers" and added "by serving the Notice of Abandonment on your landlords they will then understand that they need to deal with you." (Dkt.27, Exhibit A)

53. Debtor wrote to Trustee: "*as for Alex Matses, again, he's not a landlord and I do not have any contractual agreement with him. I also gave him notice that if he contacts me again I will request a restraining order, as noted in the prior communications and memos, and my schedules noting a police report. Thus it would*

*be extremely unhelpful if you were to serve him and Dutt and imply that you believe he's also my landlord.*" (Dkt.27, Exhibit A).

54. On Sept. 11 2025, the Trustee then filed his Notice of Abandonment implying Matses is a co-landlord, omitting all claims against Matses with individual and non-lease liability, omitted three other distinct parties, and assumably "served" this Notice to both Matses and Dutt.

## RELIEF REQUESTED

WHEREFORE, Debtor respectfully requests this Court:

55. If the court finds that Trustee DeGiacomo's Notice of Abandonment at Dkt. 25 does not include all of the claims and disclosures (and other reasonably related claims arising from same and similar facts and allegations) as described in this response, then ORDER Trustee DeGiacomo to refile his Notice of Abandonment to clarify the scope of his Abandonment and if he intends to bifurcate these claims, to provide a justification for that decision.

56. The Debtor's believes the Trustee is not authorized to make legally binding or even persuasive "findings of fact" related to potential legal claims and the basis for those claims, and that the Trustee is unauthorized to quote or cite statements made by the Debtor in unsigned, informal communications without notice or consent, and then to publish those statements as some sort of evidence or sworn statement. If the court disagrees, the Debtor asks the Court to ORDER the Trustee to withdraw the current notice, conduct a proper evidentiary review and/or obtain a signed Declaration from the Debtor to cite instead of the Trustee's current approach.

57. The Debtor objects to Trustee's statements that attempt to quote the Debtor or imply she made certain assertions that she did not make, or which are framed in a misleading and prejudicial way. The Debtor asks this court to STRIKE those statements in Trustee's Notice and ORDER him to CEASE this conduct going forward.

58. The Debtor objects to Trustee's statements that attempt to pout forward unauthorized legal conclusions as determinative, binding, or otherwise persuasive. Debtor asks this court to STRIKE those statements in Trustee's Notice and ORDER him to CEASE this conduct going forward.

59. The Debtor asks the court to ORDER the Trustee to immediately cease "serving notice" on Debtor's "potential defendants" for her potential legal claims, and to immediately report to the court

all "service" Trustee has already complete as he repeatedly informed Debtor he would do this "service" regarding this matter, despite her objections.

60. The Debtor asks for a Decision and Order from the court on her pending Emergency Motion to Compel the Trustee and for a Protective Order on the Trustee at Dkt. 19 and 26.

## CONCLUSION

61. The Debtor DOES NOT object to the Trustee abandoning all of her claims and potential claims arising out of, and related to the property and/or leasehold, at 18 Worcester Square, including but not limited to Dutt and Matses, and also including, but not limited to, Charles Construction, the building HOA, and Ron Payne.

62. The Debtor DOES object to the Trustee's vague, bifurcated, inaccurate, incomplete, abusive, and devalued narrative and justification in his Notice of Abandonment at Dkt. 25.

63. In compliance with Local Rule 9013-1(b), supporting Declarations and Documents are concurrently filed with this Motion as Exhibits. I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct. Executed on Sept. 12 2025 in Boston, Massachusetts.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
*In Propria Persona*
18 Worcester Square, Apt 1
Boston, MA 02118
Dated: Sept. 12 2025

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Trustee) via the Court's electronic filing system and email on or around Sept. 12 2025 (when the pro se clerk posts it). The Trustee will also be served via email on Sept. 12 2025

# EXHIBITS

### EXHIBITS ARE ATTACHED TO CONCURRENTLY FILED DECLARATION.

- **Exhibit A** - Email Exchange Between Debtor and Trustee, July 29, 2025 (discussing 18 Worcester Sq claims and valuation).
- **Exhibit B** – Memorandum "InRe_Gjovik_Cause_of_Action_Dutt_18W_LandlordTenant_ 20250903"
- **Exhibit C** – Memorandum "InRe_Gjovik_Cause_of_Action_Matses_18W_Harassment_Extortion_ 20250907"
- **Exhibit D** – Email Exchange Between Debtor and Trustee, Sept. 08, 2025 (Providing copies of individual PDFs of previously transmitted memos during the meeting between Trustee and Debtor to discuss legal claims)