**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# United States Bankruptcy Court

## District of Massachusetts

In Re:

Ashley M. Gjovik.

Chapter 7 Case No: 25–11496

Judge Christopher J. Panos

Debtor's Omnibus Reply in Support of her Motions to Compel the Trustee (Dkt. 19, 26) & for an Order to Show Cause re: Sanctions against Apple Inc (Dkt. 20).

Fed. R. Bankr. P. Rules: 9013, 9014

# OMNIBUS REPLY IN SUPPORT OF PENDING MOTIONS

1. Ashley Marie Gjovik (self-represented Debtor) files this Omnibus Reply in Support of her Motions *to Compel the Trustee* (Dkt. 19, 26) and *for an Order to Show Cause re: Sanctions against Apple Inc* (Dkt. 20).

2. Gjovik filed a petition for bankruptcy on July 21 2025 (Dkt. 1). The Petition reflects that Gjovik has no income or investments, no real property, $8 cash, no vehicles or valuable chattel property, and is operating at an overall loss of around $4k/month. The Complaint in Adversary Proceeding 25-01104 explains that Gjovik used to make $386,382 a year but has since lost everything following a wrongful termination by her ex-employer, Apple in 2021. ("*this bankruptcy results from… illegal retaliation by institutional actors that destroyed her ability to utilize the education for which the loans were obtained… Apple has been able to drag out the enforcement litigation indefinitely, with the case already spanning over four years without resolution or trial… Debtor fac[es] decades of financial hardship while awaiting speculative recovery from proceedings.*" 25-01104, Dkt. 1-1 at 15, 17).

3. Gjovik disclosed pending litigation and potential legal claims in her Petition as legally required. (Dkt. 1). She has continued to amend the forms/schedules to ensure complete and accurate information, as is legally required. (Dkt. 11, 18, 31; Fed. R. Bankr. P. Rule 1007; 11 U.S. Code § 342(b); 11 U.S. Code § 521).[1]

4. Upon filing for bankruptcy, Gjovik promptly contacted Trustee Mark DeGiacomo, and shared five years of tax returns (11 U.S. Code § 521 (e)(2)), offered to provide more information, completed her educational requirements (Dkt. 1, 12), and has been cooperative. Trustee Mark DeGiacomo did not discuss the bankruptcy case with Gjovik until Sept. 8 2025 (Dkt. 26), last week he cancelled the only future call.

5. Around Aug. 12 2025, Trustee Mark DeGiacomo unilaterally converted this case from "no asset" to "asset" status without explanation to Gjovik, or Court, and without identification of specific assets justifying conversion. The only communication was in a Notice to Creditors that "it now appears

---

[1] Gjovik generally objects to the concept that Debtors must disclose all potential legal claims during this process or that a private Trustee could "own" her legal claims. Most of these claims and litigation are speculative and not vested, therefore they cannot be "property." The current view seems to be a sort of "biz dev" idea conceptualized by private trustees who want to treat personal litigation like betting at a horse track. However, case law suggests she could violate federal laws if she does not disclose all potential claims, even if fully speculative or exempt, so she did and does so under protest.

Case 25-11496    Doc 38-1    Filed 09/22/25    Entered 09/22/25 09:20:44    Desc
Supplement    Page 3 of 14

that there may be sufficient funds to pay a dividend to unsecured creditors." (Aug. 13 2025, Dkt. 13).

6. On Aug. 15 2025, Trustee Mark DeGiacomo filed employment applications for auditors and attorneys (Dkt. 14-15), suggesting an expectation of significant estate recoveries, yet failed to specify the source of anticipated assets. The Applications also suggested the Trustee would be investigating Gjovik, as they included work to "*assist the Trustee*" in "*investigating*" and "*reviewing and examining the books and records of the Debtor*" regarding "*fraudulent conveyance or transfer claims*" and "*insider and non-insider preferences*," Dkt. 14 at 2; Dkt 15 at 2).

7. The Trustee's Aug. 15 2025 Application for Employment at Dkt. 15 also requested employment of the law firm Harris Beach Murtha Collina. (Dkt. 14). This is the Trustee's own law firm where he is a Partner (Dkt. 14 at 3). In the Application and supporting affidavit, the Trustee wrote "*to the best of the Trustee's knowledge, Harris Beach Murtha represents no entity having an adverse interest in connection with this case*" (Dkt 14 at 2-3) and claimed the firm was a "*disinterested person*" (Dkt. 14 at 4).

