**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
2108 N. St. Ste. 4553,
Sacramento, CA 95816
ashleymgjovik@protonmail.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

IN RE:

ASHLEY M. GJOVIK.

CHAPTER 7 CASE NO: 25–11496

JUDGE CHRISTOPHER J. PANOS

DEBTOR'S MOTION FOR SANCTIONS AGAINST APPLE INC FOR ITS WILLFUL VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(K)(1)

(CREDITOR NO. 21011446)

FED. R. BANKR. P. RULE 9013

# TABLE OF CONTENTS

JURISDICTION AND AUTHORITY ........................................................ 2

FACTUAL BACKGROUND ............................................................... 3

LEGAL ARGUMENT ....................................................................... 5

   THE AUTOMATIC STAY PROHIBITS WHAT APPLE IS DOING .................... 5

APPLE'S VIOLATION IS WILLFUL ..................................................... 5

THE DEBTOR HAS SUFFERED DAMAGES ........................................... 6

APPLE'S CONDUCT DIRECTLY THREATENS THE ESTATE AND ITS
CREDITORS ............................................................................... 7

   Apple is attempting to enforce a prepetition contract against the Debtor. .......... 8

   Apple's conduct directly devalues the estate's primary asset. ........................ 8

   A public "leaker" finding would destroy the Debtor's future earning capacity. ..... 9

   The automatic stay exists to prevent exactly this. .................................... 10

PUNITIVE DAMAGES ARE WARRANTED ........................................... 11

ANY ORDER ENTERED IN VIOLATION OF THE STAY IS VOID .............. 12

RELIEF REQUESTED ................................................................... 13

EXHIBITS ................................................................................. 14

CERTIFICATE OF SERVICE ........................................................... 14

EXHIBITS ................................................................................. 15

   EXHIBIT A: APPLE'S LETTER ...................................................... 15

   EXHIBIT B: OPPOSITION ............................................................ 1

   EXHIBIT D: MOTION TO QUASH .................................................. 2

   EXHIBIT C: NOTICE OF PENDENCY .............................................. 3

# DEBTOR'S MOTION FOR SANCTIONS AGAINST APPLE FOR the WILLFUL VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(k)(1)

## DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(k)(1)

1.     On February 19, 2026, Apple Inc. filed an emergency letter in the Northern District of California (Dkt. 280 in *Gjovik v Apple*, Case No. 3:23-cv-04597-EMC) requesting that the court impose sanctions on the Debtor, hold the Debtor in contempt, issue a restraining order against the Debtor, and order the Debtor to delete published content. The court scheduled a conference for the following day, Feb. 20 2026.

2.     Apple seeks these remedies against the Debtor personally, cite the basis for its relief as including a pre-petition employment contract, and Apple did not seek or obtain relief from the automatic stay before initiating these proceedings.

3.     This is a straightforward violation of 11 U.S.C. § 362(a)(1). A creditor with actual knowledge of a Chapter 7 filing — a creditor that retained bankruptcy counsel and appeared in this case — filed emergency papers in a federal court seeking quasi-criminal contempt, monetary sanctions, and injunctive relief against the debtor without leave of this Court.

4.     Apple's letter also invokes the Debtor's prepetition employment agreement as independent grounds for the requested relief (3:23-cv-04597,-Dkt. 280, fn. 2), constituting an attempt to enforce a prepetition claim in violation of § 362(a)(6).

5.     The Debtor is entitled to actual damages, attorneys' fees, and punitive damages under § 362(k)(1). The Debtor also requests that this Court declare any order entered against the Debtor as a result of Apple's letter void, and direct Apple to cease pursuing proceedings against the Debtor in any court without first obtaining stay relief from this court.

## JURISDICTION AND AUTHORITY

6.     This Court has jurisdiction under 28 U.S.C. §§ 157(a) and 1334. This is a

core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and § 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay).

7.   The Court has authority to award sanctions under 11 U.S.C. § 362(k)(1) and its inherent power under 11 U.S.C. § 105(a). This motion is brought as a contested matter under Fed. R. Bankr. P. 9014.

## FACTUAL BACKGROUND

8.   Debtor Ashley Marie Gjovik filed a voluntary petition for relief under Chapter 7 on July 21, 2025. (Case No. 25-11496, Dkt. 1). Apple Inc. is a creditor in this case (Creditor No. 21011446) and is also the defendant in the Debtor's pending civil litigation, Gjovik v. Apple Inc., Case No. 3:23-cv-04597-EMC (N.D. Cal.), which was property of the estate.

9.   Apple has been aware of the Debtor's bankruptcy since at least July 2025. Apple retained separate bankruptcy counsel (Pillsbury Winthrop Shaw Pittman LLP), they filed notice of appearance, and filed an opposition in this case at Dkt. 29 on September 11, 2025. There is no dispute that Apple has had actual notice of the bankruptcy and the automatic stay at all times relevant to this motion.

10.   On February 19, 2026, Apple filed a five-page emergency letter (3:23-cv-04597,-Dkt. 280) addressed to Magistrate Judge Kandis A. Westmore in the Northern District of California, requesting that the court schedule a telephone conference to address what Apple characterized as "emergency" matters.

11.   In its letter, Apple explicitly requests the following relief against the Debtor: ***Sanctions*** — Apple states it is "seeking enforcement a Protective Order, including sanctions." (Dkt. 280 at 1); ***Contempt*** — Apple states Plaintiff has "blatantly violat[ed]" a procedural Protective Order and seeks findings that the Debtor filing an NLRB charge against Apple and publicizing the labor dispute somehow violated a court order. (Dkt. 280 at 1-2); ***Restraining order / speech injunction*** — Apple requests that the court order the Debtor to "take these down immediately" referring to social media

posts and blog content discussing the labor dispute, and seeks an order prohibiting the Debtor from continuing to discuss the labor dispute, her litigation against Apple, and her NLRB charges publicly. (Dkt. 280 at 4-5); ***Compelled deletion*** — Apple demands that the Debtor be ordered to delete specific content from her website and social media accounts where she complained about Apple violating labor and consumer protection laws. (Dkt. 280 at 4-5).

12.    Apple's letter directly cites the Debtor's "Confidentiality and Intellectual Property Agreement" (the employment NDA) as independent grounds for the requested relief. (Dkt. 280 at fn. 2). This means Apple is seeking enforcement of a prepetition contractual obligation against the Debtor — a claim that arose before the bankruptcy filing.

13.    The Magistrate Judge scheduled a telephonic conference for February 20, 2026, at 2:15 PM Pacific Time — less than 24 hours after Apple's letter appeared on the docket. Apple did not seek or obtain relief from the automatic stay from this Court before filing Dkt. 280 or pursuing these proceedings against the Debtor.

14.    This is not the first time Apple has taken action against the Debtor in the N.D. Cal. case while the automatic stay has been in effect. On August 25, 2025, Apple filed an Emergency Motion to Stay in the N.D. Cal. case that included accusations of misconduct against the Debtor and sought to strip the Debtor of standing in her own litigation. This Court addressed Apple's prior conduct in the order denying the Debtor's Motion at Dkt. 20 on October 6, 2025, finding that those allegations centered on estate administration rather than a direct proceeding against the Debtor.

15.    The present conduct is fundamentally different. Apple is no longer making arguments about estate property or the Trustee's authority. Apple is directly seeking judicial sanctions, contempt, monetary penalties, and injunctive relief against the Debtor personally. There is no estate administration question here. Apple wants a court to punish the Debtor, take money from the Debtor, and restrict the Debtor's speech and conduct — all quintessential proceedings "against the debtor" within the meaning of § 362(a)(1).

# LEGAL ARGUMENT

## THE AUTOMATIC STAY PROHIBITS WHAT APPLE IS DOING

16.    The automatic stay under 11 U.S.C. § 362(a) provides, in relevant part: (a) [A] petition filed under [this title] ... operates as a stay, applicable to all entities, of — (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of such case under this title; ...(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

17.    Apple′s February 19 letter and the resulting conference constitute the ″commencement or continuation ... of a judicial ... action or proceeding against the debtor″ under § 362(a)(1). Apple is asking a federal court to: find the Debtor in contempt of a court order, impose monetary sanctions on the Debtor, issue a restraining order restricting the Debtor′s conduct and speech; order the Debtor to delete publications and speech of public concern.

18.    Each of these is a proceeding against the Debtor. Contempt is quasi-criminal in nature. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-33 (1994). Sanctions impose monetary liability on the Debtor. A restraining order restricts the Debtor′s liberty. Compelled deletion requires the Debtor to act under threat of further sanctions.

19.    Additionally, Apple′s reliance on the Confidentiality and Intellectual Property Agreement (Dkt. 280 at fn. 2) as independent grounds for the requested relief constitutes an attempt to ″collect, assess, or recover a claim against the debtor that arose before the commencement of the case″ under § 362(a)(6). The IPA is a prepetition contract. Any claim for breach of that contract arose prepetition. Apple cannot enforce that agreement against the Debtor without first obtaining stay relief from this Court.

## APPLE′S VIOLATION IS WILLFUL

20.    In the First Circuit, a violation of the automatic stay is ″willful″ if two

conditions are met: (1) the creditor knew of the bankruptcy filing, and (2) the creditor intended the actions which constitute the violation. *Fleet Mortgage Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Id.* Specific intent to violate the stay is not required; the creditor need only have intended the act. In re Slabicki, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012). Both elements are satisfied here beyond any dispute:

21.    Apple knew of the bankruptcy. Apple has had actual notice of this bankruptcy since at least July 2025. Apple retained separate bankruptcy counsel (Pillsbury) and filed an opposition in this case in September 2025. Apple's own filings in the N.D. Cal. case repeatedly reference the Debtor's bankruptcy. There is no question that Apple, Orrick Herrington & Sutcliffe, and Morgan Lewis & Bockius all had actual knowledge of the bankruptcy and the automatic stay when Apple filed Dkt. 280 on February 19, 2026.

22.    Apple intended the actions. Apple deliberately drafted and filed a five-page letter to a federal court requesting sanctions, contempt, and injunctive relief against the Debtor. Apple deliberately sought an emergency conference to pursue these remedies.

23.    These were not inadvertent acts by an automated billing system. These were deliberate litigation decisions made by two of the largest law firms in the country — firms that are well aware of what the automatic stay prohibits.

24.    Apple cannot claim good faith ignorance that its actions violated the stay. Apple has separate bankruptcy counsel. Apple has been a participant in this bankruptcy case. Apple knows the Debtor is a Chapter 7 debtor.

25.    The decision to seek sanctions and contempt against a Chapter 7 debtor without first seeking stay relief was either a deliberate violation of the stay or a reckless disregard of a known legal obligation. Either way, it is willful under First Circuit law.

## THE DEBTOR HAS SUFFERED DAMAGES

26.    The Debtor has suffered actual damages as a direct result of Apple's willful violation:

27.    ***Pro Se Attorney's fees and costs***. The Debtor, though proceeding in propria persona, has been forced to expend substantial time and effort responding to Apple's illegal action — including preparing this motion, preparing an emergency motion to quash the February 20 conference directed to Judge Chen in the N.D. Cal. case, and researching the legal issues Apple's conduct has raised across multiple jurisdictions.

28.    ***Emotional distress.*** Apple's conduct has caused the Debtor significant emotional distress. The Debtor is facing the prospect of quasi-criminal contempt charges, monetary sanctions, and a gag order — all initiated while she is in bankruptcy, without income, and without the resources to defend herself against one of the wealthiest corporations in the world. Apple's letter was filed as an "emergency" creating artificial urgency and scheduling a hearing less than 24 hours later, denying the Debtor any meaningful opportunity to prepare.

29.    The emotional distress caused by receiving notice that a trillion-dollar corporation is seeking contempt charges against you in a hearing the next day, while you are homeless and in bankruptcy, is readily apparent. See *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004) (emotional distress is actual damage under § 362(k)(1) in the First Circuit).

30.    ***Interference with the fresh start.*** The automatic stay exists to give the debtor "a breathing spell from creditors." S. Rep. No. 95-989, at 54-55 (1978). Apple's conduct is the opposite of a breathing spell. Apple is escalating its campaign against the Debtor, using the litigation in California to pursue sanctions and contempt while the Debtor is supposed to be protected by this Court's jurisdiction. This directly undermines the purpose of the bankruptcy filing.

## APPLE'S CONDUCT DIRECTLY THREATENS THE ESTATE AND ITS CREDITORS

31.    This Court should understand what Apple is actually doing in the N.D.

Cal. case, because the financial consequences for this estate and its creditors are severe.

## APPLE IS ATTEMPTING TO ENFORCE A PREPETITION CONTRACT AGAINST THE DEBTOR.

32.    Apple's February 19 letter explicitly cites the Debtor's employment NDA — the "Confidentiality and Intellectual Property Agreement" signed in 2015— as independent grounds for the requested relief. (Dkt. 280 at fn. 2). Apple's position is that the Debtor owes Apple obligations under this prepetition employment agreement, that the Debtor breached those obligations by discussing workplace conditions publicly, and that the Debtor continues to breach them. Apple argues that the same speech it fired the Debtor for in 2021 is ongoing misconduct that warrants sanctions, contempt, and a gag order.

33.    This is an attempt to collect, assess, or recover on a claim against the Debtor that arose before the commencement of this case, in direct violation of § 362(a)(6). The NDA is a prepetition contract. If Apple believes the Debtor owes it obligations under that contract, Apple's remedy is to file a proof of claim in this Court — which Apple has not done — or to seek stay relief before pursuing enforcement in another forum. Apple cannot enforce a prepetition contractual obligation against a debtor in bankruptcy by styling it as a discovery letter to a magistrate judge.

34.    Apple's assertion of harm from the Debtor's speech necessarily implies economic damages — which Apple could later quantify and pursue. A finding by any court that the Debtor breached the NDA would give Apple a damages claim against the Debtor. Apple is building the factual foundation for a claim against this estate without filing a proof of claim, without seeking stay relief, and without this Court's knowledge or approval.

## APPLE'S CONDUCT DIRECTLY DEVALUES THE ESTATE'S PRIMARY ASSET.

35.    The estate's most valuable known asset is the Debtor's pending civil

litigation against Apple, *Gjovik v. Apple* Inc., Case No. 3:23-cv-04597-EMC, which includes claims for wrongful termination, retaliation, and related causes of action. The Debtor's potential recovery includes at minimum approximately $2 million in backpay, and the N.D. Cal. court has indicated that reinstatement to the Debtor's former position (with salary exceeding $169,000 per year) may be available as a remedy at summary judgment, which is imminent in June 2026.

36.    Apple's defense in that litigation is that the Debtor was terminated for "leaking confidential information" about Apple's workplace studies. The Debtor's claims rest on the position that her public discussion of those studies was protected protest of invasions of privacy — not leaking.

37.    If Apple obtains a contempt finding or sanctions order in the N.D. Cal. case based on the same conduct, Apple will argue at summary judgment that a federal court has already determined the Debtor's speech was wrongful — not protected. That would devastate the estate's litigation position and dramatically reduce the value of the estate's primary asset. The Debtor's *Tameny* wrongful termination claim, her Cal. Labor Code § 1102.5 whistleblower claim, and her § 96(k) claim would all be undermined by a finding that the same type of speech was sanctionable.

38.    Apple's own letter frames the issues identically to its termination defense. Apple says the Debtor "leaked" confidential studies in 2021 (the basis for termination) and is "leaking" the same studies now (the basis for the emergency letter).

39.    If the court sanctions the Debtor for the current speech, Apple will use that finding to validate the original termination. The estate's $2 million backpay claim — and the potential for reinstatement with ongoing compensation — would be severely compromised.

## A PUBLIC "LEAKER" FINDING WOULD DESTROY THE DEBTOR'S FUTURE EARNING CAPACITY.

40.    If Apple obtains a court finding that the Debtor violated a confidentiality order or breached an NDA by discussing workplace conditions — and that finding becomes part of the public record — the Debtor's ability to obtain future employment

in the technology industry would be destroyed. The Debtor is a former Senior Engineering Program Manager who earned over $380,000 per year. A court-confirmed finding of "leaking", with a concurrent order for sanctions and a restraining order, would effectively denylist her from the industry forever.

41.     If a Court finds the Debtor was in contempt of court, violated court orders, or had to be sanctioned due to litigation conduct, that directly impacts the Debtor's ability to ever work professionally as an attorney. It could prevent her from passing on her moral character and getting a Bar license, it could block her from ever being hired by a law firm, and could result in a lifetime of prejudice from court and judges.

42.     This matters to the estate and its creditors because the Debtor's future earning capacity is relevant to the administration of this case. If the bankruptcy is still underway when summary judgment is decided and the court orders reinstatement, the Debtor could potentially convert to Chapter 11 and propose a repayment plan that would pay creditors substantially more than they would receive in a Chapter 7 liquidation. Apple's conduct threatens to foreclose that possibility entirely, to the direct detriment of every legitimate creditor in this case.

## The automatic stay exists to prevent exactly this.

43.     The stay applies to "all entities." 11 U.S.C. § 362(a). It does not matter whether Apple is a creditor or not. The rule is simple: leave the debtor alone. If any entity wants to pursue proceedings against the debtor — sanctions, contempt, injunctions, contract enforcement — it must first seek stay relief from this Court. This Court then evaluates whether the proposed action would harm the estate, reduce the value of estate property, or undermine the debtor's fresh start before deciding whether to lift the stay.

44.     That is the process Apple skipped. Apple wants monetary sanctions from an insolvent debtor. Apple wants to make it impossible for her to ever work again. Apple wants to enforce a prepetition NDA without filing a proof of claim. Apple wants contempt and injunctive relief that, as set forth above, would devalue the estate's

primary asset and destroy the Debtor's future earning capacity.

45.     Any one of these would require this Court's evaluation before proceeding. Apple sought none of it. Instead, Apple filed a five-page letter with a magistrate judge in California and obtained a hearing the next day — while the Debtor was supposed to be under this Court's protection.

46.     The consequences of Apple's conduct do not end there. If Apple obtains a contempt finding or sanctions order, those findings could be used at summary judgment in the same case to defeat the Debtor's claims. The estate's recovery goes down. Creditors get less. The Debtor's ability to earn income and potentially convert to Chapter 11 is destroyed. All because Apple pursued proceedings against the Debtor without giving this Court the opportunity to evaluate the impact — which is the entire purpose of the automatic stay.

## PUNITIVE DAMAGES ARE WARRANTED

47.     Section 362(k)(1) provides that "in appropriate circumstances," a debtor may recover punitive damages. Punitive damages are appropriate where the creditor's conduct is egregious, intentional, and demonstrates a disregard for the debtor's rights and the bankruptcy process. *In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005).

48.     Factors include: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay; (3) the motives of the creditor; (4) any provocation by the debtor; and (5) the creditor's level of sophistication. *In re Jean-Francois*, 532 B.R. 449, 459 (Bankr. E.D.N.Y. 2015). Every factor favors punitive damages here:

49.     Nature of conduct. Apple is not a creditor that accidentally sent a billing statement. Apple deliberately filed emergency papers in federal court seeking (frivolous and bad faith) contempt and sanctions against a Chapter 7 debtor without seeking stay relief. This is an affirmative litigation attack on the debtor using the machinery of a federal court.

50.     Ability to pay. Apple Inc. is one of the wealthiest corporations in the world, with a market capitalization exceeding $3 trillion. Any punitive damages award would

need to be substantial to serve a deterrent function. Apple could pay off the Debtor's entire outstanding debt for less than its executives spend on a holiday dinner.

51.     Motive. Apple's motive is transparent: the Debtor is a whistleblower who has been publicly criticizing Apple's workplace practices since 2021. Apple has been retaliating against the Debtor for four years across multiple forums. Apple's emergency letter was filed two days after being served with an NLRB charge alleging the same speech restrictions at issue constitute unlawful work rules. Apple's conduct is retaliatory, not remedial.

52.     Provocation. The Debtor's conduct that Apple complains of — publicly discussing Apple's workplace practices, filing NLRB charges, and posting about the litigation — is protected activity under the NLRA and the California Constitution. The Debtor was exercising legal rights, not provoking Apple.

53.     Sophistication. In the Plaintiff's litigation against Apple, Apple is represented by Orrick Herrington & Sutcliffe, Morrison & Foerster LLP, Morgan Lewis & Bockius, McDermott Will & Schulte, and Pillsbury Winthrop Shaw Pittman — some of the most sophisticated law firms in the country. They cannot claim ignorance of the automatic stay or its requirements. Their deliberate decision to proceed without seeking stay relief was a calculated litigation choice.

## ANY ORDER ENTERED IN VIOLATION OF THE STAY IS VOID

54.     Under Ninth Circuit law (applicable to the N.D. Cal. proceedings), actions taken in violation of the automatic stay are void — not voidable, void. *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 571-72 (9th Cir. 1992). Any order that Magistrate Judge Westmore or Judge Chen might enter against the Debtor as a result of Apple's February 19 letter — including sanctions, contempt findings, speech restrictions, or deletion orders — would be a nullity with no legal effect.

55.     This Court should so declare, both to protect the Debtor and to avoid the waste of judicial resources in the Northern District of California that would result from

proceedings whose outcome is void ab initio.

56.     This Court denied the Debtor's prior motion (Dkt. 20) on October 6, 2025, finding that it did not state a cognizable claim for violation of the automatic stay. This motion involves none of those issues. The Debtor is seeking sanctions because a creditor with actual knowledge of the bankruptcy filed emergency papers in a federal court seeking contempt, sanctions, and injunctive relief against the Debtor personally — without obtaining stay relief from this Court. That is a direct violation of § 362(a)(1) and (a)(6), and it entitles the Debtor to mandatory damages under § 362(k)(1).

# RELIEF REQUESTED

57.     The Debtor respectfully requests that this Court find that Apple Inc. willfully violated the automatic stay under 11 U.S.C. § 362(a)(1) and (a)(6) by filing Dkt. 280 in the Northern District of California and pursuing sanctions, contempt, and injunctive relief against the Debtor without obtaining stay relief from this Court.

58.     Award actual damages to the Debtor under 11 U.S.C. § 362(k)(1), including the reasonable value of time spent responding to Apple's violation, costs incurred, and emotional distress damages, in an amount to be determined at hearing.

59.     Award pro se attorneys' fees and costs to the Debtor under 11 U.S.C. § 362(k)(1) for bringing this motion and for all work required to respond to Apple's violation across multiple jurisdictions. Award punitive damages against Apple Inc. in an amount sufficient to deter Apple and other sophisticated creditors from deliberately violating the automatic stay.

60.     Declare that any order entered by the Northern District of California against the Debtor as a result of Apple's February 19, 2026 letter (Dkt. 280), including any sanctions, contempt findings, speech restrictions, or deletion orders, is void as having been entered in violation of the automatic stay.

61.     Issue an order directing Apple Inc. to cease and desist from pursuing any further judicial proceedings against the Debtor in any court without first obtaining relief from the automatic stay from this Court.

62.   Grant such other and f**urther relief** as this Court deems just and proper.

### DECLARATION UNDER PENALTY OF PERJURY:

63.   I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed. R. Bankr. P. Rule 9011, that the foregoing is true and correct. Executed on February 19, 2026, San Jose, California.

Respectfully,

_____

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed Feb. 19 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBITS

- Exhibit A: Apple Inc.'s Emergency Letter, Dkt. 280, *Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.) (Feb. 19, 2026)
- Exhibit B: Debtor's Opposition filing
- Exhibit C: Debtor's Motion to Quash
- Exhibit  D:  Emails and Objections (Feb. 18-Feb. 19 2026).

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties via the Court's electronic filing system:
-   The Trustee
-   Apple's noticed Counsel

Apple and the U.S. Court are noticed via posting a copy of this Motion to the federal docket for *Gjovik v. Apple Inc*, 3:23-cv-04597-EMC (N.D. Cal.)

A copy will also be mailed to Apple's registered agent for service. (Apple's noticed counsel still refuse to provide instructions for mail service).

**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
2108 N. St. Ste. 4553,
Sacramento, CA 95816
ashleymgjovik@protonmail.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: | CHAPTER 7 CASE NO: 25–11496 |
|  | JUDGE CHRISTOPHER J. PANOS |
| ASHLEY M. GJOVIK. | DEBTOR'S MOTION FOR SANCTIONS AGAINST APPLE INC. |
|  | CREDITOR NO. 21011446 |
|  | DECLARATION OF DEBTOR FED. R. BANKR. P. RULE 9013 |

# Declaration of Debtor Ashley Marie Gjovik

Pursuant to 28 U.S.C. § 1746, I, Ashley M. Gjovik, hereby declare as follows:

1.      My name is Ashley Marie Gjovik. I am a self-represented Debtor in this above captioned matter.

2.       I make this Declaration based upon my personal knowledge and in support of Debtor's Motion for Sanctions Against Apple Inc.

3.      I have personal knowledge of all facts stated in this Declaration, and if called to testify, I could and would testify competently thereto.

4.      I swear under penalty of perjury that the facts alleged in my Motion are true and correct to the best of my knowledge, and the Motion was filed for a lawful and legitimate purpose.

5.      I've attached to the motion Exhibits which are all true and correct copies of those documents.

6.      I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed. R. Bankr. P. Rule 9011, that the foregoing is true and correct.

Executed on Feb. 20 2026 in San Jose, California.

Respectfully submitted,

_____

**/s/ Ashley M. Gjovik**
*Pro Se / In Propria Persona*
Dated: Feb. 20 2026
Physical Location: San José, California (temporary housing)
Mailing Address: 2108 N. St. Ste. 4553, Sacramento, CA 95816

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties via the Court's electronic filing system:

- The Trustee
- Apple's noticed Counsel

Apple and the U.S. Court are noticed via posting a copy of this Motion to the federal docket for *Gjovik v. Apple Inc,* 3:23-cv-04597-EMC (N.D. Cal.)

