**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# United States Bankruptcy Court

## District of Massachusetts

CHAPTER 7 CASE No: 25–11496

IN RE:

ESTATE OF
ASHLEY M. GJOVIK,

JUDGE CHRISTOPHER J. PANOS

DEBTOR'S DECLARATION
AND EXHIBITS IN SUPPORT
OF THE MOTION FOR
SANCTIONS AGAINST APPLE
INC. (DKT. 58, 59).

# Declaration & Exhibit

Pursuant to 28 U.S.C.§ 1746, I, Ashley M. Gjovik, hereby declare as follows:

1.      I filed a Motion for Sanctions against Creditor Apple Inc on Feb. 20 2026 for a willful violation of the stay.

2.      On Feb. 26 2026, Apple Inc filed three motions (totaling ten documents) in the civil litigation as a further extension of the same conduct alleged to be a violation of the stay. The Motion's requested injunctive relief, findings of sanctions and contempt, and other relief against the Debtor. A true and correct copy is attached as Exhibit A.

3.      One motion asked for an emergency schedule expediting the hearing to one week later. The Court implicitly denied the motion to expedite, as the court still has not responded to Apple's "emergency" filings.

4.      On Feb. 27 2026, I filed an Opposition to the Motion to Seal and Motion for Emergency Proceedings. A true and correct copy is attached at Exhibit B.

5.      On March 3 2026, I received notice of a Hearing from MAB on April 2 2026 in response to my Motion for Sanctions against Creditor Apple in this Proceeding.

6. On March 6 2026 I received a certified copy of the Feb. 20 2026 hearing transcript where Apple was able to get a Magistrate Judge to issue verbal orders and threats against me. A true and correct copy of the transcript I paid to have transcribed is attached as Exhibit C.

7.      On March 6 2026, I filed Objections to the U.S. Judge about Apple's conduct during he Feb. 20 2026 hearing, and shared the transcript. A true and correct copy of the objections is attached as Exhibit D.

8.      On March 6 2026 I filed a Motion for Sanctions against Apple for violating FRCP Rule 26(G) based on the same underlying conduct as Apple's violation of the bankruptcy stay. A true and correct copy is attached as Exhibit E.

9. On March 6 2026, I filed a new NLRB charge against Apple based on Andrew Troop's filing to this proceeding at Dkt. 62 where Troop made unlawful work rules, threats, coercive statements, and engaged in unfair labor practices as an agent of Apple Inc. Apple's labor counsel Morgan Lewis were served a copy of the charge that night. A true and correct copy is attached as Exhibit F.

10.     Apple's counsel has already been served copies of all of these filings and they were the ones who efiled some of them.

11.     I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct.

Executed on March 7 2026 in San Jose, California.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 7 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Apple and the Trustee) via the Court's electronic filing system (when the pro se clerk posts it). Apple already has copies of all of these as well served through efiling as they are court/legal documents in the civil litigation.

# EXHIBIT A

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| APPLE INC., | |
| Defendant. | Dept:    Courtroom TBD |
| | 1301 Clay Street |
| | Oakland, CA 94612 |
| | Judge:    Honorable Kandis A. Westmore |

1

## NOTICE OF MOTION AND MOTION

2   NOTICE is hereby given by Apple Inc. ("Apple") of the filing of this motion pursuant to

3   N.D. Cal. Civil Local Rules 7-11 and 79-5(c) and Judge Westmore's Standing Order for Civil

4   Cases. This motion seeks to seal material Apple designated as Confidential pursuant to the

5   Protective Order (Dkt. No. 235) that is referenced in Apple's Motion to Enforce the Protective

6   Order and supporting evidence, which are being filed contemporaneously herewith, on the grounds

7   that good cause exists to seal information Apple designated as Confidential pursuant to the

8   Protective Order (Dkt. No. 235) until such time as any challenges to those designations have been

9   ruled upon.

10   This request is based on this Notice of Motion and Motion, the accompanying

11   Memorandum of Points and Authorities, the accompanying Declaration of Melinda S. Riechert,

12   the complete pleadings and records on file, and other evidence and arguments as may be presented

13   at the hearing on this Motion.

14

## MEMORANDUM OF POINTS AND AUTHORITIES

15   Pursuant to N.D. Cal. Civil Local Rules 7-11 and 79-5(c) and Judge Westmore's Standing

16   Order for Civil Cases, Apple respectfully moves for an order filing under seal of the following

17   material submitted in connection with its Motion to Enforce Protective Order: (1) the portions of

18   Apple's Motion to Enforce the Protective Order that contain material Apple designated as

19   Confidential pursuant to the Protective Order; (2) the portions of excerpts of Plaintiff's deposition

20   transcript that contain material Apple designated as Confidential pursuant to the Protective Order

21   attached as Exhibit A to the Declaration of Melinda S. Riechert in Support of Apple's Motion to

22   Enforce the Protective Order; and (3) Apple's confidentiality designations for Plaintiff's

23   deposition attached as Exhibit B to the Declaration of Melinda S. Riechert in Support of Apple's

24   Motion to Enforce the Protective Order.

25   "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to

26   non-dispositive motions." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir.

27   2006). The Court has good cause to seal the records at issue here for several reasons.

28   *First*, a legitimate public interest that warrants sealing is preserving the integrity of this

- 1 -

Court's Protective Order and its confidentiality designation process. The Protective Order requires information designated Confidential to be treated as Confidential until the Court rules upon any challenge to the designation. *See* Dkt. No. 235 ¶ 6.3.  Indeed, publicly filing material designated as Confidential by a party before a challenge to the Confidential designation has been ruled upon is a "flagrant and deliberate violation" of a court order that harms the integrity of the judicial process. *Ma v. San Francisco Estuary Inst.*, No. 23-CV-05060-JCS, 2026 WL 388720, at *5 (N.D. Cal. Feb. 11, 2026) (sanctioning *pro se* plaintiff for publicly filing material designated as confidential). Sealing is necessary so the Court can review the unredacted material and determine whether Plaintiff violated the Protective Order, without requiring Apple to publicly file at this time material it has designated as Confidential for which there has not yet been any ruling about any challenges to those designations.

Second, if sealing is denied, material that Apple has designated as Confidential would be publicly filed, which would perpetuate the very harm the Protective Order is intended to prevent. Apple is asking the Court to address Plaintiff's publication of designated confidential material in violation of the Protective Order; it makes little sense to require Apple to further publish that same information in order to obtain relief.

Third, Apple has taken the least restrictive approach by publicly filing redacted versions of the documents at issue. Only the portions containing or describing material Apple has designated as Confidential—and which the Court must review to determine whether a violation of the Protective Order has occurred—are withheld from public view. Redacting these specific sections ensures that the public has access to all non-designated material, while allowing the Court to review the relevant content in full and maintaining the integrity of the confidentiality designation process.

Fourth, Apple will separately confer with Plaintiff regarding her challenges to certain of its confidentiality designations. Until such time as those challenges are resolved, the information Apple designated as Confidential is entitled to protection to preserve the integrity of this Court's orders and processes. *See* Dkt. No. 235 ¶ 6.3; *see also I.F. v. City of Vallejo*, No. 2:18-CV-0673-JAM-CKD, 2021 WL 601054, at *11 (E.D. Cal. Feb. 16, 2021) ("propriety of original confidential

APPLE'S ADMIN. MOT. TO SEAL; MP&A
CASE NO. 23-CV-4597-EMC

designation" is "beside the point" when evaluating whether counsel "violated protective order by providing confidential-designated deposition testimony to the media and filing it on the public record").

On February 26, 2026, consistent with the requirements of this Court's Local Rules, Apple asked Plaintiff whether she would agree/stipulate to an order to seal material Apple designated as Confidential that is referenced in Apple's Motion to Enforce the Protective Order and evidence to be filed in support of Apple's Motion until such time as any challenges to those designations have been ruled upon. *See* Decl. of Melinda S. Riechert in Support of Admin. Mot. to Seal, filed herewith, ¶ 2. Plaintiff did not agree. *Id*.

For the foregoing reasons, Apple respectfully requests that the Court enter an order sealing (1) the portions of Apple's Motion to Enforce the Protective Order that contain material Apple designated as Confidential pursuant to the Protective Order; (2) the portions of excerpts of Plaintiff's deposition transcript that contain material Apple designated as Confidential pursuant to the Protective Order attached as Exhibit A to the Declaration of Melinda S. Riechert in Support of Apple's Motion to Enforce the Protective Order; and (3) Apple's confidentiality designations for Plaintiff's deposition attached as Exhibit B to the Declaration of Melinda S. Riechert in Support of Apple's Motion to Enforce the Protective Order.

Dated: February 26, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:    */s/ Melinda S. Riechert*
MELINDA S. RIECHERT
Attorney for Defendant
APPLE INC.

1 JESSICA R. PERRY (SBN 209321)
 jperry@orrick.com
2 MELINDA S. RIECHERT (SBN 65504)
 mriechert@orrick.com
3 ORRICK, HERRINGTON & SUTCLIFFE LLP
 1000 Marsh Road
4 Menlo Park, CA  94025-1015
 Telephone: +1 650 614 7400
5 Facsimile: +1 650 614 7401

6 KATHRYN G. MANTOAN (SBN 239649)
 kmantoan@orrick.com
7 ORRICK, HERRINGTON & SUTCLIFFE LLP
 The Orrick Building
8 405 Howard Street
 San Francisco, CA 94105-2669
9 Telephone: +1 415 773 5700
 Facsimile: +1 415 773 5759

10

11 RYAN D. BOOMS (SBN 329430)
 rbooms@orrick.com
 ORRICK, HERRINGTON & SUTCLIFFE LLP
12 2100 Pennsylvania Avenue NW
 Washington, D.C. 20037
13 Telephone: +1 202 339 8400
 Facsimile: +1 202 339 8500

14

 Attorneys for Defendant
15 APPLE INC.

16     UNITED STATES DISTRICT COURT

17     NORTHERN DISTRICT OF CALIFORNIA

18       OAKLAND DIVISION

19 ASHLEY GJOVIK,     Case No. 23-cv-4597-EMC

20     Plaintiff,  **DECLARATION OF MELINDA S.**
        **RIECHERT IN SUPPORT OF**
21    v.     **DEFENDANT APPLE INC.'S**
        **ADMINISTRATIVE MOTION TO**
22 APPLE INC.,     **SEAL**

23     Defendant.

24        Dept:  Courtroom TBD
          1301 Clay Street
25          Oakland, CA 94612
        Judge:  Honorable Kandis A. Westmore
26

27

28

I, Melinda S. Riechert, declare as follows:

1.      I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. in this action. I submit this declaration in support of Apple's Administrative Motion to Seal, which seeks an order sealing material Apple designated as Confidential pursuant to the Protective Order (Dkt. No. 235) that is referenced in Apple's Motion to Enforce the Protective Order and evidence in support thereof. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.      I e-mailed Plaintiff on February 26, 2026, and asked her to stipulate to the relief requested in Apple's Motion to Seal. Plaintiff did not agree.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed February 26, 2026, in Menlo Park, California.

Dated: February 26, 2026

                                        /s/ Melinda S. Riechert
                                        Melinda S. Riechert

1   JESSICA R. PERRY (SBN 209321)
    jperry@orrick.com
2   MELINDA S. RIECHERT (SBN 65504)
    mriechert@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA  94025-1015
    Telephone:    +1 650 614 7400
5   Facsimile:    +1 650 614 7401

6   KATHRYN G. MANTOAN (SBN 239649)
    kmantoan@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
8   405 Howard Street
    San Francisco, CA 94105-2669
9   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
10
    RYAN D. BOOMS (SBN 329430)
11  rbooms@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
12  2100 Pennsylvania Avenue NW
    Washington, D.C. 20037
13  Telephone:    +1 202 339 8400
    Facsimile:    +1 202 339 8500
14
    Attorneys for Defendant
15  APPLE INC.

16

17                     UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                            OAKLAND DIVISION

20

21  ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

22                  Plaintiff,              **[PROPOSED] ORDER GRANTING
                                            DEFENDANT APPLE INC.'S
23          v.                              ADMINISTRATIVE MOTION TO
                                            SEAL**
24  APPLE INC.,
                                            Dept:      Courtroom TBD
25                  Defendant.                         1301 Clay Street
                                                       Oakland, CA 94612
26                                          Judge:     Honorable Kandis A. Westmore

27

28
                                            [PROPOSED] ORDER GRANTING APPLE'S MOT. TO
                                                                                    SEAL
                                            CASE NO. 23-CV-4597-EMC-KAW

# **PROPOSED ORDER**

Pursuant to Local Rules 7-11 and 79-5, Defendant Apple Inc. ("Apple") filed an Administrative Motion to File Under Seal ("Motion") in connection with its Motion to Enforce Protective Order, and good cause to seal having been shown, the Court GRANTS Apple's Motion and Orders sealed the following:

| Document Description | Portions Sought to Be Sealed |
|---|---|
| Apple's Motion to Enforce the Protective Order | Portions containing material designated by Apple as Confidential pursuant to the Protective Order (highlighted in yellow in the filed under seal version) |
| Exhibit A to the Declaration of Melinda Riechert in Support of Apple's Motion to Enforce Protective Order | Portions of Plaintiff's deposition transcript containing material designated by Apple as Confidential pursuant to the Protective Order (highlighted in yellow in the filed under seal version) |
| Exhibit B to the Declaration of Melinda Riechert in Support of Apple's Motion to Enforce Protective Order | Entire document |

**IT IS SO ORDERED.**

DATED:

By: _____
Hon. Kandis A. Westmore
United States Magistrate Judge
.

1   JESSICA R. PERRY (SBN 209321)
    jperry@orrick.com
2   MELINDA S. RIECHERT (SBN 65504)
    mriechert@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA 94025-1015
    Telephone:    +1 650 614 7400
5   Facsimile:    +1 650 614 7401

6   KATHRYN G. MANTOAN (SBN 239649)
    kmantoan@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
8   405 Howard Street
    San Francisco, CA 94105-2669
9   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
10
    RYAN D. BOOMS (SBN 329430)
11  rbooms@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
12   2100 Pennsylvania Avenue NW
    Washington, D.C. 20037
13  Telephone:    +1 202 339 8400
    Facsimile:    +1 202 339 8500
14
    Attorneys for Defendant
15  APPLE INC.

16                 UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                      OAKLAND DIVISION

19

20  ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

21            Plaintiff,                     **DEFENDANT APPLE INC.'S MOTION
                                             TO ENFORCE PROTECTIVE ORDER;**
22       v.                                  **MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT**
23  APPLE INC.,                              **THEREOF**

24            Defendant.                     Date:     April 2, 2026
                                             Time:     1:30 p.m.
25                                           Dept:     Courtroom TBD
                                                       1301 Clay Street
26                                                     Oakland, CA 94612
                                             Judge:    Honorable Kandis A. Westmore
27

28

## TABLE OF CONTENTS

**Page**

M

M

M

M d

M        M

M

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gonzales v. Charter Commc'ns*

*Harmston v. City & Cnty. of San Francisco*

*order*

    *clarified*

*I.F. v. City of Vallejo*

*Life Tech. Corp. v. Biosearch Tech., Inc*

*Ma v. San Francisco Estuary Inst*

*O'Connor v. Uber Techs., Inc*

*Sali v. Corona Reg'l Med. Ctr*

*Somers v. Digital Realty Tr. Inc*

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp*

**Other Authorities**

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFF ASHLEY GJOVIK: PLEASE TAKE NOTICE

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

*See, e.g.*

r

*id.*            r

d                          r

_____

*See*

r

## II.     RELEVANT BACKGROUND

*See*

r

*inter alia*

*See id.*

*See id.*

*Id.*

*Id.*

*see also*

r                          r *employer studies*

r

r *reveal[ed] what was actually designated*

A.    <u>Excerpts of the Designated Testimony</u>

*verbatim excerpts*                                                r

*compare*

- 

- *see* _____

- *see*

19.    Examples of deposition transcript content that Apple designated was "confidential" for seven weeks, and then expressly claimed terms and the subject matter was "confidential" include:

<u>NLRA Violation, Example One:</u>
- Employer: (did you tell your manager you didn't want to do that study?)
- Employee "…I was complaining more generally of, like, Apple is doing some really invasive stuff that seems weird.· Like when they were doing the ███████████████████████ ·I was pointing out, like, I think Apple is crossing some lines --
- (Court Reporter asks for clarification)
- Employee: "They were doing ███████ studies where they were ███████████████ ███████████ and I said I think that's too far.
- Employer: "….Were there other studies that you were asked to participate in that you said, no, thank you?"
- Employee: "Yes.· There was one that I had signed up for and pulled out because I didn't realize the terms until it was underway and it bothered me, …███████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████

**Deposition Transcript pages 164-165 (entirely "confidential" for 50 days).**
Apple's active confidentiality claims include: ███████████████████ ███████████████████████████████████████████

<u>NLRA Violation, Example Two:</u>
- Employer: "Was there anything else you said to [Supervisor] about your unhappiness with studies that Apple was doing?"
- Employee: Yeah.· I think it was generally just kind of like a -- we need a boundary here of what --

- because, you know, I would do a lot of the LiveOn on, like, ... And that's a lot different than my employer asking to request status of ▮▮▮▮▮▮▮▮▮▮. And so it was kind of, like, I feel like we need to sort as a company what we're doing here generally and using myself as kind of case study of my reaction to some of those requests. But as -- I don't remember them ever really doing anything different, and I remember even making privacy, kind of, invasion complaints even I think, like, in May 2021 –"

- Employer: "Way beyond my question."

**Deposition Transcript pages 170. (entirely "confidential" for 50 days).**

Apple's active confidentiality claims include: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### NLRA Violation, Example Three:

- The Employer asked me about my protests about the ear scans: "what did you feel invasive about an ear scanning study?"
- Employee: Ears are very personal, and they are an -- they're an orifice. You know, it's a bodily orifice. It's kind of like the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Not as bad as that one, but it's like that -- that's something that's so personal that it doesn't seem appropriate for an employer to ask. And because I participated in these studies, I know that it involves pressing up against my body, putting things, like, on my body. Things where I'm like -- like I mentioned earlier, physically uncomfortable during the process, even somewhat painful. And like the thought of – and they can last a long time. So, like, the thought of Apple spending a bunch of time scanning, like, the inside of my ears and my ears made me have a visceral reaction that I didn't want that. And that I was also why I just -- I said no. That was one of the very few things I said no expressly in email. I said no. I think I made an excuse, like, I'm too busy, but I'm not going to do that. And then Apple wanted to keep -- they're going to keep these images of our ears. And they bragged publicly earlier that they had the biggest, like, ear library in the world, and that was concerning to me. It's concerning to me that they'd brag about that, and I don't want my ears in their giant ear library. You know, like, my ears are personal to me. I don't want them to just be in a library of ears.
- Employer: "Okay."
- Employee: "And because I had said no and they asked three times in a very short period of time, I was -- I was wondering why are they asking me so much, and it looked like it was going to an email group, but you don't really know who is on what group. And so I was -- I was disturbed about them still wanting to scan my ears.
- Employer: Do you agree that posting these emails was a breach of your confidentiality agreement with Apple?
- Employee: No, I don't agree.
- Employer: And why not?

- Employee: …None of this is -- none of that was even secret information.· And I was complaining about something that I thought was an invasion of privacy.· I have a constitutional right to privacy in this great state of California where I can protest about my employer trying to invade my privacy… And I wanted them to stop doing this kind of stuff, and this was the exact same time I was calling out other conduct and systemic issues at Apple that I did not approve of and wanted them to reform on, and so this fit with me trying to call out stuff that I thought crossed a line…."

**Deposition Transcript pages 236-238). (entirely "confidential" for 50 days).**
Apple's active confidentiality claims include: ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮

B.    <u>**Descriptions that Reveal the Content of that Same Designated Testimony**</u>



r

■

■ *see* _____

■ *see*

r

■

■ *see* _____

■ *see*

r

r

r



r

d

*See*

r                                        r

## III.    **LEGAL STANDARD**

r

r

r

*O'Connor v. Uber Techs., Inc*

d          *Life Tech. Corp. v. Biosearch Tech., Inc*

*see also Sali v. Corona Reg'l Med. Ctr*

r                                        r          r

d

r

*Somers  v.  Digital  Realty  Tr.  Inc*

d          *Unigard Sec.*

*Ins. Co. v. Lakewood Eng'g & Mfg. Corp*                          r

*Id*

d

## IV.    ARGUMENT

### A.    Plaintiff Unquestionably Violated the Protective Order.

r

r

*Id.*

d

*See id.*

M

***all parties shall
continue to afford the material in question the level of protection to which it is
entitled under the Producing Party's designation until the court rules on the
challenge***

*Id.*

d

d                    r                                    *Ma v. San Francisco
Estuary Inst*

*pro se*

***verbatim***

r

*See*                                                                    r



*See, e.g., Harmston v. City & Cnty. of San Francisco*

*order clarified*

r

r                                                                                        r

*Gonzales v. Charter Commc'ns*

r

r   d                                                       *I.F. v. City of Vallejo*

*Harmston*                                    r                                              r

r

**B.**    **Plaintiff Should Be Ordered to Take Down, and Not to Republish, Material Designated as Confidential Unless and Until Such Time as the Court Orders that the Material is Not Confidential.**

• 

r

*accord Gonzales*

r

*derived*

- d

- 

d

d

### V. <u>CONCLUSION</u>

d

d

M

*/s/ Melinda S. Riechert*

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DECLARATION OF MELINDA S. RIECHERT IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO ENFORCE PROTECTIVE ORDER** |
| v. | |
| APPLE INC., | Date:    April 2, 2026 |
| Defendant. | Time:    1:30 p.m. |
| | Dept:    Courtroom TBD |
| | 1301 Clay Street |
| | Oakland, CA 94612 |
| | Judge:    Honorable Kandis A. Westmore |

1        I, Melinda S. Riechert, declare as follows:

2        1.      I am an attorney admitted to practice law in the state of California and am a partner

3 at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. ("Apple") in

4 this action. I submit this declaration in support of Apple's Motion to Enforce Protective Order. I

5 have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could

6 and would testify competently thereto.

7        2.      As counsel for Apple, I deposed Plaintiff in this action on December 16, 2025. A

8 true and correct copy of excerpts of Plaintiff's deposition transcript is attached as **Exhibit A**.

9        3.      On January 7, 2026, the certified court reporter provided the transcript of Plaintiff's

10 December 16, 2025 deposition to me via email.

11        4.      On February 4, 2026, counsel for Apple provided its more limited and targeted

12 Confidentiality designations for the deposition transcript by emailing them simultaneously to the

13 court reporter and Plaintiff. A true and correct copy of Apple's confidentiality designations for the

14 transcript of Plaintiff's December 16, 2025 deposition is attached as **Exhibit B**.

15        5.      Attached as **Exhibit C** is a true and correct copy of an email I sent to Plaintiff on

16 February 18, 2026, and the response I received from her two hours later.

17        I certify under penalty of perjury and pursuant to the laws of the United States that the

18 foregoing is true and correct.

19        Executed February 26, 2026 in Menlo Park, California.

20

21 Dated: February 26, 2026

22                              */s/ Melinda S. Riechert*
                               Melinda S. Riechert

23

24

25

26

27

28

                   RIECHERT DECL. ISO APPLE'S MOT. TO
                   ENFORCE PROTECTIVE ORDER
                   CASE NO. 23-CV-4597-EMC

# EXHIBIT A

**CERTIFIED
TRANSCRIPT**





















# EXHIBIT B

*CONFIDENTIAL*

*Ashley Gjovik v. Apple Inc.*
**N.D. Cal. Case No. 23-cv-4597-EMC**

**APPLE INC.'S CONFIDENTIALITY DESIGNATIONS PURSUANT TO THE JULY 7, 2025, STIPULATED PROTECTIVE ORDER FOR THE DEPOSITION OF ASHLEY GJOVIK TAKEN ON DECEMBER 16, 2025.**

Apple Inc. designates the deposition transcript as indicated below. While pages 66–305 were initially marked confidential, Apple has now limited its designation to only the specific testimony identified in the chart below.

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 5:11 | Confidential | |
| 112:11 | Confidential | |
| 113:5 | Confidential | |
| 113:8 | Confidential | |
| 115:19 | Confidential | |
| 115:24 | Confidential | |
| 115:25 | Confidential | |
| 116:1 | Confidential | |
| 116:6 | Confidential | |
| 116:16 | Confidential | |
| 116:17 | Confidential | |
| 116:24 | Confidential | |
| 121:21 | Confidential | |
| 121:22 | Confidential | |
| 121:25 | Confidential | |
| 122:11 | Confidential | |
| 122:12 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 122:14 | Confidential | |
| 122:16 | Confidential | |
| 122:18 | Confidential | |
| 122:22 | Confidential | |
| 130:16 | Confidential | |
| 130:22 | Confidential | |
| 131:6 | Confidential | |
| 134:18 | Confidential | |
| 138:3 | Confidential | |
| 138:4 | Confidential | |
| 138:5 | Confidential | |
| 138:7 | Confidential | |
| 147:16-24 | Confidential | |
| 153:5 | Confidential | |
| 161:6-9 | Confidential | |
| 161:21-22 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 162:6-8 | Confidential | |
| 163:16 | Confidential | |
| 164:10-11 | Confidential | |
| 164:14 | Confidential | |
| 164:15-16 | Confidential | |
| 164:25 | Confidential | |
| 165:13-24 | Confidential | |
| 166:1-2 | Confidential | |
| 166:4 | Confidential | |
| 166:14 | Confidential | |
| 167:17 | Confidential | |
| 168:19 | Confidential | |
| 169:1 | Confidential | |
| 169:10 | Confidential | |
| 169:23 | Confidential | |
| 169:25 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 170:9 | Confidential | |
| 171:21 | Confidential | |
| 172:13 | Confidential | |
| 172:14 | Confidential | |
| 172:16 | Confidential | |
| 176:16 | Confidential | |
| 183:23 | Confidential | |
| 197:15 | Confidential | |
| 197:17 | Confidential | |
| 197:18 | Confidential | |
| 197:21 | Confidential | |
| 197:23 | Confidential | |
| 198:3 | Confidential | |
| 199:10 | Confidential | |
| 200:11 | Confidential | |
| 200:24 | Confidential | |
| 203:4 | Confidential | |
| 203:5 | Confidential | |
| 205:4-9 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 205:11-13 | Confidential | |
| 205:15-16 | Confidential | |
| 205:17 | Confidential | |
| 206:4-5 | Confidential | |
| 207:10-11 | Confidential | |
| 207:20-21 | Confidential | |
| 207:24-25 | Confidential | |
| 208:1 | Confidential | |
| 208:13 | Confidential | |
| 208:15 | Confidential | |
| 208:17-18 | Confidential | |
| 208:19 | Confidential | |
| 209:4 | Confidential | |
| 209:6 | Confidential | |
| 209:7 | Confidential | |
| 209:8-10 | Confidential | |
| 209:13-14 | Confidential | |
| 225:25 | Confidential | |
| 226:1 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 226:3 | Confidential | |
| 226:4 | Confidential | |
| 236:14-15 | Confidential | |
| i5 (351) | Confidential | |
| i6 (352) | Confidential | |
| i8 (354) | Confidential | |
| i9 (355) | Confidential | |
| i11 (357) | Confidential | |
| i12 (358) | Confidential | |
| i20 (366) | Confidential | |
| i22 (368) | Confidential | |
| i25 (371) | Confidential | |
| i28 (374) | Confidential | |
| i30 (376) | Confidential | |
| i31 (377) | Confidential | |
| i32 (378) | Confidential | |
| i34 (380) | Confidential | |
| i35 (381) | Confidential | |

# EXHIBIT C

| From: | Ashley M. Gjøvik <ashleymgjovik@protonmail.com> |
|---|---|
| Sent: | Wednesday, February 18, 2026 12:26 PM |
| To: | Riechert, Melinda |
| Cc: | Ashley M. Gjovik (Legal Matters); Perry, Jessica R.; Mantoan, Kathryn G.; Horton, Nicholas J.; Weaver, Nicholas; Russell, Zoe; Booms, Ryan; Stolzenburg, Mark L.; Kelcey Phillips; Mahoney, Brian; harry.johnson |
| Subject: | Re: URGENT |

**[EXTERNAL]**

Hello agents of the Employer and Charged Party, Apple Inc,

Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.

You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.

Thanks,
-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.

**Melinda Riechert**
Partner
Orrick
Silicon Valley 

1

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **PROPOSED  ORDER   RANTIN DEFENDANT APPLE INC.'S MOTION TO ENFORCE PROTECTIVE ORDER** |
| v. | |
| APPLE INC., | Dept:    Courtroom TBD |
| Defendant. | 1301 Clay Street Oakland, CA 94612 |
| | Judge:    Honorable Kandis A. Westmore |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED ORDER**

Defendant Apple Inc. ( Apple ) s Motion to Enforce Protective Order came for hearing before this Court on April 2, 2026. Having reviewed the pleadings and papers on file in this action, and having considered the arguments of counsel and Plaintiff Ashley Gjovik, and good cause appearing, IT IS HEREBY ORDERED:

Apple s Motion to Enforce Protective Order is    **RANTED**. The Court finds that Plaintiff violated the Protective Order (Dkt. No. 235) when she publicly posted and filed deposition testimony that Apple had designated Confidential without following the processes set forth in the Protective Order to challenge those designations. *See Ma v. San Francisco Estuary Inst*., No. 23-CV-05060-JCS, 2026 WL 388720, at  5 (N.D. Cal. Feb. 11, 2026) (finding such conduct to be a  flagrant and deliberate violation  of the protective order) *Harmston v. City & Cnty. of San Francisco*, No. C 07-01186SI, 2007 WL 3306526, at  6 (N.D. Cal. Nov. 6, 2007), *order clarified*, No. C07-01186SI, 2008 WL 269465 (N.D. Cal. Jan. 29, 2008) *Gonzales v. Charter Commc'ns*, LLC, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at  4 (C.D. Cal. Jan. 26, 2022) *I.F. v. City of Vallejo*, No. 2:18-CV-0673-JAM-CKD, 2021 WL 601054, at  11 (E.D. Cal. Feb. 16, 2021).

The Court further **ORDERS** Plaintiff to de-publish the material Apple designated as Confidential that it identified in its Motion   as well as all other publications and republications of that same material   and **DIRECTS** the Clerk of Court to seal Plaintiff s filings at Dkt. Nos. 278, 284 and 285 (which contain material Apple designated as Confidential).

**IT IS SO ORDERED.**

DATED:

By:_____
Hon. Kandis A. Westmore
United States Magistrate Judge
.

[PROPOSED] ORDER GRANTING APPLE S MOT.
TO ENFORCE PROTECTIVE ORDER
CASE NO. 23-CV-4597-EMC

1   JESSICA R. PERRY (SBN 209321)
    jperry@orrick.com
2   MELINDA S. RIECHERT (SBN 65504)
    mriechert@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA  94025-1015
    Telephone:    +1 650 614 7400
5   Facsimile:    +1 650 614 7401

6   KATHRYN G. MANTOAN (SBN 239649)
    kmantoan@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
8   405 Howard Street
    San Francisco, CA 94105-2669
9   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
10

11  RYAN D. BOOMS (SBN 329430)
    rbooms@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
12  2100 Pennsylvania Avenue NW
    Washington, D.C. 20037
13  Telephone:    +1 202 339 8400
    Facsimile:    +1 202 339 8500
14

15  Attorneys for Defendant
    APPLE INC.

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                        OAKLAND DIVISION

19

20   ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

21              Plaintiff,                    **DEFENDANT APPLE INC.'S
                                             ADMINISTRATIVE MOTION TO
22        v.                                 SHORTEN TIME FOR BRIEFING AND
                                             HEARING ON DEFENDANT'S
23   APPLE INC.,                             MOTION TO ENFORCE PROTECTIVE
                                             ORDER; MEMORANDUM OF POINTS
24              Defendant.                    AND AUTHORITIES IN SUPPORT
                                             THEREOF**
25
                                             Dept:      Courtroom TBD
26                                                      1301 Clay Street
                                                        Oakland, CA 94612
27                                           Judge:     Honorable Kandis A. Westmore
28

## NOTICE OF MOTION AND MOTION

NOTICE is hereby given of the filing of this motion pursuant to Civil Local Rules 6-1(b) and 6-3 by Apple Inc. ("Apple"). This motion seeks to shorten the time for briefing and hearing on Apple's Motion to Enforce Protective Order, which is being filed contemporaneously herewith, on the grounds that good cause exists to quickly determine whether Plaintiff is in violation of the Protective Order (Dkt. No. 235), and if so, enforce the Protective Order.

Pursuant to the Civil Local Rules, Apple set the hearing on the Motion to Enforce Protective Order for April 2, 2026, the earliest available date. Apple requests that the hearing be held on March 6, 2026, at 1:30 p.m., or on a date sooner than April 2, 2026 as this Court's schedule permits. Apple further requests that any opposition be due by March 2, 2026, and Apple's reply be due by March 4, 2026. This request is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Melinda S. Riechert; the complete pleadings and records on file, and other evidence and arguments as may be presented at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Civil Local Rules 6-1(b) and 6-3, Defendant Apple Inc. respectfully requests that its Motion to Enforce Protective Order be heard on shortened time so that the Court can quickly determine whether Plaintiff is in violation of the Protective Order (Dkt. No. 235), and if so, enforce the Protective Order.

*The reasons for the requested shortening of time.* As detailed in Apple's Motion to Enforce Protective Order, Plaintiff published material that Apple had designated as confidential before this Court has had an opportunity to rule on any challenge to the designations. The relief requested in the Motion to Enforce Protective Order is designed to ensure compliance with the Protective Order and protection for Apple's information consistent with the processes the Protective Order requires. Shortened time is necessary to preserve the Court's authority to adjudicate confidentiality disputes and to ensure that the stipulated procedures are followed.

*Efforts Apple has made to obtain a stipulation to the time change.* On February 26, 2026, consistent with this Court's Local Rules, Apple asked Plaintiff whether she would agree/stipulate

to shortening the time for briefing and a hearing on Apple's Motion to Enforce Protective Order. Decl. of Melinda Riechert in Support of Admin. Mot. To Shorten Time ("Riechert Decl."), ¶ 2. Plaintiff did not agree. *Id.*

*The substantial harm or prejudice that would occur if the Court did not change the time.* The material posted by Plaintiff, which Apple had designated as confidential, continues to be publicly available, even though the Court has not ruled on any challenge to the designations. This ongoing public disclosure undermines the process established by the Protective Order, which requires that information designated as confidential remain protected until the Court rules on any challenge to the designation. Prompt resolution is necessary to ensure that the Court's procedures are respected and that the parties comply with the Protective Order while any dispute is pending.

*Apple's compliance with Civil L.R. 37-1(a).* Apple has complied with Civil Local Rule 37-1(a). On February 18, 2026, Apple's counsel contacted Plaintiff via email to inform her that she violated the Protective Order by posting on X and other websites material that Apple had designated as confidential. Riechert Decl., ¶ 3, Ex. A. Apple's counsel further requested that Plaintiff immediately remove the material and commit not to disclose such material in the future. *Id.* Plaintiff refused to remove the material or provide the requested assurances. *Id.* Thereafter, on February 20, 2026, Plaintiff again posted material that Apple had designated as confidential on the public docket in this case. *See* Dkt. Nos. 284 and 285. On February 20, 2026, the parties met with Magistrate Judge Westmore regarding this dispute. Critically, during that conference, Plaintiff assured Judge Westmore that she had not publicly posted any portions of her deposition transcript that Apple designated as Confidential. As Apple's Motion to Enforce the Protective Order proves, Plaintiff's assurance to the Court was false and necessitated additional briefing to rectify this issue while the process set forth in the Protective Order for challenging confidentiality designations plays out.

*The nature of the underlying dispute that would be addressed in the Motion to Enforce Protective Order and the position each party had taken.* The underlying dispute concerns Plaintiff's public disclosure of material that Apple had designated as confidential pursuant to the Protective Order. Apple's position is that, under the terms of the Protective Order, all parties are required to maintain the confidentiality of material designed as confidential regardless of whether a party

1   disagrees with the designation until the Court rules on any challenge to the designation. *See* Dkt.

2   No. 235, ¶ 6.3. Plaintiff maintains that her disclosures were appropriate and has refused to remove

3   the material from public view, notwithstanding the process required by the Protective Order.

4          *Previous time modifications in the case.* Pursuant to Local Rule 6-3(5), the following time

5   modifications have previously been made in this case:

6   • On October 10, 2024, the Court granted the Parties' stipulation regarding Apple's

7          responsive pleading deadline and additional deadlines. Dkt. No. 12.

8   • On October 25, 2024, the Court granted Plaintiff an additional week to file the Fifth

9          Amended Complaint. Dkt. No. 123.

10  • On February 5, 2025, the Court granted Defendant's motion to stay briefing and the hearing

11         on Plaintiff's motion to amend pending resolution of Apple's then-pending motion to

12         dismiss. Dkt. No. 160.

13  • On November 4, 2025, the Court granted Defendant's motion to stay in light of Plaintiff's

14         Chapter 7 bankruptcy proceedings. Dkt. No. 255.

15         *The effect the requested time modification would have on the schedule for the case.*

16  Advancing the hearing date on the Motion to Enforce Protective Order will not impact the current

17  schedule of the case.

18         For the foregoing reasons, Apple respectfully requests that the Court grant its request to

19  shorten time for the briefing and hearing on Apple's Motion to Enforce Protective Order.

20

21  Dated: February 26, 2026                    ORRICK, HERRINGTON & SUTCLIFFE LLP

22
                                                By:      */s/ Melinda S. Riechert*
23                                                       MELINDA S. RIECHERT
                                                         Attorney for Defendant
24                                                       APPLE INC.

25

26

27

28

APPLE'S MOT. TO SHORTEN TIME ON ITS MOT. TO
ENFORCE PROTECTIVE ORDER
[23-CV-4597-EMC-KAW]

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DECLARATION OF MELINDA S. RIECHERT IN SUPPORT OF DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SHORTEN TIME FOR BRIEFING AND HEARING ON DEFENDANT'S MOTION TO ENFORCE PROTECTIVE ORDER** |
| v. | |
| APPLE INC., | |
| Defendant. | |
| | Dept:      Courtroom TBD<br>1301 Clay Street<br>Oakland, CA 94612 |
| | Judge:     Honorable Kandis A. Westmore |

I, Melinda S. Riechert, declare as follows:

1.      I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. in this action. I submit this declaration in support of Apple's Administrative Motion to Shorten Time for Briefing and Hearing on Apple's Motion to Enforce the Protective Order. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.      On February 26, 2026, I e-mailed Plaintiff and asked her to stipulate to the relief requested in Apple's Motion to Shorten Time. Plaintiff did not agree.

3.      On February 18, 2026, I emailed Plaintiff to inform her that she violated the Protective Order by posting on X and other websites material that Apple had designated as confidential. I asked Plaintiff to remove the material and commit not to disclose such material in the future. Plaintiff did not agree. A true and correct copy of our correspondence is attached as Exhibit A.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed February 26, 2026 in Menlo Park, California.


_____
            /s/ Melinda S. Riechert
            Melinda S. Riechert

# Exhibit A

| | |
|---|---|
| **From:** | Ashley M. Gjøvik <ashleymgjovik@protonmail.com> |
| **Sent:** | Wednesday, February 18, 2026 3:26 PM |
| **To:** | Riechert, Melinda |
| **Cc:** | Ashley M. Gjovik (Legal Matters); Perry, Jessica R.; Mantoan, Kathryn G.; Horton, Nicholas J.; Weaver, Nicholas; Russell, Zoe; Booms, Ryan; Stolzenburg, Mark L.; Kelcey Phillips; Mahoney, Brian; harry.johnson |
| **Subject:** | Re: URGENT |

**[EXTERNAL]**

Hello agents of the Employer and Charged Party, Apple Inc,

Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.

You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.

Thanks,
-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.

**Melinda Riechert**
Partner
Orrick
Silicon Valley 

1

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
|---|---|
| Plaintiff, | **[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SEAL** |
| v. | |
| APPLE INC., | Dept:      Courtroom TBD |
| Defendant. | 1301 Clay Street<br>Oakland, CA 94612 |
| | Judge:    Honorable Kandis A. Westmore |

1

## **PROPOSED ORDER**

2      The Court has considered Defendant Apple Inc.'s Administrative Motion to Shorten Time

3 for Briefing and Hearing on Defendant's Motion to Enforce Protective Order. For cause appearing,

4 the Court GRANTS Defendant's Motion to Shorten Time.

5      Defendant's Motion to Enforce Protective Order shall be heard on March 6, 2026 at 1:30

6 p.m. Any Opposition to Defendant's Motion to Enforce Protective Order shall be filed by March

7 2, 2026. Defendant's Reply in Support of Its Motion to Enforce Protective Order shall be filed by

8 March 4, 2026.

9

10      **IT IS SO ORDERED.**

11

12   DATED:

13

14                                      By: _____
                                              Hon. Kandis A. Westmore
                                              United States Magistrate Judge
15                                                        .

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              [PROPOSED] ORDER GRANTING APPLE'S
                                              MOT. TO SHORTEN TIME ON ITS MOT. TO
                                              ENFORCE PROTECTIVE ORDER
                                              CASE NO. 23-CV-4597-EMC-KAW

1   JESSICA R. PERRY (SBN 209321)
    jperry@orrick.com
2   MELINDA S. RIECHERT (SBN 65504)
    mriechert@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA  94025-1015
    Telephone:    +1 650 614 7400
5   Facsimile:    +1 650 614 7401

6   KATHRYN G. MANTOAN (SBN 239649)
    kmantoan@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
8   405 Howard Street
    San Francisco, CA 94105-2669
9   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
10
    RYAN D. BOOMS (SBN 329430)
11  rbooms@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
12  2100 Pennsylvania Avenue NW
    Washington, D.C. 20037
13  Telephone:    +1 202 339 8400
    Facsimile:    +1 202 339 8500
14
    Attorneys for Defendant
15  APPLE INC.

16

17                  UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19                        OAKLAND DIVISION

20

21  ASHLEY GJOVIK,                     Case No. 23-cv-4597-EMC

22              Plaintiff,             **[PROPOSED] ORDER GRANTING**
                                       **DEFENDANT APPLE INC.'S**
23       v.                            **ADMINISTRATIVE MOTION TO**
                                       **SHORTEN TIME**
24  APPLE INC.,
                                       Dept:     Courtroom TBD
25              Defendant.                       1301 Clay Street
                                                 Oakland, CA 94612
26                                     Judge:    Honorable Kandis A. Westmore

27

28
                                       [PROPOSED] ORDER GRANTING APPLE'S MOT. TO
                                       SHORTEN TIME ON ITS MOT. TO ENFORCE
                                       PROTECTIVE ORDER
                                       CASE NO. 23-CV-4597-EMC-KAW

## **PROPOSED ORDER**

The Court has considered Defendant Apple Inc.'s Administrative Motion to Shorten Time for Briefing and Hearing on Defendant's Motion to Enforce Protective Order. For cause appearing, the Court GRANTS Defendant's Motion to Shorten Time.

Defendant's Motion to Enforce Protective Order shall be heard on March 6, 2026 at 1:30 p.m. Any Opposition to Defendant's Motion to Enforce Protective Order shall be filed by March 2, 2026. Defendant's Reply in Support of Its Motion to Enforce Protective Order shall be filed by March 4, 2026.

**IT IS SO ORDERED.**

DATED:

By: _____
        Hon. Kandis A. Westmore
        United States Magistrate Judge
                              .

# EXHIBIT B

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK,**

*an individual,*

> Plaintiff,

vs.

**APPLE INC.,**

*a corporation,*

> Defendant.

**CASE NO.**

**3:23-CV-04597-EMC**

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS AT DKT. 293 & DKT. 295**

**Hearing: April 2 2026 (Dkt. 294).**
**Opp. Due: March 12 2026 (Dkt. 294).**

# TABLE OF CONTENTS

**ARGUMENTS** ........................................................................................................... 1

**I. SUMMARY OF APPLE'S REQUESTS AND PROCEDURAL DEFECTS** ........................ 1

**II. THE MOTION TO SHORTEN TIME (DKT. 295) SHOULD BE DENIED** ...................... 2

1.   The Court already Ordered a 35-Day minimum schedule ......................................... 3

2.   Apple refused to meet/confer, in violation of this court's Orders. ............................. 3

3.   A full, 35-day briefing is required and was already Ordered. .................................... 4

**III. THE MOTION TO SEAL (DKT. 293) SHOULD BE DENIED** ..................................... 5

4.   This court has repeatedly found that simply citing a protective order designation is insufficient as a basis to seal. 6

5.   The content is already on the public docket of this case… for nearly three years. ...... 8

6.   Apple's best argument is claiming the Plaintiff leaked about Apple employee "Cervical Mucus," but even that argument fails. .................................................................................................. 10

7.   Apple is using the protective order for its admitted original and exclusive purpose: to silence its employee about her workplace complaints and whistleblower disclosures. ........................ 12

8.   Apple does not actually identify the content it seeks to suppress beyond a NLRB charge, NLRB cover letter for that charge, a blog post about the NLRB charge, and Notice of Pendency filed to this docket notifying the court of the NLRB charge. ................................................................................ 14

9.   Apple improperly seeks to seal entire documents. .................................................. 16

**IV. APPLE'S REQUESTS TO SEAL PLAINTIFF'S FILINGS ARE NOT PROPERLY BEFORE THIS COURT** ............................................................................................................ 18

**V. APPLE'S REQUESTS FOR INJUNCTIVE RELIEF ARE NOT PROPERLY BEFORE THIS COURT** 18

**VI. THE ONLY REQUEST ACTUALLY BEFORE JUDGE WESTMORE: AN UNRIPE MOTION FOR DECLARATORY RELIEF.** ............................................................................................ 20

10.  Defendant must meet and confer on this matter prior to filing motions, per the Court's Feb. 20 2026 order. 20

11.  The plain text of the Protective Order excludes all of the content at issue from the scope of that Protective Order. .............................................................................................................. 20

12.  Analysis of a 'breach' of an Order where the scope of the Order is at issue, requires the Court determine the nature and legitimacy of the designations/content at issue. .......................................... 22

13.  The Court continues to have no jurisdiction on this matter under the National Labor Relations Act (including *Garmon* and *Machinists* preemption) and the Norris-LaGuardia Act of 1932 (e.g., 29 U.S.C. §§ 101-115). 24

**VII. CONCLUSION & RELIEF REQUESTED** ............................................................... 25

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO SEAL (Dkt. 293) & ADMINISTRATIVE MOTION TO SHORTEN TIME (Dkt. 295)**

Plaintiff Ashley Gjovik respectfully files this omnibus opposition to Defendant Apple Inc.'s Administrative Motion to Seal (Dkt. 293) and Administrative Motion to Shorten Time (Dkt. 295), all filed along with Motion to Enforce Protective Order (Dkt. 294) the evening of February 26, 2026.

Apple also filed the Motion to Seal (Dkt. 293) with a response deadline of Feb. 26, 2026 — at 10 PM PST the same day, making timely opposition quite literally impossible. Plaintiff still has not been served with copies of the sealed materials and cannot evaluate what Apple has filed under seal. Because these three motions are interrelated — the seal motion references the substantive motion, the shorten time motion is about the substantive motion, and the substantive motion itself includes additional sealing and injunctive requests — Plaintiff addresses the overall matter in this omnibus opposition and respectfully requests that the Court deny all three and issue case management instructions regarding the proper procedures for the relief Apple is seeking. Otherwise, the Plaintiff plans to file her detailed Opposition to Dkt. 294 by March 12 2026, as is currently scheduled. Nothing in this filing should be construed as a waiver of any argument Plaintiff intends to raise in her merits opposition.

# ARGUMENTS

## I. SUMMARY OF APPLE'S REQUESTS AND PROCEDURAL DEFECTS

Apple has bundled around a dozen distinct categories of substantive and procedural relief into three emergency motions. Each category has its own procedural requirements, and in several instances, its own jurisdictional assignment. Apple has not complied with the proper procedure for any of them.

|  | What Apple Requests | Where Filed | Proper Vehicle | Proper Judge | Status |
|---|---|---|---|---|---|
| 1 | Seal Apple's own declaration | Dkt. 293 | Admin Motion to Seal (79-5) | KAW | Filed but defective — cites protective order designation as sole basis & asks to seal entire document |
| 2 | Seal Plaintiff's filings and publications | Buried in Dkt. 293 | Motion to Seal under 79-5(f) with briefing | EMC | Improperly filed Admin motion & denied opposition, in addition to issues noted above in #1 |
| 3 | Seal Plaintiff's Opposition filing (Dkt. 284) | Buried in Dkt. 294 | Motion to Seal under 79-5(f) with briefing | KAW | No motion filed |
| 4 | Seal Plaintiff's Notice of Pendency filed to EMC (Dkt. 278) | Buried in Dkt. 294 | Motion to Seal under 79-5(f) with briefing | EMC | No motion filed |
| 5 | Seal Plaintiff's Motion to Quash filed to & ruled on by EMC (Dkt. 285) | Buried in Dkt. 294 | Motion to Seal under 79-5(f) with briefing | EMC | No motion filed; & district judge already ruled on it |

|   | What Apple Requests | Where Filed | Proper Vehicle | Proper Judge | Status |
|---|---|---|---|---|---|
| 6 | Seal Plaintiff's NLRB charges, NLRB filings, and speech alleging Apple violated the NLRA | Buried in Dkt. 293 & 294 | None | NLRB | Highly unlawful and continually violating the NLRA and California Labor Code every moment this persists |
| 7 | Compel deletion of published speech + issue prior restraint gag order | Dkt. 294 | TRO / Preliminary Injunction (Rule 65) | EMC | No Rule 65 motion filed; magistrate lacks authority under § 636(b)(1)(A) |
| 8 | Declaratory finding of protective order "breach" | Dkt. 294 | Full noticed, formal motion, 35-day schedule | KAW & EMC? | Filed but not recognized motion type, will not publicly file substantive arguments or evidence – or provide to accused Plaintiff; & filed w/out court-ordered meet-and-confer |
| 9 | Declaratory finding indicating Plaintiff's "breach" of protective order justified Apple terminating Plaintiff in 2021 | Buried in Dkt. 293, 294, 295 | Summary Judgement | EMC | Summary Judgment is scheduled for June 2026 and there is where Apple needs to make these arguments to Judge Chen. |
| 10 | Shorten time for hearing from at least 35 days to ~5 days or less | Dkt. 295 | Admin Motion to Shorten Time | KAW & EMC? | Filed; based solely on generalized "urgency" of requests above |
| 11 | Finding Apple did not violate the NLRA & Plaintiff didn't engage in Protected Concerted Activity. | Buried in Dkt. 293, 294, 295 | NLRB Proceedings | NLRB | NLRB has original and exclusive jurisdiction, and this matter is preempted under *Garmon* and *Machinists*. |
| 12 | An injunction in a case involving and growing out of a labor dispute and targeting the labor dispute. | Buried in Dkt. 293, 294, 295 | Generally prohibited. | Congress /Public Policy | Norris-LaGuardia Act (29 U.S. Code § 101)[1] |

Apple's motion to shorten time is premised on the urgency of its seal and injunction requests. But the seal motion is defective, most of the sealing requests require separate motions Apple hasn't filed, several sealing requests must go to Judge Chen, and the injunction requests cannot be heard by a magistrate judge at all. The urgency argument fails when the requests it depends on are not properly before this Court.

## II. THE MOTION TO SHORTEN TIME (Dkt. 295) SHOULD BE DENIED

As a preliminary matter, the Plaintiff reminds the court that all of the content Apple complains

---

[1] **29 U.S. Code § 101 -** ***Issuance of restraining orders and injunctions; limitation; public policy***. "No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter." (Mar. 23, 1932, ch. 90, § 1, 47 Stat. 70.)

about has been publicly known and available for years, and most, if not all of the content, is plead in complaints for this litigation – its in formal legal filings going back to Sept. 2023 on this docket and to approve Apple's request would require this court essentially seal this entire lawsuit.

### 1. The Court already Ordered a 35-Day minimum schedule

During the February 20, 2026 conference, the Court stated at least three times that any motion regarding confidentiality designations or protective orders would follow a standard 35-day briefing and hearing schedule. This court specifically stated that if Apple was to file a motion regarding allegations of unlawfully disclosing confidential discovery information that the court noted "when we will schedule a motion for 35 days, we'll have a hearing on one of [the Judge's] law in motion calendar days for that motion." (29:47)

This court confirmed it would be a "a full motion." (39:44) and further detailed that it would be a "full motion with, you know, noticed motion and 35 days' notice motion." (39:46). The motion as filed in the court's scheduling system reflects this schedule yet Apple asks the Court to reconsider its own oral orders, the federal rules of civil procedure, and the local rules.

The Court recognized there was no urgency: Court Staff: "Does Your Honor want any deadlines in the minutes set or just the general parties to meet and confer with any motions to be filed—" Judge: "Yeah, I'm not setting any dates because I'm not asking the parties to file any kind of motions." (1:04:44-1:05:00).

### 2. Apple refused to meet/confer, in violation of this court's Orders.

The Court ordered the parties to complete meet-and-confer before filing any motion. Judge Westmore said she was "ordering the parties to complete the meet and confer process on this issue before filing any motion" (1:05:03) and warned Apple that if their counsel were to "file a motion and [they] haven't met [their] obligation to meet and confer, then [she] may not consider the motion because [they] haven't done it." (57:58-58:10) Apple's motion certifies that the parties met and conferred, citing Apple's February 18, 2026 demand email – an email from nine days ago, prior to the Court's conference call, where the Court already established Apple's prior meet/confer was insufficient for any of its pending requests and ordered Apple to actually meet/confer with the Plaintiff.

Apple did not comply and would not respond to Plaintiff's emails asking to meet/confer for six days. Apple notified the Plaintiff it planned to file these motions at 3:02 PM in the afternoon of Feb. 26, 2026. The only question that Apple had for Plaintiff was if she would agree to not oppose any of the

motions they already decided to file.  (Exhibit A).

The Plaintiff was concerned that Apple would refuse meaningful meet/confer and asked the Court to elaborate on what meet-and-confer requires. Judge Westmore responded that "the meet and confer should consist of the substantive discussion … and maybe some compromise." (58:47)  When Plaintiff attempted to initiate the required meet-and-confer on Feb. 26, 2026, Apple refused over seven times, stating "there is nothing … to meet and confer about." The Plaintiff made repeated written requests to meet and confer. Apple refused every one, stating "there is nothing … to meet and confer about" and "there is nothing further to discuss." (Exhibit A). Apple's unilateral timeline of extension request history is also incorrect but the Plaintiff does not have time or pages to address it.

Apple is willfully filing a premature and improper motion in violation of this court's express orders and then also requesting to expedite its violations. Upon filing, Apple demanded emergency treatment. If this were a genuine emergency, Apple would have promptly met/confer with the Plaintiff regarding these matters instead of refusing to respond to her emails for six days, refusing to meaningfully engage in any pending meet/confer, but instead filing a dozen papers including three motions at 10:00 PM and providing the Plaintiff < 2 business days to respond while accusing her of gross misconduct and "sealing" their supposed evidence.

After Plaintiff's December 2025 deposition, Apple maintained a blanket confidentiality designation over the entire deposition transcript for approximately 50 days before providing specific designations. Yet, now Apple now claims that the need to enforce those designations is so urgent it cannot wait for the 35-day schedule this Court set — while Apple itself waited 50 days to identify what it even considered confidential and its formal excuse for the 50 day blanket was that it didn't know at the time what was confidential – so Apple admittedly is now seeking criminal-like punishment of the Plaintiff for her own testimony about her own complaints, body and experiences while admitting it took Apple fifty days to figure out if her testimony was even confidential. The timeline informs the question on substance.

The Court ordered meet-and-confer. The Court stated it was "not setting any dates because I'm not asking the parties to file any kind of motions." Apple defied the meet-and-confer order, refused to engage seven times, filed the motion anyway, and now asks this Court to expedite the very motion the Court ordered Apple not to file until meet-and-confer was complete. The Court warned Apple: "if you file a motion and you haven't met your obligation to meet and confer, then I may not consider the motion because you haven't done it."

### 3. A full, 35-day briefing is required and was already Ordered.

Apple's motion to shorten time asserts that Plaintiff made false assurances to the Court during the Feb. 20 conference. Dkt. 295 at 2. Whether Plaintiff's statements to the Court were accurate is a disputed factual question that goes to the merits of the underlying motion to enforce. A disputed factual question is a reason for full briefing — not shortened time. This assertion is made under penalty of perjury in the Declaration. Plaintiff is pro se, homeless, and in Chapter 7 bankruptcy proceedings. Apple is represented by at least four attorneys at Orrick, Herrington & Sutcliffe LLP, a firm with over 1,000 attorneys. Apple had days or weeks to prepare its motions. A compressed schedule would give Plaintiff one business day to oppose what a team of attorneys took weeks to prepare.

The Court acknowledged on February 20 that Plaintiff would also file a motion if Apple did. If Apple gets a March 6 hearing, the Court would have zero days to read Plaintiff's motion before that hearing, and requiring two separate in person hearings. Both parties' motions should be heard together on the same schedule to reduce the burden on the parties and the court.  An expedited ruling on the remaining designations (issued without proper briefing) risks resolving merits questions on a procedural motion. The standard 35-day schedule exists to prevent exactly this. The appropriate response is not acceleration — it is enforcement of the Court's own order: denying Apple's motions as premature and ordering Apple actually meet/confer as the Court compelled Apple to do on Feb. 20 2026.

## III. THE MOTION TO SEAL (Dκт. 293) SHOULD BE DENIED

*Kamakana v. City and County of Honolulu,* 447 F.3d 1172 (9th Cir. 2006) is on point in this matter — it's a whistleblower retaliation case where documents were filed under seal pursuant to a stipulated protective order, and a newspaper intervened to unseal the filings. The Ninth Circuit ordered the unsealing of virtually everything previously filed under seal.  The parties had stipulated to a protective order, like here; and the court held that because they simply stipulated, a particularized showing of 'good cause' to keep the documents under seal had never been made to the court as required.

A party seeking to seal a judicial record "bears the burden of overcoming this strong presumption" "in favor of access" to court records by meeting the "compelling reasons" standard. Prior to ordering the sealing of any filings, based on the party's arguments in support of sealing, the court must then also articulate a finding of compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure. *Foltz v. State Farm Mutual Auto Insurance Company,* 331 F.3d 1122, 1135 (9th Cir. 2003), *citing San Jose Mercury News, Inc. v. U.S. Dist. Ct.,* 187 F.3d 1096, 1102-03 (9th Cir. 1999). The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court

to seal its records. *Kamakana* at 1179. This is binding precedent on the Northern District of Cal. Courts.

**4.  This court has repeatedly found that simply citing a protective order designation is insufficient as a basis to seal.**

Civil Local Rule 79-5(c) states, in its first sentence: "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Apple's entire motion rests on this prohibited argument easily available to Apple's counsel when preparing their motion. Yet, Apple's motion claims the content is confidential because the material was "*designated . . . as Confidential pursuant to the Protective Order*" by Apple (Dkt. 293 at 1-2). The Protective Order itself clearly states that the "Protective Order does not entitle [parties] to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal." (Dkt. 229 ¶ 1).

Apple is arguing the content is secret, because Apple claimed it was secret, which then justifies treating the information as secret, without further analysis inquiry or analysis.  This Court has rejected Apple's exact argument repeatedly:

- *Oracle Corp. v. Crypto Oracle, LLC*, No. 24-cv-08438-KAW, at *2 (N.D. Cal. Jan. 6, 2025): an agreement among parties to keep a document confidential does not establish a compelling reason to seal.
- *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-cv-00119-HSG (KAW) (N.D. Cal. Aug. 29, 2018): 'Attorneys' Eyes Only' is a confidentiality designation established in the Stipulated Protective Order and therefore not sufficient. A movant must show "specific prejudice or harm"; "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning" are insufficient. The Court noted the redacted information appears to be quite broad as well as publicly available.
- *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 17-cv-05928-YGR (KAW) (N.D. Cal. Sept. 7, 2021): Denied sealing where basis was exhibits "identified by Plaintiff . . . as confidential." Reminded parties of their obligation to not over-designate documents as confidential.
- *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918-MMC (KAW) (N.D. Cal. Aug. 12, 2022): Denied sealing where designating party has not filed the required declaration establishing sealability.
- *Sereni v. Home Depot U.S.A., Inc.*, No. 12-cv-5912-KAW (N.D. Cal. Feb. 11, 2013): Refused to enter protective order allowing automatic sealing based on designations because it effectively circumvents the Court's review process and is, therefore, improper.

Apple must demonstrate "compelling reasons supported by specific factual findings, i.e. that the portions to be sealed contain trade secrets or competitively sensitive business information." *Oracle*, at *3.

Apple has identified no trade secret. Apple has identified no competitive harm. Apple has identified no injury beyond the circular assertion that "confidential information" would be disclosed when the information in question has been public for years, is the personal experience of other parties, and covers highly protected speech and civil rights, but none of this matters because Apple says its confidential.

This Court is not the only court in this district to reject Apple's sealing practices. In *Apple Inc. v. Rivos, Inc.*, No. 22-cv-02637-PCP, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024), Judge Pitts denied multiple requests to seal documents in an actual trade secrets case and with non-public information, finding that Apple's arguments "in favor of sealing are generic enough that they could plausibly apply to almost any non-public information" and that "[c]ookie-cutter contentions of competitive harm are not the sort of 'specific statement' the local rules require in order to meet the 'stringent' standard for sealing." *Id.* at *2.

Judge Pitts also denied sealing of Apple's counterclaim paragraphs despite Apple's argument that the material contained "details about the internal operations, structure, and workflow of Apple's business" — because the material discussed only "run-of-the-mill business considerations" and "Apple has not identified any specific injury that would result from this information being available to the public." *Id.* Judge Pitts also denied sealing where Apple failed to file a 79-5(f) statement within seven days, and denied sealing of deposition transcript portions that discussed public patents and "Apple's practices with respect to its employees," finding that "Apple has provided no basis for sealing this information." *Id.* at *3, *6. Judge Pitts granted sealing only for portions discussing "technology asserted as trade secret" — actual technical details of Apple's system-on-a-chip design. *Id.* at *5-8.

Judge Pitts subsequently placed *Apple v. Rivos* on his standing order as an example of insufficient sealing practice, warning that "[b]lanket or generic statements like 'competitive harm' are almost never sufficient" and that "[f]rivolous, overbroad, or inadequate sealing motions risk denial, publication without further notice, or sanctions." Standing Order for Civil Cases, Judge Pitts, N.D. Cal. Apple's motion here is even less specific and more farfetched than the sealing requests Judge Pitts rejected in *Rivos*. In *Rivos*, Apple at least argued its material contained "details about the internal operations, structure, and workflow of Apple's business." Here, Apple argues only that the material was "designated as Confidential pursuant to the Protective Order." If generic contentions of competitive harm about Apple's internal business operations were insufficient in *Rivos*, a bare reference to a protective order designation — about an employee's menstrual cycle — is insufficient here.

Before filing the motions now before the Court, Apple was required to provide under 79-5(c)(1): (i) a statement of the legitimate private or public interests that warrant sealing; (ii) the injury that will

result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient. Apple provided none of these or if they did, it was included in the document that Apple asked to have sealed by the court in its entirely preventing the Plaintiff or the public from ever knowing what Apple's arguments were. The argument was already entirely circular (the information is confidential because Apple designated it confidential, and it must be sealed because it is confidential) but now Apple has also asked the court to declare its circular arguments are also confidential.

As this Court held in *Sereni*, even "the failure of an 'opponent' to challenge the filing of the documents under seal . . . does not relieve the party seeking to file under seal from its burden of showing that the information is 'privileged or protectable as a trade secret or otherwise entitled to protection under the law.'" No. 12-cv-5912-KAW, at *2. Even if Plaintiff had not opposed this motion, Apple would still bear the burden of demonstrating sealability — and Apple has not carried it.

In *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS (N.D. Cal. Aug. 15, 2023), the court denied sealing of most material even though defendant did not oppose, because plaintiffs offered only "conclusory generalization" of a privacy interest without establishing "what injury would flow from the publication." In that case, only actual personally identifiable information was sealed. If unopposed sealing requests are denied for lack of specificity, Apple's opposed request — which provides no authenticated evidence and identifies no concrete injury whatsoever — must fail as well.

### 5. <u>The content is already on the public docket of this case… for nearly three years.</u>

Every category of information Apple designated as confidential is already publicly filed on this Court's docket including in the Complaints for this lawsuit going back to Sept. 2023. This content was also filed on the Ninth Circuit Court of Appeals dockets, the Bankruptcy Court in the District of Massachusetts, and to NLRB and the Dept. of Labor. For example:

- ***Menstruation and ovulation studies:*** "Apple wanted to study her ovulation cycles and menstruation, which she denied." First Amended Complaint (Oct. 2023, Dkt. 17 at 42-44), Second Amended Complaint (Dkt. 32), Fourth Amended Complaint (Dkt. 76), Fifth Amended Complaint (Dkt. 128). Also, in Plaintiff's June 2023 White House OSTP public comment (25-2028, Dkt. 33.1; Fed. Reg. OSTP_FRDOC_0001-0008 "Automated Worker Surveillance and Management"); cited in GAO Report to Congress (25-2028, Dkt. 33.1; GAO-24-107639, Aug. 2024).

- ***Sleep study and bed sensors***: Nov. 2023 Second Amended Complaint at Dkt. 32 at 58 describes "*sleep study with Apple placing a sensor under her while she slept every night.*" OSTP comment describes Beddit monitor, co-sleeper NDAs, insomnia severity index surveys. (25-2028, Dkt. 33.1). The deposition in dispute (Trans. at 164-165) includes testimony that Apple "asked for NDAs of any cosleepers" and that "if you were dating and wanted to have sex with them or they're going to sleep

in your bed, they had to get registered with Apple and sign an NDA." The co-sleeper NDA requirement was described in the OSTP comment published in formal notice/comment rulemaking and cited by GAO, in the complaints on this docket, and in news articles (including Telerama magazine). Apple's designation of this testimony (requiring employees to register sexual partners with their employer) covers information already in the public domain.

- **Apple's "Studies" and coercive data collection generally:** Public since August 2021 through NLRB charges, Bloomberg, The Verge, Gizmodo, Telerama. Filed as complaints, motions, exhibits, and other papers on this docket since 2023. Submitted to OSTP and cited by GAO. Cited by watchdog groups; investigated by CNIL & Germany. Filed in Ninth Circuit (Case No. 25-2028).

- *Secrecy oaths and confidentiality threats:* Every complaint in this litigation describes Apple threatening employees with termination for discussing some version of these studies. Internal documents were also presented including a user study "Deed Poll" that claimed to be confidential yet Apple never filed any motions or objections about it being on the docket. (ie, *"even to a doctor or attorney (as was expressly written in one Deed Poll)."*) The First Amended Complaint (Dkt. 17 at 293-294) quotes the Deed Poll language: *Apple considers it "Confidential Information" that Apple is "conducting the study, the types and methods of data collection, and any other detail about the study, or how it is conducted — any information … learned about the study."* The Deed Poll instructed employees not to tell *"other employees, friends, family members, and especially, the press."* The Verge article (Dkt. 35-12) published Apple's unlawful employment agreement language verbatim: *"You should have no expectation of privacy when using your or someone else's personal devices for Apple business"* and Apple settled with the Plaintiff and NLRB in April 2025 agreeing to withdraw that term from its national policies.

Apple's claim that its studies are "secret" is itself a claim litigated on this docket. It's a key legal issue in the upcoming Summary Judgement and it's always been pled in detail in the Complaints for this case. For example, the Second Amended Complaint (Dkt. 32-2 at 266-269) devotes an entire section to Apple's position that the existence of its medical studies on employees is confidential, comparing Apple's secrecy oaths to those found unlawful in *Vietnam Veterans of Am. v. C.I.A.*, No. C-09-0037-CW (N.D. Cal.), where this district found that secrecy oaths requiring participants to agree they "would not divulge or make available any information related to … participation in the volunteer program" vitiated informed consent. Apple's current motion asks this Court to enforce the same secrecy framework the complaint challenges as unlawful — and to do so by sealing the challenge itself.

The original complaint seeks injunctive relief against this exact conduct. The original complaint (Dkt. 1 at 152-153) requests "an order that prohibits Apple from coercing their employees to allow Apple to gather and use their personal data in for-profit product development, including requests to participate in medical experiments, anatomical measurements, and imaging, gathering employee biometrics, any use

of the Face ʹGobblerʹ application.ʺ Apple is designating is ʺconfidentialʺ the same conduct the complaint asks this Court to enjoin. The designated information is the merits of this litigation.

The Protective Order (Dkt. 229 ¶ 3) expressly excludes from its coverage ʺ(a) any information that is in the public domain at the time of disclosureʺ and ʺ(b) any information known to the Receiving Party prior to the disclosure.ʺ Both prongs are satisfied. This information was known to Plaintiff before the deposition — it is her own body and her own experiences — and it was in the public domain through the operative complaints, concerted activity, media coverage, and government filings. Information outside the Protective Orderʹs scope cannot be sealed based on the Protective Order.

## 6. <u>Apple's best argument is claiming the Plaintiff leaked about Apple employee "Cervical Mucus," but even that argument fails.</u>

Because Apple seeks immediate sealing and shortened time, the Court must evaluate whether Apple has any preliminary likelihood of success on the merits of sealing this term. Apple does not. Appleʹs active confidentiality designations for these passages include the terms: ʺovulation study or they were asking females to measure our cervical mucus,ʺ ʺovulation,ʺ ʺmeasuring female employeesʹ cervical mucus,ʺ ʺmy cervical mucus,ʺ and ʺmucus — the cervical mucus secretion.ʺ

Each term/phrase was individually designated across multiple separate deposition excerpts implying Apple believes the term/concept/experience is itself confidential – not how it is used in context. Or if Apple does believe the context important, then it's critical to address that Appleʹs designations are all specific deposition excerpts in which an employee describes complaints she made to her supervisors, coworkers, the government, and/or the public about work conditions. In each instance, the employee is describing complaints about workplace conditions directed to management and coworkers. This is textbook protected concerted activity under Section 7 of the National Labor Relations Act, among other statutes including EEOC, DFEH, and Silenced No More.

All terms, except one, were already expressly pled in the prior filings for this lawsuit (including the formal complaints). Apple's claim about those terms is clearly without merit. The only specific term Plaintiff has not yet confirmed verbatim on this docket is ʺcervical mucus.ʺ Therefore, Apple's strongest legal argument would be that posts/comments made by the Plaintiff about her cervical mucus, or her coworkers cervical mucus, related to Apple as her employer, was the Plaintiff leaking secret information regarding Apple's business interests in her and her coworkers cervical mucus. Apple's stated justification? That these were commercial, for-profit medical studies of employee cervical mucus where Apple hoped to monetize the employee cervical mucus and use the mucus for business development purposes.

The Plaintiff's cervical mucus references appear in NLRB filings. Plaintiff's pending NLRB charge, the cover letter accompanying the charge, and the blog post Apple seeks to suppress all reference Apple's designation of cervical mucus testimony as confidential. The NLRB charge identifies, among other alleged violations, an *"unlawful gag order on [protected concerted activity] about bodily autonomy."* The blog post states: *"Apple does not own my vagina, has no legitimate interest in who I have sex with, and it's outrageous Apple would even imply it could make these claims."* This is the speech Apple asks the Court to compel Plaintiff to delete. (Note: Apple also attempts to conceal the URL of the blog post from this Court using a tinyURL shortener presumably because the URL also includes "cervical mucus").

The Plaintiff has repeatedly pled privacy invasion claims against Apple arising from menstruation and sexual activity "studies" starting with Plaintiff's Original Complaint in this case in Sept. 2023. She's also used terms like "ovulation" but it does not appear she's pled the phrase "cervical mucus" in this environmental, health, & safety whistleblower retaliation case. So, if Apple cannot claim confidentiality regarding "menstruation" or "ovulation," then it must argue the "cervical mucus" content is unrelated to ovulation and menstruation.

This requires an untenable argument. Cervical mucus is a subcategory of menstruation and ovulation, produced by the cervix, and regulated by estrogen and progesterone across the menstrual cycle. Its entire function and relevance in health tracking is as an ovulation and menstruation biomarker. Every complaint version on this docket complains about Apple's ovulation and menstruation studies. The designated deposition testimony discusses cervical mucus in the context of those same ovulation and menstruation studies. For Apple to argue that "cervical mucus" is a distinct, previously undisclosed category of information — rather than a detail of the already-public ovulation and menstruation studies — Apple would need to argue that the employee's testimony was not actually about the menstrual cycle.

Further, a 2023 French magazine article in Telerama describes Apple's menstrual cycle monitoring of employees.[2] In that reporting, a former Apple coworker, organizing with the Plaintiff around these issues, shared details about the cervical mucus tracking program with the reporter, including photographs of the physical kit Apple provided to female engineers. Apple is aware of this reporting and was asked for

---

[2] Olivier Tesquet, *Ashley Gjøvik, lanceuse d'alerte licenciée par Apple, seule contre tous: La faute de cette salariée, licenciée en 2021 : avoir révélé que la firme californienne transforme ses employés en cobayes. Allant jusqu'à les traquer dans leur intimité.,* (translated: Ashley Gjøvik, whistleblower fired by Apple, alone against everyone. This employee's offense, for which she was dismissed in 2021: revealing that the Californian company turns its employees into guinea pigs, even going so far as to stalk them in their private lives), Telerama, March 14 2023, https://www.telerama.fr/debats-reportages/ashley-gjovik-lanceuse-d-alerte-licenciee-par-apple-seule-contre-tous-7014661.php

comment. If Apple wishes to pursue sealing of this term, it must demonstrate that "cervical mucus" constitutes a "trade secret" or "competitively sensitive business information" as required by *Oracle*, and must explain how a subcategory of the menstrual cycle (discussed publicly across multiple complaints, media articles, and government filings) becomes confidential when referred to by its clinical name.

**7.**   **Apple is using the protective order for its admitted original and exclusive purpose: to silence its employee about her workplace complaints and whistleblower disclosures.**

Before the Protective Order was entered, during meet-and-confer regarding its terms, Apple's counsel stated that Apple's intended use of the order was to retroactively designate Plaintiff's public complaints and protected disclosures as "confidential." Plaintiff opposed entry of the Protective Order on this basis and informed both the district court and the Ninth Circuit that Apple had stated this was its plan. See Appellant's Motion for Injunction, Case No. 25-2028, DktEntry 15.1 at 13 (9th Cir. May 7, 2025) (reporting that "Apple admitted their only plan for [the protective order] now is to make her protected disclosures 'confidential' under court order" and that "Apple's counsel told Gjovik they only wanted the court protective order to use to threaten her").

That is what has now occurred. Apple obtained the Protective Order by representing to the Court that it could not produce documents in discovery without one. Since entry of the order, Apple has produced no documents under the order and has refused to produce any further documents in discovery generally. The sole use Apple has made of the Protective Order is to designate Plaintiff's own deposition testimony about her own body, right to privacy, and her workplace complaints as confidential. Now Apple brings the present motion seeking to seal Plaintiff's public filings and compel deletion of Plaintiff's public speech regarding these topics, despite their presence in every complaint filed in this docket.

The information Apple is designating is an employee's complaints about invasions of her privacy — including her sexual and reproductive privacy — in the workplace. These complaints implicate practices that affect not only employees but also consumers. In *Lopez v. Apple Inc.*, Case No. 4:19-cv-04577-JSW (N.D. Cal.), Apple was sanctioned for concealing and destroying evidence of surveillance and personal data collection from millions of users without their knowledge or consent, including during sexual activity — the same category of conduct Plaintiff's workplace complaints describe. Apple's position that complaints about its data collection practices are "confidential" is not a confidentiality argument. It is a concealment argument and has been found to be sanctionable misconduct.

This Court should consider Apple's credibility in this district when evaluating the present motion, including this history of misleading this court. In *Epic Games v. Apple Inc.*, Case No. 4:20-cv-05640-YGR

(N.D. Cal. Apr. 30, 2025), Judge Gonzalez Rogers issued an 80-page contempt order finding that Apple willfully violated a federal injunction and that Apple executives testified falsely under oath. (Complaining that Apple's filing "strains credulity," that Apple intentionally "thwarted" an injunction, and "remarkably, Apple believed that [the] Court would not see through [Apple's] obvious cover-up" (*Epic Games,* Dkt. 1508, Order at 2). She also complained that when Apple was "afforded ample opportunity to respond" to a court order Apple instead "chose to defy [the] Court's order and manufacture post hoc justifications for maintaining its anticompetitive revenue stream." (*Epic Games,* Dkt. 1508, Order at 75).

Judge Gonzalez Rogers found later revealed evidence exposed that Apple was intentionally and actively violating federal antitrust law during the antitrust proceeding and "Apple knew exactly what it was doing and at every turn chose the most anticompetitive option." (*Epic Games* at 2). She also complained that Apple's approach to compliance with court orders "would require courts to effectively engage in a 'whack-a-mole' game" with Apple in order "to require compliance." (Id. at 57). The Court then referred the matter to the U.S. Dept. of Justice requesting an investigation into Apple and its executives for potential criminal charges of obstruction of justice. (Id). The court ended its 80 page Order complaining again that Apple "willfully chose not to comply with [the] Court's Injunction," Apple "did so with the express intent to create new anticompetitive barriers which would, by design and in effect, maintain a valued revenue stream; a revenue stream previously found to be anticompetitive." (*Id* at 78). The Court further noted that Apple "thought [the] Court would tolerate such insubordination was a gross miscalculation. As always, the coverup made it worse. For [the] Court, there is no second bite at the apple." (*Id* at 78 and cc'ing the U.S. Attorney for the Northern District of California on the Order).

That was less than one year ago. Apple's representations to courts in this district (including representations about the purpose and necessity of protective orders) must be evaluated in that context. In 2023-2025, the Plaintiff also made repeated objections and pleas for the court to allow her to be heard and her rights protected citing Marsy's Law and the Crime Victims' Rights Act (18 U.S.C. § 3771). Now Apple baselessly accuses the Plaintiff of misconduct and leaking, while demanding a Notice of Pendency (documenting a criminal investigation was opened into Apple substantiating her pending crime victim retaliation claim) be sealed, deleted, and declared secret forever.

Apple is asking this Court to treat an employee's workplace complaints as trade secrets including sealing NLRB charges and issuing gag orders preventing employees from reporting violations of federal law. Two years ago, in *Apple Inc. v. Rivos, Inc.*, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024), this district denied sealing of deposition testimony discussing "Apple's practices with respect to its employees" and

warned that frivolous or overbroad sealing motions risk sanctions. Apple's designated material here (an employee's testimony about workplace studies involving her menstrual cycle and cervical mucus) is much further removed from any legitimate confidentiality interest than the employee-practices testimony Judge Pitts found unsealable in *Rivos* and Apple's been warned about this specific topic by this District.

8. **Apple does not actually identify the content it seeks to suppress beyond a NLRB charge, NLRB cover letter for that charge, a blog post about the NLRB charge, and Notice of Pendency filed to this docket notifying the court of the NLRB charge.**

Apple's motion identifies Plaintiff's blog post and social media posts as containing designated material but uses a tinyURL shortener for Plaintiff's website and provides no URLs for the social media posts. The actual blog post URL is: "apple-claims-it-owns-its-employees-cervical-mucus-a-new-nlrb-charge-reveals-the-logical-endpoint-of-corporate-confidentiality-abuse." Apple does not identify timestamps, page titles, or the specific content within each post it contends is designated material. Apple also cannot seal its own filings, then argue the seal justifies deletion of the underlying content, then argue that once deleted the seal is justified because the content is no longer public. That reasoning is circular and fails basic legal analysis.

Plaintiff's website and social media contain years of posts on these topics. The same information appears in the OSTP comment (available on Regulations.gov), the GAO Report to Congress, five versions of the complaint on this docket, exhibits at Dkt. 35-12, Ninth Circuit filings, NLRB filings going back to 2021, articles in The Verge, Gizmodo, Bloomberg, and Telerama, and filings in Plaintiff's Chapter 7 bankruptcy proceeding in the District of Massachusetts. If the Court ordered deletion of any reference to "menstruation," Plaintiff would need to seek sealing or redaction from the Ninth Circuit, this Court (for the complaints and exhibits already on the docket), the Federal Register, the GAO, the NLRB, the Massachusetts bankruptcy court, and multiple media outlets. Apple has not identified the scope of what it requests.

The NLRB implications alone require full briefing. The designated content — and the terms Apple asks the Court to seal and compel deletion of — appears in Plaintiff's pending NLRB charge and its accompanying cover letter. The NLRB charge was filed as a Notice of Pendency on this Court's docket (Dkt. 278). Before the Court could grant any sealing or deletion order encompassing this content, it would need to resolve the following questions, none of which Apple has briefed:

- Is Plaintiff permitted to discuss the content of her NLRB charges at all? If the designated terms are "confidential," may she reference them in communications with the NLRB? Must Plaintiff withdraw her pending NLRB charges to comply with a sealing order? If the charge itself contains

designated terms, does compliance require asking the Board to seal or destroy the filing?

- May Plaintiff complete the sworn affidavit with the Board agent about the alleged violations — which necessarily requires discussing the designated terms — without obtaining prior court approval? If a labor reporter obtains a copy of the NLRB charge through FOIA and asks Plaintiff about the allegations, is Plaintiff forbidden from discussing the subject matter of her own charge with the press? Must she insist the press not publish?

- How do these restrictions interact with *Garmon* preemption, the *Machinists* preemption doctrine, the Norris-LaGuardia Act's prohibition on injunctions in labor disputes (29 U.S. Code § 101, *et. seq.*) — including injunctions restricting the publicizing of labor disputes — and separation of powers principles that limit courts from interfering with NLRB proceedings?

- Can this court proceed at all without the Bankruptcy Court lifting the statutory Stay (11 U.S. Code § 362)[3] which prevents claims from being asserted against a Ch. 7 debtor? Why hasn't Apple asked to lift the stay?

NLRB charges are filings with a federal agency protected under Section 8(a)(4) of the National Labor Relations Act. A court order requiring deletion of social media posts about the content of one's own NLRB charges, or sealing the charges themselves, raises issues that cannot be resolved on a shortened briefing schedule without full adversarial presentation. The court will have to conduct extensive analysis to identify if it even has jurisdiction to hear the matter and it likely does not. Accordingly, these questions are a reason for the 35-day schedule the Court already set — not for the 5-day schedule Apple requests.

The Norris–LaGuardia Act (a.k.a. the "Anti-Injunction Bill") expressly limited the federal court's jurisdiction regarding labor disputes and barred the federal court's from issuing any injunctions arising out of or related to labor disputes, against workers organizing with coworkers about nonviolent labor disputes. The 1932 statute expressly creates "limitations upon the jurisdiction and authority of the courts of the United States" regarding workers involved in "self-organization or … other concerted activities for the purpose of… mutual aid or protection." 29 U.S. Code § 102. The rationale provided by Congress is that:

> "The individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with

---

[3] **11 U.S. Code § 362 - Automatic stay.** A Ch. 7 Petition for bankruptcy "operates as a stay, applicable to all entities, of— (1 )the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2)the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3)any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;… **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case…"

his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents… in concerted activities… for the purpose of mutual aid or protection…"

29 U.S. Code § 102 - *Public policy in labor matters declared*. (Mar. 23, 1932, ch. 90, § 2, 47 Stat. 70).

Whether Plaintiff's speech about workplace conditions constitutes protected concerted activity under Section 7 is a determination within the NLRB's exclusive jurisdiction. A charge raising this question is pending before the Board. Under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), when an activity is 'arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.' This jurisdictional bar does not depend on the Board's ultimate conclusion—it exists because the determination itself is reserved to the Board, subject to circuit court review, not district court adjudication.

If the court were to grant Apple's requested relief (i.e., sealing NLRB charges, compelling deletion of posts about workplace conditions, imposing a gag order on the employee) and the NLRB then finds Apple's underlying conduct with these secrecy rules and resulting Court's enforcement constituted NLRA violations, the NLRB would find the Court issued injunctive relief in violation of federal statutes eliminating the court's jurisdiction in the matter, and the Court acted in aid of Apple's misconduct which the Board may determine violated federal labor law. So the court helped Apple bust unions and retaliate against labor organizers. That's the scenario *Garmon* exists to prevent.

### 9. **Apple improperly seeks to seal entire documents.**

Local Rule 79-5(a) requires parties to "avoid wherever possible sealing entire documents." Judge Westmore's Standing Order reinforces this: "*no document shall be filed under seal without request for a court order that is narrowly tailored to cover only the document, the particular portion of the document, or category of documents that is sealable under the governing legal standard.*" Apple seeks to seal Exhibit A (the designation list) in its entirety. This is the document that identifies what Apple claims is confidential — the central document at issue. If sealed entirely, no one can evaluate whether the designations are proper. Local Rule 79-5(f)(6) warns: "*overly broad requests to seal may result in denial of motion.*"

Apple's approach, if accepted, would make protective order designations self-executing for sealing purposes: designate material as confidential, then cite the designation as the basis for sealing, then seal the designation list itself so no one can evaluate whether the designations were proper. This is the exact framework rejected in *Sereni*. It is even more problematic here because Apple asks the Court to seal the

very evidence needed to evaluate the underlying motion to enforce.

If the evidence and arguments are sealed, neither Plaintiff nor the public can determine whether Apple's designations are facially legitimate or whether they are the kind of *"mass, indiscriminate, or routinized designations"* the Protective Order itself prohibits (Dkt. 229 ¶ 5.1). Apple is asking the Court to prevent review, discussion, or analysis of the documents whose propriety are admittedly at issue and alleged to constitute violations of federal labor law. The Ninth Circuit has held the "strong presumption of access to judicial records applies fully to dispositive pleadings... because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the "public's understanding of the judicial process and of significant public events." *Kamakana* at 5402 citing *Valley Broadcasting Co. v. U.S. Dist. Ct.,* 798 F.2d, 1289, 1294, (9th Cir. 1986).

This means the presumption may not apply for a motion or filing that is "unrelated, or only tangentially related, to the underlying cause of action." *Kamakana* at 5403, quoting *Foltz* at 1135, quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). However, here the content Apple is alleging is confidential and must be sealed including the actual claims in this lawsuit, dozens of filings over multiple years on just this docket, hundreds of posts and filings across numerous venues, platforms and jurisdictions – and which Apple admitted in its own filing that it believes this current dispute represents the same "obligations" the Plaintiff has under the "terms of the Confidentiality and Intellectual Property Agreement" with Apple, which Apple then said the Plaintiff breached/violated and that "led to her termination from Apple in the first place" (Dkt. 280 at 2, footnote 2).[4] That makes Apple's motion to seal an entire declaration, by Apple's own admission, comparable to requesting to seal the entire Declaration in support of a Motion for Summary Judgement.

The contrast with proper practice in this district is instructive. In *Brooks v. Thomson Reuters Corp.*, No. 3:21-cv-01418-EMC, before Judge Chen, sealing orders specified redactions with extraordinary granularity — individual deposition lines (e.g., "Fox Dep. at 50:15-19 (after 'believe it's about' to the end of line 19)") and individual phrases within briefing (e.g., "page 1, lines 10-11 (between 'including' and 'of dollars')") across eight pages of itemized redactions. Each redaction was supported by a detailed corporate representative declaration attesting to the specific competitive harm from disclosure of that specific

---

[4] Apple's filing at Dkt. 280: "Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed. But Plaintiff has disregarded those obligations before; indeed, it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." page 2 at footnote 2.

information — revenue figures, customer lists, internal training materials, proprietary product architecture, and data licensing agreements. Apple's motion says "*Entire document.*"

A party accused of violating a court order has the right to know what conduct is alleged to be violative and to examine the evidence against her. Sealing the designation list and the supporting declaration while simultaneously seeking sanctions based on those documents denies Plaintiff the ability to respond.

## IV. APPLE'S REQUESTS TO SEAL PLAINTIFF'S FILINGS ARE NOT PROPERLY BEFORE THIS COURT

Apple's Motion to Enforce (Dkt. 294) requests sealing of Dkts. 278, 284, and 285 but Apple never filed a motion to seal any of these filings. This alone is dispositive: there is no motion before the Court to seal these documents so the request is not ripe for judicial consideration.  The procedure for sealing another party's filings under Local Rule 79-5(f) requires the Designating Party to file a separate declaration within 7 days establishing sealability, after which the opposing party gets 4 days to respond.  Apple has not followed this procedure. Per *Synchronoss*: failure to comply with 79-5(f) "renders . . . entire . . . sealing mechanism noncompliant."

Additionally, two of these three filings present jurisdictional problems. The Notice of Pendency at (Dkt. 278) is addressed to Judge Chen and it relates to case management, not discovery. A magistrate judge cannot seal a filing directed to the presiding district judge without that judge's involvement. Similarly the Motion to Quash (Dkt. 285) was also filed to Judge Chen, who ruled on it. Judge Chen identified no confidentiality concerns and the motion is already acted upon by the court. Judge Westmore cannot seal a motion the district judge has already adjudicated.

If Apple wishes to seal these filings, it must file proper motions to seal: under 79-5(f), with supporting declarations, with proper briefing schedules, and directed to the correct judges. Furthermore, if granted as requested, sealing these filings would implicitly require sealing this litigation's complaints, multiple motions and exhibits, and much of the docket — since the same information appears throughout this case and has for two and half years.  Sealing all this information would also require coordination with the Ninth Circuit (Case No. 25-2028), the NLRB, and the bankruptcy court in the District of Massachusetts, where Plaintiff has filed the information previously.  Apple's Motion actually asks this court to seal most of this lawsuit and case docket. Thus, this is a case management issue for Judge Chen, not a discovery ruling for Judge Westmore.

## V. APPLE'S REQUESTS FOR INJUNCTIVE RELIEF ARE NOT PROPERLY

## BEFORE THIS COURT

Apple's Motion to Enforce requests compelled deletion of published blog posts and social media content and a prohibition on future publication of material Apple designates as confidential. These are injunctions: a mandatory injunction (compelling deletion) and a prohibitory injunction / prior restraint (restricting future speech). Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may hear and determine any pretrial matter except, among others, "a motion for injunctive relief."

This is a statutory prohibition, not a discretionary limit. Motions for injunctive relief are dispositive matters that magistrate judges may only address by recommendation to the district judge under § 636(b)(1)(B). Judge Westmore recognized this during the Feb. 20 conference when she stated there would be no injunctions. Judge Westmore said "No, there is no injunction" and the only thing that may occur is "the court can order sanctions." (38:56): Plaintiff asked, "would be a finding of contempt based on evidence in a hearing that's sent to Judge Chen and Judge Chen issues?" (39:29) Judge Westmore said: "No, no, no. I don't know if it's going to be any sort of motion for contempt." (39:29).

In addition, Apple's prior letter to the Court stated that its request arises from Plaintiff's employment agreement and trade secret obligations — not from discovery. Apple also takes the position that the "breach" determination is freestanding and does not require resolution of whether the designations are proper. If that is Apple's position, then Apple is not seeking discovery relief. Apple is seeking a freestanding injunction based on an employment agreement, directed at out-of-court speech. That is a Rule 65 motion to Judge Chen, following a request to lift the Stay. See *In re Hruby,* 512 B.R. 262, 274 (Bankr. D. Colo. 2014) (employer must seek stay relief before enforcing confidentiality provisions against debtor-employee).

If Apple genuinely believes trade secrets are being disclosed and needs emergency injunctive relief, the proper vehicle is a TRO motion to Judge Chen under Rule 65, satisfying the four *Winter v. NRDC*, 555 U.S. 7 (2008) factors: (1) likelihood of success on merits; (2) irreparable harm; (3) balance of equities; (4) public interest. Apple must also address the prior restraint doctrine, which imposes a "heavy presumption" of unconstitutionality on content-based speech restrictions. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); see also *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (applying prior restraint analysis to content-based injunctions). Apple has not filed such a motion and presumably will never because it cannot argue and prove that burden in good faith.

Additionally, Plaintiff incorporates by reference her previously filed objections at Dkt. Nos. 284, 285, and 286 — including Plaintiff's motion for sanctions (Dkt. 286) based on Apple's failure to seek relief

from the automatic stay in Plaintiff's Chapter 7 bankruptcy proceeding before requesting injunctive relief

and findings against Plaintiff in this Court — as well as the automatic stay under 11 U.S.C. § 362(a)(1),

*Garmon* preemption, the Norris-LaGuardia Act, the Speak Out Act (Pub. L. No. 117-224), California's

Silenced No More Act (Cal. Gov. Code § 12964.5), and First Amendment prior restraint protections.

## VI. THE ONLY REQUEST ACTUALLY BEFORE JUDGE WESTMORE: AN UNRIPE MOTION FOR DECLARATORY RELIEF.

### 10. **Defendant must meet and confer on this matter prior to filing motions, per the Court's Feb. 20 2026 order.**

The only category of relief that is actually before Judge Westmore is a request for a declaratory

finding regarding whether Plaintiff breached the Protective Order — and only on the 35-day schedule the

Court previously ordered on Feb. 20 2026. However, this request has extensive issues that still need

proper briefing (and this response is not the formal opposition – the Plaintiff should still have 14 days to

draft and file that).   However, as a threshold matter, it's critical to immediately address that the Court

ordered good faith participation in meet/confer as a prerequisite prior to the party's having a right to

engage in motion practice. The Court warned Apple on Feb. 20, 2026: "if you file a motion and you haven't

met your obligation to meet and confer, then I may not consider the motion because you haven't done it."

(2/20/26 Judge Westmore at 58:04).   The Plaintiff quoted this warning to Apple in the Feb. 26, 2026

emails. (Exhibit A).  Apple still refused.  Because Apple expressly refused to meet/confer despite the

Court ordering met/confer as a sort of vesting to be able to file motions, then the condition precedent is

not satisfied and Apple cannot proceed.

### 11. **The plain text of the Protective Order excludes all of the content at issue from the scope of that Protective Order.**

The Protective Order's own exceptions are dispositive. The Protective Order (Dkt. 229 ¶ 3) does

not cover information already in the public domain or information known to the Receiving Party prior to

disclosure. [5]All designated information was known to Plaintiff before the deposition (it is her own body,

her own experiences) and was in the public domain (through complaints on this docket, media articles,

---

[5] "The protections conferred by this Stipulation & Order do not cover the following information: (a) any information
that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after
its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming
part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to
the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information
lawfully and under no obligation of confidentiality to the Designating Party." Dkt. 229 at 3.

federal filings). A protective order cannot restrict use of information obtained independently from discovery or already in the public domain. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-37 (1984); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

Information never covered by the Protective Order cannot be "designated" under it, and disclosing such information cannot constitute a "breach." This is what the Plaintiff has repeatedly argued as a threshold matter regarding Apple's allegations here. The Protective Order is irrelevant to this dispute because the Protective Order expressly states it does not apply to the specific information Apple is claiming is now confidential: public, already-known, personally experienced, and otherwise learned outside of discovery. Apple disregards the plain text of the Protective Order as treats its terms as irrelevant and non binding, but the Rule against Surplusage and Presumption of Validity compels this court to interpret its own Order as not including unnecessary and irrelevant terms.

The Protective Order expressly rejects coverage of the content at issue here and it does so with a definitive "*the protections conferred… **do not cover** the following…*" (emphasis added) while the Order expressly affirms the scope of covered content saying the "*protections conferred… cover not only Protected Materials*" but also other materials/conduct related to those Protected Materials. (Dkt. 229 ¶ 3).  Section 2 defines "Protected Material" as "*any Disclosure or Discovery Material that is designated as "CONFIDENTIAL.*" (¶ 2.13).  Notably the Designation Section refers to "Designating Protected Material" which is the category of information separate from public records, already known information, and information learned outside discovery. Therefore, any attempt to "designate" public information as "confidential" under the Protective Order is void because the terms of the Order say it does not reach that content and/or subject matter.

Within the four corners of the document, the Protective Order expressly, repeatedly says it does not apply to all of the content at issue here: public information and records, pre-existing knowledge, and information learned outside discovery. Courts are not authorized to interpret statutory or contract provisions to be meaningless (*verba cum effectu sunt accipienda*) so the repeated terms excluding this information from the Protective Order, must mean that the Order does not apply to the content, which is the content at issue here. ("If possible, every word and every provision is to be given effect. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence," Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012).)

The language of the designation and meet/confer process also uses separate terminology (Protected Material, etc.) then the content the same Order asserts is not governed by the Order or its

procedures (no protection under the Order; *expressio unius*). The only way to maintain any harmony between the Protective Order and the First Amendment is constitutional avoidance – to assume that the Protective Order, as written, does not infringe upon constitutionally protected speech, which fortunately, the text of the Order purports it will not and cannot, regardless of Apple's current arguments.

Finally, the Order's introduction also expressly states that "*this Order does not confer blanket protections on all disclosures or responses to discovery*" and the "*protection it affords [records] from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.*" (Dkt. 229, ¶ 1). This means that simply designating a public records cannot transmogrify that one-word designation into a court ordered restraining order, or gag order, or injunction, or justification so seal documents. Instead, the text affirms the Protective Order and its associated designation/challenge processes have no coverage or authority over public records, already known information, and information learned outside of discovery – period.

## 12. Analysis of a 'breach' of an Order where the scope of the Order is at issue, requires the Court determine the nature and legitimacy of the designations/content at issue.

Apple's legal theory requires resolution of the dispute regarding the validity of Apple's designations. Apple argues that designations must be honored regardless of whether they are proper, even if they are clearly improper, and that the "breach" analysis is independent of the designation validity analysis. But a party cannot violate a protective order by disclosing information the protective order does not cover. That's the show stopping issue here. The designation validity question is necessarily part of any breach analysis, when the information designated is public and already known information, like here.

Further, the framework of the Protective Order puts a duty on the *Designating Party* (here, Apple) to substantiate its designations, to not make frivolous or bad faith designation, to not overdesignate, and to quickly withdraw designation if it realizes they are improper or not substantiated. The duty to withdraw mistaken designations is mandatory. (Dkt. 229 ¶ 5.1; "*Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.*").

The Protective Order, as written, assumes designations can be wrong and puts the consequences on the party that made the bad designation—not on the party who refuses to pretend public information is secret. The Court ordered further meet/confer on this matter, yet Apple refused the Court's order, will not meet/confer, or substantiate its allegations, and is insisting on a 2-day briefing deadline for the Plaintiff instead of the 14 days she was promised on 2/20.

Apple has refused to engage in meet-and-confer regarding the designations in violation of court

orders and shifts between claiming 1) there's an independent basis for alleging these "breaches" under the employee's employment agreement ("*Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement*" Dkt. 280 at 2, fn 2); and Apple compares these current alleged "breaches" to Apple's justification for terminating the Plaintiff ("*Plaintiff has disregarded those obligations before... [and] that led to her termination from Apple in the first place.*" Id.).

However, then, as soon as confronted about the April 2025 NLRB settlement and the need to request the Stay be lifted in the bankruptcy proceeding prior to making these claims, then Apple shifted to alleging the Protective Order provides complete legal authority for its allegations – despite the Protective Order expressly exempting the very subject matter Apple is trying to claim inherits a court ordered prior restraint and justification to seal documents simply by Apple "designating" it so and with their prior filing expressly arguing the legal authority to sanction the employee arises from her now mostly defunct employment agreement with Apple. For example, the terms Apple agreed to include:

> "The Charged Party ("Apple") will comply with all the terms and provisions of said Notice.... Apple agrees that it will not enforce the definition of Proprietary Information (or similar terms) set forth in any version of the Confidentiality and Intellectual Property Agreement ("IPA") effective as of the date that this Agreement is executed to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act. A further material term of this Agreement is that the Charged Party is directed to prospectively clarify the definition of Proprietary Information (or similar terms) in the IPA and make other clarifications to the IPA relating to the Section 7 rights of employees... Performance by the Charged Party with the terms and provisions of this Agreement shall commence immediately after the Agreement. The Board may then, without necessity of trial or any other proceeding, find all allegations of the complaint to be true and make findings of fact and conclusions of law consistent with those allegations adverse to the Charged Party on all issues raised by the pleadings. The Board may then issue an order providing a full remedy for the violations found as is appropriate to remedy such violations. The parties further agree that a U.S. Court of Appeals Judgment may be entered enforcing the Board order ex parte... THE NATIONAL LABOR RELATIONS ACT GIVES YOU THE RIGHT TO:.. Act together with other employees for your benefit and protection;... WE WILL NOT interfere with, restrain, or coerce you in the exercise of the above rights. YOU HAVE THE RIGHT to discuss wages, hours and working conditions and WE WILL NOT do anything to interfere with your exercise of that right. WE WILL NOT promulgate, maintain, or enforce any rule that defines confidential information as "anything not explicitly, publicly, or purposefully disclosed by Apple." WE WILL NOT promulgate, maintain, or enforce a Confidentiality and Intellectual Property Agreement, Business Conduct Policy, Misconduct and Discipline Policy, Social Media and Online Communications Policy, Confidentiality Obligations Upon Termination of Employment statement, or a Business Conduct and Global Compliance FAQ regarding confidential information that broadly defines "confidential" or "proprietary" information, or relies upon any other overly broad definitions of those terms, without contemporaneously notifying employees of their rights to discuss wages, hours, or working conditions and their rights to engage in union or other protected, concerted activity under the NLRA.... WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information or for failing to report alleged violations of overly broad rules relating to confidential or proprietary information.... WE HAVE rescinded the aspects of Business Conduct and Global Compliance FAQ regarding Confidential Information described... WE HAVE rescinded the aspects of the Business Conduct Policy described above and revised it to make clear that Apple Confidential Information does not include wages, hours, and working conditions, that employees may communicate about labor disputes... WE HAVE rescinded the aspects of the Workplace Searches and

Privacy Policy described above and revised it to conform with the definition of Apple Confidential Information described above and to inform employees that searches will not be used to monitor employees' protected, concerted activity and WE HAVE informed employees of these revisions…. WE HAVE rescinded the aspects of the Misconduct and Discipline Policy described above and revised it to conform with the definition of Apple Confidential Information described above, to reiterate employee rights under the National Labor Relations Act… WE HAVE rescinded the aspects of the Social Media and Online Communications Policy described above and revised it to conform with the definition of Apple Confidential Information described… WE HAVE rescinded the prior version of the Confidentiality Obligations Upon Termination of Employment statement, which contained an overbroad definition of proprietary information, and revised it to conform with the definition of Apple Confidential Information described above and WE HAVE informed employees of these revisions. WE WILL NOT in any like or related manner interfere with your rights under Section 7 of the Act. /s/ Apple Inc (Charged Party)."

(Dkt. 194 at 17-20, the April 2025 NLRB Settlement Agreement between Apple, Gjovik, NLRB).

**13. The Court continues to have no jurisdiction on this matter under the National Labor Relations Act (including _Garmon_ and _Machinists_ preemption) and the Norris-LaGuardia Act of 1932 (e.g., 29 U.S.C. §§ 101-115).**

The NLRB charges are facially protected activity. But the content in dispute here is also facially arising from work conditions, worker complaints about work conditions, employee organizing, complaints and publicity intending to compel the employer to improve work conditions, and so on. All of this is a matter for the NLRB to review, it is in front of the NLRB now, and the Court cannot find that public information and government filings constitute a basis for sanctions under discovery rules because that subject matter is generally never governed by discovery rules by design.

The Plaintiff did also lawfully publicize the fact she exposed Apple attempting to conceal and silence workplace complaints again, including about privacy invasions, again. She shared with her coworkers and the public that she filed NLRB charges against Apple alleging NLRA violations because she believes Apple violated the NLRA and the documented conduct in her charges and cover letter is evidence of NLRA violations. The Plaintiff expressly complained and published that Apple was trying to misuse a discovery Protective Order to retroactively claim that years-long ongoing complaints were now suddenly confidential and that the employee is now under some sort of gag order as long as Apple can draw it out.

That's why Apple's misuse of discovery procedures is repeatedly mentioned in the NLRB charge at issue – and what the NLRB will care most about is what the subject matter of the Plaintiff's statements was, what exactly Apple tried to censor, and if either of those things are related to work conditions, mutual aid & protection, or employee organizing – then Apple surely violated the NLRA again in its designation and subsequent misconduct.  NLRB could find this violation even if Apple had perfectly complied with the Protective Order, which it has not – or if the Plaintiff violated the Protective Order, which she did not.

In addition, to the extent Apple seeks a finding that Plaintiff "breached" the Protective Order by filing or discussing NLRB charges, those charges are filings with a federal agency protected under Section

8(a)(4) of the National Labor Relations Act. A finding that discussing one's own NLRB charges constitutes a "breach" of a protective order would interfere with employee rights under Section 8(a)(1) which is why *Garmon* and *Machinists* preemption remove jurisdiction from the federal courts regarding these issues – so accidental bad decisions, cannot even be enforced – they're void because there's no jurisdiction.

# VII. CONCLUSION & RELIEF REQUESTED

Finally, during the Conference Call on 2/20 the Court acknowledged the Plaintiff's plan to file a motion against Apple for Apple violating the Protective Order, if Apple also moves against the Plaintiff. The Court acknowledged this on Feb. 20 yet Apple insists on a schedule that would make it impossible to hear both motions in the same time frame. Both parties' motions should be heard together on the same schedule. In conclusion, designating public information as confidential under this order is like Apple recording a deed to property it does not own. Apple can file the paperwork and threaten to call the police if people come near it, but none of that transfers title, because they never had title to that land. Like Apple never had property rights to the Plaintiff's vagina and cervix, their secretions, her ovulation and menstruation, or her personal sexual activity – let alone the Plaintiff (or any Apple worker's) complaints about Apple invading its sexual privacy regarding those topics – which is what Apple claims here, like a house on a parcel that belongs to someone else completely yet Apple is insisting the court decide Apple now owns that land simply because Apple says so.

The order never covered the information Apple complains about, so the designation never attached to that information, and applying the Order in such a way to enable that would facially violate the U.S. Constitution and Federal Rules of Civil Procedure. Apple asks the court to grant extraordinary relief—sealing public records, compelling deletion of published speech, imposing a prior restraint on future speech—while providing no factual basis for any of it. Every applicable standard requires a particularized showing by the movant. Apple has made none. The court cannot supply what Apple has chosen to withhold. Accordingly, the Plaintiff respectfully requests that the Court DENY Apple's motions at Dkt. 293 and 295, keep the current schedule for Dkt. 294 or else DISMISS that Motion too as unripe; and ORDER Apple to meet/confer prior to refiling their motions properly.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed Feb. 27 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816


# EXHIBIT A


Exhibit A: Email chain of February 26, 2026, between Plaintiff and Apple's counsel, documenting seven requests to meet and confer and Apple's repeated refusals.

## RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Jimenez, Catherine M.<catherine.jimenez@pillsburylaw.com>, Trechter, Reed C.<reed.trechter@pillsburylaw.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Troop, Andrew M.<andrew.troop@pillsburylaw.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, Park, Julie Y.<JuliePark@mofo.com>, Tarantino, William F.<WTarantino@mofo.com>, Russell, Zoe<zrussell@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com> |
| Date | Thursday, February 26th, 2026 at 8:59 PM |

Counselor,

You have not even **started** meet/confer or any discussion regarding your planned motions regarding the protective order.

If you plan to outright refuse meet/confer then I will include that as yet another violation of the Protective Order and Court Orders by Apple, in my opposition and my own filing against Apple alleging breaches of the Protective Order by Apple -- which are already well documented and voluminous.

Again, I ask you to start meet/confer, as you are legally required to and the Court ordered you to, and you promised you would comply, by telling me what Apple's issues are, what relief they're requesting, and what the legal basis is for their request -- with specific facts, legal cites, and evidence to clarify their position. This is an extremely basic request and you did this a few times prior in 2024, so you know how to do this, you're just refusing to do it here which again leads me to believe the entire point of this is illegitimate, otherwise there's no reason for you to willfully violate court orders and the Protective Order, and refuse to make your case to me on whatever these issues are.

You're a litigator and I thought that's your job. I'm pro se and I'm willing to do this, so it seems like this shouldn't be too hard for you -- if you actually intended to comply with the court's orders, rather then willfully disobeying the court's orders while also intentionally violating at least 7 state and federal statutes as you do so.

As you know as a world-class employment defense litigator, the paper trail matters and any unusual procedure (especially skipping steps, diverging from established procedures, etc.) indicates pretext and possible foul play. Similarly, making extreme accusations but concurrently refusing to detail or substantiate those accusations is often found to be the most incriminating behavior because it shows a forbidden animus with direct evidence that is then also further substantiated by the concurrent unexpected and irrational behavior that can only be explained by an unlawful motive and purpose. Then of course, you have already expressly claimed in written papers filed to this court that this entire interaction supposedly symbolizes Apple's termination of my employment and that underlying

"misconduct" in 2021 which you also still refuse to detail or substantiate, and you said that these new vague "leaks" are also violations of my IPA and employment agreements, covering the policies and terms that NLRB forced Apple to revoke and promise to not enforce in the April 2025 trilateral national settlement agreement -- which you are intentionally violating repeatedly, in writing, filed to a court docket.

So again, counselor, would you like to chat and see if we can reach any sort of compromise?

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Thursday, February 26th, 2026 at 8:32 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> There is nothing further to discuss on the issue of compliance with the protective order.
>
> We will continue to meet and confer on the medical records and the deposition designations.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
> M 650 759 1929
> mriechert@orrick.com

---------------------------------

**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

**[EXTERNAL]**

Counselor,

While I appreciate your declaration attesting to forbidden animus regarding the pending NLRB charges against your client, what you have stated below is not what Judge Westmore said.

I quoted the 2/20 transcript below and the Judge's order. You are repeatedly making statements that are not supported by the record, and which are contrary to the record, which is not productive.

Its clear from the transcript that she prohibited either party from filing any motions unless we meet/confer regarding those motions. That's true for the designations, but it was also true for any motions for sanctions. She said the Protective Order requires that meet/confer for either issue, she said that expressly multiple times, and you promised her you would comply.

Yet today:

- You still have not responded to my 2/4/26 objections to your confidentiality designations including the fact you refused to serve, date, or sign them
- You still have not responded to my subsequent Excel document challenging your 160+ designations in detail which has been sitting and waiting for your response for over a  week now
- You still have not engaged in meet/confer regarding your allegations of Protective Order breaches and you are repeatedly telling me in email that you feel like you have no obligation to meet/confer, do not have to meet/confer, and can do whatever you want even if it facially violates the Protective Order, Standing Order, Local Rules, Federal Rules, statutes, case law, and multiple constitutions.

Again, I simply ask you to meet/confer regarding your concerns. Your refusal to do this violates the same Protective Order that you are saying you plan to assert claims against me alleging violations, while knowingly violating that same Protective Order and a Court Order.

Can we chat instead? Just send me more info. Tell me what's up. As stated, I don't actually understand what Apple's factual or legal basis is, and if you tell me maybe I could be willing to compromise on something -- but we'll never know if you refuse to meet/confer.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Thursday, February 26th, 2026 at 8:16 PM, Riechert, Melinda <[mriechert@orrick.com](mailto:mriechert@orrick.com)> wrote:

> The purpose of our conference with the Magistrate was to see if we could avoid the motion by having you agree to take down the postings that violated the protective order. You refused and are continuing to refuse to take down the posting that violated the protective order.  There is nothing further to meet and confer about.
>
> **Melinda Riechert**
>
> Partner
>
> [Orrick](#)
>
> Silicon Valley
>
> T 650/614-7423
> M 650 759 1929
> [mriechert@orrick.com](mailto:mriechert@orrick.com)

.

[EXTERNAL]

Counselor,


Judge Westmore ordered you to meet/confer about your allegations of breaches/violations of the protective order.


It's in the transcript below. It's in her standing order. It's in the protective order. It's in the federal rules of civil procedure.


I'm simply asking you to provide details on your grievances and for us to determine if there's any way to narrow or avoid your motion. But you're insisting on refusing to meet/confer regarding your planned motions -- which is frankly absurd because you're assumably drafting the motions right now, so you could just share what your legal outline is and the issues alleged. It appears you simply do not want to do that -- you do not want to meet/confer. You do not want to narrow or avoid your motion, because, perhaps the entire point of filing this motion is just to file it. To cause chaos, to defame and denylist me, to harass me and threaten and intimidate all Apple workers watching, to obstruct summary judgment and NLRB proceedings, and so on -- that appears to be your actual goal here. I urge you to prove me wrong -- by actually meeting/conferring, as is legally required.


You're also now just mischaracterizing my statements. I said "I've repeatedly said I will comply with the Protective Order" and then you said "You have said, and you continue to say,  you will not abide by it." The California and court professional rules expressly prohibit lawyers from attributing positions and statements to parties when the parties did not make those statements, which you're doing here and your statements are demonstrably false.


Refusing to meet/confer prior to filing motions, when the rules and orders say you have to meet/confer, and the court ordered you to meet/confer is sanctionable conduct in itself counselor.


As Judge Westmore told you on the 2/20 call, you have to actually identify:

- the specific content at issue (like quotes, URLs, etc -- the Judge also complained you were making vague statements and she needed actual evidence to review because she did not know what you were talking about specifically)
- a legal basis for claiming that content is confidential (she already told you it would be frivolous to allege a violation based on me tweeting that Apple's trying to silence me and Apple workers about "menstruation"; similarly there's no prohibition on me posting transcript pages that were never designated confidential which were the full transcript pages that Apple cited in my NLRB cover letter, and which directly documented Apple violated the NLRA while I protested on that very transcript that Apple was violating the NLRA)
- analysis of what part of the order was "violated," and then the actual legal basis for sanctions and injunctions under federal rules and case law because a protective order is not a self-executing legal basis for sanctions (there's law review articles about this)
- again, what Apple's actually wanting to achieve out of all of this because so far its just demanding censorship (unlawful work rules, gag orders), trying to obstruct NLRB proceedings (sealing evidence and testimony away from NLRB so they can't review it), and other unlawful schemes. Prove me wrong here, otherwise that's what I (and assumably NLRB and anyone watching) am left to assume.

Again, I ask you again to please meet/confer.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 7:55 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Again, you are missing the point. We will and are meeting and conferring on the medical providers issues.
>
> We will be meeting and conferring on the deposition designations.
>
> That is what the Judge is referring to in the language you highlight below.

But there is nothing further to meet and confer about on the protective order. You either agree to abide by it or you don't. You have said, and you continue to say,  you will not abide by it since you do not think it is valid and enforceable against you for the reasons you have stated below. As you know from our lengthy conference with the Judge last Friday, the motion for violation of the protective order relates to the fact that you publicly posted, and filed with this court not under seal, deposition testimony we have designated as confidential under the protective order, in violation of the protective order which requires that anything we designate as confidential under the protective order remains confidential unless and until the parties or the Court agrees it is not confidential. When we file our motion you will receive our case cites and legal authority in support of the motion.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

.

**[EXTERNAL]**

Hello counselors,

I note you are refusing to meet/confer, again.  ("*there is nothing further to meet and confer about on this issue*" -counsel for Apple, just now).

The Protective Order requires Meet/Confer (Dkt. 229 ¶ 6.2-6.3) and your refusal to meet and confer is yet another violation of the Protective Order by Apple, which will be included in my own motion which the Judge noted I would be filing against Apple if Apple resorts to filing theirs against me.

Judge Westmore's standing order also requires that you complete meet/confer prior to filing any motion for sanctions which this is. (¶ 13, 19: "*No motion for sanctions may be filed until after the moving party has complied with the requirements of paragraphs 13-17 above.*")

I'm asking you again to actually meet and confer on both issues. The court expressly ordered you to meet and confer with me and have a substantive conversation regarding whatever grievances you have prior to filing a motion and warned you she would not hear your motions if you did not have a substantive meet and confer.

What's missing from this conversation includes:

- Apple identifying specifically which actions/statements it believes violated some order, agreement, or law
- Which order, agreement, and/or law each action/statement violated and why, with case cites
- Why exactly Apple feels the specific acts/statements were improper, prejudicial, or harmful to Apple with some kind of quantification and qualification of that harm
- Any legal authority whatsoever to support that a coerced court model protective order could hold some legal authority preempting case law, regulations, rules, statutes, and the federal and California constitutions
- If there is any sort of compromise to make with Apple regarding this matter that's not simply demanding the employee delete protected speech, agree to not engage in PCA, withdraw/conceal complaints filed to US gov against Apple, and refuse to cooperate with NLRB proceedings by request of Apple. Because that's what I hear you're asking for.

Under a case law analysis of a pretextual threat or retaliatory act, what you're doing right now checks all the boxes: vague, nondescript, shifting, generalized, post-hoc rationalizations, mischaracterizing prior communications, refusing to disclose the factual basis for the punishment, etc. This is also classic DARVO — reframing the complainant's complaints as the misconduct, while refusing to substantiate the underlying claims even when ordered by the court to do so.

Further, my argument about mutual assent is a foundational objection and does not waive your requirement to meet/confer. I've repeatedly said I will comply with the Protective Order (despite objecting to it before, during, and after I was forced to sign it) but only with its terms interpreted as to not conflict with the constitution, federal statutes, or the federal rules. Accordingly, even though I don't want the Protective Order and I oppose being bound by it, I'm not violating it and do not intend to violate it, and it expressly says it does not apply to already public information, information someone already had prior to discovery, or

information someone gets from methods outside discovery -- which means it cannot apply to what I shared by its own facial terms. Therefore, we still have all of Apple's open issues and disputes on this matter to meet/confer about.

If Apple can identify what the specific issues are, in detail, with a legal basis and justification, and tell me what it's looking to get from me and why it thinks it's entitled to that request (with legal cites, facts, etc.) then we can see if there's any sort of compromise to be had, but so far all I've received from Apple is threatening (but vague) email with urgent demands (that are highly unspecific) and more threats of reprisals (generally unspecified but of a legal nature).

Please comply with the court's order and actually meet/confer with me on this.

To quote the transcript of the Feb. 20 2026 hearing:

**Judge:** (31:54) But it's so much better and such a better use of time if the parties meet and confer about the 160-

**Worker (Gjovik):** (32:10) Agreed. Again, I complained about this with the HIPAA thing Apple filed. They're proactively filing stuff without me even objecting to my objections I never even made and bothering your honor with stuff we could just resolve ourselves. And I feel like that's a waste of time.

**Judge:** (32:26) All right. So is Apple going to then just go ahead and try and address the 160 designations and I plaintiff's Excel spreadsheet on that and try to see if you can meet and confer on some of those things or just file the motion.

**Employer (Apple via Orrick):** (32:48) So first of all, **we will absolutely follow the protective order process to meet and confer.** We now as of two days ago, finally got the plaintiff's objections to our designations, and we will respond to that as provided in the protective order and if we can't agree, we will follow the protective order. But this is totally different from the fact that the plaintiff has violated the protective order.

**Judge:** (45:40) **Whatever your other issues are regarding discovery, you should meet and confer before filing any sort of motion...**

**Judge:** ...(56:42) So why is Apple able to work with Ms. Gjovik on a joint status report, but not able to meet and confer about her spreadsheet about, you know, regarding the confidentiality designations?

**Employer (Apple via Orrick):** (57:04) **We absolutely are going to meet and confer.** We only just got it on Wednesday afternoon. It's now Friday afternoon. **So we are working on meeting and confer. We have no problem with that and we would intend to comply with the protective order and to the T, and meet and confer and if we are unable to agree, then we intend to bring, follow the procedure in the protective order and bring it to the attention.**

**Worker (Gjovik):** (57:23) But why won't you have a phone call? Why can't we have a phone call?

**Judge:** (57:25) I guess what I'm asking you is, can you have a phone call with her about those things?

**Employer (Apple via Orrick):** (57:30) It has been totally unproductive, as you can tell from today, to have phone calls. We have reached no agreement today on anything. And that's the way it was before when we tried to reach a deal.

**Worker (Gjovik):** (57:39) It's not true. The transcripts I attached to your honor previously show I got them to cave on a ton of stuff. I made a ton of progress. They just don't like it because I'm a really good project manager and I got them to cave on stuff and compromise. That's why they don't want to do it. I'm very effective on the phone.

**Employer (Apple via Orrick):** (57:53) Absolutely not.

**Worker (Gjovik):** (57:54) That's very true. You can see on the transcripts.

**Judge:** (57:58) Yeah, I can see that this is not a productive use of my time. So I'm going to be bringing this particular call to an end. And what I'm going to just say is that the parties need to comply with the protective order. I'm not going to order Apple to have phone calls with Ms. Gjovik. **I'm going to order the parties to comply and to comply with the protective order, it does require that you meet and confer. So if you file a motion and you haven't met your obligation to meet and confer, then I may not consider the motion because you haven't done it.**

**Worker (Gjovik):** (58:37) Can you define that a little bit more? Because they might say that their threatening email just telling me to randomly delete tweets was their meet and confer. And they've been recently trying to do that sort of thing. And they're like, we did. We sent her that.

**Judge:** (58:47) **No, the meet and confer should consist of the substantive discussion about all of the designations and whether or not they are confidential or not.**

**Worker (Gjovik):** (58:59) Agreed.

**Judge:** (58:59) And maybe some compromise as to some of them. And then to the extent that there are some left that you can't come to some agreement with, then those are the ones that should be the subject of the motion.

**Worker (Gjovik):** (59:11) I agree. And like I said, I already caved on like half of them where I was like, I don't agree that it's confidential, but I don't care if you were to act this, you guys. Like if you want to fight, die on that hill, fine. But I don't.

**Judge:** (59:21) Right.... **So those are the things that should be met and conferred about. And then to the extent you cannot agree, those items should be the subject of any motion that you file.**

**Worker (Gjovik):** (1:00:14) I feel like we should be able to sort this out ourselves without involving you.

**Judge:** (1:00:17) Just make sure that you're walking through the protective order and complying with it fully.

**Worker (Gjovik):** (1:00:24) I feel like I have your honor.. This isn't a straightforward like me talking about some trade secret or the details of some internal thing. It's just public information. It seems incredibly important for anti-SLAPP, for preemption that if the thing they're pointing to is already completely public information and ... complaint in this case.

**Judge:** (1:03:36) Ms. Gjovik, you can argue all of that stuff in your opposition to their motion....  (1:04:12) You can argue a lot of all the things that you think it makes it more complicated. That's what you put in your opposition and I'll ultimately rule on the motion.

**Worker (Gjovik):** (1:04:21) And again, Your Honor, I'm not trying to violate anything. I really don't think I did. I wouldn't do that intentionally and I think it's an issue when it gets misused like this because those are in there for a reason and it's supposed to streamline the process not create more issues which is what's happening right now.

**Judge:** (1:04:36) Right, so that's how that will go and we'll see how it goes.

**Court staff:** (1:04:44) Does Your Honor want any deadlines in the minutes set or just the general parties to meet and confer with any motions to be filed o

**Judge:** Yeah, I'm not setting any dates because I'm not asking the parties to file any kind of motions.

**Worker (Gjovik):** (1:05:01) We might be able to sort it out. Melinda, I think we should talk to Morgan....

**Judge:** (1:05:03) I think you should talk. I think the parties should meet and confer for sure. I am ordering the parties to complete the meet and confer process on this issue before filing any motion though.

**Worker (Gjovik):**(1:05:15) I think it's a good idea.

**Judge:** (1:05:17) Okay, all right.

**Employer (Apple via Orrick):** (1:05:21) Thank you.

**Judge:** (1:05:21) Thank you both.

**Employer (Apple via Orrick):** (1:05:22) Thank you, Your Honor.

**Judge:** (1:05:23) Bye.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 6:07 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

There are two separate issues (1) violation of the protective order (2) meeting and conferring on the deposition designations.

We will be meeting and conferring with you on the deposition designations in accordance with the terms of the protective order.

But, as Judge Westmore made clear to you at our conference last Friday, you do not have the right to unilaterally violate the protective order while the issue of whether the deposition designations were proper is being decided. As the Magistrate advised you at the conference last week, the purpose of the conference was to try to avoid motion practice by resolving the dispute over whether you violated the protective order. You made it clear at the conference that you did not intend to take down the posts containing the quotes from your deposition that we designated as confidential. From your email below, it appears you do not believe you are bound by the terms of the protective order, and you are continuing to refuse to comply with the terms of the protective order. We disagree with your arguments below that you are not bound by the terms of the protective order. As a result, there is nothing further to meet and confer about on this issue. If you have changed your mind, please let us know.  If not, then we intend to proceed to ask the court to find you in violation of the terms of the protective order and to enforce the terms of the protective order.

Meanwhile, we look forward to meeting and conferring with you on the deposition designations.

We take your response below to mean that you will not stipulate to hearing the motion on shortened time or permitting portions to be filed under seal and will proceed accordingly.

**Melinda Riechert**

Partner



Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

[EXTERNAL]

Hello counselors,

I'm shocked and deeply concerned by the email you sent me below. I contacted you on Feb. 20, 2026 asking to meet/confer in good faith regarding Apple's designations and any remaining concerns you might have following the conference call with Judge Westmore (the recording of which is being formally transcribed as we speak).

You never responded to my email. (I'm copying it at the bottom below to show that I tried to engage with you in good faith, but you refused to respond, and instead sent the email below in bad faith).

I'm asking you again to meet/confer regarding Apple's designations and any related disputes. Meet/confer means that we meet to discuss those specific issues and see if we can find resolution ourselves before bothering the court with those matters.

Judge Westmore Ordered us at Dkt. 288 to continue to meet/confer on the designations and related disputes. During the call the court also ordered us to do the same and said it was a requirement prior to filing any motions. But you are refusing to even respond to my requests to meet and confer, so if you

proceed to file those motions you mentioned below, (asking for the same relief in your unlawful Letter at Dkt 280), in addition to many other issues, you would be in direct violation of the Court's Feb. 20, 2026 Order instructing us to meet/confer prior to filing any motions.

Your email below does not seek to meet/confer. It asks for only two things:

- 1) whether I consent or object to an emergency briefing for Apple's motion
  - (where Apple claims my protected concerted activity is unlawful and should result in me being sanctioned; claims public information can be declared legally "secret" by Apple via email; claims my NLRB charges and complaints to the NLRB are the basis for its request to punish me; and requesting again to have gag orders issued against me which would expressly restrict protected concerted activity and participating in Board proceedings; all of which in admitted retaliation for me filing NLRB charges against Apple, publicizing labor disputes, and engaging in PCA with Apple coworkers); and,
- 2) whether I'd "consent" to Apple "sealing" my NLRB charges against Apple, "sealing" my allegations of NLRA violations by Apple, "sealing" my complaints about work conditions at Apple and unlawful work rules created by Apple, etc.

Neither of those things is the Court ordered meet and confer you are required to complete prior to filing anything you are threatening to file. All of those things are additional NLRA violations.

Further, you failed to attach or provide any sort of draft motion, legal outline, examples of what content is at issue, or the legal (statutory, case law, or otherwise) basis for your assertions and requests. You've provided me nothing to engage with in your email other than making two demands you already know I would oppose. (for the emergency schedule, in addition to it being unnecessary for public, protected information - I'm also pro se and homeless, with extremely limited resources, and your motion puts my civil rights at risk and I need time to prepare proper opposition filings and oral arguments).

In addition, as previously mentioned, and which I warned you about multiple times: you cannot file anything against me that resembles counter-claims, cross-claims, requests for sanctions, or the like, without first requesting to have the Stay lifted in the bankruptcy court for whatever it is you want to do and having that Stay lifted by Judge Panos. (*Re: Ashley Marie Gjovik,* 25-11496, United States Bankruptcy Court, D. Massachusetts). The District Court was also warned about this repeatedly -- if they were to issue an order against me based on your client's claims and without lifting the Stay, that Order would be void (not just voidable, but void) because of the Stay.

This is in addition to the objections I already pled and that are already docketed regarding:

- *Garmon* and *Machinists* preemption removing any jurisdiction the court could have to hear Apple's complaints that NLRB charges should be the basis for court sanctions;

- The Norris-LaGuardia Act of 1932 prohibition on injunctions arising out of labor disputes with express protection for employee publicizing labor disputes;
- The Speak Out Act of 2022, Pub. L. No. 117-224, invalidates nondisclosure provisions that would prevent employees from discussing sexual harassment (and here the speech at issue is clearly protesting sexual harassment -- including complaints about Apple requesting employees monitor vaginal secretions and requiring sexual partners to sign NDAs, then complaining Apple claimed those pre-existing complaints were now secret and also that the underlying misconduct is secret, when all of it is sexual harassment).
- California's Silenced No More Act, Cal. Gov. Code § 12964.5 (SB 331), prohibits provisions that prevent employees from disclosing information about unlawful workplace conduct including harassment and discrimination
- Magistrate Judges lack the authority to issue injunctions which is why Motions for Sanctions and the like have to be decided by a US Judge, which is Judge Chen, not Judge Westmore, and Judge Chen is not going to rule on a farcical motion without a Federal Rule authorizing it or providing any legal standard for the determination.
- I never agreed to the protective order. I was coerced to sign it against my will, with objections on the docket, recorded demands to sign it by Judge Westmore, my demands for a full hearing denied by Judge Chen, my attempt to appeal to Ninth Circuit rejected as interlocutory, and my requests for a protective order against Apple's demands for a protective order denied. There is clearly no mutual assent in that "stipulation" so it's not binding, even if it could give rise to an independent "breach" claim, which it cannot.
- The First Amendment prohibits prior restraints, especially with subject-matter based prohibitions on speech, and without reservation prohibits subject-matter prior restraints regarding already public information, general opinions, and all of the factors Apple argued (and is estopped by those arguments) when it claimed the NLRB has no authority to regulate the corporation's speech.

Further, there is no "Motion for Breach of a Protective Order." No federal rule establishes that as a motion type, there is no legal standard governing that claim, and it cannot be independently actionable unless whatever the issue is also satisfies the requirements for an actual Motion for Sanctions etc.

In addition, as I warned you prior, any further threats, including the email you just sent, will result in additional NLRB charges being filed against your client. Apple's latest charge was just filed today and cites the email you sent at 3:02 PM. If you proceed to file the motions you mention, additional charges will be filed. If you made additional unlawful statements and requests, additional charges will be filed. It's *turtles all the way down*, counselors -- and no one achieves anything, everyone suffers, and it wastes the court and agency's time having to process Apple's frivolous and retaliatory demand that should never have been made in the first place. The public spectacle of all of this also chills workplace/labor organizing, chills speech and protected concerted activity, and deters employees from exercising their rights. As I said on the call, Apple's put me in a position where I have to hold the line for workers on this because if I don't it will directly chill employees' exercise of their NLRA rights -- but that is because of Apple, and it's not fair to put me through this -- Apple should just cease its unfair labor practices.

Apple's latest charge is filed today Feb. 26, 2026 and cites the email you sent at 3:02 PM. A copy is attached for your client. This is Apple's fifth new NLRB charge in ten days.

Can we actually meet and confer please?

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Thursday, February 26th, 2026 at 3:02 PM, Riechert, Melinda <[mriechert@orrick.com](mailto:mriechert@orrick.com)> wrote:

> Ashley,
>
> Apple intends to move the Court for an order finding that you are in violation of the Protective Order and enforcing the Protective Order by (i) ordering you to de-publish material Apple designated as Confidential and (ii) sealing your filings at Dkt. Nos. 278, 284, and 285 (which contain material Apple designated as Confidential).
>
> Apple also intends to seek an order to shorten the time for briefing and hearing on Apple's Motion to Enforce Protective Order. Apple intends to request that the hearing be held on March 5, 2026 at 1:30 p.m., or on a date sooner than March 5, 2026 as this Court's schedule permits, and that any opposition be due by March 2, 2026, and Apple's reply be due by March 4, 2026. **Pursuant to Local Rules 6-3 and 7-11, please let us know if you are willing to stipulate to an order to shorten the time for briefing and hearing on Apple's Motion to Enforce Protective Order as detailed above.**
>
> Further, Apple intends to seek an order to provisionally seal material Apple designated as Confidential that is referenced in Apple's Motion to Enforce the Protective Order and evidence to be

filed in support of Apple's Motion until such time as any challenges to those designations have been ruled upon. **Pursuant to Local Rules 79-5 and 7-11, please let us know if you are willing to stipulate to an order to seal as detailed above.**

**Melinda Riechert**

Partner

Orrick

Silicon Valley 

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Friday, February 20th, 2026 at 3:31 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hey,

Per the conference with Judge Westmore today she's ordering us to meet/confer more about Apple's latest "leaker" claims against me, and as I suggested during the call I think it would be beneficial to include Morgan Lewis since this is a labor law matter more than a civil litigation matter, and Orrick doesn't have a labor law practice. So if Orrick proceeds to file its formal motion alleging a breach/contempt, with a full hearing and evidence, as you know most of my defenses will be labor law, and Judge Westmore acknowledged she'd consider all of my arguments, so it seems necessary that our meet/confer include labor lawyers who will be familiar with the cases and policies I'm citing.

Please let me know if we can set up a call with Orrick + Morgan Lewis + me to sort though this, if Apple insists on continuing with these latest "leaker" allegations and wants to pursue a formal contempt/breach/sanctions hearing.

I also object here that Judge Westmore took Apple's arguments at face value initially and was trying to compel me to delete social media posts in order to avoid the motion which I also alleged during the call was more NLRA violations by Apple that she was even saying that as it was only because of Apple's mischaracterization of the content and issues. Once the Judge understood the twitter posts didn't say anything more than "Apple says employee menstruation is secret" she quickly backed down, and that pivot in the transcript will certainly be evidence for the NLRB proceeding.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, February 26, 2026 5:48 PM
**To:** Riechert, Melinda <mriechert@orrick.com>; Jimenez, Catherine M.

<catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey
Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>;
Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L.
<mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y.
<JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe
<zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>;
Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J.
<nhorton@orrick.com>

**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>

**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and
motion to provisionally seal

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication
privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly
prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in
advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at
https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, February 26, 2026 7:40 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C.
<reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M.
<andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg,
Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park,
Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe
<zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>;
Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J.
<nhorton@orrick.com>; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and
motion to provisionally seal

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by
law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify
us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, February 26, 2026 8:13 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>
**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, February 26, 2026 8:29 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>

**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

# EXHIBIT C

```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

 4    --------------------------------x

      ASHLEY GJOVIK, an individual,      :

 5                    Plaintiff,      : U.S. D.C. Case No.:

          v.                         : 23-cv-4597-EMC(KAW)

 6    APPLE INC, a corporation,          :

                      Defendant.     :

 7    --------------------------------x

 8

 9                    Telephonic Conference Call

10                    Friday, February 20, 2026

11                           AT:

12                         2:14pm

13

14

15

16              Taken via Zoom videoconference

17

18

19

20
21    Court Reporter:

22    KATHERINE SCHILLING, RPR

23    CA CSR No. 14163
```

CERTIFIED

A Court Reporting Transcript by Epiq

```
 1   Friday, 20 February 2026

 2   (2.14 pm)

 3   CLERK:  Good afternoon.  Please be advised that according to

 4       General Order 58, any recording of a court proceeding

 5       held by video or teleconference, including screenshots

 6       or other visual copying of a hearing, is strictly

 7       prohibited.

 8           Calling the matter 23-cv-4597-EMC for Gjovik versus

 9       Apple, Inc.  If I can have appearances starting with the

10       plaintiff, please.

11   MS GJOVIK:  This is the plaintiff, Ashley Gjovik.

12   CLERK:  Ms Riechert, if you can state your appearance.

13   MS RIECHERT:  Yeah.  This is Melinda Reichert for the

14       defendant, Apple.

15   THE COURT:  All right.  Good afternoon.  This is a telephone

16       conference and it's an informal one.  So Ms Gjovik, you

17       don't have to have your video on.  It's just that we

18       started using Zoom for our telephone conferences now,

19       because -- just because Zoom offers the telephone

20       conference feature.

21   MS GJOVIK:  Your Honour, I might -- I have the stomach flu

22       and I've been really sick, so if I don't answer,

23       I might be sick, and if you just don't see me, then

24       maybe that answers the question.  I'm not feeling great
```

1    today.

2    THE COURT: Okay. And you can turn your video off. You

3       don't have to have your video on.

4    MS GJOVIK: Well, that's what I'm saying, that if, like, I'm

5       not responding to you but you see the video but I'm

6       just not there, then you can maybe put it together that

7       I'm dealing with -- like, I'm really -- sorry, I'm

8       really sick today.

9    THE COURT: Oh, no. I'm so sorry to hear that. But,

10      anyway, I just would like to make sure that I'm --

11   MS RIECHERT: And I didn't realize this was a video

12      conference, so I just got on my phone. But I certainly

13      can get on a video.

14   THE COURT: No, you don't need to. It's supposed to be

15      a phone call. It's just that it's through Zoom.

16   MS RIECHERT: Yeah, that's what I thought.

17   THE COURT: Yeah. So you -- and you can click on the link

18      and join with video capabilities, but this is meant to

19      be a telephone conference.

20   MS RIECHERT: Okay.

21   THE COURT: So Ms Gjovik, I just really want to make sure

22      that I'm easing your mind for today, because I think

23      based on everything that I've seen you filing, that you

24      were of the impression that this is some sort of motion

1        hearing or a motion for a TRO or, you know, motion for

2        sanctions or something like that.  And it simply is not.

3        This is an informal discovery call, like a telephone

4        conference call, that is a pretty common tool that

5        judges use to deal with discovery disputes.

6            So sometimes people are in depositions and, you

7        know, they're having a dispute about questions being

8        asked or things like that, and they just need it to be

9        resolved pretty quickly.  So, you know, my standing

10       order allows for people to call me if they can't figure

11       something out because, you know, they just need to get

12       through it.

13   MS GJOVIK:  Thank you, your Honour.

14   THE COURT:  And so that's sort of what this is, and the

15       reason why I scheduled it is because I really want to

16       just help the parties get back on track.

17   MS GJOVIK:  Yeah.

18   THE COURT:  As opposed to, you know, filing formal motions

19       and, you know, having Apple, you know, need to, you

20       know, decide that it needs to file some sort of a

21       motion for sanctions because of, you know, violations

22       of the protective order.  You know, anything like that.

23           So I really want to just go through with the

24       parties what is going on and see if I can help you get

A Court Reporting Transcript by Epiq

1        back on track, because the protective order in this

2        case is really what governs how this process is

3        supposed to work, and it's sort of the reason why the

4        court shouldn't even really be involved at this point.

5            So my understanding -- and, Ms Gjovik, can you tell

6        me at any time if you disagree with these facts, but

7        just the facts that I've been given up to this point

8        are that you had a deposition.

9    MS GJOVIK:  Yes.

10   THE COURT:  Your deposition was taken on December 16th of

11       2025.

12   MS GJOVIK:  Correct.

13   THE COURT:  And during that deposition, Apple's counsel

14       designated certain -- a certain part or certain parts

15       of the deposition as confidential and said, you know,

16       from this point on this is going to be the confidential

17       section.  And --

18   MS GJOVIK:  They did a blanket.  They did one blanket that

19       covered hours of the deposition, yes.

20   THE COURT:  Okay.  And so -- and then they said something,

21       you know --

22   MS GJOVIK:  I objected.  I said you have to designate,

23       narrow, and then eventually 50 days later they did

24       narrow.

 1    THE COURT:  Okay.  And so there was a discussion, and I have

 2        part of the -- what the discussion was.  And it seemed

 3        like you came to some agreement, though, about how that

 4        was going to be proceed.  And they did tell you that

 5        they would, after the depo, narrow it down to specific

 6        parts of the testimony that needed to be designated

 7        "confidential", which is a correct thing to do because

 8        if you're over-designating then, you know, that's not

 9        right either.

10    MS GJOVIK:  Yeah.

11    THE COURT:  So to do that, and then more clearly identify

12        those portions that absolutely need to be confidential

13        is what it sounded like the plan was going to be.  And

14        then I have that on January 7th, that was when you

15        guys -- the transcript was provided to the parties, and

16        then on February 4th Apple did provide a more limited

17        designation.

18    MS GJOVIK:  It's questionable -- they never served it to me

19        and it's not signed or dated and I repeatedly asked

20        them to actually send it to me directly, and they

21        refused.  So I'm also arguing they still haven't even

22        served those designations.

23    THE COURT:  Okay.

24    MS GJOVIK:  But they did create a document they sent to the

A Court Reporting Transcript by Epiq

1      court reporter that had supposed designations, even

2      though it wasn't signed or dated.

3    THE COURT:  Okay.  So they sent it to the court reporter,

4      not to you.

5    MS GJOVIK:  And they said "FYI for Ashley's awareness", and

6      I said "Can you serve me these if you're saying these

7      are designations?"  And they've refused.

8    THE COURT:  Mm-hmm.  Okay.

9    MS RIECHERT:  They were served on -- they were sent to her

10     at the same time they were sent to the court reporter.

11   MS GJOVIK:  That said "for your awareness" and you refused

12     to send me -- anyways, I would love to get back on

13     track.  I am not going to waive on any of my rights on

14     this during this call, but if there's some way that we

15     can just get back on track to have the normal

16     designation dispute process and not have to bother the

17     court with it, I think that would be wonderful.

18   THE COURT:  Yes.

19   MS GJOVIK:  Because we do have more discovery to get to.

20   THE COURT:  Okay.  And so I want to just acknowledge what

21     has happened so far.

22       So then February -- okay.  Then February, I'm not

23     sure what date, I think it might have been the 18th,

24     that, Ms Gjovik, you said you disagreed with the

A Court Reporting Transcript by Epiq

1      confidential designations.

2   MS GJOVIK:  I disagreed immediately when they sent them, and

3      I warned them I was going to file an NLRB charge as

4      soon as they sent them on the 4th, and so we've been

5      emailing since then.

6   THE COURT:  Oh, so you had been emailing before that?

7   MS GJOVIK:  Yeah.

8   THE COURT:  Okay.  But you told them that you disagreed with

9      the confidential designation.

10  MS GJOVIK:  Yeah.

11  THE COURT:  And then what I'm reading here is that Apple

12      planned to respond to your objections to the

13      confidential designations.

14  MS GJOVIK:  They haven't responded yet, though.

15  THE COURT:  Right.  But what they note -- the reason why

16      they wrote to me, though, is because they said on the

17      18th -- I guess you -- you told them at about 1.09 pm

18      about your efforts to meet and confer about this or

19      something, and --

20  MS GJOVIK:  I sent the final detail -- they made about a 160

21      designations, and I'm arguing that almost all of them

22      are nonsense.  So I put them in an Excel sheet and I did

23      the detail for each of them, but it was detailing what

24      I had already objected to in email --

A Court Reporting Transcript by Epiq

1    THE COURT:  Okay.

2    MS GJOVIK:  -- that they can't claim these things

3        aren't -- so a lot of it was protected, a lot of it

4        was, like, explicitly they can't claim that that's

5        confidential.  And then other stuff was public

6        information.  And then just general terminology.

7    THE COURT:  Mm-hmm.

8    MS GJOVIK:  So I was detailing each of those and sent it to

9        them, and they haven't responded.

10   THE COURT:  Okay.  And you gave them the spreadsheet?

11   MS GJOVIK:  Yeah.

12   THE COURT:  Okay.  And then they wrote to me, though, and

13       said that the issue was that they planned to respond,

14       they wanted to meet and confer, and they didn't object

15       to your efforts to challenge the confidentiality

16       designation, but they said that they noticed or it had

17       been realized that these things entirely were already

18       publicly posted.

19   MS GJOVIK:  They were served on the 17th, a notice of

20       pendency filed in the docket for this case that had an

21       NLRB charge, including a cover letter which is exactly

22       what they cited and quoted in the letter they filed to

23       your Honour.  They failed to mention that they were

24       served to it from this docket.  It's a public -- on

A Court Reporting Transcript by Epiq

1        a public docket that has that detailed cover letter

2        that they were claiming had all these issues, and it

3        was the problem was public, which is also -- they

4        should have filed a motion to seal, if they want to

5        seal that.  They're claiming that's confidential.  But

6        that is assumably based on the temporal proximity, how

7        they're saying they became aware of it was through

8        that.

9   THE COURT:  Well, there is a process, though, if you want to

10       post something publicly, whether it's on a docket or on

11       a website or on X or whatever.  When something has been

12       designated confidential, that's where the protective

13       order procedures really kick in.

14  MS GJOVIK:  I understand.  It's my experience.  It's public

15       information.  It's my own thoughts.  It's existing

16       workplace complaints.  It's whistleblower complaints.

17       It's stuff I've pled in my complaint for this lawsuit.

18  THE COURT:  I'm not talking about those things.  I'm talking

19       about --

20  MS GJOVIK:  Okay.  No, yeah, I understand that, like,

21       a document or whatever I couldn't just go and Tweet it

22       if they designated it.  We'd need to go through and

23       dispute it.

24  THE COURT:  Exactly.

1   MS GJOVIK:  Yeah.

2   THE COURT:  So you understand that, then.  You've -- so

3       you've read --

4   MS GJOVIK:  Of course.

5   THE COURT:  -- part of the protective order that requires

6       you to continue treating it like it's confidential --

7   MS GJOVIK:  Of course, yeah.

8   THE COURT:  -- until you get an order from the court

9       otherwise.

10  MS GJOVIK:  Yeah.  But for the stuff that I feel is -- that

11      the order doesn't cover because it's already public

12      information or my opinions or me talking about my own

13      body or whatever --

14  THE COURT:  Oh, yeah.

15  MS GJOVIK:  -- that, to me I was, like, that's just not

16      legitimate anyways, so if I was to treat that as a gag

17      order, that would violate my constitutional rights and

18      I assume the Northern District of California developed

19      that protective order not intending it to be used as

20      a gag order about that sort of stuff.

21  THE COURT:  I don't think that that's what Apple was trying

22      to do.  I think there are specific sections that they

23      are highlighting here that should have been redacted.

24  MS GJOVIK:  But that's my -- that's my whistleblower

1     complaints.  That's stuff pled in the complaint in this

2     lawsuit.  It's existing complaints.  It's my own

3     experiences.  And the No. 1 word they are redacting is

4     literally the word "menstruation."

5  THE COURT:  Mm-hmm.

6  MS GJOVIK:  You know, this is very personal stuff.  This is

7     my right to privacy, to protest --

8  THE COURT:  Right.  But, Ms Gjovik --

9  MS GJOVIK:  Yes.

10  THE COURT:  -- those are the things that you have to

11     litigate before the court before you post them.  If they

12     are things that were in this portion of the deposition

13     that were designated "confidential", you cannot post

14     them on the public --

15  MS GJOVIK:  But it's my own testimony.  It's my own

16     experience.  So then it does function as a gag order.

17  THE COURT:  But it doesn't -- it's not.  It's just

18     temporarily, if it's confidential, it's designated --

19  MS GJOVIK:  I object to that.  I will not waive on that.

20     I highly object and I would ask that we review the

21     actual evidence.  And if they want to claim that this

22     stuff should be, then they should file it under seal

23     and show exactly what they're saying and make

24     a justification of why they say it's actually

1      confidential.

2   THE COURT:  That's just not how the order works.  The order

3       requires that if you disagree with the confidentiality

4       designation, that you have to file something with the

5       court.  If you're unable to come to some agreement with

6       Apple, then you have to file something with the court,

7       challenging the designation of confidentiality,

8       explaining in a declaration why each part they've

9       designed is not -- should not be confidential.

10  MS GJOVIK:  They do.  They have to defend it.  And that's

11      for admissibility, though.  They're talking about my

12      out-of-court speech.  They're talking about stuff that's

13      completely out of the jurisdiction of the court.

14      They're talking about NLRB charges.  And --

15  THE COURT:  No, no.  That's not what I'm talking about.  I'm

16      talking about the actual testimony from the deposition

17      transcript being posted on the public docket being

18      posted on a website, being posted on your website.

19      Those are the things --

20  MS GJOVIK:  It's the word "menstruation."

21  THE COURT:  Well, I don't know --

22  MS GJOVIK:  I'm talking about my own menstruation, my own

23      period.

24  THE COURT:  I don't know what the words are that they were

1      trying to designate --

2    MS GJOVIK:  That's what I'm saying the problem is.

3    THE COURT:  I'm just saying that if --

4    MS GJOVIK:  Because if you say, it's cervical mucus, it's

5         cervical mucus secretions, it's menstruation, it's

6         sexual partners.  It was me complaining Apple was trying

7         to force -- if I wanted to have someone sleep in my bed

8         with me and have sexual intercourse, they want them to

9         sign an NDA.  And I was protesting that.  And I was

10        saying "That's an invasion of privacy.  You shouldn't be

11        doing that to workers".

12            And then they want to redact "sexual activity" and

13        "co-sleepers".  And I'm complaining "You shouldn't be

14        studying employees' cervical mucus.  You should be

15        paying for that data in a normal way and not coercing

16        your employees and monitoring their cervical mucus".

17        And then they want to redact "cervical mucus".  Well,

18        it's something I've been advocating about and doing

19        newspaper interviews with and posting on social media

20        and complaining about.  And then now they're trying to

21        say that I can't say those words and I can't complain

22        that the employer is now trying to use a discovery

23        process and misuse a protective order that was

24        certainly never intending to be used this way.

A Court Reporting Transcript by Epiq

```
1   THE COURT:  I don't know -- I mean, based on what I've read,

2       I'm not reading that Apple is trying to prevent those

3       kind of things from being posted.

4   MS GJOVIK:  But that's what they redacted.

5   THE COURT:  I'm not seeing that.

6           Does Apple want to respond to this allegation that

7       you're trying to keep her from talking about her own

8       personal body activities or --

9   MS RIECHERT:  Absolutely.

10  THE COURT:  -- secretions or whatever?

11  MS RIECHERT:  So Apple conducted various very confidential

12      studies and it asked people who worked there, "Do you

13      want to participate in this study?"  And some people

14      said "yes" and some people said "no".  Some of those

15      studies related to cervical mucus, if you want to call

16      it that, but the fact that Apple was conducting these

17      studies is what is confidential.  And that is what we

18      designated as confidential under the protective order.

19          And I agree with your Honour that if the plaintiff

20      doesn't think that those things should have been

21      designated as confidential, then she's entitled and

22      we're entitled to go through the process in the

23      protective order.

24  THE COURT:  Right.
```

 1   MS RIECHERT:  But she totally preempted that process in the

 2       protective order and is continuing to do so even today

 3       by filing the very things, the very deposition

 4       testimony that we've designated as confidential.  So

 5       what she did wrong is to post in public forums the very

 6       deposition testimony that we had designated as

 7       confidential.  And that's what the protective order --

 8   MS GJOVIK:  There's a fundamental misstatement you're making

 9       which is that this is secret.  It's public.  Apple has

10       press releases saying they do these studies.  There's

11       public releases from Stanford and Harvard about these

12       studies.  None of these features are secret.

13   THE COURT:  But Ms Gjovik, you're not listening to me.  I'm

14       trying to tell you something.

15       If those excerpts that have been designated

16       confidential should not be confidential, for all the

17       reasons you are stating, you need to write that to me

18       in a motion, and you need to do a declaration under

19       penalty of perjury explaining why each thing should not

20       be confidential so that I can make a ruling.

21   MS GJOVIK:  I'm sorry, your Honour.  I thought the order

22       meant that they had to be the ones to file the motion

23       to bring it to you, so I was waiting for them to go

24       through this process, and they've been dragging it out

1    for months.

2    THE COURT:  No.  If you want to -- if you want to challenge

3        the confidentiality, you can do that at any time.

4        That's what the order says.  You can do it at any time.

5        And if the parties meet and confer and they can't come

6        to some agreement, you can file a motion with the court

7        to have those de-designated.

8    MS GJOVIK:  I would have done that the next day, if I had

9        known.

10   THE COURT:  Or the order also talks about the fact that they

11       can waive their confidentiality designation if they

12       don't file a motion to maintain the confidentiality.

13   MS GJOVIK:  That's what I thought too.  But I still stand

14       behind this, that it's not confidential --

15   THE COURT:  But they still have time --

16   MS GJOVIK:  -- because it's work conditions, it's preempted,

17       and this is also why the NLRB is supposed to say it's

18       a separate issue.

19   THE COURT:  But that's -- but that's premature, Ms Gjovik.

20   MS GJOVIK:  It's not because -- sorry, so I'm just going to

21       go with my written objections on that.  I detailed all

22       the law.  I feel very strongly that the law supports my

23       position on that.  So I'm not going to delete anything,

24       and I'm not going to promise to not -- [sic] to stop

A Court Reporting Transcript by Epiq

1           talking about these topics, but I completely agree with

2           you about this generally.  And if this was something

3           like product specs or an actual secret something,

4           I would agree with you.  But this is my own experiences,

5           my existing whistleblower complaints.

6               So these are things I've pled in my complaint from

7           my 17200 complaint, my whistleblower retaliation

8           complaints.  This is stuff, details that are in the

9           written docket.  And now Apple is starting to claim that

10          my actual, like, legal claims are secret so I can't

11          talk about it and I have to take months where I can't

12          talk about the fact they're even trying to claim that

13          my legal claims are secret, is just nonsense to me.  It

14          makes my head explode.

15      THE COURT:  Well, it actually doesn't take months.  It just

16          takes a matter of filing a motion with the court.  And

17          if Apple is being unreasonable and asking for things

18          that are already out in the public domain to be kept

19          confidential, the court is not going to look very

20          fondly on wasting the court's time on confidentiality

21          designations that should not be made.  So --

22      MS GJOVIK:  If I'm able to file -- so your Honour, I feel

23          like I've gotten in trouble constantly for not meeting

24          and conferring with them endlessly and waiting for them

 1      on everything, and so I feel powerless here.  But if

 2      this is something that I can just file a motion for and

 3      challenge  right away, I would have done that right

 4      away.  I just felt like it wasn't going to be fruitful

 5      based on how my motions have been handled previously.

 6  THE COURT:  No, you can file the motion.  But I felt like

 7      you started the meet-and-confer process.  It's just that

 8      you didn't finish it.

 9  MS GJOVIK:  They haven't, though.  And I objected a long

10      time ago, and I feel like this would have been resolved

11      had they not done that blanket thing --

12  THE COURT:  Yeah.

13  MS GJOVIK:  -- in December.  That dragged it out for months.

14      They should have just done it during the actual depo.

15  THE COURT:  And so what is Apple's plan in terms of

16      responding to -- it sounds like Ms Gjovik has put

17      together a whole spreadsheet for your consideration

18      about the various things that she objects to in terms

19      of confidentiality designation.

20  MS RIECHERT:  Right.  She did that, but after she had

21      already posted the designated portions of the

22      deposition and is continuing to post the designated

23      portions.

24  THE COURT:  Right.

A Court Reporting Transcript by Epiq

1    MS RIECHERT:  So, yes, she did at whatever it was, 1.19 pm,

2        and that starts under the protective order the 14-day

3        process for us to meet and confer with respect to her

4        designations.

5    THE COURT:  Correct.

6    MS RIECHERT:  And then if under section 6.3 of the

7        protective order, if we can't reach an agreement, then

8        Apple has to file a motion regarding -- to retain the

9        confidentiality under local rule 7 within 21 days of

10       the initial challenge and it's all in the protective

11       order.

12   MS GJOVIK:  But I feel like, to move forward if Apple wants

13       to file a motion for sanctions or contempt, it should.

14       A TRO -- file it.  File the actual paperwork.  I don't

15       want to argue that on this call.  I would love to talk

16       about how we can get them to actually participate in

17       the designation process, per the protective order to

18       move forward on this.

19   THE COURT:  But Ms Gjovik -- Ms Gjovik, the reason why

20       I wanted to have this call is because when I had found

21       out that you'd already posted things that had been

22       designated confidential, right or wrong, the protective

23       order requires you to not do that until it's resolved

24       by the court.

1    MS GJOVIK:  But it doesn't apply to the things that they

2         claimed and I have preemption -- like, if they file

3         these motions, I feel confident I would win and they're

4         going to get in trouble.  They're going to lose the NLRB

5         charge for even filing it.  So I feel very confident.

6         And this is also where the NLRB says, like, the court

7         shouldn't have to get involved in this, because it's a

8         very different dynamic when you have a labour dispute.

9         They actually encourage and statutorily protect

10        publicising labour disputes.  So this isn't --

11   THE COURT:  I'm not really sure what the NLRB has to --

12   MS GJOVIK:  Well, that's the thing, your Honour.  They

13        should file the motion so we can have a full briefing

14        and show whatever judge is hearing it the actual law

15        behind all of this.  Instead, they're trying to, I feel

16        like, hijack this process to try to coerce me to do

17        stuff that's, again -- so I don't want to argue.  I'd

18        rather just them respond to my spreadsheet --

19   THE COURT:  But you have to take it down.

20   MS GJOVIK:  So that's -- your Honour, the fact that you've

21        even said that, I have to put in the NLRB charge now

22        because they've now caused you to say that and that's

23        coercive in --

24   THE COURT:  You have to take it down because the court

1      order --

2    MS GJOVIK:  I'm not going to, your Honour.  I'm sorry.

3      You're going to have to order me to take it down.

4    THE COURT:  I'm ordering you to take it down right now.

5    MS GJOVIK:  You're going to have to write it in an order for

6      me to do it.  I'm not going to do it willingly.  I feel

7      like it's completely within my rights.  I feel like I've

8      briefed it.  I would ask your Honour to read in detail

9      my opposition --

10   THE COURT:  No --

11   MS GJOVIK:  -- the legal cites, the statutes, the case law.

12   THE COURT:  I'm reading the court's protective order that's

13      been on file since July, and you cannot put things in

14      the public docket that have been designated

15      confidential without getting the court order first.

16   MS GJOVIK:  Your Honour, you started this saying you would

17      not say that.  You said this wasn't going to be about

18      any injunctions.  This wasn't going to be about any

19      contempt.  This wasn't going to be about sanctions.

20      This is just going to be informal.  And then now you're

21      threatening to --

22   THE COURT:  Because it's not.  If you just comply -- if you

23      just comply with the order and go through the process

24      that the order requires, it doesn't involve any of

A Court Reporting Transcript by Epiq

 1      that.

 2   MS GJOVIK:  I'm not going to voluntarily do something that

 3      I objected to and then make it informal because -- your

 4      Honour, I'm sorry.  I'm not.  And I think that's very

 5      coercive to say you're not going to issue sanctions but

 6      then say only if I voluntarily do what the sanctions

 7      would tell me to do is very unfair.

 8   THE COURT:  That's -- I'm asking you to comply with the

 9      order, Ms Gjovik.  The order is very specific --

10   MS GJOVIK:  I feel like I have.  I feel like I'm not in

11      violation of it, and --

12   THE COURT:  You posted it in the public domain before having

13      an order from this court saying these things are not

14      confidential.

15   MS GJOVIK:  Well, what did I put out there?  I didn't put

16      any documents.  They haven't designated a single

17      document as confidential.

18   THE COURT:  We're talking about deposition testimony right

19      now.

20   MS GJOVIK:  Yeah.

21   THE COURT:  That's all we're talking about.

22   MS GJOVIK:  I haven't posted anything from a deposition

23      testimony that they said was confidential other than

24      the words "menstruation" and "cervical mucus."

1    THE COURT:  I think I saw an entire section of the

2       transcript.

3    MS GJOVIK:  They didn't claim that was confidential.

4    THE COURT:  That was not part of the part --

5    MS GJOVIK:  That was them trying to say I'm not now going to

6       claim everything going forward is confidential, and

7       I said that's the NLRB violation, you can't do that.

8       And it was directly after I was protesting about NLRB.

9       But I didn't include what she actually said after she

10      said "now it's confidential."

11   THE COURT:  Is that --

12   MS RIECHERT:  She absolutely posted on the public, in her

13      Twitter account and on the court records and many other

14      places, her website, information -- the actual

15      deposition testimony that we had designated as

16      confidential.

17   MS GJOVIK:  The menstrual words.  Just menstrual,

18      menstruation, cervical mucus, that's it.

19   MS RIECHERT:  We had designated those as confidential under

20      the protective order, and you cannot, under the

21      protective order, publicly disclose that until a court

22      says you can do it.

23   MS GJOVIK:  So I'm not allowed to say the word

24      "menstruation" publicly until we resolve our dispute?

1     THE COURT:  You're not allowed to post the deposition

2        testimony.

3     MS GJOVIK:  I didn't.

4     THE COURT:  That's what --

5     MS RIECHERT:  You did, actually.

6     THE COURT:  -- it looks like from what I'm looking at, these

7        excerpts are specifically quoting deposition.

8     MS GJOVIK:  On the NLRB -- so they complained about -- this

9        is why I'm like we need an evidentiary review so it's

10       not just Apple accusing random stuff.  The Twitter post

11       they're complaining about just said, I was complaining

12       that Apple was saying my menstruation was their IP and

13       my menstruation was secret.  I just used the word

14       "menstruation" and they're saying that was leaking,

15       that I used the word "menstruation" and complained,

16       they said that me saying "menstruation" was secret, and

17       they said that's a breach.  I said no it's not.

18    MS RIECHERT:  No.  You posted the NLRB charge with the

19       actual deposition words unredacted.  That's the problem.

20    THE COURT:  That's what I saw, was the actual deposition

21       testimony.

22    MS RIECHERT:  Not the use of the word "menstruation."

23    MS GJOVIK:  But you quoted a Tweet where you redacted the

24       word "menstruation" that didn't have anything about the

A Court Reporting Transcript by Epiq

1    transcript.  This is where -- they're making a ton of

2    accusations, and if their only complaint is about this

3    NLRB charge, then it's -- we have anti-SLAPP.  We have

4    the preemption.  We have this is a public record.  We

5    have -- whatever.  And ultimately, they should be

6    concerned about admissibility for trial, which that's

7    not at issue here.

8        They still are designating all this, of whether

9    this is actual admissible evidence or not, and I should

10   be allowed to complain when I think they do things that

11   violate federal statutes and an ongoing consent

12   agreement they signed with me and NLRB, promising they

13   would stop doing exactly this.  And if my coworkers

14   don't know that they're still doing this, my coworkers

15   are at a huge disadvantage because they're very tricky

16   and sneaky and like this, doing stuff behind the

17   scenes.

18       So they need to know -- I have a ton of coworkers

19   who are also in litigation with them.  And it's very

20   hard to litigate with them because they have these huge

21   firms who are constantly doing dirty tricks to try to

22   win outside the merits.  And so any kind of thing like

23   this we can share to help each other is huge.  And

24   that's the organising and sharing information and

1      trying to have each other's backs.

2          And that's why I was also like, this isn't

3      something like the five-page letter and informal, you

4      know, conference if they're actually asking me to

5      suppress my speech.  If I was to delete those with

6      tweets with thousands, tens of thousands of views, all

7      my coworkers watching, what that says is "don't talk

8      about your work conditions, don't complain about Apple

9      or they'll drag you in front of a judge who will make

10     you delete your already published speech and get you in

11     trouble, so just shut your mouth and stop organising".

12     And that's why the NLRB protects this stuff, because it

13     has a huge effect.

14  THE COURT:  Ms Gjovik, Ms Gjovik, if you are unwilling to

15     comply with the protective order, then you can say so.

16     I hear you're telling me you're not going to comply --

17  MS GJOVIK:  I will comply with the protective order.

18  THE COURT:  No, you're telling me you're not --

19  MS GJOVIK:  But I don't believe that it applies to me

20     deleting my tweets.

21  THE COURT:  You're telling me you're not going to comply

22     because you're allowing them to be in the public record

23     without having a judge's order first --

24  MS GJOVIK:  But, your Honour, they just said my tweet did

A Court Reporting Transcript by Epiq

1           not include the transcript.  And then now they're saying

2           I have to delete my tweet even though it didn't include

3           the transcript.  So what are they even asking for?

4      THE COURT:  So then we'll have to have -- what Apple will

5           have to do, if you guys can't work this out, is Apple

6           will have to file its motion --

7      MS GJOVIK:  Yeah.

8      THE COURT:  -- to keep everything designated confidential,

9           confidential.  We'll have a motion hearing date, and if

10          you are in violation of the protective order,

11          Ms Gjovik, I was trying to prevent this but, you know,

12          they can file a motion for sanctions because it is

13          sanctionable conduct.

14     MS GJOVIK:  They have to get a release of the stay in my

15          bankruptcy and then they should file it, and they

16          should sign it with a rule 11 signature and promise

17          they're not doing this for an improper purpose.  And

18          then we should argue it on the merits.

19              I'm not afraid of them filing a motion for

20          sanctions.  I am afraid for them going behind the scenes

21          to try to coerce me to drop complaints and stop

22          exposing stuff I feel is unlawful conduct.

23     THE COURT:  I don't think that's what happening.  I think

24          what's happening is they're trying to enforce the

1    protective order right now, Ms Gjovik, and I'm trying

2    to get you to understand that you have to comply.

3  MS GJOVIK:  It doesn't apply here, though.  And I feel very

4    confident about that.

5  THE COURT:  Okay.  It's up to you.  I'm fine with that if

6    that's the way you want to keep it.  I just wanted to

7    have this conversation with you so that I could try to

8    get you back on track to comply with the protective

9    order process.  If you're not going to do it --

10  MS GJOVIK:  Your Honour, again I just want to object for the

11    record -- thank you for recording this -- but this was

12    misleading to come in and say that that was informal

13    and it wouldn't be about sanctions or contempt or

14    making me delete tweets.

15  THE COURT:  It's not.

16  MS GJOVIK:  And then you just said the whole thing was about

17    trying to get me to delete my tweets.

18  THE COURT:  Because you've jumped the gun.

19  MS GJOVIK:  I don't think I did.

20  THE COURT:  You posted --

21  MS GJOVIK:  And I feel like there hasn't actually been an

22    evidentiary discovery of what happened.  And these

23    assertions are being made against me that are going to

24    be used and quoted by Apple in summary judgment and

1    quoted by Apple in all these other proceedings without

2    actually understanding what was shared or why, because

3    Apple also skipped the whole, like, what was even their

4    designations?  What was this even about?  And when it

5    come out that this is completely already public

6    information, already pled in complaints, already

7    whistleblower disclosures, already interviews --

8    THE COURT:  And you may be right, but you have to follow the

9        process and file that in a motion to say why it should

10       not be confidential --

11   MS GJOVIK:  If it was a document, your Honour.  But this is

12       testimony about my own experiences.

13   THE COURT:  But they're able to --

14   MS GJOVIK:  That the order says it doesn't apply to that.

15   THE COURT:  No, the order actually talks about "for

16       testimony given in a deposition."

17   MS GJOVIK:  Yeah.

18   THE COURT:  How it's supposed to be done.

19   MS GJOVIK:  But it doesn't apply to prior existing facts,

20       information gained in other places.  They're going in

21       and taking stuff that I knew ahead of it, my own

22       experiences, stuff that's already public --

23   THE COURT:  That would be the kind of stuff that you would

24       put in your motion to object to the designation --

1    MS GJOVIK:  That's what I'm saying.  We should do that.

2        I don't want to do it this way.  I want to do the

3        motions with the evidence and the legal arguments,

4        because I think I'd win and Apple would get in trouble

5        for what they're doing right now.

6    THE COURT:  Okay.  So Apple will have to file the motion.

7    MS GJOVIK:  Yes.

8    THE COURT:  And Ms Gjovik will file her opposition --

9    MS GJOVIK:  Yes.

10   THE COURT:  -- to that motion.  And we will look at each and

11       every part of what has been posted in the public

12       record, and have a full hearing.

13   MS GJOVIK:  I don't love that this happening, but I think

14       that's the way to do it.

15   THE COURT:  35 days.  I was trying to avoid formal motion

16       practice by just trying to get the parties to work this

17       out informally, but it sounds like we have to go

18       through the whole formal process.

19   MS GJOVIK:  Well, I would also ask your Honour, can Apple

20       just drop this?  Like, you've been -- the whole thing

21       was about "Well, Ashley, delete your tweets".  And it

22       never was, "Apple, is this actually that important to

23       you?" was never asked.

24   THE COURT:  Well, that's not -- the question is not whether

1        "is that important to you?"  The question is whether or

2        not the designation of confidentiality has been

3        addressed by the parties.  And it sounds like it hasn't

4        been fully addressed.

5   MS GJOVIK:  They're the ones not addressing it, and they're

6        the ones asking to get me sanctioned.

7   THE COURT:  But the protective order governs how this

8        process is supposed to work.

9   MS GJOVIK:  And I'm following it.  They're not.  They've

10       violated it multiple times, and I feel like this stuff

11       I've shared, as I've said, is not covered by the

12       protective order.  So I feel like the whole premise is

13       just false.

14  THE COURT:  Okay.  So Apple knows how it needs to proceed.

15       And when we -- we will schedule a motion, 35 days.

16       We'll have a hearing on one of my law and motion

17       calendar days, on that motion for keeping the

18       confidentially designated parts confidential.

19  MS GJOVIK:  Could we do this just for all of theirs -- like

20       do a bulk one?  Or how would you want to do this?

21       Because they have like 160 designations they made.

22  THE COURT:  Well, if it's -- if Apple seriously wants all

23       160 designations to remain confidential, then it will

24       have to meet its burden to show why all 160

1     designations should be kept confidential.

2  MS GJOVIK:  Could we do it all in that hearing so we don't

3     have to do this multiples times?

4  THE COURT:  Oh, yeah.  But the purpose of -- but the purpose

5     of the meet-and-confer process is to try to narrow down

6     the disputes.  So it could be that, you know, maybe 20

7     of those 160, the parties can agree, "Okay, that's

8     fine, we're not going to try to keep that part

9     confidential."

10  MS GJOVIK:  And I already told them for some of these, well,

11     I might disagree that it's not confidential, that if

12     they want to redact it on their evidence, then it's not

13     worth bringing it to your Honour and bothering your

14     Honour with it.  I don't know how that's supposed to

15     work.

16         But there's stuff where it's, like, if this is just

17     about evidentiary admission and you really feel so

18     strongly that you need to redact this thing that I

19     don't think is confidential at all but is immaterial,

20     then I don't care.  And so I was just kind of conceding

21     on some of them.  I don't know if that's how you're

22     supposed to do it, but --

23  THE COURT:  Well, that's part of your discussion when you're

24     meeting and conferring with Apple.

1   MS GJOVIK:  Yeah.  Well, so I said that.  And so I'm trying

2       to narrow it from my side too.  So it's up to them if

3       they want to fight all of this just for the sake of

4       having your Honour say it's confidential or not,

5       I guess.

6   THE COURT:  Right.  Because I'm not going to make an opinion

7       one way or the other about if it's confidential right

8       now.  I'd have to look at what each and every thing is

9       that's been designated confidential and then make

10      a determination about whether or not each and every one

11      of those 160 things, if that's how many things we're

12      talking about should or should not be designated

13      confidential.  But it's so much better and such a better

14      use of time if the parties meet and confer about the

15      160 designations.

16  MS GJOVIK:  I agree.  I tried.

17  THE COURT:  And then only come to me for the things that you

18      can't agree on.

19  MS GJOVIK:  Agreed.  Again, this was -- I complained about

20      this with the HIPAA thing Apple filed.  They're

21      proactively filing stuff without me even objecting to,

22      like, object to my objections I never even made and

23      bothering your Honour with stuff we could just resolve

24      ourselves.  And I feel like that's a waste of time.

1   THE COURT:  All right.  So is Apple going to, then, just go

2       ahead and try and address the 160 designations and

3       I guess plaintiff's Excel spreadsheet on that and try

4       to see if you can meet and confer on some of those

5       things, or just file the motion?

6   MS RIECHERT:  So first of all, we will absolutely follow the

7       protective order process to meet and confer.  We now as

8       of two days ago finally got the plaintiff's objections

9       to our designations.

10  THE COURT:  Okay.

11  MS RIECHERT:  And we will respond to that as provided in the

12      protective order.  And if we can't agree, we will follow

13      the protective order.  But this is totally different

14      from the fact that the plaintiff has violated the

15      protective order, and I was hoping, as your Honour was,

16      that we could work that out.  We did not want to bring

17      a motion for sanctions or for contempt for violation.

18      We hoped --

19  MS GJOVIK:  Because you'll lose, Melinda.  Just file it.

20  MS RIECHERT:  Wait, wait, I'm talking.

21  MS GJOVIK:  Just file it.  If you're going to do it, just

22      file it.

23  MS RIECHERT:  So we were hoping that, as your Honour

24      mentioned, that we could work this out and we wouldn't

A Court Reporting Transcript by Epiq

1       have to bring a sanctions and contempt motion, because

2       that would be the better way to resolve this.  But if

3       your Honour isn't willing to order her to take it down

4       as we requested, then we'll have to decide what the

5       process is.  But it's unacceptable for a party to

6       a lawsuit to violate a protective order.  We were

7       willing to let it go --

8  MS GJOVIK:  I didn't violate it, though, Melinda.  It's not

9       violated.

10  MS RIECHERT:  We were willing to let it go if we could just

11       get resolution with her taking it down and agreeing not

12       to continue to post deposition transcript --

13  MS GJOVIK:  I object to that too.  The email they sent me

14       didn't even tell me what they are saying the violation

15       was, it didn't point to what social media it was, it

16       didn't point to what filings, it didn't designate which

17       words they were concerned about.  And that's another

18       things NLRB finds, because that means they want me to

19       go self-censor.  They want me to go read all of my posts

20       and figure out what might be upsetting Apple and delete

21       all of it, and then not say anything more that also

22       might upset Apple with Apple -- I'm -- not even

23       outlining what they're supposedly upset about, which

24       their email is completely vague.  There is nothing in

1    it.

2    MS RIECHERT:  What we're upset about is the posting of the

3        deposition transcript portions which we designated as

4        confidential under the protective order, and you posted

5        unilaterally those designated portions in violation of

6        the protective order.

7    MS GJOVIK:  Are you talking about the quoted portions --

8    THE COURT:  The actual --

9    MS GJOVIK:  -- in the NLRB charge?

10   THE COURT:  The actual transcript --

11   MS RIECHERT:  Yes.

12   THE COURT:  I did see the actual transcript that was

13       attached.

14   MS GJOVIK:  And that wasn't confidential.  That portion went

15       up until the point where she said, "Now everything is

16       confidential", and then I didn't include anything after

17       that.  So it's not confidential.  It was --

18   THE COURT:  Is that right?

19   MS RIECHERT:  You included the parts from page 164 -- the

20       parts that we quoted in the letter to the judge.

21   MS GJOVIK:  You're talking about the actual PDF of the

22       transcript, Melinda; right?

23   MS RIECHERT:  I'm talking about the parts of the transcript

24       that we had designated as confidential that you posted,

1    and the actual deposition --

2    MS GJOVIK:  She's confusing this, your Honour.  The pages

3        I included from that transcript, I specifically did not

4        include anything that had a pending designation and

5        which I felt was direct evidence of them violating the

6        NLRB because that was me shrieking in that transcript,

7        "You're violating the NLRB, Melinda.  Don't do this".

8        And then she's like, "I'm going to do it anyways".  But

9        this stuff, otherwise --

10   MS RIECHERT:  You've already brought these charges against

11       me on this.  But we designated page 164.  164 was the

12       portion that we -- one of the portions we designated.

13       And you posted that exact portion of the transcript,

14       lines 7 to 17.

15   MS GJOVIK:  She's talking about me quoting parts of the

16       transcript in the NLRB charge which was different than

17       the PDFs of -- this is why I was like, we need an

18       evidentiary hearing.  Because your Honour should have

19       this evidence in front of yourself to actually see

20       what's being said to make an educated decision.  Right

21       now, this is probably very confusing.  You don't even

22       know what we're talking about.

23   THE COURT:  Well, I --

24   MS RIECHERT:  It doesn't matter what was said.  The fact is

1       we designated it was confidential --

2   MS GJOVIK:  It does matter what was said because you're

3       accusing me of saying specific things as violations.  So

4       it does matter what was said because that would be the

5       violation.  So that's very critical, Melinda.

6   THE COURT:  So I would say that since Ms Gjovik is disputing

7       that she's actually posted the parts of the transcript

8       that were designated confidential, that, you know, the

9       parties don't have much choice, other than to just do

10      the full motion process.  Because --

11  MS GJOVIK:  I think it would be a good way to do it, so we

12      can just go through the normal process.

13  THE COURT:  I don't have all of that level of detail to know

14      exactly where each thing comes from.  We need -- I'll

15      need formal declarations telling me exactly what was

16      posted where and --

17  MS GJOVIK:  Prior restraint raises the highest level of

18      scrutiny --

19  THE COURT:  And how much --

20  MS GJOVIK:  -- you need very -- a lot of detail toward

21      documents -- yes.

22  THE COURT:  -- confidentially designated part was posted and

23      where.  You know.

24  MS GJOVIK:  Yeah.

1    THE COURT:  So, unfortunately, the parties are not able to

2         resolve this informally, so then that leaves nothing

3         but the formal motion practice as an option.  And it's

4         really unfortunate, because it really does use up a lot

5         of the court's time.

6    MS GJOVIK:  I'm sorry, your Honour, for insisting on that.

7         I don't want this at all, and I feel like their motion

8         is bogus and that they shouldn't be filing it.  But if

9         they want to do this, if they want to make this request

10        and they won't drop it, then I feel like they should do

11        it on proper paperwork instead of trying to do it in

12        the shadows.  That's my position.  Otherwise, then I'm

13        conceding my rights and hurting me and my coworkers

14        just because they're doing something unlawful and

15        unnecessary, and that's not right either.

16   THE COURT:  Mm-hmm.

17   MS GJOVIK:  So I'm sorry for the extra work and burden and

18        all of this.  And if I end up -- you end up deciding I'm

19        the wrong one, then I'm sure you'll let me know in your

20        order and figure it out.

21   MS RIECHERT:  We're going to have to file a motion for

22        violating the protective order, and we were hoping not

23        to have to do that --

24   MS GJOVIK:  Yes, go ahead, Melinda.  I told you to.  You

1        have to get the stay lifted first, though.

2   THE COURT:  You're going to have to -- yeah, you'll have to

3        file a full notice motion.

4   MS GJOVIK:  They're hoping I'm afraid of them, so I just

5        voluntarily censor my speech.  But after four or five

6        years of this, I'm just not.  They should just file it,

7        if they're going to file it.  Because I don't think they

8        are going to win.  But they should just --

9   MS RIECHERT:  Would that be filed before Judge Chen, the

10       motion for violation of the protective order?  Because

11       that's not a discovery motion, it's --

12   THE COURT:  No.  No, that would be a discovery motion filed

13       with me.

14   MS RIECHERT:  Okay.

15   MS GJOVIK:  Is -- so if they're requesting an injunction,

16       though -- so if they're requesting to have stuff

17       deleted and they're requesting --

18   THE COURT:  No.  There's no injunction, but there -- if you

19       actually are -- if it turns out the information shows

20       that you really are in violation of the protective

21       order, the court can order sanctions.

22   MS GJOVIK:  So that -- how does -- so when I was looking at

23       the rules, that would be --

24   THE COURT:  A sanction could be --

A Court Reporting Transcript by Epiq

1    MS GJOVIK:  -- if contempt -- based on evidence in

2        a hearing, that's sent to Judge Chen and Judge Chen

3        issues then the finding of contempt and whatever it is?

4    THE COURT:  No, no, no.  I don't know if it's going to be

5        any sort of motion for contempt.  I don't know what

6        Apple is going to file, but they're talking about

7        filing a motion regarding violating the protective

8        order.  So that's one.

9    MS GJOVIK:  This would be like a formal 25-page, though, not

10        this five-page thing?

11   THE COURT:  Right.  A full motion.

12   MS GJOVIK:  Okay.  Good.

13   THE COURT:  A full motion with, you know, notice motion, 35

14        days notice motion.

15   MS GJOVIK:  And would actually get a hearing and oral

16        arguments and evidence and all that?

17   THE COURT:  Right, yeah.

18   MS GJOVIK:  Okay.  Cool.  I mean, not cool that Apple is

19        doing this, but I like due process, and if they're

20        going to do it, I'd much rather it be out in the open

21        in their record and other people to see what they're

22        doing.  So it's known.

23   THE COURT:  Okay.  And if you do file anything --

24   MS RIECHERT:  So it sounds like Ms Gjovik is going to

1    continue to post confidential information --

2  MS GJOVIK:  Melinda, then you can file a TRO.  There's

3    a motion for that too and you get to justify with

4    evidence and sworn declarations and actually argue why

5    this is harming your company, and all that stuff.  This

6    isn't an informal phone call.

7  THE COURT:  You can file whatever -- Apple, it's -- I think,

8    Ms Gjovik, you're missing sort of the point of this

9    phone call, and the point of this phone call is to

10   really avoid all of these long motions.

11 MS GJOVIK:  I know, your Honour, but that's where -- Apple

12   and I are way past that.

13 THE COURT:  And in discovery, usually parties try to work

14   things out when it comes to discovery.

15 MS GJOVIK:  But they're trying to get me to delete my

16   Twitter posts that are talking about protected activity

17   and federal NLRB charges against Apple.  Like, that's

18   just outrageous.  I compromise with them constantly,

19   just so you know.  I'm constantly picking my battles.

20     There's, like, 20 motions I would have filed to

21   you, and letters, but I'm just not.  I'm letting a ton

22   of discovery issues go because I still think I can win

23   on the merits and summary judgment.  And I don't want to

24   bother your Honour, even though I could raise a ton of

1          stuff.  I'm just not.  It's not worth your time, it's

2          not worth my time.  I think Apple gets their kicks on

3          fighting this stuff.  So I'm just not.  Which might be

4          why they're now stirring up stuff that doesn't even

5          need to be stirred up.

6     THE COURT:  Mm-hmm.

7     MS GJOVIK:  So maybe I should just file a couple so they can

8          get it out of their system a little bit, instead of

9          this.  But it's too late, I guess.

10          So, Melinda, if you're going to file these motions,

11          if your client is insisting on this, then just file

12          them.  I'm not going to do it in the background.  I have

13          hundreds of thousands of coworkers watching every move

14          I make, and how I react with you informs how they're

15          going to be organising and interacting with your

16          client.  So I can't budge.  So if you're going to do

17          this, you're going to do this.  We're going to have to

18          fight it out.  It's going to waste the court's time, and

19          then you're going to have egg on your face when it

20          comes out that what you're trying to fight is public

21          information and whistleblower disclosures.  But that's

22          your client's choice.

23    MS RIECHERT:  That's not what I was trying to fight.  It's

24          the deposition designations.  That's all I care about.

1       Otherwise we can talk about anything you want --

2    MS GJOVIK:  Well, then send me your stuff.  Let's work it

3       out.  You haven't even emailed me anything other than

4       threats to delete tweets.

5    THE COURT:  I think the next best thing to do would be to

6       respond to Ms Gjovik's whatever she sent you with the

7       spreadsheet attached so that you can just --

8    MS RIECHERT:  Yes.

9    THE COURT:  I know it's only been a few days, so you need

10      to --

11   MS RIECHERT:  Right.  But that doesn't excuse violation of

12      the protective order.  That's my problem is, if a party

13      to a case doesn't follow a court's order, there has to

14      be consequences to that.

15   MS GJOVIK:  But you haven't established that I violated it.

16   MS RIECHERT:  I will definitely follow the --

17   THE COURT:  Yeah, but I think if you want me to order her to

18      take it -- take down certain things, then I need

19      a motion so you can tell me exactly what --

20   MS RIECHERT:  Yeah.

21   THE COURT:  -- to take down, where it needs to be taken

22      down, what it says.

23   MS GJOVIK:  And the point, Melinda, is it's your choice.  Do

24      you want to file that motion tomorrow, or do you want

1        to try to do these designation disputes too, maybe in

2        parallel?  Or is it just about trying to get me to

3        delete tweets?

4            Because it looks bad that you're not even working

5        through the normal process on the basic stuff.  We're

6        months behind.  The deposition was in December.  And you

7        said you wanted to do a second deposition.  So now

8        you're going to schedule the second deposition until we

9        work this out?

10   THE COURT:  Are you having another deposition?

11   MS GJOVIK:  They said that -- they finished their seven

12       hours but are insisting they want more.  And this was

13       another thing I decided not to raise, your Honour, and

14       I gave them four more hours.  They haven't scheduled it,

15       though.  It's been like a month since they said they

16       wanted it.

17   THE COURT:  Okay.

18   MS RIECHERT:  We only got your objections to the

19       designations two days ago.

20   MS GJOVIK:  That doesn't stop you from scheduling your

21       subsequent deposition you said you want, and then you

22       might try to hold up our summary judgment saying you

23       need it after you didn't schedule it for months like

24       you did the last time.  Just schedule it.  If you want

1        it, just schedule it.  I don't even have to give it to

2        you and I'm giving you four more hours and you won't

3        schedule it.

4   MS RIECHERT:  We're a little bit off track right now, which

5        is where we were with the deposition, which is why it

6        took so long.  So what we're talking about now is the

7        deposition designations and the violations of

8        protective order.  We are --

9   THE COURT:  Right.

10  MS RIECHERT:  We will have talked separately about

11       additional depositions.  We've talked separately about

12       the medical records which you're not giving us.  We're

13       going to work through -- with the court on the medical

14       records --

15  MS GJOVIK:  I'm giving -- no.  The medical records, you have

16       not given me a [request for] document production.  I've

17       given you documents.  The only thing you're asking for

18       is a HIPAA waiver, which I said I wouldn't give.  But

19       you also are refusing to serve your own subpoenas.  Have

20       you served your subpoenas yet, Melinda?  You've had them

21       for a year.

22  THE COURT:  Ms Gjovik.

23  MS RIECHERT:  So we agree --

24  THE COURT:  Ms Gjovik -- yeah.  I don't want to get off on

A Court Reporting Transcript by Epiq

1       all of these other areas involved in your litigation.

2       I'm only here to really address --

3   MS GJOVIK:  I know, your Honour.

4   THE COURT:  -- the issue --

5   MS GJOVIK:  She's raising this, though, to try to prejudice

6       the situation.  She's trying to make it sound like I'm

7       the bad one.

8   THE COURT:  I'm actually not even listening to any of that.

9       Because it's not relevant to what I'm here for.

10  MS GJOVIK:  Okay.

11  THE COURT:  I'm only here to talk about the protective

12      order, the process involved with the protective order,

13      and to make sure that the parties are in full

14      compliance with the protective order.  The protective

15      order is an order of this court.  And so, therefore, it

16      must be complied with by both sides.  So I just want to

17      remind the parties of that.

18  MS GJOVIK:  Oh, sorry.  Your Honour, to that point, if Apple

19      is going to do this too.  Apple did violate it a bunch

20      of times.  And I would also -- like, if they're going to

21      complain about me violating it, then I guess I should

22      complain about them violating it.  So would I file,

23      like, a countermotion if I also want to accuse them of

24      violating it?

```
1   THE COURT:  I think that you need to meet and confer with

2       the parties about the claim --

3   MS GJOVIK:  I've already told them about this and documented

4       it.  Like, the blanket thing where they had five weeks

5       of five hours of testimony claimed was completely

6       improper.

7   THE COURT:  Whatever your other issues are regarding

8       discovery, you should meet and confer before filing any

9       sort of --

10  MS GJOVIK:  Sorry.  I meant when you said that if Apple is

11      going to proceed to file theirs, but do you

12      have -- would I file, like, a separate motion if I'm

13      going to also make counteraccusations against them

14      about violations?

15  THE COURT:  Whatever your allegations are, you would file as

16      a separate letter, discovery letter, yes.

17  MS GJOVIK:  Oh, sorry.  So you had said "motion".  So if

18      they're accusing me of violating the protective order,

19      you said they should file a motion.  So if I'm going to

20      accuse them of violating the protective order, which

21      I already have and we've already been talking about

22      it --

23  THE COURT:  Mm-hmm.

24  MS GJOVIK:  -- I would file a motion also?
```

A Court Reporting Transcript by Epiq

1    THE COURT:  Yes.  If you want to -- you can file a motion as

2        well, if you believe they have violated the

3        protective --

4    MS GJOVIK:  Okay.  We should schedule it that way, then, if

5        they're going to do it.  Because I also want to call out

6        that they were violating it too, because I think that's

7        important context.  And also --

8    THE COURT:  Well, I'm not going to schedule anything.

9    MS GJOVIK:  Okay.

10   THE COURT:  The parties are going to file whatever they're

11       going to file and they're going to notice their motions

12       how they choose to notice them.

13   MS GJOVIK:  Oh, I'd assume you'd want one hearing where

14       you'd hear both if we're both filing.

15   THE COURT:  It depends.  It doesn't necessarily have to be

16       that way.

17   MS GJOVIK:  Okay.

18   THE COURT:  Because you may be arguing completely different

19       things about the protective order that are being

20       violated than what they're talking about.  Right now,

21       we're talking about this specific designation from your

22       deposition that they are saying is what is violating --

23   MS GJOVIK:  That's the only thing they've ever claimed on

24       this protective order.  They have claimed nothing else

1        other than this deposition.  And it was my testimony

2        under the deposition.  They didn't even claim the

3        documents during the deposition were confidential.  It's

4        only my speech, is the only thing they've ever used

5        this order for.

6    THE COURT:  Yeah, but they have a right to do that.

7    MS GJOVIK:  I know.  I'm just saying when you said it could

8        be other stuff, I'm like, "No, it's just this".

9    THE COURT:  Yeah.

10   MS GJOVIK:  So if I'm also contesting that their

11       designations during that deposition testimony violate

12       the protective order, I'll file it on maybe an

13       administrative order when I file mine and ask you if

14       you want to consolidate schedules.

15   THE COURT:  But you can also address any improper

16       designations in your opposition to their motion.  You

17       don't need to file a separate motion.

18   MS GJOVIK:  Yeah.  But if they're accusing me of stuff,

19       I want them found -- like, if they're found that they

20       filed this improperly to begin with, I'd rather have,

21       like, counterclaims that then they can get in trouble

22       for.

23   THE COURT:  But that's not how motions work.  It's not about

24       making claims or counterclaims.  It's if you have an

1          opposition to their designation of confidentiality,

2          that's what you put in your opposition too.

3     MS GJOVIK:  But then would your Honour find that they

4          violated the protective order if I was only filing

5          an opposition for --

6     THE COURT:  No.

7     MS GJOVIK:  That's what I'm saying.  So I would file my own,

8          with my own claims that your Honour could potentially

9          find that they also, or only they violated the

10         protective order.

11    THE COURT:  Right.  To the extent that --

12    MS GJOVIK:  Okay.

13    THE COURT:  -- you're not just opposing their

14         confidentiality designations.

15    MS GJOVIK:  Correct.

16    THE COURT:  Yes.

17    MS GJOVIK:  Yeah.

18    THE COURT:  But as far as the confidentiality designations,

19         I'll make the final call about whether or not they

20         should be confidential or not.

21    MS GJOVIK:  Okay.

22    THE COURT:  Yeah.  All right.  So I'm sorry that this didn't

23         get resolved in a much easier way, but obviously that's

24         not what's going to happen.  So we'll go ahead and have

1        the parties hopefully try to meet and confer to try to

2        narrow the scope.

3    MS GJOVIK:  Oh, and I'm sorry, your Honour.  You had said

4        that we don't even have to really talk to each other,

5        it can just be emails.  And the emails have not been

6        fruitful.  When you originally made that alternative

7        order, you even said you didn't think it would work

8        and --

9    THE COURT:  It doesn't usually.  It doesn't usually.

10   MS GJOVIK:  And I said, I didn't think it was going to work,

11       and I thought they're going to abuse it.  I felt they

12       have.

13       So if we want to work through this, I think it

14       would be really helpful to force them to, like -- we

15       could do a phone call versus video or something, but,

16       like, to actually have to talk to each other, because

17       otherwise the emails just cause more problems.

18   THE COURT:  Mm-hmm, mm-hmm.

19   MS RIECHERT:  I disagree with that, your Honour.  Remember,

20       we had a motion before.  In fact, we were excused from

21       having oral meet-and-confers because of the issues that

22       arose.

23   MS GJOVIK:  That's what I'm complaining about.  She said on

24       the transcript she didn't think it was going to work.

1        And I said I don't think it's going to work either.  And

2        she said she would reconsider it if it doesn't work.

3        That's what I'm re-raising, Melinda.

4    THE COURT:  I think the dynamic is different, you know, when

5        it's a pro se litigant versus attorneys, sometimes we

6        just allow the parties to do separate filings because

7        it's too hard to get the pro se plaintiff to do

8        something jointly.

9    MS GJOVIK:  I've always -- I've been asking them repeatedly

10       to do joint, and they'll refuse.  They've insisted that

11       your Honour's order authorises them to file completely

12       separately, even if I would want to do joint, that they

13       don't have to, so they won't.  But that's a second

14       issue.

15       The first issue is the fact that they won't even,

16       like, get on the call to meet and confer.  They say they

17       don't have to.  So they'll send like one email, and as

18       soon as five days is over, they say, "Five days is

19       over, now we're filing ours.  Bye".  And so they're not

20       even making any effort to resolve any of this stuff.

21   THE COURT:  I thought that I just heard that they were going

22       to respond to your objections to their confidentiality

23       designations.

24   MS GJOVIK:  They said they would, but what I'm saying is

1    they think they don't have to get on the phone call or

2    have any kind of video.  They'll just do an email, and

3    their emails thus far have been not productive at all.

4    THE COURT:  Mm-hmm.

5    MS GJOVIK:  And I thought the whole point of trying to

6    require a meet-and-confer over the phone or some kind

7    of conversation is it's far more productive than

8    emails.  Especially when there's bad blood between the

9    parties, because it forces the folks to get on the call

10   and actually try to find a resolution, which I would

11   like to try to do more.

12       And I feel like the longer we go where they think

13   they can just send one email, wait five days and then

14   file a single letter, they're just creating more

15   problems.  They're not even trying to solve anything.

16   And so at least -- I'm a project manager.  If I can at

17   least get them on the phone and try to talk to them,

18   I can at least hopefully reduce some of the problems

19   and issues.  But otherwise, there's nothing I can do.

20   My hands are completely tied.

21   THE COURT:  I don't think that both sides agreed that

22   talking on the telephone was productive.  Is that right?

23   MS GJOVIK:  It was just them.

24   MS RIECHERT:  That was absolutely true.  And that's what we

A Court Reporting Transcript by Epiq

1    raised at the last hearing, and that's why the court

2    said we could to do it by exchanging emails and we did

3    not have to meet and confer by --

4  MS GJOVIK:  But they didn't explain why.  I included

5    transcripts showing me trying to get them to resolve

6    stuff, and them refusing.  So there's no evidentiary

7    review to actually decide that it wasn't productive.  It

8    was just Apple saying they didn't want to, and this

9    court saying we'd try it out.  But I feel like the last

10    few motions show that this stuff isn't working.

11    Like we should try the original, the default

12    processes in this court, because -- you know, I don't

13    want to be here, I didn't want to be fired, I don't

14    want to be fighting this long.  But I want to get

15    through this, and I'm a professional project manager.

16    It's my job to work through complex issues and work

17    with people, even in hot disputes.  So if I can try to

18    get them in a position or I can get them to try to move

19    forward on stuff, I will.  Be professional and try to

20    get stuff moving.

21    But I feel like they've kind of put themself in

22    a fortress now where they don't even have to talk to

23    me, they don't have to respond to stuff.  They can just

24    file stuff independently and then make up whatever

1     version they want and that wastes your Honour's time

2     not just with pointless escalations but also having to

3     figure out what's actually going on.  Because you're

4     just getting multiple sides of stuff, instead of, like,

5     the actual just raising the dispute from both parties.

6  THE COURT:  Right.

7  MS RIECHERT:  I think that this call has shown how an oral

8     conversation is not productive, that we need to have it

9     in writing which the court can review and make sure the

10    parties have met with their obligations to meet and

11    confer, and that's the process the court said is fine.

12 THE COURT:  Yes.

13 MS RIECHERT:  And I think we should continue with that

14    process.

15 THE COURT:  Yeah.  I'm not going to change that, because

16    I -- I just -- I don't think that phone conversations

17    will be productive in this particular case.  I really

18    don't.  So I think, unfortunately, things are going to

19    have to stay the way that they are in terms of, you

20    know, putting everything in writing.  But I do think

21    Apple should respond to Ms Gjovik's last written form

22    of objections and --

23 MS GJOVIK:  Your Honour, I would ask -- I don't understand

24    why the phone calls wouldn't be productive.

A Court Reporting Transcript by Epiq

1    THE COURT:  Because --

2    MS GJOVIK:  I feel like the transcripts showed they were.

3       But if it has to be in writing, I would ask that they

4       have to show that they actually put stuff in writing

5       and tried.  Because most of the time, they're not.

6    THE COURT:  Mm-hmm.  Yeah.  I think, well, you can attach

7       whatever you want --

8    MS RIECHERT:  We would absolutely --

9    THE COURT:  You can attach those things to any motion that

10      you file.

11   MS GJOVIK:  Your Honour, the order says don't attach

12      anything other than the formal discovery responses.

13   THE COURT:  Right.  And so in terms -- but for arguing

14      regarding the meet-and-confer efforts, if you need to,

15      you can attach your meet-and-confer efforts.

16   MS GJOVIK:  But then, I mean so if we're doing it right,

17      that's like a ton of pages.  Right?  So they're trying

18      to set it up so it looks like a couple things and

19      trying to -- it's just --

20   THE COURT:  No.  I want it to be limited to what this issue

21      is that we're talking about right now, which is this

22      deposition testimony and how it's been designated

23      confidential and whether or not the protective order

24      has been violated.  That's all I want to hear about.

 1   MS GJOVIK:  Oh, I mean, we should do like a joint status for

 2       you or something on it, then.

 3   THE COURT:  Yeah, but I don't think the parties can do

 4       anything jointly.

 5   MS GJOVIK:  We file joint statuses all the time.  It's just

 6       them not wanting to -- them convincing your Honour that

 7       they can't somehow, but we've filed joint statuses to

 8       Judge Chen.  We've filed like six of them.  They're all

 9       on time, they're beautiful, they're glorious.  Your

10       Honour can read them.

11   THE COURT:  Have you really?

12   MS GJOVIK:  Yes.

13   THE COURT:  Oh.  Well, you can file something joint if

14       you're capable of working on something joint.  My

15       understanding --

16   MS GJOVIK:  They're just telling you they're incapable

17       because they don't want to.

18   THE COURT:  -- that it broke down to the point where you

19       could not do that.

20   MS GJOVIK:  Because they're refusing.  So they're just

21       saying they refuse, they can't, they're incapable of

22       doing it, not that I won't.  I'm completely capable of

23       doing it.  We've been filing this stuff for two and a

24       half years now.

1    THE COURT:  Okay.

2    MS GJOVIK:  They're just trying to get your Honour to

3        think -- I don't know what they're trying to do.  But

4        we're completely capable of, if they agree to.  So it's

5        more of they don't want to and want your Honour to

6        authorise their refusal to do it as somehow blocking

7        them doing it.

8    THE COURT:  Is it true that Apple is doing joint filings

9        with Ms Gjovik otherwise in this case?

10   MS RIECHERT:  The only thing that we filed jointly is the

11       status report that Judge Chen requires, and we send in

12       our section and at the very end of the deadline she

13       sends in her section, and we file it.

14   MS GJOVIK:  We go back and forth.  We have different

15       revisions.  We filed, like, five of them, and they are

16       detailed.  They are 10 pages, and it covers all of the

17       stuff in the court's standing order.

18   MS RIECHERT:  What you're asking for now is a full hearing

19       on 35-day briefing, not a joint --

20   MS GJOVIK:  I'm not asking for it.  You're saying you want

21       to file this, so I said then you have to do it the

22       right way, Melinda.

23   MS RIECHERT:  No, I wanted to get it resolved today without

24       a full hearing.

1    MS GJOVIK:  That's an -- then you're getting another NLRB

2        charge for that, too, Melinda, of trying to coerce me

3        to delete stuff.  It's not proper.

4    MS RIECHERT:  I know.  It will be my fault.  It'll be my

5        fault, then --

6    MS GJOVIK:  It's your client's fault.  You're an agent of

7        your client.  But we can work together to do this joint

8        stuff to move it forward.  The only way we're ever

9        getting out of this, Melinda, is if we can get to

10        summary judgment and the trial, which means we need to

11        work through all the discovery issues, and we have to

12        resolve all this stuff and just actually get to trial.

13        That's what I want to do.  And so there's no point in

14        having a ton of issues and a ton of fights and a ton of

15        motions and stuff.

16    THE COURT:  When is your trial date, anyway?

17    MS GJOVIK:  October.

18    THE COURT:  Oh, it's in October.  Okay.

19    MS GJOVIK:  Yeah.

20    THE COURT:  And when is the discovery cut-off?  April?

21    MS GJOVIK:  End of April.

22    THE COURT:  Okay.  So you don't have too much more discovery

23        fighting to do.

24    MS GJOVIK:  Well, that's why I was like, let's get through

1        this stuff.  Let's just plow through it.  Like, if the

2        whole point is they need information, let's get them

3        that information.  And so, like, if they're saying they

4        need medical docs, I'm like "tell me what you need and

5        I'll send you whatever I have that you think you want.

6        Send your subpoenas to my doctors, get that stuff."

7   MS RIECHERT:  No, we need them from the doctors.

8   MS GJOVIK:  Well, then send your subpoenas, Melinda.

9   THE COURT:  Oh, I don't want to talk about that.  That's

10       a totally different issue.

11  MS GJOVIK:  Okay.  But to that point --

12  THE COURT:  We're getting off on another tangent.

13  MS GJOVIK:  -- we do joint stuff.  We're completely able to

14       file it.  We're able to work together.  They're kind of

15       exploiting your Honour of their kind of one-sided stuff

16       of trying to, I think, make me sound unreasonable or

17       difficult.  But the proof is on the docket that we're

18       able to file it jointly.

19  THE COURT:  So why is Apple able to work with Ms Gjovik on

20       a joint status report but not able to meet and confer

21       about her spreadsheet about, you know, regarding the

22       confidentiality designations?

23  MS RIECHERT:  We absolutely are going to meet and confer.

24       We only just got it on Wednesday afternoon.  It's now

A Court Reporting Transcript by Epiq

1     Friday afternoon.  So we are working on meeting and

2     conferring.  We have no problem with that, and we will

3     intend to comply with the protective order to the T and

4     meet and confer.  And if we are unable to agree, then we

5     intend to bring -- follow the procedure in the

6     protective order and bring it to the attention of the

7     court.

8  MS GJOVIK:  But why won't you have a phone call?  Why can't

9     we have it --

10  THE COURT:  But can you do it -- I guess what I'm asking you

11     is: Can you have a phone call with her about those

12     things?

13  MS RIECHERT:  It has been totally unproductive, as you can

14     tell from today, to have phone calls.  We have reached

15     no agreement today on anything, and that's the way it

16     was before when we tried to reach agreement.  So it's

17     much better to have it documented --

18  MS GJOVIK:  It's not true.  The transcripts I attached for

19     your Honour previously show I got them to cave on a ton

20     of stuff.  I made a ton of progress.  They just don't

21     like it because I'm a really good project manager and

22     I got them to cave on stuff and compromise.  That's why

23     they don't want to do it.  I'm very effective on the

24     phone.

1    MS RIECHERT:  Absolutely not.  Better to have it documented

2        in writing.

3    MS GJOVIK:  That's very true.  You can see on the

4        transcripts.

5    THE COURT:  Yeah.  I can see that this is not a productive

6        use of my time, so I'm going to be bringing this

7        particular call to an end, and what I'm going to just

8        say is that the parties need to comply with the

9        protective order.  I'm not going to order Apple to have

10       phone calls with Ms Gjovik.  I'm going to order the

11       parties to comply.  And to comply with the protective

12       order does require that you meet and confer.

13           So if you file a motion and you haven't met your

14       obligation to meet and confer, then I may not consider

15       the motion because you haven't done it.  So you need --

16   MS GJOVIK:  Can you define that a little bit more

17       for -- because they might say that their threatening

18       email just telling me to randomly delete tweets was

19       their meet-and-confer.  And they're trying to -- they've

20       been recently trying to do that sort of thing that

21       they're like, "We did, we sent her" --

22   THE COURT:  No.  The meet-and-confer should consist of the

23       substantive discussion about all of the designations

24       and whether or not they are confidential or not.

1    MS GJOVIK:  Agreed.

2    THE COURT:  And maybe some compromise as to some of them.

3        And then to the extent that there are some left that

4        you can't come to some agreement with, then those

5        should be the ones that are the subject of the motion.

6    MS GJOVIK:  I agree.  And like I said, I already caved on

7        like half of them, where I was like, "I don't agree

8        that it's confidential, but I don't care if you redact

9        this, you guys".  Like, "If you want to fight, die on

10       that hill, fine, but I don't".  There's not enough time

11       for --

12   THE COURT:  Right.  I mean, it's really just about putting

13       it in the public domain.  The protective order outlines

14       very specifically who you can provide those things to.

15       So I would just say that's how you should be complying

16       with the protective order and not posting them on

17       public websites and things.

18   MS GJOVIK:  I just want to assure your Honour, I have not

19       posted any documents on -- well, they haven't claimed

20       any documents.

21   THE COURT:  No, I'm not talking about documents.  We're

22       only -- Ms Gjovik, we're only talking about the

23       deposition transcript and the parts that were

24       designated confidential.  We're not talking about

1        documents.  We're not talking about anything else.

2        That's it.  That's the only thing we're talking about.

3    MS GJOVIK:  Okay.

4    THE COURT:  So those are the things that should be met and

5        conferred about.  And then to the extent you cannot

6        agree, those items should be the subject of any motion

7        that you file.

8    MS GJOVIK:  I feel like we should be able to sort this out

9        ourselves without involving you, which I personally --

10   THE COURT:  Just file -- just make sure that you're walking

11       through the protective order and complying with it

12       fully.

13   MS GJOVIK:  I feel like I have, your Honour, again.  So --

14   THE COURT:  Well, I tend to be concerned about that,

15       Ms Gjovik, because if you really did post excerpts from

16       the deposition that were designated confidential

17       without a court order saying they are not confidential,

18       then that would be a violation of the protective order.

19       But --

20   MS GJOVIK:  I think it's more complicated than that if it's

21       already public information talking about just my own

22       experiences or saying the word "menstruation", but

23       I understand.

24   THE COURT:  I know.  I heard all of that.

1    MS GJOVIK:  But I understand what you're saying, yes.

2    THE COURT:  But if those are things that you should have

3        brought to the court so that the court could agree with

4        you or not before you posted them, then --

5    MS GJOVIK:  I didn't realise I could've filed a motion right

6        away on myself.  I would -- because Apple, I was afraid

7        they were going to drag this out for months anyways and

8        it was just going to take forever.  If I could have just

9        filed a motion like right away, I would've.

10   THE COURT:  Yeah.  And you could.  But I feel like the

11       parties have just not finished the meet-and-confer

12       process and so I think that is what needs to happen

13       next.

14   MS GJOVIK:  It's been -- you know, the deposition was, like,

15       over two months ago now.  It was a really long time ago.

16   THE COURT:  Yeah.  It was December 16th.

17   MS GJOVIK:  Yeah.

18   THE COURT:  It's been two months.

19   MS RIECHERT:  It took a while to get transcripts.  We didn't

20       get that until January.

21   THE COURT:  Yeah, January --

22   MS GJOVIK:  But you could have made the designations

23       during -- per the protective order, you were supposed

24       to make your designations during the actual deposition,

1        not do a blanket.  So that was kind of on you guys.  If

2        you had done it during the actual thing, we would've

3        saved a lot of time.

4    MS RIECHERT:  Well, we didn't know what you were going to

5        say that would be subject to protective order.

6    MS GJOVIK:  But if you know it's confidential as soon as

7        I say it, say that's confidential -- anyway, she

8        doesn't need to hear this.  We can talk about this

9        later.

10   THE COURT:  Right.  Those are the things that you could talk

11       about in your meet-and-confer.

12           But I would say, please, just look at each of the

13       designations.  If they really are broken down into 160

14       of them, please try to narrow those as much as you

15       possibly can before filing any motion.  And so

16       we'll -- I'll be expecting, if you can't work it out,

17       some sort of notice motion being filed by Apple.

18   MS GJOVIK:  And I will file one too if they're filing one.

19   THE COURT:  And you can file one too if you need to.

20   MS GJOVIK:  Yeah.

21   THE COURT:  Yeah.  Okay?

22   MS RIECHERT:  We're talking about two different motions.

23       One is the motion on whether the stuff should be

24       confidential or not.  And the other is the motion for

```
 1        violating the protective order.
 2    MS GJOVIK:  It was together, though, right?  I thought it
 3        was one thing.
 4    THE COURT:  Well, the issues are overlapping because I'd
 5        have to determine -- well, I guess not.  That's not
 6        true.  Because --
 7    MS RIECHERT:  There's not overlapping because she didn't
 8        have the right to violate the protective order, whether
 9        they were properly designated --
10    THE COURT:  But I'd need to -- so, yes, you have -- right.
11        So you'd have to show that the things that she posted
12        were specifically designated confidential during the
13        deposition.
14    MS RIECHERT:  Yes.
15    THE COURT:  Right.
16    MS RIECHERT:  And I can absolutely show that.
17    MS GJOVIK:  But they'd have to show that they're -- like, so
18        it's going to be more complex legal arguments in that
19        as well, though.  Like, because that protective order is
20        being stretched incredibly thin with what they're
21        doing.  This isn't a straightforward, like, me talking
22        about some trade secret or the details of some internal
23        thing.  Like, it was just public information.  It seems
24        incredibly important for anti-SLAPP, for preemption
```

A Court Reporting Transcript by Epiq

1      that if the thing they're pointing to is already

2      completely public information and something pled --

3  THE COURT:  You can argue, Ms Gjovik --

4  MS GJOVIK:  -- in the complaint in this case --

5  THE COURT:  Ms Gjovik, you can argue all of that stuff in

6      your opposition to their motion.

7  MS GJOVIK:  Okay.

8  THE COURT:  But --

9  MS GJOVIK:  So if they do two motions, then we just argue it

10     two times in front of you?

11  THE COURT:  No.  If they file a motion saying you're in

12     violation of the protective order and they establish

13     a record that they designated certain things during

14     your deposition as confidential, and then you

15     nonetheless posted them in the public domain without

16     first getting an order from this court saying they are

17     not confidential, then that is a violation of the

18     protective order.  So --

19  MS GJOVIK:  Your Honour, I think it's more complicated than

20     that in our situation.

21  THE COURT:  You can argue a lot of -- all the things that

22     you think make it more complicated.  That's what you put

23     in your opposition, and then I'll ultimately rule on

24     that.

A Court Reporting Transcript by Epiq

1  MS GJOVIK:  Good.  And again, your Honour, I'm not trying to

2      violate anything.  I really don't think I did.

3      I wouldn't do that intentionally, and I think it's an

4      issue when it gets misused like this, because those are

5      in there for a reason.  And it's supposed to streamline

6      the process, not create more issues, which is what's

7      happening right now.

8  THE COURT:  All right.  So that's how that will go.  And,

9      you know, we'll see how it goes.

10  CLERK:  Does your Honour want any deadlines in the minutes

11      set, or just the general parties to meet and confer

12      with any motions to be filed on?

13  THE COURT:  No.

14  CLERK:  Okay.

15  THE COURT:  Yeah, I'm not setting any dates because I'm not

16      asking the parties to file any kind of motions.

17  MS GJOVIK:  We might be able to sort it out.  Melinda,

18      I think we should talk to Morgan Lewis and sort through

19      this.

20  THE COURT:  I think you should talk -- I think the parties

21      should meet and confer for sure.  I am ordering the

22      parties to complete the meet-and-confer process on this

23      issue before filing any motion, though.

24  MS GJOVIK:  I think that's a good idea.

1    THE COURT:  Okay.  All right.  Thank you.  Thank you, both.

2    MS RIECHERT:  Thank you.

3    MS GJOVIK:  Thank you, your Honour.

4    MS RIECHERT:  Bye.

5    CLERK:  And that concludes the hearing.  We're adjourned.

6

7    [End of audio]

# EXHIBIT D

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK,**

*an individual,*

Plaintiff,

vs.

**APPLE INC.,**

*a corporation,*

Defendant.

CASE NO. 3:23-CV-04597-EMC

PLAINTIFF'S
RULE 72 OBJECTIONS
TO THE WRITTEN & ORAL
ORDERS AT DKT. 288
(FEB. 20 2026 CONFERENCE)

A CERTIFIED TRANSCRIPT OF
THE FEB. 20 2026 HEARING IS
ATTACHED AS EXHIBIT A

# Rule 72 Objections to the Order at Dkt. 288

# INTRODUCTION

1.      The Plaintiff files and serves these objections under Federal Rule of Civil Procedure Rule 72. On February 20, 2026, this Court denied Plaintiff's Motion to Quash (Dkt. 285) in a text-only order directing that issues be raised *"in the first instance"* with Magistrate Judge Westmore. Plaintiff understands that Apple characterized its request as a routine discovery dispute appropriate for informal conference. The Court's order reflected that understanding. The first instance proceeding has now occurred.

2.      Plaintiff submits the certified transcript of the February 20, 2026 conference as *Exhibit A.* The conference was not a routine discovery call. Apple sought six forms of extraordinary relief — sanctions, contempt, injunctive relief, compelled deletion of published speech, protective order enforcement, and sealing — without filing a single required motion.

3.      During the 65-minute call the Magistrate issued an oral directive to immediately delete published social media posts, discussed contempt and sanctions, and repeatedly characterized Plaintiff as having violated the protective order — all without sworn evidence, without an evidentiary hearing, and without the procedural protections that attach to proceedings of this character. Further, two of Plaintiff's pre-conference filings documenting her objections were sealed without motion or findings on the same day. (Dkt. 282-283). Despite all of this, the written order issued from the conference is one sentence.

4.      Plaintiff asks this Court for three things: (1) legal clarification of the protective order's scope on a pure question of text and controlling Supreme Court authority; (2) clarification of the Magistrate's authority over injunctive and quasi-criminal proceedings; (3)  clarification of a new motion format; and (4) unsealing of two docket entries restricted without process. Each is within this Court's direct supervisory authority and none requires reaching the merits of any discovery dispute.

5. Ultimately, the Magistrate's own ultimate conclusions support the same results. By the close of the conference she stated that Apple must file a proper motion, acknowledged that Plaintiff *"may be right"* about the public nature of the designated content (Tr. at 32), and confirmed she would *"ultimately rule on"* Plaintiff's arguments after reviewing evidence and briefing(Tr. at 70). Plaintiff asks this Court to confirm those conclusions for the record so that Apple cannot selectively cite the earlier, conflicting portions of the transcript in future proceedings, and to ensure clarify for both parties about court procedures.

# STANDARD OF REVIEW

6.      This Court's order directed first instance with the Magistrate (Dkt. 287). That proceeding has now occurred and the written order at Dkt. 288 is now subject to objection under FRCP 72(a) and 28 U.S.C. § 636(b)(1). The fourteen-day period runs from entry of Dkt. 288 on February 20, 2026. Legal errors are reviewed de novo as questions of law. Rulings contrary to law are reviewed under FRCP 72(a)'s *"contrary to law"* prong without deference. Jurisdictional errors receive no deference.

# OBJECTIONS

## Objection: The Protective Order Does Not Apply

### *The Protective Order Does Not Apply — By Its Own Express Terms and Under Controlling Constitutional Authority — To Information Plaintiff Pled In Her Complaint, Knew From Her Own Experience, Or Obtained Independently of the Discovery Process*

7.      This is a retaliation lawsuit. Plaintiff's claims are that Apple fired her for publicly complaining about workplace practices including the monitoring of employees' bodies. The factual basis of those claims — the workplace practices she was fired for discussing — is the same information Apple designated as confidential and sought to suppress through discovery proceedings. That alignment is not coincidental.

## 1. The Protective Order's Own Text Is Dispositive

8.      N.D. Cal. Model Protective Order § 3 states in plain text that the order's protections do not apply to: *"Any information that is in the public domain… Any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party."* (Dkt. 229).

9.      This exclusion is self-executing. It does not require a motion, a meet-and-confer, or a court order to take effect. It means the protective order never applied to this category of information. Apple's designation of excluded information is not a provisional restriction pending adjudication — it is a nullity. The challenge mechanism at § 6.2 exists for legitimately contested designations, not to convert facially inapplicable designations into temporary restrictions during the pendency of the challenge process.

10.      Plaintiff's knowledge of her own bodily experiences, her own workplace complaints, and her own prior public statements about Apple's monitoring practices was not obtained through discovery. She lived these experiences. She complained about them to government agencies before this litigation began. She pled them in her complaint — a public document on this Court's docket, accessible to anyone

on PACER, reviewed by this Court in ruling on Apple's motion to dismiss. The information cannot simultaneously be a public court record sufficient to state a legal claim and Apple Confidential subject to suppression by threat of contempt. The § 3 exclusion applies on the face of the order.

11.     However, the transcript shows that there appears to be ambiguity and confusion with the Magistrate Judge's interpretation and application of the text of the Protective Order.

### 2. *Seattle Times* Requires This Reading as a Constitutional Matter

12.     On Feb. 20 2026, before backtracking due to the Plaintiff's objections, Magistrate Judge Westmore attempted to order and compel the Plaintiff to delete published content and agree to a gag order, without any hearing, evidentiary review, or due process.

> Plaintiff: "It's my experience. It's public information. It's my own thoughts. It's existing 1workplace complaints. It's whistleblower complaints. It's stuff I've pled in my complaint for this lawsuit..."

(Ex. A, Feb. 20 2026 Cert. Tr. p. 10).

> Plaintiff: "the order doesn't cover because it's already public information or my opinions or me talking about my own body or whatever…that's just not legitimate anyways, so if I was to treat that as a gag order, that would violate my constitutional rights."
> Court: "I don't think that that's what Apple was trying to do. I think there are specific sections that they are highlighting here that should have been redacted."
> Plaintiff: "But that's my -- that's my whistleblower complaints. That's stuff pled in the complaint in this lawsuit. It's existing complaints. It's my own experiences. And the No. [one] word they are redacting is literally the word "menstruation….it's my own testimony. It's my own experience. So then it does function as a gag order."
> Court: "…It's just temporarily…"
> Plaintiff: "I object to that. I will not waive on that. I highly object and I would ask that we review the actual evidence. And if they want to claim that this stuff should be, then they should file it under seal and show exactly what they're saying and make a justification of why they say it's actually confidential."
> Court: "That's just not how the order works."

(Ex. A, Feb. 20 2026 Cert. Tr. pp. 11-13).

> Court: "if Apple is being unreasonable and asking for things that are already out in the public domain to be kept confidential, the court is not going to look very fondly on wasting the court's time on confidentiality designations that should not be made."

(Ex. A, Feb. 20 2026 Cert. Tr. pp. 18).

> Court: "You have to take it down… You have to take it down because the court order –"
> Plaintiff: "I'm not going to, your Honour. I'm sorry. You're going to have to order me to take it down."
> Court: "I'm ordering you to take it down right now."
> Plaintiff: "You're going to have to write it in an order for me to do it. I'm not going to do it willingly. I feel like it's completely within my rights. I feel like I've briefed it. I would ask your Honour to read in detail my opposition –"
> Court: "No –"
> Plaintiff: "-- the legal cites, the statutes, the case law..."

Court: "I'm reading the court's protective order"

Plaintiff: "Your Honour, you started this saying you would not say that. You said this wasn't going to be about any injunctions. This wasn't going to be about any contempt. This wasn't going to be about sanctions. This is just going to be informal. And then now you're threatening to –"

Court: "Because it's not. If you just comply… it doesn't involve any of that."

Plaintiff: "I'm not going to voluntarily do something that I objected to and then make it informal because -- your Honour, I'm sorry. I'm not. And I think that's very coercive to say you're not going to issue sanctions but then say only if I voluntarily do what the sanctions would tell me to do is very unfair."

…

Apple: "She absolutely posted on the public…"

Plaintiff: "The menstrual words. Just menstrual, menstruation, cervical mucus, that's it."

Apple: "We had designated those as confidential."

Plaintiff: "So I'm not allowed to say the word "menstruation" publicly until we resolve our dispute?"

…

Apple: "No. You posted the NLRB charge with the actual deposition words unredacted. That's the problem."

…

Court: "If those excerpts that have been designated confidential should not be confidential, for all the reasons you are stating, you need to write that to me in a motion, and you need to do a declaration under penalty of perjury explaining why each thing should not be confidential so that I can make a ruling."

(Ex. A, Feb. 20 2026 Cert. Tr. Pg 22-26).

Plaintiff: "The thing they're pointing to is already completely public information and something pled"

Court: "You can argue, Ms Gjovik…"

Plaintiff:  "in the complaint in this case"

Court: "Ms Gjovik, you can argue all of that stuff in your opposition to their motion."

(Ex. A, Feb. 20 2026 Cert. Tr. Pg 70).

13.     *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), upheld discovery protective orders against First Amendment challenge on a specific and essential basis: the order survived because it "does not restrict the dissemination of the information if gained from other sources." 467 U.S. at 37. That limiting principle is the entire constitutional justification for discovery protective orders. Without it, a protective order is not a discovery management tool — it is a prior restraint on speech.

14.     Prior restraints carry the heaviest presumption against constitutional validity in American law. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Mandatory injunctions compelling deletion of existing speech are subject to an even higher standard. *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Apple has never attempted to satisfy strict scrutiny because the informal conference format made that impossible.

15.     The court's coercive discovery power did not compel Plaintiff to disclose her knowledge of her own body or her own prior public complaints. Applying the protective order to information she knew from her own experience removes the constitutional justification for the restriction. What remains is a prior restraint. The N.D. Cal. Model Protective Order incorporated the *Seattle Times* limitation into § 3 precisely because the drafters understood this requirement.

16.     The Magistrate's repeated statements indicating that all unilaterally designated information (even information that's been public for years) is restricted pending adjudication — regardless of the § 3 exclusion — contradicts both the order's text and the Constitution.

### 3. This Is a Retaliation Case, Not a Trade Secret Case

17.     In a trade secret case, the protective order and the merits run in the same direction. In this retaliation case, the protective order and the merits run in opposite directions. Many of Plaintiff's claims rest on the position that she publicly complained about Apple's workplace practices and was fired for it. It's one of the reasons she strongly opposed and repeatedly objected to the entry of any protective order – even asking this court to quash Apple's demand for the order and raising the issue to the Ninth Circuit - - terrified Apple was going to do exactly what its doing now. (Dkt. 211, 213, 214, 220, etc.).[1]

18.     Every restriction on her ability to discuss those practices simultaneously weakens her claims and strengthens Apple's defense. Apple is using a discovery designation to establish as a procedural matter — without bearing any burden of proof — that the factual predicate of Plaintiff's own claims is Apple Confidential. That is not what protective orders are used for.

### 4. The Magistrate's Own Conclusions Support Clarification

19.     The Magistrate never affirmatively held that the designated content is validly confidential. When Plaintiff argued the content was public, the Magistrate stated: *"And you may be right, but you have to follow the process."* (Tr. at 32:14-15.) The Judge stated that designations of public domain content by Apple, if true, would not be looked upon favorably. (Tr. at 18:4-8.) However, she directed Plaintiff's arguments to the motion process and confirmed she would *"ultimately rule on that."* (Tr. at 70:22-23.)

---

[1] "Plaintiff respectfully warns the Court that the subject matter for which Defendant seeks a confidentiality designation—based on its own representations during the parties' meet-and-confer and recent filings—would functionally operate as a dispositive ruling on contested issues, and impose prior restraint on testimony that the U.S. government has already found to be protected activity. (Dkt. Nos. 35-4, 111, 151, 171, 203). The only justification Apple now offers involves internal policies it was required to rescind as part of a 2025 national NLRB settlement." Dkt. 220 at 5.  (June 12 2025).

20.    If public and already known information is not covered by the protective order, as the text of the orders states, then there is nothing to file motions about – except a motion for sanctions against Apple if Apple insists on claiming public information is Apple Confidential. Thus, clarification of the governing legal framework — that § 3 and *Seattle Times* exclude public information and already known content from coverage — ensures the Magistrate's ultimate ruling applies the correct standard.

21.    Clarification is requested: that the protective order does not apply to public and already known information, by its own express terms at § 3 and under *Seattle Times*, which would include information Plaintiff pled in her complaint, knew from her own experience prior to discovery, or obtained independently of the discovery process; and that this framework governs all proceedings in this case including any motion Apple files before the Magistrate regarding the protective order.

## OBJECTION: THE MAGISTRATE LACKED AUTHORITY TO ISSUE INJUNCTIVE RELIEF

*The Magistrate Lacked Authority to Issue Injunctive Relief
and the Conference Format Was Constitutionally Inadequate for Quasi-Criminal Proceedings;
the Magistrate's Own Conclusions Support Clarification*

### 5. THE ORAL TAKEDOWN ORDER EXCEEDED THE MAGISTRATE'S AUTHORITY

22.    28 U.S.C. § 636(b)(1)(A) explicitly exempts "motion[s] for injunctive relief" from the matters a magistrate judge may determine. During the February 20 conference, the Magistrate stated: *"I'm ordering you to take it down right now." (Tr. at 22:4.)* An order directing a party to delete published speech is injunctive relief regardless of the informality of the proceeding in which it is issued. The substance of an order governs its characterization for statutory purposes. No FRCP 65 motion was filed. No affidavits were submitted. No irreparable harm was shown. No First Amendment analysis was conducted.

23.    The Magistrate effectively abandoned the oral order herself. She subsequently stated: *"There's no injunction"* (Tr. at 41:3), and *"if you want me to order her to take it — take down certain things, then I need a motion so you can tell me exactly what — to take down."* (Tr. at 45:1-4.) Her own ultimate conclusion — that injunctive relief requires a proper motion — is consistent with § 636(b)(1)(A) and FRCP 65. Clarification will confirm that conclusion and prevents Apple from treating the oral directive as a qualified statement or order in future proceedings.

### 6. A PRIVATE TELEPHONE CALL IS NOT A CONSTITUTIONALLY ADEQUATE VEHICLE FOR QUASI-CRIMINAL PROCEEDINGS

24.    Apple's letter explicitly requested a finding of contempt, sanctions, and injunctive relief.

Once contempt was on the table, the proceeding took on quasi-criminal character regardless of how it was labeled. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 826-32 (1994).

25.     Quasi-criminal proceedings require specific written notice of charges, reasonable time to prepare, an evidentiary hearing with sworn testimony and cross-examination, and proof by clear and convincing evidence. *Taylor v. Hayes,* 418 U.S. 488, 498-99 (1974). The right to a public trial applies to contempt proceedings. *In re Oliver,* 333 U.S. 257 (1948). 28 U.S.C. § 753 requires verbatim recording of court proceedings as a structural guarantee of appellate review.

26.     None of these requirements were satisfied. Plaintiff demanded a court reporter, a public hearing, and an opportunity for opposition briefing in her filings at Dkt. 279, 282, and 283 before the conference occurred. Those demands were not addressed. Apple submitted no sworn affidavits, no authenticated evidence, and no witness testimony. The factual basis for the Magistrate's characterizations of Plaintiff as a violator was never established through any process adequate to contempt proceedings.

27.     The Magistrate acknowledged as much. She stated at p. 39 that she lacked *"all of that level of detail to know exactly where each thing comes from"* and would need *"formal declarations telling me exactly what was posted where."* That admission came after the oral takedown order had already been issued, and after she scheduled this conference based on Apple asking for exactly what was initially delivered. That was an error by the court.

28.     At the close of the conference the Magistrate concluded: "[T]he parties are not able to resolve this informally, so then that leaves nothing but the formal motion practice as an option." (Tr. at 40:2-5.) She directed a "full motion... 35 days notice motion" with declarations, a hearing, and oral argument. (Tr. at 42:14-19.) That is the Magistrate's own acknowledgment that the conference format was inadequate for the proceedings that occurred.

29.     Clarification is requested: that proceedings in which contempt, sanctions, or injunctive relief are sought require a public record consistent with 28 U.S.C. § 753, the procedural protections of *Bagwell* and *In re Oliver,* and that injunctive relief requires a motion before this Court under FRCP 65 and § 636(b)(1)(A), regardless of how the proceeding is characterized.

## OBJECTION: THE MAGISTRATE DIRECTED A PROCEEDING WITH NO GOVERNING RULE OR DEFINED STANDARD

*The Magistrate Directed Both Parties to a Proceeding That Has No Governing Rule, No Defined Standard of Proof, No Defined Remedy, and No Defined Standard of Appellate Review, Creating an Immediate Due Process Problem That Requires This Court's Clarification*

30.     At the close of the February 20 conference, the Magistrate directed both parties to file what she variously called a "motion for violation of the protective order" and a "motion regarding violating the protective order" — as a full noticed motion with 35 days notice, declarations, a hearing, and oral argument, before the Magistrate. (Tr. at 42:14-43:4.)

31.     This vehicle does not exist in the Federal Rules of Civil Procedure. The Federal Rules provide specific vehicles for addressing alleged violations of court orders. Rule 37(b) governs violations of discovery orders and carries defined requirements, burdens, and remedies. Rule 11 governs frivolous filings and requires a 21-day safe harbor. Civil contempt proceedings are quasi-criminal and require specific written charges, sworn evidence, an evidentiary hearing, proof by clear and convincing evidence, and — outside the magistrate's presence without party consent — certification to the district judge under § 636(e)(6)(B)(ii). Criminal contempt requires proof beyond a reasonable doubt. Each vehicle has a defined standard of proof, a defined set of available remedies, and a defined standard of appellate review.

32.     The "motion for violation of the protective order" the Magistrate directed has none of these. No Federal Rule governs it. No standard of proof was identified. No available remedy was specified. No appellate review standard exists because no rule defines what the ruling is. Apple's own counsel recognized this: she attempted to direct the motion to this Court, stating *"that's not a discovery motion, it's — "* before the Magistrate cut her off and kept it. (Tr. at 41:8-10.) The Magistrate did not identify what rule she was applying or what authority she had to retain jurisdiction over a proceeding Apple's own counsel recognized belonged before the district judge.

33.     The due process problem this creates for Plaintiff is immediate. Plaintiff is currently under a directive to respond to a motion with no defined legal standard. She cannot prepare a meaningful opposition when she does not know what Apple must prove, what burden Apple must meet, or what remedy the court is contemplating granting. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976): due process requires that a party know what they must defend against. A party facing a proceeding with no governing rule has been given no meaningful notice of the legal standard that will be applied to their conduct.

34.     The problem is compounded by the free speech issues noted earlier. If this Court confirms the § 3 exclusion, Apple's anticipated motion fails at the threshold regardless of what rule it is filed under — because designation validity is a prerequisite to any violation finding and designations of prior known information are invalid on the face of the order. But if this Court does not address the undefined vehicle, the Magistrate will conduct a proceeding with no legal framework while simultaneously being asked to resolve the threshold § 3 question without guidance from this Court on the governing standard.

35.     Clarification is requested: that this Court identify which Federal Rule governs the proceeding the Magistrate directed, confirm the applicable standard of proof and available remedies, and confirm whether the Magistrate has authority under § 636(b)(1)(A) and § 636(e) to conduct and rule on such a proceeding — or whether the motion belongs before this Court consistent with Apple's own counsel's recognition that it is not a standard discovery matter.

## OBJECTION: DOCKET ENTRIES 282 AND 283 WERE SEALED
### Docket Entries 282 and 283 Were Sealed Without Motion, Findings, or Notice, and Must Be Unsealed

36.     On February 19, 2026, Plaintiff filed Dkt. 282 and Dkt. 283 — notices attaching off-docket email communications between Apple and Court staff concerning Apple's request for a conference demanding sanctions against the Plaintiff. Both entries were modified to restrict access to case participants by court staff on February 20, 2026. The docket notation for each reads: "Modified on 2/20/2026 to restrict access to case participants. (Court Staff)."

37.     No motion to seal was filed by either party. No declaration of good cause was submitted. No judicial finding was made. No notice was provided to Plaintiff. N.D. Cal. Civil L.R. 79-5 requires an administrative motion and judicial finding before any filed document's access may be restricted. *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006), establishes a strong presumption of public access to court records requiring specific findings to overcome. None of that process occurred.

38.     The sealed documents contain the evidence of how the Feb. 20 conference came to be scheduled — Apple's off-docket email communications with the Court before any formal filing, and Apple's request for a private proceeding. This Court denied Plaintiff's Motion to Quash (Dkt. 285) on the same day these documents were sealed. Whether this Court had access to these documents when it ruled is not apparent from the record.

39.     Unsealing is requested: that this Court order Dkt. 282 and Dkt. 283 restored to public access, and that any future restriction of access to filed documents comply with the motion and findings requirements of L.R. 79-5.

# CONCLUSION

40.     Additional arguments will be raised in full in opposition to Apple's pending motion for a "Breach of the Protective Oder," before the Magistrate, where additional arguments bear directly on threshold questions of jurisdiction and the merits of any violation finding. Plaintiff expressly reserves all such arguments.

# RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1.  Confirm that the N.D. Cal. Model Protective Order does not apply, by its own express terms at §
    3 and under *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), to information Plaintiff pled in her
    complaint, was already public, knew from her own experience, or obtained independently of the
    discovery process —including the workplace monitoring practices and studies that form some of
    the factual predicate of her retaliation claims — and that this legal framework governs future
    proceedings in this case including motions Apple files before the Magistrate;

2.  Confirm that proceedings in which contempt, sanctions, or injunctive relief are sought require a
    public record consistent with 28 U.S.C. § 753 and the procedural protections of *International
    Union, UMWA v. Bagwell*, 512 U.S. 821 (1994), and *In re Oliver*, 333 U.S. 257 (1948); that
    injunctive relief requires a motion before this Court under FRCP 65 and 28 U.S.C. § 636(b)(1)
    (A); and that the informal discovery conference format is not an adequate vehicle for proceedings
    of this character;

3.  Identify which Federal Rule governs the proceeding the Magistrate directed at the close of the
    February 20 conference, confirm the applicable standard of proof and available remedies, and
    confirm whether the Magistrate has authority to conduct and rule on such a proceeding or
    whether it belongs before this Court , and

4.  Order that Dkt. 282 and Dkt. 283 be restored to public access and that future restrictions of access
    comply with N.D. Cal. Civil L.R. 79-5.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 6 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT E

# Activity in Case 3:23-cv-04597-EMC Gjovik v. Apple Inc. Motion for Sanctions

| | |
|---|---|
| From | ECF-CAND@cand.uscourts.gov <ECF-CAND@cand.uscourts.gov> |
| To | efiling@cand.uscourts.gov |
| Date | Friday, March 6th, 2026 at 7:06 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## California Northern District

### Notice of Electronic Filing

The following transaction was entered on 3/6/2026 at 7:05 PM PST and filed on 3/6/2026

| | |
|---|---|
| **Case Name:** | Gjovik v. Apple Inc. |
| **Case Number:** | 3:23-cv-04597-EMC |
| **Filer:** | Ashley M Gjovik |
| **Document Number:** | 302 |

**Docket Text:**

**MOTION for Sanctions *PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEFENDANT APPLE INC UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 26(G)* filed by Ashley M Gjovik. Motion Hearing set for 4/16/2026 01:30 PM in Oakland, - To be determined before Magistrate Judge Kandis A. Westmore. Responses due by 3/20/2026. Replies due by 3/27/2026. (Attachments: # (1) Declaration Declaration & Exhibits, # (2) Exhibit Feb. 20 2026 Discovery Conference Certified Transcript (Dkt. 281, 288), # (3) Exhibit July 2 2025 Discovery Conference Certified Transcript (Dkt. 223, 230))(Gjovik, Ashley) (Filed on 3/6/2026)**

**3:23-cv-04597-EMC Notice has been electronically mailed to:**

Ashley M Gjovik      ashleymgjovik@protonmail.com

Jessica Perry      jperry@orrick.com, tmcbride@orrick.com

Kathryn Grzenczyk Mantoan      kmantoan@orrick.com, vmorse@orrick.com

Melinda S. Riechert      mriechert@orrick.com, jromero@orrick.com

Ryan Booms    rbooms@orrick.com

**3:23-cv-04597-EMC Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Gjovik v Apple - 20260306 - 26G Sanctions Signed.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=3/6/2026] [FileNumber=23328576-0]
[4aa3b26c1806afc1cc70ae22b70df770d8b7668c5a2a1c7f6383a20f0d8cf6b5c9a39
8850f37e36b9d70db2bf6e240e6f6ad6a1e7aec173c589ef55d700f57a9]]
**Document description:**Declaration Declaration & Exhibits
**Original filename:**C:\fakepath\Gjovik v Apple - Declaration 20260306 Signed.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=3/6/2026] [FileNumber=23328576-1]
[3b429458788a4f83e08c58e96e591f5539730b9ddcd61baa3da09f8955c457f01b6af
5b11af2f294b161c6819a3efbd1e2c28ea22edfd16b43dd086a39e28f5d]]
**Document description:**Exhibit Feb. 20 2026 Discovery Conference Certified Transcript (Dkt. 281, 288)
**Original filename:**C:\fakepath\26Feb2026 AshleyG TWB ENG (Final Transcript)_revised -Certified.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=3/6/2026] [FileNumber=23328576-2]
[839f2c520089d028a4f99ff9217126f5898ed2a99cfabbacea28cf81f5f531591d921
3d3e088f86af829dcdef9225cc0e213e5a2b334163f484ca1faa0287545]]
**Document description:**Exhibit July 2 2025 Discovery Conference Certified Transcript (Dkt. 223, 230)
**Original filename:**C:\fakepath\2025-07-09 - AshleyG ENG TWB [23-cv-04597-EMC] - Certified.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=3/6/2026] [FileNumber=23328576-3]
[6649ea08ec08f1e860ea752b757c2a3cf260cf3a9df0f3e3863a13435d3e7c1998ef2
3ba7a08aa083ecec9b5422f5fbcabc74f88e5eac1e0e4e431639e38910c]]

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK,**

*an individual*,

Plaintiff,

vs.

**APPLE INC.,**

*a corporation*,

Defendant.

**CASE NO.**

3:23-CV-04597-EMC (KAW)

**MOTION FOR DECLARATORY RELIEF & FOR SANCTIONS UNDER FED.R.CIV.P. RULE 26(G)**

**HEARING:**

**DATE: APRIL 16 2026**

**TIME: 1:30 PM PST**

**LOCATION: OAKLAND, TBD**

# MOTION FOR DECLARATORY RELIEF
# & FOR SANCTIONS UNDER RULE 26(G)

**TO DEFENDANT APPLE: PLEASE TAKE NOTICE** that on April 16 2026, at 1:30 p.m. in a courtroom to be determined (TBD) of the above-titled Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiff Ashley Gjovik will and hereby does move the Court for an Order finding of Declaratory Relief and Sanctions under Rule 26(g) against Defendant Apple. Inc

Plaintiff Ashley M. Gjovik respectfully files this **MOTION FOR SANCTIONS UNDER RULE 26(G),** as discussed during the Feb. 20 2026 Conference Call. (Dkt. 288). ("Apple did violate [the Protective Order]… I've already told them about this and documented it. Like… where they had five weeks of five hours of testimony claimed was completely improper… I would file a motion also?" Court: "Yes. If you want to -- you can file a motion as well, if you believe they have violated the protective [order]." Cert. Tr. pp. 48-50, Ex. A)   Additionally, as required Chambers Copies will be promptly sent to 1301 Clay Street, Suite 400S, Oakland, CA 94612.

# FACTUAL BACKGROUND
## Apple Obtained the Protective Order by Representing It Needed It to Authenticate a Specific Document

Apple's stated justification for requesting a Protective Order in this proceeding evolved over months of meet-and-confer proceedings, but the only representation that apparently, ultimately induced entry of the Order was that Apple needed the Order to show Plaintiff the unredacted Gobbler informed consent form — a document Apple described as the evidentiary basis for its termination defense — for authentication at a deposition. (May 2, 2025 M&C, Dkt. 220-9).

At the May 2, 2025 meet-and-confer, Apple's counsel stated: "one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one. I need to show you the entire document so that you can agree that that is the document that you signed." When Plaintiff asked why redactions were insufficient, Apple's counsel responded: "I will not give you a copy of the consent agreement that you signed without a confidentiality agreement." (May 2, 2025 M&C Tr. at 5:53–6:05, Dkt. 220-9).

Apple repeated this representation to the Court at the July 2, 2025 conference. Apple's counsel stated on the record that "one of the documents we are relying on to support the fact that we terminated Ms. Gjovik because she revealed confidential information is a document that she signed consenting to her

participation in a study" and claimed that the Protective Order was needed to show Plaintiff the unredacted version for authentication purposes. ( July 2, 2025 Cert. Tr. at 10:17–11:11; Exhibit D).[1]

The Plaintiff repeatedly objected to the entry of a Protective Order, said she would not enter one for this proceeding – even asking this court to quash Apple's demand for the order and raising the issue to the Ninth Circuit asking for intervention - -terrified Apple was going to do exactly what it's doing now. (Dkt. 211, 213, 214, 220, etc.).[2]

The Court refused the Plaintiff's objections (Dkt. 213, 230), never required a formal motion or showing from Apple, pressured the Plaintiff to sign the agreement ( July 2 2025 Cert. Tr.), and entered the Protective Order despite the Plaintiff's objections on July 7, 2025. (Dkt. 235). The Court's stated understanding was that the Order would allow Apple to produce at least one confidential document to Plaintiff while ensuring she could not publish those documents publicly. ( July 2, 2025 Tr. at 13:18–14:2 ("Apple cannot refuse to produce the information once you have that protective order in place... once they do produce it to you, you can't go and put it out there in the public.")). Even then, the court assumed the document Apple referenced was actually confidential – yet Apple has since confirmed that it is not.

Plaintiff opposed the Protective Order throughout this process. She warned the Court on the record that Apple's actual intended use was to designate deposition testimony as confidential and to prevent her from speaking about the basis of her own termination and her complaints — not to facilitate document production. ( July 2, 2025 Tr. at 6:10–21 ("the defendant's only explanation of how they want to use it was to declare part of the deposition confidential. It wasn't even producing documents... What they want to use it for appeared to be their attempt to do a summary judgment motion without summary judgment. They want to say they fired me for something confidential, whether or not if it was confidential.")). The Court did not address this warning on the merits.

---

[1] In SAC Dkt. 32 ¶ 1577  alleged Apple "refuses to provide Gjovik a copy of this alleged document" — the ICF. That allegation was filed December 2023. Apple told the court in July 2025 it needed the PO *to show Plaintiff the ICF*. Apple then never produced it. The SAC shows Plaintiff was already on record saying Apple was withholding the ICF before the PO was even sought.

[2] "Plaintiff respectfully warns the Court that the subject matter for which Defendant seeks a confidentiality designation—based on its own representations during the parties' meet-and-confer and recent filings—would functionally operate as a dispositive ruling on contested issues, and impose prior restraint on testimony that the U.S. government has already found to be protected activity. (Dkt. Nos. 35-4, 111, 151, 171, 203). The only justification Apple now offers involves internal policies it was required to rescind as part of a 2025 national NLRB settlement." Dkt. 220 at 5.

## Apple Never Used the Protective Order for Its Stated Purpose

Apple never produced the Gobbler informed consent form under the Protective Order. Apple never designated a single produced document as confidential under the Order. Apple confirmed this expressly in email on February 6, 2026: "All documents used in the deposition were produced either by Apple or by you. None was designated confidential." (Feb. 6, 2026 email, 3:58 PM). The Gobbler form that Apple cited as the entire justification for entry was never produced under the Order, is at Dkt. 250 p. 52-54 right now, and led the Plaintiff to request leave to file a Motion for Sanctions against Apple once Apple revealed they had been misrepresenting the scope, nature, and content of the document for five years. (Dkt. 245).

Instead, the Order's sole use to date has been exactly what Plaintiff warned: designating Plaintiff's deposition testimony about her own body and her own workplace complaints as Apple Confidential, and then seeking contempt proceedings tied expressly to Apple's termination defense. Apple acknowledged this connection in its own court filing: claiming the current alleged "breach" is independently actionable under her employment IPA and "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." (Dkt. 280, fn. 2). This is precisely the improper, pretextual use Plaintiff identified before the Order was entered.

During the May 2, 2025 meet-and-confer — recorded and filed as Exhibit I to Dkt. 220-9 — Apple's counsel identified the Gobbler informed consent agreement as the specific document justifying the Protective Order: "For example, one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one. I need to show you the entire document so that you can agree that that is the document that you signed." (Riechert, May 2, 2025 M&C Tr., Dkt. 220 Ex. I).

When Plaintiff objected that Apple would not produce the document without a confidentiality agreement, counsel confirmed: "I will not give you a copy of the consent order, the consent agreement that you signed without a confidentiality agreement." (Id.) Counsel further confirmed that Apple's plan was to use the Protective Order at deposition specifically to make the deposition confidential: "I want to show them to you in your deposition." . . . "Correct." [confirming the deposition would then also be made confidential]. (Id.)

Yet, Apple never designated the Gobbler ICF as confidential under the Protective Order. The only thing Apple designated — and the only thing it sought to enforce — was Plaintiff's deposition testimony about Apple's requests to study her menstruation and ovulation. The document Apple told the

Court and Plaintiff justified the Protective Order was never voluntarily produced, never designated, and still had to be compelled. The PO's sole operational use was silencing Plaintiff about her workplace complaints, the subject matter of this lawsuit, and Apple's unfair and unlawful business practices.

Apple obtained a Protective Order by representing to the Court that it needed to produce supposedly sensitive documents — including the Gobbler informed consent agreement — and that those documents required confidentiality protection. Apple never designated a single one of those documents. The only thing Apple designated, and the only thing it sought to enforce, was Plaintiff's deposition testimony about her and her coworkers bodies, her complaints, and her own experiences as an Apple employee. The stated justification for the Protective Order, to the court, was never its actual use.

### THE DECEMBER 16, 2025 DEPOSITION: BLANKET DESIGNATION AND OBJECTION

Plaintiff's deposition occurred on December 16, 2025. During the deposition, Apple declared a blanket designation covering pages 66–305 of the 336-page transcript — approximately 72% of Plaintiff's testimony. Plaintiff objected contemporaneously on the record. Apple acknowledged the objection and agreed on the record to narrow the designation. Under Protective Order § 6.3, the 21-day clock to substantiate ran from Plaintiff's on-record objection on Dec 16, 2025. Apple did not respond during the 21-day window. The deadline passed on or about Jan 6, 2026. Under Protective Order § 6.3, Apple's failure to file a motion to retain confidentiality within 21 days of the initial challenge constituted automatic waiver of the blanket designation. As of January 6, 2026, no valid designation existed.

### APPLE'S FEBRUARY 4, 2026 UNSIGNED, UNDATED, UNSERVED "CHART"

On February 4, 2026 at 4:32 PM — fifty days after the deposition — Apple emailed its court reporter (not Plaintiff) with a document it described as a "chart" of narrowed confidentiality designations. The email was addressed to the court reporter. Plaintiff was copied "for notice purposes" only. The chart was unsigned, undated, & was not served on Plaintiff. Apple did not sign a certificate of service. No attorney put their name on the document.

The same day, Plaintiff wrote to Apple demanding that it serve a signed, dated copy of its designations directly to her, as the opposing party. Over the following two days — Plaintiff repeated this demand. Apple refused each time. Apple's position, stated on February 6, 2026, was: "Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential...

Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM).

Apple thus refused to cure the deficiency after Plaintiff specifically called the omission to its counsel's attention and counsel refused to engage or correct the issue— which is the precise circumstance Rule 26(g)(2) identifies as requiring the Court to strike the document.

## APPLE'S ESCALATION: FILING ENFORCEMENT PROCEEDINGS ON A NULL DESIGNATION

On February 16, 2026, Plaintiff filed NLRB Charge No. 32-CA-381277. On February 17, 2026, Plaintiff filed a Notice of Pendency (Dkt. 278) describing the NLRB charge about Apple's unlawful conduct during and after the deposition. On February 18, 2026, Apple emailed Plaintiff demanding she take down posts from social media and the internet, claiming she was in violation of the Protective Order. Apple simultaneously emailed court staff off-docket requesting an emergency conference. Plaintiff objected to Apple's refusal to use the court's docket. (Dkt. 279).

On February 19, 2026, the Court directed Apple to file its request on the docket. Apple filed its five-page letter at Dkt. 280, signed by Melinda S. Riechert, Esq. (Bar No. 65504), requesting sanctions, contempt, a gag order, compelled deletion of online posts, and sealing. The letter asserted that Plaintiff was violating the Protective Order and her employment agreement with Apple by publishing information Apple had designated as confidential: public information, workplace complaints, the subject matter of this lawsuit, and the Plaintiff's own experiences.

On February 20, 2026, the Court held a telephonic conference and ordered Apple Inc to complete a meet-and-confer process before filing any motions. (Dkt. 288, 292).

From Feb. 20-26, 2026, Apple refused to meet and confer — expressly saying so, in writing — stating there was "nothing further to discuss." Apple then filed three motions at approximately 10:00 PM: Motion to Seal (Dkt. 293), Motion to Enforce Protective Order (Dkt. 294), and Motion to Shorten Time (Dkt. 295). All three were signed by Apple's counsel Melinda S. Riechert (Bar No. 65504) and Jessica R. Perry (Bar No. 209321). On February 27, 2026, Plaintiff filed an omnibus opposition to Dkt. 293 and 295. (Dkt. 297). The Plaintiff has until March 12 2026 to file her response to Dkt. 294.

# BASIS FOR THIS MOTION

Rule 26(g)(1) requires that every discovery request, response, or objection "must be signed by at least one attorney of record in the attorney's own name" and must state the signer's address, email address, and telephone number. Fed. R. Civ. P. 26(g)(1). The signature is not a formality — it is the mechanism by

which counsel personally vouches for the content of the discovery document and certifies that the designation is consistent with the rules, warranted by law, not interposed for an improper purpose, and not unreasonably burdensome. Fed. R. Civ. P. 26(g)(1)(B)(i)–(iii).

Rule 26(g)(2) provides that "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." Fed. R. Civ. P. 26(g)(2). An unsigned discovery document is a legal nullity and the receiving party has no obligation to treat it as operative.

Rule 26(g)(3) provides that "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Sanctions under Rule 26(g)(3) are mandatory, not discretionary: when the violation is established, the court must impose them. The sanction "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Id. P.T. Hoffman and S.M. Israel , *Effective Discovery*, NITA, (2017).

Rule 26(g)(1)(B)(ii) independently prohibits any discovery response or objection "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." A designation of public information, or of information known to the receiving party from outside discovery, as confidential under a protective order — particularly when made to suppress speech connected to the movant's own legal complaints in the same litigation— constitutes an improper purpose within the meaning of this provision.

Pursuant to Civil Local Rule 7-3, Plaintiff certifies that she has met and conferred with Defendant's counsel regarding the substance of this Motion on multiple occasions prior to filing. The meet-and-confer process is documented in the accompanying Declaration of Ashley M. Gjovik. (Gjovik Decl. ¶¶ 2–18, Exs. A, B, E, F). The Plaintiff's first objections were on Dec. 16 2025 and captured in the deposition transcript. (Exhibit E).

On Feb. 4, 2026, Apple sent its unsigned, undated, unserved chart. The parties' meet-and-confer correspondence regarding Plaintiff's foundational objections to Apple's supposed narrowed confidentiality designations and it continued through the date of this filing. Apply finally sent a response regarding its designations on March 4, yet still failed to respond to over half of the targeted objections, and nearly all of the foundational objections. The Court told Apple on Feb. 20 2026 that it must "meet its burden to show why all… designations should be kept confidential." (Feb. 20 2026, Cert. Tr. p 33).

Apple also still failed to provide a list of its designations and instead forced the Plaintiff to have to

cross-reference and map herself to sort out what Apple's latest claims are – making it impossible for the Plaintiff to show the Court what Apple did without attaching all of Apple's various piecemeal, informal communications. Instead, the Plaintiff attaches her response to Apple, which also shows there is nothing left to meet/confer about because Apple still refuses to engage on most of the substantive issues. (Exhibit F).

The Plaintiff had raised the Rule 26(g)(1) signature deficiency, the absence of a date, the failure to serve, and the automatic waiver of the blanket designation under Protective Order § 6.3 in writing to Apple, specifically and repeatedly, beginning February 4, 2026 and continuing through February 6, 2026, and after. Yet, Apple expressly refused to cure any deficiency, stating: "Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM; Gjovik Decl. ¶ 10).

On February 20, 2026, the Court held a telephonic conference and ordered the parties to complete a meet-and-confer process before filing motions. (Dkt. 288, Ex. A Cert. Tr. Feb. 20 2026). Apple would not communicate with the Plaintiff for nearly six days after. Then, on February 26, 2026, Apple announced it planned to file a barrage of motions and that it refused to meet and confer – writing its refusal to meet/confer seven times in writing, and stating there was "nothing further to discuss." Apple then filed three motions at approximately 10:00 PM the same evening. (Gjovik Decl. ¶ 16).

Apple's March 4, 2026 letter purports to respond to Plaintiff's designation challenges but addresses only some of the substance of certain designations and designations. Apple did de-designate around 23 lines of prior designations – but failed to respond to 53 lines. The only content Apple retained designations for appear to be the sex-based testimony by the Plaintiff currently subject to the Plaintiff NLRB charge and Apple's pending motion regarding the Protective Order (Dkt. 293-295) along with two entries of the letter "N" which Apple claims is secret and accordingly its leaking for the Plaintiff to tell the court. (Exhibit F).

Apple's responses do not address — and has never addressed — the threshold procedural deficiencies that are the basis of this Motion: the absence of a signature, the absence of a date, the failure to serve, and the automatic waiver of the blanket designation under § 6.3. Apple's March 4 letter also de-designated the substantial majority of its prior designations while retaining only those involving female reproductive biology and sexual activity, providing no Rule 26(c) justification for any retained designation. (Gjovik Decl. ¶ 18, Ex. F).

Apple has had multiple opportunities across four months to cure the foundational Rule 26(g)(1) deficiencies identified by Plaintiff. It has expressly refused each time. Further meet and confer on the

threshold issues raised in this Motion would be futile. The meet-and-confer requirement of Civil Local Rule 7-3 has been satisfied. Civil Local Rule 7-8 requires that a motion for sanctions be separately filed and set for hearing in conformance with Civil L.R. 7-2. This Motion complies with those requirements.

# ARGUMENT

### APPLE'S DECEMBER 16, 2025 BLANKET DESIGNATION AUTOMATICALLY LAPSED UNDER THE PROTECTIVE ORDER

Protective Order § 5.1 expressly prohibits "[m]ass, indiscriminate, or routinized designations" and provides that such designations "expose the Designating Party to sanctions." (Dkt. 235, § 5.1). Apple's blanket designation of approximately 72% of Plaintiff's deposition testimony on December 16, 2025 was precisely the kind of mass, indiscriminate designation the Order prohibits.

Plaintiff objected contemporaneously on the record. Apple acknowledged the objection and agreed to narrow. Under Protective Order § 6.3, a party that receives a written objection to a designation must either (a) agree to withdraw it, or (b) file a motion to retain confidentiality within 21 days of the written objection. The 21-day period ran from December 16, 2025 and expired on or about January 6, 2026. Apple filed nothing. Under the plain terms of § 6.3, the blanket designation was automatically waived on January 6, 2026. No valid designation existed after that date.

Apple's contrary position — that it had 30 days from receipt of the certified transcript (received January 7, 2026) to narrow the designation — finds no support in the Protective Order, Local Rules, or Federal Rules of Civil Procedure. Section 5.2(b) requires that deposition designations be made "on the record, before the close of the deposition." That is the only authorized mechanism for deposition designations. Apple's post-hoc narrowing process has no textual basis in the Order. Even accepting Apple's own timeline, the February 4, 2026 narrowed designation was still unsigned, undated, and unserved — defects that independently rendered it a nullity under Rule 26(g)(2).

### PLAINTIFF NOTIFIED APPLE ON FEBRUARY 4 THAT ALL DESIGNATIONS WERE ALREADY WAIVED

On February 4, 2026 at 4:22 PM, Plaintiff emailed Apple's counsel stating: "I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you — and nothing to actually narrow, define, and substantiate any of your Confidentiality claims. The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims. Under the

Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now." (Feb. 4, 2026 email, 4:22 PM).

Ten minutes later — at 4:32 PM — Apple sent its chart. Apple's chart was not a response to Plaintiff's email. Apple instead opened a new email chain addressed to the court reporter: "Talty CR Production Team: I write regarding the deposition transcript we received on 1/7/2026 in this matter. Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text) for which confidentiality is being asserted. Plaintiff is copied on this email for notice purposes." (Feb. 4, 2026 email, 4:32 PM). The chart was unsigned, undated, and not addressed to Plaintiff. Apple's own email confirmed Plaintiff was included not as the adverse party being served, but only "for notice purposes."

The document Apple emailed on February 4, 2026 fails Rule 26(g)(1) on its face. Rule 26(g)(1) requires that every discovery response or objection be signed by at least one attorney of record in the attorney's own name, and must include the signer's address, email address, and telephone number. The February 4 document bears none of these. It is unsigned. It is undated. It contains no attorney identification whatsoever. Apple expressly confirmed it was "drafted only for the contractor" (the court reporter) and not sent to Plaintiff directly. (Feb. 4, 2026 email exchange).

Identifying authorship through email metadata does not satisfy Rule 26(g)(1) – and even here, its still unclear who drafted the "chart." The rule imposes a certification requirement on the discovery document itself — not on the transmission wrapper. Email headers do not constitute an attorney's personal vouching for the accuracy and propriety of the designations contained in the attached document. The Adv. Comm. Notes to Rule 26(g) make clear that signature requirements serves precisely to ensure that an identified attorney personally certifies the compliance of the discovery response with applicable rules.

Plaintiff called the omission to Apple's attention specifically and repeatedly, beginning at 4:39 PM on February 4, 2026 and continuing through February 6, 2026. Apple refused each time to supply a signature. That refusal is the event that triggers Rule 26(g)(2): the court "must strike" an unsigned document whose omission has been called to counsel's attention and not promptly cured. Fed. R. Civ. P. 26(g)(2). The February 4 document is a legal nullity & the Plaintiff had no duty to treat it as operative.

## Apple Also Failed to Serve Its Designations as Required by Fed. R. Civ. P. 5

Rule 5(a)(1) requires that discovery papers be served on every other party. Rule 5(b)(1) specifies

the methods of service. Electronic service under Rule 5(b)(2)(E) requires the consent of the person being served. Apple did not serve the February 4 document on Plaintiff — it sent the document to the court reporter, with Plaintiff copied "for notice purposes." Apple also indicated they were sending the document just before the "deadline" for the Plaintiff to sign off on the transcript (which she sill has not had time to do) in order to formalize Apple's designations without any meet/confer and solidify them into the transcript record without any input from the Plaintiff. Apple expressly disclaimed that the email was directed to Plaintiff at all. (Feb. 4, 2026 email, 4:32 PM).

Local Civil Rule 5-5(a) requires that served papers bear either an acknowledgment of service or a certificate of service stating the date, place, and manner of service. Apple supplied no certificate. Local Civil Rule 5-5(b) provides that a document lacking a certificate of service "may be disregarded by the Judge if an adverse party timely objects on the ground of lack of service." Plaintiff objected on exactly that ground, beginning on February 4, 2026. The February 4 document should be disregarded.

At 4:39 PM, Plaintiff replied to Apple directly: "[Y]ou sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case. You need to send me your claims and then we are to meet/confer about those claims.... I ask that you send me your claims to discuss — as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this." (Feb. 4, 2026 email, 4:39 PM).

Apple responded at 6:53 PM, citing PO § 5.2(b) and directing Plaintiff to "follow Section 6 of the Protective Order... should you wish to challenge any of Apple's designations." (Feb. 4, 2026 email, 6:53 PM). Apple did not address the signature, date, or service deficiencies.

At 8:27 PM, Plaintiff wrote: "I'm going to translate your emails to mean that the document you sent to Talty is now being repurposed as your service to me of your confidentiality claims — however the only document you've sent is not signed or dated; nor does it provide any explanation, standard, or reasoning for the designations claimed. If Apple's not going to provide any additional information about its reason for designations beyond what's in the document you admittedly drafted only for the contractor and not even for me, and you want to repurpose that document for party meet/confer, then I'd ask you actually serve (email) me a signed and dated copy with some lawyer actually signing it with their name." (Feb. 4, 2026 email, 8:27 PM).

Apple responded at 8:27 PM: "We followed the procedures in the protective order and you should

too." (Feb. 4, 2026 email, 8:27 PM). At 9:08 PM, Plaintiff again demanded "a signed/dated version of your designations since you're sending them after the fact, and already said it wasn't even a document for me originally." (Feb. 4, 2026 email, 9:08 PM).

On February 6, 2026 at 2:11 PM, Plaintiff made specific written objections to Apple's "outright refusal to (1) sign or (2) date the document or (3) serve it to me directly or (4) answer my questions about exhibits and (5) send it six weeks after the deadline following the (6) use of blanket designations with duration-based blank check confidentiality claims (7) immediately following me exercising my labor rights under the NLRA and (8) them applying that blanket designation to my protected statements." (Feb. 6, 2026 email, 2:11 PM).

Apple's response at 2:46 PM was unambiguous: "Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM). Apple thus not only failed to cure the Rule 26(g)(1) deficiency after Plaintiff specifically called it to counsel's attention — it expressly refused to do so. That refusal is the triggering event under Rule 26(g)(2): the court "must strike" the document. The February 4 chart is a legal nullity. (This same argument will be made for Apple's pending motions at Dkt. 293, 294, 295 – but will be addressed in a more holistic opposition to those filings by the deadline).

## BECAUSE NO VALID DESIGNATION EXISTS, APPLE'S ENFORCEMENT PAPERS CERTIFY A NULLITY — THAT CERTIFICATION IS THE RULE 26(G)(3) VIOLATION

The February 4 document, standing alone, generated no certification — there was no signature to violate Rule 26(g). But when Apple's counsel signed and filed enforcement papers with this Court — the Dkt. 280 letter (February 19, 2026), the Motion to Enforce (Dkt. 294, February 26, 2026), the Motion to Seal (Dkt. 293), and the Motion to Shorten Time (Dkt. 295), all signed by Melinda S. Riechert, Esq. (Bar No. 65504) — those papers necessarily certified to this Court that valid, enforceable confidentiality designations exist.

That certification was false at the moment of signing, and Apple's counsel knew it. At the time each enforcement paper was filed, the record contained: (1) Plaintiff's on-record objection at the December 16 deposition; (2) Apple's acknowledgment and agreement to narrow; (3) the expiration of the 21-day substantiation deadline without any filing by Apple; (4) the February 4 document's complete lack of signature, date, or service; (5) Plaintiff's repeated written demands that Apple cure the deficiency; and (6)

Apple's written refusals to do so. Counsel signed enforcement papers insisting Plaintiff was violating the Protective Order while in possession of a complete record establishing that no valid designation existed to be violated.

This is the Rule 26(g)(3) certification. The signing and filing of enforcement papers is a certification that the underlying discovery designations are consistent with the rules, warranted by law, and not interposed for an improper purpose. Fed. R. Civ. P. 26(g)(1)(B). Where the underlying document is a 26(g)(2) nullity — and where counsel knows it is a nullity because the other party put them on written notice and they refused to cure — the enforcement certification violates Rule 26(g) without substantial justification. The sanction is mandatory: the court "must impose" it. Fed. R. Civ. P. 26(g)(3).

The Advisory Committee Notes to Rule 26(g) confirm this reading: the rule is designed to "provide a deterrent to both excessive discovery and evasion" and to impose personal responsibility on counsel for the discovery obligations they certify. Certifying the validity of designations that were never properly made, over an objecting party's documented protest, and then filing enforcement motions seeking contempt, compelled deletion, and gag orders based on those null designations, is precisely the conduct the rule targets.

## Even If the Designations Were Valid, the Protective Order Does Not Cover the Designated Information

The Protective Order's own scope provisions are independently dispositive. The first paragraph of the Order states it "does not confer blanket protections on all disclosures" and that "the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." (Dkt. 235, § 1).

Section 3 of the Order expressly excludes from its coverage: (a) any information in the public domain at the time of disclosure; and (b) any information known to the Receiving Party prior to the disclosure or obtained from a lawful outside source. (Dkt. 235, § 3). This court confirmed on Feb. 20 2026 that "if Apple is being unreasonable and asking for things that are already out in the public domain to be kept confidential, the court is not going to look very fondly on wasting the court's time on confidentiality designations that should not be made." (Feb. 20 2026, Cert. Tr. p. 18, Ex. A).

Every item Apple designated falls within one or both of these exclusions. The designated testimony concerns Plaintiff's own physiological experiences, her own workplace complaints, and her own communications with coworkers and the press — all of which were known to Plaintiff before the deposition, all of which she experienced or said herself, and all of which were in the public record before

the deposition occurred.

The designated content has been part of the public record in this litigation since Plaintiff's first complaint. Judge Chen's orders describe Apple's invasive employee studies as among the "main categories of alleged misconduct." (Dkt. 73 at 7–8; Dkt. 179 at 2). The same subject matter appears in NLRB filings dating to 2021, in published press coverage (Bloomberg, The Verge, Gizmodo, Der Spiegel, Telerama, TechCrunch, Gizmodo, Telegraph, and more), in an OSTP public comment cited in GAO Report GAO-24-107639, in filings before the Ninth Circuit (Case No. 25-2028), and in Plaintiff's bankruptcy proceedings. Information that has been in the public domain for years cannot be "designated" confidential by a party who experienced or disclosed it in non-discovery contexts.

Apple's confidentiality designations target Plaintiff's deposition testimony about Apple's requests to study and collect data about her menstruation, ovulation, and sexual activity. That subject matter was publicly pled in all of the Plaintiff's Complaints and addressed in this Court's orders— these are public filings on this docket since at least December 2023. Apple cannot designate as confidential information that its opponent already pled as the factual basis of her lawsuit more than a year before the deposition occurred.

- **SAC Dkt. 32 ¶ 144** (filed Dec. 21, 2023): ""Gjovik was contacted to participate in other user study programs including **Apple wanting to study her ovulation cycles and menstruation**, which she denied. Apple asked to study Gjovik's vitals while she ran and swam, which she denied. **Apple asked to study Gjovik's vitals and sleep while she slept, which she accepted for a few months, but then left the program due to how invasive it felt.** Apple also asked to 3D scan Gjovik's ears and ear canals, which Gjovik denied expressly in 2018 and stated her denial as 'indefinite.'"

- **SAC Dkt. 32-2 ¶ 1344** (filed Dec. 21, 2023): "Apple intended to invade its employee's privacy. Whether it was to spy on them, to collect and hoard their data, or to exploit unpaid labor from them – Apple possessed intention and purpose in invading employee privacy, including Gjovik's privacy. Apple claims that employees 'consented' to even its most invasive violations of privacy, such as scanning ear canals, 24/7 biometrics gathering, **sleep monitoring, or monitoring employee's ovulation and menstruation."** (Under Plaintiff's active *Tamney*: Invasion of Privacy (Cal. Const. art. 1, § 1) claim).

- **4AC Dkt. 76 ¶ 197** (filed June 18, 2024): " When Apple asked Gjovik to scan her ears and her ear canals, Gjovik declined "indefinitely." Similarly, **Gjovik repeatedly declined Apple's requests to study and collect data about her menstruation for product development**. Even after Gjovik declined the ear studies, Apple has claimed its secret they even asked her in the first place."

- **Judge Chen's Order at Dkt. 73 at 7-8, May 20 2024**: "Apple frequently requested that Gjovik

and her coworkers participate in invasive, oppressive, and humiliating **medical studies, anatomical studies** (like ear scans), DNA test, biometrics data collection (like the Gobbler app), and other highly personal studies."

- **Judge Chen's Order at Dkt. 73 at 2, May 20 2024 and Order at Dkt. 179 at 2, Feb. 27 2025:** "As the Court stated in its prior order, the main categories of alleged misconduct by Apple [include]… **Apple made employees, including Ms. Gjovik, participate in studies** related to Apple products that were invasive to their privacy." .

- **Judge Chen's Order at** Order at Dkt. 112 at 32-33, Oct. 1 2024 – (California Business & Professions Code § 17200 claim dismissed under statute of limitations and failure to plead as class action). Claim was based on three "factual predicates": "(1) Apple's coercing employees to provide personal data for Apple's commercial use, such as with the Gobbler application, see TAC ¶ 255 (alleging that no consent was obtained or compensation provided); (2) **Apple's coercing employees to be a part of invasive studies,** see TAC ¶ 258; and (3) Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly." She requested "the Court to order Apple 'to disgorge unlawful data and the fruit of the poisoned data' and to prohibit Apple 'from using personal employee data in for-profit product development'."

- **Judge Chen's** Order at Dkt. 179 at 2, Feb. 27 2025): Plaintiff's § 96(k) claim includes retaliation due to "lawful conduct occurring during nonworking hours away from the employer's premises" included Ms. **Gjovik 'complaining on social media and to the press' about (1) 'unlawful and unethical surveillance and invasions of privacy by Apple'**… and ' Apple's intimidation and threats based on her advocacy for crime victim's rights' (with Ms. Gjovik also being a victim of Apple's crimes). 5AC ¶¶ 252-54."

See, Exhibit G.

A discovery protective order does not restrict the dissemination of information obtained from sources outside of discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (order does not violate the First Amendment only if "it does not restrict the dissemination of the information if gained from other sources"). "Parties to litigation have general first amendment freedoms with regard to information gained through discovery and… absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780 (1st Cir. 1988). Because the designated information was gained by Plaintiff through her own life experience — not through discovery — the Protective Order does not reach it regardless of Apple's designations.

The canon against surplusage and the presumption of validity require this Court to interpret the Order's exclusions as meaning exactly what they say. If the Order's scope provisions excluding public and independently known information are not given effect, those provisions would be rendered meaningless. Courts are not authorized to interpret contractual or court-order provisions to be a nullity. Scalia and

Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012). The exclusions mean the Order does not apply to this information — and attempting to "designate" it does not make it covered.

## APPLE'S DESIGNATIONS WERE INTERPOSED FOR AN IMPROPER PURPOSE

Rule 26(g)(1)(B)(ii) prohibits designations "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Apple's designations satisfy this standard independently of the procedural defects described above.

Apple represented to this Court that it needed the Protective Order to facilitate document production — specifically, to produce the Gobbler informed consent form for deposition authentication. Apple never used the Order for that purpose. Apple never designated a single produced document. Apple confirmed this on February 6, 2026. Apple has instead used the Order solely to designate Plaintiff's deposition testimony about her own body and her own workplace protected activity, and then to file enforcement proceedings expressly connecting those designations to its termination justification.

The Federal Circuit has held that designation of content as confidential under a protective order "cannot be justified" unless the content actually qualifies for protection under Rule 26(c)(1)(G). In re: Violation of Rule 28(D), No. 976 (Fed. Cir. Mar. 29, 2011). "Though it is impossible to define the exact contours of what may and may not be marked as confidential pursuant to Rule 28(d), it is clear that the parties must confine their confidentiality markings to information covered by a protective order." *IN RE: VIOLATION OF RULE 28(D).* United States Court of Appeals, Federal Circuit, No. 976. (March 29, 2011). (finding it inappropriate and improper to designate legal arguments, citations, and parentheticals).

The Federal Court of Appeals found appellants violated FCR 28(d) when they "designating material as confidential that falls outside the scope of the protective order," the violation was "severe," and justified monetary sanctions. Id citing *United States v. Bush,* 797 F.2d 536, 538 (7th Cir.1986); 16AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3992.2 (4th ed.2010).

During the Feb. 20 2026 call the Court indicated that if Apple was trying to designate public information and the claims in the litigation that the Court would find in the Plaintiffs' favor regarding the designation following a formal motion and declaration on the matter – but still required more meet/confer with Apple prior, which Apple then used to file three emergency motions for sanctions, contempt, and injunctive relief against the Plaintiff – while refusing to meet/confer repeatedly.

A District Court reviewing a protective order allowing the designation of discovery materials on evidence related to the "core claims" in the lawsuit found the order acceptable only because the order did

not address whether "whether information may be disclosed to the public." *Duncan v. Topeka*, No. 24-2336-DDC-ADM, 2024 WL 5106677, at *2 (D. Kan. Dec. 13, 2024).

District Courts have also found that it takes "only the most compelling showing" to justify limitations on disclosure of testimony or documents actually introduced at trial. *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533 (1st Cir.1993). Designating a plaintiff's own testimony about her own body, her own physiological experiences, her own protected workplace complaints, which are pled claims in that lawsuit — is not a justified exercise of the designation process. It is harassment and already found to be sanctionable conduct.

On Feb. 20 2026, when the Plaintiff informed this court about what Apple was actually doing the Court expressed concern. When the Plaintiff told the Court what Apple was trying to designate confidential was her "workplace complaints… whistleblower complaints… stuff [she] pled in [her] complaint for this lawsuit." The Court responded "I'm not talking about those things." (Feb. 20 2026, Cert. Tr. p. 10). But that's exactly what Apple designated. The Court didn't believe that's what Apple was doing (Court: "I don't know -- I mean, based on what I've read, I'm not reading that Apple is trying to prevent those kind of things from being posted." Feb. 20 2026, Cert. Tr. p. 15, Ex. A).

The Platiniff explained on Feb. 20 2026 that : the subject matter Apple was designating "are things [she] pled in [her] complaint from [her] 17200 complaint, [her] whistleblower retaliation complaints. This is stuff, details that are in the written docket. And now Apple is starting to claim that [her] actual, like, legal claims are secret so [she] can't talk about it and [she has] to take months where [she] can't talk about the fact [Apple's] even trying to claim that [her] legal claims are secret." (Feb. 20 2026, Cert. Tr. p. 18, Ex. A). The Plaintiff said it " is just nonsense to me. It makes my head explode." Id.

Apple's emails and Dkt. 280 fn. 2 also confirms the improper purpose by linking enforcement proceedings directly to the merits of Apple's termination defense: claiming it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place. This is Apple using the Court's protective order machinery to pre-adjudicate (without Rule 56 process) whether Plaintiff's speech was protected activity or a terminable offense. Plaintiff warned the Court this would happen. ( July 2, 2025 Tr. at 6:10–21). The record confirms Apple is making it happen.

Apple had notice of Plaintiff's complaint about the improper purpose no later than February 4, 2026 — well before it filed its enforcement papers. That evening, Plaintiff wrote:

"I also asked you to confirm regarding the designations for exhibits.... I'm also outright rejecting the claims that clearly violate federal statutes and/or state constitutional rights

because a procedural stipulation cannot void vested and inalienable rights, and when I objected to Apple's protective order demand, one of the exact things I cited in my opposition was a concern that Apple would try to make confidentiality claims about clearly protected facts/statements/information and in doing so Apple would be trying to use the stipulation as cover to violate the same laws it violated that are the basis of the lawsuit — which I would say is exactly what is occurring." (Feb. 4, 2026 email, 7:49 PM).

Apple did not respond to this on the merits. Two weeks later it filed Dkt. 280 seeking contempt, compelled deletion, and a gag order; followed by three additional motion seeking the same one week later.

Apple's improper purpose was stated directly. During the parties' meet-and-confer process, Apple "noted concerns they wanted the order to expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement about the evidence she received from Apple during discovery." (Dkt. 220 at 10-11, ¶ 15).[3] A protective order that expressly prohibits a party from testifying to federal law enforcement is not a discovery tool — it is a gag order. No legitimate discovery interest justifies suppressing testimony to government agencies. Apple's express demand for that provision confirms the Protective Order was sought for an improper purpose from the outset.

Apple's own filing removes any doubt about the Protective Order's true purpose. Apple acknowledged that the order "is aimed primarily at deposition testimony regarding a document they claim justifies Plaintiff's termination." (Dkt. 220 ¶ 26). Apple does not claim to be protecting trade secrets, proprietary technology, or competitively sensitive business information. By Apple's own description, the Protective Order exists to place the factual basis for Plaintiff's termination beyond adversarial scrutiny. That is not a permissible use of Rule 26(c). A defendant cannot use a confidentiality designation to shield its own affirmative defense from examination while simultaneously invoking that defense in litigation.

The deposition record reveals the precise moment and cause of Apple's blanket designation. On December 16, 2025, while Plaintiff was testifying that Apple's confidentiality policies violated the NLRA and that the NLRB's national settlement required Apple to withdraw those terms, Apple's counsel interrupted, called a break, and announced: "I'm going to designate the next section of this deposition as confidential pursuant to the protective order. Any information that — testimony you give until I say it's not confidential pursuant to the protective order is going to be covered by the protective order." (Dec. 16, 2025 Dep. Tr. at 63:14–64:2; Dkt. 278 pp. 62-73).

---

[3] "Defendant noted concerns they wanted the order to expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement about the evidence she received from Apple during discovery – which the Plaintiff complained was criminal obstruction." Dkt. 220 at 10-11, ¶ 15

Plaintiff immediately objected: "You don't know what I'm going to say and if I say stuff that's clearly not confidential, you just can't proactively say it's confidential." (Id. at 64:3–5; Dkt. 278). Apple's counsel responded: "I have the right to do that under the protective order." (Id. at 64:6–7; Dkt. 278). Apple then swept pages 66 through 305 of the deposition under a fifty-day blanket confidentiality designation, before a single word of that testimony had been spoken. A designation imposed in anticipation of testimony, triggered by a party invoking her federal labor rights, is not a good-faith exercise of the designation process. It is suppression.

Apple's confidentiality designations also violate a binding federal settlement agreement Apple entered four months before the deposition. In April 2025, Apple settled an NLRB enforcement proceeding and was required to notify employees that "Apple Confidential Information does not include wages, hours, and working conditions" and that "employees may communicate about labor disputes." (Dkt. 203). Apple's requests to study Plaintiff's menstruation and ovulation cycles occurred during her employment and directly concerned her working conditions. Her deposition testimony about those requests is therefore expressly excluded from Apple Confidential status under the terms of Apple's own federal settlement. Apple designated that testimony as confidential anyway, and then filed enforcement proceedings to compel compliance. Apple is asking this Court to enforce a designation that Apple's own settlement with the United States government prohibits.

As discussed, Apple's only articulated reason for seeking the Protective Order was that it needed one to produce the Gobbler informed consent form to Plaintiff. (May 2, 2025 M&C Tr., Dkt. 220 Ex. I; July 2, 2025 Tr. at 10:17–11:11). The Court entered the Order on July 7, 2025. (Dkt. 235). Then, Apple would not produce the Gobbler ICF at all. Five weeks later, Plaintiff was forced to file a motion to compel its production. (Dkt. 240). [4]

---

[4] "Plaintiff requested the 2017 Gobbler ICF again on August 26 2024 but Defendant requested another stay and refused to produce documents. Plaintiff requested the 2017 Gobbler ICF again on Oct. 30 2024. Then, on Nov. 29 2024, Defendant objected again, agreed to search for and produce the ICF (Ex. FRP No. 15 at 9), but did not produce it. Plaintiff requested the 2017 Gobbler ICF document again on Jan. 13 2025. Then, on Feb. 12 2025, Defendant responded that it could not find any documents related to Plaintiff's RFP No. 15 regarding the Gobbler ICF. (Ex. RFP Set 1, No. 15 at 8-9)... On May 27 2025, Apple reiterated its position that Apple "served its amended objections and responses on February 12, 2025 and stands on those objections and responses." (Ex. RFP Set 2, No. 64 at 8)... On August 4 2025, Plaintiff started the five-day meet and confer over spoliation concerns regarding the 2017 ICF and asked "did Apple spoliate its own primary evidence?" (Aug. 4 2025). On August 7 2025, Defense Counsel responded "as we explained to you on July 17, Apple has already produced a User Study Informed Consent form specific to Gobbler. See APL-GAELG_00002096."... On August 8 2025, Plaintiff responded: "...The Gobbler ICF document was from 2017, I shared with Orrick copies of the email confirmation and document URL as far back as 2022...This ICF document was repeatedly cited by Apple as material evidence in its defense. I also have evidentiary

On Aug. 11 2025, the Plaintiff complained ""Apple was the party to request unilateral five-day deadlines and the court approved Apple's request. I re-sent you the documentation.. from 2017 with direct URLs to the document. Your comment below still implies you don't know if the Gobbler ICF exists, and now that you're not even looking for it specifically ("other ICFs")…its the primary basis of Apple's defense, yet Apple continues to act like it may not exist and has no knowledge of it. I will thus consider this the end of our extended meet/confer on this topic (five days per Apple's meet/confer rule, but really twenty months regarding this specific document)." Dkt. 240 at 5. She then filed a Motion to Compel on Aug. 12 2025. Id. Apple miraculously found the document on Aug. 18 2025 and produced it without the need for a Protective Order(Dkt. 241).

Apple produced the document on August 15, 2025 — three days before filing its opposition to the compel motion, and only after Plaintiff moved for court intervention. (Dkt. 270 at 1). Apple never produce the document under the Protective Order and it produced it because Plaintiff compelled it. Apple then appeared at the December 16, 2025 deposition and did not use the document at all. The Protective Order's entire stated justification — producing the Gobbler ICF — was never fulfilled under the Order, never required the Order, and was ultimately abandoned.

The record further demonstrates that Apple never used the Protective Order for purpose it stated to Judge Westmore, even when given every opportunity to do so. The Order was entered July 7, 2025. Apple's stated purpose was to produce the Gobbler ICF under it. Five weeks later, Apple still had not done so. On August 12, 2025, Plaintiff was forced to file a Motion to Compel production of the document Apple had described as the cornerstone of its termination defense. (Dkt. 240). Apple produced the 2017 Gobbler ICF on August 15, 2025 — only after Plaintiff moved to compel, and without invoking the Protective Order. (Dkt. 270 at 1). The production was not made under the Order Apple said it needed to make the production and it was made under compulsion. The Plaintiff asked for leave to file a Motion for Sanctions. (Dkt. 245).

The Court that entered the Protective Order — Judge Westmore — is the same Court that resolved Plaintiff's compel motion. In denying sanctions related to Apple's multi-year withholding, Judge Westmore found that because Apple ultimately produced the document, there was "no remaining discovery dispute" (Dkt. 270 at 1–2; aff'd Dkt. 272). The Court did not address the relationship between Apple's withholding

_____

record of the existence of the document. I demand a response as to whether Apple is withholding it or Apple has lost the document. There is only one answer… On August 11 2025, Defense counsel responded "With respect to the Gobbler ICF, we are working to collect, review, and (as appropriate) produce additional documents related to other ICFs" Dkt. 240, Pl.'s Motion to Compel, Aug. 12 2025.

of the Gobbler ICF and its prior representations to that same Court that it needed a Protective Order specifically to produce that document, and continued withholding the document even after the Plaintiff was forced to enter the Protective Order expressly so Apple could produce that document.

What the complete record shows is that Apple obtained the Protective Order by representing it needed one to produce a document it then withheld until compelled, produced without the Order, and abandoned entirely at deposition. The Order's only actual use was silencing Plaintiff's testimony about Apple's requests to conduct invasive bodily studies on her — the same conduct described by Judge Chen as "invasive, oppressive, and humiliating" (Dkt. 73 at 7–8) and pled as the factual predicate of active claims in this lawsuit.

Then, Apple also refused do comply with the FRCP and Protective Order deadlines for making designations, meet and confer, motions to retain designation, signing and serving discovery documents, and deposition conduct – not to mention the variety of other federal and state laws Apple and their counsel violated through all of this. However, ultimately for this motion the issue before the court is Apple's violation of 26(g) and the requirement to sanction Apple for that violation.

# REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

- Declare that Apple's December 16, 2025 blanket confidentiality designation was automatically waived under Protective Order § 6.3 no later than January 6, 2026, and that no valid confidentiality designation exists over any portion of Plaintiff's deposition transcript;

- Declare that Apple's February 4, 2026 unsigned, undated, unserved document is a legal nullity under Fed. R. Civ. P. 26(g)(2) and must be stricken;

- Declare that the Protective Order (Dkt. 235) does not apply to the information at issue in Apple's enforcement motions, as that information is excluded from the Order's scope under § 3;

- Dismiss Apple's motions, letters, and other filings based on these designations on the threshold ground that no valid designation exists to enforce;

- Find that Apple's counsel violated Fed. R. Civ. P. 26(g) by signing and filing enforcement papers certifying the validity of designations that were procedurally void, substantively inapplicable, and made for an improper purpose;

- Impose mandatory sanctions under Fed. R. Civ. P. 26(g)(3) against Apple and/or Apple's counsel, including an award of Plaintiff's reasonable expenses caused by the violation, including:

- o   (a) the cost of obtaining the certified deposition transcript;
- o   (b) the cost of drafting and filing Plaintiff's opposition to Apple's Dkt. 280 letter-motion (Dkt. 284);
- o   (c) the cost of drafting and filing Plaintiff's opposition to Apple's Dkt. 293 and 295 (Dkt. 297);
- o   (d) the cost of preparing and filing this Motion;
- o   (e) the cost of preparing Plaintiff's opposition to Apple's Motion to Enforce Protective Order (Dkt. 294); and
- o   (f) any other expenses this Court finds to have been caused by Apple's Rule 26(g) violation;
- Optionally or as concurrent action with the Plaintiff's pending Opposition filing: order Apple to withdraw all pending enforcement motions (Dkt. 293, 294, 295) premised on the void designations; and
- Grant such other and further relief as the Court deems just and proper.

# CONCLUSION

Apple obtained the Protective Order in this case by representing it needed a document production mechanism but it never used the Order for that purpose. Instead, its sole use has been to designate Plaintiff's testimony about her own body, her coworkers bodies, her lawsuit, and her protected activity as confidential, and to file signed enforcement proceedings demanding contempt, compelled deletion, and a gag order — proceedings expressly connected to the same employment dispute Apple said was the reason it needed the Order.

While seemingly absurd, this is the exact improper purpose and fiasco that Plaintiff predicted and warned the Court about before the Order was entered. The record also contains judicial statements that Apple's planned use of the Protective Order was not permissible. At the July 2, 2025 telephonic conference, after Plaintiff described Apple's plan to show the Gobbler ICF during the deposition and then designate that deposition testimony as confidential, Judge Westmore stated plainly: "That's not — that's not how the protective order is used." (July 2, 2025 Conf. Tr., Dkt. 230, at 7:12–13). Yet, Apple still pursued this line of censorship and obstruction.

At the December 16, 2025 deposition, Apple imposed a blanket designation covering nearly 240 pages of testimony and insisted it was authorized by the Protective Order and Rules to do so. When the Plaintiff objected, Apple claimed the Plaintiff was being uncooperative. Now Apple's enforcement motion

asks this Court to sanction the type of conduct that the Court had already identified as an improper use of the order before the deposition ever took place.

Apple's designation is procedurally void: the blanket designation lapsed under § 6.3's 21-day rule; the February 4 narrowing was unsigned, undated, and unserved in violation of Rule 26(g)(1); Plaintiff called the deficiency to Apple's attention; Apple refused to cure; and the document is a nullity under Rule 26(g)(2). Apple's enforcement papers then certified the validity of that nullity to this Court. That certification violates Rule 26(g) without substantial justification.

Sanctions under Rule 26(g)(3) are mandatory. The violation is documented, deliberate, and repeated. Plaintiff has been prejudiced by months of enforcement proceedings built on a document that was never valid. The Court should declare no valid designation exists, dismiss Apple's enforcement motions on that threshold ground (separate opposition to be filed), and impose sanctions sufficient to compensate Plaintiff for the expenses caused by Apple's conduct.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 6 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBITS

**Exhibit A: Feb. 20 2026 Transcript**
- Concurrently filed attachment 1

**Exhibit B: July 2 2025 Transcript**
- Concurrently filed attachment 2

**Exhibit C: 2/4/2026-2/6/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit D: 2/18/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit E: Dec. 16 2025 Deposition Transcript Excerpt**
- Attached to concurrently filed Declaration

**Exhibit F –Apple' s March 4 Letter**
- Attached to concurrently filed Declaration

**Exhibit G – Pleading & Order Excerpts**
- Attached to concurrently filed Declaration

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR
DECLARATORY RELIEF AND SANCTIONS UNDER FED. R. CIV. P. RULE 26(g)**

The Court, having considered Plaintiff's Motion for Declaratory Relief and Sanctions Under Fed. R. Civ. P. Rule 26(g), the supporting Declaration of Ashley M. Gjovik and exhibits attached thereto, the papers filed in connection with Apple's pending enforcement motions, and the full record in this case, hereby ORDERS as follows:

Apple's December 16, 2025 blanket confidentiality designation was a mass, indiscriminate designation prohibited by Protective Order § 5.1. Plaintiff objected on the record at the deposition on December 16, 2025. Apple failed to serve proper designations or file a motion to retain confidentiality within 21 days of that objection as required by Protective Order § 6.3.

Accordingly, Apple's blanket designation was automatically waived no later than January 6, 2026. No valid confidentiality designation existed over any portion of Plaintiff's deposition transcript after that date. Apple's February 4, 2026 document (as cited in their Letter at Dkt. 280) purporting to narrow its confidentiality designations is a legal nullity under Fed. R. Civ. P. 26(g)(2). The document was unsigned, undated, and not served on Plaintiff. Plaintiff called these deficiencies to Apple's counsel's attention specifically and repeatedly beginning Feb. 4, 2026 through Feb. 18 2026. Apple expressly refused to cure the deficiencies.

Regardless, the Protective Order (Dkt. 235) would not apply to the information at issue in Apple's documents and pending motions. The designated testimony concerns information in the public domain and information known to Plaintiff prior to and independent of discovery and is also part of the complaints and orders in this case going back to Dec. 2023, all of which is expressly excluded from the Order's coverage under Protective Order § 3. Apple's designations of that information are without effect.

Apple's counsel violated Fed. R. Civ. P. 26(g) by signing and filing enforcement papers at Dkt. 280, Dkt. 293, Dkt. 294, and Dkt. 295, each of which certified the validity of designations that were procedurally void under Rule 26(g)(2), substantively inapplicable under Protective Order § 3, and made for an improper purpose under Rule 26(g)(1)(B)(ii).

The Plaintiff repeatedly emailed the Defendant's counsel highlighting the procedural errors, the legal impact, and requesting for them to correct their defects and comply with the court's rules and orders, but the Defendants refused without explanation and would not engage with the Plaintiff's attempts to meet/confer. Thus, for all these reasons, the Defendant's violation was without substantial justification.

Pursuant to Fed. R. Civ. P. 26(g)(3), sanctions are hereby imposed against Apple Inc. and/or its counsel. Sanctions are mandatory upon a finding of violation without substantial justification. Apple Inc. and its counsel shall pay Plaintiff's reasonable expenses caused by the Rule 26(g) violation, including:

a. The cost of obtaining the certified deposition transcript;
b. The cost of obtaining a certified conference call transcript;
c. The cost of preparing and filing Plaintiff's opposition to Dkt. 280 (Dkt. 284);
d. The cost of preparing and filing Plaintiff's omnibus opposition at Dkt. 297;
e. The cost of preparing and filing this Motion and supporting papers;
.

Plaintiff shall submit a declaration itemizing her reasonable expenses within _____ days of the date of this Order. Apple shall have _____ days to file any objection to the amount. The Court will thereafter determine the total sanctions award.

IT IS SO ORDERED.
Dated: _____, 2026

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY M. GJOVIK,** *an individual,*<br><br>Plaintiff,<br><br>vs.<br><br>**APPLE INC.,** *a corporation,*<br><br>Defendant. | **CASE NO. 3:23-CV-04597-EMC**<br><br>**PLAINTIFF'S DECLARATION IN SUPPORT OF HER MOTION FOR DECLARATORY RELIEF & SANCTIONS UNDER 26(G) AGAINST DEFENDANT APPLE INC.** |

# DECLARATION OF ASHLEY M. GJOVIK IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 26(g)

I, Ashley M. Gjovik, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I. INTRODUCTION

1. I am the Plaintiff in this action, appearing in propria persona. I have personal knowledge of all facts stated herein. I make this Declaration in support of my Motion for Declaratory Relief and Sanctions Under Fed. R. Civ. P. Rule 26(g).

## II. THE DECEMBER 16, 2025 DEPOSITION

2. My deposition occurred on December 16, 2025. During the deposition, Apple's counsel Melinda S. Riechert declared a blanket confidentiality designation covering pages 66 through 305 of the transcript — the entire substantive portion — before the testimony in those pages had been given. I objected on the record at the time. A true and correct copy of the relevant deposition transcript pages is attached as Exhibit E.

3. During the deposition Apple stated they did not plan to request expedited production of the deposition transcript. (Exhibit E). Apple stated to me that the certified transcript of my deposition was delivered to Apple on January 7, 2026. Apple sent me nothing about their designations until Feb. 4 2026. A true and correct copy of this email is attached as Exhibit C.

## III. APPLE'S FEBRUARY 4, 2026 UNSIGNED, UNDATED, UNSERVED CHART

4. On February 4, 2026 at 4:22 PM, I emailed Apple's counsel notifying them that all confidentiality designations from the December 16, 2025 deposition had been automatically waived under the Protective Order's 21-day substantiation deadline, and that no valid designation existed. A true and correct copy of this email is attached as Exhibit C.

5. Ten minutes later, at 4:32 PM, Apple's counsel sent an email addressed to the court reporter — not to me — attaching a chart of narrowed confidentiality designations. I was copied on the email "for notice purposes" only. The chart was unsigned. It was undated. It was not addressed to me. No attorney signed the document. No certificate of service was provided. Apple's email expressly stated the document was prepared for the court reporter, not for me. A true and correct copy of this email and attachment is attached as Exhibit C.

6. At 4:39 PM on February 4, 2026, I replied to Apple directly demanding that it serve a signed, dated copy of its designations on me as the opposing party, as required by Fed. R. Civ. P. 26(g)(1) and

Rule 5. I explained that Apple's email was not addressed to me, that I had been included only as an observer, and that the document did not comply with the Protective Order or the Federal Rules. A true and correct copy of this email is attached as Exhibit C.

7. Apple responded at 6:53 PM citing Protective Order § 5.2(b) and directing me to follow Section 6 of the Protective Order if I wished to challenge designations. Apple did not address the signature, date, or service deficiencies I had identified. A true and correct copy is attached as Exhibit C.

8. At 8:27 PM, I again demanded that Apple serve me a signed and dated copy of its designations, noting that the document Apple had sent was by Apple's own admission drafted only for the court reporter and not for me. Apple responded: "We followed the procedures in the protective order and you should too." At 9:08 PM I repeated the demand. A true and correct copy of this correspondence is attached as Exhibit C.

9. On February 6, 2026 at 2:11 PM, I sent Apple a detailed written objection specifically identifying Apple's failures: (1) failure to sign; (2) failure to date; (3) failure to serve on me directly; (4) failure to answer questions about exhibits; (5) sending designations six weeks after the deadline; (6) use of blanket designations; (7) timing the designation immediately after I invoked my NLRA rights; and (8) applying the blanket designation to my protected statements. A true and correct copy is attached as Exhibit C.

10. Apple's response at 2:46 PM was: "Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." Apple has never signed its designations, never dated them, and never served them on me directly. A true and correct copy is attached as Exhibit C.

11. Also on February 6, 2026 at 3:58 PM, Apple confirmed in writing: "All documents used in the deposition were produced either by Apple or by you. None was designated confidential." This confirmed that Apple had not designated a single produced document under the Protective Order — only deposition testimony. A true and correct copy is attached as Exhibit C.

## IV. APPLE'S ESCALATION TO ENFORCEMENT

12. On February 16, 2026, I filed NLRB Charge No. 32-CA-381277. On February 17, 2026, I filed a Notice of Pendency with this Court. (Dkt. 278).

13. On February 18, 2026, Apple emailed me demanding I remove posts from social media and the internet, claiming I was violating the Protective Order. Apple simultaneously emailed court staff

off-docket requesting an emergency conference without filing anything on the docket. A true and
correct copy of Apple's February 18, 2026 email is attached as Exhibit D.

14. On February 19, 2026, Apple filed a five-page letter at Dkt. 280, signed by Melinda S. Riechert,
Esq. (Bar No. 65504), requesting sanctions, contempt, a gag order, compelled deletion of online
posts, and sealing. The letter asserted I was violating the Protective Order by publishing
information Apple had designated as confidential.

15. On February 20, 2026, the Court held a telephonic conference (Dkt. 288).

16. On February 26, 2026, I attempted on multiple occasions to schedule a meet-and-confer with
Apple's counsel as ordered by the Court. Apple's counsel refused in writing seven times, stating
each time there was "nothing further to discuss." That same evening, at approximately 10:00 PM,
Apple filed three motions: Motion to Seal (Dkt. 293), Motion to Enforce Protective Order (Dkt.
294), and Motion to Shorten Time (Dkt. 295). A true and correct copy of Apple's February 26,
2026 refusals to meet and confer is attached as Exhibit D.

17. On February 27, 2026, I filed an omnibus opposition to Apple's motions to seal and for an expedited
schedule (Dkt. 297).

## V. APPLE'S MARCH 4, 2026 LETTER

18. On March 4, 2026, Apple's counsel sent a letter purporting to finally respond to my designation
challenges. The letter de-designated the substantial majority of Apple's prior designations —
including all designations related to exercise studies, eye tracking, grip testing, yoga, swimming,
and general hardware terminology — while retaining only designations involving cervical mucus,
ovulation, menstruation, sexual partners, and cosleepers. Apple provided no Rule 26(c) good
cause for any retained designation. Apple's letter did not address — and has never addressed —
the threshold deficiencies that are the basis of this Motion: the absence of a signature on the
February 4 chart, the absence of a date, the failure to serve, and the automatic waiver of the
blanket designation under § 6.3. A true and correct copy of Apple's March 4, 2026 letter and my
response are attached as Exhibit F.

## VI. EXPENSES INCURRED

19. I have incurred expenses as a direct result of Apple's conduct, including: the cost of obtaining
certified transcripts; the cost of preparing and filing motions and opposition; including this
motion and supporting papers, and delays on other urgent personal and legal deliverables.

20. I am prepared to submit a detailed accounting of these expenses upon request or as directed by the

Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

/s/ **Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 6 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# **EXHIBITS**

**Exhibit A: Feb. 20 2026 Transcript**
- Concurrently filed attachment 1

**Exhibit B: July 2 2025 Transcript**
- Concurrently filed attachment 2

**Exhibit C: 2/4/2026-2/6/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit D: 2/18/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit E: Dec. 16 2025 Deposition Transcript Excerpt**
- Attached to concurrently filed Declaration

**Exhibit F –Apple' s March 4 Letter**
- Attached to concurrently filed Declaration

# EXHIBITS A-B

# FILED AS ATTACHMENTS

# EXHIBIT C

# Re: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com> |
| CC | Mantoan, Kathryn G.<kmantoan@orrick.com>, Riechert, Melinda<mriechert@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Wednesday, February 4th, 2026 at 6:15 PM |

*Attn: new NLRB charge*

Hello,

I'm removing Talty from this thread and I'm going to ask you one more time to meet/confer with me on this, because you have refused to meet/confer on this, you waited well past the 30-day deadline for substantiating your claims, and the document you sent tonight contains content that violates state and federal law -- including at least labor, whistleblower, consumer, privacy, medical, and professional ethics laws.

Certainly you had to expect that I would complain about Apple claiming my own menstruation, cervical mucus, and sexual activity are "Apple Confidential."

You also must have known that I would be further disgusted to see Apple claim that my complaints about Apple invading my, and my coworkers, privacy rights regarding menstruation, cervical mucus, and the people we choose to have sexual intercourse with in our own homes is also "Apple Confidential" so our complaints about privacy violations by Apple, and Apple's underlying conduct, are somehow secret.

You also know that in my lawsuit and some of the administrative proceedings, I cite these exact topics as protected disclosures, concrete harms/injuries, unfair business practices, and/or work conditions -- and I allege Apple's own conduct is unlawful, harmful, and requiring enforcement action including injunctive relief.

You have refused to even attempt to justify these confidentiality claims, disregarded and refused to comply with the exact process you insisted be put in place and where you had promised confidentiality disputes would be addressed, and instead you have now taken action to formalize and permanently record your client's illegal assertions.

Further, this deposition is about my employment at Apple, my concerns about work conditions and the rights of Apple employees generally, and its partially in response to my claims of unlawful labor practices -- which means that Apple's about to get a new NLRB charge filed against it, arising from your document today.

While NLRB has resisted taking action that could interfere with standard court procedures in this case, here Apple has chosen to refuse to engage with standard court procedures, cut off my access to standard procedures, and is literally claiming in an official legal document that Apple thinks it has some sort of vested business interest and secrecy claim to its employees... genital secretions.

So even an NLRB run by Apple's own lawyer will have a hard time dismissing this one -- unless, maybe if you come to the table and actually participate in this process in good faith.

I stress again, you're not even attempting to offer some nonsense, vague justification for these claims -- you're just refusing to engage in the process completely while concurrently threatening to take unjustified actions to further invade my privacy, interfere with my exercise of my privacy rights and right to bodily autonomy, and to implicitly threaten other employees to not engage in the same protected activity that I did including reporting retaliation and harassment by Apple. That sounds illegal!

So let me know if we do a video call or phone call or something where we can actually at least pretend to meet/confer about this -- or if you're just going sticking to your current path of claiming that Apple has intellectual property rights over their worker's vaginas -- because that's where we're at tonight and its extremely disturbing.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**


Sent with [Proton Mail](#) secure email.

On Wednesday, February 4th, 2026 at 4:39 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Apple counsel,
>
> I sent you an email about this a few moments ago (re-adding below) and instead of replying to me, you sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case.
>
> You need to send **me** your claims and then we are to meet/confer about those claims.
>
> Talty Ho is not the Magistrate Judge in our case and will not be deciding the validity of claims.
>
> Once we agree to the claims, then they should be reflected in the transcript -- and you were supposed to do this with me over a month ago.
>
> I ask that  you send me your claims to discuss -- as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this.
>
> —
>
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> Sent with [Proton Mail](#) secure email.
>
> On Wednesday, February 4th, 2026 at 4:32 PM, Mantoan, Kathryn G. <kmantoan@orrick.com> wrote:

Talty CR Production Team:

I write regarding the deposition transcript we received on 1/7/2026 in this matter.

Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text) for which confidentiality is being asserted.

Plaintiff is copied on this email for notice purposes.

Thank you,

Katie

**Kathryn G. Mantoan**

Attorney

Pronouns: she / her / hers

Orrick

San Francisco | Portland

T +1-415-773-5887
M +1-415-218-4865
T +1-503-943-4870
kmantoan@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Wednesday, February 4th, 2026 at 4:22 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I'm adding Apple to this thread.

Apple's counsel,

We need to complete our review of the transcript, submit any corrections, and ensure that we don't then need more corrections based on the other party's corrections.

We also need to finalize the Confidentiality claims and ensure the record accurately represents those claims including for any exhibits. I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you -- and nothing to actually narrow, define, and substantiate any of your Confidentiality claims.

The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims.

Under the Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now.

However, there's probably at least a few statements/terms that are plausibly Confidential, I am still bound by the lawful/legitimate terms within the NDAs I consented to and signed, and I feel it would be proper to allow Apple to still substantiate the things that may actually be Confidential.

That said, you're already overdue and I need a timeline from you as to when you will be done and to ensure it can still be reflected in this deposition transcript.

I also ask if you're submitting any requests for corrections to this records, and if so, to please share with me what you ask for.

I also need to submit my request for corrections so please let me know if you'd like any process for that other then being cc'd or receiving a copy of what I submit to the Talty team.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**3.90 KB**     2 embedded images

## RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

| | |
|---|---|
| From | Riechert, Melinda <mriechert@orrick.com> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com> |
| CC | Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com> |
| Date | Wednesday, February 4th, 2026 at 7:54 PM |

Ashley


Following receipt of the transcript, we significantly reduced the testimony we want to mark as confidential.  Please review it.  If you disagree with the designations please follow the provisions in the protective order.



**Melinda Riechert**


Partner


Orrick


Silicon Valley


T 650/614-7423

M 650 759 1929

mriechert@orrick.com

[EXTERNAL]

Hello,

Thanks for the email actually addressed to me and acknowledging my existence.

I already challenged all designations and I've been waiting for your response. If you remember my complaint about the blanket designation was a complaint about unfair labor practices and then I also said I want justifications under your protective order process for any and call claims to confidentiality.

This matter includes and revolves around claims of confidentiality -- substantively and procedurally --- so just as any claim I have to protected disclosures will be challenged by you at every angle, any claim Apple has about confidentiality regarding things I or my coworkers say/did will also be challenged by me at every angle. This is because this litigation requires us to sort out what is actually protected and what is actually confidential.

I already asked you to justify any/all of your claims of confidentiality regarding statements I made during my own deposition, and I'm still waiting for your justifications.

It appears that maybe 80% of your claims are just code words so that's fairly quick for you to write something that would apply to all of them and then you can spend most of your time detailing the responses about the claims like why Apple thinks it has a business interest and some sort of censorship authority over me talking about my own cervical mucus. You know, its mucus that is in and around my cervix, that my body makes naturally, and that's part of my physiology and the only reason I mentioned it at all was because me and at least one of my Apple coworkers were so upset that Apple was monitoring our cervical mucus, and asking us to do unpaid labor to enable them to harvest our data about our cervical mucus, that we talked to DER SPEIGEL about it. Remember?

So, yes, I did challenge all claims, and I'm waiting for the justifications from Apple but I'm also outright rejecting the claims that clearly violate federal statutes and/or state constitutional rights because a procedural stipulation cannot void vested and inalienable rights, and when I objected to Apple's protective order demand, one of the exact things I cited in my opposition was a concern that Apple would try to make confidentiality claims about clearly protected facts/statements/information and in doing so Apple would be trying to use the stipulation as cover to violate the same laws it violated that are the basis of the lawsuit -- which I would say is exactly what is occurring.

Thanks.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, February 4th, 2026 at 6:53 PM, Riechert, Melinda <[mriechert@orrick.com](#)> wrote:

> Ashley
>
> We designated select testimony "CONFIDENTIAL" at your December 16, 2025 deposition pursuant to Section 5.2(b) of the Protective Order governing this case, and subsequently substantially narrowed those designations following our review of the transcript received on January 7, 2026, within the timeframe specified in the Protective Order.
>
> Please follow Section 6 of the Protective Order – which should not involve the Talty team – should you wish to challenge any of Apple's designations.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
>
> M 650 759 1929
>
> [mriechert@orrick.com](#)

## RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Friday, February 6th, 2026 at 3:10 PM |

Hello counselor,

During the deposition you provided a number of exhibits you had not previously produced (I noted this expressly on the transcript itself for one of them) and you still have not produced those documents outside the deposition, and I don't think sending them via chat during a deposition is production either -- so there is no prior designation for those documents.

In fact, this deposition was the very first time you sent any documents to me designated confidential. So it appears if anything that you changed multiple prior designations from not-confidential to now make claim they are confidential when they were not prior, but your only documentation about this is a stamp on the new record, that wasnt even produced -- just sent via chat, and nothing is noted in your confidentiality claim document.

As noted prior, the Protective Order said that confidentiality designations were due at the deposition itself -- so you should have made your designations for any actual confidential claim during the deposition itself -- not as a blanket claim. You should have done the per item targeted claims at that time -- your delay waiting for the transcript was only because you violated the order's instructions during the deposition.

Also, as I said, I will follow the Orders process for challenging when you actually serve me your designations, in a doc that's signed and dated, with complete information for your claims (like including any exhibits you're making claims about).

Your response still refuses to actually directly send me a document with your claims thats signed and dated -- the only thing you sent was to a third party and you expressly said it wasn't sent to me -- still.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, February 6th, 2026 at 2:46 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,

Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do.

The Protective Order requires Apple to designate portions of the transcript as confidential on the record. *See* Dkt. No. 235, ¶ 5.2(b). Apple did so.

During the deposition I also told you that Apple would be willing to review the transcript upon receipt to narrow its confidentiality designations and you agreed to that process and thanked me. *See* Dep. Tr. 141:17-142:8; *see also* 343:14-344:8 (you confirm the parties will work through the confidentiality issues after receipt of the transcript). A party has thirty days after receiving the transcript to make or narrow confidentiality designations because the transcript is not final until the witness's time for correcting the transcript has expired. Here, Apple did not receive the transcript until January 7, 2026. Before then, it was impossible to narrow the confidentiality designations because Apple did not have a copy of the transcript to review. Per our agreement on the record, Apple reviewed the transcript and substantially narrowed its designations from the portion designated confidential on the record. Apple provided those designations to the court reporter and you on February 4, 2026, two days before your deadline to make corrections to the transcript. Nothing else is required from Apple.

As to exhibits marked at the deposition, they retain the same designation as when they were produced. We have not modified any prior designations.

If you want to challenge the remaining confidential designations that Apple has made, please follow the process set forth in paragraph 6.2 of the Protective Order by identifying the specific designations you are challenging and "explain[ing] the basis for [your] belief that the confidentiality designation was not proper." Apple will then review your challenge(s) and respond.

**Melinda Riechert**

Partner

Orrick

Silicon Valley 

T 650/614-7423

M 650 759 1929

mriechert@orrick.com





[EXTERNAL]

You haven't responded so just food for thought here but you could make your client sign it. I assume their legal HR team are the ones behind these truly cutting edge and innovative designations anyways so maybe make them be the ones to put their names on it. But someone does need to sign it.

If I don't hear back the objections will treat all exhibits marked as confidential as Apple saying the entire document is confidential even if it includes protected disclosures, protected activity, or evidence of misconduct by your client and I will respond accordingly.

I will also have specific objections to Apple & its counsel's outright refusal to 1) sign or 2) date the document or 3) serve it to me directly or 4) answer my questions about exhibits and 5) send it six weeks after the deadline following the 6) use of blanket designations  w/ duration based blank check confidentiality claims 7) immediately following me exercising my labor rights under the NLRA and 8) them applying that blanket designation to my protected statements and 9) letting it marinate as an illegal gag order for six weeks before finally narrowing it at all.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 9:08 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> The order said you had to finalize your designations by the end of the depo and you did not do that -- instead you waited six weeks. You also still haven't served me anything signed/dated with your designations so you're not done here.
>
> I'm asking you again to send me a signed/dated version of your designations since you're sending them after the fact, and already said it wasnt even a document for me originally.
>
> Once you do that, I will send you a detailed challenge, as I noted below already.
>
> I also asked you to confirm regarding the designations for exhibits and you didn't respond to my question so please respond to my question, either in your signed/dated notice you're about to send me or at least in email.
>
> Thanks.
>
> —
>
> **Ashley M. Gjøvik**
>
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 4th, 2026 at 8:33 PM, Riechert, Melinda <mriechert@orrick.com> wrote:
>
>> Ashley

We followed the procedures in the protective order and you should too.

**Melinda Riechert**

Partner

<u>Orrick</u>

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

.

[EXTERNAL]

Hello,

I do appreciate you revoking the hours-long blanket claims of confidentiality, so thank you for that; however you were legally required to do that anyways and it was due like six weeks ago, hence my inherent frustration about this generally right now.

I'm going to translate your emails to mean that the document you sent to Talty is now being repurposed as your service to me of your confidentiality claims -- however the only document you've sent is not signed or

dated; nor does it provide any explanation, standard, or reasoning for the designations claimed.

If Apple's not going to provide any additional information about its reason for designations beyond whats in the document you admittedly drafted only for the contractor and not even for me, and you want to repurpose that document for party meet/confer, then I'd ask you actually serve (email) me a signed and dated copy with some lawyer actually signing it with their name.

If you had done this during the depo as the protective order required, then the depo transcript would have Melinda named as the person making the designations-- but here, there's no names, its a mystery -- which is a problem for sanctions or professional ethics complaints. (If intentional on your part, then yes, I would also be concerned about it if i were you too, since you're claiming some sort of IP rights arising from a female employee's menstruation and vaginal discharge, which is, you know, very very bad).

Once you actually serve me a signed document as your official claim of designations then yes, I can respond with formal, detailed challenges to the already challenged claims. If you can provide any further detail about the basis for your claims, ask Ive asked, it may reduce what I have to challenge, but at the very least the document needs a name, sig, and date

Please also confirm if that document includes your confidentiality claims on the documents you used as exhibits or if you are continuing to claim that all of the exhibits currently marked confidential and being designated as entirely confidentiality with no narrowing of the designated content at issue.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](Proton Mail) secure email.

On Wednesday, February 4th, 2026 at 6:53 PM, Riechert, Melinda <[mriechert@orrick.com](mriechert@orrick.com)> wrote:

Ashley

We designated select testimony "CONFIDENTIAL" at your December 16, 2025 deposition pursuant to Section 5.2(b) of the Protective Order governing this case, and subsequently substantially narrowed those designations following our review of the transcript received on January 7, 2026, within the timeframe specified in the Protective Order.

Please follow Section 6 of the Protective Order – which should not involve the Talty team – should you wish to challenge any of Apple's designations.

**Melinda Riechert**

Partner

Orrick

Silicon Valley 

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

.

[EXTERNAL]

Apple counsel,

I sent you an email about this a few moments ago (re-adding below) and instead of replying to me, you sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case.

You need to send **me** your claims and then we are to meet/confer about those claims.

Talty Ho is not the Magistrate Judge in our case and will not be deciding the validity of claims.

Once we agree to the claims, then they should be reflected in the transcript -- and you were supposed to do this with me over a month ago.

I ask that  you send me your claims to discuss -- as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 4:32 PM, Mantoan, Kathryn G. <kmantoan@orrick.com> wrote:

> Talty CR Production Team:

> I write regarding the deposition transcript we received on 1/7/2026 in this matter.

> Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text)

for which confidentiality is being asserted.

Plaintiff is copied on this email for notice purposes.

Thank you,

Katie

**Kathryn G. Mantoan**

Attorney

Pronouns: she / her / hers

Orrick

San Francisco | Portland

T +1-415-773-5887
M +1-415-218-4865
T +1-503-943-4870
kmantoan@orrick.com

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Wednesday, February 4th, 2026 at 4:22 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> I'm adding Apple to this thread.
>
> Apple's counsel,
>
> We need to complete our review of the transcript, submit any corrections, and ensure that we don't then need more corrections based on the other party's corrections.
>
> We also need to finalize the Confidentiality claims and ensure the record accurately represents those claims including for any exhibits. I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you -- and nothing to actually narrow, define, and substantiate any of your Confidentiality claims.
>
> The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims.
>
> Under the Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now.
>
> However, there's probably at least a few statements/terms that are plausibly Confidential, I am still bound by the lawful/legitimate terms within the NDAs I consented to and signed, and I feel it would be proper to allow Apple to still substantiate the things that may actually be Confidential.

That said, you're already overdue and I need a timeline from you as to when you will be done and to ensure it can still be reflected in this deposition transcript.

I also ask if you're submitting any requests for corrections to this records, and if so, to please share with me what you ask for.

I also need to submit my request for corrections so please let me know if you'd like any process for that other then being cc'd or receiving a copy of what I submit to the Talty team.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**From:** Ashley M. Gjøvik <[ashleymgjovik@protonmail.com](mailto:ashleymgjovik@protonmail.com)>
**Sent:** Wednesday, February 4, 2026 4:40 PM
**To:** Mantoan, Kathryn G. <[kmantoan@orrick.com](mailto:kmantoan@orrick.com)>
**Cc:** [production@taltys.com](mailto:production@taltys.com); Riechert, Melinda <[mriechert@orrick.com](mailto:mriechert@orrick.com)>; Perry, Jessica R. <[jperry@orrick.com](mailto:jperry@orrick.com)>; Horton, Nicholas J. <[nhorton@orrick.com](mailto:nhorton@orrick.com)>; Booms, Ryan <[rbooms@orrick.com](mailto:rbooms@orrick.com)>; Ashley M. Gjovik (Legal Matters) <[legal@ashleygjovik.com](mailto:legal@ashleygjovik.com)>
**Subject:** Re: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at [https://www.orrick.com/Privacy-Policy](https://www.orrick.com/Privacy-Policy) to learn about how we use this information.

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Wednesday, February 4, 2026 8:28 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Friday, February 6, 2026 12:11 PM
**To:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**3.99 KB**      3 embedded images

# EXHIBIT D

## Re: URGENT

| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
|------|----------------------------------------------|
| To | Riechert, Melinda <mriechert@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Weaver, Nicholas <nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com> |
| Date | Wednesday, February 18th, 2026 at 1:07 PM |

Hello,

I'm also attaching my "objections" to your excessive confidentiality designations. Since you refused to send designations in a document I could easily respond to (in addition to refusing to date it, sign it, or send it to me directly) I converted it to an excel and put my responds there.

I also object that you never made designations if you never actually put them on the record or served them to me, or signed them, or dated them. Similarly there's no basis for a blanket gag order under that protective order which expressly prohibits exactly that, so Apple's actually never made any "designations" but instead has only issued unlawful work rules, threats, and coercive statements -- in addition to violating many other laws and policies and my constitutional rights.

The short story is none of your designations, even if they are designations, which they are not, are confidential and most of them are unlawful restrictions on speech, in addition to your 7-week long blanket prohibition on hours of speech which was especially egregious and illegal.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 12:26 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello agents of the Employer and Charged Party, Apple Inc,
>
> Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.
>
> You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.
>
> Thanks,
> -Ashley
>
> —
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:
>
>> Ashley

It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

.

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**932.75 KB**   2 files attached   3 embedded images

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations.xlsx  15.29 KB

CHG.32-CA-381277.Initial Charge.pdf  913.46 KB

# EXHIBIT E

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

 1   violations, the first bullet?

 2       Q.  Correct.

 3       A.  Can I read it just so it's on the record of

 4   what you're asking?

 5       Q.  Absolutely.

 6       A.  So the policy violations -- the policy says,

 7   "Violating confidential, proprietary, and trade

 8   secret information obligations (including those

 9   stated in Apple's intellectual property agreement),"

10   and that is under "Conduct warranting immediate

11   termination.  Conduct that may warrant immediate

12   termination of employment includes, but is not

13   limited to," and then the bullet you just said.

14           So I can confirm that the document that

15   we're reviewing, that is the text as I just read, is

16   on that document and that I had a copy of that

17   document.

18       Q.  And you understood it?

19       A.  No.  I just said I don't understand this

20   document.

21       Q.  Okay.  Didn't understand that part of the

22   document?

23       A.  I don't understand most of the document.  I

24   was still going of listing all the words I don't

25   understand.



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1    Q.  Okay.  I'm asking you now whether you

2    understood that conduct warranting immediate

3    termination could include violating confidential,

4    proprietary, and trade secret information

5    obligations including those stated in Apple's

6    intellectual property agreement?

7    A.  Asked and answered.  I already said I don't

8    understand that.

9    Q.  You did not understand that that was a

10   policy violation?

11   A.  Well, I understand that it's on the policy

12   as written, as stated, but I don't understand what

13   it means.

14   Q.  You don't understand what it means to

15   violate your confidential, proprietary, and trade

16   secret information obligations?  Is that what you're

17   saying?

18   A.  Asked and answered.  I already said I don't.

19   And the objections of NLRB already said that was

20   unlawful that Apple would --

21        (Reporter admonition.)

22        THE WITNESS:  NLRB said those terms were

23   unlawful and that Apple could no longer enforce them

24   and had to withdraw them from their policies.

25        MS. RIECHERT:  I'm going to designate the



 1  next section of this deposition as confidential

 2  pursuant to the protective order.

 3  BY MS. RIECHERT:

 4      Q.  Any information that -- testimony you give

 5  until I say it's not confidential pursuant to the

 6  protective order is going to be covered by the

 7  protective order.  Do you understand that?

 8      A.  No.  How can you claim that my statements

 9  are confidential if what I said is not confidential?

10      Q.  Because under the protective order, I have

11  the right to designate deposition testimony as

12  confidential.  If you disagree with that, then you

13  have the right, under the protective order, to

14  follow the procedures in the protective order.

15      A.  Yeah, but I believe you -- sorry.  Go ahead.

16      Q.  But meanwhile, I'm designating this as

17  confidential pursuant to the protective order.  And

18  if you disagree, then follow the procedures in the

19  protective order.

20      A.  Yes.  But, Melinda, I don't think you can

21  just say -- you don't know what I'm going to say and

22  if I say stuff that's clearly not confidential, you

23  just can't proactively say it's confidential.

24      Q.  I have the right to do that under the

25  protective order, and you have the right to



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

 1   challenge it if you disagree.

 2       A.  Well, I'm filing objections immediately then

 3   that you can't just proactively say that something

 4   is confidential when I'm actively talking about the

 5   NLRA saying that Apple is misusing confidentiality

 6   terms and the stuff to hide protected statements and

 7   then you're saying whatever I say next is under a

 8   confidentiality order without knowing what I'm going

 9   to say.  That's not right, Melinda.  I object.

10           MS. RIECHERT:  All right.  So why don't we

11   take a break before I ask my question?

12           If the videographer would bring in the

13   tab Number 2-04 into the chat.

14           We're going to take a five-minute break, and

15   I am designating the following information as

16   confidential pursuant to the protective order.

17           Let's take a five-minute break.

18           THE WITNESS:  Okay.

19           THE VIDEOGRAPHER:  This marks the end of

20   Media Number 1.  We are now going off the record.

21   The time is 10:19 a.m.

22           (Off the record:  10:19 a.m. to 10:29 a.m.)

23           THE VIDEOGRAPHER:  We are now on the record.

24   The time is 10:29 Pacific Standard Time.  This marks

25   the beginning of Media Number 2 in the deposition of



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1    Ashley Gjovik on December 16, 2025.

2            Please continue.

3            (DEPOSITION EXHIBIT 7 WAS MARKED.)

4            MS. RIECHERT:  The following portion of the

5    deposition is designated as confidential pursuant to

6    the protective order.

7            (THE FOLLOWING PAGES, 66 TO 305, WERE

8    DESIGNATED CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER.)

9                     -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**TALTY COURT REPORTERS, INC.**                              **65**
**408.244.1900 - www.taltys.com**

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1   giving information that I'm not asking.  So

2   please --

3       A.  We're at seven hours.  We're out of time

4   actually.

5       Q.  Yes.  Do you want to continue --

6       A.  I'm very tired.  It's been a very long

7   deposition.

8       Q.  Okay.  So we can meet and confer after this.

9   I'm definitely not done.  I believe that you have

10  not been responsive to my questions and that's added

11  additional time.  But I'm happy to meet and confer

12  with you afterwards about providing additional time

13  for the deposition.  And if not, we can take it to

14  the magistrate.

15      A.  Or you can send interrogatories for the

16  rest, which is a better way for me to communicate

17  anyways.

18          MS. RIECHERT:  Okay.  So we're going to

19  suspend the deposition at that time -- at this time,

20  and we will resume a meet-and-confer discussion

21  afterwards about getting additional time.

22          THE WITNESS:  I'm not agreeing to additional

23  time.  We're not resuming.  We're ending now.  We

24  can talk later about your request and discuss that.

25          Can you -- what's the process for me



1   requesting a copy of the transcript of the

2   deposition?

3          THE REPORTER:  Yes.  I was going to ask you,

4   would you like to order a copy of the transcript --

5   pay for an order?

6          MS. RIECHERT:  You have to pay for it.

7          THE REPORTER:  Yes, you have to pay for it.

8          THE WITNESS:  I need a copy, yes.

9          MS. RIECHERT:  So if you pay -- you have to

10  pay for it.  If you want an expedited copy, you have

11  to pay a lot more.  So it's generally -- what? -- a

12  couple of thousand dollars for the transcript and

13  then probably twice that if you want it expedited.

14         THE WITNESS:  For a lawsuit like this I'm

15  required to have a copy of my own transcript, so I

16  will be purchasing it.  I probably cannot afford it

17  expedited.  We're going to have to work through the

18  confidentiality issues.  If that's a risk to you --

19  of delaying for me to get the normal one, Melinda --

20         (Reporter admonition.)

21         THE WITNESS:  Oh, sorry.  We're still on the

22  record?

23         THE REPORTER:  Yes, we're still on the

24  record.

25         THE WITNESS:  Oh, if it's a risk for her to



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

 1  delay if she wants to work through the

 2  confidentiality terms she talked about that we need

 3  to collaborate on, then I'm going to ask her to

 4  share a copy of hers if she gets it earlier if I am

 5  waiting longer.  If me not having mine sooner would

 6  somehow delay that process.

 7        MS. RIECHERT:  I don't need an expedited

 8  copy.  Just regular, please.

 9        THE REPORTER:  Thank you.

10        THE VIDEOGRAPHER:  I'll take us off.

11        This concludes today's video record of

12  deposition of Ashley Gjovik.  The original media of

13  this deposition will remain in the custody of Talty

14  Court Reporters, Inc., located in San Jose,

15  California.

16        We are now going off the record.  The time

17  is 5:53 p.m.

18          (End time:  5:53 p.m.)

19

20

21

22

23

24

25



# EXHIBIT F



**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

+1 650 614 7400

**orrick.com**

March 4, 2026

***Via Email***

Ashley Gjovik
ashleymgjovik@protonmail.com

**Melinda Riechert**

**E** mriechert@orrick.com
**D** +1 650 614 7423
**F** +1 650 614 7401

Re:     ***Ashley Gjovik v. Apple Inc.***
        **N.D. Cal. Case No. 23-cv-4597-EMC**
        **Meet and Confer regarding Apple's Confidentiality Designations**

Dear Ashley:

This letter responds to your challenges to Apple's confidentiality designations related to your December 16, 2025 deposition, which you provided in an Excel spreadsheet on February 18, 2026.[1]

For many of Apple's designations, you indicated you do not believe the designated material is Confidential but that you do not object to Apple redacting this information from the public record. Apple does not understand you to have made a challenge to any of these designations within the meaning of the Protective Order.

We address below the designations you have challenged.

1.  **Internal Code Names**

While you have generally not objected to Apple redacting testimony related to code names, there are a few designations that appear to be in issue.

First, you have asked Apple to de-designate certain words contained within the codenames because you contend that, on their own, those words are not Confidential. While Apple disagrees with your premise, in the spirit of cooperation, Apple will agree to de-designate the following words contained in the parentheses:

        **Willing to de-designate**: 197:15 ("HWE"), 200:24 ("Hardware"), 203:4 ("A")

Second, you contend that the following designations of a particular letter are not Confidential:

---

[1] Although neither your February 18, 2026 email nor the spreadsheet you attached recited that any challenges to confidentiality were being made in accordance with Paragraph 6.2 of the Protective Order (as that paragraph requires; *see* Dkt. No. 235 ¶ 6.2), we are treating that email and attachment from you as having been intended to initiate a meet and confer under that paragraph.

Ashley Gjovik
March 4, 2026
Page 2



**Retains Confidential designation**: 197:18, 197:21

Apple will not de-designate this challenged testimony. In context, this testimony relates to the meaning of the letter within Apple's internal code names for product development and should be treated as Confidential consistent with the other code name designations. Therefore, Apple continues to believe these designations are appropriate and should be treated consistent with the other designations related to Apple's code.

2. <u>**Industry Terminology**</u>

You contend the certain designations refer to standard industry terms that should not be redacted. While Apple disagrees with your position, in the spirit of cooperation, Apple will agree to de-designate this material.

**Willing to de-designate**: 138:3, 138:4, 138:5, 138:7, 209:4, 209:6, i25 (371)

3. <u>**Apple's Internal Studies**</u>

You contend the following designations relating to your testimony purporting to characterize certain internal Apple studies cannot be considered Confidential based on a variety of objections, including because some of this testimony relates to what you claim is protected concerted activity under the National Labor Relations Act ("NLRA"):

> 161:6-9, 161:21-22, 162:6-8, 163:16, 164:10-11, 164:14, 164:15-16, 164:25, 165:13-24, 166:1-2, 166:4, 166:14, 167:17, 168:17, 168:19, 169:1, 169:10, 169:23, 169:25, 170:9, 176:16, 205:15-16, 205:17, 208:1, 208:17-18, 209:13-14, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i12 (358), i20 (366), i22 (368), i28 (374), i31 (377) ("swimming"), i34 (380), i35 (381) ("yoga")

Apple disagrees with your contention as well as your suggestion that the NLRA dictates whether and to what extent the federal court overseeing your wrongful termination suit against Apple can properly order that discovery material from that case be treated as Confidential. As an initial matter, the NLRB has already determined that your revealing "confidential product development information about [an Apple] study" is not "protected activity" under the NLRA. Sept. 25, 2025 Order Withdrawing Certain Allegations of Consolidated Complaint, Order Partially Dismissing Charge 32-CA-282142, Order Dismissing Charge 32-CA-283161 and Notice of Right of Appeal (Sept. 25, 2025) at 2. And in any event, Apple disputes any suggestion that the NLRA somehow overrides or voids basic procedural rules that govern litigation in federal court, including those related to protective orders. *See, e.g., Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 499, 515 (2018); Fed. R. Civ. P. 26(c) (protective order may appropriately "requir[e] that … confidential research, development, or commercial information not be revealed or be revealed only in a specified way").

You also contend that this testimony is protected under "a variety of laws and public policy." This vague catch-all is not a meaningful attempt to meet and confer. Assuming the "laws and public policy"

Ashley Gjovik
March 4, 2026
Page 3



you are referencing relate to what you assert are your privacy rights, you are again incorrect. Apple did not ask any questions about your personal physiology or any private matter. Nor did your responses relate to your personal physiology or any other private matter. Instead, the testimony related to internal Apple studies, the majority of which you chose not to participate in. Whether you disagree with Apple's decision to conduct those studies, or how Apple conducted them, is irrelevant to determining about whether the subject matter and processes of those studies are properly designated as Confidential under the Protective Order.

Some of these designations you object to on the basis that they are public brand names; however, that ignores that the context of the discussion relates to the content, methods, or processes of internal Apple product-related studies.

However, in the spirit of cooperation Apple is willing to compromise and agree to de-designate certain of the citations referenced above—namely, all those that are not included in the following list:

> **Retains Confidential designation**: 164:10-11, 164:14, 164:15-16, 164:25, 165:13-23 (de-designating only ", and I found that very disturbing."), 166:1-2, 166:4, 166:14, 167:17, 168:19, 169:1, 169:10, 169:25, 170:9, 176:16, 205:17, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i20 (366), i22 (368), i28 (374)

Apple will not de-designate these challenged portions, which reflect your characterization of the content, methods, and processes of certain internal Apple product-related studies.

## II.    <u>CONCLUSION</u>

Please advise if you agree to the narrowed list of designations set forth in this letter, or if you continue to challenge any or all of Apple's designations (and, if so, which ones).

To be clear, Apple's designations do not prohibit you from relying upon this testimony in support of your case. Indeed, Apple's confidentiality designations and the Protective Order entered by the Court simply require certain procedural safeguards to be utilized (*e.g.*, a motion to seal) to ensure that Confidential information is not publicly disclosed.

Please let us know if you agree with the above compromises. We look forward to your response and hope to resolve these issues without the need for further motion practice. In the interim, the Protective Order requires you to treat the material Apple has designated Confidential as such, until such time as the Court rules otherwise. You must comply with the Court's Order while this process plays out.

Very truly yours,

*Melinda Riechert*

Melinda Riechert

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# PLAINTIFF'S RESPONSE TO APPLE'S MARCH 4 2026 LETTER

*Ashley Gjovik v. Apple Inc.,* N.D. Cal. Case No. 23-cv-4597-EMC

# I. INTRODUCTION

1.      On Dec. 16 2025, during the Defendant Apple's deposition of the Plaintiff, Apple declared a blanket "confidentiality" designation that covered hours of the deposition, which directly violated the Protective Order's terms prohibiting mass designations and requiring all designations be targeted to specific information (not indiscriminate) and be made prior to the end of a deposition. The Plaintiff objected to Apple and demanded Apple narrow its designation. Apple then took fifty days to narrow its designations. Even then, Apple has refused to serve, date, or sign its destinations. Apple also failed to justify any of its designations other than stamping the Plaintiff's own speech as "confidential."

2.      The Plaintiff sent Apple objections on Feb. 4 2026 regarding Apple's designations and specific to her complaints about Apple invading employee privacy regarding sexual activity, reproductive anatomy, and genital secretions – warning Apple she was planning on filing a new NLRB charge if they did not drop those designations. Apple still has not addressed or responded to the Feb. 4 2026 email.

3.      On March 4 2026, Apple sent a letter that purports to respond to all of Plaintiff's challenges to Apple's confidentiality designations; however, this letter does not respond to the Plaintiff's objections during the deposition on Dec. 16 2025; detailed meet/confer emails starting Feb. 4 2026; or in the legal filings/charges. Instead, Apple acts as if the Plaintiff made no complaints at all until a Feb. 18 2026 Excel spreadsheet, responds only to some of the text in parts of the spreadsheet, and ignores all other communications as if they were waived.

4.      The Plaintiff's Excel spreadsheet was converted from Apple's unsigned, undated, unserved PDF that listed designations in a table format but frequently grouped multiple terms into each line. Even then the table has over 100 lines of designation (~160 if combined terms are separated)– and is exclusively the Plaintiff's own speech. In the March 4 2026 letter, Apple de-designated around 23 lines and failed to respond at all to 53 lines. Apple retained ~29 lines but failed to provide any legal justification for its designations – instead indicating Apple's own policies and practices are an independent justification.

5.      The deposition was Dec. 16 2025 and as of March 5. 2026 Apple has failed to respond to all threshold objections; still refuses to serve, date, or sign its designations; has failed to respond to objections for more than half of its supposedly pending designations; and by its own de-designation and waiver, admitted that 99% of its initial designation from Dec. 16 2025 was frivolous (yet kept it in place for fifty days), and then at least ~70% of its "narrowed" designations from Feb. 4 2026 were also improper (yet

kept them in place for a month).

6.     As of today, Apple still refuses to offer any Rule 26(c) good cause for any designation it retains. Instead, Apple mischaracterizes Plaintiff's objections, refuses to respond to the Plaintiff's objections, and spends a significant portion of its long-overdue, evasive, three-page letter arguing it was justified in firing the Plaintiff in 2021 and complaining about the Plaintiff's NLRB charges against Apple.

7.     The designations Apple still claims it retains are exclusively about female genitalia or sexual activity (i.e., cervical mucus, ovulation, menstruation, sexual partners, and cosleepers). Apple's March 4 2026 Letter de-designated speech about all other user studies (including: yoga,  swimming, eye tracking, grip testing, spinning in chairs, and exercise monitoring). Apple retained "measuring female employees' cervical mucus," "ovulation," "registering of people you're having sexual relations with outside of work," "who I was sleeping with and have them sign NDAs."

8.     Other than Apple's perplexing retention of the designation claim that the letter "N" is confidential, the only variable between what Apple de-designated and what Apple retained is whether the content involves female reproductive biology and sexual activity. Apple makes these outrageous claims while Apple concurrently violated nearly every procedural requirement of the Protective Order.

# II. APPLE HAS NO VALID DESIGNATIONS

9.     Apple's procedural failures are each independently fatal and create a result where Apple has never actually made any valid designations. Apple's failures include:

- Apple never signed its designations as required by FRCP 26(g)(1). Plaintiff objected February 4, 2026, and repeatedly thereafter. Apple still has not corrected this and has offered no explanation why it believes it does not have to comply with FRCP 26(g)(1). Apple also never dated its designations & has not corrected this.

- Apple also never served its designations on Plaintiff — sent to the court reporter "for notice purposes" instead. Apple has not corrected this and its only explanation indicated it was sending the designations at the end of the Plaintiff's thirty-day response period for the deposition transcript draft, assumably in order to then claim the Plaintiff cannot correct/remove their designations from that record. Apple never sent the designations to the Plaintiff, never intended to meet/confer, and only intended to force its unlawful and admittedly improper designations into a formal court record in such a way as to prevent the Plaintiff from opposition or trying to stop them.

- Apple imposed a blanket designation over the entire multi-hour deposition on December 16, 2025, designating every word spoken as "Confidential" rather than identifying specific content as PO § 5.2(b) requires. This violated PO § 5.1's prohibition on "*[m]ass, indiscriminate, or routinized designations*." Apple's own subsequent narrowing (from every word over multiple hours, to 29 brief retained citations) admits the blanket designation was indiscriminate. PO § 5.1 provides that such designations "*expose the Designating Party to sanctions*."

- Plaintiff challenged the blanket designation on the record at the deposition and in subsequent communications. The transcript was delivered January 7, 2026. Under PO § 6.3, and Apple had 21 days to file a motion to retain its blanket confidentiality but Apple filed nothing. Thus, the blanket designations automatically waived on January 28, 2026. Apple then sent narrowed designations on February 4 (unsigned, undated, served on the court reporter not the Plaintiff) — which Plaintiff immediately challenged. Those designations, if valid at all, auto-waived on February 25, 2026. Yet, Apple filed its Motion to Enforce (Dkt. 294) on February 26 (one day after the second auto-waiver).

Apple's March 4 letter now arrives five weeks after the first auto-waiver and one week after the second, de-designating all prior designations other than the ones currently underlying its pending motions and the Plaintiff's NLRB charge, as well as the letter "N."

- Apple has never complied with PO § 6.2's voice-to-voice dialogue requirement despite repeated requests. Apple also delayed, obstructed, and still refused to meet/confer about these issues – in direct violation of this court's February 20 order.
- Apple has had months to correct any of these. Apple chose not to.

Despite the above, Plaintiff has repeatedly offered good-faith engagement on anything colorably proprietary — in filings, emails, and at the February 20 conference. Apple's response was to withdraw most designations and retain only those Plaintiff expressly identified as unlawful (and the letter N).

# IV. APPLE FAILS TO RESPOND TO & MISCHARACTERIZES PLAINTIFF'S OBJECTIONS

10.    Apple's letter fails to respond to ~55 designations including internal codenames, general hardware terminology, and non-sexual study descriptions (telephony, spinning, eye tracking, grip testing). Apple did not de-designate these but also did not retain them and Apple provided no response at all.

11.    Apple then asks Plaintiff to "*advise if you agree to the narrowed list of designations set forth in this letter, or if you continue to challenge any or all of Apple's designations (and, if so, which ones).*" Apple converts its own failure to respond into a burden on Plaintiff to re-challenge designations Apple was required to address. Under PO § 6.2, upon receiving a challenge, Apple must "*explain the basis for the chosen designation.*" Apple's failure to respond to over half the challenged designations is a failure to meet that obligation. Apple cannot manufacture consent through its own default.

12.    Apple responds only to the Excel spreadsheet. Plaintiff's objections are documented across emails, motions, complaints, filings, the deposition transcript— all received by Apple and many cited by Apple in its own letters and emails. Yet, Apple ignores the Plaintiff's arguments in these filings while simultaneously citing them (including the NLRB charge and cover letter) as a Protective Order violation — meaning Apple has read it and knows the objections in it yet is still refusing to engage substantive with the objections and still refusing to provide a justification for its designation.

13.    Apple's letter creates its own categories — "Code Names," "Industry Terminology," "Internal Studies" — and assigns Plaintiff's objections to them. Plaintiff did not make those categories. Apple collapsed the Plaintiff's objections into Apple-defined buckets, responded to arguments Plaintiff did not make, and refused to respond to arguments the Plaintiff did make. For example, Apple treats all study-related designations as a single "Internal Studies" category and responds as if the only objection was the NLRA — ignoring that Plaintiff separately raised objections regarding public information (the studies are publicly known) and public brand names (Beddit).

14.    The PO expressly does not apply to "*any information that is in the public domain*" or "*known to the Receiving Party prior to the disclosure*." PO § 3. The PO also places the burden on Apple. PO § 6.2-6.3 requires Apple to "*explain the basis for the chosen designation.*" The basis must arise from "applicable legal principles" beyond the designation itself, per PO § 1. Apple must independently substantiate each designation. Apple has not done this for any of its designations – even the ones it claims to retain now..

# V. APPLE'S LETTER ADMITS PRIOR VIOLATIONS & CREATES NEW ONES

15. Apple narrowed from blanket designation of most of the deposition, to ~160 designations, then down to approximately 29 retained citations. This drastic narrowing admits Apple's designations have been improper and indiscriminate under PO § 5.1. Apple's remaining designations and the limited justification for those designations also admits Apple had an improper purpose from the start and all of this conduct was for the purpose of concealing, obstructing, and silencing the Plaintiff's complaints about work conditions, Apple's unfair business practices, and Apple's unethical exploitation of employee personal data for commercial purposes – something increasingly regulated by California.

16. Apple's March 4 2026 treatment of 165:13-24 is particularly telling. Apple de-designated only: "*and I found that very disturbing*" but Apple retained everything else. Once you remove the de-designated expression of distress and the other content Apple conceded is not confidential elsewhere (sensors, vitals, monitoring), what Apple is actually retaining is: "*Apple asked for NDAs of any cosleepers. So if you were to ever have anyone over like if you were dating and wanted to have sex with them or they're going to sleep in your bed, they had to get registered with Apple and sign an NDA for the product if they were to be there.*" Apple retained the employee's disclosure about what she believes to be unethical and unlawful conduct, and concealed that the nature of the issue is private sexual sexuality.

17. Apple's letter also says it retains "N" (2 designations: 197:18, 197:21). because "in context, this testimony relates to the meaning of the letter within Apple's internal code names." So Apple treats "N" as a code name component. But Apple de-designated or abandoned every other code name and code name component— and all hardware development terminology. Plaintiff offered to allow redaction of all codenames as a courtesy, yet Apple retains the letter "N" —— while abandoning every substantive codename.

18. Beddit is a product Apple acquired in 2017, marketed, and sold publicly to consumers — not a pre-release or unreleased product.[1] It shipped, had a brand name, and customers bought it. It is publicly known. Apple likely wants the name redacted precisely because it identifies a shipping product, not a secret one — revealing that the studies at issue involved existing commercial products, not unreleased prototypes. (Beddit: 6 designations: 166:4, 166:14, 167:17, 168:19, 169:1, 169:10). But a public product name cannot be designated confidential under PO § 3 (excluding "information that is in the public domain"). Apple offers no Rule 26(c) basis despite repeated demands for it to do so.

19. Apple also failed to provide a list of what designations it claims it retains but a manual cross-check indicates that it appears Apple' remaining designations are:
- "cervical" / "cervical mucus" / "mucus" / "cervical mucus secretion" / "measuring female employees' cervical mucus" / "my cervical mucus" / "cervical mucus menstruation" (7 designations: i6, 164:10-11, 164:15-16, 170:9, 226:4, 236:14-15, i20 partial)
- "ovulation" / "ovulation study" (5 designations: 164:10-11, 164:14, 164:25, 169:25, i22)

---

[1] CNET, *Apple buys Beddit, maker of sleep-tracking device: The $150 device fits between your sheet and mattress to measure such things as total sleep time, resting heart rate and respiration rate.,* May 9 2017, https://www.cnet.com/home/smart-home/apple-buys-sleep-tracking-device-maker-beddit/

- "menstrual" / "menstruation" (3 designations: 176:16, i20 partial, 226:4 partial)
- "*registering of people you're having sexual relations with outside of work*" / "*who I was sleeping with and have them sign NDAs*" / "*of people I was sleeping with*" / "*cosleepers*" (4 designations: 166:1-2, 226:1, 226:3, i8)
- "sex" / "sexual" / "sensors" (1 designation: i28)
- "period; bed" (1 designation: 205:17)
- Beddit sleep study passage including cosleepers, dating, sex, registering partners (1 designation: 165:13-24, minus "*and I found that very disturbing*")
- "Beddit; sleeping" (1 designation: 225:25)
- "B-E-D-D-I-T; Beddit" in index alongside sex-related terms (1 designation: i5)

20.     Apple's letter states the retained material is the Plaintiff's "*characterization of the content, methods, and processes of certain internal Apple product-related studies.*" But the de-designated testimony is also the employee's characterization of internal studies — characterizing what the studies involved (sensors, vitals monitoring, exercising in Apple's lab), what the employee was asked to do (spin in chairs, hold phones, track eyes), and the general purpose. Apple de-designated all of those characterizations. ("*go to yoga or running or swimming where they wanted to strap a bunch of sensors on me and, like, monitor all my vitals while I was, like, exercising in some Apple lab.*" designated 161:6-9).

21.     The only characterizations Apple retained involve cervical mucus, ovulation, menstruation, sexual partners, and cosleepers. Apple's own stated justification ("characterization" of studies") does not distinguish between what Apple retained and what Apple abandoned. The only distinguishing factor is the sexual content, which claims are also the subject matter of the pending NLRB charge, and Apple's subsequent motion to "Enforce the PO" in retaliation for the NLRB charge and Plaintiff's complaints.

# VII. APPLE PROVIDES NO RULE 26(c) GOOD CAUSE

22.     PO § 2.2 defines "CONFIDENTIAL" as information "that qualifies for protection under Federal Rule of Civil Procedure 26(c)." The Ninth Circuit requires that any confidentiality claim requires "good cause" showing under Fed.R.Civ.P. 26(c) and warns that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986). Facing a request for disclosure, its inadequate for the Designating party to simply rely on a blanket Protective Order without any showing of "good cause" *Olympic Refining Company v. Carter,* 332 F.2d 260, 264-65 (9th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964).

23.     "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. United States Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir. 1999). "Rule 26(c) only authorizes a district court to override this presumption where `good cause' is shown." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Claims of confidentiality include actual "trade secret or other confidential research, development, or commercial information." Id; Fed. R. Civ. P. 26(c), 26(c) (7).

24.     A conditions precedent for Court granting a protective order requires that the party seeking to make something confidential, must make "particularized showing of good cause with respect to any individual document." *San Jose Mercury News, Inc.*, 187 F.3d at 1102. "If good cause is not shown, the

discovery materials in question should not receive judicial protection and therefore would be open to the public." *In re Agent Orange Product Liability Litig.,* 821 F.2d 139, 145 (2d Cir. 1987). Even if there is a showing of particularized harm, the Court may still deny a protective order based on a balancing of public and private interest. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

25.     *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) explains that "the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court. This common law right of access to inspect various judicial documents is well settled in the law of the Supreme Court and this circuit." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

26.     This common law right, as described in *Phillips ex rel.,* "creates a strong presumption in favor of access" to judicial documents which "can be overcome" only by showing "sufficiently important countervailing interests." *San Jose Mercury News, Inc.*, 187 F.3d at 1102; *see also Hagestad*, 49 F.3d at 1434. "In deciding whether sufficient countervailing interests exist, the courts will look to the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets'." *Tragesser*, 49 F.3d at 1434. The burden is on the party seeking to protect information to make a particularized showing. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

27.     Apple provides: no trade secret identification, no competitive harm, no case law. Apple cites one citation which was to *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018) — an FAA/NLRA case about class-action waivers in arbitration, not about protective orders or confidential information, and inapposite. Apple's sole justification thus far is: the material is the Plaintiff's "characterization of the content, methods, and processes of certain internal Apple product-related studies." This is a description, not a showing. What is the trade secret in "cervical mucus"? What competitive harm results from "ovulation"? What proprietary interest is served by "registering of people you're having sexual relations with outside of work"? How are public information, personal experiences, and complaints about work conditions confidential? Apple has had months to answer these questions and still refuses.

# VIII. APPLE'S OWN FILINGS CONTRADICT ITS POSITIONS

**INTERROGATORY SET 1: APPLE USED CODE NAMES FOR THE STUDIES IT SAYS JUSTIFIED TERMINATION — THEN DIDN'T DESIGNATE THEM.**

28.     In response to Interrogatory No. 1 asking for Apple's "complete and formal reason(s) for terminating" Plaintiff, Apple stated (Orrick, August 4, 2025, verified under penalty of perjury by Apple HR Director Megan Bowman and Melinda Riechert): "To safeguard Apple's confidential information, the study is referenced as 'Alpha' for purposes of this response" and "to safeguard Apple's confidential information, the study is referenced as 'Omega' for purposes of this response." Apple described the "Alpha" and "Omega" studies in detail — how they worked, the consent forms, the confidentiality requirements, and how Plaintiff's disclosures about them led to termination. One year ago, Apple treated these studies as

the confidential information requiring pseudonyms to protect.

29.     Apple's Interrogatory Set 1 response states: "On August 28, 2021, Plaintiff tweeted details about a separate proprietary study Apple was conducting, the 'Omega' study... Plaintiff's tweet both identified the name and purpose of the study regarding an unreleased product under development." Apple added that "on August 30, 2021, Plaintiff tweeted photographs of herself created by the Alpha application, thus again disclosing confidential Apple product information." Dkt. 280 fn. 2 states: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place."

30.     Then, at the December 16 2025 deposition, these same studies — Gobbler (Apple's "Alpha") and the ear scan studies — were discussed extensively and Apple did not designate a single line of that testimony as confidential. Apple did not even maintain the pseudonyms — the studies were discussed by name with no designation. Apple claims this information was so secret that sharing it justified it in terminating the Plaintiff's employment – then Apple didn't designate it at all. But in 2026, Apple did designate the employee's testimony about cervical mucus, ovulation, and sexual partners as confidential and sent multiple letters/motions/emails indicating it would have fired the Plaintiff for talking about these topics as well, but not designating the content it says it did fire the employee over.

31.     It's well established that Apple conceals complaints and retaliates against workers who complain about work conditions or organize to improve work conditions. That appears to be Apple's only basis for any of these confidentiality claims – Apple insists its misconduct is secret and that complaints about Apple's wrongdoing is misconduct, assumably because it exposes that Apple's public claims about those same business practices are false and misleading. [2]

32.     In its discovery response, Apple admits the Verge article about the Gobbler study was published (RFA No. 17: Apple admits "the article features an embedded video composed of, among other things, images showing Plaintiff's face (or parts of her face) and parts of her upper body" and "admits that the images were captured on Plaintiff's phone by an application that has been called Gobbler"). Apple admits it was contacted for comment before publication and did not respond or send a cease-and-desist (RFA No. 20: "Apple admits that a reporter from the Verge reached out to an employee at Apple 'for comment' prior to the publication of the article... and that Apple did not provide a comment prior to the

---

[2] NYT, *Regulators Find Apple's Secrecy Violates Workers' Rights: After a yearlong investigation, a federal labor board determined that the tech giant's rules interfere with employees' right to organize.* Jan. 31 2023, https://www.nytimes.com/2023/01/31/technology/apple-workers-rights.html; HR Grapevine, *Apple faces Federal complaint for silencing workers through confidentiality policies,* Nov. 5 2024, https://www.hrgrapevine.com/us/content/article/2024-11-05-apple-faces-federal-complaint-for-silencing-workers-through-confidentiality-policies; HRD Magazine, *Apple drops gag orders for employees talking harassment, discrimination,* Dec. 15 2022, https://www.hcamag.com/us/specialization/employment-law/apple-drops-gag-orders-for-employees-talking-harassment-discrimination/430851; Engadget, *Report: Apple retaliated against women who complained about misconduct: Its corporate culture is at odds with the image it presents, multiple women said.,* Aug. 4 2022, https://www.engadget.com/report-apple-retaliated-against-misconduct-victims-094505393.html; PASTE, *Apple Reportedly Lied in Recent Memo about NDAs and Silencing Employees,* Nov. 23 2021, https://www.pastemagazine.com/tech/apple/apple-lied-in-recent-memo-silences-employees; Business and Human Rights Centre, *Apple employees raise concerns company does not protect and at times invades their personal privacy,* Aug. 30 2021, https://www.business-humanrights.org/en/latest-news/apple-employees-raise-concerns-company-does-not-protect-and-at-times-invades-their-personal-privacy/; etc.

publication of the article").[3]

33.    Apple claims Gobbler disclosures were confidential and they justified termination. Yet, Apple did not send a cease-and-desist when it had the chance, did not respond when asked to comment on an article characterizing Apple's explanation as "absurd,"[4] and did not designate Gobbler testimony at the deposition. Apple designates cervical mucus and sexual partners under the same IPA theory. If the product studies are what's confidential — as Apple says under oath — then the employee's complaints about different topics are not.

34.    Further, Plaintiff's Fifth Amended Complaint alleges (¶ 158): *"**Apple frequently requested that Gjovik and her coworkers participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA tests, biometrics data collection (like the Gobbler app), and other highly personal examinations.**"* (Dkt. 142). Apple's answer was that: "Apple lacks knowledge or information sufficient to admit or deny the allegations and on that basis denies them" (Dkt. 218). Then, Apple simultaneously describes the same studies in detail in Interrogatory Set 1, claims no knowledge in responses to Requests for Admission, and designates testimony about them as confidential. Apple cannot lack knowledge about studies it describes under oath and designates as its confidential property.

35.    Apple told this court (Dkt. 224, p. 11): "Gjovik's claims and Apple's defenses are fact intensive, and those facts need to be developed through discovery, both oral and written." He said the claims and defenses are "so intertwined" they cannot be separated. Apple then designates the employee's deposition testimony about these facts as confidential under the theory that these facts also represent things it would fire the Plaintiff for disclosing like it did with the Gobbler and ear scan issues. Yet, Apple also refused to answer Interrogatory Set 3 questions about "Plaintiff's Disclosures concerning Privacy" — the exact subject Apple now claims justifies the designations.

36.    Apple's affirmative defenses repeat: "Plaintiff disclosed confidential product-related information in violation of Apple policies and her obligations under her Intellectual Property Agreement." But Apple refuses to identify which policies, which provisions, or which specific conduct violated which specific term. The court noted Apple would need to produce policies in initial disclosures (Dkt. 234). Apple has not — and Apple refuses to provide any further information – while Apple does designate Plaintiff's testimony as confidential assumably based on those unproduced, unidentified policies.

37.    The sex-based content Apple retains corresponds to the content Apple cited in its Motion to Enforce (Dkt. 294) and Motion to Seal (Dkt. 293). If Apple de-designated this content, those motions would be moot — Apple would be seeking sanctions for disclosing content Apple itself concedes is not

---

[3] The Verge, *Apple cares about privacy, unless you work at Apple: The company has taken a strong stance on safeguarding its customers' data — but some employees don't believe it protects theirs,* Aug. 30 2021, https://www.theverge.com/22648265/apple-employee-privacy-icloud-id

[4] Gizmodo, Apple Wanted Her Fired. It Settled on an Absurd Excuse: The reasons for firing Ashley Gjøvik include tweeting a photo of herself—taken by her own phone., Oct. 14 2021, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789 ("Late in the evening on Sept. 15…a letter popped up in her inbox. It was from a high-powered law firm, O'Melveny & Myers LLP…. It didn't point to any sensitive documents… The information it contained wasn't new. Nor was it particularly newsworthy. Had it been anything otherwise, one of the dozens of reporters following Gjøvik would've noticed…the emails shared publicly by Gjøvik were neither labeled confidential nor contained anything that could be considered secret or otherwise proprietary…The posted image of the email merely noted what was already known to the public…Apple did not respond to a request for comment.")

confidential. Apple maintains the designations not because the content is secret but because withdrawing them collapses the pending motions and admits to the NLRA violations.

38.     Maintaining designations to support litigation rather than to protect legitimately confidential information is an improper purpose under PO § 5.1: designations "made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions."

39.     However, Apple's defense to this is even worse—that its intentionally claiming employee complaints about Apple regarding sexual harassment, bodily autonomy, invasion of privacy, and the employer studying employee vaginal secretions and sexual activity is all "confidential" even if the study consists of otherwise public information – if the employee complains about Apple's conduct, then the complaint and underlying facts become "confidential" per Apple. This is Apple's MO for years.

## Judicial Estoppel; and Orrick v Morgan Lewis

40.     Morgan Lewis filed Apple's Answer to the NLRB Amended Complaint on November 21, 2025, denying every substantive allegation. Morgan Lewis denies Apple "directed employees to refrain from talking about workplace environmental health and safety concerns with other employees" (response to ¶ 5). Morgan Lewis denies Apple told employees to use a "five-point balancing test in advance of communicating workplace health and safety concerns" (response to ¶ 6(a)). Morgan Lewis denies Apple told employees "to refrain from discussing their terms and conditions of employment" (response to ¶ 6(c)).

41.     Orrick's designations and this letter impose exactly those restrictions: don't discuss workplace studies publicly, don't characterize Apple's internal practices, don't share complaints about what Apple did to your body. Morgan Lewis denies to the NLRB that Apple makes these rules. Orrick enforces them in this court. Morgan Lewis's defenses also include that Apple's statements "contain no threat of reprisal or force or promise of benefit" (Defense 5, citing Section 8(c) of the NLRA). Orrick's conduct — sanctions threats, gag orders, case dismissal — is threats of reprisal. Morgan Lewis's own defense framework defeats Orrick's conduct.

42.     Apple's counsel (Riechert/Orrick) told the court in the January 6, 2026 Joint Case Management Update (Dkt. 269, p. 10): "On September 25, 2025, the NLRB (Case No. 32-CA-282142) dismissed certain allegations from the complaint, including all allegations that Defendant suspended and terminated Plaintiff for engaging in protected concerted activities; Plaintiff appealed this dismissal on November 21, 2025. No hearing has occurred with regard to the remaining allegations, and there have been no findings of fact or legal conclusions relating to those allegations."

43.     Apple's March 4 letter states: "the NLRB has already determined that your revealing 'confidential product development information about [an Apple] study' is not 'protected activity' under the NLRA." Apple told the court: no findings, dismissal appealed. Apple now tells Plaintiff: the NLRB has "determined." Apple is judicially estopped from representing a non-final, appealed GC dismissal — which its own counsel confirmed is on appeal and has no "findings" — as a Board "determination."

44.     Further, Plaintiff did not cite Case 32-CA-282142 in her designation objections. Apple introduced it. Having opened that door: the partial dismissal Apple cites addressed revealing "confidential product development information about [an Apple] study." Apple's retained designations are not product development information — they are cervical mucus, ovulation, and sexual partners. Yet, Apple again

bases its designations on its similarly unsubstantiated claims it was justified in terminating the Plaintiff's employment – which also refusing to provide any factual or legal basis for that argument.

45.     The still-active NLRB amended complaint in that same case retains allegations that Apple violated Section 8(a)(1) by directing employees to refrain from discussing workplace health and safety concerns (¶ 5), telling employees to use a five-point balancing test before communicating workplace concerns (¶ 6(a)), and telling employees to first communicate concerns directly with Apple before discussing them (¶ 6(c)). Orrick's designations and this letter impose those same restrictions. So, Apple (via Morgan Lewis) is trying to settle those claims while Apple (via Orrick) is committing the same violations, admitting they are doing so, but now claiming its lawful and appropriate for them to do so.

# X. APPLE'S CONDUCT VIOLATES APPLICABLE LAW, THE PROTECTIVE ORDER, & COURT RULES

46.     Apple's March 4 2026 letter, Feb. 18 Letter (Dkt. 280 fn. 2), emails, and the February 20 conference confirm the Plaintiff's mostly defunct IPA is Apple's only basis for designation. Apple provides no independent Rule 26(c) justification, violates the requirements of the Protective Order Apple insisted upon having ordered in this case, and refuses to engage in meaningful meet/confer.

47.     The use of the IPA to justify any confidentiality claim for this subject matter is prohibited by at least: the April 2025 NLRB settlement (requiring rescission); the Speak Out Act, Pub. L. 117-224 (2022) (voiding pre-dispute NDAs preventing speech about sexual harassment)[5]; the STAND and Silenced No More Acts, Cal. Lab. Code § 1001 (prohibiting enforcement of agreements preventing disclosure of unlawful workplace acts)[6]; and more.  Further, the bankruptcy automatic stay also prohibits the pending motion for sanctions (hearing before Judge Panos, April 2, 2026, Dkt. 299).  These arguments are set forth in detail in Plaintiff's prior filings, NLRB charges, emails, and other communications to Apple on this matter and are incorporated by reference.

48.     As of March 4 2026, Apple has now de-designated every user study-related term/phrase unrelated to genitals and sexual activity (involving de-designating exercise, grip testing, eye tracking, and physical activity monitoring). Apple retained every designation involving cervical mucus, ovulation, menstruation, sexual partners, and cosleepers. The only variable is whether the content involves female reproductive biology and sexual activity. Apple provides no Rule 26(c) justification for any retained designation.

49.     Under Title VII and FEHA, unwelcome conduct of a sexual nature creating a hostile environment constitutes sexual harassment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993); Cal. Gov. Code § 12940(j). Courts have found harassment where employers made "offensive, explicit references to women's bodies and sexual conduct," *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994); comments about women's bodies and references to genitalia, *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 539-40 (2d Cir. 2010); "comments on the breasts,

---

[5] Pub. L. No. 117-224, 136 Stat. 2290 (2022) (codified at 42 U.S.C. §§ 19401–19404).
[6] 2018 Cal. Stat. 6262 (codified as amended at CAL. CIV. PROC. CODE § 1001. Stand Together Against Non-Disclosure (STAND) Act, See CAL. CIV. PROC. CODE § 1001(a) (West 2024).

buttocks, and physical appearance of individual women," *Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1373 (9th Cir. 1990); and repeated close examination of female employees' bodies, *EEOC v. R&R Ventures*, 244 F.3d 334, 339 (4th Cir. 2001).

50.    The DOJ confirms "asking about a person's sexual preferences" violates Title VII. The EEOC confirms examples of retaliation for employee's opposing sexual harassment includes the employer "filing a civil action," "work-related threats, warnings, or reprimands," "increase scrutiny," and "make the person's work more difficult." All of this is happening here now. NDA's concealing sexual harassment "silence and isolate victims but also enable wrongdoers to continue their behavior without accountability."[7] NDAs used to conceal sexual harassment and misconduct, rather than trade secrets, are a corporate "weapon used to benefit the powerful and corrupt and gag victims."[8]

51.    This is one reason the legislative history of the STAND Act explains it prohibits an employer from requiring an employee to sign a nondisparagement agreement … denying the employee the right to disclose information about those acts." S.B. 331, 2021-2022 Leg., Reg. Sess. (Cal. 2021). The law applies retroactively to all prior NDAs including the one the Plaintiff signed with Apple. Under California's STAND and Silenced No More laws, an employer like Apple is barred from the enforcement of any pre-lawsuit NDA preventing individuals from seeking help or speaking out about illegal workplace misconduct involving sexual assault and harassment – which is exactly what Apple claims its justification for confidentiality is here. S.B. 331, 2021-2022 Leg., Reg. Sess. (Cal. 2021).

52.    The Speak Out Act is an "enacted public law" that "specifically inhibits courts from enforcing nondisclosure clauses or non-disparagement clauses that are entered into before the occurrence of a sexual assault or harassment dispute." Speak Out Act, S. 4524,117th Cong. (2022).[9] The Act "precludes the court's enforcement of blanket NDAs regarding allegations of sexual assault and harassment." [10]

53.    Apple is waging their entire PO enforcement campaign (Feb.–March 2026, with four+ motions, dozens of M&C refusals, sealing demands, gag orders, sanctions threats, and this letter ) about a female employee's vaginal discharge, menstrual cycle, ovulation, and sexual partners. Apple refuses to substantiate why any of this is confidential but demands the employee justify why Apple should not be permitted to designate her reproductive and sexual information as Apple's property. This inverts the PO's burden (§ 6.3) and compounds the violation with each communication.

54.    This is also sexual harassment of the Plaintiff. The decision-makers are predominantly male. (Lead counsel in the NLRB cases are men (2+ men with Morgan Lewis, 2+ men with MWE), lead counsel for OMM was a man, lead counsel with MoFo is a man, Apple's CEO and executive teams are

---

[7] See, e.g., Stephanie Russell-Kraft, *How to End the Silence Around Sexual Harassment Settlements*, THE NATION ( Jan. 12, 2018), https://perma.cc/6H27-57C2 ("[Secrecy] leaves other employees vulnerable to harassment by repeat perpetrators, and deprives the public of information about how widespread the problem of workplace harassment is.")
[8] Johanna Shinners, *Safeguarding Silence: The Weaponization of Nondisclosure Agreements and the Need for More Regulation,* 25 Marq. Ben & Soc. Welfare L. Rev. 229 (2024).
[9] Elizabeth A. Lalik et al., President Biden Enacts Speak Out Act Curtailing the Use of Pre-Dispute Non-Disclosure and Non-Disparagement Clauses Involving Sexual Assault and Harassment Claims, LITTLER MENDELSON P.C. (Dec. 12, 2022),
[10] Johanna Shinners, *Safeguarding Silence: The Weaponization of Nondisclosure Agreements and the Need for More Regulation,* 25 Marq. Ben & Soc. Welfare L. Rev. 229 (2024).

almost entirely men, and noticed counsel in this case also includes a man (Ryan Booms). Regardless of the nature of the proceeding, all of Apple's counsel have made personal attacks against the Plaintiff in the cases and outside the proceedings (harassing her on social media about her body, accusing her of misconduct, bullying her about her appearance, etc.).

55.     While it's a woman currently sending these communications (Melinda Reichert), behind her is an army of male executives and legal counsel, and they're all claiming Apple has an inherent right to study employee vaginas and private sex acts, and the Plaintiff's opposition and complaints to this are secret and misconduct by the Plaintiff. After the Plaintiff complained in an NLRB charge that Apple "doesn't own her vagina" and can't claim any rights or ownership to employee genitals, Apple filed a motion for sanctions against the Plaintiff, wanting the filing sealed, and the Plaintiff gagged and bound by the court.

56.     This case already alleges sex-based harassment during Plaintiff's employment — including supervisors who discriminated based on sex and created a hostile work environment with sexual harassment, among many other issues (Fifth Amended Complaint ¶¶ 72-74, 242-243). Apple's current litigation conduct seeks to conceal and normalize the prior abuse and unlawful conduct through a "protective order." Apple seeks to use this PO to strike, dismiss, or otherwise nullify the Plaintiff's pleaded complaints in this litigation about these very issues – in addition to obstructing NLRB and other agency proceedings.

57.     Apple's conduct also directly violates the same Protective Order. For instance,

- PO § 1: The order "does not confer blanket protections" and extends "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." Apple has demonstrated entitlement under no applicable legal principle.

- PO § 3: Protections "do not cover" information "in the public domain" or "known to the Receiving Party prior to the disclosure." The designated content is public in the Fifth Amended Complaint, Judge Chen's orders (Dkts. 73, 112), the Verge article, NLRB filings, and press coverage.

- PO § 5.1: Mass and indiscriminate designations are prohibited and sanctionable. Designations made for improper purpose are sanctionable.

58.     Apple's conduct has also violated the FRCP including FRCP 26(g)(1) because discovery responses must be signed and Apple refuses to sign these designations. The signature is to certify the filing is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Apple's designations are unsigned — and if signed, would violate this certification.  The context (including the Feb. 4 2026 email) shows that Apple is refusing to sign these designations because Apple knows the designations are not legitimate and the serving attorney could face sanctions. Yet under FRCP 26(g)(3), sanctions are mandatory for 26(g)(1) violations, which includes their intentional refusal to sign, date, or serve the designation.

59.     Apple also violated the Court's Professional Conduct Guidelines with this misconduct including  their refusal to practice with "honesty, care, and decorum" (Civil L.R. 11-4(a)), to be free of "prejudice and bias" Civil L.R. 11-4(b); using, inquiring, and threatening to use "facts about the private lives of any party… for the purpose of gaining an unfair advantage" Guideline 17 (Privacy); and "engaging in conduct that exhibits or is intended to appeal or engender bias against a person on account of that person's . . . sex." (Guideline 18).

60.     This list is not all inclusive – Apple violated too many rules, laws, and policies to count here – but the first step is for Apple to simply follow the basic requirements of the FRCP, Local Rules, and Protective Order – which it is still refusing to do nearly three months after the deposition.

# XI. CONCLUSION AND NOTICE

61.     Apple's letter fails on every level. Apple has no valid designations. Apple failed to respond to over half the challenged designations. Apple provides no Rule 26(c) good cause for any retained designation. Apple's 29 retained designations consist of: one code name component retained as apparent pretext (the letter "N," 2 designations), a public brand name (Beddit, 6 designations), and worker complaints about corporate misconduct related to female employee reproductive biology and sexual activity (21 designations).

62.     Apple de-designated every non-sexual user study characterization and retained every sexual one — while claiming its basis is the employee's "characterization" of studies, admitting to animus about workplace complaints. Apple maintains these designations to avoid mooting its pending sanctions motions, not to protect confidential information. Apple's conduct violates the PO, the FRCP, this court's Professional Conduct Guidelines, Title VII, FEHA, the Speak Out Act, the Silenced No More Act, the NLRA, the April 2025 settlement, and many other legal protections, rules, and restrictions.

63.     Apple needs to follow the rules – and so far Apple continues to intentionally defy those rules instead. I reserve all rights and arguments, including those set forth in my prior filings, emails, and communications.


/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March. 5 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT G

disconnect it. Gjovik repeatedly tried to uninstall/deactivate it, but it always

reinstalled/reactivated itself.



*Exhibit: Gjovik's iCloud Personal Account, Current Day*

142.    Apple would later rename the application from Gobbler to "Glimmer" after

criticism about the face *"Gobbler"* name.

143.    On Apple's internal "Living On" help page, it explains that when you "live on"

Apple devices, *"You are encouraged to make full use of your living on devices as you regularly*

*would and try to log as many bugs as possible. This will help us provide a better and bug free*

*product to our customers.*

144.    Around this time Gjovik was contacted to participate in other user study

programs including Apple wanting to study her ovulation cycles and menstruation, which she

denied.  Apple asked to study Gjovik's vitals while she ran and swam, which she denied. Apple

asked to study Gjovik's vitals and sleep while she slept, which she accepted for a few months,

but then left the program due to how invasive it felt. Apple also asked to 3D scan Gjovik's ears

and ear canals, which Gjovik denied expressly in 2018 and stated her denial was 'indefinite.'

145.    Gjovik created a successful hardware re-use program in 2018, (which she called

"Hand Me Down Hardware"), in order to fill test coverage gaps dependent on infrastructure,

while also dramatically reducing e-waste.  West and Powers suddenly canceled her project

without consulting or notifying Gjovik and the explanation provided to her was that one of

West's reports, Reed Johnson, requested the change in order to obtain personal benefit, and West

approved.

146.    When Gjovik complained about the decision to cancel the project, resulting in a

dramatic increase in e-waste and reduced test coverage for customer products which was known

to increase risk and did result in customer field issues, Gjovik was repeatedly told by West and

Powers that she was simply being "*emotional*," "*aggressive*," and "*irrational*." Powers

suggested that when Gjovik is upset with Powers or West, that she should stay silent about it for

at least one day, and then at that point, she will realize she is wrong and they are correct, and

then she will not have concerns about them anymore. Powers then complained Gjovik was

making facial expressions of displeasure that appeared directed towards him, and that she must

always have a 'poker face' to be successful. In 2021, Gjovik complained about this matter to

Jenna Waibel and Ekelemchi Okpo, and included it in the August 2021 "Issue Confirmation."

147.    On April 13, 2018, Tom Moyer, head of Apple Global Security, was quoted in a

Bloomberg article saying that Apple "leakers" "*not only lose their jobs, they can face extreme

difficulty finding employment elsewhere. The potential criminal consequences of leaking are real

and that can become part of your personal and professional identity forever*." [99]

---

[99] Mark Gurman, *Apple Warns Employees to Stop Leaking Information to Media*, Bloomberg, April 13
2018, https://www.bloomberg.com/news/articles/2018-04-13/apple-warns-employees-to-stop-leaking-
information- to-media

1  consent or notice to the people whose data was gathered, including _**bathroom videos**_.  Notably,

2  even Google Glass refused to capture biometrics, and yet people were still "freaking out."[1024]

3      1344.   Apple intended to invade its employee's privacy. Whether it was to spy on them,

4  to collect and hoard their data, or to exploit unpaid labor from them – Apple possessed intention

5  and purpose in invading employee privacy, including Gjovik's privacy. Apple claims that

6  employees 'consented' to even its most invasive violations of privacy, such as scanning ear

7  canals, 24/7 biometrics gathering, sleep monitoring, or monitoring employee's ovulation and

8  menstruation.

9      1345.   Also see § 1102.5 for § 435, _Tamney_ for CPRA, _Tamney_ for FTC Act, and

10  _Tamney_ for ICCPR which are incorporated here.

### vii.    Tamney: California Privacy Rights Act

    1346.   The California Privacy Rights Act ("CPRA"), states that "_It is the intent of the_

_Legislature to ensure that personal information about California residents is protected_" and that

"personal information" includes "_unique biometric data generated from measurements or_

_technical analysis of human body characteristics… used to authenticate a specific individual…_

_[including] a physical or digital photograph… used or stored for facial recognition_

_purposes_."[1025]

    1347.   The CPRA defines biometric information as "an individual's physiological,

biological, or behavioral characteristics, including information pertaining to an individual's

deoxyribonucleic acid (DNA), that is used or is intended to be used singly or in combination

---

[1024] Bridget A. Sarpu, _Google: The Endemic Threat to Privacy_, 15 J. High Tech. L. 97, 99–100 (2014);
See Letter from Rep. Joe Barton, Co-Chairman, Bi-Partisan Privacy Caucus, to Larry Page, CEO, Google
(May 2013), (providing an example of the attention Google Glass had been getting with a letter that was
written by members of Congress to Google concerning Google Glass and possible constitutional
violations). See also Richard Gray, _The Places Where Google Glass is Banned_, THE TELEGRAPH
(Dec. 4, 2013), (listing the numerous places where Google Glass is already banned including in the car,
cinemas, strip clubs, casinos, restaurants, hospitals, sports grounds, concerts, banks, and ATMs).
[1025] Cal. Civ. Code § 1798.81.5(a)(1) and (d)(1)(a)(vi).

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

Having considered the parties' briefs, as well as the oral argument presented at the hearing on May 16, 2024, the Court hereby **GRANTS** in part and **DENIES** in part Apple's motion to dismiss; **DENIES** Apple's motion to strike; and **GRANTS** Ms. Gjovik's motion to strike.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The operative pleading is the third amended complaint ("TAC"). Although the TAC is difficult to follow at times, the main categories of misconduct as described in the TAC are as follows:

(1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.

(2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.

(3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.

(4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Below, the Court provides more details regarding Apple's alleged misconduct and Ms. Gjovik's termination from employment. To be clear, the discussion below is based on the allegations made in the TAC.

A.    Harassment at Work

In February 2015, Ms. Gjovik began to work for Apple. She started out as an Engineering Project Manager in Software Engineering and continued to work in that office until January 2017. *See* TAC ¶ 13. During her time in that office, she was harassed, primarily by two male co-workers. *See* TAC ¶ 13. In addition, during her time in the office, she investigated a trend of

1    (emphasis omitted).

2    D.    Termination in September 2021

3        As noted above, Ms. Gjovik was put on indefinite administrative leave in August 2021.  In

4    or about that period (July-August 2021), Ms. Gjovik made various public complaints about Apple.

5    *See* TAC ¶ 71 *et seq.*  Some complaints were made to coworkers (*e.g.*, through Slack channels), to

6    the press, or to social media; other complaints were filed with governmental agencies such as the

7    EEOC, the California DFEH, the NLRB, the U.S. Department of Labor, the California Department

8    of Labor, and even the SEC and FBI.  The complaints covered a wide range of conduct by Apple –

9    *e.g.*, its response to COVID-19, its response to her complaints about sexism, its response to her

10    complaints about unsafe work conditions, its forcing her on administrative leave, etc.

11        On September 9, 2021, Apple terminated Ms. Gjovik's employment.  *See* TAC ¶ 90.  The

12    day that she was terminated, Ms. Gjovik was contacted by an Apple Workplace Violence and

13    Threat Assessment investigator (Mr. Kagramanov) via email.  The investigator claimed that he

14    was looking into a sensitive IP matter and demanded to speak to her within the hour.  Ms. Gjovik

15    said she was willing to participate but wanted a written record of their conversation.  The

16    investigator replied that Apple was investigating allegations that she had improperly disclosed

17    confidential information belonging to Apple and falsely asserted that she was refusing to

18    participate in the investigation.  The investigator then suspended all of Ms. Gjovik's account

19    access at Apple (including Slack).  *See* TAC ¶ 101-03; *see also* TAC ¶¶ 83, 88.  Ms. Gjovik

20    reiterated to the investigator that she was willing to participate.  However, a few hours later, she

21    was terminated.  *See* TAC ¶ 105.  "The termination letter repeated an ambiguous charge of leaking

22    and said she 'failed to cooperate and to provide accurate and complete information during the

23    Apple investigatory process.'"  TAC ¶ 105.

24        About a week later, Apple's outside counsel emailed Ms. Gjovik a letter, suggesting that

25    Apple had terminated her because (1) she had complained about Apple asking to 3-D scan her ear

26    canals and (2) she had "posted some of the surveillance photos Apple secretly took of her through

27    her phone when it was illegally harvesting her biometrics through its face Gobbler app."  TAC ¶

28    106; *see also* TAC ¶ 80 (alleging that "Apple frequently requested that Gjovik and her coworkers

United States District Court
Northern District of California

7

1    participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear

2    scans), DNA test, biometrics data collection (like the Gobbler app), and other highly personal

3    studies").

4    E.      Post-Termination Harassment

5          Even after Ms. Gjovik was fired from Apple, the company harassed her.  In fact, Apple

6    conducted a campaign of harassment against her from at least July 2021 (*i.e.*, a few months before

7    it terminated her).  The harassment included the following conduct:

8          • Making repetitive, unwanted communications to Ms. Gjovik.  *See* TAC ¶ 107.

9          • Making false accusations against Ms. Gjovik.  *See* TAC ¶ 107.

10         • Mailing to Ms. Gjovik "menacing packages."  TAC ¶ 107.

11         • Physically surveilling Ms. Gjovik, including through the use of private

12           investigators.  *See* TAC ¶¶ 107, 110.

13         • Using fake social media accounts to make, *inter alia*, threatening, defamatory, and

14           insulting statements about Ms. Gjovik.  *See* TAC ¶ 108.

15         • "[B]ugging [Ms. Gjovik's] chattel property" such as the statute on her desk and her

16           fig tree.  TAC ¶ 110 (also alleging that Apple installed cables and cords in her

17           attic).

18         • Breaking into her apartment and adjacent apartments, and even handling her dog

19           during one of the break-ins.  *See* TAC ¶ 110.

20         For similar allegations, see also TAC ¶ 132 (alleging that Apple engaged in criminal

21    witness tampering "with break-ins, stalking, destruction of property, physical and digital

22    harassment, lawsuits, reports to police and FBI (SWATing), and threats of physical violence sent

23    over wires such as threatening to decapitate one of Gjovik's loved ones, or that Gjovik would be

24    found dead of 'suicide' but 'never mind the double-tap'") (emphasis omitted); and TAC ¶ 134

25    (alleging that Apple broke into her apartment, messed with her telephone/cable/electrical lines,

26    stalked her, etc.)

27

28

United States District Court
Northern District of California

8

"*anti-competitive conduct*" and "*attempts to cover up any of these behaviors*" are whistleblower disclosures. Apple should obtain ethical and legal data for product development instead of treating its workforce like lab rats.

194.    Gjovik suffered an economic and/or property injury due to Apple's Unfair Business Practices. Apple knew or should have known that its wrongful acts and omissions alleged herein were likely to deceive the consuming public in California and the rest of the United States. Apple committed those acts and omissions anyway for their financial gain, including improving their financial condition, increasing the likelihood of receiving new capital from investors, increasing their revenue and profits, and increasing the company's value.

195.    Apple repeatedly implied to Gjovik that her participation was not option. Gjovik's annual performance reviews made express note of Gjovik's participation in Apple's studies and experiments and praised her for her unpaid labor in facilitating the numerous invasions into her privacy.

196.    Gjovik participated in several other health, anatomy, and personal data collection studies during her time working for Apple. This included a sleep study with Apple placing a sensor under her while she slept every night, recording her vitals and movements, and sharing the data with Apple for commercial purposes. When Gjovik was invited to participate in these events, the team often would not disclose what the study was until the 'volunteers' arrived physically on site to a secure building where ex-FBI security personal would threaten her and her workers to not even tell their friends or family what happens at Apple, and especially studies like these.

197.    When Apple asked Gjovik to scan her ears and her ear canals, Gjovik declined "indefinitely." Similarly, Gjovik repeatedly declined Apple's requests to study and collect data about her menstruation for product development. Even after Gjovik declined the ear studies, Apple has claimed its secret they even asked her in the first place.

4.    Summary

Count 12 is dismissed with prejudice. Counts 11 and 13 are dismissed but with leave to amend. For Count 11, there is the time-bar problem. For Count 13, there is both the time-bar problem and a merits problem. Any amendment will have to overcome these problems.

F.    Remaining Claims

1.    Count 9 – Claim Related to Privacy Violation

Count 9 is Ms. Gjovik's claim for violation of § 17200.

In its prior order, the Court noted that the claim (as pled in the TAC) seemed

> to be based on three factual predicates: (1) Apple's coercing employees to provide personal data for Apple's commercial use, such as with the Gobbler application, *see* TAC ¶ 255 (alleging that no consent was obtained or compensation provided); (2) Apple's coercing employees to be a part of invasive studies, *see* TAC ¶ 258; and (3) Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly. *See* TAC ¶ 259. (To be frank, the Court does not understand the allegations made with respect to (3).)

Docket No. 73 (Order at 45).

Apple argued that Ms. Gjovik lacked statutory standing to proceed with the claim because she failed to allege that she lost money to Apple which Apple should disgorge. *See* Cal. Bus. & Prof. Code § 17203 (providing that a "court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition"); *see also Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California Supreme Court has "held that the only remedy expressly authorized by section 17203 was restitution to individuals who had an ownership interest in money paid to the defendants; there was nothing, either in the express language of the statute or in its legislative history, to indicate that the legislature intended to authorize a court to 'order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits'"). The Court agreed with Apple that disgorgement would not be an available remedy but stated that Apple had failed to explain why Ms. Gjovik lacked standing to pursue injunctive relief. The Court added that it was giving Ms. Gjovik leave to amend to clarify her claim based on AC Wellness. *See* Docket No. 73 (Order at 45-46).

1   In the pending motion, Apple moves to dismiss the § 17200 claim as repleaded in the 4AC,

2   even though Ms. Gjovik now seeks only injunctive relief and has dropped allegations related to

3   AC Wellness.  *See, e.g.*, 4AC ¶¶ 205-06 (asking the Court to order Apple "to disgorge unlawful

4   data and the fruit of the poisoned data" and to prohibit Apple "from using personal employee data

5   in for-profit product development"); *see also* Opp'n at 18 (stating that "Plaintiff does not need

6   economic restitution – and instead requests disgorgement (deletion) of data and software – not

7   money").  Apple has made multiple arguments – that Ms. Gjovik has made an amendment beyond

8   the scope permitted; that she lacks statutory standing to proceed with the claim; that she also lacks

9   Article III standing; that the claim is time barred; and that the relief sought is improper.  In her

10  opposition, Ms. Gjovik addresses at most the standing issues.  Because Ms. Gjovik has failed to

11  address the remaining arguments made by Apple, the Court deems any opposition waived, and

12  therefore dismissal of the claim is appropriate.

13  The Court also concludes, based on its independent review, that, at the very least, Apple's

14  arguments on the time bar and improper relief have merit.  Regarding the time bar, there is a four-

15  year limitations period under California Business & Professions Code § 17208.  Apple notes that,

16  in her prior pleading (the SAC), Ms. Gjovik alleged that Apple "coerced her to provide personal

17  data in August 2017, nearly seven years before she introduced this cause of action in March

18  2024."  Mot. at 8; *see also* SAC ¶¶ 136-42 (alleging that, in August 2017, an Apple engineering

19  manager emailed a list of Apple employees, including Ms. Gjovik, about a Gobbler user study and

20  that Ms. Gjovik was coerced to use the Gobbler application to provide biometrics and videos at a

21  supposed social event).  Ms. Gjovik cannot avoid her own allegations even if these allegations

22  were made in a prior pleading.  *See Bang Energy Drink*, 2021 U.S. Dist. LEXIS 146977, at *10

23  (N.D. Cal. June 30, 2021) (indicating that "factual allegations in a prior complaint are 'judicial

24  admissions,' and 'when the party fails to provide a credible explanation for its "error," the [c]ourt

25  may disregard the contradictory pleading").

26  Ms. Gjovik could have, but did not, contend there is no time bar because there is some

27  kind of continuing accrual, *i.e.*, because Gobbler is still on her personal account.  *See Aryeh v.*

28  *Canon Bus. Solns., Inc.*, 55 Cal. 4th 1185, 1198 (2013) (noting that, under the continuing accrual

United States District Court
Northern District of California

33

1 | in part the motion to dismiss.

2 | **I.      FACTUAL & PROCEDURAL BACKGROUND**

3 | The 5AC is largely consistent with the prior pleadings. That is, as before, the main

4 | categories of misconduct by Apple as alleged in the 5AC are as follows:

5 | (1) During her employment with Apple, Ms. Gjovik lived in an
6 | apartment near an Apple factory (known as the ARIA factory) and
| became ill because the factory released toxic substances into the
7 | environment.

8 | (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on
| a contaminated site subject to EPA regulation, *i.e.*, a Superfund
9 | site, and she became ill because of Apple's actions/omissions
| related to the site.

10 | (3) Apple made employees, including Ms. Gjovik, participate in
| studies related to Apple products that were invasive to their
11 | privacy.

12 | (4) Apple retaliated against Ms. Gjovik for making complaints about
13 | harassment and environmental safety. Ms. Gjovik's complaints
| included internal complaints, complaints to governmental
14 | agencies, complaints to the press, and complaints made in social
| media. The retaliation by Apple included but was not limited to
15 | the termination of Ms. Gjovik from employment.

16 | Docket No. 73 (Order at 2).

17 | Based on, *inter alia*, these factual allegations, Ms. Gjovik asserts the following causes of

18 | action in the 5AC:

19 | (1) Wrongful termination in violation of public policy.

20 | (2) Violation of the California Whistleblower Act. *See, e.g.*, Cal. Lab. Code §

21 | 1102.5(b) (providing that an employer "shall not retaliate against an employee

22 | for disclosing information . . . to [*inter alia*] a government or law enforcement

23 | agency [or] to a person with authority over the employee . . . if the employee

24 | has reasonable cause to believe that the information discloses a violation of a

25 | state or federal statute, or a violation of or noncompliance with a local, state, or

26 | federal rule or regulation").

27 | (3) Violation of California Labor Code § 6310. *See, e.g.*, *id.* § 6310(a) (providing

28 | that "[n]o person shall discharge or in any manner discriminate against any

2

*United States District Court*
*Northern District of California*

# EXHIBIT F

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | |
|---|---|
| Apple Inc | |

b. Tel. No.
(408) 996-1010

c. Cell No.

f. Fax. No.

d. Address *(Street, city, state, and ZIP code)*
2108 N St Ste 4553

CA Sacramento 95816

e. Employer Representative
Tim  Donald Cook
CEO

g. e-mail
tcook@apple.com

h. Number of workers employed
500

i. Type of Establishment *(factory, mine, wholesaler, etc.)*
Computer Hardware

j. Identify principal product or service
Consumer technology

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)  1,4 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

### 2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

### 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Ashley Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)* | |
|---|---|
| 2108 N St Ste 4553 CA Sacramento 95816 | |

4b. Tel. No.
(415) 964-6272

4c. Cell No.
(415) 964-6272

4d. Fax No.

4e. e-mail
ashleymgjovik@protonmail.com

### 5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

(signature of representative or person making charge)

Ashley Gjovik

(Print/type name and title or office, if any)

Tel. No.
(415) 964-6272

Office, if any, Cell No.
(415) 964-6272

Fax No.

e-mail
ashleymgjovik@protonmail.com

Address  2108 N St Ste 4553
Sacramento CA 95816

Date  03/06/2026 11:45:10 PM

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of sanctions & fines | 03/06/2026 |
| Ashley Gjovik | Petitioned court to take away legal rights | 03/06/2026 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of sanctions & fines | 03/06/2026 |
| Ashley Gjovik | Petitioned court to take away legal rights | 03/06/2026 |

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of sanctions & fines | 03/06/2026 |
| Ashley Gjovik | Petitioned court to take away legal rights | 03/06/2026 |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| PCA is a "baseless crusade" |

| |
|---|
| Labor organizers are "vexatious litigants" |
| Filing NLRB charges is "vexatious conduct" |
| Talking about work conditions is "leaking" |
| If NLRB charges are filed, content must be secret |
| Talking about NLRB charges is "leaking" |
| Retaliation complaints "harass" the employer |
| ULP complaints "harass" the employer |
| No more legal rights if file NLRB charges |
| Employer will seek court sanctions if ee complains |

## Additional Information in Support of Charge

**Charging Party Name :** Ashley Gjovik
**Inquiry Number :** 1-3780815971
**Date Submitted :** 03/06/2026 11:45:10 PM

Please provide a <u>brief</u> description of the specific conduct involved in your charge. The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed. After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

**Additional Information Provided:**

On March 6 2026, counsel for Apple Andrew M. Troop (Mass. Bar No. 547179) at PILLSBURY WINTHROP SHAW PITTMAN LLP filed papers to the Charging Party's Chapter 7 Bankruptcy at Docket no. 62 and 62-1. The filing made numerous defamatory and harassing allegations against the Charging Party; repeatedly claimed her NLRB charges were meritless, made in bad faith, and were misconduct; claimed the content of her complaints about work conditions and ULPs was secret, that the T&C of her employment was secret, and if she told anyone about the employer's misconduct she was "leaking" and deserved to be fired; asked the court to take her legal right to petition away (effectively denylisting her as a lawyer); threatened multiple forms of financial sanctions (while she's bankrupt, insolvent, and homeless); and repeatedly pointed to her PCA, NLRB charges, and participation in Board proceedings as the reason for Apple's retaliation against her.