**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# United States Bankruptcy Court

## District of Massachusetts

|  |  |
|---|---|
| **In Re:** | **Chapter 7 Case No: 25–11496** |
|  | **Judge Christopher J. Panos** |
| **Estate of** | |
| **Ashley M. Gjovik,** | **Debtor's Declaration and Exhibits In Support of the Motion for Sanctions against Apple Inc. (Dkt. 58, 59, 63, 65).** |

# DECLARATION & EXHIBIT

Pursuant to 28 U.S.C. § 1746, I, Ashley M. Gjovik, hereby declare as follows:

1. I filed a Motion for Sanctions against Creditor Apple Inc on Feb. 20 2026 for a willful violation of the stay. (Dkt. 58). I filed two prior Declarations with Exhibits at Dkt. 63 and 65.

2. The Motion is based on Apple's attempt to enforce the terms of a pre-petition executory contract against the Debtor, through a variety of litigation tools (used in an apparent attempt to conceal they were actually asserting counter claims and/or their own litigation against the Debtor).

3. At the time of filing the Motion for Sanctions, Apple had filed a Letter and emails to the court. Then Apple filed a Motion to Enforce a Protective Order formalizing the prior Letter and emails. (included in prior Declarations at Dkt. 63, 65).

4. On March 30 2026, Magistrate Judge Kandis Westmore in the Northern District of California ruled on Apple's Motion (and incorporated letters and emails) and denied the Motion finding Apple filed the Motion in direct and willful violation of a court order requiring meet/confer prior to filing and Apple had refused to meet/confer, and therefore she denied the Motion on the basis of Apple's refusal to comply with court orders.  Judge Westmore then proceeded to still issue the injunctions against the Debtor that Apple had requested including gag orders, take-down orders, and sealing orders. A true and correct copy of the Order is attached as Exhibit A.

5. I filed Objections to the Judge's Orders including about the injunctions, and argued among other legal theories, that the injunction is void due to the bankrupt stay. A true and correct copy of my Objections under Rule 72(a) are attached as Exhibit B.

6. Apple then subsequently emailed me via their counsel with Orrick and proceeding to attempt to enforce the gag order, take-down order, and sealing order. I responded complaining the Orders were void, that Apple's conduct was unlawful, and that they needed to wait to see what Judge Panos ruled on April 2 2026 at the hearing for sanctions against Apple. A true and correct copy of Apple's email is attached as Exhibit C.

7. I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct.

Executed on April 1 2026 in San Jose, California.


Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed April 1 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Apple and the Trustee) via the Court's electronic filing system (when the pro se clerk posts it). Apple already has copies of all of these as well served through efiling as they are court/legal documents in the civil litigation.

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 3:23-cv-04597-EMC (KAW)<br><br>**ORDER DENYING APPLE'S MOTION TO ENFORCE PROTECTIVE ORDER; ORDER TERMINATING MOTION TO SHORTEN TIME AS MOOT**<br><br>Re: Dkt. Nos. 294, 295 |

On February 20, 2026, the Court held a telephonic discovery conference to address Apple's allegations that Plaintiff was violating the stipulated protective order by publishing deposition testimony that Apple had designated confidential. (2/20/26 Minute Entry, Dkt. No. 288.) During the conference, the Court informed the parties that they needed to comply with the protective order, and that they were required to meet and confer before filing a formal motion. (2/20/26 Tr., Dkt. No. 301-1 at 64:5-15.) The Court cautioned that the failure to adequately meet and confer may result in the Court not considering the motion. *Id.* To further aid the parties, the Court specified that "[t]he meet-and-confer should consist of the substantive discussion about all of the designations and whether or not they are confidential or not." (2/20/26 Tr. at 64:22-24.)

Despite the admonition regarding the meet and confer requirement, Apple filed the instant motion to enforce the protective order without engaging in a meaningful effort to meet and confer. Instead, defense counsel last attempted to meet and confer with Plaintiff via email on February 18, 2026—two days before the telephonic discovery conference. (*See* Decl. of Melinda S. Riechert, Dkt. No. 294-1 ¶ 5.) That does not satisfy Apple's obligation to meet and confer prior to filing this motion. Accordingly, the Court DENIES the motion to enforce the protective order on that basis.

United States District Court
Northern District of California

Notwithstanding, Plaintiff is advised that she is bound by the stipulated protective order, including Section 6, which sets forth the method of challenging confidentiality designations. (Stipulated Protective Order, Dkt. No. 235 at 5.)  Thus, if Plaintiff has published information designated "Confidential" by Apple, that information is considered Confidential until found otherwise, and must be de-published until the Court resolves the pending motion to retain confidentiality (Dkt. No. 304).  To the extent that Confidential information has been posted on the public docket in this case, the parties are ordered to meet and confer regarding a stipulation to seal those docket entries, and they shall file a stipulation within 7 days of this order.  If the parties are unable to agree, Apple may file an administrative motion to seal, and the Court will be inclined to grant it.

Finally, The Court TERMINATES the motion to shorten time (Dkt. No. 295) as moot.

IT IS SO ORDERED.

Dated: March 30, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:23-cv-04597-EMC (KAW)<br><br>**OMNIBUS DISCOVERY ORDER; ORDER SETTING FINAL FACT DISCOVERY DISPUTE PROCESS**<br><br>Re: Dkt. Nos. 309, 310, 315, 317, 318, 319, 324 |

This case has produced an unprecedented number of discovery disputes, which has expended a considerable amount of the Court's limited judicial resources. In an effort to resolve the seven pending discovery letters (Dkt. Nos. 309, 310, 315, 317-319), the Court will address each dispute briefly and resolve them below.

Fact discovery closes on April 16, 2026. In the interest of judicial economy, the Court will also set forth the procedure by which the parties may raise any final issues involving fact discovery cut.

## I.    DISCOVERY LETTERS

### A.    Plaintiff's Request to Compel Supplemental Interrogatory Responses (Dkt. Nos. 309 & 317)

On March 16, 2026, Plaintiff filed a letter in which she seeks to compel supplemental responses to Interrogatory Nos. 1-16. (Dkt. No. 309.)

#### i.    Interrogatory No. 1

Interrogatory No. 1 asks that Apple "[s]tate in detail Defendant Apple Inc's complete and formal reason(s) for terminating Employee, Ashley Gjovik's, employment as of the time of the termination on Sept. 9[,] 2021[.]" *Id.*, Ex. A at 1.  Apple objected on the grounds that "complete

and formal" reasons for termination was vague, overly broad, and unduly burdensome. *Id.* Then, subject to objection, Apple provided a robust response spanning approximately three pages. *Id.* at 1-4. In opposition, Apple contends that it fully responded. (Dkt. No. 317 at 1.) The Court agrees. The fact that the response did not include every piece of information that Plaintiff seeks does not mean that the response was inadequate. It simply means that Plaintiff needs to use other discovery devices to obtain that specific information. Thus, the Court denies Plaintiff's request to compel a supplemental response to Interrogatory No. 1.

### ii.     Interrogatory No. 2

Interrogatory No. 2 seeks:

> For each affirmative defense Apple Inc asserts in Apple's Amended Answer (or otherwise plans to use in this litigation) that bars, limits, or reduces the employee's recovery on any claim in this action:
>
> (a) State the complete factual basis for each defense;
> (b) State the complete legal basis for each defense;
> (c) Identify all Documents that support each defense; and,
> (d) Identify all Persons with knowledge of facts supporting each defense.

(Dkt. No. 309, Ex. B at 2.) Apple objected on the grounds that, based on the 14 asserted affirmative defenses and the four subparts, this interrogatory contains 56 discrete subparts, which exceeds the limit of 25 interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1). *Id.*

Interrogatories virtually identical to Interrogatory No. 2 have been found to be improperly compound and in violation of Rule 33's numerical limitation on interrogatories. *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR (JSC), 2014 WL 7188779, at *6 (N.D. Cal. Dec. 16, 2014) ("[I]nterrogatories which contain multiple subparts, i.e., those which 'introduce a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it' are generally construed as separate interrogatories."). While the Court finds the interrogatory to be compound, the Court finds that each affirmative defense is a subpart, such that this counts as 14 interrogatories, rather than Apple's asserted 54. *See Synopsys, Inc. v. ATopTech, Inc,* 319 F.R.D. 293, 299 (N.D. Cal. 2016) (finding interrogatory seeking "facts, documents, and witnesses" subparts subsumed by the primary topic of the invalidity defense). Thus, the Court finds that Apple's counting methodology was flawed, and orders Apple to supplement its

United States District Court
Northern District of California

responses to this interrogatory for each of the 14 affirmative defenses.

Notwithstanding, Apple's objection to subpart (b) on the grounds that it calls for a legal conclusion is sustained.

Thus, Plaintiff's request to compel supplemental responses to interrogatory No. 2 is granted in part, and Apple shall serve supplemental responses consistent with this order within 7 days.

### iii.    Interrogatory Nos. 3-16

Although Plaintiff seeks supplemental responses to Interrogatory Nos. 3-16, she only attached Interrogatory No. 3 to her letter. Thus, the Court cannot possibly address Interrogatory Nos. 4-16. Interrogatory No. 3, however, asks:

> Do You contend that Plaintiff engaged in any "protected activity" as defined under federal or state whistleblower, retaliation, or labor laws during her employment with Apple?
>
> (a) If yes, identify each such activity with date ranges for the acknowledged activity.
>
> (b) If no, state that You contend Plaintiff engaged in no protected activities.

(Dkt. No. 309, Ex. B at 6.)  Apple objected on the grounds that it exceeded the 25-interrogatory limit set forth in Rule 33(a)(1), that it contains discrete subparts, and presumably on some other bases.[1] *Id.*  As discussed above, Apple miscounted its interrogatories, so the Court finds that Plaintiff had not exceeded her 25-interrogatory limit. Thus, Apple is ordered to supplement its responses to Interrogatory No. 3, which will be the sixteenth interrogatory. Apple must then answer the next nine interrogatories propounded, which are Interrogatory Nos. 4-12. All other interrogatories exceed the Rule 33 limit, and no response is required. Apple shall serve supplemental response within 7 days of this order.

### B.    Plaintiff's Request to Compel Supplemental Responses to Requests for Production of Documents (Dkt. Nos. 310 & 318)

Next, Plaintiff seeks to compel documents in response to Request Nos. 7-10, 23, 24, 28-32, 37, 40-44, and 54. (Dkt. No. 310.)  These can be broken down into two categories of documents:

---

[1] Apple's complete response to Interrogatory No. 3 was also not provided.

environmental records and documents referencing Plaintiff.

i.    **Environmental Requests (Nos. 7-10, 23, 24, 28-32)**

Plaintiff states that "[e]very one of these Requests seeks evidence of Plaintiff's environmental, health, and safety ("EH&S")-related protected activity and Apple's knowledge of it — threshold elements of all four retaliation causes of action in this case." (Dkt. No. 310 at 1.)

In opposition, Apple argues that this dispute is premature, because the only request Plaintiff attempted to meet and confer on was No. 23. (Dkt. No. 318 at 1.) The meet and confer emails attached to Plaintiff's letter confirm that the accuracy of this representation. (Dkt. No. 310, Ex. B.) Indeed, parties are not permitted to raise disputes before the Court regarding specific requests without having first discussed them in an attempt to narrow the scope of the dispute.[2] As a result, the Court finds that the only request remotely ripe for resolution is Request No. 23.