8. Gjovik filed Motions and Requests to Court asking for judicial intervention regarding conduct by Trustee DeGiacomo on Aug. 19 2025 (Dkt. 17), Aug. 28 2025 (Dkt. 19, 22 – "*emergency protective order*"), and Sept. 10 2025 (Dkt. 26-27 – "*request for emergency determination*").

9. On Aug. 19 2025, Gjovik filed a "*Conditional and Contingent Non-Opposition*" to the Trustee's requests at Dkt. 13-15 under a theory that the government might be acting on one of her prior whistleblower disclosures but otherwise asked the Court to question and supervise the Trustee due to apparent misconduct. If her enforcement action theory was incorrect, then Gjovik "*strongly object[ed]*" to the Trustee's actions and his "*failure to communicate with her.*" Gjovik requested the court "*schedule a hearing or otherwise demand disclosures from the Trustee as to the basis*" for his actions (Dkt. 17, at 11).

10. On Aug. 21 2025, the 11 U.S. Code § 341 meeting was held and the only creditor to show was Apple. Apple sent whistleblower retaliation defense counsel and did not ask any questions. (Dkt. 20). The Trustee then said he wanted to continue the 341 meeting until after he could speak with the Debtor more about her legal claims, and scheduled a second meeting for Oct. 30 2025. During the meeting, no one else asked Gjovik questions, or asked the Trustee questions about Gjovik, including Apple.

11. On Aug. 25, Trustee DeGiacomo agreed to stay complex, long-running civil litigation in a U.S. District Court in San Francisco (*Ashley Gjovik v. Apple Inc,* 3:23-cv-04597) via a two sentence email sent on vacation to Apple's counsel, without communication with Gjovik, and despite Gjovik's objections

about the irreparable harm that would occur by staying the litigation in the midst of discovery, motion practice, and with summary judgement finally to be scheduled later that year. (Dkt. 19-20).

12. On Aug. 28 2025, Gjovik filed a Request for an Order to Show Cause and for Sanctions against Creditor Apple Inc. "*for Interference with Estate Administration and Abuse of the Bankruptcy Process*" (Dkt. 20). On Aug. 29 2025, Gjovik filed a Certificate of Service (Dkt. 21). The Proof included PACER Electronic Filing service to Apple's counsel. (Dkt. 21 at 7). On Sept. 10 2025, Gjovik filed an additional Certificate of Service regarding mailing forwarding issues with Goldman Sachs (Dkt. 28).

13. On Sept. 1 2025, Gjovik filed the Environmental Citizen Suit (25-cv-07360) in the U.S. District Court in San José. The litigation was disclosed in Gjovik's schedules/forms starting with her original Petition on July 21 2025 (Dkt. 1) and has always been described as a public trust "citizen" action (11 U.S. Code § 541(b)(1)).

14. On Sept. 5 2025, the U.S. District Court in San Francisco issued an order in *Ashley Gjovik v. Apple Inc,* staying the case until the bankruptcy court rules on the pending Motion at Dk. 19, with a required status update to that court on bankruptcy proceedings in sixty days. (case no. 3:23-cv-04597, Dkt. 247, 2023-). The U.S. Judge wrote:

> "Apple does not seek an indefinite stay, and the stay sought should not be unduly lengthy, especially as Ms. Gjovik has now filed an emergency motion with the bankruptcy court asking for relief with respect to actions taken by the Trustee. See Docket No. 251 (notice of motion filed in bankruptcy court). The Court therefore grants Apple's motion to stay. Proceedings in this case are stayed pending a decision by the bankruptcy court as to the propriety of the Trustee's actions. If the bankruptcy court holds that the Trustee alone has standing to decide whether to prosecute this action (at least until he abandons it), the instant case shall continue to be stayed until the Trustee makes that decision…The parties shall file a joint status report – in particular, addressing what has taken place in the bankruptcy proceedings – within sixty (60) days."(cv-04597, Dkt. 247).