A copy will also be mailed to Apple's registered agent for service. (Apple's noticed counsel still refuse to provide instructions for mail service).

# EXHIBITS

## EXHIBIT A: APPLE'S LETTER



**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

+1 650 614 7400
**orrick.com**

February 18, 2026

**Melinda Riechert**

**E** mriechert@orrick.com
**D** +1 650 614 7423
**F** +1 650 614 7401

Hon. Kandis A. Westmore
United States District Court,
Northern District of California
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, CA 94612

Re:     ***Ashley Gjovik v. Apple Inc.***
        **N.D. Cal. Case No. 23-cv-4597-EMC (KAW)**
        **Request for Immediate Conference Regarding Breaches of Protective Order**

Dear Judge Westmore:

Defendant Apple Inc. ("Apple") writes to request a conference with the Court **as soon as possible**, to address Plaintiff's repeated and ongoing breaches of the operative Protective Order in this case (Dkt. No. 235). Absent immediate action by the Court, Apple's confidential product-related information – which it designated in this litigation as Confidential pursuant to the Protective Order – will remain exposed to the public.

Plaintiff was deposed in this action on December 16, 2025. At that deposition, Plaintiff testified about (*inter alia*) her understanding and views of certain confidential Apple studies that she learned of during the course of her employment. On the record Apple designated a section of the transcript as Confidential under the Protective Order, but stated its intent to review and attempt to narrow the designations once the transcript was in hand.[1]

---

[1] *See* Gjovik Dep. Tr. Vol. I at 63:10-19 ("Q. [U]nder the protective order, I have the right to designate deposition testimony as confidential. If you disagree with that, then you have the right, under the protective order, to follow the procedures in the protective order. A. Yeah, but I believe you -- sorry. Go ahead. Q. But meanwhile, I'm designating this as confidential pursuant to the protective order. And if you disagree, then follow the procedures in the protective order."); *id.* at 141:18-142:8 ("Q. With respect to the protective order issue, we are designating this portion of the transcript as subject to the protective order. Once we get the transcript itself, we will go back to you and tell you which words or which sentences or which questions or which answers we want to be held confidential. So right now we're being cautious because I don't know what your answers are going to be by designating everything related to this as confidential, but that doesn't mean I intend to permanently keep it that way. As soon as I get the transcript, I will let me know which words, which sentences, we need to designate as confidential, and the rest of it we'll unrelease. Does that make sense? A. Yeah. Thank you, ma'am. …").



Hon. Kandis A Westmore
February 18, 2026
Page 2

On January 7, 2026, the certified court reporter provided the transcript of Plaintiff's deposition. On February 4, 2026, Apple provided Plaintiff and the court reporter its more limited and targeted designations – all of which sought to protect from public disclosure Plaintiff's account of confidential Apple studies.[2]

Plaintiff made clear in subsequent correspondence that she disagrees generally with these confidentiality designations – but, despite Apple's repeated requests, did not initiate any meet and confer regarding any specific designations (as required by Section 6) until 1:09pm PT today. Apple intends to respond to Plaintiff's positions, engage in the required meet and confer, and (if necessary) seek a ruling from the Court regarding those designations in due course.

Separate and apart from the Court-approved process, Plaintiff has launched a campaign to preemptively publicize the information Apple designated as Confidential – *i.e.*, broadcasting across the Internet the specific words and phrases Apple designated, as well as further details that she claims describe Apple studies. Of course, posting on the Internet that "Apple designated X as confidential" necessarily reveals X – which is exactly the material designated Confidential and not properly disclosed absent Court order.

Examples of the disclosures that Plaintiff has made in the past two days in breach of the Protective Order include the following (though Apple may not be aware of the full extent of her violations):[3]

- Posting on X and her personal website a copy of an NLRB charge Plaintiff has filed claiming Apple's designations violated the NLRA, which reveal **_verbatim_** the testimony Apple designated as Confidential:

> **3. COUNT: PROHIBITION ON DISCUSSING WORK CONDITIONS RELATED TO EMPLOYER STUDIES ON ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**
> ▮▮▮▮▮▮▮▮▮

---

[2] Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed. But Plaintiff has disregarded those obligations before; indeed, it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place.

[3] Apple describes or quotes with redaction (rather than quotes in full) the unauthorized disclosures, to avoid repeating them and amplifying the harm Plaintiff has already caused.

Hon. Kandis A Westmore
February 18, 2026
Page 3



---

**NLRA Violation, Example One:**

- Employer: (did you tell your manager you didn't want to do that study?)
- Employee "…I was complaining more generally of, like, Apple is doing some really invasive stuff that seems weird.· Like when they were doing the ████████████████ ███████████████████ I was pointing out, like, I think Apple is crossing some lines --
- (Court Reporter asks for clarification)
- Employee: "They were doing ████████ studies where they were ████████ ████████ and I said I think that's too far.
- Employer: "….Were there other studies that you were asked to participate in that you said, no, thank you?"
- Employee: "Yes.· There was one that I had signed up for and pulled out because I didn't realize the terms until it was underway and it bothered me, …████████████████

████████████████████████████████████████

**Deposition Transcript pages 164-165 (entirely "confidential" for 50 days).**
Apple's active confidentiality claims include: ████████████████████████

████████████████████████

---

- Filing yesterday in this Court a "Notice of Pendency" on the public docket of this case attaching the NLRB charge in full (*i.e.*, unredacted and without regard to Apple's designations under the Protective Order) and repeating all of the disclosures above; and

- Posting on her personal blog further detailing what she claims are Apple study details:

The charge quotes three deposition excerpts where I testified about my complaints to my supervisor regarding Apple's invasive workplace studies. In these excerpts, I described:

- An ████████ **study** where Apple ████████████████
- A ████████████ **study** that ████████████████
  ████████████████
- An ████████████ **study** that ████████████
  ████████████████

Hon. Kandis A Westmore
February 18, 2026
Page 4



Counsel for Apple sent Plaintiff an email at 10:27am PT this morning, entitled "URGENT":

> Ashley
>
> It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.

Plaintiff's responded at 12:27pm PT as follows, making clear that she will not take down the Confidential information that that further direct engagement on the issue without Court intervention would be futile:

> Hello agents of the Employer and Charged Party, Apple Inc,
>
> Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.
>
> You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.
>
> Thanks,
>
> -Ashley

To be clear, Apple does not oppose Plaintiff's right to challenge its confidentiality designations regarding its studies (though those challenges are meritless), or to file a charge directly with the NLRB alleging that designating information about Apple studies as Confidential in a federal civil court case somehow runs afoul of the NLRA (though those arguments are meritless as well). But it does oppose her unilateral posting of that Confidential information across multiple public forums – apparently designed to disseminate the information as far and wide as possible – in contravention of this Court's order and without affording Apple the opportunity to argue for, or the Court to evaluate, the propriety of those designations. Her arguments should be made without preemptively disclosing the very information Apple contends is confidential and on which the Court has not yet ruled (because Plaintiff had not properly raised the issue).

/ / /

/ / /

/ / /

Hon. Kandis A Westmore
February 18, 2026
Page 5



Given the urgency of the issues and the pattern of misconduct Plaintiff has demonstrated, Apple respectfully requests that the Court convene a conference **as soon as possible** to address these issues, make clear to Plaintiff her obligations, and make any further orders the Court may deem necessary to ensure compliance with its orders and protection of Apple's confidential product-related information.

Very truly yours,

*/s/ Melinda Riechert*

Melinda Riechert

# EXHIBIT B: OPPOSITION

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M. GJOVIK,

*an individual*,

      Plaintiff,

      vs.

APPLE INC.,

*a corporation*,

      Defendant.

CASE NO. 3:23-CV-04597-EMC

PLAINTIFF'S OPPOSITION TO DEFENDANT'S DISCOVERY LETTER REQUESTING SANCTIONS, RESTRAINING ORDERS, COMPELLED ACTIONS, & FINDINGS OF CONTEMPT, AT DKT. 280

# Opposition to Apple's Discovery Letter Requesting Sanctions, Restraining Orders, Compelled Acts, & Findings of Contempt

| | |
|---|---|
| INTRODUCTION | 3 |
| FACTUAL BACKGROUND | 3 |
|     THE PROTECTIVE ORDER | 3 |
|     APPLE'S DESIGNATIONS | 4 |
|     THE NLRB CHARGES AND SETTLEMENT | 5 |
|     THE FEBRUARY 2026 SEQUENCE | 5 |
| ARGUMENT | 6 |
|     APPLE'S LETTER IS PROCEDURALLY DEFECTIVE FOR EVERY TYPE OF RELIEF REQUESTED | 6 |
|     THE CONTENT AT ISSUE IS ALL PUBLIC AND PROTECTED INFORMATION | 7 |
|     MULTIPLE INDEPENDENT JURISDICTIONAL BARS PREVENT ANY RELIEF | 9 |
| THE MAGISTRATE JUDGE LACKS STATUTORY AUTHORITY | 12 |
| THE PROCEEDINGS VIOLATE DUE PROCESS AND THE COURT'S STANDING ORDER | 12 |
|     DUE PROCESS REQUIRES MEANINGFUL NOTICE AND AN OPPORTUNITY TO BE HEARD. | 13 |
|     CONTEMPT PROCEEDINGS ARE QUASI-CRIMINAL AND REQUIRE HEIGHTENED PROTECTIONS. | 13 |
|     PRIOR RESTRAINTS ON SPEECH REQUIRE THE MOST DEMANDING PROCEDURAL PROTECTIONS. | 14 |
|     THE COURT'S STANDING ORDER WAS NOT FOLLOWED. | 14 |
|     THE ABSENCE OF A COURT REPORTER IS INDEPENDENTLY DISQUALIFYING. | 15 |
|     THE COURT TOLD PLAINTIFF IT LACKS RESOURCES FOR DISCOVERY CONFERENCES — THEN SCHEDULED ONE FOR APPLE WITHIN 24 HOURS. | 15 |
| THE DESIGNATIONS CANNOT BE ENFORCED WITHOUT BEING ADJUDICATED | 15 |
|     THE COURT CANNOT RULE WITHOUT SEEING THE CONTENT. | 15 |
|     THE DESIGNATED CONTENT IS NOT TRADE SECRETS OR PROPRIETARY INFORMATION. | 16 |
|     APPLE REFUSES TO SUBSTANTIATE ITS DESIGNATIONS WHILE DEMANDING | |

ENFORCEMENT.                                                          16

THE PROTECTIVE ORDER GOVERNS DOCUMENTS IN LITIGATION — NOT A PARTY'S

PUBLIC SPEECH.                                                        16

DESIGNATIONS AND WORK RULES ARE DIFFERENT THINGS, AND APPLE IS CONFLATING

THEM.                                                                17

APPLE ALREADY PROMISED THE NLRB IT WOULD STOP ENFORCING THESE EXACT

PROVISIONS.                                                          17

**GRANTING RELIEF COULD RESOLVE CENTRAL MERITS IN LIEU OF**

**SUMMARY JUDGMENT**                                                 **18**

**NO ENFORCEABLE REMEDY EXISTS**                                     **19**

**APPLE'S STRONGEST ARGUMENT FAILS**                                 **19**

**PROCEDURAL HISTORY OF PLAINTIFF'S OBJECTIONS**                     **20**

**CONCLUSION**                                                       **21**

**RELIEF REQUESTED**                                                 **22**

**EXHIBITS**                                                         **23**

EXHIBIT A: THE NLRB CHARGES                                          23

EXHIBIT B: THE BLOG POST

EXHIBIT C: TWITTER/X POSTS

# INTRODUCTION

1.     On February 19, 2026, Defendant Apple Inc. filed a five-page letter (Dkt. 280) requesting six forms of relief: sanctions, contempt, a restraining order on speech, compelled deletion of social media posts, enforcement of a protective order, and sealing of docket entries. Apple filed none of the motions required for any of these forms of relief. Instead, Apple used a discovery letter addressed to the magistrate judge and obtained a telephonic conference scheduled for the following day — less than 24 hours later — with no court reporter, no opposition briefing, and no opportunity for Plaintiff to be heard.

2. Plaintiff opposes and objects. Apple's letter is procedurally defective for every type of relief it seeks. Three independent jurisdictional bars — the bankruptcy automatic stay, *Garmon* preemption, and the Norris-LaGuardia Act — prevent any relief regardless of procedure. The magistrate judge lacks statutory authority over the relief requested. The proceedings violate the Fifth Amendment and the Court's own Standing Order. The designations Apple seeks to enforce have never been adjudicated and Apple concedes it is not seeking adjudication now. And granting any relief would resolve the central merits dispute in this case — whether Plaintiff was terminated for protected activity or for "leaking" — without summary judgment, without evidence, and without briefing. Apple filed no proposed order because no enforceable order can be drafted.

3. The Court should decline Apple's request in its entirety and require Apple to file proper motions if it wishes to pursue any relief. The Plaintiff respectfully declines to participate in tomorrow's off-record phone call and asks any hearing include a record, evidence, public participation, and briefing.

# FACTUAL BACKGROUND
## THE PROTECTIVE ORDER

4. On July 2, 2025, the parties appeared before Magistrate Judge Westmore regarding Apple's request for entry of the Northern District's Model Protective Order. During that hearing, the Court described the protective order as a mechanism for handling documents produced in discovery: "Apple cannot refuse to produce the information once you have that protective order in place, because then you're — you know, you need to comply with the protective order regarding how you deal with any confidential information that is *produced* to you in this litigation." ( July 2, 2025 Tr. at 13:18-23). The Court explained that its purpose was to ensure "once they do *produce* it to you, you can't go and put it out there in the public." (Id. at 13:24-14:2).

5. Plaintiff objected that Apple's planned application of the order "appeared to be their attempt to do a summary judgment motion without summary judgment. They want to say they fired me for

something confidential, whether or not if it was confidential." (Id. at 6:22-24). The Court did not address this concern on the merits, stated it would not read the filings Plaintiff had submitted (id. at 13:4-7), and directed the parties to sign the order that day. (Id. at 18:10-14). Plaintiff signed. The protective order was entered at Dkt. 235. Plaintiff had previously filed a 205-page Motion to Quash (Dkt. 211) on May 13, 2025, raising *Garmon* preemption, NLRA violations, magistrate authority limits, prior restraint concerns, and the argument that the protective order would function as a gag order. Judge Chen denied the motion the following day (Dkt. 213), stating: "even if Apple designates certain ***documents*** as confidential, that does not bar Ms. Gjovik from contesting a designation." Dkt. 213 at 3.

## Apple's Designations

6.      Apple has never designated a single produced document under the protective order. Apple confirmed this in correspondence as recently as the week of February 10, 2026. Apple has withheld approximately 97% of the documents Plaintiff requested.

7.      Apple has used the protective order exclusively to designate portions of Plaintiff's own deposition testimony. On December 16, 2025, Apple designated pages 66 through 305 of a 336-page transcript — approximately 72% — under a blanket designation. The protective order prohibits "mass, indiscriminate, or routinized designations." This blanket designation remained in effect for 50 days.

8.      On February 4, 2026, Apple delivered narrowed designations on an unsigned, undated six-page PDF containing over 140 individually designated terms. Approximately 99% of the previously designated material was conceded to be non-confidential. The remaining designations included facially absurd terms such as the letter "N," the word "hardware," and existing Apple product names.

9.      The designations at the center of Apple's emergency letter are not product names or technology terms. They are designations of Plaintiff's testimony about her own body and her complaints about Apple's workplace practices — including "menstruation," "ovulation," "cervical mucus," and "measuring female employees' cervical mucus." Apple's counsel reviewed the deposition transcript, identified each instance where Plaintiff complained that Apple should not be asking employees about their menstruation, should not be monitoring employees' ovulation, and should not be studying employees' cervical mucus, and designated those complaints as Apple Confidential. The subject matter of the designations is inseparable from the protected concerted activity at issue in this case.

10.     All of this information is also already public information, the subject of employee workplace complaints, existing complaints filed to the government, subject matter in articles and website blog posts, public research studies, Apple's own marketing, academic articles, and so on.

The only thing Apple is claiming is secret is that this employee and her coworkers made these specific complaints about these specific things. Apple does not define what "harm" it claims to be suffering by this speech because that harm is simply the intended pressure for it to improve its work conditions for its employees, exerted by public criticism and scrutinize, only made possible by public disclosures.  This is also way labor law fully encourages employees to "publicize" exactly these kinds of labor disputes.

## The NLRB Charges and Settlement

11. In April 2025, Apple entered a national settlement agreement with the NLRB (Case No. 32-CA-284428 and related cases) requiring Apple to rescind overbroad confidentiality policies restricting Section 7 rights, to post a nationwide notice promising not to discipline employees for discussing working conditions, and not to enforce its "Proprietary Information" definition to the extent it covered terms and conditions of employment. The settlement included a self-executing default provision.

12. On February 16, 2026, Plaintiff filed NLRB Charge No. 32-CA-381277 (10 counts under Sections 8(a)(1) and 8(a)(4)) alleging Apple's confidentiality designations constitute unlawful work rules, including rules that "Employee 'menstruation' is Apple Confidential" and "Employee can't talk to NLRB about menstruation." On February 18, 2026, Plaintiff filed two additional charges alleging Apple's emergency request to the Court constitutes retaliation under Section 8(a)(4). Apple was served with the first charge on February 17, 2026. NLRB Region 32 Regional Director Christy J. Kwon confirmed docketing of the charge by letter dated February 18, 2026.

13. Apple's letter (Dkt. 280, fn. 2) cites the "Confidentiality and Intellectual Property Agreement" as independent grounds for suppressing Plaintiff's speech. This is the same agreement Apple promised the NLRB it would stop enforcing in the April 2025 settlement.

## The February 2026 Sequence

14. On February 17, 2026, Plaintiff filed a 74-page Notice of Pendency (Dkt. 278) notifying the Court that Apple's designations concerned Plaintiff's "anatomy, bodily movements, sexual activity and sex partners, and genital secretions," that this testimony arose from "Protected Concerted Activity," that the matter was for the NLRB under *Garmon* preemption, and that Plaintiff "refuses to acknowledge Apple's illegitimate claims to confidentiality."

15. On February 18, 2026, at 10:27 AM, Apple's counsel emailed Plaintiff demanding she "take these down immediately" — citing both the protective order and the IPA. At 1:09 PM, Plaintiff initiated the meet and confer on specific designations as required by the protective order. At 4:22 PM — three hours

after the meet and confer was initiated and before Apple had responded to a single designation challenge — Apple emailed the courtroom deputy requesting an emergency conference. Apple did not disclose this in its letter.

16. On February 19, 2026, Apple filed Dkt. 280 at 10:27 AM. At 12:27 PM, Plaintiff requested until Monday, February 23 to file an opposition. At 3:10 PM, the Court scheduled a conference for the following day, February 20 at 2:15 PM, without addressing Plaintiff's request. No opposition was permitted.

# ARGUMENT

## APPLE'S LETTER IS PROCEDURALLY DEFECTIVE FOR EVERY TYPE OF RELIEF REQUESTED

17. Each form of relief Apple seeks has its own required procedural vehicle. Apple used none of them.

18. **Sanctions** require a formal motion under Rule 11 (with a mandatory 21-day safe harbor, Fed. R. Civ. P. 11(c)(2)) or Rule 37, per N.D. Cal. Civil L.R. 7-8. Apple filed no motion, provided no safe harbor, and submitted no declarations or evidence.

19. **Contempt** requires a petition or order to show cause under 18 U.S.C. §§ 401-403 and Fed. R. Crim. P. 42(a), with notice of specific charges, reasonable time to prepare a defense, an evidentiary hearing with testimony under oath, opportunity for cross-examination, and proof by clear and convincing evidence (civil) or beyond a reasonable doubt (criminal). *International Union, UMWA v. Bagwell*, 512 U.S. 821, 832 (1994). Apple filed no petition. No evidence has been submitted under oath. No evidentiary hearing has been scheduled.

20. **A restraining order on speech** requires a motion under Fed. R. Civ. P. 65, with affidavits, a showing of irreparable harm and likelihood of success, balance of equities, and public interest analysis. *Winter v. NRDC*, 555 U.S. 7 (2008). Because the requested order would restrict speech, it is also subject to strict scrutiny under the First Amendment, with a heavy presumption of invalidity as a prior restraint. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Apple filed no Rule 65 motion. No affidavits. No First Amendment analysis.

21. **Compelled deletion of existing speech** requires a mandatory injunction under Rule 65 subject to a heightened standard, because mandatory injunctions alter the status quo. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). A court order compelling deletion of published speech must also overcome the First Amendment's presumption against prior restraints. Apple filed no motion and

made no heightened showing.

22.     **Sealing docket entries** requires a motion under N.D. Cal. Civil L.R. 79-5, with a showing of "compelling reasons" or "good cause" and a declaration explaining why sealing is warranted. The First Amendment and common law create a strong presumption against sealing. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006). Apple filed no motion to seal.

23.     Apple filed a five-page letter. For all six forms of relief. Apple is represented by Orrick Herrington & Sutcliffe and Morgan Lewis & Bockius — firms that know exactly what filings are required for each type of relief. The decision to proceed by letter rather than by motion was deliberate, because proper motions require proper process, which would expose the weakness of Apple's position.

## THE CONTENT AT ISSUE IS ALL PUBLIC AND PROTECTED INFORMATION

24.     The employer's motion for contempt fails at the threshold because the confidentiality designation underlying it is substantively invalid, and no contempt can issue for violating a designation that never should have been made. A unilateral confidentiality designation under a stipulated blanket protective order is not a judicial finding that information is in fact confidential — it is a provisional placeholder that the designating party must defend when challenged. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (party seeking protection via blanket protective order "typically does not make" the good cause showing required by Rule 26(c) for any particular document); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (burden remains on designating party to justify each designation when challenged); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) ("[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test").

25.     The Northern District of California's Model Stipulated Protective Order is explicit: the order's protections extend "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles," and "[t]he parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not — without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable — constitute good cause." N.D. Cal. Model Stipulated Protective Order § 1, § 13.2; *see also* C.D. Cal. Model Stipulated Protective Order (same).

26.     The order further provides that "[m]ass, indiscriminate, or routinized designations are prohibited" and that designations "made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the

Designating Party to sanctions." N.D. Cal. Model Stipulated Protective Order § 5.1. Applying these principles here, the employer — a technology company whose publicly known product line consists of menstrual and ovulation tracking software and bed-based vital-signs sensors — designated as "confidential" testimony in which the employee complained about being pressured to submit to employer-directed study of the employee's menstruation and cervical mucus, and about the employer requiring the employee's sexual partners to sign nondisclosure agreements with the company as a condition of sleeping in the employee's own bed. T

27.     he employer's purported justification — that this testimony relates to "confidential business development research" — cannot survive scrutiny. That a menstrual-health technology company conducts research related to menstruation is not a trade secret; it is the company's publicly marketed reason for a product lines existence. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984) (publicly disclosed product information cannot constitute trade secret). And the employee is not disclosing research methodology, proprietary algorithms, or study findings — the employee is complaining about workplace conduct directed at the employee's own body. The designation is facially pretextual.

28.     Even if the employee had disclosed the detailed transcript itself — rather than merely discussing, in general terms, the employee's own experiences and the fact that the employer designated complaints about those experiences as confidential — contempt still could not issue because the designation is invalid as applied to this content. The entire constitutional legitimacy of discovery protective orders depends on the limitation articulated in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984): such an order survives First Amendment scrutiny only where it "is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources."

29.     The employee's knowledge that the employer interrogated employees about the employee's menstrual cycle and cervical mucus, and demanded NDAs from the employee's sexual partners, was not "gained from" discovery — it was gained from the employee's own lived experience, which predated the deposition entirely. The N.D. Cal. Model Protective Order recognizes this distinction: its protections do not cover "any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party." N.D. Cal. Model Stipulated Protective Order § 3.

30.     Apple's interpretation of the Protective Order is not a protective order limited to the discovery context; that is a prior restraint on speech about the employee's own bodily autonomy and workplace treatment, imposed without any independent substantive basis and without the showing

required for injunctive relief. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("[t]he mere fact that production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records").

31.     Finally, the employer's attempt to weaponize the protective order as a silencing mechanism implicates serious public policy concerns that independently bar contempt. The employee's public statements constitute complaints about potential workplace harassment — specifically, intrusive employer monitoring of intimate bodily functions and coerced involvement of sexual partners in employer confidentiality regimes. Such complaints are protected activity under Title VII's anti-retaliation provisions, which protect employees who oppose practices they reasonably believe to be unlawful, including through public statements. *See* 42 U.S.C. § 2000e-3(a); *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271, 276 (2009).

32.     Congress and the California legislature have spoken directly to this issue: the federal Speak Out Act of 2022, Pub. L. No. 117-224, invalidates pre-dispute nondisclosure provisions that would prevent employees from discussing sexual harassment; California's Silenced No More Act, Cal. Gov. Code § 12964.5 (SB 331), prohibits provisions that prevent employees from disclosing information about unlawful workplace conduct including harassment and discrimination.

33.     A court order holding an employee in contempt for publicly complaining about employer-directed interrogation of the employee's menstrual cycle and sexual partnerships would accomplish precisely what these statutes forbid — and would do so through the mechanism of a stipulated discovery management tool that was never designed, and is not constitutionally permitted, to function as an injunction against speech about one's own body and workplace experiences. The contempt motion should be denied, and the court should consider whether the employer's designations and contempt threats themselves constitute sanctionable conduct under the protective order's anti-abuse provisions and potential retaliation under Title VII.