Regarding Request No. 23, Apple contends that the documents sought are unrelated to whether Apple retaliated against her. (Dkt. No. 318 at 1.) Request No. 23 seeks "[a]ll internal audits, assessments, or reports concerning environmental hazards, chemical exposure, vapor intrusion, or air quality testing at Apple's 825 Stewart Drive and 3250 Scott Boulevard campuses between January 1, 2019 and the present." (Dkt. No. 310, Ex. A at 30.) Apple objected on several grounds, including relevancy and proportionality. *Id.*

Plaintiff's retaliation case includes allegations that she was retaliated against for reporting environmental hazards to the California Department of Industrial Relations ("DIR"). It would follow that the existence of those hazards may be relevant to Plaintiff's retaliation claims. Apple's proportionality argument, however, is well taken, but narrowing the relevant time period from January 1, 2019 to October 31, 2021[3] should obviate that concern. Thus, the Court orders Apple to produce all responsive, non-privileged documents in response to Request No. 23 for the narrowed time period within 14 days of this order.

---

[2] The Court recognizes that the parties met and conferred regarding Request No. 20, which is not part of this dispute, and it appreciates the efforts of the parties to resolve that dispute without court intervention.

[3] Plaintiff's last DIR complaint was filed in September 2021. (Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss, Dkt No. 179 at 30.)

4

### ii.     Requests References Plaintiff (Nos. 37, 40-44, 54)

The remaining requests seek information referencing Plaintiff. As discussed above, none of these requests were part of the meet and confer process, so any request to compel responses is premature.  Nonetheless, if Apple has not done so already, it shall, subject to the stipulated protective order, produce Plaintiff's personnel file with 7 days of this order.

### C.     Defendant's Request to Continue Plaintiff's Deposition (Dkt. Nos. 315 & 319)

On March 19, 2026, Apple filed a discovery letter seeking an additional four hours to depose Plaintiff. (Dkt. No. 315 at 1.)  In sum, Plaintiff agreed to the additional four hours in January, but, given the other disputes in this case, she is now refusing to undergo further deposition without a court order. *Id.* at 2, Exs. A & B.  Apple argues that Plaintiff cannot withdraw from the stipulation, and, in the alternative, that good cause exists under Federal Rule of Civil Procedure 30(d)(1). *Id.* at 1, 4.

In opposition, Plaintiff acknowledges that she agreed to the additional time, but that Apple's request should be denied for three reasons. (Dkt. No. 319 at 2.)  First, the agreement was conditioned on her ability to object to improper questions,[4] which are the same objections to which Apple is arguing were improper. *Id.* Second, Apple was dilatory in noticing the deposition. *Id.*  Third, Apple's refusal to fulfill its discovery obligations renders the demand for further testimony not proportional. *Id.*

As an initial matter, whether Apple has satisfied its discovery obligations in this case is independent from Plaintiff's discovery obligations— there is no tit for tat.  Furthermore, Plaintiff informed the Court at the February 20, 2026 discovery conference that she agreed to undergo four additional hours of deposition. (2/20/26 Tr., Dkt. No. 301-1 at 46:10-17.)  The Court is going to hold her to that agreement and representation, and orders Plaintiff to undergo four additional hours of deposition. The parties are ordered to meet and confer regarding scheduling, but the deposition shall occur by April 8, 2026.

---

[4] For the sake of time, if Plaintiff believes an objection is warranted, she is ordered to state her objection on the record and then answer the question subject to objection unless it calls for privileged information. Admissibility will be addressed before trial.

**D.** **Plaintiff's Request regarding Production of Medical Records obtained by Subpoena[5]**

Finally, Plaintiff seeks to compel "Apple to amend its subpoenas to include dual-production language directing providers to produce Plaintiff's medical records simultaneously to both parties, so that Plaintiff receives unrestricted copies of her own records outside the Protective Order framework." (Dkt. No. 324 at 1.)

The Court will resolve this dispute without Apple's response. Apple subpoenaed those medical records, and it is under no obligation to produce them at this juncture. Indeed, Plaintiff can request her own medical records from her provider(s) at any time, and that does not render them any less confidential. Thus, Plaintiff's request is denied.

## II. PROCESS FOR ALL OTHER DISPUTES REGARDING FACT DISCOVERY

Fact discovery closes on April 16, 2026. (Dkt. No. 274.) The last day to bring a dispute to the Court's attention is seven days after the cut-off, which is April 23, 2026. *See* Civil L.R. 37-3 (N.D. Cal. 2025).

In an effort to preserve the Court's limited resources, the parties will have one final opportunity to address all outstanding fact discovery issues not otherwise pending. All filings must be on pleading paper, formatted in accordance with Civil Local Rule 3-4, and in Times New Roman font (12-point type or larger). The failure to comply with the Civil Local Rules, including the requirement that footnotes be in 12-point font, or attempting to circumvent the page limits through liberal use of footnotes, exhibits, or other attachments, may result in an adverse finding to the violating party.[6]

**Most importantly, all disputes not raised in these briefs will be deemed waived**; the letters **must** encompass all remaining fact discovery disputes for which the parties seek court intervention. The procedure is outlined below:

1. The parties shall meaningfully meet and confer via email regarding every outstanding

---

[5] Plaintiff included 68 pages of exhibits, which violates the Court's Civil Standing Order, which permits only 12 pages of exhibits. As a result, the Court did not review them.
[6] The parties are not permitted to attach supporting declarations. The inclusion of a particular issue in the respective brief, and the attachment of the respective email thread, will be considered the filer's attestation that the parties sufficiently met and conferred prior to filing.

issue. To give the parties an opportunity to meaningfully meet and confer, each party shall raise their initial dispute(s) with the opposing party via email by **April 9, 2026** (one week before the discovery cut-off) in a single email (e.g. Plaintiff sends one email to Defendant with all outstanding disputes and vice versa).  The parties will then go back and forth on the same email thread in an attempt to narrow the scope of any remaining disputes.

    a.  To ensure that the parties have adequately met and conferred, the initiating party shall attach a copy of their complete, email thread as an exhibit to the opening and responsive briefs only.

    b.  If the dispute involves written discovery, the opening brief should include the pertinent request(s) and response(s) as an exhibit.

2. Plaintiff's opening discovery brief shall be filed by **April 23, 2026**. The brief shall not exceed 15 pages.

3. Defendant's responsive brief is due **April 30, 2026**. Therein, Defendant shall respond to Plaintiff's opening brief and raise any additional disputes. The brief shall not exceed 25 pages.

4. Plaintiff shall file a responsive brief by **May 7, 2026**, in which she responds only to the disputes Apple is raising. She is not to address any disputes raised in the opening brief or raise any new issues.  This brief shall not exceed 10 pages.

5. Each side gets a total of 25 pages, which, given the sheer volume of fact discovery disputes to date, should be more than sufficient to address any remaining issues.  The Court will take the disputes under submission with the caveat that it may set an in-person discovery conference if deemed necessary.

IT IS SO ORDERED.

Dated: March 30, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

7

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:     +1 202 339 8400
Facsimile:     +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>                Plaintiff,<br><br>     v.<br><br>APPLE INC.,<br><br>                Defendant. | Case No. 23-cv-4597-EMC<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO SEAL**<br><br>Dept:    Courtroom TBD<br>         1301 Clay Street<br>         Oakland, CA 94612<br>Judge:   Honorable Kandis A. Westmore |

<u>~~PROPOSED~~ ORDER</u>

Pursuant to Local Rules 7-11 and 79-5, Defendant Apple Inc. ("Apple") filed an Administrative Motion to File Under Seal ("Motion") in connection with its Motion to Enforce Protective Order, and good cause to seal having been shown, the Court GRANTS Apple's Motion and Orders sealed the following:

| Document Description | Portions Sought to Be Sealed |
|---|---|
| Apple's Motion to Enforce the Protective Order | Portions containing material designated by Apple as Confidential pursuant to the Protective Order (highlighted in yellow in the filed under seal version) |
| Exhibit A to the Declaration of Melinda Riechert in Support of Apple's Motion to Enforce Protective Order | Portions of Plaintiff's deposition transcript containing material designated by Apple as Confidential pursuant to the Protective Order (highlighted in yellow in the filed under seal version) |
| Exhibit B to the Declaration of Melinda Riechert in Support of Apple's Motion to Enforce Protective Order | Entire document |

**IT IS SO ORDERED.**

DATED: March 30, 2026

By: _____
Hon. Kandis A. Westmore
United States Magistrate Judge
.

# EXHIBIT B

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY M. GJOVIK**, *an individual*, | **CASE NO.** **3:23-CV-04597-EMC** |
| Plaintiff, | |
| vs. | **PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO PROPOSED SEALING ORDER AT DKT. 329** |
| **APPLE INC.**, *a corporation*, | |
| Defendant. | |

# TABLE OF CONTENTS

**INTRODUCTION**............................................................................................................ 2

**STANDARD OF REVIEW** ............................................................................................ 3

THE LEGAL FRAMEWORK FOR SEALING JUDICIAL RECORDS ................................................. 3

**ISSUES** ........................................................................................................................ 4

ISSUE 1: DOES THE PROPOSED SEALING ORDER SATISFY ANY ELEMENT OF THE KAMAKANA
    FRAMEWORK OR LOCAL RULE 79-5? .......................................................................... 4

ISSUE 2: DO VALID CONFIDENTIALITY DESIGNATIONS EXIST TO SUPPORT THE SEALING
    ORDER? ................................................................................................................. 6

ISSUE 3: IS THE INFORMATION APPLE SEEKS TO SEAL PUBLICLY KNOWN? .......................... 7

ISSUE 4: DOES ENTERING THE PROPOSED ORDER PREJUDICE PLAINTIFF'S ABILITY TO FILE
    HER SUMMARY JUDGMENT MOTION ON THE PUBLIC DOCKET? .................................... 8

**TIMELINESS** ............................................................................................................... 9

**RELIEF REQUESTED** ................................................................................................. 9

## PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO PROPOSED SEALING ORDER AT DKT. 329

1.      This filing is made as of right under Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and N.D. Cal. Civil Local Rule 72-2. It is not an administrative motion. It objects to the Magistrate Judge's order at Dkt. 329 and presents four issues for this Court's review. These include questions of law under the Ninth Circuit's sealing framework (*Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)), N.D. Cal. Civil Local Rule 79-5, and the public's constitutional right of access to judicial records, each of which is reviewed de novo as "contrary to law." Local Rule 72-2 provides that the assigned judge "shall consider the objections and modify or set aside any portion of the order" found to be clearly erroneous or contrary to law. Plaintiff respectfully requests that this Court address each numbered issue on the merits and requests oral argument.

# INTRODUCTION

2.      Plaintiff respectfully objects under Rule 72(a) to the proposed sealing order at Dkt. 329, filed March 30, 2026. Apple's counsel drafted the proposed order and filed it the same day Dkt. 326 directed the parties to meet and confer about sealing within seven days — before any meet-and-confer occurred. The proposed order asks the court to find that "good cause to seal having been shown." No good cause has been shown by anyone.

3.      The proposed order fails every requirement of the Ninth Circuit's sealing framework. No declaration has been filed. No particularized harm has been identified. No specific content has been analyzed. The order's sole basis for sealing is that documents contain "material designated by Apple as Confidential pursuant to the Protective Order." N.D. Cal. Civil L.R. 79-5(c) provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." The proposed order's sole basis for sealing is the one basis the Local Rules say does not work.

4.      The information Apple seeks to seal is publicly known. The designated subject matter — Apple's employee studies involving menstruation, ovulation, and cervical mucus — appears in six complaints on this docket, two published orders by this Court, NLRB proceedings dating to 2021, a peer-reviewed journal article, the federal ClinicalTrials.gov registry, a GAO report, and international press coverage. The 197-page Request for Judicial Notice at Dkt. 321 documents all of it. Sealing publicly known

information serves no legitimate purpose and creates the appearance that judicial proceedings are being conducted in secret when the underlying facts are freely available to anyone.