Gjovik filed a copy of the Order to this case at Dkt. 23 on Sept. 5 2025. As of today, the Trustee still has not filed anything to the U.S. Court for the case in California – no declaration, motion, or notice of appearance. Also, the U.S. District Court is apparently expecting that Apple (a disputed creditor) is monitoring the bankruptcy case and Gjovik's complaints about the Trustee, and thus Apple would report back to the U.S. Court in the joint status update as to its views of this bankruptcy court's case and Estate management.

15. The Sept. 5 2025 U.S. District Court Order did allow Gjovik to still make requests for relief from the U.S. District Court in San Francisco, including requests for amendments and motions, and said it made determinations of her requests "*on the merits.*"(cv-04597, Dkt. 247). This facially invalidated Apple's claim that upon filing bankruptcy, Gjovik no longer had standing and was no longer a party to that litigation.

16. On Sept 8 2025, the Magistrate Judge at the U.S. Court in San José issued a "*Sua Sponte Judicial Referral for Purpose of Determining Relationship*" (Civil L.R. 3-12)" to the U.S. Judge at the U.S. Court in San Francisco regarding the Environmental Citizen Suit. (25-cv-07360, Dkt. 7). [2]

17. On Sept. 8 2025, Trustee Mark DeGiacomo and Gjovik had their first and apparently only meeting regarding her potential legal claims. "Trustee had no substantive questions for the Debtor about her claims, including subject matter, facts, parties, settlement history, valuation, etc… Trustee said he and she would talk again in another two weeks." (Dkt. 26).

18. During the Sept. 8 2025 phone call and on Sept. 9-10 2025 in emails between Trustee DeGiacomo and Gjovik, the Trustee insisted on taking unauthorized out-of-court actions that Gjovik reasonably believed were improper and were "*instigating criminal harassment and physical violence … for no legitimate reason.*" (Dkt. 32). On Sept. 10 2025, Gjovik complained Trustee DeGiacomo seemed to be insisting she drop her claims against specific parties (i.e. the Matses family and Charles Construction), or else the Trustee would "serve" them with a copy of the Notice of Abandonment which included inaccurate and incomplete statements which harm Gjovik and protect the those parties. (Dkt. 32). The Trustee expressly threatened Gjovik, with the Trustee writing: "*…I do want to serve them with a Notice of the Abandonment…I will need mailing addresses … On the other hand, if, upon further consideration, you do not believe that you have claims against certain parties, then there is no need for me to abandon those claims and there is nothing for me to send to them.*" Dkt. 32 at 12; Exhibit A).

19. Trustee DeGiacomo used the threat of harm to attempt to coerce Gjovik to withdraw some of her legal claims against entities, who Gjovik now believes are clients of the Trustee's law firm. Prior to the Sept. 8 2025 meeting, Gjovik drafted two detailed memos about the property including

---

[2] "3-12. Related Cases: (a) Definition of Related Cases. An action is related to another when: (1) The actions concern substantially the same parties, property, transaction, or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." https://cand.uscourts.gov/rules/civil-local-rules/

potential claims against the Matses' family and Charles Construction. (Dkt. 32). It was clear Gjovik believed she had claims against Matses, as she sent a three page memo with a file name of "*Matses_18W_Harassment_Extortion_20250907*" and document header of "*Premise Liability, Reckless Endangerment, Harassment, Extortion, Obstruction.*" (Dkt 32-1 at 14-17, 19; Exhibit A). Gjovik expressly said "*Matses' conduct includes harassment, tampering, fraud, extortion, blackmail, attempted forced entry, reckless endangerment, and obstruction… Charles Construction, owned by Matses' father, has been involved in the misconduct.*"(Dkt. 32-1 at 15, 17).

20. On Sept. 10 2025, Gjovik filed a new and supplemented Motion to Compel the Trustee and Request for Emergency Protective Order, flagging these new issues that she argued required an emergency judicial intervention. (Dkt. 26-27). This included the Trustee demanding Gjovik provide him contact information for all potential defendants in any of her legal claims so he can contact them to notify them directly with abandonment, even if they did not know Gjovik thought she had legal claims against them, which Gjovik complained "*creates substantial risk… for no legitimate purpose*" and "*Trustee is acting as a Judge reviewing bankruptcy disclosures like a civil Motion to Dismiss*" (Dkt. 26 at 5).