## MULTIPLE INDEPENDENT JURISDICTIONAL BARS PREVENT ANY RELIEF

34.     Even if Apple had filed proper motions, three independent legal bars strip the Court of jurisdiction to grant the requested relief.

35.     ***The Bankruptcy Automatic Stay.*** Plaintiff filed a Chapter 7 bankruptcy petition on July 21, 2025, in the United States Bankruptcy Court for the District of Massachusetts (Case No. 25-11496). The automatic stay under 11 U.S.C. § 362(a) operates as a federal injunction prohibiting "the commencement

or continuation ... of a judicial ... action or proceeding against the debtor" (§ 362(a)(1)) and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" (§ 362(a)(6)). Apple has actual knowledge of the bankruptcy. Apple retained bankruptcy counsel (Pillsbury Winthrop Shaw Pittman LLP) and filed an opposition (Dkt. 29 in the bankruptcy case) on September 11, 2025. A Notice of Pendency is concurrently filed for a Motion for Sanctions against Apple for violating the Bankruptcy Stay.

36.     Apple's letter seeks sanctions, contempt, injunctive relief, and compelled deletion against the debtor personally. Apple's letter also cites the IPA — a prepetition employment agreement — as independent grounds for the requested relief, constituting an attempt to enforce a prepetition claim. Each of these is a "proceeding against the debtor" or "act to collect a claim" within the meaning of § 362(a). Apple never sought stay relief from the bankruptcy court.

37.     In the Ninth Circuit, actions taken in violation of the automatic stay are void — not voidable. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571-72 (9th Cir. 1992). Any order this Court enters against Plaintiff as a result of Apple's letter would be a nullity. Apple's willful violation also exposes it to mandatory damages under § 362(k)(1). *See In re Hruby*, 512 B.R. 262, 274 (Bankr. D. Colo. 2014) (employer must seek stay relief before enforcing confidentiality provisions against debtor-employee).

38.     ***Garmon Preemption.*** "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). The Supreme Court preserved this holding in *Glacier Northwest, Inc. v. Teamsters Local 174*, 598 U.S. ___ (2023).

39.     Plaintiff's speech is at minimum "arguably" protected by the NLRA. Filing NLRB charges is protected by § 8(a)(4). Social media posts about workplace conditions are protected concerted activity under § 7. *See Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978) (Section 7 protects employee communications about working conditions to the public). Discussing the subject matter of NLRB charges publicly is protected under § 7. The NLRB has docketed Charge No. 32-CA-381277, with two additional charges pending, alleging the designations Apple seeks to enforce are unlawful work rules. The Court cannot adjudicate whether Plaintiff's speech violates the protective order without deciding whether it is protected concerted activity — which is the NLRB's exclusive province. The Court must defer.

40.     ***The Norris-LaGuardia Act.*** The Norris-LaGuardia Act provides: "No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this

chapter." 29 U.S.C. § 101. Section 104 specifically prohibits injunctions against "giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C. § 104(e).

41. Even where injunctive relief might theoretically be available in a labor dispute, § 107 requires testimony of witnesses in open court with opportunity for cross-examination, findings of fact filed by the court, and a finding of substantial and irreparable injury. 29 U.S.C. § 107. Apple's requested relief — restraining Plaintiff's speech about her NLRB charges, compelling deletion of posts about workplace conditions, and sanctioning her for discussing a labor dispute — falls within the Act's prohibition. The Court lacks jurisdiction to issue this relief through any procedure, let alone an unrecorded telephone conference.

42. ***California's Anti-SLAPP Statute.*** California Code of Civil Procedure § 425.16 provides that a cause of action arising from a person's exercise of free speech or petition rights in connection with a public issue is subject to a special motion to strike, with mandatory fee-shifting to the prevailing defendant. CCP § 425.16(b)(1), (c)(1). The Ninth Circuit applies the statute in federal court. *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999). Apple's request arises entirely from Plaintiff's protected activity under every prong of the statute: NLRB charges (statements before an official proceeding, § 425.16(e)(1)-(2)); blog posts and social media posts about workplace safety and employer surveillance of employees' bodies (statements in a public forum on issues of public interest, § 425.16(e)(3)); and communications with coworkers about working conditions (§ 425.16(e)(4)).

43. If Apple files proper motions as required — a Rule 65 motion for injunctive relief, a contempt petition, or a sanctions motion — each would constitute a cause of action arising from Plaintiff's protected speech and would be subject to a special motion to strike. Under the anti-SLAPP framework, the burden would shift to Apple to demonstrate a probability of prevailing on the merits. *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). Apple cannot meet this burden: Apple has submitted no evidence, concedes it is not seeking adjudication of the designations' validity, and multiple independent legal bars prevent any relief. Apple would also be liable for Plaintiff's attorneys' fees and costs. CCP § 425.16(c)(1).

44. This creates a structural problem for Apple's entire approach. Apple cannot obtain relief through a discovery letter (wrong vehicle). And if Apple files proper motions, those motions are subject to anti-SLAPP — which means burden-shifting, a probability-of-success requirement Apple cannot meet, and mandatory fee-shifting. The anti-SLAPP statute exists to prevent exactly what Apple is attempting:

using litigation to suppress a whistleblower's speech about workplace conditions and NLRB charges.

# THE MAGISTRATE JUDGE LACKS STATUTORY AUTHORITY

45.    Apple styled its request as a "discovery dispute" to route it to the magistrate judge through the Standing Order's letter procedure. The relief Apple seeks exceeds the magistrate judge's statutory authority. First, a magistrate judge cannot grant injunctive relief. 28 U.S.C. § 636(b)(1)(A) provides that a magistrate judge may determine any pretrial matter **"except a motion for injunctive relief."** Apple seeks a restraining order on future speech and an order compelling deletion of existing speech. These are injunctive relief regardless of how Apple captions them.

46.    ***A magistrate judge's contempt authority is sharply constrained.*** Under § 636(e), summary contempt is limited to misbehavior in the magistrate's presence. Social media posts are not conduct in the magistrate's presence. Criminal and civil contempt under §§ 636(e)(3)-(4) are available only where the magistrate presides with the consent of the parties, which is not the case here. For contempt occurring outside the magistrate's presence, the statute requires that the magistrate "certify the facts to a district judge," who then conducts the hearing and determines punishment. § 636(e)(6)(B)(ii).

47.    Even the Advisory Committee Notes to Fed. R. Civ. P. 73 confirm that "a hearing on contempt is to be conducted by the district judge upon certification of the facts and an order to show cause by the magistrate."

48.    Apple's own letter admits this exceeds discovery. Apple states that the underlying conduct "directly implicates the substantive issues" in the retaliation litigation and cites the IPA — a substantive contract claim — as independent grounds. Apple cannot simultaneously argue this is a routine discovery dispute and that it directly implicates the merits and involves contractual obligations independent of the protective order.

49.    The magistrate acknowledged her limited domain. At the July 2, 2025 hearing, the magistrate stated: "I want to make sure that I focus — stick to, you know, my domain which is discovery. Fortunately for me, I don't have to deal with all the rest of this case." (July 2, 2025 Tr. at 34:19-22). Apple is now asking the magistrate to do exactly what she said she does not do: adjudicate contempt, impose sanctions, issue a speech injunction, order deletion, and pre-determine substantive matters prior to Summary Judgement — none of which are discovery.

# THE PROCEEDINGS VIOLATE DUE PROCESS AND

# THE COURT'S STANDING ORDER

## Due process requires meaningful notice and an opportunity to be heard.

50.     The Fifth Amendment requires notice reasonably calculated to apprise a party of the pending action, a meaningful opportunity to be heard "at a meaningful time and in a meaningful manner," and a decision by a neutral decision-maker based on the record. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). A party must be given the opportunity "not only to present evidence, but also to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18 (1938).

51.     The amount of process due increases with the weight of the private interest at stake, the risk of erroneous deprivation, and the probable value of additional safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, the private interests — liberty (contempt carries the possibility of incarceration), property (sanctions), and fundamental First Amendment rights — are among the most weighty the law recognizes.

52.     Apple's letter was filed at 10:27 AM on February 19. The conference was scheduled for 2:15 PM the following day. Plaintiff received less than 24 hours' notice. Plaintiff requested until Monday, February 23 to file a written opposition — well within the five-business-day period the Court's own Standing Order provides. The request was not addressed.

## Contempt proceedings are quasi-criminal and require heightened protections.

53.     Because contempt is quasi-criminal in nature, due process requires: (1) specific written notice of the charges, (2) reasonable time to prepare a defense, (3) an evidentiary hearing with sworn testimony, (4) opportunity for cross-examination, (5) proof by clear and convincing evidence (civil) or beyond a reasonable doubt (criminal), and (6) a complete record for appellate review. *Bagwell*, 512 U.S. at 826-32; *Taylor v. Hayes*, 418 U.S. 488, 498-99 (1974); Fed. R. Crim. P. 42(a).

54.     A contempt order rendered without adequate notification is void. *In re Oliver*, 333 U.S. 257, 275 (1948). The right to counsel attaches. *Id.*; Fed. R. Crim. P. 42(a)(1)(A). Plaintiff is pro se. The accelerated timeline denied her any opportunity to seek legal assistance. Apple filed no sworn affidavits, no authenticated evidence, and no witness testimony. Apple's letter contains allegations, not evidence. A contempt finding cannot rest on unsworn allegations in a letter brief.

## Prior restraints on speech require the most demanding procedural protections.

55.     A prior restraint on speech is "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n*, 427 U.S. at 559. Prior restraints carry a "heavy presumption" against constitutional validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). The government bears the burden of overcoming this presumption through strict scrutiny.

56.     Social media gag orders have been repeatedly struck down. *See Shak v. Shak* (Mass. S.J.C. 2020) (social media posting ban struck down as impermissible prior restraint even where the compelling interest was protecting a minor child); *Rasawehr v. Bey* (Ohio S. Ct. 2020) (unanimously striking down social media deletion order). Internet speech receives full First Amendment protection. *Reno v. ACLU*, 521 U.S. 844, 870 (1997).

57.     Compelled deletion of already-published expression is arguably more extreme than a classic prior restraint, as it requires the speaker to affirmatively destroy her own speech. A mandatory injunction — one that compels affirmative action rather than merely prohibiting future conduct — requires an even higher showing than a prohibitory injunction. *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

58.     No First Amendment analysis appears in Apple's letter. No strict scrutiny has been applied. No opportunity has been provided for Plaintiff to brief these constitutional issues.

## The Court's Standing Order was not followed.

59.     The Standing Order requires: (1) meet and confer for five days; (2) if unresolved, one side files a letter; (3) the other side files an opposition; (4) the Court decides based on both submissions. Apple's own letter admits Plaintiff initiated the meet and confer and that Apple refuses to address the designations prior to requesting sanctions and findings contempt against the Plaintiff about the same designations it won't adjudicate (Dkt. 280 at 2). Prior to Apple responding to a single designation challenge, Apple emailed the courtroom deputy requesting an emergency conference — bypassing its own acknowledged obligation to complete the meet and confer process.

60.     At the July 2, 2025 hearing, the magistrate rejected Apple's proposal to require Plaintiff to obtain leave of court before filing oppositions. Plaintiff identified the strategy: "My interpretation of that is they basically want to put me on a vexatious petitioner list for motions, including discovery motions, and to have everything screened." The Court rejected this outright: "That's not happening. That's not what's happening." (July 2, 2025 Tr. at 25:24-26:6).

61.     The magistrate stated that denying opposition rights would "start to sound like interfering with the opportunity for both sides to be heard." (Id. at 35:25-36:2). She ordered five business days for any opposition. (Id. at 36:8-13). Apple's emergency letter achieved the same result the Court rejected: a conference the next day, no opposition filed, Plaintiff's request for time and briefing denied. The stakes? The Plaintiff's freedom of speech, bodily autonomy, constitutional right to be free of invasion of privacy, right to be free of harassment, professional reputation, economic future, and the merits of her litigation.

### The absence of a court reporter is independently disqualifying.

62.     Title 28 U.S.C. § 753 requires verbatim recording of court proceedings. The Norris-LaGuardia Act requires that any injunction in a labor dispute be based on "findings of fact made and filed by the court in the record of the case." 29 U.S.C. § 107. A private telephone call without a court reporter produces no record. No findings of fact can be filed. No transcript exists for the Ninth Circuit to review on appeal. The proceeding is effectively unreviewable. Plaintiff demanded a court reporter. Proceeding without one while considering contempt, sanctions, and speech injunctions would constitute an independent due process violation and grounds for mandamus.

### The Court told Plaintiff it lacks resources for discovery conferences — then scheduled one for Apple within 24 hours.

63.     At the July 2, 2025 hearing, when Plaintiff requested structured discovery conferences to manage Apple's conduct, the Court refused: "that is just not something that can happen. ... Our court does not have those kind of resources." ( July 2, 2025 Tr. at 26:11-18). The Court stated it "doesn't have the time" and suggested a special master at the parties' expense. (Id. at 27:8-9). When Apple emailed the courtroom deputy demanding an emergency conference seven months later — not to resolve a discovery dispute but to seek contempt, sanctions, and a gag order — the Court scheduled a conference the next day.

## THE DESIGNATIONS CANNOT BE ENFORCED WITHOUT BEING ADJUDICATED

### The Court cannot rule without seeing the content.

64.     Apple's letter asks the Court to find that Plaintiff disclosed "confidential information." But Apple did not file the allegedly confidential content under seal or at all. Apple's letter uses redactions to obscure the terms it claims Plaintiff improperly disclosed (Dkt. 280 at 2-3, screenshots with boxes) while simultaneously asking the Court to punish Plaintiff for disclosing those terms. The Court cannot grant

contempt, sanctions, or injunctive relief based on a party's bare assertion that something is "confidential" without examining the actual content. If Apple believed the content was genuinely confidential, the proper course was to file it under seal pursuant to Civil L.R. 79-5 so the Court could review it.

## THE DESIGNATED CONTENT IS NOT TRADE SECRETS OR PROPRIETARY INFORMATION.

65.     The NLRB charges — which Apple itself referenced in its letter — reveal what was actually designated. The "work rules" challenged include: "Employee **'menstruation'** is Apple Confidential," "Employees cannot talk about their **menstruation**," "Apple monitoring ee **menstruation** is secret," and "Employee can't talk to NLRB about **menstruation**." These are general descriptions of workplace conditions and employer conduct — the kind of information at the core of NLRA Section 7 protected concerted activity. They are not chemical formulas, source code, financial projections, or client lists. A protective order can govern the handling of documents produced in discovery. It cannot retroactively classify an employee's own lived experience and personal knowledge as someone else's trade secret.

## APPLE REFUSES TO SUBSTANTIATE ITS DESIGNATIONS WHILE DEMANDING ENFORCEMENT.

66.     Apple's own letter states it will address the validity of the designations "in due course." (Dkt. 280 at 2). But the Court cannot find a "violation" without first determining the designations are valid. The protective order contemplates that designations will be disputed — that is why it includes a challenge mechanism. Plaintiff initiated the meet and confer on the designations. Apple abandoned it and sought emergency relief instead. Apple is asking the Court to punish first and adjudicate later.

## THE PROTECTIVE ORDER GOVERNS DOCUMENTS IN LITIGATION — NOT A PARTY'S PUBLIC SPEECH.

67.     Both the magistrate and Judge Chen described the protective order as a document-handling mechanism. The magistrate stated at the July 2, 2025 hearing that the order governs "confidential information that is *produced* to you in this litigation." ( July 2, 2025 Tr. at 13:18-23). Judge Chen wrote that "even if Apple designates certain *documents* as confidential, that does not bar Ms. Gjovik from contesting a designation." Dkt. 213 at 3. Both courts used the word "documents." Neither contemplated that Apple would designate zero documents and use the order exclusively to designate an employee's spoken complaints about workplace practices, then seek contempt when the employee continued publicly discussing her own body and workplace experiences.

68.     A confidentiality designation under a protective order means designated deposition

excerpts must be filed under seal or with redactions in court filings, and access is limited per the order's terms. That is all a designation does. It governs how Apple's evidence appears on the Court's docket.

69.     It does not prohibit a party from discussing her own experiences on social media, publicizing the subject matter of her NLRB charges, petitioning the government about workplace safety concerns, or speaking publicly about her employer's conduct. Apple has never cited any provision of the protective order that prohibits a party from publicly discussing the general subject matter of designated material — because no such provision exists.

## DESIGNATIONS AND WORK RULES ARE DIFFERENT THINGS, AND APPLE IS CONFLATING THEM.

70.     When Apple claims its designations operate as a prohibition on Plaintiff's speech **outside of court** — that Plaintiff cannot discuss these topics on social media, in blog posts, in NLRB charges, or with coworkers — Apple is not enforcing a designation. Apple is imposing a work rule. The NLRB has repeatedly held that employer rules restricting employees from discussing the terms and conditions of their employment violate Section 8(a)(1) of the NLRA. *See, e.g., Banner Health System*, 362 NLRB 1108 (2015).

71.     The Board has specifically found that overbroad confidentiality rules — including rules that prevent employees from discussing workplace investigations, safety concerns, and health-related matters — are unlawful. Apple chose to treat its designations as work rules. Plaintiff warned Apple that this would result in additional NLRB charges. Apple did it anyway.

## APPLE ALREADY PROMISED THE NLRB IT WOULD STOP ENFORCING THESE EXACT PROVISIONS.

72.     In April 2025, Apple entered a national settlement agreement with the NLRB (Case No. 32-CA-284428 and related cases) requiring Apple to rescind overbroad confidentiality policies restricting Section 7 rights, post a nationwide notice promising not to discipline employees for discussing working conditions, and cease enforcing its "Proprietary Information" definition to the extent it covered terms and conditions of employment. The settlement included a self-executing default provision: upon non-compliance, the Regional Director would reissue the October 2024 complaint, Apple's allegations would be deemed admitted, its answer withdrawn, and the Board could enter a full remedy without trial.

73.     Apple's letter (Dkt. 280, fn. 2) cites the "Confidentiality and Intellectual Property Agreement" as independent grounds for suppressing Plaintiff's speech. This is the same agreement Apple promised the NLRB it would stop enforcing. Apple is citing to this Court the very agreement it told the NLRB it would no longer enforce, as independent grounds for suppressing Plaintiff's speech about

workplace conditions. This is a direct and documented violation of the settlement agreement, and the self-executing default provision means the consequence may be automatic.

## GRANTING RELIEF COULD RESOLVE CENTRAL MERITS IN LIEU OF SUMMARY JUDGMENT

74. Apple fired Plaintiff. Apple's defense is that Plaintiff was terminated for "leaking" confidential information about Apple's workplace studies. Plaintiff's surviving claims — including her *Tameny* wrongful termination claim, her Labor Code § 1102.5 whistleblower claim, and her § 96(k) claim — rest on the position that her public discussion of those studies was protected protest of invasions of privacy under the California Constitution, Article I, § 1. Whether Plaintiff's speech was "leaking" (Apple's defense) or "protected protest" (Plaintiff's position) is the single most contested issue heading toward summary judgment.

75. Apple's emergency letter frames the current dispute identically to its termination defense. Apple says Plaintiff "leaked" confidential studies in 2021 (the basis for termination) and is "leaking" the same studies now (the basis for the letter). If the Court finds Plaintiff in contempt for discussing Apple's studies publicly — or issues a restraining order prohibiting her from doing so — the Court is making a finding that public discussion of the studies is wrongful conduct, not protected speech. That is Apple's entire defense. And it would simultaneously foreclose Plaintiff's *Tameny* claim, which rests on the proposition that her discussion of the studies was constitutionally protected protest.

76. Apple would then argue at summary judgment: "The Court already found that Plaintiff's discussion of the studies violated the protective order and warranted contempt — the Court has already determined this speech was wrongful, not protected." Plaintiff's *Tameny* claim would be effectively dead before it reached the merits — resolved through a discovery letter and a telephone conference with no court reporter, without a Rule 56 motion, without a statement of undisputed facts, without evidence, without opposition, and without any legal standard applied.

77. Plaintiff warned the Court at the July 2, 2025 hearing that Apple's use of the protective order "appeared to be their attempt to do a summary judgment motion without summary judgment." (July 2, 2025 Tr. at 6:22-24). That is a precise description of what Apple's February 19, 2026 letter is attempting to accomplish. A contempt finding would also establish a breach of the IPA — giving Apple damages leverage it cannot currently obtain because the bankruptcy stay prohibits breach of contract claims and because the IPA was rescinded by the NLRB settlement. And it would prejudice the NLRB proceedings,

where three pending charges allege the designations are unlawful work rules. The Court would be issuing an advisory opinion on a matter within the NLRB's exclusive jurisdiction. The Court cannot adjudicate the merits of Apple's defense and Plaintiff's *Tameny* claim through a protective order enforcement action. That is what summary judgment is for.

# NO ENFORCEABLE REMEDY EXISTS

78.     Apple's letter includes no proposed order. This is not an oversight. Apple cannot draft an enforceable order because every version collapses under its own terms. Apple asks the Court to order Plaintiff to "take these down" without identifying any specific posts by URL, without distinguishing protected speech from allegedly designated content, and without specifying what "these" are. The Court cannot order deletion of unidentified content.

79.     Any speech injunction must "state its terms specifically and describe in reasonable detail the act or acts restrained." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Suppose the Court orders Plaintiff to stop discussing "confidential Apple studies." Does that prohibit her from saying "Apple monitors employees' health"? From saying "menstruation"? From describing her NLRB charges, which reference menstruation? From testifying before the NLRB? The "secret" is a common English word describing a universal biological process. No order can prohibit Plaintiff from discussing "menstruation" in the context of Apple's workplace studies without also prohibiting her from exercising her NLRA Section 7 rights, filing NLRB charges, or speaking about matters of public concern.

80.     An order would also create an unenforceable monitoring regime. Who reviews Plaintiff's social media for the word "**menstruation**"? Does the order cover private communications with coworkers (protected under Section 7), communications with the NLRB, or attorney-client communications in the bankruptcy? There is no limiting principle, no sunset provision, and no mechanism for enforcement.

# APPLE'S STRONGEST ARGUMENT FAILS

81.     The strongest version of Apple's position is: the protective order is a valid court order; Plaintiff knowingly disclosed designated material; the Court has inherent authority to enforce its orders; Plaintiff cannot unilaterally decide to ignore a designation because she disagrees with it. This argument fails for three reasons.

82.     First, the designation must be valid before there can be a violation. A confidentiality designation is a unilateral label applied by one party, subject to challenge. The protective order contemplates disputes — that is why it includes a challenge mechanism. A party who contests a designation

in good faith through the meet and confer process, through NLRB charges, and through public objection is not "violating" the order; she is using the processes available to challenge a designation she believes is invalid. Apple concedes it is not seeking a determination of validity yet. The Court cannot find a "violation" without first finding the designation was proper.

83. Second, even if the designation were valid, it would govern how material appears in court filings — not what a party may say in public. A protective order is not a gag order. Apple has never cited any provision of the protective order that prohibits a party from publicly discussing the subject matter of designated material when that material/knowledge comes from the person discussing it.

84. Third, even if the Court has inherent authority to enforce its orders, that authority does not override the bankruptcy automatic stay (which operates as a federal injunction), *Garmon* preemption (which divests the Court of jurisdiction over conduct arguably protected by the NLRA), or Anti-SLAPP Act, Silenced No More Act, or the Norris-LaGuardia Act (which strips the Court of jurisdiction to issue injunctions in labor disputes absent specific statutory prerequisites). The Court's inherent authority cannot override these independent federal limitations.

# PROCEDURAL HISTORY OF PLAINTIFF'S OBJECTIONS

85. Plaintiff has raised every issue in this opposition at every stage of these proceedings starting in 2024. At every stage, the Court declined to engage with the substance disbelieving that Apple would engage in the conduct she alleged.

86. On July 2, 2025, at the hearing where the protective order was adopted, Plaintiff warned that Apple's plan was "summary judgment without summary judgment." The Court did not address this concern, stated it would not read Plaintiff's filings — which included three NLRB charges and complaints (Exhibits B-D), the NLRB settlement agreement, the meet and confer transcripts (Exhibits H-I), and the Motion to Quash (Exhibit K) — and directed Plaintiff to sign the order that day, the order Apple now claims is a gag order that the Plaintiff violated by protected speech and subjects her to contempt findings.

87. On May 13, 2025, Plaintiff filed a Motion to Quash (Dkt. 211) raising *Garmon* preemption, NLRA violations, magistrate authority limits, First Amendment concerns, and the gag order argument. Judge Chen denied it the following day. During the May 2, 2025 meet and confer Apple's counsel stated that Plaintiff "could be held in contempt" for violating the protective order. Plaintiff warned this constituted prior restraint. At the July 2 hearing, the magistrate acknowledged Apple's aggressive litigation posture —

when Plaintiff described it as "Rambo lawyer procedure," the magistrate agreed: "It's like challenging you to a duel." ( July 2, 2025 Tr. at 44:4-13).

88.     Apple's counsel told the Court at that hearing that she could not agree to refrain from harassing Plaintiff during the deposition in a case with live intentional infliction of emotional distress claims: "There's always a condition to it. 'You have to agree not to harass me. You have to agree not to trigger me.' I can't agree to that when I'm doing this deposition." (Id. at 47:18-24). The designations from that deposition are now the basis for Apple's contempt request.