5.     The sealing basis also depends on designations challenged in Plaintiff's pending Rule 26(g) motion (Dkt. 302), which presents undisputed evidence that the designations are unsigned, untimely, and uncured. If the designations are stricken under Rule 26(g)(2)'s mandatory striking provision or waived under Protective Order § 6.3, there is nothing to seal. The Magistrate Judge has not resolved the 26(g) motion and has given no indication of when she will do so. Entering a sealing order based on designations a fully briefed motion demonstrates are void prejudices Plaintiff and the public's right of access.

# STANDARD OF REVIEW

6.     Under Rule 72(a), a magistrate judge's order on a non-dispositive pretrial matter must be set aside if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Legal questions are reviewed de novo as "contrary to law." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## THE LEGAL FRAMEWORK FOR SEALING JUDICIAL RECORDS

7.     "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). The Ninth Circuit starts "with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

8.     Under *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), the Ninth Circuit applies a two-tier framework. For documents filed in connection with dispositive motions (including summary judgment), the party seeking sealing must show "compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." Id. at 1178-79. For documents filed in connection with non-dispositive motions, the party must make a "particularized showing" of "good cause" under Rule 26(c). Id. at 1179-80.

9.     Under either standard, the party seeking sealing bears the burden. *Foltz*, 331 F.3d at 1130. The party must "articulate the specific prejudice or harm that will flow from disclosure." *Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1210-11 (9th Cir. 2002). Conclusory assertions of

confidentiality are insufficient. Id. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

10.    N.D. Cal. Civil Local Rule 79-5 imposes additional requirements. Rule 79-5(a) requires narrow tailoring: only the specific portions warranting sealing may be filed under seal. Rule 79-5(b) requires a supporting declaration establishing sealability. Rule 79-5(c) provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Rule 79-5(d) requires the proposed order to identify specific documents and reasons.

# ISSUES

## ISSUE 1: DOES THE PROPOSED SEALING ORDER SATISFY ANY ELEMENT OF THE KAMAKANA FRAMEWORK OR LOCAL RULE 79-5?

*Standard: Contrary to law — de novo review.*

11.    The proposed order at Dkt. 329 fails every requirement of the sealing framework:

12.    ***No findings.*** The order states "good cause to seal having been shown." It identifies no harm that would result from disclosure. It weighs no competing interests. It makes no factual findings. The "good cause" language is Apple's language in a proposed order Apple's counsel drafted — it is not the court's independent analysis.

13.    ***The declaration is conclusory and establishes nothing.*** Local Rule 79-5(b) requires a declaration "establishing that the document, or portions thereof, are sealable." Apple filed a declaration (Dkt. 293-1). It is two paragraphs. The first paragraph states that Apple seeks to seal "material Apple designated as Confidential pursuant to the Protective Order." The second paragraph states that counsel emailed Plaintiff requesting a stipulation and Plaintiff declined. That is the entirety of the declaration. It does not identify any harm that would result from disclosure. It does not describe what specific information Apple considers confidential or why. It does not articulate any trade secret, competitive injury, or business sensitivity. It does not address alternatives to sealing. The declaration's sole substantive content — that Apple designated the material under the Protective Order — is the very basis Local Rule 79-5(c) says is insufficient. The declaration does not "establish sealability"; it restates the designation that the Local Rules

say cannot establish sealability.

14.    ***Sole basis is protective order designations.*** The order's only stated reason for sealing is that documents contain "material designated by Apple as Confidential pursuant to the Protective Order." Local Rule 79-5(c) expressly states this is "not sufficient to establish that a document, or portions thereof, are sealable." The proposed order's sole basis for sealing is the one basis the Local Rules say does not work.

15.    ***No narrow tailoring.*** The proposed order seals Exhibit B to the Riechert Declaration in its entirety. Local Rule 79-5(a) requires that only the specific portions warranting sealing be sealed. Sealing an entire exhibit without identifying which portions contain sealable material violates the narrow-tailoring requirement.

16.    ***Filed before meet-and-confer.*** The proposed order was filed March 30, 2026 — the same day Dkt. 326 directed the parties to meet and confer about sealing within seven days. Apple filed a proposed sealing order before the court-ordered meet-and-confer occurred. The order Apple asks the court to sign was drafted before the process the court ordered had begun.

17.    ***Wrong standard.*** Apple may contend that its enforcement motion is non-dispositive and therefore subject only to the "good cause" standard. But the Ninth Circuit has held that the relevant inquiry is not whether the motion is technically dispositive, but whether the documents "bear on" or are "more than tangentially related to" the merits. *Center for Auto Safety v. Chrysler Group LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016).

18.    The documents Apple seeks to seal — its Motion to Enforce the Protective Order and supporting declaration — relate to the enforcement of confidentiality designations that are directly relevant to the merits of this whistleblower retaliation case. Apple's own filing connects the designations to its termination defense: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." (Dkt. 280, fn. 2). Documents going to the question of whether Plaintiff's speech was protected or wrongful — the central merits question — are more than tangentially related to the merits. The "compelling reasons" standard applies. Apple has not attempted to meet it.

19.    Requested ruling: (a) Does the proposed order satisfy any element of *Kamakana, Foltz*, or Local Rule 79-5? (b) Can a court enter a sealing order without a supporting declaration? (c) Does the "compelling reasons" standard apply to these documents given their connection to the merits? (d) Is

sealing an entire exhibit consistent with the narrow-tailoring requirement of Local Rule 79-5(a)?

## ISSUE 2: DO VALID CONFIDENTIALITY DESIGNATIONS EXIST TO SUPPORT THE SEALING ORDER?

*Standard: Contrary to law — de novo review.*

20.     Even if the *Kamakana* procedural requirements had been met, the proposed sealing order has no substantive basis because the underlying designations are invalid. Whether valid designations exist is the subject of Plaintiff's Rule 26(g) Motion (Dkt. 302), filed March 6, 2026, fully briefed March 27, and set for hearing April 16. The motion presents undisputed evidence:

21.     (a) Apple imposed a blanket designation covering approximately 72% of the deposition on December 16, 2025, triggered at the moment Plaintiff began discussing the NLRB settlement. (Dkt. 302 at 18; Dkt. 302-2, Dep. Tr. at 63:14-64:2).

22.     (b) Plaintiff objected on the record. Apple acknowledged the objection and agreed to narrow. (Dkt. 304-2, Ex. A at 141:18-142:25).

23.     (c) Apple filed no motion to retain confidentiality within 21 days as required by Protective Order § 6.3. Under § 6.3's mandatory language, designations "shall automatically be considered waived." The blanket designation was waived no later than January 6, 2026.

24.     (d) Apple's February 4, 2026 narrowed designation chart was unsigned, undated, and unserved. It was emailed to the court reporter with Plaintiff copied "for notice purposes." (Dkt. 302 at 9-11).

25.     (e) Plaintiff called the Rule 26(g)(1) signature deficiency to Apple's attention repeatedly in writing. Apple expressly refused to cure: "Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM).

26.     (f) Rule 26(g)(2) provides that the court "must strike" an unsigned discovery document when the omission has been called to the party's attention and not promptly cured. "Must" is mandatory. There is no balancing test or substantial justification exception for the striking itself.

27.     If the designations are stricken under Rule 26(g)(2) or waived under Protective Order § 6.3, there is nothing to seal. The proposed order depends entirely on the validity of designations a pending, fully briefed motion demonstrates are void. The Magistrate Judge has not resolved the 26(g) motion and has given no indication of when she will do so.

28.     Requested ruling: (a) Must the court resolve the pending Rule 26(g) motion (Dkt. 302) before entering a sealing order based on the designations that motion challenges? (b) If the designations are stricken or waived, does the proposed sealing order have a remaining legal basis?

## ISSUE 3: IS THE INFORMATION APPLE SEEKS TO SEAL PUBLICLY KNOWN?

*Standard: Contrary to law — de novo review.*

29.     Independent of the procedural deficiencies (Issue 1) and the designation invalidity (Issue 2), the proposed sealing order fails on the most basic ground: the information Apple seeks to seal is publicly known. There is no interest in sealing information the public already has.

30.     The documents Apple seeks to seal are its Motion to Enforce the Protective Order and the supporting declaration, which reference Plaintiff's deposition testimony about Apple's employee studies involving menstruation, ovulation, and cervical mucus. This subject matter has been in the public domain since 2021, through:

- • Six successive complaints filed on this docket dating to December 2023;
- • This Court's published orders (Dkt. 73 at 7-8: "invasive, oppressive, and humiliating medical studies"; Dkt. 179 at 2);
- • NLRB proceedings dating to August 2021 (Case No. 32-CA-284428);
- • A peer-reviewed publication in the American Journal of Obstetrics and Gynecology (Mahalingaiah et al., vol. 226(4) (2022));
- • The federal ClinicalTrials.gov registry (NCT04196595);
- • A Government Accountability Office report (GAO-24-107639);
- • Press coverage in the United States, Germany, France, and the United Kingdom.

Plaintiff's 197-page Request for Judicial Notice (Dkt. 321) documents all of the above.

31.     The Protective Order's own Section 3 excludes from its coverage "any information that is or becomes publicly known through no fault of the receiving party" and "any information known to the receiving party prior to the disclosure." Every item Apple designated falls within at least one of these exclusions. If the information cannot be validly designated under the Protective Order's own terms, it cannot be sealed based on those designations.

32.     Sealing publicly known information serves no legitimate purpose. It does not protect trade

secrets — the information is already public. It does not prevent competitive harm — the information is already known. It creates the appearance that judicial proceedings are being conducted in secret when the underlying subject matter is freely available to anyone with a search engine. In Kamakana itself, the Ninth Circuit noted that the government's redaction requests were undermined by the fact that the same information was "already publicly available" in other filings. 447 F.3d at 1183-84.

33.     If this theory of sealing were accepted — that information is sealable because Apple designated it, regardless of whether it is publicly known — the logical consequence would require sealing substantial portions of the existing public docket. Plaintiff's complaints, this Court's published orders, and Apple's own filings all discuss the same subject matter Apple now seeks to seal. The theory cannot be limited to Dkt. 329 without conceding that the designation is the basis for sealing, which is what Local Rule 79-5(c) prohibits.

34.     Requested ruling: (a) Can publicly known information be sealed? (b) If the same subject matter appears in published court orders, complaints, NLRB proceedings, peer-reviewed journals, and federal registries, is there any remaining interest in sealing references to that subject matter in Apple's enforcement motion? (c) Are the Section 3 exclusions in the Protective Order enforceable, and if so, can information excluded under Section 3 be the basis for a sealing order?

### ISSUE 4: DOES ENTERING THE PROPOSED ORDER PREJUDICE PLAINTIFF'S ABILITY TO FILE HER SUMMARY JUDGMENT MOTION ON THE PUBLIC DOCKET?

*Standard: Contrary to law — de novo review. Due process.*

35.     If the proposed sealing order is entered, it establishes a precedent that information designated by Apple is sealable based on the designation alone. Plaintiff's summary judgment motion will necessarily discuss the same subject matter. Under this precedent, Plaintiff would be required to file her summary judgment motion under seal, submit a declaration supporting sealing under Local Rule 79-5(b), and comply with the *Kamakana* framework — all while her pending 26(g) motion argues the designations are invalid and no good cause exists.