21. On Sept. 11 2025, Trustee Mark DeGiacomo responded Gjovik's Motions to Compel the Trustee and Request for Emergency Protective Order, and simply stated that "t*he Debtor is not entitled to any of the relief requested in the Motion to Compel. The Motion to Compel should be denied for reasons too obvious to expound upon here*" (Dkt. 24).

22. On Sept. 11 2025, Trustee DeGiacomo filed a Notice of Abandonment at Dkt. 29 which was incomplete, inaccurate, and fraudulent. The Notice harmed the Debtor, Estate, and Creditors. The Notice created an acute physical safety issue for the Debtor, and thus also the Estate. The Notice did protect and prioritize the interests of the parties which the to-be-abandoned claims would be against, especially the Matses family and Charles Construction.

23. On Sept. 12 2025, Gjovik filed her response and objections to Trustee's Notice of Abandonment at Dkt. 29 and served notice to the Trustee and Creditors. (Dkt. 32, concurrently filed Certfiicate/Proof of Service). Gjovik complained that Trustee DeGiacomo supposedly "*abandoned*" claims arising from a specific property, yet only abandoned only one out of at least nine types of claims and claims against two out of at least five parties, who were expressly noted in the amended schedules and forms on this docket. The Trustee also mischaracterized the claims, failed to mention an initial

settlement offer, falsely asserted Gjovik said things that she demonstrably said the opposite, and other material issues and omissions. (Dkt. 32).

24. On Sept. 11 2025, Apple retained separate counsel for this bankruptcy proceeding. A response to Gjovik's Motion to Show Cause (Dkt. 19) was filed by firm Partner and Corporate Restructuring Division leader, Andrew Troop at Pillsbury Winthrop Shaw Pittman LLP at Dkt. 29. Among other misconduct, the response claims that Gjovik's mandatory disclosure of potential legal claims to this court, required as part of the bankruptcy process, and for which she could be found to have committed crimes if she does not comply – was evidence she was a "*serial litigant*" (Dkt. 29 at 1, ¶ 1) and it was improper for her to amend her schedules/forms to add additional potential claims (Id, FN1). Among other issues, the claims Mr. Troop was minimizing and discriminating against are the only potential assets in Gjovik′s estate – and thus Apple was, once again, devaluing and defrauding this Estate.

25. In Apple's Sept. 11 2025 response, Mr. Troop also essentially argued that Apple is not a creditor; but also that Apple is possibly a creditor; but even if Apple's a creditor, it has no liability unless it files a claim; and even if Apple is not a creditor, it has all of the rights of a creditor; and while Apple has not filed a claim, it might later. (Dkt. 29, summarized). Apple views these proceedings as a "shell game."

26. Mr. Troop's response also repeatedly claims that Gjovik did not serve Apple with her Motion, saying "*Apple has not previously appeared in this case or consented to electronic service*" (Dkt. 29 at 3). This is demonstrably incorrect. Apple's counsel at Orrick did consent to electronic service in Sept. 2023 (case no. 23-cv-04597) and were served a copy of the motion through PACER in case 23-cv-04597 (the case where Apple's counsel at Orrick filed their motions, declarations, and other papers that gave rise to this Motion, interfered with and harmed Estate administration, and resulted in a referral of that case to this Court without Apple ever raising the matter to this court; see Dkt. 20).

27. Fed. R. Bankr. P. Rule 9014 for "Contested Matters" incorporates Rule 7004 for service of motions that allows service as authorized by Fed. R. Civ. P. 4(e)–(j) and also service to a corporation by mailing a copy to "an officer" or "agent." Rule 7004(b)(3); Fed. R. Civ. P. Rule 4(e),(h).  In addition, Fed. R. Bankr. P. Rule 9036 also authorizes electronic service on registered users. ("The use of electronic technology instead of mail to send information to creditors and interested parties will be more convenient and less costly for the sender and the receiver," Rule 9036, Notes of Advisory Committee on Rules— 1993; "Confidence in the delivery of email text messages now rivals or exceeds confidence in the delivery

of printed materials." Rule 9036, Committee Notes on Rules—2005 Amendment).