89.     On February 11, 2025, Plaintiff filed Discovery Objection Letters (Dkt. 162-166). On June 12, 2025, Plaintiff filed an Objection to Apple's Unilateral Discovery Letter (Dkt. 220). On February 17, 2026 — the day before Apple's emergency letter — Plaintiff filed the Notice of Pendency (Dkt. 278) describing the exact dispute, the exact subject matter, the exact legal framework, and the pending NLRB charges. The Court had this document on the docket before Apple filed Dkt. 280. This is a party who predicted exactly what would happen, warned the Court, was ignored, and is now facing exactly the consequences she warned about which risk to violate her core civil rights and basic freedoms.

# CONCLUSION

90.     Apple's emergency letter asks this Court to impose quasi-criminal sanctions, issue a speech injunction, and compel the destruction of published expression — all through a five-page discovery letter, a next-day telephone conference with no court reporter or evidence, and no opportunity for Plaintiff to file an opposition.

91.     The letter uses the wrong procedural vehicle for every form of relief sought. Multiple independent jurisdictional bars prevent any relief regardless of procedure. The magistrate judge lacks statutory authority. The proceedings violate due process and the Court's own Standing Order. The designations have never been adjudicate, represent public information and personal experiences, and Apple concedes it is not seeking adjudication of the underlying merits. Granting relief would resolve the central merits dispute without summary judgment. And no enforceable order can be drafted.

92.     If an Order was granted against the Plaintiff on Feb. 20 2026, it will be immediately appealed to Judge Chen, and if not resolved by Judge Chen, then appealed to the Ninth Circuit. This matter represents  the heart of this litigation and the labor dispute between the parties, and the outcome of this next day emergency private phone call, risks to undermine the entire proceeding, deprive the Plaintiff of her civil rights and liberties, and enable Apple to act like a tyrannical private government.

# RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. **Decline Apple's request in its entirety.** Apple's letter (Dkt. 280) does not comply with any applicable procedural requirement for any form of relief sought.

2. **Require Apple to file proper motions.** If Apple wishes to pursue any relief, Apple must file the appropriate motion under the applicable rule or statute — with proper notice, briefing, evidence, and opportunity for opposition — before the appropriate judicial officer.

3. **Require Apple to obtain stay relief.** Apple must seek and obtain relief from the automatic stay from the bankruptcy court (Case No. 25-11496, D. Mass.) before taking any action against the debtor. Any action taken without stay relief is void under Ninth Circuit law.

4. **Preserve the record.** If any conference proceeds, it must include a court reporter, briefing, and evidence, as Plaintiff has demanded, to preserve appellate review rights.

5. **Consider sanctioning Apple.** Apple's counsel conduct in the actions leading to this Opposition is sanctionable conduct.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed Feb. 20 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBITS

## EXHIBIT A: THE NLRB CHARGES



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

REGION 32                                    Agency Website:
1301 Clay Street, Suite 1510N                www.nlrb.gov
Oakland, CA 94612-5224                       Telephone: (510) 637-3300
                                             Fax: (510) 637-3315



Download
NLRB
Mobile
App

February 18, 2026

ASHLEY MARIE GJOVIK
2108 N STREET, SUITE 4553
SACRAMENTO, CA 95816

                              Re:     **Apple Inc.**
                                      **Case 32-CA-381277**

Dear Ashley Marie Gjovik:

The charge that you filed in this case on February 16, 2026 has been docketed as case number 32-CA-381277.  This charge has **not** yet been assigned to an investigator.  This letter outlines the required information and evidence you initially need to provide, explains your right to be represented, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Required Information and Evidence:** As the party who filed the charge in this case, it is your responsibility to present evidence in support of your allegations.  Accordingly, please submit the following information to our office **using the Agency's e-filing system at www.nlrb.gov no later than close of business on Wednesday, March 4, 2026**.

- A chronological outline or timeline of the relevant sequence of events and exchanges (verbal and in person communications) related to the charge allegations.  Include the names and titles of any involved Union and/or Employer representatives;

- Complete enclosed questionnaire;

- Relevant documentation related to the allegations in the charge as well as supporting communications and documents such as letters, e-mails, text messages, phone records, etc.; and

- A list of the witnesses you intend to present, their contact information (e-mail and phone) and a brief summary of each witness's testimony.

Apple Inc.                                    - 2 -                    February 18, 2026
Case 32-CA-381277

**This information must be returned to this office by Wednesday, March 4, 2026.  Please e-file the information as "Evidence" and select "Charging Party" as the Participant Type when prompted.**  If the above information is not received by then, your charge may be subject to dismissal because of your failure to cooperate in the investigation.  If the charge is dismissed, you will receive a dismissal letter.  The charged party will also receive a copy of the dismissal letter.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us.  If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*.  This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board.  Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** If affidavits are taken in this case, please note it is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits.  Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov.  This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements.  The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please email **R32-Investigation@nlrb.gov**. If you have emailed and not received a response, you may contact **Information Officer** by leaving a message at **(510) 637-3300**. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

Apple Inc.          - 3 -          February 18, 2026
Case 32-CA-381277

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. To ensure that you receive important case-related correspondence, **you must provide this office with your preferred email address.** These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact this office to discuss the circumstances that prevent you from using email.

**Controlled Unclassified Information (CUI):** This National Labor Relations Board (NLRB) proceeding may contain Controlled Unclassified Information (CUI). Subsequent information in this proceeding may also constitute CUI. National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

\* \* \*

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

Christy J. Kwon
Regional Director

Enclosures:

1. Confidential Witness Questionnaire Regarding Alleged Discrimination at Work Based on Protected Concerted Activities.
2. Questionnaire Regarding Unlawful Work Rules.

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| | DO NOT WRITE IN THIS SPACE |
|---|---|
| Case | Date Filed |
| **32-CA-381277** | **02-16-2026** |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. |
|---|---|
| Apple Inc | (408) 996-1010 |
| | c. Cell No. |
| | f. Fax. No. |

| d. Address *(Street, city, state, and ZIP code)* | e. Employer Representative | g. e-mail |
|---|---|---|
| One Apple Park Way | Tim Donald Cook | |
| | CEO | tcook@apple.com |
| CA Cupertino 95014 | | h. Number of workers employed |
| | | 500 |

| i. Type of Establishment *(factory, mine, wholesaler, etc.)* | j. Identify principal product or service |
|---|---|
| Computer Hardware | Consumer technology |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections) 1,4 of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Ashley Marie Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. |
|---|---|
| | (415) 964-6272 |
| | 4c. Cell No. |
| | (415) 964-6272 |
| 2108 N. St Ste. 4553 | 4d. Fax No. |
| CA Sacramento 95816 | |
| | 4e. e-mail |
| | ashleymgjovik@protonmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION | Tel. No. |
|---|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | (415) 964-6272 |
| | Office, if any, Cell No. |
| *(signature of representative or person making charge)*    Ashley Marie Gjovik | (415) 964-6272 |
| | Fax No. |
| *(Print/type name and title or office, if any)* | |
| 2108 N. St Ste. 4553 | e-mail |
| Address Sacramento CA 95816    Date 02/16/2026 11:59:50 PM | ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threats, gag orders, denylisting, & retaliation | |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threats, gag orders, denylisting, & retaliation | |

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threats, gag orders, denylisting, & retaliation | |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Unlawful surveillance |
| Unlawful seven-week gag order on PCA |

| |
|---|
| Unlawful gag order on PCA about bodily autonomy |
| Unlawful demand for prior "whitelisting" of PCA |
| Unlawful prohibition on filing Board charges |
| Violation of Settlement Agreement |

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| | DO NOT WRITE IN THIS SPACE |
|---|---|
| | Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Apple Inc | | b. Tel. No.<br>(408) 996-1010 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way<br><br>CA Cupertino 95014 | e. Employer Representative<br><br>Tim Donald Cook<br>CEO | g. e-mail<br>tcook@apple.com |
| | | h. Number of workers employed<br>500 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Computer Hardware | j. Identify principal product or service<br>Consumer technology | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 4,1 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Ashley Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br><br>2108 N. St Ste. 4553<br>CA Sacramento 95816 | 4b. Tel. No.<br>(415) 964-6272 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax. No. |
| | 4e. e-mail<br>ashleymgjovik@protonmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| *(signature of representative or person making charge)* | Ashley Gjovik<br>*(Print/type name and title or office, if any)* | Tel. No.<br>(415) 964-6272 |
|---|---|---|
| | | Office, if any, Cell No. |
| Address 2108 N. St Ste. 4553<br>Sacramento CA 95816 | Date 02/18/2026 01:29:53 PM | Fax No. |
| | | e-mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of unspecified reprisals | 02/18/2026 |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Employee "menstruation" is Apple Confidential |
| Employees cannot talk about their menstruation |
| Apple asking ee''s abt their menstruation is secret |
| Apple monitoring ee menstruation is secret |
| Apple "studying" ee menstruation is secret |
| Social media posts abt menstruation are forbidden |
| Employee can''t talk about subject of NLRB charges |
| Employee can''t talk to NLRB about menstruation |

**Additional Information in Support of Charge**

**Charging Party Name :** Ashley Gjovik
**Inquiry Number :** 1-3771297801
**Date Submitted :** 02/18/2026 01:29:53 PM

Please provide a <u>brief</u> description of the specific conduct involved in your charge. The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed. After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

**Additional Information Provided:**
On Feb. 18 2026 Apple's lawyers emailed Charging Party the following: "It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward."
This was retaliation for Charging Party filing 32-CA-381277 on Feb. 16 2025.
The Twitter post they are assumably referencing is "This is a copy of part of the subpoena Apple is sending to all of my doctors and medical providers demanding ten years of records & asking a court to compel me to "consent" to waiving my HIPAA rights, while concurrently claiming my testimony about my own menstruation is their IP." from Feb. 10 2026 (https://x.com/twitter/status/2021323637106802879) which has 95.9K
Views, 2.2k Likes, and 371 Retweets. It referenced the subject matter of Charge No. 32-CA-381277 and Apple was served notice of Charge No. 32-CA-381277 and its subject matter on Feb. 17 2026.
My response to Apple today was: "Hello agents of the Employer and Charged Party, Apple Inc, Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now. You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations." Apple has violated the Act again and has shown no intention to stop violating the Act. Apple is also in gross violation of the April 2025 Settlement Agreement.

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| | DO NOT WRITE IN THIS SPACE |
|---|---|
| | Case / Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer<br>Apple Inc | b. Tel. No.<br>(408) 996-1010 |
|---|---|
| | c. Cell No. |
| | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way<br><br>CA Cupertino 95014 | e. Employer Representative<br><br>Tim  Donald Cook | g. e-mail<br><br>tcook@apple.com |
| | | h. Number of workers employed<br>500 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* | j. Identify principal product or service |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 4,1 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Ashley Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br><br>2108 N. St  Ste. 4553<br>CA Sacramento  95816 | 4b. Tel. No.<br>(415) 964-6272 |
|---|---|
| | 4c. Cell No.<br>(415) 964-6272 |
| | 4d. Fax No. |
| | 4e. e-mail<br>ashleymgjovik@protonmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

| **6. DECLARATION**<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>*(signature of representative or person making charge)*   Ashley Gjovik<br>*(Print/type name and title if office, if any)*<br><br>2108 N. St  Ste. 4553<br>Address  Sacramento  CA 95816          Date 02/18/2026 06:04:56 PM | Tel. No.<br>(415) 964-6272 |
|---|---|
| | Office, if any, Cell No.<br>(415) 964-6272 |
| | Fax No. |
| | e-mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

# Basis of the Charge

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Asking a court to sanction the employee | 02/18/2026 |
| Ashley Gjovik | Asking Court to force ee to delete blog posts | 02/18/2026 |
| Ashley Gjovik | Asking a court to issue gag orders of the ee | 02/18/2026 |
| Ashley Gjovik | Asking court to force ee to delete social media | 02/18/2026 |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from forming, joining, or supporting a labor organization.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Cannot post on social media about NLRB charges |
| Cannot make blog posts about NLRB charges |
| Cannot talk to coworkers about NLRB charges |
| Cannot speak to the public about NLRB charges |

## Additional Information in Support of Charge

**Charging Party Name :** Ashley Gjovik
**Inquiry Number :** 1-3771439331
**Date Submitted :** 02/18/2026 06:04:56 PM

Please provide a <u>brief</u> description of the specific conduct involved in your charge. The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed. After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

**Additional Information Provided:**
On Feb. 18 2026, only hours after being notified of the earlier NLRB charge filed against Apple the same day, and after receiving an email from the employee Charging Party warning Apple that if they do not cease their unlawful conduct, that the employee will file additional NLRB charges for each additional violation, Apple then (in violation of court rules and orders) sent an abrupt off-docket email to a Judge's staff demanding an urgent "conference" and to have the employee sanctioned for her speech on social media, blog posts, and other forums about her recent NLRB charges, the subject of her complaints, and her protest of Apple's violation of the NLRA and the settlement agreement with the NLRB. Apple requested court ordered gag orders, the court to compel the employee to delete her social media and blog posts, and other retaliatory actions and suppression of protected speech. Apple's basis for this included directly citing the unlawful Intellectual Property Agreement that was the basis of the NLRB settlement and which Apple had promised to stop enforcing or threatening to enforce.

for Dec. 16 2025. (Exhibit C). The Plaintiff appealed the dismissals and the appeal is pending. On Nov. 21 2025, the NLRB Board Agent notified the Plaintiff that Apple "has expressed a strong interest in settling the cases." (Exhibit B). NLRB has not provided the Plaintiff additional information, Apple's counsel is this case have not commented on this, and Apple's separate counsel in the NLRB matter refuse to communicate directly with the Plaintiff.

# U.S. National Labor Relations Board
## (Feb. 16 2026 Charge)

On Feb. 16 2026 the Plaintiff filed new NLRB charge against Apple (Inq. No. 1-3770086421). (Exhibit D). The charge primarily covers Apple's conduct related to this litigation, including Apple creating and maintaining a seven-week-long gag order they used against the Plaintiff regarding her speech about subject matter expressly protected by the NLRA: including, her protests about Apple violating the NLRA, testimony about NLRB proceedings, and testimony about Protected Concerted Activity with her coworkers at Apple.

Further, Apple's conduct during the deposition included threats and unlawful work rules that expressly stated the Plaintiff required Apple's prior authorization before speaking with coworkers about work conditions, attempted to enforce the same policy terms Apple settled with the NLRB and the Plaintiff in April 2025 promising to withdraw those terms and not enforce them, and Apple repeatedly asked the Plaintiff why she thought she had a right to speak about work conditions or organize with her coworkers and complained when she tried to speak about labor rights during the deposition.

The Plaintiff mentioned this generally prior in the parties' Jan. 6 2026 Joint Status update ("*Defendant continues to abuse privilege and confidentiality claims and engaged in conduct during the Dec. 2025 deposition that likely violated the NLRA at least twice.*" Dkt. 269 at p. 9).

Subsequently, Apple finally narrowed its confidentiality designations beyond a blanket claim covering multiple hours regardless of the content of the speech captured in its general decree of secrecy; however those designations included and centered around the Plaintiff's anatomy, bodily movements, sexual activity and sex partners, and genital secretions. Worse, this testimony arose when the Plaintiff was complaining about Apple violating employee privacy related to these topics and was referencing Protected Concerted Activity where she was advocated on behalf of Apple employees for Apple to cease its improper

conduct and to respect the privacy and bodily autonomy of its employees.

This is all clearly a matter for the NLRB to review and this Court would have limited jurisdiction under *Garmon* preemption and the *Machinists* doctrine, but Apple also insisted that the discovery Magistrate Judge actually had exclusive jurisdiction to hear all of issues while Apple concurrently would claim the underlying subject matter of it designation is confidential and so they cannot tell the Judge that Apple's very secret designation is actually about the Plaintiff's "cervical mucus."

Ultimately, this was also another violation and illegal work rule by the Defendant attempting to forbid the Plaintiff from participating in NLRB Proceedings or from filing additional charges. The Plaintiff refuses to acknowledge Apple's illegitimate claims to confidentiality and accordingly has already shared its improper claims with her coworkers so they are aware of their employer's ongoing misconduct. She also indicated that if Apple moves to enforce its illegal destinations or punish her for exposing their most recent NLRA violations, she will file an additional NLRB charge, and, well, *turtles all the way down*.

## U.S. NATIONAL LABOR RELATIONS BOARD (NORTHEASTERN UNIVERSITY CHARGES)

Apple's counsel has recently indicated they intend to inject another NLRB matter into this Court's proceeding, with an adjudication against a different Employer (Northeastern University), and to raise legal and factual issues arising out of that external case with that non- party as part of this instant proceeding. Thus, the Plaintiff notifies this court she has pending NLRB charges against Northeastern University with a partial decision of merit issued in 2025 and an appeal pending for charges which the NLRB Board Agent previously said represented "the most extreme direct evidence of retaliation they had ever seen," prior to abruptly and inexplicably dismissing the same parts of those charges, promptly following the nomination of Apple's own defense counsel as the new NLRB General Counsel.

The NLRB case numbers are 01-CA-342355 & 01-CA-350371. Among other issues, the Plaintiff has complained for some time that there is strong circumstantial evidence indicating that Apple's lawyers conspired with counsel for Northeastern University regarding the university's retaliation against the Plaintiff, including the abrupt termination of her employment while she was on protected medical leave, suffering a severe nervous breakdown in the summer of 2024 due to the concurrent retaliation by the university and Apple. That alleged interference is now documented in the Plaintiff's Feb. 16 2026 NLRB

**Ashley M. Gjovik, JD**
*In Propria Persona*
San Jose, California
2108 N St. Ste. 4553
Sacramento, CA, 95816
legal@ashleygjovik.com

# UNITED STATES

## NATIONAL LABOR RELATIONS BOARD

**ASHLEY M. GJOVIK,**

*an individual*,


Charging Party,


&


**APPLE INC.,**

*a corporation,*


Charged Party.

Case No. _____

Respondent: Apple Inc.


**NLRB CHARGE
COVER LETTER
FEB. 16 2026**

# UNFAIR LABOR PRACTICE CHARGE COVER LETTER

**Re: Unfair Labor Practice Charge Against Apple Inc.**

**Charging Party**: Ashley Gjovik

**Charged Party:** Apple Inc., One Apple Park Way, Cupertino, CA 95014

## I.    INTRODUCTION

1.     On Feb. 16 2026, I filed a new unfair labor practice charge against Apple Inc. alleging violations of Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (a)(4). This filing presents TEN COUNTS:

2.     <u>Regarding the DECEMBER 16 2025 DEPOSITION, the Employer ordered:</u>
- (1) Retaliatory gag orders about and following Protected Concerted Activity;
- (2) A **seven-week** long gag order and prohibition on Protected Concerted Activity;
- (3) Unlawful work rules issued through confidentiality designations of deposition testimony about working conditions, discussing of Protected Concerted Activity, and the subject of NLRB charges/cases;
- (4) Continued threats and enforcement of rescinded confidentiality and work policies (including the IPA, Misconduct and Discipline policy, and others) and in retaliation for Protected Concerted Activity.
- (5) Issuance of work rules and enforcement of prior work rules in violation of the April 2025 National Settlement Agreement in Case 32-CA-284428 (again);
- (6) Unlawful work rules conditioning the right to protest or discuss the employer's unlawful surveillance on whether the coworker was also subjected to the same unlawful conduct by the employer;
- (7) Accusing the employee of "leaking" to a coworker when the employee and coworker were expressly discussing ways to improve work conditions;

3.     <u>Regarding THE EMPLOYEE'S EMPLOYMENT, the employer conducted:</u>
- (8) Years of unlawful surveillance of the employee through "whitelisting" of the employee's personal device for continuous 24/7 audio, video, biometric, and GPS capture, only recently admitted to the employee and while claiming the actions were lawful and it was misconduct for the employee to protest;

4.     <u>Regarding THE TERMINATION OF THE EMPLOYEE'S EMPLOYMENT AND ONGOING DENYLISTING:</u>
- (7) Threatening to cite the employee's subsequent employer's termination of the employee's

employment in order to deny the employee remedies for this employer's unlawful retaliation and in further retaliation for the employee's protected activity, after the employer ordered that subsequent employer to terminate the same employee, and the subsequent employer did terminate the employee, driving the employee in Chapter 7 bankruptcy and homelessness.

Regarding THE EMPLOYEE'S PARTICIPATION IN BOARD PROCEEDINGS:
- (10) Declaring the employee's only recourse for NLRA violations is "confidential" memos to the Charged Party, and "sealed" escalations to a Magistrate Judge; banning the employee from filing NLRB charges.

This charge is filed on February 16, 2026, within the six-month limitations period under Section 10(b) for all allegations.

1. **Count: Retaliatory Gag Order Immediately Following Protected Concerted Activity Discussing the Settlement Agreement**

5.    During the Dec. 16 2025 Deposition I exercised my rights under the NLRA, repeatedly mentioned the NLRA, and repeatedly objected to the Employer's line of questioning as potential violations of the NLRA.

6.    The Employer then responded by declaring anything I said going forward was now "*Confidential*" indicating I could face Contempt of Court and Sanctions if I was to share the Employer's questions or the content of my statements with anyone else including coworkers, the public, or the NLRB. Part of this exchange is at Exhibit A and an excerpt is below:

- Employer: "…I'm asking you now whether you understood that conduct warranting immediate termination could include violating confidential… information obligations…."
- Me: "Asked and answered. · I already said I don't understand that."
- Employer: "You did not understand that that was a policy violation?"
- Me: "Well, I understand that it's on the policy as written, as stated, but I don't understand what it means."
- Employer: "You don't understand what it means to violate your confidential… information obligations?· Is that what you're saying?"
- Me: "Asked and answered.· I already said I don't. And [objection, the] NLRB… said those terms were unlawful and that Apple could no longer enforce them and had to withdraw them from their policies."
- Employer: "I'm going to designate the next section of this deposition as

confidential pursuant to the protective order. Any... testimony you give until I say it's not confidential pursuant to the protective order is going to be covered by the protective order.· Do you understand that?"

- Me: "No.· How can you claim that my statements are confidential if what I said is not confidential?"
- Employer: "...I'm designating this as confidential pursuant to the protective order.· And if you disagree, then follow the procedures in the protective order."
- Me: "... But, Melinda, I don't think you can just say -- you don't know what I'm going to say and if I say stuff that's clearly not confidential, you just can't proactively say it's confidential.... You can't just proactively say that something is confidential when I'm actively talking about the NLRA saying that Apple is misusing confidentiality terms... to hide protected statements and then you're saying whatever I say next is under a confidentiality order without knowing what I'm going to say.· That's not right, Melinda.· I object."
- Employer: "...The following portion of the deposition is designated as confidential pursuant to the protective order."

[Exhibit A].

## 2. Count: Unlawful Seven-Week Gag Order

7.     Apple abused the Protective/Confidentiality Order in the civil lawsuit to declare Protected Concerted Activity was "confidential" and to put a six-week gag order on me about my Protected Concerted Activity, Apple's NLRA violations during that deposition and prior, and Apple's misuse of the Court's order.

8.     This was the same Order that Apple insisted on having in the civil litigation, for which I objected in that litigation, escalated to the US Judge, requested injunctive relief from the Ninth Circuit to block, and for which I filed a Charge with the NLRB about, certain that Apple would use it to restrict my Protected Concerted Activity and to violate the NLRB Consent Agreement.

9.     During the deposition, Apple responded to my objections and my exercise of my rights by asking for a Court to waive Apple's liability for its plan to engage in such severe harassment of me in that litigation that Apple believed it would drive me to commit suicide. Apple's lawyer indicated it was Apple's lawyer "job" to harass me

to the point of suicide.

10.    Apple further asked the Judge to order me not to complain about Apple's harassment that could cause me to kill myself or to communicate if I want to kill myself. The Judge then ordered me to not express "emotions" and consoled Apple for their distress about hearing my objections to their conduct while they engaged in conduct they themselves admitted on the record they thought would foreseeably drive me to commit suicide. Apple then demanded a confidentiality order to censor my speech about my protected disclosures and their misconduct, and applied it to my Protected Concerted Activity.

11.    Apple has now used this Protective Order (that the same Judge then pressured me and coerced me to "stipulate to" against my will, at the same time the statements above were made about driving me to suicide), to declare that roughly 72% of Appe's deposition of me was considered by Apple to be "Confidential." (pages 65-234 were marked confidential, with the entire transcript ranging from page 8 to page 344, and totally 336 pages).

12.    Apple's lawyers repeatedly argued it had a right to pre-declare an entire portion of the deposition to be confidential regardless of what was said, and that any objection I had must go through the "Protective Order" process after the fact. When I objected during the deposition and insisted Apple's counsel follow the rules, Apple's counsel declared I was being uncooperative, and instead I must continue as Apple ordered. Apple finally agreed to narrow their claims but only after the fact, and they took seven weeks (50 days). All of Apple's conduct violated the Order.

13.    The Protective Order expressly said that "for testimony given in deposition... the Designating Party identify on the record, before the close of the deposition...  all protected testimony" (5.2(b)) however, any designation must be limited "to specific material that qualifies under appropriate standards... so that other portions of... communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order." (5.1). The Order further states "mass,

indiscriminate, or routinized designations are prohibited." (5.1).

14.    Apple insisted that it was authorized by the order to declare anything said from that point on was "Confidential," use that Confidentiality claim on over 70% of the deposition, and leave that claim as a gag order for 7 weeks, covering content that ultimately 99% of which even Apple admitted was not confidential.  Apple finally produced its list of narrowed Confidentiality designations on Feb. 4 2026, seven weeks (fifty days) later. Until that point, Apple claimed that entire 72% of the deposition transcript was Confidential on par with Trade Secrets and proprietary information.