36.     Plaintiff cannot in good faith submit a declaration stating that designated material should be sealed when her pending motion argues precisely the opposite. The court would be placing Plaintiff in

a position where she must either submit a declaration she believes is false (implicating Rule 11) or file publicly and risk contempt. The solution is to resolve the designation validity question before entering sealing orders that create this conflict.

37.    Requested ruling: (a) If the proposed order is entered, must Plaintiff file her summary judgment motion under seal and submit a sealing declaration? (b) If so, how should Plaintiff comply when her pending motion argues the designations are invalid? (c) Must the 26(g) motion be resolved before entering sealing orders that will affect the summary judgment filing?

# TIMELINESS

38.    These objections are timely. The proposed order at Dkt. 329 was filed March 30, 2026. Rule 72(a) allows objections within 14 days. This filing is submitted within that period.

# RELIEF REQUESTED

39.    Plaintiff respectfully requests that this Court rule on each of the four numbered issues above, and:

40.    Reject the proposed sealing order at Dkt. 329. The order was filed without the required meet-and-confer, without a supporting declaration, without Kamakana findings, without narrow tailoring, and on a basis Local Rule 79-5(c) expressly says is insufficient;

41.    Order that the pending Rule 26(g) motion (Dkt. 302) be resolved before any sealing order is entered based on the designations that motion challenges;

42.    Rule on whether publicly known information — information that appears in published court orders, complaints, NLRB proceedings, peer-reviewed journals, and federal registries — can be sealed based on a party's unilateral designation;

43.    Rule on whether the Protective Order's Section 3 exclusions are enforceable, and if so, whether information excluded under Section 3 can be the basis for a sealing order;

44.    Clarify the effect of any sealing order on Plaintiff's ability to file her summary judgment motion on the public docket;

45.    Grant such other relief as this Court deems just.

Respectfully submitted,

**/s/ Ashley M. Gjovik**

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

Filed March 31 2026 in San José, California

(408) 883-4428

ashleymgjovik@protonmail.com

2108 N. St. Ste. 4553, Sacramento, CA 95816

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK**,

*an individual*,

    Plaintiff,

    vs.

**APPLE INC.**,

*a corporation,*

    Defendant.

**CASE NO.**

**3:23-CV-04597-EMC**

**PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO MAGISTRATE JUDGE'S ORDER AT DKT. 327**

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................ 1

**STANDARD OF REVIEW** ................................................................. 2

**ISSUES FOR REVIEW** ..................................................................... 2

**ISSUE 1: DOES THE DISCOVERY DISPUTE SCHEDULE RENDER RELIEF UNAVAILABLE BEFORE SUMMARY JUDGMENT, AND DID THE COURT CREATE THE BACKLOG IT NOW USES TO JUSTIFY THE COMPRESSED SCHEDULE?** 2

**ISSUE 2: DOES THE CONTINUED DEPOSITION ORDER, COMBINED WITH THE DESIGNATION FRAMEWORK AND GAG ORDER, CREATE AN EXPANDING SPEECH RESTRICTION ON THE EVE OF SUMMARY JUDGMENT?** 5

**ISSUE 3: DID THE COURT ADDRESS THE DISPUTES OVER "I DON'T UNDERSTAND" AND IMPROPER QUESTIONS THAT PLAINTIFF RAISED AS CONDITIONS OF THE CONTINUED DEPOSITION?** 7

**ISSUE 4: DID THE COURT COMMIT FOUR COMPOUNDING ERRORS ON THE MEDICAL RECORDS REQUEST?** 9

**ISSUE 5: IS THE INTERROGATORY COUNT CORRECT, AND DID THE COURT ERR BY REFUSING TO CONSIDER INTERROGATORIES 4-16?** 10

**ISSUE 6: DOES SUSTAINING APPLE'S OBJECTION TO THE LEGAL BASIS SUBPART CONFLICT WITH RULE 33(A)(2)?** 11

**ISSUE 7: IS APPLE'S RESPONSE TO INTERROGATORY NO. 1 ADEQUATE UNDER RULE 33(B)(3)?** 12

**ISSUE 8: WERE FIFTEEN RFPs PROPERLY DENIED FOR INSUFFICIENT MEET AND CONFER?** 13

**ISSUE 9: DOES ORDERING PRODUCTION OF THE PERSONNEL FILE ADDRESS THE ACTUAL REQUESTS?** 14

**ISSUE 10: DOES THE DISCOVERY SCHEDULE FORECLOSE PLAINTIFF'S ABILITY TO RAISE THE COURT REPORTER ACCESS PROBLEM BEFORE DISCOVERY CLOSES?** 15

**TIMELINESS** .................................................................................. 16

**RELIEF REQUESTED** ..................................................................... 16

# PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO MAGISTRATE JUDGE'S ORDER AT DKT. 327

### (OMNIBUS DISCOVERY ORDER; ORDER SETTING FINAL FACT DISCOVERY DISPUTE PROCESS)

1. This filing is made as of right under Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and N.D. Cal. Civil Local Rule 72-2. It is not an administrative motion. It objects to the Magistrate Judge's order at Dkt. 327 and presents ten issues for this Court's review. These include questions of law under the Federal Rules of Civil Procedure — including the interpretation of Rules 26(c), 33, 34, and 30 — and questions of due process arising from the interaction of the discovery schedule with this Court's summary judgment deadline, each of which is reviewed de novo as "contrary to law." Local Rule 72-2 provides that the assigned judge "shall consider the objections and modify or set aside any portion of the order" found to be clearly erroneous or contrary to law. Plaintiff respectfully requests that this Court address each numbered issue on the merits and requests oral argument.

# INTRODUCTION

2. Plaintiff respectfully objects under Rule 72(a) to the Omnibus Discovery Order at Dkt. 327, entered March 30, 2026. The order resolves seven pending discovery letters, orders Plaintiff to sit for four additional hours of deposition by April 8, and establishes a sua sponte final discovery dispute schedule that no party requested.

3. The order opens by noting "an unprecedented number of discovery disputes." It uses this premise to justify a compressed briefing schedule that runs past this Court's April 27, 2026 summary judgment deadline at Dkt. 274 — with Plaintiff's opening brief due April 23, Apple's response due April 30, and Plaintiff's reply due May 7. The order does not once reference the summary judgment deadline in its seven pages or what the pending issues are that required the schedule, as no other Letters are filed or pending. All disputes not raised within the page limits are deemed waived. No ruling will issue before the dispositive motion is due. As detailed in Issue 1, the volume of unresolved disputes is the consequence of Apple's bad faith discovery conduct and the court's own February 2025 refusal to hold the discovery conference Plaintiff requested fourteen months ago. Plaintiff's objection to that refusal is preserved on appeal (9th Cir. Case No. 25-2028).

4. The substantive rulings contain multiple errors. The court counted one interrogatory as fourteen based on the number of affirmative defenses Apple chose to plead, following neither of its own cited authorities. It denied fifteen of seventeen document requests on a meet-and-confer finding that is contradicted by the emails in the record — then ruled on the remaining two requests in a way that necessarily rejected the legal theory Apple asserted on all of them. It found Apple's three-page response to "what is the reason for termination" "adequate" despite naming no decision-maker, and told Plaintiff to "use other devices" when every alternative device is blocked by Apple's conduct, foreclosed by this same order, or practically inaccessible to a pro se litigant. It ruled on the medical records request without obtaining Apple's response, without reviewing Plaintiff's 68 pages of exhibits, and without understanding what Plaintiff actually asked for. It ordered production of a "personnel file" nobody requested, in response to requests for system access logs, threat assessments, and monitoring records that are not personnel file materials. Each issue below identifies the specific error, the applicable standard of review, and a requested ruling.

# STANDARD OF REVIEW

5. Under Rule 72(a), a magistrate judge's order on a non-dispositive pretrial matter must be set aside if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Legal questions — including statutory interpretation and application of the Federal Rules — are reviewed de novo as "contrary to law." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991); *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3d Cir. 1992).

## ISSUES FOR REVIEW

### ISSUE 1: DOES THE DISCOVERY DISPUTE SCHEDULE RENDER RELIEF UNAVAILABLE BEFORE SUMMARY JUDGMENT, AND DID THE COURT CREATE THE BACKLOG IT NOW USES TO JUSTIFY THE COMPRESSED SCHEDULE?

*Standard: Contrary to law — de novo review. Due process.*

6. Dkt. 327 opens by noting "[t]his case has produced an unprecedented number of discovery

disputes, which has expended a considerable amount of the Court's limited judicial resources." The court uses this premise to justify a compressed omnibus schedule that no party requested. Like the de-publication order at Dkt. 326, this schedule was imposed sua sponte. The schedule runs past summary judgment, requires all remaining disputes to be briefed simultaneously with summary judgment preparation, and deems waived any dispute not raised within the page limits. The premise for this schedule is the court's own creation.

7.      The causal chain is documented in the record. In February 2025 — fourteen months before these orders — Plaintiff filed four discovery letters (Dkt. 162-165) identifying the disputes that were already accumulating. She specifically requested a telephonic conference to address them before they grew. (Dkt. 162 at 1: "A discovery conference with Judge Westmore is necessary to break this impasse"). The court refused. It terminated all four letters because they were unilateral (Dkt. 170) and ordered the parties to meet and confer.

8.      Plaintiff objected. She filed a motion for reconsideration (Dkt. 171) specifically requesting a judge-supervised conference because Apple was refusing to engage. The court denied it (Dkt. 181). Plaintiff raised the issue on appeal (9th Cir. Case No. 25-2028), warning that the court's refusal to intervene would result in an unmanageable accumulation of disputes. That is what occurred. Apple refused to meet and confer for months. (Dkt. 220, Exs. A, H, I). Apple then filed its own unilateral letter (Dkt. 219), which the court entertained. The asymmetry is on the record: Plaintiff's unilateral letters were terminated; Apple's unilateral letter was heard.

9.      Plaintiff's objection to the February 2025 order is preserved. She raised the issue on appeal to the Ninth Circuit (Case No. 25-2028), specifically warning that the refusal to hold a discovery conference would result in an unmanageable accumulation of disputes. That is what occurred. The party now bearing the consequences of the resulting compressed schedule — overlapping discovery briefing with summary judgment preparation, waiver of any dispute not raised within 15 pages, and no ruling before the dispositive deadline — is the same party who requested judicial intervention fourteen months ago to prevent this outcome.

10.      Dkt. 327 is seven pages long. It does not once reference this Court's April 27, 2026 summary judgment deadline at Dkt. 274. The Magistrate Judge set a briefing schedule running through May 7 without acknowledging that the district judge's dispositive deadline falls in the middle of it. The

Magistrate Judge's discovery schedule cannot effectively nullify this Court's dispositive motion deadline by ensuring discovery relief is unavailable before the deadline arrives.

11.    This Court set summary judgment briefing for April 27, 2026. (Dkt. 274). The Magistrate Judge's schedule requires: Plaintiff's discovery opening brief by April 23; Apple's responsive brief by April 30 (which may raise new disputes); Plaintiff's reply by May 7; then under submission with no ruling date.

12.    Plaintiff must file summary judgment on April 27 without knowing whether she will receive discovery sought since October 2024. Apple's responsive brief is due April 30 — three days after summary judgment — and may "raise any additional disputes" (Dkt. 327 at 7). Plaintiff's reply is due May 7, limited to 10 pages, confined to Apple's new disputes only. No ruling on any dispute will issue until some unspecified date after May 7.

13.    The schedule also contains a waiver trap: "all disputes not raised in these briefs will be deemed waived." (Dkt. 327 at 6). Plaintiff has 15 pages to raise every remaining discovery dispute or lose them forever. Apple gets 25 pages to respond and raise new disputes.