28. Further, Fed. R. Civ. P. 4 allows service on a corporation "following state law," and/or "delivering a copy of each to an agent." Apple is a corporation domiciled in California, and California Civ. Pro. Code § 1010.6 expressly authorizes electronic service including to attorneys and agents. California Rules of Court, Rule 2.251 ("Electronic Service") further explains that "a party…that has consented to electronic service… and has used an electronic filing service provider to serve and file documents in a case consents to service on that electronic filing service provider as the designated agent for service for the party…in the case, until such time as the party… designates a different agent for service," (b)(2); " a party… that is required to file documents electronically in an action must also… accept service of documents electronically from all other parties," (c)(3); and when using electronic service, "a party …may serve documents electronically directly, by an agent, or through a designated electronic filing service provider." (f)(1).

29. Apple's counsel also argues that this electronic service was somehow inadequate despite it going directly to Apple's counsel for this matter at that time (Orrick) through electronic PACER service they consented to, Apple then retaining new counsel (Pillsbury) to respond that motion, who filed a notice of appearances and a response to this court, and the U.S. Court in San Francisco directly referencing Gjovik's Motions filed to this Court in the U.S. Judge's Sept. 5 2025 Order (Dkt. 23, with Order directly citing & referencing the concurrently filed and also electronically served Motion to Compel the Trustee).

30. If Apple's counsel at Orrick complied with bankruptcy rules and law, they would have filed a notice of appearance in this case and filed motions to this court regarding their bankruptcy-related questions and concerns, but they did not. Further, on July 1 2025, in response to Gjovik's Sixty Day Notice of the Environmental citizen Suit, Apple's counsel at Orrick specifically instructed Gjovik that she's not allowed to contact Apple directly and either needs to go through them or else use Apple's "*registered agents for service of process*." Gjovik complained that Orrick was not even representing Apple in the Citizen Suit, had no environmental practice, and cannot restrict her from contacting Apple about non-retaliation matters. Orrick never replied – yet here another law firm is now saying Gjovik cannot serve Apple through Orrick and must contact Apple directly. (Dkt. 29).

31. Apple's Sept. 11 2025 response notably does not address Apple's failure to follow basic bankruptcy procedures and offers no substantive defense for Apple's blatant misconduct. If Apple really

wanted to understand if the Trustee was going to abandon claims against Apple, Apple could have contacted the Trustee and asked, and/or contacted the Trustee and Gjovik, and/or monitored the case docket for Trustee communications, and/or filed a motion to this court. (i.e., Fed. R. Bankr. P. Rule 6007; "Any creditor or other interested party who wishes to receive notice of the estate representative's intention to abandon property of the estate pursuant to 11 U.S.C. § 554(a) may file with the Court and serve upon the estate representative and the United States trustee a written request for such notice." Local Rule 6007-1).

32. Apple did not do any of those things – instead Apple sent retaliation counsel to Gjovik's § 341 meeting, spied on her, wrote and filed sworn declarations about the meeting to a different court, and used all of that to accuse Gjovik of misleading a that different court, as a basis for Apple to stay that litigation against Apple, while Apple was facing a pending motion for sanctions due to discovery misconduct and an imminent motion for summary judgement. (Dkt. 20). Further, Apple's primary defense for its attendance at the 341 meeting was that it's a creditor and the 341 meeting is for creditors, yet Apple's opposition and subsequent emails repeatedly asserts that its entirely irrelevant as to if Apple's a creditor in this case (regarding both Gjovik's pending Motion to Show Cause and Apple's conduct including at the 341 meeting). Apple is estopped from taking multiple positions across its defense firms.

33. Similarly, if Apple actually wanted to stay the civil litigation simply in order to allow the Trustee to determine how he will proceed, then there was no need for Apple to file 55+ pages of documents accusing Gjovik of misconduct, making false statements about bankruptcy law, and attempting to harm Gjovik's litigation position in that lawsuit (Dkt. 20). Similarly, if Apple and the Trustee thought a stay was necessary, the Trustee could have communicated with Gjovik, filed a notice of appearance, filed his own papers, and/or asked Gjovik to file papers on his behalf – but they did none of this (Dkt. 20).