### 3. Count: Prohibition on Discussing Work Conditions Related to Employer Studies on Genitals, Sexual Intercourse, and Bodily Secretions

15.    The "narrowed" confidentiality claims that Apple communicated on Feb. 4 2026 were on a six-page PDF that was not dated or signed and which Apple refused to email to me directly. They emailed it to the Court Reporter and said it was for "my awareness." When I demanded they serve me a copy directly, and sign and date it, they refused. I asked multiple times and they would not sign or date it, or send it to me directly, but did claim that was Apple narrowing its Confidentiality claims.

16.    Apple also insisted my only recourse was to write them a memorandum arguing why I do not think Apple's claims are justified and why I think each disputed item is not confidential, and if we do not agree, Apple will escalate the matter to the Judge who coerced me to enter that Protective Order while currently issuing a gag order against me to not have "emotions" and to not complain or warn anyone if Apple was to drive me to suicide. This same Judge has denied every request I've filed and found in favor of Apple for everything Apple has requested.

17.    Apple's recent confidentiality claims included a final list of over 140 items—including clearly arbitrary terms like the letter "N" and the term "hardware," immaterial codenames, and general engineering development phrases – none of which is confidential, but is also not material to this matter or the retaliation case and

accordingly is not raised here.

18.     What is material here is Apple is claiming the very subject matter of my Protected Concerted Activity is "confidential." Additionally, many of the terms Apple is claiming are "confidential" are highly sensitive, personal, and protected subject matter under a variety of other laws including the terms: "

19.     Examples of deposition transcript content that Apple designated was "confidential" for seven weeks, and then expressly claimed terms and the subject matter was "confidential" include:

### NLRA Violation, Example One:
- Employer: (did you tell your manager you didn't want to do that study?)
- Employee "…I was complaining more generally of, like, Apple is doing some really invasive stuff that seems weird.· Like when they were doing the ovulation study or they were asking females to measure our cervical mucus.· I was pointing out, like, I think Apple is crossing some lines --
- (Court Reporter asks for clarification)
- Employee: "They were doing ovulation studies where they were measuring female employees' cervical mucus, and I said I think that's too far.
- Employer: "….Were there other studies that you were asked to participate in that you said, no, thank you?"
- Employee: "Yes.· There was one that I had signed up for and pulled out because I didn't realize the terms until it was underway and it bothered me, … it's a sensor on the bed where you're sleeping and it's monitoring your vitals… But Apple asked for NDAs of any cosleepers.· So if you were to ever have anyone over like if you were dating and wanted to have sex with them or they're going to sleep in your bed, they had to get registered with Apple and sign an NDA … if they were to be there, and I found that very disturbing."

**Deposition Transcript pages 164-165 (entirely "confidential" for 50 days).**
Apple's active confidentiality claims include: **"ovulation study or they were asking females to measure our cervical mucus," "ovulation," "measuring female employees' cervical mucus,"** and **"ovulation."**

### NLRA Violation, Example Two:
- Employer:  "Was there anything else you said to [Supervisor] about your unhappiness with studies that Apple was doing?"
- Employee: Yeah.· I think it was generally just kind of like a --  we need a boundary here of what --

- because, you know, I would do a lot of the LiveOn on, like, … And that's a lot different than my employer asking to request status of my cervical mucus.· And so it was kind of, like, I feel like we need to sort as a company what we're doing here generally and using myself as kind of case study of my reaction to some of those requests.· But as -- I don't remember them ever really doing anything different, and I remember even making privacy, kind of, invasion complaints even I think, like, in May 2021 –"

- Employer: "Way beyond my question."

**Deposition Transcript pages 170. (entirely "confidential" for 50 days).**

Apple's active confidentiality claims include: "**my cervical mucus**"

## NLRA Violation, Example Three:

- The Employer asked me about my protests about the ear scans: "what did you feel invasive about an ear scanning study?"
- Employee: Ears are very personal, and they are an -- they're an orifice.· You know, it's a bodily orifice.· It's kind of like the mucus – the cervical mucus secretion.· Not as bad as that one, but it's like that -- that's something that's so personal that it doesn't seem appropriate for an employer to ask.· And because I participated in these studies, I know that it involves pressing up against my body, putting things, like, on my body. Things where I'm like -- like I mentioned earlier, physically  uncomfortable during the process, even somewhat painful.· And like the thought of – and they can last a long time.· So, like, the thought of Apple spending a bunch of time scanning, like, the inside of my ears and my ears made me have a visceral reaction that I didn't want that.· And that I was also why I just -- I said no.· That was one of the very few things I said no expressly in email. I said no.· I think I made an excuse, like, I'm too busy, but I'm not going to do that.· And then Apple wanted to keep -- they're going to keep these images of our ears.· And they bragged publicly earlier that they had the biggest, like, ear library in the world, and that was concerning to me.· It's concerning to me that they'd brag about that, and I don't want my ears in their giant ear library.· You know, like, my ears are personal to me.· I don't want them to just be in a library of ears.
- Employer: "Okay."
- Employee: "And because I had said no and they asked three times in a very short period of time, I was -- I was wondering why are they asking me so much, and it looked like it was going to an email group, but you don't really know who is on what group.· And so I was -- I was disturbed about them still wanting to scan my ears.
- Employer: Do you agree that posting these emails was a breach of your confidentiality agreement with Apple?
- Employee: No, I don't agree.
- Employer: And why not?

- Employee: …None of this is -- none of that was even secret information.· And I was complaining about something that I thought was an invasion of privacy.· I have a constitutional right to privacy in this great state of California where I can protest about my employer trying to invade my privacy…   And I wanted them to stop doing this kind of stuff, and this was the exact same time I was calling out other conduct and systemic issues at Apple that I did not approve of and wanted them to reform on, and so this fit with me trying to call out stuff that I thought crossed a line….”

**Deposition Transcript pages 236-238). (entirely "confidential" for 50 days).**
Apple's active confidentiality claims include: "<span style="color:red">**mucus -- the cervical mucus secretion**</span>"

20.     Apple     claimed     confidentiality     and     some     sort     of     business interest/ownership rights to my own testimony, my own words, describing my complaints about invasive workplace practices directed at me and my coworkers' bodies, my organizing activity with and on behalf of coworkers, my protected disclosures and advocacy, and my genital secretions and sexual activity.

21.     Apple does not own my vagina, has no legitimate interest in who I have sex with, and its outrageous Apple would even imply it could make these claims, let along expressly argue these claims on an unsigned PDF and demand I be the one to argue why Apple employees' genital secretions are not Apple Confidential.

### 4. COUNT: CONTINUED ENFORCEMENT OF RESCINDED POLICIES

I filed NLRB charges (Case 32-CA-284428 and related cases), resulting in a General Counsel complaint and national settlement. I filed a federal retaliation lawsuit where I invoked NLRA and other rights during the deposition. All of this is protected under Section 7 and Section 8(a)(4).

Apple's counsel interrogated me at deposition about the policies and terms they claimed they had rescinded and would not enforce, whether I was "permitted" or "authorized" to discuss work conditions with coworkers, whether talking about work conditions was a "breach of [my] confidentiality obligations," and whether my coworkers were "whitelisted" by Apple to communicate with me about work

conditions. I objected and repeatedly reminded Apple about the rights their employees, including me, having under the NLRA and warned the attorney that she appeared to be repeatedly violating the NLRA in her questioning.

Apple's lawyer then declared 72% of the deposition was "confidential" for seven weeks, and then claimed my cervical mucus was Apple Confidential and the burden was on me to argue why it was not, and then we could raise the dispute Apple ownership of its facts around its employee's cervical mucus to the Judge who already issued an implied gag order against me to not have "emotions" while Apple pursued its plan to drive me to suicide.

Apple's questioning and conduct regarding the deposition and protective order enforces the prior secrecy, coercion, and confidentiality framework Apple agreed to rescind in the April 2025 settlement. Apple is exploiting the Court's deference to an extremely powerful, local corporation in a very public and closely watched lawsuit to threaten its employees and chill their protected activity through its ongoing harassment of the Charging Party.

## 5. Count: Violation of the Settlement Agreement

22.    As stated above and below, Apple also issued new work rules that clearly violate the terms of the Settlement Agreement, including:

- (1) Revised IPA, Appendix A, § I(C): "[N]othing in this Agreement restricts Your right to... discuss or disclose information about Your or others' wages, hours, or working conditions." Apple designated my testimony about my working conditions as confidential.
- (2) Notice: "WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information." Apple's counsel asked me under oath whether discussing working conditions was a "breach of your confidentiality obligations."
- (3) Additional Terms: "The Charged Party agrees that it will not enforce the definition of Proprietary Information... to the extent that such definition covers terms and conditions of employment." Apple's designations enforce that definition through a different mechanism.
- (4) Catch-all: "WE WILL NOT in any like or related manner interfere with your rights under Section 7."

Violation of a settlement agreement resolving 8(a)(1) charges is itself an independent 8(a)(1) violation. The settlement's Performance provision provides that upon non-compliance, the Regional Director will reissue the October 3, 2024 complaint, the allegations will be deemed admitted, Apple's answer deemed withdrawn, and the Board may enter a full remedy order without trial. A Court of Appeals judgment may be entered ex parte.

23.    The settlement was the Board's remedy for Apple's unlawful confidentiality policies. If Apple can reimpose the substance of those policies through a protective order designation in any employee litigation and without consequence, the settlement is a nullity. Every Apple employee who saw the settlement notice and believed the rules had changed is now learning that they have not.

24.    As noted, I also previously filed a charge with the Board alleging that Apple violated the April 2025 settlement agreement through its litigation conduct in this same federal case. The Region and Compliance Office, declined to investigate or take action on that charge, and refused to state any findings in writing. This was after Apple's own defense counsel was appointed to be the new NLRB General Counsel.

25.    The Region's prior refusal to act has emboldened Apple. Since the Region declined to investigate the first reported violation, Apple's conduct has escalated: Apple now designates the word "cervical mucus" as its confidential business information and interrogates former employees under oath about whether discussing working conditions with coworkers was a "breach of confidentiality obligations." The trajectory is clear. Each time the Board declines to enforce its own settlement, Apple pushes further. This charge presents the Board with a choice: enforce the agreement it brokered, or watch it become a nullity and see just how far Apple will go.

## 6. Count: Unlawful Surveillance

26.    Apple was surveilling me at all times, including all Section 7 activity conducted through or in the presence of my personal phone: conversations with coworkers about working conditions, communications with the NLRB, communications

with journalists, organizing discussions, and personal conversations outside work touching on employment concerns.

27.    Apple placed my cell phone and my personal iCloud account on a "whitelist", causing it to continuously capture and automatically upload photographs, video, audio recordings, biometric data, and GPS location whenever the camera detected a face—24/7 including outside the workplace—without any prior review or consent, but lied for years that I consented and was approving uploads.

28.    This was not limited to work hours or Apple premises. The device recorded in my home, including images of me in states of undress. This also violates the federal Wiretap Act, 18 U.S.C. § 2511 (interception of communications without consent), Cal. Penal Code § 632 (felony recording of confidential communications), Cal. Penal Code § 647(j) (invasion of privacy), and other statutes. Apple also obtained dismissal of my related state-law claims by representing it was not doing exactly what it was actually doing.

29.    Section 8(a)(1) prohibits employer surveillance that would reasonably tend to coerce employees in the exercise of Section 7 rights. See *Nat'l Steel & Shipbuilding Co.,* 324 NLRB 499 (1997); *Aladdin Gaming, LLC*, 345 NLRB 585 (2005). Continuous 24/7 audio and video capture from an employee's personal device—recording conversations with coworkers, the NLRB, journalists, and family—is surveillance that would chill any reasonable employee from exercising Section 7 rights. The federal Wiretap Act violation is an aggravating factor the Board may consider.

30.    An employee whose personal phone is recording and uploading everything cannot freely discuss working conditions with coworkers, contact the Board, or communicate with journalists. Once the data is captured, its also collateral and inherently coercive. The surveillance captured the full scope of Section 7 activity—including the protected disclosures and organizing that are the subject of this litigation. I became aware of the QA whitelisting and its implications within the past six months, as Apple withheld this information for years and only recently admitted it, and so I file this charge within a tolled Section 10(b) limitations period.

## 7. Count: Unlawful Work Rules Related to Organizing with Coworkers about Workplace Surveillance

31.     I discussed Apple's surveillance practices with a coworker as part of organizing efforts to improve working conditions. I testified that we were "organizing together" "making Apple better" and that sharing information about invasive workplace practices with a fellow employee was "absolutely NLRA… protected concerted activity of coworkers trying to make a better workplace." This included "my protest that Apple was requesting us to share all of our medical records directly with Apple if we were to request disability or ADA accommodations." (Deposition transcript page 295-296).

32.     Apple's counsel asked repeatedly whether my coworker was "whitelisted" to talk about work conditions with me—establishing a rule that an employee may only discuss the employer's surveillance with coworkers who were also subjected to the same surveillance. The premise is that a coworker who was not "whitelisted"—i.e., not also subjected to criminal surveillance—has no right to receive information about it, and that sharing it with her is a confidentiality breach. Apple then designated my testimony about sharing this information as confidential. This creates a work rule: discussion of the employer's criminal surveillance is permitted only among its victims, and discussing it with any other coworker violates confidentiality obligations.

33.     Section 8(a)(1) prohibits rules that condition the exercise of Section 7 rights on employer authorization. An employee's right to discuss working conditions with coworkers does not depend on whether the employer "whitelisted" the listener for the same labor violations. The right to discuss working conditions is unconditional under Section 7. A rule that permits discussion of employer misconduct only among its victims—and treats discussion with anyone else as a confidentiality breach—is an unlawful work rule restricting Section 7 activity.

- Employer: "Do you agree that sharing this information with [coworker] was a breach of your confidentiality obligations with Apple?"
- Employee: "Absolutely not."
- Employer: "Why not?"
- Employee: :One, [coworker] was an active Apple employee."

- Employer: "…Do you believe you were able to share confidential information about Apple with all Apple employees?"
- Employee: "Confidential is a broad term I don't understand.· But second, some of this stuff was highly protected.· This includes naked photos of me. I shared –"
- Employer: "I'm just asking you a question.· Do you agree that sharing this information with [coworker] was a breach of your confidentiality obligations…?.. "Do you believe that you were entitled to share all confidential information you got from Apple with all Apple employees?..."
- Employer: "….Where is the naked photo?..."
- Employee: "….the AI is just taking photos whenever it thinks it sees a face.· It doesn't care if you're topless…   I had photos it was taking that include my nipples and other parts of my naked body."
- Employee: "….And then -- what was I saying?· Why it was -- oh, because we were organizing about work conditions.· I was protesting this and said I don't like this.· I want Apple to stop.· And if she was organizing with me at that time  … trying to help improve our work conditions, then sharing this with her for her understand -- and she seemed very upset about this as well -- was absolutely NLRA, the National Labor Relations Act, and California Labor Law, protected concerted activity of coworkers trying to make a better workplace for themselves and their other coworkers.· And whistleblower disclosures that something is going on that seems unethical or unlawful, and there's nothing in here that's trade secret and other reasons…."
- Employer: "Do you know if [coworker] was whitelisted…"
- Employee: "I have no idea."
- Employer: "But you had no reason to believe that she was whitelisted"
- Employee: "It's a very, like, weird question.· I don't know how to answer your question."
- Employer: "Okay.· Well, you couldn't answer my whitelisted question.· You were totally incapable of [answering] it."
- Employer: "Do you have any reason to believe that you were permitted to share [work condition] information with [coworker]?·
- Employer: "….So I don't know how to answer that question with the "permitted" term."
- Employer: "Okay.· You don't know what "permitted" means?"
- Employee :"I don't know what "permitted" means."
- Employer: "How about allowed?· Is that any better? A-L-L-O-W-E-D?"
- Employee :"No."
- Employer: "Okay.· Don't know what "permitted" and "allowed" mean. · · · · Okay.· Are Apple employees allowed to share confidential information with Apple – Apple employees who are not … who are not whitelisted to receive the confidential information?"
- Employee :"I don't know what "allowed" or "whitelisted" means in your question."
- Employer: "Okay."

**Deposition pages 298-305. (entirely "confidential" for 50 days).**

34.    Apple's rules and threats isolate victims of employer misconduct from the coworkers best positioned to help them. Apple declares that an employee who discovers her employer is illegally recording her, and taking naked photos of her, can only discuss it with other employees who are also being illegally recorded and having naked photos also taken of them—and those employees may not know they're being recorded, and if they do know they may be horrified about it, so the practical effect is silence. It conditions the right to discuss working conditions on the employer's own authorization, which must accompany the employer surveilling the employee and hoarding nude photos of that employee, which is the antithesis of Section 7 and closer to a sex cult then corporate employment.

### 8. Count: "Leaking" Work Conditions to Coworkers

35.    See above.

### 9. Count: Termination of Subsequent Employment with another Employer ordered by the Prior Employer

36.    Recent actions and statements have made it clear that Apple was directly involved in Northeastern University's termination of my employment in the autumn of 2024. I suspected this for some time and accused Apple of it prior, however only recently did Apple implicitly confirm this.

37.    Apple provided me notice it intended to subpoena extensive employment records from Northeastern University to use as evidence against me in the Apple retaliation litigation and adjudication. Apple knows there is an NLRB case against NEU and that I allege retaliation for numerous types of protected activity including opposing what amounted to be systemic federal grant fraud by that university. Apple indicated it would request records from NEU to made it look like I was at fault and use my protected activity at NEU in its defense in the Apple litigation.

38.    I complained to Apple again that based on the timing and extremely suspicious circumstances of that termination, I was certain Apple was behind the second firing, and if Apple sent the subpoena they threatened, I would then subpoena NEU's lawyers for any communications with Apple or Apple's lawyers.

39.    Apple then dropped that matter completely and has not raised it again. Apple has not said a word about it since I assured them I was certain there would at least be phone call records between these entities leading up to the abrupt notice of termination while I was on protected medical leave, which had just been extended by NEU and made the termination absurd. Apple's silence confirms their culpability.

## 10.    Count: Prohibiting the Employee from Filing NLRB Charges

40.    Under *San Diego Building Trades Council v. Garmon,* 359 U.S. 236 (1959), when activity is arguably subject to Section 7 or Section 8 of the NLRA, federal courts must defer to the exclusive competence of the Board. Under *Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976), the Board's preemptive jurisdiction extends to conduct that Congress intended to leave unregulated as well as conduct it intended to regulate.

41.    The federal district court lacks jurisdiction to determine whether Apple's designation of testimony about Section 7 activity as confidential constitutes interference with NLRA rights. That determination belongs exclusively to the Board.

42.    Accordingly, Apple's insistence that my "only option" is to argue to Apple and the Judge who indicated she doesn't care if kill myself as a result of Apple's conduct, and that I have no other recourse for Apple's misconduct, is also a violation of the NLRA.  Apple's statements indicate that I am not "allowed" to file an NLRB charge over their confidentiality designations because they say the non-consensual Protective Order somehow stripped the NLRB of jurisdiction and/or is a gag order on me from reporting NLRA violations to the NLRB – but none of that is true.

43.    The opposite is true. If Apple violates the NLRA, and interferes with Board proceedings, then Garmon preemption removes the federal district court's jurisdiction to review the matter at all. Accordingly, Apple's directive to not file charges to the NLRB and only route complaints to a venue with no jurisdiction to adjudicate them, is Apple illegally prohibiting me from filing NLRB charges.

44.

## II.   CONCLUSION

45.   This Cover Letter is filed in support of the Feb. 16 2026 Charge.

46.   In addition, a detailed Legal Memorandum will be subsequently filed as well with additional exhibits and evidence.

47.   The alleged violations in this charge are clearly within the scope of the NLRA. Apple's unlawful conduct during and related to the deposition occurred as part of a civil lawsuit, but directly arose out of NLRA activity, interfere with NLRA rights, and threaten to interfere with NLRB proceedings.

48.   My disclosure here of the subject matter of Apple's claims to confidentiality may cause Apple to escalate and even seek sanctions against me for violating their protective order. If Apple does such a thing, then an additional NLRB charge will be filed to capture the continuing violations of the NLRA by Apple.


Respectfully submitted,


_____

**/s/ Ashley M. Gjovik**
*Pro Se Charging Party*
San Jose, California
Dated: Feb. 16 2026

# EXHIBIT A

Case 5:24-cv-04108-EMC    Document 283    Filed 02/20/26    Page 82 of 94
Case 3:21-cv-07385-EMC    Document 217-2    Filed 02/20/26    Page 61 of 94    Main
Document          Page 82 of 159
DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                    December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

 1  leak, that we had to report it.  I reported it.

 2  But, again, like even the -- the first sentence of

 3  that email says "not sure how much this matters,"

 4  and then I reported it anyways.

 5      Q.  And you reported it because you thought it

 6  might be a breach of their confidentiality

 7  obligations to Apple; correct?

 8      A.  Yeah.

 9          MS. RIECHERT:  Mr. Videographer, if you

10  could mark as Exhibit Number 6, tab 6-02 Apple's

11  misconduct and discipline policy.

12          THE VIDEOGRAPHER:  Exhibit 6.

13          (DEPOSITION EXHIBIT 6 WAS MARKED.)

14          THE WITNESS:  Okay.  It's open.

15  BY MS. RIECHERT:

16      Q.  Looking at Exhibit 6, which is Apple's

17  misconduct and discipline policy, do you agree that

18  that is a copy of Apple's misconduct and discipline

19  policy?  And because you asked me to do that before,

20  I would note that on the bottom right-hand corner

21  are Bates numbers that were placed -- we believe

22  were placed on this document by you.  These were

23  documents produced by you.

24      A.  Oh, I see, yes.  And the timestamp on the --

25  this one has a timestamp.  The business conduct



1   policy didn't have a timestamp.  This timestamp

2   matches when I downloaded this document, and this is

3   an exhibit in the NLRB case with the settlement

4   agreement I mentioned.

5        Q.  The question is do you agree that this was a

6   policy that was in effect during your employment at

7   Apple?

8        A.  What does "in effect" mean?

9        Q.  That it was in existence.

10       A.  Yes.  This policy was in existence at my

11   time at Apple as of the date I downloaded it, which

12   is dated on the document as May 4, 2021.

13       Q.  And do you agree that you were aware of this

14   policy at the time you downloaded this document on

15   May 4, 2021?

16       A.  Yes.

17       Q.  And you read it during your employment at

18   Apple; correct?

19       A.  The policy we're looking at -- all I know

20   is -- existed as worded as of May 2021.  Apple might

21   have had different versions earlier, and I don't

22   have copies of the prior policies from, like, 2015.

23   But I know that this definitely existed in May of

24   2021.

25       Q.  And you understood it; correct?



Case 3:24-cv-04058-EMC Document 1-4 Filed 02/20/26 Page 64 of 94
Case 5:24-cv-05058-EMC Document Page 84 of 159
Document
DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                    December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1      A.  That's broad.  Can you be more narrow in
2   your question?
3      Q.  Did you understand the policy when you read
4   it and downloaded it?
5      A.  Yeah.  What does "understand" mean?
6      Q.  Know what it means.
7      A.  I'd say no.  And that was one of the
8   reasons -- so I was downloading -- I downloaded a
9   bunch of policies at that point.  I had become very
10  concerned that they were unlawful, and I had been
11  making statements about that with coworkers and on
12  Slack, and that was when I started --
13     Q.  But you've gone beyond the question.  My
14  question is did you understand this policy when you
15  read it and downloaded it on May 4, 2021?
16     A.  That's what I was going to say.  I didn't --
17  the terms were so broad.  One of the reasons it was
18  flagged for me --
19         (Reporter asks for clarification.)
20  BY MS. RIECHERT:
21     Q.  The question is did you understand it or did
22  you not understand it?
23     A.  No, I didn't understand it.
24     Q.  Okay.  Which parts of it did you not
25  understand?



1    A.  These are -- I can go through the terms and

2   a lot of these terms were flagged in my complaint to

3   NLRB about this particular policy --

4    Q.  You're going way beyond my question.  The

5   question is --

6    A.  I know.  You're asking what I didn't

7   understand.  I'd like to answer that question.

8    Q.  Okay.  Which terms did you not understand?

9   I don't need to talk about the NLRB.  I just want to

10   know which terms you did not understand.

11    A.  Appropriate is vague and over -- so terms

12   that I feel are vague and overbroad in such a way

13   that you cannot understand what is actually being

14   requested and which likely become unlawful that they

15   are so overbroad because they restrict protected

16   behavior and conduct are terms appropriate,

17   behavior, policies, guidance, ethics, discretion,

18   appropriate, guidelines, not limited to, warnings.

19        (Reporter interruption.)

20        THE WITNESS:  Can you see me?  I turned my

21   video off so I wasn't just staring at me.  Can you

22   see me here?

23        THE VIDEOGRAPHER:  Yes.

24   BY MS. RIECHERT:

25    Q.  If you don't want to look at yourself in the



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

 1  video.  I can take yourself --

 2      A.  I did, but then she said she can't see my

 3  face, but then I couldn't see where my face was.  So

 4  I was concerned she couldn't see my face.

 5          Conduct.  Let's see, not limited to, policy

 6  violations, confidential, proprietary.

 7      Q.  You didn't understand what those words meant

 8  is what you're telling me?

 9      A.  Uh-huh.  I'm still going.  Oh, using Apple

10  equipment for electronic resources because that to

11  me also meant, like, our personal iPhones or

12  computers too.  It was very unclear.

13      Q.  I withdraw that question, and I'm going to

14  ask you another question.

15          Did you --

16      A.  I still have more though.

17      Q.  I understand.  I'm just going to withdraw

18  that question.