14.    The schedule requires Plaintiff to simultaneously prepare a 15-page discovery brief, a summary judgment motion, four hours of deposition testimony, a 26(g) hearing, sealing negotiations, de-publication compliance, and oppositions in concurrent federal litigation (Case No. 5:25-cv-07360-PCP) — all within approximately three weeks, without counsel. The reasonableness of this schedule must be evaluated against the fact that the court itself refused the February 2025 conference that would have prevented the backlog now used to justify it.

15.    The schedule also creates a structural access-to-justice problem. Dkt. 327 directs that all disputes be raised in the omnibus briefs due April 23 and prohibits raising new issues outside that process. If Plaintiff needs emergency relief before April 16 — for example, a motion to compel Apple to produce a deposition witness, or authorization for alternative recording, or a ruling on whether the Gobbler deposition testimony will be designated and gagged before she relies on it for summary judgment — there is no procedural vehicle that produces a ruling before fact discovery closes. The Magistrate Judge has effectively closed her docket to new filings. This Court has consistently directed Plaintiff to bring discovery matters to the Magistrate Judge. The result is that Plaintiff has no available forum for emergency discovery relief during the final two weeks of discovery.

16.    **Requested ruling:** (a) Can the court rely on the volume of accumulated disputes as

justification for a compressed schedule when the court itself refused Plaintiff's February 2025 request for a conference to resolve those disputes before they accumulated? (b) Is the discovery schedule consistent with this Court's summary judgment deadline? (c) Should the summary judgment deadline be extended, or the discovery schedule compressed, so that discovery disputes are resolved before the dispositive motion is filed? (d) Does requiring a pro se plaintiff to simultaneously prepare discovery briefing, summary judgment, sit for deposition, attend a 26(g) hearing, negotiate sealing, and comply with a de-publication order constitute a denial of due process?

## ISSUE 2: DOES THE CONTINUED DEPOSITION ORDER, COMBINED WITH THE DESIGNATION FRAMEWORK AND GAG ORDER, CREATE AN EXPANDING SPEECH RESTRICTION ON THE EVE OF SUMMARY JUDGMENT?

*Standard: Contrary to law — de novo review. Due process; First Amendment.*

17. Plaintiff initially agreed to four additional hours of deposition. She withdrew that agreement after Apple's conduct following the December 16, 2025 deposition: the blanket designation of 72% of the transcript, the unsigned narrowed designations, the refusal to cure, and the filing of enforcement motions seeking contempt and compelled deletion of speech. (Dkt. 319 at 2). The reason for the withdrawal was specific: Apple would designate new testimony as Confidential, the gag order would attach, and Plaintiff would be unable to use her own words in her summary judgment motion due three weeks later. The Magistrate Judge held Plaintiff to the original agreement without addressing the reason she withdrew it. The court stated "whether Apple has satisfied its discovery obligations in this case is independent from Plaintiff's discovery obligations — there is no tit for tat." (Dkt. 327 at 5). But this is not about proportionality. It is about whether the court can order a party to generate more speech that will be automatically restricted under a framework the court has not validated.

18. Dkt. 327 orders Plaintiff to sit for four additional hours of deposition by April 8, 2026. This order must be read together with Dkt. 326, which provides that "information designated 'Confidential' by Apple is considered Confidential until found otherwise." The combined effect is:

19. (a) Plaintiff testifies for four more hours. Apple designates new testimony as "Confidential" — as it did with 72% of the prior deposition. Nothing in any order limits Apple's ability to designate new testimony, and Apple designated 72% of the prior transcript. (Dkt. 302 at 18).

20.    (b) Under Dkt. 326, the new designations are immediately enforceable. The gag order attaches automatically to anything Apple stamps "Confidential." No judicial review occurs before the restriction takes effect.

21.    (c) Dkt. 327 forecloses raising new discovery disputes outside the established schedule. Plaintiff cannot return to the court and seek relief from new designations before the schedule permits. The schedule does not produce a ruling until after May 7 at the earliest.

22.    (d) Summary judgment is due April 27. Plaintiff must brief the central question in this whistleblower retaliation case — whether her speech about Apple's workplace practices was protected activity or "leaking" — but any testimony Apple designated is gagged and must be filed under seal. Apple's designations control what portions of the evidence Plaintiff can discuss publicly in her own summary judgment brief, creating extreme prejudice that the "protected" disclosures are pre-qualified by this court as confidential and not subject to public disclosure.

23.    (e) Apple's defense is that Plaintiff was terminated for "leaking" confidential information. The designation framework allows Apple to unilaterally label the very speech at issue in the case as "Confidential," preventing Plaintiff from publicly presenting her core evidence at the dispositive stage. The effect is that the designating party determines which portions of the evidence the opposing party can discuss publicly in her summary judgment brief.

24.    (f) If Apple designates hundreds of new items — as it did with 140+ items on the prior unsigned chart — Plaintiff must challenge each one within the existing briefing schedule and page limits, alongside her substantive discovery disputes. The structure makes it impossible to challenge volume designations and litigate discovery simultaneously.

25.    Plaintiff raised this specific concern in her opposition to the deposition continuation. (Dkt. 319 at 2). She argued that Apple would designate testimony from the continuation as Confidential and that such designations would prevent her from using her own testimony in her summary judgment motion. The Magistrate Judge did not address this argument.

26.    The harm is not hypothetical. Plaintiff has scheduled a deposition of the individual who managed Apple's Gobbler user study — the study at the center of the designated testimony. Apple represented to the court that it needed the Protective Order to produce the Gobbler informed consent form. (July 2, 2025 Tr. at 10:17-11:11). Apple never produced the document under the order and eventually

produced it without invoking the Protective Order. (Dkt. 270 at 1). Apple's categorical position is that all user study information is confidential. Under the March 30 framework, Apple will foreseeably designate the entire deposition transcript, the Dkt. 326 gag order will attach automatically, and there is no mechanism to resolve a designation challenge before summary judgment is due. The Protective Order that was obtained for this document is now being used to suppress testimony from the person who ran the study the document relates to — testimony Plaintiff needs for summary judgment.

27.     No single order in isolation creates this problem. The problem arises from the interaction of Dkt. 326's automatic enforcement of unreviewed designations with Dkt. 327's continued deposition order and closed schedule. Due process requires a meaningful opportunity to be heard before the government deprives a person of a protected interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Speech is a protected interest. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). The orders create a system that restricts speech automatically upon Apple's designation, with no opportunity to be heard before the restriction takes effect and no mechanism to obtain review before the dispositive deadline. That is a deprivation of a protected interest without due process.

28.     **Requested ruling:** (a) Must designation challenges arising from the continued deposition be resolved before summary judgment? (b) Can new designations automatically trigger the Dkt. 326 gag order without judicial review? (c) Does the closed schedule, combined with the automatic designation framework, deny Plaintiff due process in preparing her summary judgment motion?

## ISSUE 3: DID THE COURT ADDRESS THE DISPUTES OVER "I DON'T UNDERSTAND" AND IMPROPER QUESTIONS THAT PLAINTIFF RAISED AS CONDITIONS OF THE CONTINUED DEPOSITION?

*Standard: Contrary to law — de novo review.*

29.     Plaintiff's agreement to sit for additional deposition hours was conditioned on her ability to object to improper questions. (Dkt. 319 at 2). She withdrew the agreement in part because Apple's motion to continue (Dkt. 315) specifically argued that Plaintiff's responses at the December 16 deposition — including statements that she did not understand Apple's confidentiality terms because the NLRB had found them unlawful — were improper, non-responsive, and constituted misconduct. Apple's position, stated on the record and reiterated in its motion, is that "I don't understand" is not an answer but a refusal

to cooperate. (Dkt. 302-2, Dep. Tr. at 63:14-64:7; Dkt. 315).

30.     Plaintiff cannot be held to an agreement to continue a deposition when the opposing party simultaneously argues that her answers during that deposition were misconduct. The condition and the demand are irreconcilable: Plaintiff agreed to continue subject to the right to object; Apple's motion says her objections were improper. The Magistrate Judge held Plaintiff to the agreement without addressing this conflict.

31.     The "must answer" instruction in Dkt. 327, footnote 4, orders Plaintiff to "state her objection on the record and then answer the question subject to objection unless it calls for privileged information." This tracks the general rule of Fed. R. Civ. P. 30(c)(2), which permits a deponent to be instructed not to answer only when necessary to preserve a privilege, enforce a court limitation, or present a motion under Rule 30(d)(3). But the instruction does not address the specific dispute between these parties: whether "I don't understand the question" or "the premise of that question is incorrect because the NLRB found those terms unlawful" constitutes an "answer."

32.     Apple's position is that these are not answers. A deponent has the right to seek clarification of an ambiguous question; a deponent cannot be compelled to guess. See *Damaj v. Farmers Ins. Co. of Wash.*, 164 F.R.D. 559, 560-61 (N.D. Okla. 1995). The court's instruction does not resolve this dispute, and Apple will seek sanctions at the continued deposition for the same conduct.

33.     This dispute is also the subject of pending NLRB charges. Plaintiff's Charge No. 32-CA-381277 alleges that Apple's treatment of her NLRA-related responses as misconduct constitutes retaliation under § 8(a)(4). The court's instruction does not acknowledge this federal labor law dimension.

34.     Additionally, Apple asked improper questions at the December 16 deposition — questions premised on the enforceability of confidentiality terms the NLRB required Apple to rescind. Plaintiff raised this in her opposition (Dkt. 319 at 2). The court did not address it. The instruction orders Plaintiff to answer all questions subject to objection, but does not address the threshold question of whether questions premised on rescinded policies are proper.

35.     **Requested ruling:** (a) Does "I don't understand" or "the premise is incorrect because the NLRB found those terms unlawful" constitute an "answer" under the court's instruction? (b) Can Plaintiff be held to an agreement to continue a deposition when the opposing party's motion characterizes her prior answers as misconduct? (c) Does the instruction address questions premised on policies the

NLRB required Apple to rescind?

## ISSUE 4: DID THE COURT COMMIT FOUR COMPOUNDING ERRORS ON THE MEDICAL RECORDS REQUEST?

*Standard: Clearly erroneous. Due process.*

36.     On the medical records request (Dkt. 324), the Magistrate Judge committed four independent errors, each of which is sufficient standing alone to require reconsideration:

37.     **(a) Ruled without Apple's response.** The court stated: "The Court will resolve this dispute without Apple's response." (Dkt. 327 at 6). The court then denied Plaintiff's request on the merits without adversarial testing. Plaintiff's request was denied without Apple ever having to defend its position.

38.     **(b) Refused to review Plaintiff's exhibits.** The court stated in footnote 5: "Plaintiff included 68 pages of exhibits, which violates the Court's Civil Standing Order, which permits only 12 pages of exhibits. As a result, the Court did not review them." The court then ruled on the merits against Plaintiff without considering her evidence. The exhibits contained the authorizations Plaintiff drafted, Apple's refusal to use them, Apple's agreement and subsequent refusal to provide copies, and the full email chain documenting Apple's shifting positions. The appropriate remedy for overlength exhibits is to strike them or order compliance — not to ignore the evidence and rule adversely without it. The page limit for the exhibits was set by a prior Apple filing: Apple's own letter at Dkt. 276 was the one that created the exhibit-length problem by generating extensive correspondence that Plaintiff needed to document in response.