34. Critically, both Apple and the Trustee also violated Fed. R. Bankr. P. Rule 5011 ("Staying a Proceeding") by failing to present their Motion to this court prior to the District Court.[3] Similarly, Apple also violated the 11 U.S. Code § 362 Automatic Stay by using their Emergency Motion to Stay to obtain possession of, and control, the property of the Estate. § 362(a)(3). Apple also violated other

---

[3] "Rule 5011. Motion to Withdraw a Case or Proceeding or to Abstain from Hearing a Proceeding; Staying a Proceeding.
(d) Motion to Stay a Proceeding . A motion to stay a proceeding must ordinarily be submitted first to the bankruptcy judge."

bankruptcy rules by devaluing, damaging, and defrauding the estate and discriminating against the Debtor due to her bankruptcy. (Dkt. 20).

35. Apple's Sept. 11 2025 response also fails to address the difference between a bankruptcy Estate 'owning' or 'controlling' the property interests in litigation and legal claims, compared to actually administering those claims. In the August 25 2025 Motion filed by Apple's Orrick counsel, they argued that as soon as any Debtor files a Ch.7 case, that the person no longer has any standing to litigate in any pending litigation. (Dkt. 20).

36. This argument would create an absurd result where the bankruptcy courts are required required to send out automatic notices to all state and federal courts with pending litigation and inform those courts the Debtor is no longer a party to that litigation (assumably resulting in most pending litigation being dismissed due to lack of a controversy since the Plaintiff would no longer be 'party' and the Trustee would have not filed a notice of appearance, and so the act of filing for bankruptcy would immediately destroy any potential value in pending litigation) and/or the Trustee of any Ch.7 Estate that has pending Plaintiff-side litigation, would be immediately required to hire counsel, file a notice of appearance, and file a motion to stay that proceeding – even if it's an insolvent, no-asset Ch.7 case.

37. Further, in Apple's Sept. 11 2025 response and filing to this court, Apple bankruptcy counsel at Pillsbury argued it was evidence of misconduct that Gjovik "*filed another suit against Apple in the Northern District of California… she characterizes it as pursuing non-estate claims*" and said "*her actions have resulted in an order from the District Court in the Northern District of California requiring Apple to address how this lawsuit should be managed by that Court.*" (Dkt. 29 at 1, FN1) (referencing the *Sua Sponte Judicial Referral* in the U.S. Court in San Franscisco discussed below).

38. The Order referenced was about "relating" similar cases and was certainly provoked by Gjovik claiming the cases are related in her Complaint ("*In 2023, Plaintiff filed a related action, concerning the same, similar, and related subject matter, against Defendant Apple Inc*", Dkt. 27 at 41). Apple was not "*required*" to respond, no one asked Apple to advise the Court about the Court's own case management, and the Court ignored Apple's commentary related to the bankruptcy proceedings.

39. On Sept. 12 2025, Gjovik emailed with Apple's counsel at Pillsbury asking them to clarify Apple's creditor/not-creditor status, Goldman Sachs' mail forwarding of notices related to Apple Card to CITIGROUP, and CITIGROUP's potential role as creditor for Apple Card debt. Mr. Troop responded

but refused to address these points saying her questions about creditors and bankruptcy proceedings were "*not relevant,*" "*is irrelevant,*" he won't "*give*" her legal "*advice,*" and won't communicate with her further until this court rules on the pending motion (Sept. 12 and 21 2025). Despite making much ado about service in their opposition, Apple's counsel also wrote that "*the opposition does not state that Apple, in the future, wants mail service. In fact, we have not taken any position on future service.*" (Exhibit B, Sept. 12 2025).

40. On Sept. 12 2025, Apple's counsel at Orrick filed a response to the pending *Sua Sponte Judicial Referral* in the U.S. Court in San Franscisco. (Exhibit C). Local rules explain that parties do not have to respond, but any opposition or support filed must specifically address the criteria for related cases. Apple's response argued it was bankruptcy misconduct for Gjovik to file the Environmental Citizen Suit, argued Gjovik violated bankruptcy laws by filing the public safety lawsuit, claimed it was evidence of misconduct by Gjovik that she filed her Motion to this Court about the Trustee at Dkt. 25, and Apple asked the U.S. Court to essentially transfer the non-monetary federal Environmental Citizen Suit to this bankruptcy court – all based on Apple's assertion that Gjovik "*is a Chapter 7 debtor….neither case should proceed unless and until the Bankruptcy Court determines that Plaintiff can prosecute either or the Trustee steps in to prosecute either.*" cv-04597, Dkt 259 at 5, Sept. 12 2025). Notably, Apple's counsel did not file an actual Motion to Stay in the U.S. Court, and filed nothing at all to this bankruptcy court.