19          Did you understand that this policy said

20  that it was a policy violation for you to violate

21  your confidential proprietary information --

22  proprietary and trade secret information

23  obligations, including those stated in Apple's

24  intellectual property agreement?

25      A.  So you're referring to under policy



1   violations, the first bullet?

2       Q.  Correct.

3       A.  Can I read it just so it's on the record of

4   what you're asking?

5       Q.  Absolutely.

6       A.  So the policy violations -- the policy says,

7   "Violating confidential, proprietary, and trade

8   secret information obligations (including those

9   stated in Apple's intellectual property agreement),"

10  and that is under "Conduct warranting immediate

11  termination.  Conduct that may warrant immediate

12  termination of employment includes, but is not

13  limited to," and then the bullet you just said.

14      So I can confirm that the document that

15  we're reviewing, that is the text as I just read, is

16  on that document and that I had a copy of that

17  document.

18      Q.  And you understood it?

19      A.  No.  I just said I don't understand this

20  document.

21      Q.  Okay.  Didn't understand that part of the

22  document?

23      A.  I don't understand most of the document.  I

24  was still going of listing all the words I don't

25  understand.



 1      Q.   Okay.  I'm asking you now whether you

 2   understood that conduct warranting immediate

 3   termination could include violating confidential,

 4   proprietary, and trade secret information

 5   obligations including those stated in Apple's

 6   intellectual property agreement?

 7      A.   Asked and answered.  I already said I don't

 8   understand that.

 9      Q.   You did not understand that that was a

10   policy violation?

11      A.   Well, I understand that it's on the policy

12   as written, as stated, but I don't understand what

13   it means.

14      Q.   You don't understand what it means to

15   violate your confidential, proprietary, and trade

16   secret information obligations?  Is that what you're

17   saying?

18      A.   Asked and answered.  I already said I don't.

19   And the objections of NLRB already said that was

20   unlawful that Apple would --

21           (Reporter admonition.)

22           THE WITNESS:  NLRB said those terms were

23   unlawful and that Apple could no longer enforce them

24   and had to withdraw them from their policies.

25           MS. RIECHERT:  I'm going to designate the



 1  next section of this deposition as confidential

 2  pursuant to the protective order.

 3  BY MS. RIECHERT:

 4      Q.  Any information that -- testimony you give

 5  until I say it's not confidential pursuant to the

 6  protective order is going to be covered by the

 7  protective order.  Do you understand that?

 8      A.  No.  How can you claim that my statements

 9  are confidential if what I said is not confidential?

10      Q.  Because under the protective order, I have

11  the right to designate deposition testimony as

12  confidential.  If you disagree with that, then you

13  have the right, under the protective order, to

14  follow the procedures in the protective order.

15      A.  Yeah, but I believe you -- sorry.  Go ahead.

16      Q.  But meanwhile, I'm designating this as

17  confidential pursuant to the protective order.  And

18  if you disagree, then follow the procedures in the

19  protective order.

20      A.  Yes.  But, Melinda, I don't think you can

21  just say -- you don't know what I'm going to say and

22  if I say stuff that's clearly not confidential, you

23  just can't proactively say it's confidential.

24      Q.  I have the right to do that under the

25  protective order, and you have the right to



Case 5:24-cv-04596-EMC Document 28 Filed 02/20/26 Page 90 of 159

Document    Page 90 of 159

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                    December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1  challenge it if you disagree.

2      A.  Well, I'm filing objections immediately then

3  that you can't just proactively say that something

4  is confidential when I'm actively talking about the

5  NLRA saying that Apple is misusing confidentiality

6  terms and the stuff to hide protected statements and

7  then you're saying whatever I say next is under a

8  confidentiality order without knowing what I'm going

9  to say.  That's not right, Melinda.  I object.

10         MS. RIECHERT:  All right.  So why don't we

11  take a break before I ask my question?

12         If the videographer would bring in the

13  tab Number 2-04 into the chat.

14         We're going to take a five-minute break, and

15  I am designating the following information as

16  confidential pursuant to the protective order.

17         Let's take a five-minute break.

18         THE WITNESS:  Okay.

19         THE VIDEOGRAPHER:  This marks the end of

20  Media Number 1.  We are now going off the record.

21  The time is 10:19 a.m.

22         (Off the record:  10:19 a.m. to 10:29 a.m.)

23         THE VIDEOGRAPHER:  We are now on the record.

24  The time is 10:29 Pacific Standard Time.  This marks

25  the beginning of Media Number 2 in the deposition of



1    Ashley Gjovik on December 16, 2025.

2              Please continue.

3              (DEPOSITION EXHIBIT 7 WAS MARKED.)

4              MS. RIECHERT:  The following portion of the

5    deposition is designated as confidential pursuant to

6    the protective order.

7              (THE FOLLOWING PAGES, 66 TO 305, WERE

8    DESIGNATED CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER.)

9                         -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1              ::: CONFIDENTIAL :::

2              (THE FOLLOWING PAGES, 66 TO 305, WERE

3    DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER.)

4    BY MS. RIECHERT:

5         Q.  Please look at Exhibit Number 7 and let me

6    know if this is a document that you received in

7    connection with your employment at Apple.

8         A.  Yes.  And lodging again that I don't like

9    the blanket confidentiality when we don't know what

10   we're going to talk about.  And also lodging that

11   I've tweeted this document.  This is already public

12   record.  It's not confidential.

13              But this does appear to be an email that I

14   believe I did receive from Apple.  It's dated

15   August 7, 2017.

16        Q.  And when did you tweet the document?

17        A.  I think multiple times.  And it's on my

18   website.  It's part of my government complaints in

19   the exhibits for the government cases.

20        Q.  Did you tweet this document during your

21   employment at Apple?

22        A.  I don't think so, no.

23        Q.  You were invited to participate in a data

24   collection social hour; correct?

25        A.  I -- can I just read the email?



1    Q.  Absolutely.

2    A.  Yeah.  So the email was sent from --

3    Q.  Okay.  Don't read it out loud.  Just read it

4  to yourself.

5    A.  No.  I want to read it for the record so

6  they know what we're talking about.

7    Q.  No, please don't.  Please read it to

8  yourself.

9    A.  But you said it's confidential.

10    Q.  The exhibit -- the exhibit is in the record,

11  and so you don't need to read it into the record

12  because the exhibit is already part of the record.

13    A.  What did you just ask me?  What was the

14  question?

15    Q.  The question is were you invited to

16  participate in a data collection social hour?

17    A.  But you're reading the email and you're

18  saying I can't read the email.

19    Q.  No.  I'm saying you can read the email.  I

20  just don't want you to read it out loud into the

21  record.

22    A.  But you -- the question you're asking me

23  reflects what is said in the email.  So for me to

24  confirm what the email said would answer your

25  question, and you're saying I can't read the email.



# EXHIBIT B: THE BLOG POST

# Apple Claims It Owns Its Employees' Cervical Mucus: A New NLRB Charge Reveals the Logical Endpoint of Corporate Confidentiality Abuse

## On February 16, 2026, I filed a new unfair labor practice charge against Apple Inc. with NLRB.

10 min. read  ·   View original

On February 16, 2026, I filed a new unfair labor practice charge against Apple Inc. with NLRB. The charge contains ten counts alleging violations of Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act. The accompanying cover letter, complete with deposition transcript excerpts, paints a picture so extraordinary that it warrants serious attention from labor law practitioners, employment scholars, and anyone interested in the boundaries of corporate power over employees' bodies and speech.

The short version: Apple's lawyers designated an

employee's deposition testimony about my own cervical mucus, ovulation, and menstrual cycle as Apple's confidential business information, then told me that if I disagreed, I could write Apple a memorandum explaining why my bodily secretions don't belong to the company. The long version is even worse.

## Background: The Settlement That Should Have Ended This

My earlier charges (Case 32-CA-284428 and related cases) resulted in a General Counsel complaint and a national settlement agreement reached in April 2025. That settlement required Apple to rescind overbroad confidentiality policies that restricted employees' Section 7 rights, post a nationwide notice promising not to discipline employees for discussing working conditions, and agree not to enforce its definition of "Proprietary Information" to the extent it covered terms and conditions of employment. The settlement included a catch-all: Apple promised not to "in any like or related manner interfere with your rights under Section 7."

Critically, the settlement contained a self-executing default provision. Upon non-compliance, the Regional Director would reissue the October 2024 complaint, Apple's allegations would be deemed admitted, its answer withdrawn, and the

Board could enter a full remedy order without trial. A Court of Appeals judgment could be entered ex parte. That provision matters for everything that follows.

## The December 16, 2025 Deposition

I was deposed in my federal retaliation lawsuit against Apple on December 16, 2025. The deposition was taken by Apple's counsel (a senior partner at a major firm). What happened during that deposition, as documented in the charge's cover letter and attached transcript excerpts, forms the factual core of the new charge. Apple's counsel questioned me about Apple's misconduct and discipline policy — the same type of policy that was the subject of the prior NLRB settlement. When asked whether I understood that violating confidentiality obligations could warrant immediate termination, I responded that I didn't understand the policy's terms, that they were overbroad, and that "NLRB said those terms were unlawful and that Apple could no longer enforce them and had to withdraw them from their policies."

Apple's counsel responded by immediately designating the entire remainder of the deposition as "Confidential" pursuant to the civil litigation's protective order. The exchange, as quoted in the charge, is striking. When I objected that the

Case 2:25-cv-08896-MEMF-EFM Document 1 Filed 02/20/26 Page 98 of 159 Page ID #... Apple Claims It Owns Its Employees' Cervical Mucus... A New NLRB Charge Reveals the Logical Endpoint of Corporate Confidentiali...

Document      Page 98 of 159

designation was premature, Apple's counsel didn't know what I would say next and couldn't pre-designate unknown testimony; then Apple's counsel asserted the procedural right to pre-designate under the protective order and told me to use the order's challenge procedures if I disagreed. When I protested that Apple was "misusing confidentiality terms" to "hide protected statements" immediately after I invoked the NLRA, Apple's counsel called a break, then designated pages 66 through 305 (of a 336-page transcript) as confidential. Approximately 72% of the deposition was designated as confidential.

## Seven Weeks of Silence

The blanket designation remained in effect for seven weeks — 50 days!!! — until February 4, 2026. During that period, I was supposedly unable to discuss the substance of my own testimony, including my descriptions of protected concerted activity and my invocation of NLRA rights, with coworkers, the public, or the NLRB.

When Apple finally narrowed its designations, approximately 99% of the previously designated material was conceded to be non-confidential. This is legally significant because the protective order itself prohibited "mass, indiscriminate, or routinized designations" and required that designations be limited to "specific

material that qualifies under appropriate standards." A blanket designation covering 72% of a deposition, maintained for 50 days, where 99% is ultimately conceded to be non-confidential, appears to violate the very order Apple invoked to justify the designation.

## What Apple Claims to Own

When the narrowed designations finally arrived on February 4, 2026, they came on an unsigned, undated six-page PDF that Apple refused to email to me directly, refused to sign, and refused to date. Apple emailed it to the court reporter and said it was for my "awareness." The final designation list contained over 140 terms. Some were facially absurd — the letter "N," the word "hardware," and generic engineering development phrases. But the designations that matter most for NLRA purposes are the ones Apple applied to the substance of my protected concerted activity.

The charge quotes three deposition excerpts where I testified about my complaints to my supervisor regarding Apple's invasive workplace studies. In these excerpts, I described:

- An **ovulation study** where Apple asked female employees to measure their cervical mucus
- A **bed-sensor study** that monitored vitals during sleep and required any sexual partner or co-sleeper to register with Apple and sign an NDA

- An **ear scanning study** that I declined, describing the physical discomfort and my objection to Apple maintaining a library of employees' ear images

This testimony (an employee describing my complaints about workplace conditions to my supervisor and to coworkers) is textbook protected concerted activity under Section 7. I was testifying about raising concerns on behalf of myself and my coworkers about invasive employer practices directed at their bodies. Apple's active confidentiality designations, as documented in the charge, include: "ovulation study or they were asking females to measure our cervical mucus," "ovulation," "measuring female employees' cervical mucus," "my cervical mucus," and "mucus -- the cervical mucus secretion."

Each of these was individually designated across multiple separate deposition excerpts. This was not a single overbroad designation that inadvertently swept in bodily terminology. Someone at Apple's law firm reviewed the transcript, identified each instance where I described what Apple asked my body to do, and separately flagged it as Apple Confidential.

As I state in the charge: "Apple does not own my vagina, has no legitimate interest in who I have sex with, and its outrageous Apple would even imply it could make these claims."

The April 2025 settlement included several specific commitments that appear to be directly contradicted by Apple's deposition conduct:

- The revised IPA preserves the right to "discuss or disclose information about Your or others' wages, hours, or working conditions." Apple designated testimony about working conditions as confidential.
- The notice posting promises Apple will not "advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information." Apple's counsel asked under oath whether discussing working conditions was "a breach of your confidentiality obligations."
- Apple agreed not to enforce its definition of "Proprietary Information" to cover terms and conditions of employment. Apple's confidentiality designations enforce that definition through the protective order mechanism.

Violation of a Board settlement resolving 8(a)(1) charges is itself an independent 8(a)(1) violation. And the default provision means the remedy upon non-compliance is potentially automatic: deemed admissions, no trial, and ex parte Court of Appeals enforcement.

### The "Whitelisting" of Section 7 Rights

Perhaps the most doctrinally significant allegation concerns Apple's counsel's repeated questioning about whether one of my coworkers was

"whitelisted" to receive information about working conditions. The deposition excerpts in the charge show Apple's counsel asking whether I was "permitted" to share information with a coworker, whether the coworker was "whitelisted," and — when I stated I didn't understand the question — spelling out: "How about allowed? A-L-L-O-W-E-D?"

This line of questioning establishes a framework where the right to discuss working conditions is conditioned on employer authorization. Under Section 7, that right is unconditional. An employee does not need to be "permitted" or "allowed" or "whitelisted" to discuss wages, hours, or working conditions with a coworker. The right is statutory.

The charge argues that Apple's questioning creates a work rule permitting discussion of employer misconduct only among its victims (those who were also "whitelisted" for the same surveillance) and treating discussion with any other coworker as a confidentiality breach. This is a *per se* violation of Section 8(a)(1). The Board has consistently held that employer rules conditioning Section 7 activity on prior authorization are unlawful.

### 24/7 Surveillance from Personal Devices

The charge also alleges that Apple placed my cell

phone and iCloud account on a "whitelist" (a different use of the same term) that caused continuous, 24/7 capture and automatic upload of photographs, video, audio recordings, biometric data, and GPS location whenever the camera detected a face — inside and outside the workplace, including in my home and including images in states of undress.

Under *National Steel & Shipbuilding Co.*, 324 NLRB 499 (1997), and *Aladdin Gaming, LLC*, 345 NLRB 585 (2005), employer surveillance that would reasonably tend to coerce employees in the exercise of Section 7 rights violates Section 8(a)(1). The standard is objective: the question is whether the surveillance would chill a reasonable employee, not whether the employer intended to suppress union activity. The charge notes that the surveillance captured communications with coworkers about working conditions, communications with the NLRB, communications with journalists, and organizing discussions.

This would represent an unprecedented scope of employer surveillance in Board case law — continuous **audio**, video, biometric, and location capture from a personal device, 24/7, extending into the employee's home.

## Garmon Preemption and the Forum Problem

Count 10 of the charge raises a preemption argument that, whatever its outcome, illustrates the institutional trap the case has created. Under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), when activity is arguably subject to Section 7 or Section 8, federal courts must defer to the Board's exclusive competence. Under *Lodge 76, IAM v. WERC*, 427 U.S. 132 (1976), preemptive jurisdiction extends to conduct Congress intended to leave unregulated as well as conduct it intended to regulate.

The charge argues that Apple's insistence that my "only option" is to challenge the confidentiality designations through the federal court (via memoranda to Apple and escalation to the Magistrate Judge) constitutes a prohibition on filing NLRB charges and an assertion that the protective order stripped the Board of jurisdiction. If the Board agrees, the federal court lacks jurisdiction over these NLRA questions. If the Board disagrees or declines to act, it is effectively ceding jurisdiction over claims expressly about NLRA charges, protected concerted activity, and Board proceedings to a court that (as documented in the same charge) coerced the employee into stipulating to the very protective order at issue while the employer's counsel discussed the foreseeable possibility of driving the employee to suicide.

## The Institutional Dynamics

The charge does not exist in a vacuum. As I noted, I previously filed a charge alleging Apple violated the April 2025 settlement through its litigation conduct in the same federal case. The Region and Compliance Office declined to investigate or take action, and refused to state findings in writing. This occurred, the charge notes, after Apple's own former defense counsel was appointed as the new NLRB General Counsel. The charge argues that the Region's prior refusal to act emboldened Apple, and that Apple's conduct has escalated since the first reported violation went unenforced. The charge presents this as a pattern: each time the Board declines to enforce its own settlement, Apple pushes further.

This creates an institutional dilemma that the charge's structure appears designed to exploit. If the Board declines to act on this charge, it will have reviewed a filing documenting Apple designating employees' cervical mucus as confidential business information, interrogating a former employee about whether discussing working conditions with coworkers was a policy violation, and maintaining a 50-day blanket gag order on protected activity that was 99% unjustified (all in violation of a settlement the Board itself brokered) and decided that none of

this warranted investigation.

What makes this charge notable beyond its individual allegations is its structural design. The charge is simultaneously:

1. **An NLRB filing** that creates a federal agency record of Apple's conduct;
2. **A vehicle for public disclosure** of the specific terms and testimony Apple designated as confidential because its absurd and clearly illegal;
3. **A court docket filing** via the notice of pendency, placing the material before the judge who controls the protective order;
4. **A settlement enforcement mechanism** that may trigger automatic default remedies;
5. **A documented dare** — paragraph 48 expressly states that if Apple seeks sanctions for the disclosures in the charge, another charge will be filed.

Each function reinforces the others. The NLRB filing is protected activity under Section 8(a)(4), making any Apple retaliation for the filing itself a new violation. The public disclosure through the NLRB filing renders the confidentiality designations functionally moot for the disclosed terms. The court docket filing puts the judge on notice of the parallel Board proceeding and the *Garmon* preemption issue. And the settlement enforcement argument converts each documented violation into a potential trigger for the automatic default provision.

## The Limits of Confidentiality as a Weapon

This case, if credited, represents something genuinely new in NLRB practice: an employer using a civil litigation protective order (one the employer selected, insisted upon, and applied) to reimpose the substance of confidentiality policies the employer agreed to rescind in a Board settlement. It is, in effect, an end-run around the settlement through a different procedural mechanism, using the deference courts give to confidentiality designations in discovery to achieve what the NLRA prohibits.

The specific content of Apple's designations makes this more than a procedural dispute. When an employer claims that an employee's testimony about my own cervical mucus is the employer's confidential business information — repeatedly, deliberately, across multiple transcript excerpts — it has moved past any recognizable assertion of trade secret protection into something that more closely resembles a claim of ownership over the employee's body and the employee's right to describe what was done to it.

The National Labor Relations Act was enacted to protect employees' right to discuss their working conditions. When those working conditions include employer-directed monitoring of female employees' reproductive biology, the right to

discuss those conditions necessarily includes the right to use the words that describe them. Ovulation. Cervical mucus. Menstruation. These are not engineering specifications or product roadmaps. An employee's right to protest those practices to coworkers, to the NLRB, to the public — cannot be extinguished by placing those words on an unsigned PDF and calling them proprietary.

Whether the current Board will act on this charge is an open question. What is not an open question is that the charge and its supporting materials are now part of the public record — on the NLRB's docket, on the federal court's docket, and in the hands of anyone who cares to read them. The file will outlast every person currently sitting in a position to act on it or ignore it. And the default provision, loaded and waiting, does not expire with any particular General Counsel's term.

Apple's lawyers may have had the procedural right to designate deposition testimony as confidential. What they did not have was the right to designate protected concerted activity as confidential, the right to condition Section 7 activity on employer authorization, or the right to claim ownership over an employee's bodily secretions. The transcript documents them doing all three, on the record, while the court reporter typed.

*The charge was filed with NLRB Region 32, on*

*February 16, 2026. The cover letter and attached exhibits are linked below.*

Your browser does not support viewing this document. Click here to download the document.

### Feb. 16 2026 Charge:

| nlrb_charge_20260216_gjovik_v_apple_filed.pdf | |
|---|---|
| File Size: | 1070 kb |
| File Type: | pdf |

[Download File](#)

# EXHIBIT C: TWITTER/X POSTS

## ALL @ASHLEYGJOVIK TWITTER/X POSTS
## FROM DEC. 16 2025 - FEB. 19 2026



https://x.com/ashleygjovik/status/2001124832784597103

https://x.com/ashleygjovik/status/2019237426569572670

Case 3:21-cv-07163-EMC   Document 258   Filed 02/20/26   Page 112 of 159
Case 3:24-cv-05858-EMC   Document 263-1   Filed 02/20/26   Page 8 of 94 Desc Main
Document     Page 112 of 159



**Ashley M. Gjøvik**
@ashleygjovik

⚖️ Gjovik v Apple update: there is now a case schedule, June 2026 dual summary judgement hearing, & Oct 2026 jury trial date for my whistleblower & labor retaliation lawsuit against Apple; & I got approval to file a motion asking to get back on Apple's payroll prior to the trial!

8:48 AM · Feb 6, 2026 · **2,703** Views

💬 2     🔁 3     🤍 59     🔖 9     ⬆️

https://x.com/ashleygjovik/status/2019815401451143546



**Ashley M. Gjøvik**
@ashleygjovik

···

This is a copy of part of the subpoena Apple is sending to all of my doctors and medical providers demanding ten years of records & asking a court to compel me to "consent" to waiving my HIPAA rights, while concurrently claiming my testimony about my own menstruation is their IP.

> **ATTACHMENT A**
>
> **INSTRUCTIONS AND DEFINITIONS**
>
> 1.   If you have any questions regarding your obligation to comply with this Subpoena, you are instructed to jointly contact the Parties at mriechert@orrick.com and Melinda Riechert, Esq. at █████████
>
> **DOCUMENTS AUTHORIZED TO BE RELEASED**
>
> 1.   All documents relating to your treatment of Ashley Gjøvik / Ashley Henderson (DOB █████) from 2015 to present, including, but not limited to:
>
> a.   Intake and admission forms, including statements, questionnaires and histories.
> b.   Admission and discharge summaries.
> c.   Examination and consultation reports and records, including handwritten notes, clinical charts, and records received from other providers.
> d.   Nursing records and reports.
> e.   Psychotherapy notes, psychiatric and psychological reports and summaries.
> f.   Inpatient and outpatient records.
> g.   Prescription/medication/pharmacy records, including NDC numbers, lot numbers, drug information handouts and monographs.
> h.   Correspondence to, from, and concerning ASHLEY GJØVIK / ASHLEY HENDERSON.
> i.   Sound and video recordings, including audiotapes and CDs.
> j.   Diagnostic assessments, batteries and/or tests and reports.
> k.   Documents relating to or concerning any neurological, neuro-cognitive, psych-educational, neuropsychological, psychological and/or psychiatric evaluation, assessment and/or testing.
>
> 2.   All billing records to relating to your treatment of Ashley Gjøvik / Ashley Henderson (DOB █████) from 2015 to present, including but not limited to any invoices or bills, records of payments made and insurance information/payment.
>
> **CONFIDENTIALITY**
>
> 1.   All documents should be produced as CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025.

ALT

12:41 PM · Feb 10, 2026 · **165.5K** Views

💬 40      🔁 404      ♡ 2.5K      🔖 452      ↥







https://x.com/ashleygjovik/status/2022409342428024845

https://x.com/ashleygjovik/status/2022867180002701465

https://x.com/ashleygjovik/status/2022895261438349635





🙍 Ashley M. Gjøvik
@ashleygjovik

⚖️ Gjovik v Apple update: we have a new NLRB charge filed against Apple alleged 10 unique violations of the National Labor Relations Act including, but not limited to, Apple claiming their employee's cervical mucus & sexual activity is "Apple Confidential"

ashleygjovik.com/blog/apple-cla…

10:10 AM · Feb 17, 2026 · **2,566** Views

💬 6          �recycle 8          ♡ 64          🔖 5          ↑

https://x.com/ashleygjovik/status/2023822369740255623





https://x.com/ashleygjovik/status/2024237704331088225



https://x.com/ashleygjovik/status/2024261793791758456



# EXHIBIT C: MOTION TO QUASH

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK,**

*an individual,*

      Plaintiff,

      vs.

**APPLE INC.,**

*a corporation,*

      Defendant.