39.     **(c) Misunderstood the substance of the request.** The court stated that Plaintiff "can request her own medical records from her provider(s) at any time." But Plaintiff's request was for dual-production language requiring providers to send records simultaneously to both parties. Apple's third-party subpoenas may obtain records, compilations, or communications that differ from what a patient can obtain through a standard records request. Plaintiff is entitled to see what Apple is receiving about her. She could serve a Rule 34 request for production on Apple to obtain copies, but a dual-production directive on the existing subpoena is more efficient. The entire premise of Apple claiming to need a subpoena was that it wanted records the Plaintiff could not obtain on her own. The court's reasoning — "get your own records" — does not address why a pro se plaintiff should have to file separate subpoenas or additional discovery requests to see documents Apple is already obtaining about her.

40.     **(d) Ignored the prior proceedings that created the dispute.** The background the court

did not review: Apple filed Dkt. 276 telling the court it needed Plaintiff to sign a HIPAA authorization before it could subpoena medical records. The court ordered the parties to meet and confer on the authorization. (Dkt. 291). Plaintiff then drafted two proposed authorizations and offered them to Apple. Apple refused to use them. Apple then served the subpoenas without any authorization — contradicting its own representation to the court that an authorization was required. Apple also agreed in writing to provide Plaintiff with copies of whatever records it received, then reneged and sent the subpoenas without dual-production language or notice to Plaintiff. When Plaintiff filed Dkt. 324 requesting dual-production, the court denied the request without reviewing the exhibits that documented this sequence. The 68 pages the court refused to read were not extraneous — they were the evidence that Apple misrepresented its position to the court and then changed course after obtaining the order it sought.

41.    **Requested ruling:** (a) Can a court rule on the merits against a party without obtaining the opposing party's response? (b) Can a court refuse to review a party's exhibits and simultaneously rule against that party on the substance? (c) Does the court's reasoning adequately address Plaintiff's actual request for dual production? (d) Should the court reconsider the ruling in light of the prior proceedings at Dkt. 276, 277, and 291, which the court's unreviewed exhibits documented?

## ISSUE 5: IS THE INTERROGATORY COUNT CORRECT, AND DID THE COURT ERR BY REFUSING TO CONSIDER INTERROGATORIES 4-16?

*Standard: Contrary to law (methodology) and clearly erroneous (count).*

42.    The Magistrate Judge counted Interrogatory No. 2 as 14 discrete interrogatories — one per affirmative defense. The 1993 Advisory Committee Note to Rule 33: "a question asking about communications of a particular type should be treated as a single interrogatory although it requests that the time, place, persons present and contents of each such communication be stated separately." *Safeco of Am. v. Rawstron,* 181 F.R.D. 441, 445 (C.D. Cal. 1998); *Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 646 (D. Kan. 2011).

43.    The number of affirmative defenses Apple chose to plead cannot determine Plaintiff's interrogatory budget. The court's own cited authorities do not support a count of 14. The court cited *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 299 (N.D. Cal. 2016), for the proposition that subparts seeking "facts, documents, and witnesses" are "subsumed by the primary topic" of the defense. Under

*Synopsys*, the primary topic is "your affirmative defenses" — one interrogatory. The court also cited *AngioScore, Inc. v. TriReme Med., Inc.,* 2014 WL 7188779, at \*6 (N.D. Cal. 2014), which counted a similar interrogatory at 48 subparts (12 defenses × 4 subparts). The court's count of 14 follows neither authority — it adopts neither the *Synopsys* approach (one) nor the *AngioScore* approach (56). The 1993 Advisory Committee Note confirms: a question asking about a category should be treated as a single interrogatory although it requests multiple details for each instance.

44.     Additionally, the court refused to consider Interrogatories 4-16 at all because Plaintiff "only attached Interrogatory No. 3 to her letter." (Dkt. 327 at 3). The court stated it "cannot possibly address Interrogatory Nos. 4-16." These interrogatories were served on Apple. Apple has them. The court could have ordered Plaintiff to file the missing attachments or asked Apple to produce them. Instead, the court refused to consider properly served interrogatories based on an attachment deficiency in the discovery letter, then used the erroneous count to cut off those same interrogatories, and then said Plaintiff cannot file anything further until after disclosure closes.

45.     The counting methodology also creates a perverse incentive. If each affirmative defense counts as a separate interrogatory when a plaintiff asks the defendant to substantiate its defenses, defendants are rewarded for pleading more defenses — each additional defense consumes another interrogatory from the plaintiff's budget. A defendant that pleads 25 frivolous defenses would consume the plaintiff's entire interrogatory allotment with a single contention interrogatory. That cannot be the rule.

46.     **Requested ruling:** (a) How many interrogatories does Interrogatory No. 2 constitute? (b) Did the court err by refusing to address Interrogatories 4-16 because they were not attached to the letter, when they were properly served on Apple?

## ISSUE 6: DOES SUSTAINING APPLE'S OBJECTION TO THE LEGAL BASIS SUBPART CONFLICT WITH RULE 33(a)(2)?

*Standard: Contrary to law — de novo review.*

47.     The Magistrate Judge sustained Apple's objection to subpart (b) ("state the complete legal basis for each defense") as calling for a "legal conclusion."

48.     Rule 33(a)(2): "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." This is the express text of the Federal

Rules. The legal basis of an affirmative defense is a contention interrogatory. This Court struck Apple's original affirmative defenses for lack of factual support (Dkt. 215) and stated that the details should be "developed through discovery, both oral and written." (Dkt. 234 at 2). Apple was permitted to replead its defenses on the understanding it would substantiate them in discovery. The Magistrate Judge's ruling now blocks the discovery mechanism this Court identified for that purpose. If Apple cannot be compelled to state the legal basis for its defenses in interrogatories, and this Court's prior order required substantiation through discovery, the defenses are unsubstantiated and should have been stricken.

49.     **Requested ruling:** Does Rule 33(a)(2) permit an interrogatory asking for the legal basis of an affirmative defense?

## ISSUE 7: IS APPLE'S RESPONSE TO INTERROGATORY NO. 1 ADEQUATE UNDER RULE 33(B)(3)?

*Standard: Contrary to law — de novo review.*

50.     Interrogatory No. 1 asked Apple to state its complete reason for terminating Plaintiff. Apple's response references "an Apple investigator" but identifies no individual by name, gives no title, provides no investigation timeline, identifies no specific policy provision allegedly violated, and provides no specifics about what "cooperation" was demanded and refused. The Magistrate Judge found this "robust" and "adequate" and told Plaintiff to "use other discovery devices."

51.     Rule 33(b)(3) requires answers "separately and fully." This Court identified interrogatories as the vehicle for developing these facts. (Dkt. 234 at 2). The instruction to "use other devices" is not supported by the record. Every alternative device is blocked:

52.     Depositions of Apple's witnesses: Apple has refused to produce witnesses since August 2025, conditioning all depositions on completion of Plaintiff's deposition (Dkt. 309 ¶ 6; Dkt. 309-1, Ex. C), and Plaintiff cannot retain a court reporter. Document requests for termination-related communications: RFPs 37, 40-44, and 54 were denied in this same order on procedural grounds (Dkt. 327 at 5). Additional interrogatories: the Magistrate Judge's count consumed Plaintiff's budget through Interrogatory No. 12, cutting off Interrogatories 13-16 (Dkt. 327 at 3). The omnibus schedule: prohibits raising new discovery issues outside its briefing process, and no ruling will issue before summary judgment (Dkt. 327 at 6-7).

53.     A court may not deny a discovery request on the basis that alternative means exist without

a record basis for concluding those means are actually available. Each alternative the court identified is either blocked by Apple's conduct, foreclosed by this same order, or practically inaccessible to a pro se litigant.

54.     **Requested ruling:** Does Apple's response to Interrogatory No. 1, which names no decision-maker, satisfy Rule 33(b)(3)'s requirement of a full and complete answer?

## ISSUE 8: WERE FIFTEEN RFPs PROPERLY DENIED FOR INSUFFICIENT MEET AND CONFER?

### *Standard: Clearly erroneous.*

55.     Apple maintained an identical categorical objection across all seventeen RFPs for sixteen months: "whether Apple, in fact, engaged in the conduct that Plaintiff purportedly complained of is not relevant to any of her claims." This position was stated in November 2024, restated in May 2025, and never modified despite multiple meet-and-confer attempts.

56.     The Magistrate Judge found only RFP No. 23 was "remotely ripe" because it was the only one specifically discussed by number in the emails. This finding rests on a mistake of fact. Plaintiff's February 26, 2026 email to Apple addressed the status of all outstanding requests and asked Apple to confirm which remained under review. (Dkt. 310-1 at 21-23). Apple's March 5 response refused to identify which requests were outstanding and restated its categorical objection across all of them. (Dkt. 310-1 at 20). The meet-and-confer addressed all requests; Apple's refusal to engage on any of them is what prevented individualized discussion.

57.     Further, Apple's own opposition to Plaintiff's letter (Dkt. 318) confirms it maintains the same categorical refusal to produce on all environmental requests. Additional meet-and-confer on requests where Apple has stated in a court filing that it will not produce responsive documents would be futile. The Magistrate Judge's order requires Plaintiff to return and re-meet-and-confer on requests where Apple's position is stated in a signed filing before the court — and then to brief those disputes within the same 15 pages allocated for every other remaining discovery issue, with resolution after summary judgment.

58.     The meet-and-confer requirement has also been applied asymmetrically. The court terminated Plaintiff's four unilateral discovery letters in February 2025 for being unilateral (Dkt. 170), requiring joint letters. Apple then refused to participate in joint letters, refused further correspondence (Dkt. 220, Ex. A: "Apple does not intend to further respond to your emails at this time"), and filed its own

unilateral letter (Dkt. 219), which the court entertained. The purpose of the meet-and-confer requirement under N.D. Cal. Civil L.R. 37-1 is to narrow disputes before burdening the court — not to provide a procedural vehicle for indefinite deferral when one party refuses to engage. Fed. R. Civ. P. 1 requires that the rules be administered to secure the "just, speedy, and inexpensive determination of every action." Requiring further individualized conferral on requests where Apple's position is stated in a signed filing before the court, and has not changed in sixteen months, does not serve any of these objectives.

59.     The Magistrate Judge's own ruling on RFP No. 23 confirms the error. The court found environmental records relevant to Plaintiff's retaliation claims and ordered production with a narrowed time period. (Dkt. 327 at 4). That ruling necessarily rejected the categorical irrelevance theory Apple asserted identically on every other environmental request. If environmental records are relevant for RFP No. 23, the same legal conclusion applies to RFPs 7-10, 24, and 28-32, because Apple's objection was the same on all of them.

60.     **Requested ruling:** (a) When Apple maintained an identical categorical refusal across all requests for sixteen months, is the dispute ripe as to all requests sharing that objection? (b) Does the court's ruling on RFP No. 23 — rejecting the categorical irrelevance theory — require the same result on RFPs 7-10, 24, and 28-32, which share the identical objection?

## ISSUE 9: DOES ORDERING PRODUCTION OF THE PERSONNEL FILE ADDRESS THE ACTUAL REQUESTS?

### *Standard: Clearly erroneous.*

61.     RFPs 37, 40-44, and 54 seek specific categories of documents: threat assessments concerning Plaintiff (RFP 37); system access logs showing when Plaintiff's badge, email, or network access was revoked or monitored (RFPs 40-41); Slack or internal messaging monitoring records (RFP 42); HR/Employee Relations tracking notes documenting interactions with Plaintiff from February through September 2021 (RFPs 43-44); and public relations or media response communications about Plaintiff (RFP 54). These are the documents that would show what Apple knew, when it knew it, and what it did in response to Plaintiff's protected activity — the core evidentiary categories in a retaliation case.