41. Gjovik filed a response to the U.S. District Court complaining about Apple counsel's ongoing bankruptcy-related misconduct in the civil case and the bankruptcy case. (cv-04597, Dkt. 260 at 3; Exhibit D). Gjovik complained Apple was "*attempting to create confusion and administrative [in]efficiency across at least three different federal proceedings, in three different federal Court Houses, and across two different states, with at least three separate defense firms.*" (cv-04597, Dkt. 260 at 4; Exhibit D).

42. Gjovik attached an exhibit to her response, with a copy of her email to Apple's counsel at both firms and Trustee DeGiacomo following Apple's Sept. 12 2025 filing where she complained:
> "There is nothing to liquidate, there is no recovery, and federal environmental laws and public safety police powers preempt Bankruptcy laws"… "the only thing a Trustee could do with a case like this is try to 'settle' the matter by taking out of court payments from Defendants to end the lawsuit against them, outside of the statutory 45-day DOJ ENRD settlement review/approval process, and in which case that Trustee and the Defendants would be committing federal crimes including some form of criminal bribery and obstruction."

(cv-04597, Dkt. 260; Exhibit D).

43. On Sept. 15 2025, Gjovik filed amended schedules/forms as discussed with Trustee DeGiacomo on Sept. 8 2025. On Sept. 15 2025, at 5:38 AM, Gjovik emailed the Trustee notifying him of the amended petition but also asking him to run a "conflict check" on his law firm against her legal claims:

> "I want to note for the record that it seems very odd to me that the very first abandonment notice you filed, which you filed urgently, full of mistakes and omissions, grossly downplaying the issues and value -- also excluded an expressly named company (Charles Construction) and the majority of the liability for that company and the construction supervisor of that family business (Alex Matses), without explanation and in direct violation of bankruptcy law and rules. Upon performing research this weekend into claims against Charles Const. Co. (d.b.a CSD Real Estate), it is clear there's a systemic long-running pattern of misconduct with that company and family, including Alex Matses. I also note that your law firm's website promotes a large division dedicated to the litigation and regulatory defense for the construction industry. One would assume that if you actually "investigated" the claim prior to abandonment, you might ask that division about the company or also run your own search of cases. You could have found what I did (for example, attached). That would make it outrageous for you to abandon such a claim where there's extensive strict liability and evidence in this instant case, and to instead frame the matter as *"she doesn't like the contract, saw a mouse, and thinks its dirty."* I also note that the construction supervisor at issue here, Alex Matses, did start acting very strange after telling me on ~8/2 that he would contact his law firm (assumably the family business' primary firm for settlements like this, as he knew already that what was going to need to happen here), but then after speaking with that firm/lawyer, then refused to tell me who the firm or lawyer was or have them contact me, while concurrently complaining about my bankruptcy. This was noted in the memo I sent you Sept. 7 2025, prior to your next-day urgent demand to abandon this claim and insistence on serving Matses a copy of your neutered version of facts, claims, and parties. I've become very concerned that Charles Construction and/or the Matses family may be represented by Harris Beach Murtha, or one of their attorneys. And as you informed me repeatedly, you are not my attorney. However, you could be their attorney -- in which case your duty of loyalty would be to them, not me. That's why the DOJ Handbook requires recusal if there's conflicts between Estates and law firm clients. Please advise."

(Exhibit A).

44. On Monday Sept. 15 2025, the U.S. Judge in the U.S. District Court in San Francisco issued an Order finding the Environmental Citizen Suit "*is not related to*" the pending RICO/whistleblower/toxic tort case at cv-04597 (Dkt. 261; Exhibit E). On Sept. 15 2025, the Magistrate Judge and U.S. District Court in San Jose then issued Gjovik the Summons for her Environmental Citizen Suit (25-cv-07360, Dkt. 13; Exhibit F). Gjovik completed service on the statutorily required government agencies (U.S. EPA and U.S. Attorney General), and Defendants Apple and the City of Santa Clara on Sept. 17 2025. (25-cv-07360, Dkt. 14).