**CASE NO.**

**3:23-CV-04597-EMC**

**PLAINTIFF'S MOTION TO QUASH THE FEB. 20 2026 SANCTIONS/TRO/CONTEMPT PRIVATE PHONE CALL CONFERENCE**

# TABLE OF CONTENTS

**PLAINTIFF'S EMERGENCY MOTION TO QUASH FEBRUARY 20
CONFERENCE AND FOR RECONSIDERATION OF PROTECTIVE ORDER**    2

**ARGUMENT**    3

   Apple's Letter and the Court's Acceptance of the Request for a
Conference are Only 1 of 2 Things    3

   The Designations Escalated by Apple all Represent Information in the
Public Domain    4

   The Magistrate Judge Lacks Statutory Authority Over the Relief Apple
Seeks    5

   Contempt Finding Would Resolve the Central Merits Dispute — Without
Summary Judgment    6

   Multiple Independent Jurisdictional Bars Prevent Any Relief for Apple at
this Juncture    7

   The Proceedings Violate Due Process and the Court's Standing Order    9

   The Protective Order Has Been Used Exclusively as a Gag Order    10

   Prior Experience With This Magistrate Warrants This Court's Oversight   11

   Apple Must Follow the Rules    12

**RELIEF REQUESTED**    13

# PLAINTIFF'S EMERGENCY MOTION TO QUASH FEBRUARY 20 CONFERENCE AND FOR RECONSIDERATION OF PROTECTIVE ORDER

Plaintiff Ashley M. Gjovik respectfully moves this Court on an emergency basis to **(1) quash the telephonic conference scheduled before Magistrate Judge Westmore, February 20, 2026, at 2:15 PM, (2) require Apple to file proper motions before this Court for the relief it seeks, and (3) reconsider the protective order entered at Dkt. 235.**

On February 19, 2026, Apple filed a five-page letter (Dkt. 280) requesting sanctions, a finding of contempt, a restraining order on Plaintiff's speech, compelled deletion of publications with speech of public concern, enforcement of a procedural "protective order" as if it was a court ordered personalized restraining order, and implied sealing of docket entries. All content protested by Apple is already public information, most of which was made public by Apple, and otherwise represent worker complaints about work conditions and workplace privacy violations.

Apple addressed the letter to the magistrate judge and demanded a telephonic conference within 48 hours. The call is currently scheduled as non-public, non-recorded, with no opposition briefing, and no evidentiary review. The Plaintiff requested until Monday, February 23 to file a response and the Magistrate implicitly rejected this request implying the conference would go forward without any filings or input from the Plaintiff, no evidentiary review, and no formal procure or recording/transcript. **The conference is scheduled for 2:15 PM Feb. 20 2026. It should not go forward.**

First, the magistrate judge lacks statutory authority over any of the relief Apple seeks. 28 U.S.C. § 636(b)(1)(A); § 636(e). There are also at multiple independent jurisdictional bars: the bankruptcy automatic stay, *Garmon* preemption, the Norris-LaGuardia Act, and the California Anti-SLAPP Act. Each of these prevent any relief regardless of procedure. Further, the proceedings violate the Fifth Amendment's due process requirements and the Court's own Rules and Standing Orders.

Finally, critically for your Honor, a contempt finding would resolve the central merits dispute in this case — whether Plaintiff was terminated for protected activity or for "leaking" — without summary judgment, without evidence, and without briefing. That question belongs before this Court, not the magistrate, and it belongs in a Rule 56 motion, not a private telephone call without evidence or briefing.

This Motion to Quash is filed concurrently with a formal Opposition/Objections filed in response to Apple's "Letter" (with exhibits showing the full content of the NLRB Charges, and social medial and blog posts); and a Notice of Pendency of a Motion for Sanctions in the Bankruptcy Proceeding.

# ARGUMENT

## Apple's Letter and the Court's Acceptance of the Request for a Conference are Only 1 of 2 Things

What is this Feb. 20 Conference? In its letter (Dkt. 280), originally sent via private email and not even filed to the docket, Apple asks the Court to "make clear to Plaintiff her obligations," to "address" her alleged breaches of the protective order, and to "make any further orders the Court may deem necessary to ensure compliance with its orders." The Plaintiff objected and demanded Apple file proper motions.

The magistrate scheduled a conference for the following day. Plaintiff objected again that the escalation was improper, Apple was not using proper motions for its requests, the matter was not a discovery dispute, the request was retaliatory, evidence must be reviewed, she must be able to file an opposition, any hearing must be recorded with a Court Reporter, and that Apple's conduct was harassment. The Court ignored every objection, scheduled the conference next day, with a private line, no Court Reporter or recording, and no confirmation any Opposition or evidence would be reviewed or considered. The court's own scheduling decisions tell Plaintiff and the public what is coming: the magistrate is going to take action as Apple requested with a predetermined view of the dispute.

At minimum — the floor — the conference will consist of a federal magistrate judge scolding and threatening a pro se worker-plaintiff to stop engaging in protected activity, based entirely on Apple's unsworn characterization of that activity, in a private unrecorded proceeding with no pending motion, no evidence, and no opportunity for the employee to be heard. That is not a function of a federal court. Nothing in Article III, the Federal Rules of Civil Procedure, or 28 U.S.C. § 636 authorizes a magistrate judge to summon a party to a private telephone call to deliver warnings and threats on behalf of the opposing party about the party's public speech, her NLRB charges, and her discussion of her own body and workplace conditions.

A verbal warning from a federal judge is not a neutral act — it presupposes that Apple's designations are valid, that the employee's speech is wrongful, and that the employee's characterization of her own workplace experiences as protected activity is wrong. Each of those is a contested issue in this litigation. The first is the subject of a pending challenge under the protective order which Apple refuses to engage with. The last is the central merits question heading to summary judgment. An informal warning adopts Apple's position on all of them without deciding any of them — and unlike a formal order, it cannot be appealed, cannot be reviewed, and will not appear in any record. It simply hangs over the Plaintiff, chilling her and her coworkers speech, with no mechanism to challenge it and no limit on its scope.

If the conference is instead intended to go beyond coercive threats and result in formal action — sanctions, a finding of contempt, a restraining order on speech, or an order compelling deletion of published expression (as Apple implicitly demands claiming irreparable harm if the Plaintiff does not delete posts and stop making statements) — then the remainder of this motion urgently applies.

## THE DESIGNATIONS ESCALATED BY APPLE ALL REPRESENT INFORMATION IN THE PUBLIC DOMAIN

The employer's motion for contempt fails because the confidentiality designation on which it relies is invalid. A unilateral designation under a stipulated blanket protective order is not a judicial finding — it is a provisional label the designating party must defend when challenged. *Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th Cir. 2003); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

The N.D. Cal. Model Protective Order confirms that the order extends "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles," that "mass, indiscriminate, or routinized designations are prohibited" and expose the designating party to sanctions, and that "the parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not — without the submission of competent evidence — constitute good cause." N.D. Cal. Model Protective Order §§ 1, 5.1, 13.2.

The employer — a technology company whose publicly known products are menstrual/ovulation tracking software and bed-based vital-signs sensors — designated as "confidential" testimony in which the employee complained about being pressured to submit to employer-directed study of the employee's menstruation and cervical mucus, and about the employer requiring the employee's sexual partners to sign NDAs to sleep in a bed equipped with the employer's sensors.

That a menstrual-health technology company studies menstruation is not a trade secret; it is the company's publicly marketed purpose. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984). The employee disclosed no algorithms, sensor specifications, or study data — only complaints about workplace conduct. The designation is facially pretextual and sanctionable. *See Del Campo v. Am. Corrective Counseling Servs.*, No. C-01-21151 JW, 2007 WL 3306496 (N.D. Cal. 2007).

Even if the employee had shared the transcript itself, contempt cannot issue because the employee's own pre-existing knowledge is not "discovery material." The Supreme Court held that a discovery protective order survives First Amendment scrutiny only where it "does not restrict the dissemination of the information if gained from other sources." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984). The

employee did not learn about being interrogated about the employee's menstrual cycle from discovery — the employee lived it.

The Model Order recognizes this, excluding from its protections "any information known to the Receiving Party prior to the disclosure." N.D. Cal. Model Protective Order § 3. The employer's further claim that even acknowledging the designation's existence is a "leak" is self-refuting: the Model Order's challenge mechanism requires the challenging party to provide "written notice of each designation it is challenging" and "explain the basis for its belief that the confidentiality designation was not proper." *Id.* § 6.2. If identifying a designation were itself a violation, no party could ever challenge one.

Finally, the employer's attempt to weaponize the protective order to silence harassment complaints implicates public policies that independently bar contempt. The employee's statements are protected opposition activity under Title VII, 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Congress and California have specifically prohibited using confidentiality mechanisms to silence such complaints: the Speak Out Act of 2022, Pub. L. No. 117-224, invalidates pre-dispute nondisclosure provisions in harassment disputes; California's Silenced No More Act, Cal. Gov. Code § 12964.5 (SB 331), prohibits any provision preventing disclosure of unlawful workplace conduct. The employer is asking this Court to accomplish through a discovery protective order what it could not accomplish through a private NDA under either federal or California law. The motion should be denied, and the Court should consider whether the employer's designations constitute sanctionable abuse under Model Order § 5.1 and independent retaliation under Title VII and FEHA, Cal. Gov. Code § 12940(h).

## THE MAGISTRATE JUDGE LACKS STATUTORY AUTHORITY OVER THE RELIEF APPLE SEEKS

None of the relief in Apple's letter is within the magistrate judge's authority.

***Injunctive relief.*** A magistrate judge cannot grant injunctive relief. Section 636(b)(1)(A) explicitly exempts "motion[s] for injunctive relief" from a magistrate's authority over pretrial matters. Apple seeks a restraining order on speech and compelled deletion of published posts. These are injunctive relief regardless of how Apple captions them. At most, the magistrate could submit proposed findings and recommendations to this Court under § 636(b)(1)(B), subject to de novo review. But that is not what is happening — Apple is seeking an immediate ruling on a telephone call this afternoon.

**Contempt.** A magistrate judge's contempt authority is sharply constrained. Summary contempt under § 636(e)(2) is limited to misbehavior in the magistrate's presence. Social media posts are not conduct in the magistrate's presence. Criminal and civil contempt under §§ 636(e)(3)-(4) are available only in cases

where the magistrate presides with the consent of the parties — this is a non-consent referral. For contempt occurring outside the magistrate's presence, the statute requires that "the magistrate judge shall forthwith certify the facts to a district judge" who then conducts the hearing and determines punishment. § 636(e)(6)(B)(ii). The Advisory Committee Notes to Fed. R. Civ. P. 73 confirm: "A hearing on contempt is to be conducted by the district judge upon certification of the facts and an order to show cause by the magistrate."

In practice, certifying facts requires finding facts. Finding facts requires evidence — sworn testimony, authenticated exhibits, briefing from both sides, and a record. What is scheduled for Feb. 20 is none of those things. The magistrate is convening a private, unrecorded telephone conference with no sworn testimony, no authenticated evidence, no briefing from Plaintiff, and no court reporter. If the magistrate questions Plaintiff on an unrecorded call and then summarizes what she believes Plaintiff said — without a transcript, without sworn testimony, without Plaintiff having filed anything — that is not fact-finding. There are no facts to certify because there has been no process by which facts could be found.

**The magistrate's own domain.** The magistrate recognized this boundary at the July 2, 2025 hearing where the protective order was adopted: "I want to make sure that I focus — stick to, you know, my domain which is discovery. Fortunately for me, I don't have to deal with all the rest of this case." ( July 2, 2025 Tr. at 34:19-22). Apple's letter asks the magistrate to do exactly what she said she does not do: adjudicate contempt, impose sanctions, issue a speech injunction, and order deletion — none of which are discovery.

**Apple's own letter concedes this exceeds discovery.** Apple states that the underlying conduct "directly implicates the substantive issues" in the retaliation litigation and cites the "Confidentiality and Intellectual Property Agreement" (Dkt. 280, fn. 2) — a substantive contract claim — as independent grounds. Apple cannot simultaneously argue this is a routine discovery dispute properly before the magistrate and that it directly implicates the merits and involves contractual obligations independent of the protective order.

## CONTEMPT FINDING WOULD RESOLVE THE CENTRAL MERITS DISPUTE — WITHOUT SUMMARY JUDGMENT

This is the point that requires this Court's immediate attention. Apple says it fired Plaintiff for publicly discussing Apple's workplace studies. Apple's defense is that Plaintiff was "leaking" confidential information. Plaintiff's *Tamney* wrongful termination claim, her Labor Code § 1102.5 whistleblower claim, and her § 96(k) claim rest on the position that she was engaged in protected protest of invasions of privacy

under the California Constitution, Article I, § 1. Whether that speech was "leaking" or "protected protest" is the single most contested issue heading to summary judgment.

Apple's emergency letter frames the current dispute identically to its termination defense. Apple says Plaintiff "leaked" studies in 2021 and is "leaking" the same studies now. If a court finds Plaintiff in contempt for discussing the studies publicly — on a telephone call, without a motion, without evidence, without opposition — Apple will argue at summary judgment: "A federal court already found this speech was wrongful, not protected." Plaintiff's *Tamney* claim would be gutted — not through a Rule 56 motion with a statement of undisputed facts, evidence, opposition, and a hearing, but through a five-page discovery letter and an unrecorded phone call.

A finding would also establish breach of the IPA, giving Apple damages leverage it cannot currently obtain because the bankruptcy stay prohibits breach of contract claims and because the IPA terms Apple is currently trying to enforce were rescinded by the April 2025 NLRB settlement. Further, it would prejudice the NLRB proceedings, where three pending charges allege the designations are unlawful work rules, if there is even jurisdiction for this court to hear the same issues. The Court would be issuing an advisory opinion on a matter within the NLRB's exclusive jurisdiction.

Plaintiff warned the Court about this at the July 2, 2025 hearing. She told the magistrate that Apple's use of the protective order "appeared to be their attempt to do a summary judgment motion without summary judgment. They want to say they fired me for something confidential, whether or not if it was confidential." (July 2, 2025 Tr. at 6:22-24). That is a precise description of what Dkt. 280 is attempting to accomplish. This Court told Plaintiff at Dkt. 213 that she could "contest a designation." A contempt finding for contesting a designation would contradict this Court's own order.

## Multiple Independent Jurisdictional Bars Prevent Any Relief for Apple at this Juncture

***Bankruptcy Automatic Stay.*** Plaintiff is a Chapter 7 debtor (Case No. 25-11496, D. Mass.). The automatic stay under 11 U.S.C. § 362(a) bars "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor" (§ 362(a)(1)) and "any act to collect, assess, or recover a claim against the debtor" (§ 362(a)(6)). Apple has actual knowledge of the bankruptcy and retained bankruptcy counsel (Pillsbury Winthrop Shaw Pittman LLP). Apple seeks sanctions, contempt, and injunctive relief against the debtor and cites the IPA — a prepetition employment agreement — as independent grounds. Apple never sought stay relief.

In the Ninth Circuit, actions taken in violation of the automatic stay are void — not just voidable.

*Schwartz v. United States (In re Schwartz*), 954 F.2d 569, 571-72 (9th Cir. 1992). See also *In re Hruby,* 512 B.R. 262, 274 (Bankr. D. Colo. 2014) (employer must seek stay relief before pursuing injunctive enforcement of confidentiality provisions against Chapter 7 debtor). Any order entered on this would be a nullity with no legal effect. Apple's willful violation also exposes it to mandatory actual damages and potential punitive damages under § 362(k)(1). The Court should not permit a proceeding whose outcome will be void as a matter of law. A Motion for Sanctions against Apple for violating the Stay was also filed today and is filed concurrently as a Notice of Pendency.

**Garmon Preemption***.* "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959); see also *Glacier Northwest, Inc. v. Teamsters Local 174*, 598 U.S. ____ (2023) (preserving Garmon's core holding).

Plaintiff's speech is at minimum "arguably" protected by the NLRA. Filing NLRB charges is protected under § 8(a)(4). Social media posts about workplace conditions are protected concerted activity under § 7. See *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978) (Section 7 protects employee communications about working conditions to the public). The NLRB has docketed three charges alleging Apple's designations are unlawful work rules. See also *Banner Health System*, 362 NLRB 1108 (2015) (employer confidentiality rules restricting employee discussion of workplace matters violate § 8(a)(1)). This Court must defer to the Board's exclusive competence.

Apple's own letter identifies Plaintiff's posting of her NLRB charge as one of the alleged "breaches." (Dkt. 280 at 3). Filing an NLRB charge and publicizing it is protected activity under § 8(a)(4). Apple is seeking sanctions for protected activity. That is textbook retaliation, and the NLRB — not this Court — has jurisdiction over it.

**Norris-LaGuardia Act***.* "No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter." 29 U.S.C. § 101. Section 104(e) specifically prohibits injunctions against "giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." Federal law expressly protects the Plaintiff's conduct in publicizing her labor dispute with Apple about Apple's continued claims that worker complaints about these user studies are somehow "leaking."

Even where injunctive relief might theoretically be available, §107 requires testimony of witnesses in open court with opportunity for cross-examination, review of evidence, findings of fact filed in the

record, a finding of substantial and irreparable injury, and a finding that public officers cannot furnish adequate protection. An unrecorded telephone conference satisfies none of these requirements.

*California's Anti-SLAPP Statute.* If Apple files the proper motions this Court requires — a Rule 65 motion, a contempt petition, or a sanctions motion — each would arise from Plaintiff's exercise of free speech and petition rights and would be subject to California's anti-SLAPP statute, CCP § 425.16, which the Ninth Circuit applies in federal court. *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999). Plaintiff's NLRB charges are statements before an official proceeding (§ 425.16(e)(1)-(2)). Her public posts about workplace safety and privacy are statements on issues of public interest (§ 425.16(e)(3)). Apple would bear the burden of demonstrating a probability of prevailing, *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002), and would face mandatory fee-shifting upon failure. § 425.16(c)(1). Apple cannot obtain relief through a letter, and proper motions would trigger anti-SLAPP — closing both doors.

## THE PROCEEDINGS VIOLATE DUE PROCESS AND THE COURT'S STANDING ORDER

*Due Process. Contempt is quasi-criminal.* It requires specific written notice of the charges, reasonable time to prepare a defense, an evidentiary hearing with sworn testimony and cross-examination, and proof by clear and convincing evidence (civil) or beyond a reasonable doubt (criminal). *International Union, UMWA v. Bagwell*, 512 U.S. 821, 826-32 (1994); *Taylor v. Hayes*, 418 U.S. 488, 498-99 (1974); Fed. R. Crim. P. 42(a). Apple filed no sworn affidavits, no authenticated evidence, and no witness testimony. Plaintiff received less than 24 hours' notice. No opposition was permitted. The conference is unrecorded — meaning no record for this Court to review and no transcript for the Ninth Circuit on appeal. 28 U.S.C. § 753 requires verbatim recording of court proceedings.

A speech injunction triggers the most demanding constitutional protections. A prior restraint on speech is "the most serious and least tolerable infringement on First Amendment rights," carrying a "heavy presumption" against constitutional validity. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Compelled deletion of already-published speech is arguably more extreme than a classic prior restraint. See *Rasawehr v. Bey* (Ohio S. Ct. 2020) (unanimously striking down social media deletion order); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (mandatory injunctions subject to heightened standard). No First Amendment analysis appears anywhere in Apple's filing.

*The Standing Order.* The Standing Order requires five days for meet and confer, then one side files

a letter, then the other side files an opposition, then the judge decides. Apple's own letter admits Plaintiff contested the designations and initiated the meet and confer prior to Apple's escalations, but that Apple refuses to engage in meet/confer or substantiate the designations prior to requesting sanctions (Dkt. 280 at 2). Prior to Apple ever responding to a single designation challenge — Apple emailed the courtroom deputy requesting an emergency conference. The meet and confer process has not even begun because of Apple's refusal, let alone concluded. Apple is demanding punishment for a dispute it refuses to adjudicate.

The Standing Order expressly says any Motion for Sanctions cannot be filed until the preliminary meet/confer, letters, and adjudication is complete. The magistrate also established five business days for oppositions at the 2025 hearing, rejecting Apple's proposal to deny Plaintiff the right to file oppositions and stating that such a restriction would "start to sound like interfering with the opportunity for both sides to be heard." (July 2, 2025 Tr. at 35:25-36:2). Apple's emergency letter achieved the same result the magistrate rejected: Plaintiff requested time to respond and received none. Apple's filing violates the orders in that it seeks to punish the Plaintiff prior to ever adjudicating the merits of the underlying dispute.

## THE PROTECTIVE ORDER HAS BEEN USED EXCLUSIVELY AS A GAG ORDER

This Court should know what Apple has done with the protective order it granted. Apple has designated **zero** produced documents. Apple confirmed this as recently as February 10, 2026. Apple has also withheld approximately 98% of the documents Plaintiff requested. The order that was obtained to facilitate document production has facilitated none.

Apple initially designated pages 66 through 305 of a 336-page deposition transcript — approximately 72% — under a blanket designation that violated the protective order's prohibition on "mass, indiscriminate, or routinized designations." That designation remained in effect for 50 days. When Apple narrowed it, approximately 99% of the previously designated material was conceded non-confidential. The remaining designations — over 140 terms on an unsigned, undated six-page PDF — included facially absurd entries such as the letter "N" and the word "hardware."

The designations at the center of Apple's emergency letter are not product names or technology terms. They are Plaintiff's complaints that Apple should not be asking employees about their menstruation, should not be monitoring employees' ovulation, should not be requesting employee's sex partners sign NDAs about sleeping in the employee's beds, and should not be studying employees' cervical mucus. Apple's counsel reviewed the transcript, identified each instance where Plaintiff protested invasions of her bodily privacy and advocated for coworkers, and designated those complaints as Apple Confidential. The

subject matter of the designations is inseparable from the protected concerted activity at issue in this case.

Both courts understood the protective order as a document-handling mechanism. The magistrate explained it as governing "confidential information that is *produced* to you in this litigation." (July 2, 2025 Tr. at 13:18-23). This Court wrote that "even if Apple designates certain *documents* as confidential, that does not bar Ms. Gjovik from contesting a designation." Dkt. 213 at 3. Both said "documents." Neither contemplated that Apple would designate zero documents and use the order exclusively to designate an employee's spoken complaints, then seek contempt for the employee's continued public speech.

A confidentiality designation governs how material appears in court filings — redacted or under seal — and limits access within the litigation. It does not prohibit a party from discussing her own experiences on social media, publicizing her NLRB charges, or petitioning the government about workplace safety. Apple has never cited any provision of the protective order that prohibits public discussion of the general subject matter of designated material — because no such provision exists.

When Apple claims its designations operate as a prohibition on Plaintiff's speech *outside* of court — that Plaintiff cannot discuss these topics on social media, in blog posts, in NLRB charges, or with coworkers — Apple is not enforcing a litigation designation. Apple is imposing a work rule. The legality of employer work rules restricting employee speech about working conditions is a matter for the NLRB. *Banner Health System*, 362 NLRB 1108 (2015). That is why Plaintiff filed NLRB charges, and that is why three charges are now pending.

Apple's letter (Dkt. 280, fn. 2) also cites the "Confidentiality and Intellectual Property Agreement" as independent grounds for suppressing Plaintiff's speech. This is the same agreement Apple promised the NLRB it would stop enforcing in the April 2025 national settlement (Case No. 32-CA-284428). That settlement required Apple to rescind overbroad confidentiality policies, post a nationwide notice promising not to discipline employees for discussing working conditions, and cease enforcing its "Proprietary Information" definition to the extent it covered terms and conditions of employment.

The settlement included a self-executing default provision: upon non-compliance, the Regional Director would reissue the October 2024 complaint, Apple's allegations would be deemed admitted, and the Board could enter a full remedy without trial. Apple is citing to this Court the very agreement it told the NLRB it would no longer enforce.

## Prior Experience With This Magistrate Warrants This Court's Oversight

Plaintiff raises these facts not to relitigate the July 2, 2025 hearing, but to explain why this Court

— not the magistrate on an unrecorded telephone call — must decide the issues Apple has raised. At the July 2 hearing, the magistrate stated she would not read Plaintiff's filings: "I'm not going to read all of these pages and pages." (July 2, 2025 Tr. at 13:4-7). Those filings included three NLRB charges and complaints, the NLRB settlement in which Apple agreed to stop enforcing the exact confidentiality provisions now at issue, the meet and confer transcripts documenting Apple's counsel's conduct (including her explicit statement that Plaintiff "could be held in contempt" for violating the order), and the Motion to Quash explaining why the protective order would function as a gag order. These materials are the foundation of the dispute Apple is now asking the magistrate to adjudicate on an emergency call. The magistrate declined to review them.

The magistrate opened the hearing by diagnosing the problem as Plaintiff's personality — "it's too personal for you ... you can't separate yourself and your personal feelings and emotions" (id. at 3:10-17) — before any engagement with substance. Plaintiff was pressured to sign the protective order that day: "Ms. Gjovik, can you sign it as soon as possible? ... Today would be great." (Id. at 18:10-14).

Apple's counsel weaponized Plaintiff's private mental health disclosures, reading from a private email about the Boeing whistleblower's suicide and Plaintiff's PTSD to justify cutting off meet/confer, asked to prohibit the Plaintiff from being able to file Oppositions, and repeatedly accusing the Plaintiff of having meritless claims and suggesting she should be on a vexatious petitions list. (Id. at 49:1-50:21). The same counsel stated she could not agree to refrain from harassing Plaintiff during the deposition: "There's always a condition to it. 'You have to agree not to harass me.' ... I can't agree to that." (Id. at 47:22-24). The designations from that deposition where counsel insisted upon her "right" to "harass" the Plaintiff, are now the basis for Apple's contempt request.

These proceedings should be before this Court, on the record, with proper process. Plaintiff is willing to attend hearings with full due process protections — briefing, evidence, a court reporter, and a public proceeding. Plaintiff should not be required to attend a private, unrecorded conference where these dynamics will recur without any record for this Court to review.