62.     The Magistrate Judge ordered production of "Plaintiff's personnel file." (Dkt. 327 at 5). Nobody asked for a personnel file. A personnel file is a defined category maintained by HR that typically contains hiring paperwork, performance reviews, compensation records, and formal disciplinary actions.

It does not contain system access logs, Slack monitoring records, security threat assessments, or media response communications. These are maintained by different departments (IT Security, Corporate Security, Employee Relations, Corporate Communications) in different systems. Ordering production of a personnel file in response to requests for monitoring records and threat assessments is like ordering production of a phone book in response to a request for phone call recordings — they share a subject (the employee) but contain categorically different information.

63.     A court must address the actual discovery at issue, not substitute production the court finds more convenient. Fed. R. Civ. P. 34(a) entitles a party to request specific categories of documents; the responding party must produce responsive documents or state objections. The Magistrate Judge addressed neither the requests nor Apple's objections. She ordered production of something no one asked for and that does not contain the information sought.

64.     **Requested ruling:** (a) Does ordering production of the personnel file address the specific documents requested in RFPs 37, 40-44, and 54? (b) Should Apple be ordered to respond to the actual requests with production or specific objections?

## ISSUE 10: DOES THE DISCOVERY SCHEDULE FORECLOSE PLAINTIFF'S ABILITY TO RAISE THE COURT REPORTER ACCESS PROBLEM BEFORE DISCOVERY CLOSES?

*Standard: Contrary to law — de novo review.*

65.     Plaintiff has been unable to retain a court reporter despite contacting dozens of firms, all of which decline to work with pro se litigants. Rule 30(b)(3)(A) permits depositions to be recorded by "audio, audiovisual, or stenographic means." Plaintiff needs authorization to use audio recording as an alternative to stenographic recording in order to conduct any depositions of Apple's witnesses.

66.     The Magistrate Judge's order at Dkt. 327 establishes a discovery dispute schedule that forecloses raising new issues until April 23 — seven days after discovery closes on April 16. No ruling will issue until after May 7. As applied to this problem, the order at Dkt. 327 effectively denies Plaintiff the ability to depose any Apple witness by eliminating the only procedural path for obtaining alternative recording authorization before the discovery cutoff. This is not a request for new relief; it is an objection to the order's effect of foreclosing access to a core discovery tool guaranteed by the Federal Rules.

67.     **Requested ruling:** Does the discovery schedule at Dkt. 327, as applied, deny Plaintiff the

ability to conduct depositions before the close of fact discovery? Should this Court authorize audio recording under Rule 30(b)(3) or require the Magistrate Judge to address the issue before April 16?

# TIMELINESS

68.     These objections are timely. The order at Dkt. 327 was issued March 30, 2026. Rule 72(a) allows objections within 14 days. This filing is submitted within that period.

# RELIEF REQUESTED

69.     Plaintiff respectfully requests that this Court rule on each of the ten numbered issues above, and:

- 1. Resolve the conflict between the omnibus discovery schedule and the April 27, 2026 summary judgment deadline, either by ordering expedited resolution of outstanding discovery disputes before the dispositive deadline or by extending the deadline;

- 2. Order Apple to produce all responsive, non-privileged documents on environmental RFPs 7-10, 24, and 28-32 consistent with the Magistrate Judge's own ruling on RFP 23, which rejected the categorical irrelevance theory Apple asserted identically on all of them;

- 3. Correct the interrogatory count consistent with Synopsys and the Rule 33 Advisory Committee Note, and order Apple to respond to Interrogatories 3-16. If the Magistrate Judge requires the interrogatories to be filed before she will rule, authorize Plaintiff to file them immediately notwithstanding the page limits and scheduling restrictions in Dkt. 327;

- 4. Order supplementation of Interrogatory No. 1 to identify the decision-maker(s), the investigation timeline, and the specific policies allegedly violated;

- 5. Reconsider the medical records ruling in light of the prior proceedings at Dkt. 276, 277, and 291, which the court's unreviewed exhibits documented;

- 6. Clarify the deposition instruction to confirm that "I don't understand" and responses contesting a question's premise constitute answers, and that questions premised on policies the NLRB required Apple to rescind are subject to objection;

- 7. Establish an emergency escalation process for designation disputes arising from the court-ordered depositions, so that challenges can be resolved before summary judgment;

- 8. Address Plaintiff's inability to depose Apple's witnesses and authorize alternative recording

under Rule 30(b)(3) before the April 16 discovery cutoff;

- 9. If this Court continues to direct Plaintiff to bring discovery matters to the Magistrate Judge, direct the Magistrate Judge to accept emergency filings during the final two weeks of discovery rather than deferring all issues to the omnibus schedule;

- 10. Grant such other relief as this Court deems just.


Respectfully submitted,


**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 31 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, <br> *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br> **Apple Inc.**, <br> *a corporation,* <br><br> Defendant. | **Case No.** <br> **3:23-CV-04597-EMC** <br><br> **PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO PROPOSED SEALING ORDER AT DKT. 329** |

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................ 2

**STANDARD OF REVIEW** ................................................................................ 3

THE LEGAL FRAMEWORK FOR SEALING JUDICIAL RECORDS .................................................. 3

**ISSUES** ............................................................................................................. 4

ISSUE 1: DOES THE PROPOSED SEALING ORDER SATISFY ANY ELEMENT OF THE KAMAKANA
    FRAMEWORK OR LOCAL RULE 79-5? ............................................................................ 4

ISSUE 2: DO VALID CONFIDENTIALITY DESIGNATIONS EXIST TO SUPPORT THE SEALING
    ORDER? ................................................................................................................... 6

ISSUE 3: IS THE INFORMATION APPLE SEEKS TO SEAL PUBLICLY KNOWN? ........................... 7

ISSUE 4: DOES ENTERING THE PROPOSED ORDER PREJUDICE PLAINTIFF'S ABILITY TO FILE
    HER SUMMARY JUDGMENT MOTION ON THE PUBLIC DOCKET? ..................................... 8

**TIMELINESS** .................................................................................................... 9

**RELIEF REQUESTED** ..................................................................................... 9

# PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO PROPOSED SEALING ORDER AT DKT. 329

1.    This filing is made as of right under Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and N.D. Cal. Civil Local Rule 72-2. It is not an administrative motion. It objects to the Magistrate Judge's order at Dkt. 329 and presents four issues for this Court's review. These include questions of law under the Ninth Circuit's sealing framework (*Kamakana v. City and County of Honolulu,* 447 F.3d 1172 (9th Cir. 2006)), N.D. Cal. Civil Local Rule 79-5, and the public's constitutional right of access to judicial records, each of which is reviewed de novo as "contrary to law." Local Rule 72-2 provides that the assigned judge "shall consider the objections and modify or set aside any portion of the order" found to be clearly erroneous or contrary to law. Plaintiff respectfully requests that this Court address each numbered issue on the merits and requests oral argument.

# INTRODUCTION

2.    Plaintiff respectfully objects under Rule 72(a) to the proposed sealing order at Dkt. 329, filed March 30, 2026. Apple's counsel drafted the proposed order and filed it the same day Dkt. 326 directed the parties to meet and confer about sealing within seven days — before any meet-and-confer occurred. The proposed order asks the court to find that "good cause to seal having been shown." No good cause has been shown by anyone.

3.    The proposed order fails every requirement of the Ninth Circuit's sealing framework. No declaration has been filed. No particularized harm has been identified. No specific content has been analyzed. The order's sole basis for sealing is that documents contain "material designated by Apple as Confidential pursuant to the Protective Order." N.D. Cal. Civil L.R. 79-5(c) provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." The proposed order's sole basis for sealing is the one basis the Local Rules say does not work.

4.    The information Apple seeks to seal is publicly known. The designated subject matter — Apple's employee studies involving menstruation, ovulation, and cervical mucus — appears in six complaints on this docket, two published orders by this Court, NLRB proceedings dating to 2021, a peer-reviewed journal article, the federal ClinicalTrials.gov registry, a GAO report, and international press coverage. The 197-page Request for Judicial Notice at Dkt. 321 documents all of it. Sealing publicly known

information serves no legitimate purpose and creates the appearance that judicial proceedings are being conducted in secret when the underlying facts are freely available to anyone.

5.      The sealing basis also depends on designations challenged in Plaintiff's pending Rule 26(g) motion (Dkt. 302), which presents undisputed evidence that the designations are unsigned, untimely, and uncured. If the designations are stricken under Rule 26(g)(2)'s mandatory striking provision or waived under Protective Order § 6.3, there is nothing to seal. The Magistrate Judge has not resolved the 26(g) motion and has given no indication of when she will do so. Entering a sealing order based on designations a fully briefed motion demonstrates are void prejudices Plaintiff and the public's right of access.

# STANDARD OF REVIEW

6.      Under Rule 72(a), a magistrate judge's order on a non-dispositive pretrial matter must be set aside if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Legal questions are reviewed de novo as "contrary to law." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## THE LEGAL FRAMEWORK FOR SEALING JUDICIAL RECORDS

7.      "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). The Ninth Circuit starts "with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

8.      Under *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), the Ninth Circuit applies a two-tier framework. For documents filed in connection with dispositive motions (including summary judgment), the party seeking sealing must show "compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." Id. at 1178-79. For documents filed in connection with non-dispositive motions, the party must make a "particularized showing" of "good cause" under Rule 26(c). Id. at 1179-80.

9.      Under either standard, the party seeking sealing bears the burden. *Foltz*, 331 F.3d at 1130. The party must "articulate the specific prejudice or harm that will flow from disclosure." *Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1210-11 (9th Cir. 2002). Conclusory assertions of

confidentiality are insufficient. Id. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

10. N.D. Cal. Civil Local Rule 79-5 imposes additional requirements. Rule 79-5(a) requires narrow tailoring: only the specific portions warranting sealing may be filed under seal. Rule 79-5(b) requires a supporting declaration establishing sealability. Rule 79-5(c) provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Rule 79-5(d) requires the proposed order to identify specific documents and reasons.

# ISSUES

## ISSUE 1: DOES THE PROPOSED SEALING ORDER SATISFY ANY ELEMENT OF THE KAMAKANA FRAMEWORK OR LOCAL RULE 79-5?

*Standard: Contrary to law — de novo review.*

11. The proposed order at Dkt. 329 fails every requirement of the sealing framework:

12. ***No findings.*** The order states "good cause to seal having been shown." It identifies no harm that would result from disclosure. It weighs no competing interests. It makes no factual findings. The "good cause" language is Apple's language in a proposed order Apple's counsel drafted — it is not the court's independent analysis.

13. ***The declaration is conclusory and establishes nothing.*** Local Rule 79-5(b) requires a declaration "establishing that the document, or portions thereof, are sealable." Apple filed a declaration (Dkt. 293-1). It is two paragraphs. The first paragraph states that Apple seeks to seal "material Apple designated as Confidential pursuant to the Protective Order." The second paragraph states that counsel emailed Plaintiff requesting a stipulation and Plaintiff declined. That is the entirety of the declaration. It does not identify any harm that would result from disclosure. It does not describe what specific information Apple considers confidential or why. It does not articulate any trade secret, competitive injury, or business sensitivity. It does not address alternatives to sealing. The declaration's sole substantive content — that Apple designated the material under the Protective Order — is the very basis Local Rule 79-5(c) says is insufficient. The declaration does not "establish sealability"; it restates the designation that the Local Rules

say cannot establish sealability.