45. On Wednesday Sept. 17th, 2025 at 11:48 AM, Trustee DeGiacomo wrote to Gjovik: "*I

*have determined that, at this point, I have all the information I need so there is no need to have the call we had scheduled for Monday.*" The call on Sept. 22 2025 was to be the second conversation between the Trustee and Gjovik where they could discuss Gjovik's bankruptcy case, including her litigation and potential legal claims. There are no future calls or conversations scheduled or planned. On Sept. 17th, 2025 at 1:49 PM, Gjovik responded to the Trustee that he "*cannot 'investigate' [her] legal claims without speaking to [her] about those claims. Either [he] need[s] to actually investigate the claims properly, or [he] should abandon all of them.*" (Exhibit A).

46. Gjovik also emailed with Trustee DeGiacomo on Sept. 17th asking him if he mailed or otherwise transmitted a copy of his Notice of Abandonment to potential defendants, as Trustee DeGiacomo repeatedly told her he would. She noted that Matses abruptly contacted her on Sept. 17, informing her he planned to enter her unit, after she previously told him to stop contacting her in August 2025, filed a police report against him, and told him she would seek a restraining order against him if he did not stop contacting her. Trustee DeGiacomo had insisted he would send Matses a copy of his Notice of Abandonment about Matses, despite Gjovik warning him it would only provoke Matses, and the Trustee did not care. Upon questioning on Sept. 17, the Trustee refused to respond if he communicated with Matses, and said he "*will not be responding any further*" about it. Gjovik responded that she "*strongly object to [his] refusal to answer [her] basic factual questions*." Trustee DeGiacomo never replied. (Exhibit A).

47. On Sept. 19 2025, Apple's counsel for the Environmental Citizen Suit filed a notice of appearance. Apple is represented by Morrison & Foerster. Gjovik has been communicating with lead counsel regarding the Environmental Citizen Suit since Aug. 29 2025, including drafting stipulations and coordinating motion practice. Apple's counsel in that case is aware of the bankruptcy but has not tried to claim the lawsuit is owned by, or could be blocked by, the bankruptcy Estate or Trustee. It is clear that Apple's defense counsel are fabricating excuses, justifications, and post-hoc rationalizations for their misconduct in real-time, as they go, and not even attempting to coordinate across different defense firms.

48. Meanwhile, Gjovik is broke, exhausted, indebted, insolvent, and simply wanted a "fresh start" so she could try to rebuild her life in some form – and did not ask for any of this. Had she known that her petition for bankruptcy would have resulted in all of this chaos and abuse, she likely would not have filed and would have found some other way, *any other way*, to at least buy more time. What has occurred in this case thus far is completely unacceptable, has caused irreparable harm, has

damaged/devalued her property, has forced her to pay costs for service and resources to defend herself, has harmed her legal interests and litigation, could and may cause physical harm, and has been deeply demoralizing and traumatizing. Gjovik prays to this Court that it will have mercy on her in this proceeding and please take actions to supervise, investigate, and determine a path forward.

49. I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct. I hereby certify that true and correct copies of referenced documents are attached to the Declaration as exhibits. Executed on September 22 2025 in Boston, Massachusetts.

Respectfully submitted,



**/s/ Ashley M. Gjovik**
*In Propria Persona*
18 Worcester Square, Apt 1
Boston, MA 02118
Dated: September 22 2025

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Trustee, Apple Inc) via the Court's electronic filing system and email on or around September 22 2025, when the pro se clerk posts it.

The Trustee (mdegiacomo@harrisbeachmurtha.com) and Apple (andrew.troop@pillsburylaw.com) will also be served via email on September 22 2025.

Apple will be promptly mailed a paper copy addressed to 10355 N. De Anza Blvd, Cupertino, CA 95014. This mailing will also include paper copies of the Motion at Dkt. 20 and Objections at Dkt. 32.

Goldman Sachs Bank USA will be promptly mailed a courtesy paper copy addressed to Salt Lake City Branch, Lockbox 6112, P.O. Box 7247, Philadelphia, PA 19170 – though it is likely to be forwarded to CITIGROUP and Apple still refuses to explain why or to provide a different address.