## Apple Must Follow the Rules

If Apple wants a restraining order on speech, Apple must file a Rule 65 motion before this Court — with affidavits, a showing of irreparable harm, likelihood of success on the merits, balance of equities, public interest, and strict scrutiny analysis. Fed. R. Civ. P. 65(a)-(b); *Winter v. NRDC*, 555 U.S. 7 (2008). Any speech injunction must "state its terms specifically and describe in reasonable detail the act or acts restrained." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

If Apple wants sanctions, Apple must file a Rule 11 motion with the required 21-day safe harbor (Fed. R. Civ. P. 11(c)(2)) or a Rule 37 motion, per N.D. Cal. Civil L.R. 7-8. If Apple wants a contempt finding, it must file a petition for contempt or seek an order to show cause before this Court with full due process protections. If Apple wants docket entries sealed, it must file a motion under N.D. Cal. Civil L.R. 79-5 meeting the "compelling reasons" standard. See *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

If Apple believes Plaintiff breached the IPA — which Apple cites at Dkt. 280, fn. 2 — Apple must file a counterclaim or separate breach of contract action. But the bankruptcy automatic stay prohibits that until Apple obtains stay relief. There is no shortcut.

None of these remedies are available through a five-page discovery letter and a next-day telephone conference. Apple is represented by Orrick Herrington & Sutcliffe and Morgan Lewis & Bockius — firms that know exactly what filings are required for each type of relief. The decision to proceed by letter was deliberate, because proper motions require proper process.

# RELIEF REQUESTED

**Plaintiff respectfully requests:**

1. **Quash the February 20, 2026, 2:15 PM conference.** The magistrate judge lacks statutory authority over the relief Apple seeks, the proceedings violate due process, the bankruptcy automatic stay renders any resulting order void, and the conference risks resolving the central merits question in this case without summary judgment.

2. **Order Apple to file proper motions before this Court.** If Apple wishes to pursue sanctions, contempt, injunctive relief, or speech restrictions, Apple must file the appropriate motion under the applicable rule or statute — with proper notice, briefing, sworn evidence, and an opportunity for Plaintiff to respond.

3. **Reconsider the protective order (Dkt. 235).** This Court's May 14, 2025 order (Dkt. 213) stated that the Motion to Quash appeared "premature" and that "even if Apple designates certain documents as confidential, that does not bar Ms. Gjovik from contesting a designation."

Those circumstances have changed. Apple has made designations — not of documents, but of Plaintiff's complaints about employer misconduct. Plaintiff contested them. Apple is now seeking contempt for the contestation — which contradicts this Court's assurance that Plaintiff could contest designations.

Apple's position requires the court to simultaneously holds that that NLRA-protected activity is sanctionable misconduct, to enforce an agreement the NLRB required Apple to rescind due to it violating federal labor statutes, and to issue an injunction Congress expressly prohibits. Any entertainment of Apple's escalations on this matter is contributing to Apple's anti-labor conduct which the NLRB already found violates the NLRA and chills workplace organizing.

Further, on Feb. 18, Apple claimed the Plaintiff "leaked" information that was efiled to this court on Feb. 17 in the Notice of Pendency at Dkt. 278 with the full unredacted NLRB charge and cover letter at pp. 40-73. The blog post and Twitter/X posts at issue are also now filed as Exhibit to the Opposition/ Objections. This court can see that the words that Apple claims are "confidential" are literally "menstruation," "cervical mucus," "co-sleepers," "sexual activity," and "ovulation" -- and phrases include "measuring female employee's cervical mucus" and "the cervical mucus secretion." The Plaintiff was complaining it was inappropriate and improper for Apple to involve itself in its employees genital secretions and sexual activity, especially for commercial purposes where it should just pay for legitimate consensual data through normal processes, not coerce its engineering employees to let Apple examine, track, and "study" the moisture levels of their vaginas during the workday.

Every prediction Plaintiff made in her May 13, 2025 Motion to Quash (Dkt. 211, 205 pages) has materialized. The protective order should be vacated, or at minimum, the designations at issue should be affirmatively ordered to not be enforced in any way pending proper adjudication. If Apple thought their designations were legitimate, it would have signed and dated them, actually served them, and had no issue adjudicating them through normal channels, but instead Apple is doing this.

---

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed Feb. 20 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT D: EMAILS

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br><br> **Apple Inc.**, *a corporation*, <br><br> Defendant. | **Case No. 3:23-CV-04597-EMC** <br><br> **COPY OF APPLE'S OFF DOCKET ESCALATION ON FEB. 18 2026** |

# NOTICE

Defendant Apple Inc has just made an off-docket escalation in this case frivolously accusing the Plaintiff of misconduct, seeking sanctions, and taking actions in direct retaliation for two NLRB charges filed against Apple in the last three days (including today). Apple's counsel have not filed anything to the docket in this case about this escalation and instead are attempting to seek unlawful sanctions and gag orders against the Plaintiff through informal emails with court staff. Accordingly I'm objecting and I'm filing a copy of their email to the docket along with the NLRB charge filed against Apple just a few hours ago, which they were sent a copy of prior to their outburst. The prior NLRB charge filed Feb. 16 2026 was directly referenced in the Notice of Pendency filed at Dkt. 278 and includes the same and similar underlying issues, putting this matter in front of the NLRB and triggering *Garmon* preemption. Apple's escalation is improper and violates labor laws and the Supremacy clause of the Constitution.

/s/ **Ashley M. Gjovik**

*Pro Se Plaintiff*

Dated: Feb. 18 2026

# Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order breaches

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | Riechert, Melinda <mriechert@orrick.com> |
| CC | KAW CRD<kawcrd@cand.uscourts.gov>, Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, EMC CRD<EMCCRD@cand.uscourts.gov> |
| Date | Wednesday, February 18th, 2026 at 5:20 PM |

Hello,

I object to Apple's conduct in making this escalation, its refusal to comply with court procedures, as well as the unlawful conduct underlying Apple's behavior. I also note that all of this is already in front of the NLRB and this court does not even have jurisdiction to hear Apple's supposed complaints under *Garmon* preemption, which is likely why Apple is emailing a court instead of filing motions.

The Court's procedures require parties to meet/confer for five days and then file a Letter to the court. There is no process for emailing the court to escalate issues to a deputy and not filing anything to a court docket regarding the matter, let alone same day with vague complaints and no legal basis. Apple also fails to include anything describing what its concern even is, let alone any legal authority for their request.

I also note that Apple is facing two NLRB charges for the matter which they are now attempting to escalate outside of formal court filings, and without any record on the docket of their escalations. They were also told if they escalated again, another NLRB charge would be filed, which would make this their third NLRB charge in three days and which will be filed shortly. Accordingly, I'm also cc'ing Apple NLRB/labor counsel on this matter.

I'm also cc'ing Judge Chen's deputy because the concealed subject matter Apple is attempting to escalate to this court also overlaps with substantive matters in Judge Chen's case, and I objected yesterday in a filing at Dkt. 278 that counsel for Apple were already attempting to interfere with Judge Chen's case management through other litigation in this District, and this yet another example of that, as here Apple is refusing to document this escalation on Judge Chen's docket and trying to trigger conflicting decisions and processes that will interfere with the substantive matters in the case.

At the very least, Apple's counsel need to follow the court's rules and processes -- emailing court staff while refusing to file anything to a court docket is completely inappropriate. Accordingly I'm filing a copy of this email I'm sending now as a Notice to the docket so there's a least a record of Apple's conduct here.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 4:22 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Dear Courtroom Deputy:

I represent defendant Apple Inc. in the above-referenced case and write to request a conference as soon as possible with Magistrate Judge Westmore.

The requested conference would address Plaintiff's repeated and ongoing breaches of the operative Protective Order in this case (Dkt. No. 235). As outlined in the attached letter, absent immediate action by the Court, information purporting to describe Apple studies – which it designated in this litigation as Confidential pursuant to the Protective Order – will remain exposed to the public.

As detailed in the attached, Apple attempted to resolve this issue directly with Plaintiff (who is copied on this outreach) without success.

Please advise as to next steps.  I can be available for a conference any time today; tomorrow (Thursday, February 19) any time before 12noon or after 3pm; or any time on Friday, February 20.

Thank you,

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

# Re: URGENT

| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
|------|---|
| To | harry.johnson<harry.johnson@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Kelcey Phillips <kelcey.phillips@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com> |
| Date | Wednesday, February 18th, 2026 at 1:36 PM |

Hello,

I'm attaching a courtesy copy of the latest NLRB charge against Apple, filed today, as noted in my responses to Orrick below.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 1:07 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> I'm also attaching my "objections" to your excessive confidentiality designations. Since you refused to send designations in a document I could easily respond to (in addition to refusing to date it, sign it, or send it to me directly) I converted it to an excel and put my responds there.
>
> I also object that you never made designations if you never actually put them on the record or served them to me, or signed them, or dated them. Similarly there's no basis for a blanket gag order under that protective order which expressly prohibits exactly that, so Apple's actually never made any "designations" but instead has only issued unlawful work rules, threats, and coercive statements -- in addition to violating many other laws and policies and my constitutional rights.
>
> The short story is none of your designations, even if they are designations, which they are not, are confidential and most of them are unlawful restrictions on speech, in addition to your 7-week long blanket prohibition on hours of speech which was especially egregious and illegal.
>
> —
>
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 18th, 2026 at 12:26 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:
>
>> Hello agents of the Employer and Charged Party, Apple Inc,
>>
>> Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file

today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.

You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.

Thanks,
-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.
>
> **Melinda Riechert**
>
> Partner
>
> [Orrick](#)
>
> Silicon Valley
>
> T 650/614-7423
> M 650 759 1929
> [mriechert@orrick.com](#)

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**686.47 KB**    2 files attached    3 embedded images

DEV.1-3771297801.AdditionalInfoSupportingCharge.pdf 2.77 KB

CHG.1-3771297801.SignedChargeAgainstEmployer_Wiz.pdf 679.71 KB

# RE: Telephonic Discovery Conference Scheduled Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 -

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | KAW CRD<KAWCRD@cand.uscourts.gov>, Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, EMC CRD<EMCCRD@cand.uscourts.gov> |
| Date | Thursday, February 19th, 2026 at 5:32 PM |

This should be a public hearing since it puts my core civil rights at risk; threatens to deprive me of rights, liberties, and property; is evidence for and interferes with NLRB proceedings; is a continuation of Apple's ongoing attempts to incarcerate me including the illegal 2022 restraining order Apple got (and was reversed upon appeal as a violation of my Constitutional rights) arising out of my prior NLRB charges against Apple; and per Apple's own filing this "conference" directly implicates the substantive issues in my retaliation litigation; as well as threatens to make pseudo-criminal findings against me.

Accordingly, at a bare minimum such a proceeding requires: notice, opportunity to be heard, and public involvement -- including briefing, evidence, public hearings, court reporters, and a clear record of what is discussed, considered, and decided, and the basis for any decisions following the FRCP and case law; and all of which is available to the public because we live in the United States of America which is supposedly a democracy.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 19th, 2026 at 5:10 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Plaintiff has publicly filed the attached document on the docket sheet which contains the email you sent just to the parties with the Zoom access line for tomorrow's conference, which the Court had shared only with the parties, and which required that "you must be logged into an ECF account of counsel of record" in order to view the letter. As a result the Zoom access number is now publicly available. Do you want to issue a new Zoom access line so that non-parties don't join the conference, which I understood was only available to the parties/counsel for the parties?

> **Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

---

**From:** KAW CRD <KAWCRD@cand.uscourts.gov>
**Sent:** Thursday, February 19, 2026 3:10 PM
**To:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Riechert, Melinda <mriechert@orrick.com>
**Cc:** KAW CRD <KAWCRD@cand.uscourts.gov>; Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; EMC CRD <EMCCRD@cand.uscourts.gov>
**Subject:** Telephonic Discovery Conference Scheduled Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 -
**Importance:** High

<span style="background-color:red;color:white">**[EXTERNAL]**</span>

Good afternoon,

Please be advised that a Telephonic Discovery Conference has been set before Judge Westmore for tomorrow, 2/20/2026 at 2:15pm, see attached as a courtesy copy along with the conference information below.

| 02/19/2026 | view281 | CLERK'S NOTICE SETTING A TELEPHONIC DISCOVERY CONFERENCE. Telephonic Discovery Conference set for 2/20/2026 at 02:15 PM in Oakland, - Telephonic Only before Magistrate Judge Kandis A. Westmore. Please note that you must be logged into an ECF account of counsel of record in order to view this document. (ccf, COURT STAFF) (Filed on 2/19/2026) --- Copy of this document emailed to counsels of record including Pro Se Plaintiff.(NEF) (Entered: 02/19/2026) |

**Call in Number:** (669) 254-5252

**Meeting ID: 160 012 3036**

**Passcode: 948151**

Thank you.

**Cindy C. Fan**

Courtroom Deputy to the Honorable Kandis A. Westmore

United States District Court

Northern District of California

https://cand.uscourts.gov

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>

**Sent:** Thursday, February 19, 2026 12:27 PM

**To:** Riechert, Melinda <mriechert@orrick.com>

**Cc:** KAW CRD <KAWCRD@cand.uscourts.gov>; Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; EMC CRD <EMCCRD@cand.uscourts.gov>

**Subject:** Re: RE: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order breaches

<mark>**CAUTION - EXTERNAL:**</mark>

I require time to file a written response. This is a request for an emergency TRO without the proper paperwork or process, implicating extensive due process concerns and civil rights issues, in addition to the labor law preemption and statutory prohibition on injuctions arising out of labor disputes. I intend to file my oppposition by noon on Monday 2/23 unless the request as filed is dismissed or withdrawn prior.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**.

-------- Original Message --------
On Thursday, 02/19/26 at 10:27 Riechert, Melinda <mriechert@orrick.com> wrote:

> We just filed our letter on the docket.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

---

**From:** KAW CRD <KAWCRD@cand.uscourts.gov>
**Sent:** Thursday, February 19, 2026 10:07 AM
**To:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Riechert, Melinda <mriechert@orrick.com>
**Cc:** KAW CRD <KAWCRD@cand.uscourts.gov>; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R.
<jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Kelcey Phillips
<kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L.
<mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; EMC CRD
<EMCCRD@cand.uscourts.gov>
**Subject:** Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order
breaches

[EXTERNAL]

Good Morning,

Per procedure, any and all requests must be filed in writing on the case docket to be reviewed by the Court.

Thank you.

**Cindy C. Fan**

Courtroom Deputy to the Honorable Kandis A. Westmore

United States District Court

Northern District of California

[https://cand.uscourts.gov](https://cand.uscourts.gov)

---

**From:** Ashley M. Gjovik (Legal Matters) <[legal@ashleygjovik.com](mailto:legal@ashleygjovik.com)>
**Sent:** Wednesday, February 18, 2026 5:20 PM
**To:** Riechert, Melinda <[mriechert@orrick.com](mailto:mriechert@orrick.com)>
**Cc:** KAW CRD <[KAWCRD@cand.uscourts.gov](mailto:KAWCRD@cand.uscourts.gov)>; Ashley M. Gjøvik <[ashleymgjovik@protonmail.com](mailto:ashleymgjovik@protonmail.com)>; Perry, Jessica R. <[jperry@orrick.com](mailto:jperry@orrick.com)>; Mantoan, Kathryn G. <[kmantoan@orrick.com](mailto:kmantoan@orrick.com)>; Kelcey Phillips <[kelcey.phillips@morganlewis.com](mailto:kelcey.phillips@morganlewis.com)>; Mahoney, Brian <[brian.mahoney@morganlewis.com](mailto:brian.mahoney@morganlewis.com)>; Stolzenburg, Mark L. <[mark.stolzenburg@morganlewis.com](mailto:mark.stolzenburg@morganlewis.com)>; harry.johnson <[harry.johnson@morganlewis.com](mailto:harry.johnson@morganlewis.com)>; EMC CRD <[EMCCRD@cand.uscourts.gov](mailto:EMCCRD@cand.uscourts.gov)>
**Subject:** Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order breaches

<mark>**CAUTION - EXTERNAL:**</mark>

Hello,

I object to Apple's conduct in making this escalation, its refusal to comply with court procedures, as well as the unlawful conduct underlying Apple's behavior. I also note that all of this is already in front of the NLRB and this court does not even have jurisdiction to hear Apple's supposed complaints under *Garmon* preemption, which is likely why Apple is emailing a court instead of filing motions.

The Court's procedures require parties to meet/confer for five days and then file a Letter to the court. There is no process for emailing the court to escalate issues to a deputy and not filing anything to a court docket regarding the matter, let alone same day with vague complaints and no legal basis. Apple also fails to include anything describing what its concern even is, let alone any legal authority for their request.

I also note that Apple is facing two NLRB charges for the matter which they are now attempting to escalate outside of formal court filings, and without any record on the docket of their escalations. They were also told if they escalated again, another NLRB charge would be filed, which would make this their third NLRB charge in three days and which will be filed shortly. Accordingly, I'm also cc'ing Apple NLRB/labor counsel on this matter.

I'm also cc'ing Judge Chen's deputy because the concealed subject matter Apple is attempting to escalate to this court also overlaps with substantive matters in Judge Chen's case, and I objected yesterday in a filing at Dkt. 278 that counsel for Apple were already attempting to interfere with Judge Chen's case management through other litigation in this District, and this yet another example of that, as here Apple is refusing to document this escalation on Judge Chen's docket and trying to trigger conflicting decisions and processes that will interfere with the substantive matters in the case.

At the very least, Apple's counsel need to follow the court's rules and processes -- emailing court staff while refusing to file anything to a court docket is completely inappropriate. Accordingly I'm filing a copy of this email I'm sending now as a Notice to the docket so there's a least a record of Apple's conduct here.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 4:22 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Dear Courtroom Deputy:

I represent defendant Apple Inc. in the above-referenced case and write to request a conference as soon as possible with Magistrate Judge Westmore.

The requested conference would address Plaintiff's repeated and ongoing breaches of the operative Protective Order in this case (Dkt. No. 235). As outlined in the attached letter, absent immediate action by the Court, information purporting to describe Apple studies – which it designated in this litigation as Confidential pursuant to the Protective Order – will remain exposed to the public.

As detailed in the attached, Apple attempted to resolve this issue directly with Plaintiff (who is copied on this outreach) without success.

Please advise as to next steps.  I can be available for a conference any time today; tomorrow (Thursday, February 19) any time before 12noon or after 3pm; or any time on Friday, February 20.

Thank you,


**Melinda Riechert**

Partner


Orrick


Silicon Valley


T 650/614-7423

M 650 759 1929

mriechert@orrick.com

# Re: Telephonic Discovery Conference Scheduled Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 -

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | KAW CRD<KAWCRD@cand.uscourts.gov> |
| CC | Ashley Gjovik<ashleymgjovik@protonmail.com>, Riechert, Melinda<mriechert@orrick.com>, KAW CRD<KAWCRD@cand.uscourts.gov>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, EMC CRD<EMCCRD@cand.uscourts.gov> |
| Date | Thursday, February 19th, 2026 at 3:33 PM |

I object to this and will be filing formal objections to the docket today along with a copy of this email. I asked for at least a chance to file a written response by Monday, which is even less time and procedure guaranteed by the rules and this Court's orders. But that request was just de facto denied, depriving me of the very bare minimum of my Constitutional due process rights.

I demand that a court reporter be present at this hearing and provide a formal transcript. What Defendant Apple has requested is basically a criminal-like trial of me based on a five page letter, no evidence, requesting blatant violations of the NLRA and Norris-LaGuardia Act and whistleblower protection statutes, violating this courts Standing Orders and Local Rules, violating the Federal Rules of Civil Procedure. If any finding occurs against me, including any injunctions or sanctions, there must be an evidentiary review, oral arguments, briefing, an a complete record of the proceedings before that occurs. A informal telephone conference without written briefing, risking criminal-like findings against me, is an egregious violation of my Constitutional and statutory rights.

Any finding will also swiftly be escalated to the Ninth Circuit for an emergency appellate review and will certainly be reversed due to the Court and Defendant's failure to follow basic procedural rules, use required motions and hearings, or provide basic Due Process. Further, this Court and Defendants are now taking actions which were the subject of my prior objections to this court (Dkt. 220) warning it this would occur, my prior motion to quash this protective order (Dkt. 211-213) because I knew Defendant would abuse it for this purpose, and my prior appeal to the Ninth Circuit requesting injunctive relief to prevent exactly this from happening (Dkt. 208-209).

—

**Ashley M. Gjøvik**

**BS, JD, PMP**


Sent with Proton Mail secure email.

On Thursday, February 19th, 2026 at 3:10 PM, KAW CRD <KAWCRD@cand.uscourts.gov> wrote:

> Good afternoon,

Please be advised that a Telephonic Discovery Conference has been set before Judge Westmore for tomorrow, 2/20/2026 at 2:15pm, see attached as a courtesy copy along with the conference information below.

| 02/19/2026 | 🖾 view281 | CLERK'S NOTICE SETTING A TELEPHONIC DISCOVERY CONFERENCE. Telephonic Discovery Conference set for 2/20/2026 at 02:15 PM in Oakland, - Telephonic Only before Magistrate Judge Kandis A. Westmore. Please note that you must be logged into an ECF account of counsel of record in order to view this document. (ccf, COURT STAFF) (Filed on 2/19/2026) <br><br> Copy of this document emailed to counsels of record including Pro Se Plaintiff.(NEF) (Entered: 02/19/2026) |

**Call in Number:** (669) 254-5252

**Meeting ID: 160 012 3036**

**Passcode: 948151**

Thank you.

**Cindy C. Fan**

Courtroom Deputy to the Honorable Kandis A. Westmore

United States District Court

Northern District of California

https://cand.uscourts.gov

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>

**Sent:** Thursday, February 19, 2026 12:27 PM

**To:** Riechert, Melinda <mriechert@orrick.com>

**Cc:** KAW CRD <KAWCRD@cand.uscourts.gov>; Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; EMC CRD <EMCCRD@cand.uscourts.gov>

**Subject:** Re: RE: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order breaches

**CAUTION - EXTERNAL:**

I require time to file a written response. This is a request for an emergency TRO without the proper paperwork or process, implicating extensive due process concerns and civil rights issues, in addition to the labor law preemption and statutory prohibition on injuctions arising out of labor disputes. I intend to file my oppposition by noon on Monday 2/23 unless the request as filed is dismissed or withdrawn prior.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**.

-------- Original Message --------
On Thursday, 02/19/26 at 10:27 Riechert, Melinda <mriechert@orrick.com> wrote:

> We just filed our letter on the docket.
>
>
> **Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com



**From:** KAW CRD <KAWCRD@cand.uscourts.gov>
**Sent:** Thursday, February 19, 2026 10:07 AM
**To:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Riechert, Melinda <mriechert@orrick.com>
**Cc:** KAW CRD <KAWCRD@cand.uscourts.gov>; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; EMC CRD <EMCCRD@cand.uscourts.gov>
**Subject:** Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order breaches

[EXTERNAL]

Good Morning,

Per procedure, any and all requests must be filed in writing on the case docket to be reviewed by the Court.

Thank you.

**Cindy C. Fan**

Courtroom Deputy to the Honorable Kandis A. Westmore

United States District Court

Northern District of California

https://cand.uscourts.gov

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Wednesday, February 18, 2026 5:20 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** KAW CRD <KAWCRD@cand.uscourts.gov>; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; EMC CRD <EMCCRD@cand.uscourts.gov>
**Subject:** Re: Gjovik v. Apple Inc., Case No. 23-cv-04597 - urgent request for conference re: protective order breaches

**CAUTION - EXTERNAL:**

Hello,

I object to Apple's conduct in making this escalation, its refusal to comply with court procedures, as well as the unlawful conduct underlying Apple's behavior. I also note that all of this is already in front of the NLRB and this court does not even have jurisdiction to hear Apple's supposed complaints under *Garmon* preemption, which is likely why Apple is emailing a court instead of filing motions.

The Court's procedures require parties to meet/confer for five days and then file a Letter to the court. There is no process for emailing the court to escalate issues to a deputy and not filing anything to a court docket regarding the matter, let alone same day with vague complaints and no legal basis. Apple also fails to include anything describing what its concern even is, let alone any legal authority for their request.

I also note that Apple is facing two NLRB charges for the matter which they are now attempting to escalate outside of formal court filings, and without any record on the docket of their escalations. They were also told if they escalated again, another NLRB charge would be filed, which would make this their third NLRB charge in three days and which will be filed shortly. Accordingly, I'm also cc'ing Apple NLRB/labor counsel on this matter.

I'm also cc'ing Judge Chen's deputy because the concealed subject matter Apple is attempting to escalate to this court also overlaps with substantive matters in Judge Chen's case, and I objected yesterday in a filing at Dkt. 278 that counsel for Apple were already attempting to interfere with Judge Chen's case management through other litigation in this District, and this yet another example of that, as here Apple is refusing to document this escalation on Judge Chen's docket and trying to trigger conflicting decisions and processes that will interfere with the substantive matters in the case.

At the very least, Apple's counsel need to follow the court's rules and processes -- emailing court staff while refusing to file anything to a court docket is completely inappropriate. Accordingly I'm filing a copy of this email I'm sending now as a Notice to the docket so there's a least a record of Apple's conduct here.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 4:22 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Dear Courtroom Deputy:

I represent defendant Apple Inc. in the above-referenced case and write to request a conference as soon as possible with Magistrate Judge Westmore.

The requested conference would address Plaintiff's repeated and ongoing breaches of the operative Protective Order in this case (Dkt. No. 235). As outlined in the attached letter, absent immediate action by the Court, information purporting to describe Apple studies – which it designated in this litigation as Confidential pursuant to the Protective Order – will remain exposed to the public.

As detailed in the attached, Apple attempted to resolve this issue directly with Plaintiff (who is copied on this outreach) without success.

Please advise as to next steps.  I can be available for a conference any time today; tomorrow (Thursday, February 19) any time before 12noon or after 3pm; or any time on Friday, February 20.

Thank you,


**Melinda Riechert**

Partner


Orrick


Silicon Valley


T 650/614-7423

M 650 759 1929

mriechert@orrick.com