14.     ***Sole basis is protective order designations.*** The order's only stated reason for sealing is that documents contain "material designated by Apple as Confidential pursuant to the Protective Order." Local Rule 79-5(c) expressly states this is "not sufficient to establish that a document, or portions thereof, are sealable." The proposed order's sole basis for sealing is the one basis the Local Rules say does not work.

15.     ***No narrow tailoring.*** The proposed order seals Exhibit B to the Riechert Declaration in its entirety. Local Rule 79-5(a) requires that only the specific portions warranting sealing be sealed. Sealing an entire exhibit without identifying which portions contain sealable material violates the narrow-tailoring requirement.

16.     ***Filed before meet-and-confer.*** The proposed order was filed March 30, 2026 — the same day Dkt. 326 directed the parties to meet and confer about sealing within seven days. Apple filed a proposed sealing order before the court-ordered meet-and-confer occurred. The order Apple asks the court to sign was drafted before the process the court ordered had begun.

17.     ***Wrong standard.*** Apple may contend that its enforcement motion is non-dispositive and therefore subject only to the "good cause" standard. But the Ninth Circuit has held that the relevant inquiry is not whether the motion is technically dispositive, but whether the documents "bear on" or are "more than tangentially related to" the merits. *Center for Auto Safety v. Chrysler Group LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016).

18.     The documents Apple seeks to seal — its Motion to Enforce the Protective Order and supporting declaration — relate to the enforcement of confidentiality designations that are directly relevant to the merits of this whistleblower retaliation case. Apple's own filing connects the designations to its termination defense: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." (Dkt. 280, fn. 2). Documents going to the question of whether Plaintiff's speech was protected or wrongful — the central merits question — are more than tangentially related to the merits. The "compelling reasons" standard applies. Apple has not attempted to meet it.

19.     Requested ruling: (a) Does the proposed order satisfy any element of *Kamakana, Foltz*, or Local Rule 79-5? (b) Can a court enter a sealing order without a supporting declaration? (c) Does the "compelling reasons" standard apply to these documents given their connection to the merits? (d) Is

sealing an entire exhibit consistent with the narrow-tailoring requirement of Local Rule 79-5(a)?

## ISSUE 2: DO VALID CONFIDENTIALITY DESIGNATIONS EXIST TO SUPPORT THE SEALING ORDER?

*Standard: Contrary to law — de novo review.*

20.     Even if the *Kamakana* procedural requirements had been met, the proposed sealing order has no substantive basis because the underlying designations are invalid. Whether valid designations exist is the subject of Plaintiff's Rule 26(g) Motion (Dkt. 302), filed March 6, 2026, fully briefed March 27, and set for hearing April 16. The motion presents undisputed evidence:

21.     (a) Apple imposed a blanket designation covering approximately 72% of the deposition on December 16, 2025, triggered at the moment Plaintiff began discussing the NLRB settlement. (Dkt. 302 at 18; Dkt. 302-2, Dep. Tr. at 63:14-64:2).

22.     (b) Plaintiff objected on the record. Apple acknowledged the objection and agreed to narrow. (Dkt. 304-2, Ex. A at 141:18-142:25).

23.     (c) Apple filed no motion to retain confidentiality within 21 days as required by Protective Order § 6.3. Under § 6.3's mandatory language, designations "shall automatically be considered waived." The blanket designation was waived no later than January 6, 2026.

24.     (d) Apple's February 4, 2026 narrowed designation chart was unsigned, undated, and unserved. It was emailed to the court reporter with Plaintiff copied "for notice purposes." (Dkt. 302 at 9-11).

25.     (e) Plaintiff called the Rule 26(g)(1) signature deficiency to Apple's attention repeatedly in writing. Apple expressly refused to cure: "Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM).

26.     (f) Rule 26(g)(2) provides that the court "must strike" an unsigned discovery document when the omission has been called to the party's attention and not promptly cured. "Must" is mandatory. There is no balancing test or substantial justification exception for the striking itself.

27.     If the designations are stricken under Rule 26(g)(2) or waived under Protective Order § 6.3, there is nothing to seal. The proposed order depends entirely on the validity of designations a pending, fully briefed motion demonstrates are void. The Magistrate Judge has not resolved the 26(g) motion and has given no indication of when she will do so.

28.     Requested ruling: (a) Must the court resolve the pending Rule 26(g) motion (Dkt. 302) before entering a sealing order based on the designations that motion challenges? (b) If the designations are stricken or waived, does the proposed sealing order have a remaining legal basis?

## ISSUE 3: IS THE INFORMATION APPLE SEEKS TO SEAL PUBLICLY KNOWN?

*Standard: Contrary to law — de novo review.*

29.     Independent of the procedural deficiencies (Issue 1) and the designation invalidity (Issue 2), the proposed sealing order fails on the most basic ground: the information Apple seeks to seal is publicly known. There is no interest in sealing information the public already has.

30.     The documents Apple seeks to seal are its Motion to Enforce the Protective Order and the supporting declaration, which reference Plaintiff's deposition testimony about Apple's employee studies involving menstruation, ovulation, and cervical mucus. This subject matter has been in the public domain since 2021, through:

- • Six successive complaints filed on this docket dating to December 2023;
- • This Court's published orders (Dkt. 73 at 7-8: "invasive, oppressive, and humiliating medical studies"; Dkt. 179 at 2);
- • NLRB proceedings dating to August 2021 (Case No. 32-CA-284428);
- • A peer-reviewed publication in the American Journal of Obstetrics and Gynecology (Mahalingaiah et al., vol. 226(4) (2022));
- • The federal ClinicalTrials.gov registry (NCT04196595);
- • A Government Accountability Office report (GAO-24-107639);
- • Press coverage in the United States, Germany, France, and the United Kingdom.

Plaintiff's 197-page Request for Judicial Notice (Dkt. 321) documents all of the above.

31.     The Protective Order's own Section 3 excludes from its coverage "any information that is or becomes publicly known through no fault of the receiving party" and "any information known to the receiving party prior to the disclosure." Every item Apple designated falls within at least one of these exclusions. If the information cannot be validly designated under the Protective Order's own terms, it cannot be sealed based on those designations.

32.     Sealing publicly known information serves no legitimate purpose. It does not protect trade

secrets — the information is already public. It does not prevent competitive harm — the information is already known. It creates the appearance that judicial proceedings are being conducted in secret when the underlying subject matter is freely available to anyone with a search engine. In Kamakana itself, the Ninth Circuit noted that the government's redaction requests were undermined by the fact that the same information was "already publicly available" in other filings. 447 F.3d at 1183-84.

33.     If this theory of sealing were accepted — that information is sealable because Apple designated it, regardless of whether it is publicly known — the logical consequence would require sealing substantial portions of the existing public docket. Plaintiff's complaints, this Court's published orders, and Apple's own filings all discuss the same subject matter Apple now seeks to seal. The theory cannot be limited to Dkt. 329 without conceding that the designation is the basis for sealing, which is what Local Rule 79-5(c) prohibits.

34.     Requested ruling: (a) Can publicly known information be sealed? (b) If the same subject matter appears in published court orders, complaints, NLRB proceedings, peer-reviewed journals, and federal registries, is there any remaining interest in sealing references to that subject matter in Apple's enforcement motion? (c) Are the Section 3 exclusions in the Protective Order enforceable, and if so, can information excluded under Section 3 be the basis for a sealing order?

## ISSUE 4: DOES ENTERING THE PROPOSED ORDER PREJUDICE PLAINTIFF'S ABILITY TO FILE HER SUMMARY JUDGMENT MOTION ON THE PUBLIC DOCKET?

*Standard: Contrary to law — de novo review. Due process.*

35.     If the proposed sealing order is entered, it establishes a precedent that information designated by Apple is sealable based on the designation alone. Plaintiff's summary judgment motion will necessarily discuss the same subject matter. Under this precedent, Plaintiff would be required to file her summary judgment motion under seal, submit a declaration supporting sealing under Local Rule 79-5(b), and comply with the *Kamakana* framework — all while her pending 26(g) motion argues the designations are invalid and no good cause exists.

36.     Plaintiff cannot in good faith submit a declaration stating that designated material should be sealed when her pending motion argues precisely the opposite. The court would be placing Plaintiff in

a position where she must either submit a declaration she believes is false (implicating Rule 11) or file publicly and risk contempt. The solution is to resolve the designation validity question before entering sealing orders that create this conflict.

37.  Requested ruling: (a) If the proposed order is entered, must Plaintiff file her summary judgment motion under seal and submit a sealing declaration? (b) If so, how should Plaintiff comply when her pending motion argues the designations are invalid? (c) Must the 26(g) motion be resolved before entering sealing orders that will affect the summary judgment filing?

## TIMELINESS

38.  These objections are timely. The proposed order at Dkt. 329 was filed March 30, 2026. Rule 72(a) allows objections within 14 days. This filing is submitted within that period.

## RELIEF REQUESTED

39.  Plaintiff respectfully requests that this Court rule on each of the four numbered issues above, and:

40.  Reject the proposed sealing order at Dkt. 329. The order was filed without the required meet-and-confer, without a supporting declaration, without Kamakana findings, without narrow tailoring, and on a basis Local Rule 79-5(c) expressly says is insufficient;

41.  Order that the pending Rule 26(g) motion (Dkt. 302) be resolved before any sealing order is entered based on the designations that motion challenges;

42.  Rule on whether publicly known information — information that appears in published court orders, complaints, NLRB proceedings, peer-reviewed journals, and federal registries — can be sealed based on a party's unilateral designation;

43.  Rule on whether the Protective Order's Section 3 exclusions are enforceable, and if so, whether information excluded under Section 3 can be the basis for a sealing order;

44.  Clarify the effect of any sealing order on Plaintiff's ability to file her summary judgment motion on the public docket;

45.  Grant such other relief as this Court deems just.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 31 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT C

# Follow-Up re Magistrate Judge Westmore's 3/30 Orders

From    Riechert, Melinda <mriechert@orrick.com>

To    Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>,
Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>

CC    Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>,
Weaver, Nicholas<nweaver@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
Davidson, Sarah<sdavidson@orrick.com>, Booms, Ryan<rbooms@orrick.com>

Date    Tuesday, March 31st, 2026 at 7:08 PM

Ashley,

I am following up on three issues related to Magistrate Judge Westmore's Orders yesterday.

1. Please confirm which of these dates you'll appear for your continued deposition: April 6 or 8.
2. With respect to the part of the Order directing you to de-publish any information Apple designated confidential pending a ruling on your challenges, please confirm that you have de-published all posts revealing information Apple designated confidential.
3. Regarding the part of the Order directing the parties to meet and confer regarding a stipulation about public filings that need to be sealed pending a ruling on your challenges, please confirm whether you will agree to seal the following docket entries pending a determination on Apple's confidentiality designations.
   a. Docket Entries identified in Apple's Motion to Seal (Dkt No. 305): Specifically, Dkt. Nos. 297, 301, 301-1, 302, 302-1, and 302-2.
   b. Filings since Dkt. No. 305 that include references to Apple's designations or the material redacted: Specifically, Dkt. Nos. 306, 307, 307-1, 307-2, 320, 321, 322, 325.

We propose that the parties stipulate to seal these filings until such time as the court rules on your challenges and can direct the parties on how to proceed based on that ruling. For example, if the Court rules in your favor and de-designates Apple's confidentiality designations, then the records can be unsealed. Likewise, if the Court upholds any of Apple's confidentiality designations, the parties can discuss with the Court the appropriate next steps for applying limited redactions to those filings.

Melinda Riechert

Partner

Orrick

Silicon Valley Ⓥ

T 650/614-7423

M 650 759 1929

mriechert@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**3.90 KB**     2 embedded images